IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
TAMPA DIVISION

| | | |
|---|---|---|
| TECHNOLOGY TRAINING ASSOCIATES, INC., and LARRY E. SCHWANKE, D.C. d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | |
| BUCCANEERS LIMITED PARTNERSHIP, | ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, Technology Training Associates, Inc., and Larry E. Schwanke, D.C., d/b/a Back To Basics Family Chiropractic (collectively "Plaintiffs"), bring this action on behalf of themselves and all other persons similarly situated and, except for those allegations pertaining to Plaintiffs or their attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendant Buccaneers Limited Partnership ("BLP"):

## PRELIMINARY STATEMENT

1.      Defendant has sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.     Defendant sent Plaintiffs at least three advertisements each by facsimile and in violation of the TCPA. Group Exhibit A.

3.     These faxes also converted Plaintiffs' property and invaded Plaintiff's privacy.

4.     Plaintiffs bring this action on behalf of themselves and a class of all similarly-situated persons, and against Defendant, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages, injunctive relief, compensation and attorney fees (under the conversion and invasion of privacy counts), punitive damages (under the invasion of privacy count) and all other relief the Court deems appropriate under the circumstances.

5.     Unsolicited faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's privacy. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.

## PARTIES, JURISDICTION, AND VENUE

6.     Plaintiff Technology Training Associates, Inc. is a Florida corporation with its principal place of business in Hillsborough County, Florida.

7.     Plaintiff Larry E. Schwanke, D.C., is a Florida resident doing business

2

as Back To Basics Family Chiropractic with his principal place of business in Marion County, Florida.

8.      On information and belief, BLP is a Foreign Limited Partnership with its principal place of business in Tampa, Florida.

9.      The Court has subject matter jurisdiction over Plaintiff's federal statutory claim under 28 U.S.C. § 1331 and 47 U.S.C. § 227. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

10.     Personal jurisdiction exists over Defendant in Florida because Defendant has transacted business and committed tortious acts within the State.

11.     Venue is proper in the Middle District of Florida, Tampa Division because Defendant committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

12.     Defendant sent advertisements by facsimile to Plaintiffs and a class of similarly-situated persons. Defendant sent thousands of these fax advertisements to Plaintiffs and the other class members through assistance from FaxQom, USA Datalink, DMI Marketing, 127 High Street, Rocket Messaging, or other intermediaries. Defendant is directly liable for violating the TCPA.

13.     Plaintiffs have each received at least three of Defendant's unsolicited advertisements by facsimile in 2009 or 2010.

14.     Plaintiffs did not expressly invite or give permission to anyone to send any of the faxes in Group Exhibit A or any other advertisement from BLP to

3

Plaintiffs' fax machines.

15.    On information and belief, Defendant sent advertisements by facsimile to Plaintiffs and thousands of other persons in violation of the TCPA.

16.    Plaintiffs and the other class members owe no obligation to protect their fax machines from Defendant. Their fax machines are ready to send and receive their urgent communications, private communications and business information, not to receive Defendant's unlawful advertisements.

## CLASS ACTION ALLEGATIONS

17.    Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of a class, initially defined as follows:

> All persons who, in 2009 or 2010, received one or more facsimile advertisements sent by or on behalf of BLP and offering tickets for Tampa Bay Buccaneer games.

18.    Specifically excluded from the Class are the following Persons:

(a) BLP and its respective parents, subsidiaries, divisions, affiliates, associated entities, business units, predecessors in interest, successors, successors in interest and representatives and each of their respective immediate family members;

(b) Class Counsel; and

(c) The judges who have presided over the Litigation and any related cases.

Plaintiffs expressly reserve the right to modify the proposed class definition or propose subclasses.

19.     On information and belief, Defendant's fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA.

20.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiffs' claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

21.     **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from Defendant's records or the records of third parties.

22.     **Commonality and predominance.** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.      Whether Defendant sent advertisements by facsimile promoting the commercial availability or quality of property, goods, or services;

b.      Whether Group Exhibit A and other yet-to-be-discovered facsimiles sent by or on behalf of Defendant advertised the commercial availability or quality of property, goods or services;

c.      The manner and method Defendant used to compile or obtain the list(s) of fax numbers to which they sent the faxes contained in Group Exhibit A and other fax advertisements;

d.      Whether Defendant's fax advertisements contained opt-out notices compliant with the TCPA;

e.      Whether Defendant converted the fax machines of Plaintiff and the members of the class and is liable to Plaintiff and the members of the class for damages arising from its conversion;

f.      Whether Defendant invaded the privacy of Plaintiffs and the class and is liable to Plaintiff and the members of the class for damages arising from its invasions of privacy;

g.      Whether Plaintiffs and the other class members should be awarded statutory damages;

h.      Whether Plaintiffs and the other class members should be awarded actual damages

i.      Whether Plaintiffs and the other class members should be awarded punitive damages;

j.      If the Court finds that Defendant willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount; and

k.      Whether the Court should enjoin Defendant from faxing advertisements in the future.

23.     **Typicality of claims.** Plaintiffs' claims are typical of the claims of the other class members, because Plaintiffs and all class members were injured by the same wrongful practices. Plaintiffs and the members of the class received Defendant's advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendant's conduct, if Plaintiffs prevail on their claims, then the other putative class members will prevail as well.

24.     **Adequacy of representation.** Plaintiffs are an adequate representative of the class because their interests do not conflict with the interests of the class it seeks to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiffs intend to vigorously prosecute this action. Plaintiffs and their counsel will fairly and adequately protect the interest of members of the class.

25.     **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiffs and the putative class members, separate adjudication of each class

member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendant choose to advertise by fax again in the future.

26.     **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the class would be proper. Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

27.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

28.     Plaintiffs bring Count I on behalf of themselves and a class of similarly situated persons against Defendants.

8

29.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

30.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

31.     The TCPA provides a private right of action as follows:

> 3.     <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
>> (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C)     Both such actions.

47 U.S.C. § 227 (b) (3).

32.     The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

33.     Here, Defendant violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as <u>Group Exhibit A</u>) to Plaintiffs and the other class members without their prior express invitation or permission.

34.     The TCPA requires that every advertisement sent by facsimile must

include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 C.F.R. § 64.1200 (a) (4).

35.     Defendant failed to include a clear and conspicuous opt-out notice on the faxes in Group Exhibit A.

36.     The faxes in Group Exhibit A do not provide any of the information the TCPA requires for a compliant opt-out notice. For example, the faxes in Group Exhibit A fail to state on the advertisement's first page that the recipient may make a request to the sender not to send any future advertisement by facsimile and that the sender's failure to comply within 30 days is unlawful.

37.     Defendant violated the TCPA by failing to state on the first page of each fax advertisement that their failure to comply with an opt-out request within 30 days would be unlawful. Group Exhibit A.

38.     Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

39.     Defendant's failure to include a compliant opt-out notice on their fax advertisements makes irrelevant any express consent or established business relationship ("EBR") that otherwise might have justified Defendant's fax advertising campaigns. 47 C.F.R. § 64.1200 (a) (4).

40.     The TCPA is a strict liability statute and Defendant is liable to

Plaintiffs and the other class members even if their actions were negligent. 47 U.S.C. § 227 (b) (3).

41.     Even if Defendant did not intend to injure Plaintiffs and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendant's advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

42.     If Defendant's actions were knowing or purposeful, then the Court has the discretion to increase the statutory damages up to 3 times the amount. 47 U.S.C. § 227 (b) (3).

43.     BLP is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

44.     Defendant knew or should have known that Plaintiffs and the other class members had not given express invitation or permission for Defendant or anybody else to fax advertisements about Defendant's goods, products, or services, that Plaintiffs and the other class members did not have an established business relationship with Defendants, that the faxes in Group Exhibit A are advertisements, and do not display compliant opt-out notices as required by the TCPA.

45.     Defendant's actions damaged Plaintiffs and the other class members.

Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, the subject faxes used the fax machines of Plaintiffs and the other class members. The subject faxes cost Plaintiffs time, as Plaintiffs and their employees wasted their time receiving, reviewing and routing Defendant's illegal faxes. That time otherwise would have been spent on Plaintiffs' business activities. Defendant's faxes unlawfully interrupted Plaintiffs and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiffs and the other class members from the sending of unlawful fax advertisements occurred outside Defendant's premises.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendant as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representative of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.     That, if it finds Defendant willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiffs request trebling);

D.     That the Court enter an injunction prohibiting Defendant from

violating the TCPA; and

E.    That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

46.    Plaintiffs bring Count II on behalf of themselves and a class of similarly situated persons against Defendants.

47.    Defendant sent advertisements by facsimile to Plaintiffs and a class of similarly-situated persons. Defendant sent thousands of these fax advertisements to Plaintiffs and the other class members through assistance from FaxQom, USA Datalink, DMI Marketing, 127 High Street, Rocket Messaging, or other intermediaries.

48.    Plaintiffs have each received at least three of Defendant's unsolicited advertisements by facsimile in 2009 or 2010.

49.    Plaintiffs did not expressly invite or give permission to anyone to send Group Exhibit A or any other advertisement from BLP to Plaintiffs' fax machines.

50.    On information and belief, Defendant sent advertisements by facsimile to Plaintiffs and thousands of other persons.

51.    Plaintiffs and the other class members owe no obligation to protect their fax machines from Defendant. Their fax machines are ready to send and receive their urgent communications, private communications and business information, not to receive Defendant's unlawful advertisements.

52.   By sending Plaintiffs and the other class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendant also converted Plaintiffs' employees' time to Defendant's own use.

53.   Immediately prior to the sending of the unsolicited faxes, Plaintiffs and the other class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

54.   By sending the unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendant's own use. Such misappropriation was wrongful and without authorization.

55.   Defendant knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

56.   Plaintiffs and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiffs and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendant.

57.   Each of Defendant's unsolicited fax advertisements effectively stole Plaintiff's employees' time because multiple persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendant's unlawful faxes. Defendant knew or should have known employees' time is valuable to Plaintiff.

58.    Defendant's actions caused damages to Plaintiff and the other members of the class because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner as a result. Defendant's actions prevented Plaintiffs' fax machines from being used for Plaintiffs' business purposes during the time Defendant was using Plaintiff's fax machines for Defendant's illegal purpose. Defendant's actions also cost Plaintiffs' employees' time, as Plaintiffs' employees used their time receiving, routing, and reviewing Defendant's illegal faxes, and that time otherwise would have been spent on Plaintiffs' business activities.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendant as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representative of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.    That the Court enter judgment finding Defendant unlawfully converted the fax machines of Plaintiffs and the members of the class and is liable to Plaintiff and the members of the class for damages arising from its conversion;

C.    That the Court enter an injunction prohibiting Defendant from engaging in conversion of Plaintiffs' and the class members fax machines; and

D.    That the Court award costs, including reasonable attorneys' fees, and such further relief as the Court may deem just and proper.

## COUNT III
## INVASION OF PRIVACY

59.     Plaintiffs bring Count III on behalf of themselves and a class of similarly situated persons against Defendants.

60.     Defendant sent advertisements by facsimile to Plaintiffs and a class of similarly-situated persons. Defendant sent thousands of these fax advertisements to Plaintiffs and the other class members through assistance from FaxQom, USA Datalink, DMI Marketing, 127 High Street, Rocket Messaging, or other intermediaries.

61.     Plaintiffs have each received at least three of Defendant's unsolicited advertisements by facsimile in 2009 or 2010.

62.     Plaintiffs did not expressly invite or give permission to anyone to send Group Exhibit A or any other advertisement from BLP to Plaintiffs' fax machines.

63.     On information and belief, Defendant sent advertisements by facsimile to Plaintiffs and thousands of other persons.

64.     Plaintiffs and the other class members owe no obligation to protect their fax machines from Defendant. Their fax machines are ready to send and receive their urgent communications, private communications and business information, not to receive Defendant's unlawful advertisements.

65.     By sending Plaintiffs and the other class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendant also converted Plaintiffs' employees' time to Defendant's own use.

66.     By sending Plaintiffs and the other class members unsolicited faxes, Defendant intruded both physically and electronically into the private quarters of Plaintiffs and the class members. Defendant's faxes unlawfully interrupted Plaintiffs and the other class members' privacy interests and rights to seclusion and to be left alone.

67.     By so doing, Defendant invaded the privacy of Plaintiffs and the class.

68.     Defendant knew or should have known that its invasion of Plaintiffs' and the class members' privacy was wrongful and without authorization.

69.     Plaintiffs and the other class members were deprived of the use of their phone lines, fax machines, paper, toner, and personal and business time, which could no longer be used for any other purpose. Plaintiffs and each class member thereby suffered damages, including mental and emotional distress, as a result of their receipt of unsolicited fax advertisements from Defendant.

70.     Defendant's actions caused damages to Plaintiff and the other members of the class.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendant as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representative of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.      That the Court enter judgment finding Defendant unlawfully invaded the privacy of Plaintiffs and the members of the class and is liable to Plaintiff and the members of the class for damages arising from its invasion of privacy;

C.      That the Court enter judgment awarding Plaintiffs and the class members punitive damages in an amount sufficient to punish and deter Defendant;

D.      That the Court enter an injunction prohibiting Defendant from invading the privacy of Plaintiffs' and the class members; and

E.      That the Court award costs, including reasonable attorneys' fees, and such further relief as the Court may deem just and proper.

Respectfully submitted,

TECHNOLOGY TRAINING ASSOCIATES, INC., and LARRY E. SCHWANKE, D.C. d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, individually and as the representative of a class of similarly-situated persons

By: /s/ Phillip A. Bock

Phillip A. Bock
Daniel J. Cohen
Jonathan B. Piper
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St,, Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555