**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| TECHNOLOGY TRAINING ASSOCIATES, *et al.*, individually and as representatives of a class of similarly-situated persons,<br><br>      Plaintiffs,<br><br>v.<br><br>BUCCANEERS LIMITED PARTNERSHIP,<br><br>      Defendants. | )<br>)<br>)<br>)<br>) Case No. 8:16-CV-01622-MSS-AEP<br>)<br>)<br>)<br>)<br>)<br>) |

**CIN-Q AUTOMOBILES, INC. AND MEDICAL & CHIROPRACTIC, INC.'S**
**MEMORANDUM PURSUANT TO COURT ORDER OF JUNE 27, 2016**

Cin-Q Automobiles, Inc., and Medical & Chiropractic Clinic, Inc. ("*Cin-Q* Plaintiffs") state as follows pursuant to the Court's order allowing briefing on whether it should (1) "go forward with an assessment of the reverse auction" issue now, or (2) proceed to "consider the proposed settlement" on the motion for preliminary approval and decide the reverse auction issue later. (Hr'g Tr., June 27, 2016, at 39). As a threshold matter, the Court should dismiss the *Technology Training* plaintiffs' class claims *sua sponte* for lack of Article III standing,[1] and so it need not consider the reverse auction issue at all. In the alternative, the Court should determine, based on the current record, that the indicia of a reverse auction are so strong that the proposed settlement is procedurally unfair and cannot be approved.

**Background**

The *Cin-Q* Plaintiffs timely filed the *Cin-Q* Action, No. 13-cv-1592, on June 18, 2013. In the following three years, they defeated BLP's motions to dismiss and for summary judgment

---

[1] *Cin-Q* Plaintiffs are concurrently filing a Motion to Intervene in this action, to which this Memorandum is attached as Exhibit A and an accompanying Motion to Strike is attached as Exhibit B.

and built the evidentiary record necessary to timely file their motion for class certification on March 25, 2016. The parties attempted to negotiate a class settlement for over a year, which failed, but on May 25, 2016, the Court ordered *Cin-Q* Plaintiffs and BLP to make a final attempt to mediate prior to BLP's June 20 deadline to respond to the motion for class certification. The parties agreed to mediate on June 17, 2016.

The night before the Court-ordered mediation, BLP's counsel announced they had settled the *Cin-Q* Plaintiffs' class claims with a company called Technology Training Associates, which did not even have a case on file and is represented by Bock, Hatch, Lewis & Oppenheim, LLC, a firm that had no prior involvement in this case, save for the fact that one of its attorneys, Mr. Oppenheim, previously represented the *Cin-Q* Plaintiffs in the failed mediation sessions prior to leaving the law firm of Anderson + Wanca, counsel for *Cin-Q* Plaintiffs. BLP moved to stay the *Cin-Q* Action, and Oppenheim's new firm filed this action, accompanied by a motion for preliminary approval and certification of a settlement class under Rule 23(b)(3).

*Cin-Q* Plaintiffs argued that staying their case would be futile because the proposed *Technology Training* settlement cannot be approved due to "procedural unfairness." One indication of procedural unfairness *Cin-Q* Plaintiffs focused on was the appearance of a "reverse auction," where a defendant chooses to negotiate with the class plaintiff with the weakest claim and, thus, the least bargaining power.[2] Plaintiff argued the indicia of a reverse auction are present here, since the *Technology Training* plaintiffs' claims are barred by the four-year statute of limitations, and did not even have a case on file, and yet BLP chose to negotiate with those

---

[2] The appearance of a reverse auction is only one of the warning signs indicating "procedural unfairness" in a class settlement, and *Cin-Q* Plaintiffs reserve their right to object on this and any other basis at preliminary approval, final approval, or appeal, should this proposed settlement get that far.

plaintiffs rather than the *Cin-Q* Plaintiffs, who timely filed suit, survived a motion to dismiss and motion for summary judgment, and had a pending motion for class certification.

On June 27, 2016, the Court granted BLP's motion to stay the *Cin-Q* Action. The Court granted *Cin-Q* Plaintiffs leave to address whether the Court should (1) "go forward now with the issue of the reverse auction" or (2) proceed to "make an assessment" on the motion for preliminary approval and consider the reverse-auction issue "at a later date." (Hr'g Tr. at 39).

I. **The Court need not address the reverse auction issue at all because it should dismiss the *Technology Training* plaintiffs' claims for lack of Article III standing.**

As argued in detail in the *Cin-Q* Plaintiff's Motion to Strike, the *Technology Training* plaintiffs lack Article III standing to seek class certification because their claims are time barred. The Eleventh Circuit holds that "[t]o have standing to represent a class, the named plaintiffs' claims must be timely filed." *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002). Because this is a jurisdictional issue, "it is appropriate, and indeed *necessary*, to consider whether a named plaintiff has timely brought her claims in assessing the propriety of class certification." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 651, 661 (S.D. Ala. 2005) (emphasis added) (rejecting argument that "statute of limitations is a merits issue," citing "the bedrock legal principle in this Circuit that class certification requires a court to consider standing, *which does not exist if a plaintiff's claims are untimely*"). A court in the Eleventh Circuit may not certify a class "without considering the timeliness of plaintiffs' claims." *Id.*; *see also Seacoast Sanitation Ltd., Inc. v. Broward Cty., Fla.*, 275 F. Supp. 2d 1370, 1377 (S.D. Fla. 2003) (plaintiff lacked "Article III standing" to act on behalf of a class because its claims were time-barred).

The *Technology Training* plaintiffs' claims are barred by the four-year statute of limitations. *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795 F.3d 1324, 1325 (11th Cir.

2015). The *Technology Training* plaintiffs allege they were sent BLP faxes in 2009 and 2010, but they did not sue until June 2016. Their claims are therefore untimely. *Id.*

The pendency of the *Cin-Q* Action does not toll the statute of limitations for the *Technology Training* action. *See Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) ("the pendency of a previously filed class action does *not* toll the limitations period for additional class actions by putative members of the original asserted class"); *Ewing Indus.*, 795 F.3d at 1328 (applying rule in TCPA fax case).[3] Thus, the *Technology Training* plaintiffs lack Article III standing to seek class certification, and their class claims must be dismissed. *City of Hialeah*, 311 F.3d at 1101; *LaBauve*, 231 F.R.D. at 661.

BLP has agreed in the proposed settlement to waive its statute-of-limitations defense against the *Technology Training* plaintiffs, but BLP cannot "waive" Article III. *See* Fed. R. Civ. P. 12(h)(3); *In re Kutner*, 656 F.2d 1107, 1110 (5th Cir. Sept. 21, 1981) (parties "cannot confer jurisdiction by agreement or waiver if it does not otherwise exist"). Even if no one raises the issue, the Court has a duty to address its jurisdiction *sua sponte*. *Id.*; *Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*, 792 F. Supp. 1566 (S.D. Fla. 1992). Because the Court should dismiss the *Technology Training* plaintiffs' class claims for lack of jurisdiction, it need not decide whether the proposed settlement was the product of a reverse auction or consider the adequacy of the proposed settlement at all.

**II.    The Court can determine that the indicia of a reverse auction are overwhelming based on the current record.**

---

[3] The *Technology Training* plaintiffs could not rely on tolling to file an *individual* lawsuit, either. *See Rogers v. Nacchio*, 2006 WL 7997562, at *3 (S.D. Fla. June 6, 2006) ("a plaintiff cannot rely on *American Pipe* tolling where the plaintiff files an individual action before the class action court makes a decision affecting class certification" because "[t]he purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification").

4

Even if BLP could permissibly "waive" the jurisdictional defect with the *Technology Training* plaintiffs' claims, the Court should rule now, prior to deciding preliminary approval, that the proposed settlement can never be approved. There are several "red flags" in class settlements that can "show their potential unfairness on their face." Federal Judicial Center ("FJC"), *Managing Class Action Litigation: A Pocket Guide for Judges*, IV.C (3d ed. 2010);[4] Newberg on Class Actions § 13:56 (5th ed.). Of these warning signs, *Cin-Q* Plaintiffs have thus far focused on the appearance of a reverse auction, but they reserve their right to raise any and all arguments at preliminary or final approval, should this settlement progress that far.

A "reverse auction" is where the defendant "picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). There need be no "evidence of fraud or collusion." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007). What matters is the "perception" that the plaintiff is so severely disadvantaged that it "necessarily negotiated from a position of weakness," and infected the process with "procedural unfairness." *Id.* The FJC advises federal courts to be alert to several "indicia" of a reverse auction, including the following:

- The defendant chooses to negotiate with "the weakest attorney among a number of plaintiff attorneys who have filed lawsuits dealing with the same subject matter." Pocket Guide § IV.C.5 (citing *Figueroa*, 517 F. Supp. 2d at 1321).

- There is a "difference between the apparent value of the class claims on the merits and the value of the settlement to class members." Pocket Guide § IV.C.5.

- "[T]he settlement will be with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, *an especially suspicious circumstance*." Pocket Guide § IV.C.5 (emphasis added).

---

[4] Available at http://www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf

5

Each of these indicia are present here. First and foremost, BLP has agreed to waive a dispositive statute-of-limitations defense in exchange for the privilege of settling with *Technology Training* counsel. In *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321–22 (S.D. Fla. 2007), the defendant chose to forego a motion to stay the plaintiff's case in favor of competing class actions, which undoubtedly would have been granted, and instead negotiated a class settlement with the plaintiff. The district court rejected the settlement, holding it was infected by "procedural unfairness" where "Plaintiffs' counsel necessarily negotiated from a position of weakness, with the specter of a stay of this case a constant companion." *Id.*

The proposed *Technology Training* settlement presents the most extreme example of procedural unfairness imaginable. Rather than being followed by "the specter of a stay," like the plaintiff in *Figueroa*, the *Technology Training* plaintiffs had the threat of outright dismissal hanging over their heads during negotiations. The *Technology Training* plaintiffs were in no position to walk away from negotiations and press ahead to class certification and trial, as *Cin-Q* Plaintiffs did, because they knew (as BLP knew) that their case would never make it that far. They could not use "the threat of litigation to press for a better offer," *Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997), because BLP would have simply moved to dismiss their claims as time-barred if they had filed suit. The *Technology Training* plaintiffs "necessarily negotiated from a position of weakness," *Figueroa*, 517 F. Supp. 2d at 1321–22, the classic indication of a reverse auction.

The *Cin-Q* Plaintiffs, in contrast, are not subject to the statute of limitations. They timely filed suit on June 18, 2013, prior to the expiration of the four-year limitations period, and proceeded to defeat BLP's dispositive motions, obtain the necessary discovery, hire an expert witness and conduct expert discovery, and timely file their motion for class certification. The

*Technology Training* plaintiffs had to bargain with BLP on the statute of limitations in exchange for BLP allowing their claims to survive; defendants in multi-million-dollar class actions do not waive dispositive defenses for free. The *Cin-Q* Plaintiffs do not need to bargain over a statute-of-limitations defense because their claims are timely. The fact that BLP chose to negotiate with these "disarmed" plaintiffs is a massive red flag, and it is fatal to the proposed settlement.

Second, the "difference between the apparent value of the class claims on the merits and the value of the settlement to class members" shows this is a reverse auction. Pocket Guide § IV.C.5. The minimum classwide damages in this case at $500 per fax is $171,561,000 based on 343,122 successful fax transmissions reflected in the electronic records *Cin-Q* counsel worked for years to obtain. If damages are trebled to $1,500 per fax for "willful or knowing" violations—which is a strong possibility, since BLP's general counsel signed off on the fax campaign at the outset and BLP continued sending faxes even after attorney Towzey advised BLP's counsel it was violating the TCPA *and* after Cin-Q appeared in the first class-action lawsuit against BLP in state court in August 2009—the damages could reach $514,683,000.

Under the *Technology Training* settlement, BLP will pay no more than $19.5 million. To obtain approval, BLP and the *Technology Training* plaintiffs will have to show that this amount is within "the range of possible recovery." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1327 (11th Cir. 2013). There is no indication that BLP cannot satisfy a classwide judgment. *Cf. id.* (reversing approval of class settlement where conclusion that it was within the "range of recovery" was based on erroneous finding that defendant was unable to satisfy judgment). And neither BLP nor *Technology Training*'s counsel have made any attempt to justify why this case should settle for 11.3% of the potential statutory damages at $500 per fax, or 3.8% of the damages at $1,500 per fax (blended percentage of 7.55%).

The motion for preliminary approval conclusorily asserts that the amount is "reasonable in light of the risks of continued litigation," without further analysis. (Mot. Prelim. Approval at 15). That means *Technology Training* counsel estimate BLP's chances of prevailing on the merits at 88.7% to 96.2%. Although BLP has a 100% chance of victory against the *Technology Training* plaintiffs—given that their claims are barred and they cannot obtain class certification—the *Cin-Q* Plaintiffs' case is significantly more valuable, since they timely filed suit, survived BLP's dispositive motions, and moved for class certification.

This Court has already held that there is "[a]mple evidence" from which a jury could find the faxes were sent "on behalf of" BLP. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2014 WL 7224943, at *9 (M.D. Fla. Dec. 17, 2014). And even if *Cin-Q* Plaintiffs were to lose the "on behalf of" issue at trial, they would still have their appeal on whether BLP liable as the "sender" because its "goods or services" are advertised in the faxes. This Court rejected that argument at summary judgment, but recognized there is "substantial ground for difference of opinion" on the question. *Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*, 2015 WL 2092810, at *3 (M.D. Fla. May 5, 2015). Since that ruling, the Sixth Circuit applied the plain language of the regulation to faxes sent after the effective date, *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 636 (6th Cir. 2015), as did this District in *Arkin v. Innocutis Holdings, LLC*, 2016 WL 3042483, at *5 (M.D. Fla. May 26, 2016). In sum, the disparity between the value of the case *Cin-Q* Plaintiffs built over the past three years and the amount of the proposed settlement further indicates that this was a reverse auction.

Third, the proposed settlement is "with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, *an especially suspicious circumstance*." Pocket Guide § IV.C.5 (emphasis added). Counsel for *Technology Training* did

8

nothing to get the case against BLP to where it is today. One of the firm's attorneys, Oppenheim, represented *Cin-Q* Plaintiffs in the mediations before leaving the Anderson + Wanca firm, but that makes the circumstances even *more* suspicious, given that the Bock firm entered the picture only after Oppenheim's departure, and without even having a case on file.

The $4.875 million in agreed attorney fees is an additional sign of a reverse auction. "A typical element of a reverse auction is a promise to pay attorneys more than a reasonable value for the time they invested in negotiating the settlement" (Pocket Guide § IV.C.5). The Bock firm did nothing to benefit the class, nor could it given their precarious position. Combined with the onerous claims process and reversion to BLP agreed to in the *Technology Training* settlement, these circumstances raise a huge red flag. *See De Leon v. Bank of Am., N.A. (USA)*, 2012 WL 2568142, at *15 (M.D. Fla. Apr. 20, 2012), adopted 2012 WL 2543586 (M.D. Fla. July 2, 2012).

Under the proposed *Technology Training* settlement, class members seeking to claim their share of the fund would be required to swear "**UNDER PENALTY OF PERJURY**" as to the number of BLP faxes they received six to seven years ago, with the claim form stating "[i]f you believe you received more than one fax to the number(s) listed above," the claimant must "indicate how many you believe you received at each number in parenthesis next to each number." (Doc. 18-1). Class members will also be told there are only "partial records" of the transmissions, and that "BLP has the right to audit this claim form and verify your statements and dispute any claims that are based on inaccurate responses." (*Id.*)

But the evidence *Cin-Q* Plaintiffs gathered over years of hard work shows the number of transmissions to each fax number. Although it may be reasonable to require class members to state how many faxes they believe they received in a case *without* such records, requiring class members in this case to swear to how many BLP faxes they received under penalty of perjury, or

threat of "audit" by BLP, will suppress the claims rate, thus increasing the reversion to BLP and reducing its "bottom line," which is all BLP is concerned with. *Reynolds*, 288 F.3d at 282. The FJC warns courts to be alert to "a claims process which serves as a choke on the total amount paid to class members," including "situations where class members are required to produce documents or proof that they are unlikely to have access to or to have retained." FJC, Judges' Class Action Checklist at 6.[5] When combined with a fee of nearly $5 million for doing next to nothing, *Technology Training* counsels' willingness to agree to these conditions when *Cin-Q* counsel obtained the transmission records shows the class was not adequately represented and is clear indicia of a reverse auction.

The proposed *Technology Training* settlement was negotiated under highly suspicious circumstances, where BLP announced the night before a Court-ordered mediation that it had settled on a class basis with attorneys who did not even have a case on file, and with plaintiffs who lack a viable class case of their own, for far less than 10% of the potential value of the case, while agreeing to pay the attorneys nearly $5 million for doing essentially nothing. The settlement presents compelling indicia of a reverse auction on its face, and the Court can and should make that determination now.

## Conclusion

The Court should dismiss the *Technology Training* plaintiffs' claims *sua sponte* for lack of Article III standing. In the alternative, the Court should reject the proposed settlement because the indicia of a reverse auction are so strong that the proposed settlement is procedurally unfair on its face and can never be approved.

---

[5] http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf

Date: July 8, 2016                                                                                    Respectfully submitted,

                                                **ANDERSON + WANCA,**
3701 ALGONQUIN ROAD, SUITE 500
ROLLING MEADOWS, IL 60008

AND

**ADDISON & HOWARD, P. A.**
400 N. Tampa St., Suite 1100
Tampa, Florida  33602-4714
Tel:  (813) 223-2000
Fax:  (813) 228-6000
Attorneys for Intervenors


/s/ Michael C. Addison
Michael C. Addison
Florida Bar No. 0145579
m@mcalaw.net


### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true copy of the foregoing has been furnished by ☒Email or ☐United States mail or ☐telecopier or ☐hand delivery to the person listed below on July 8, 2016.

                                                /s/ Michael C. Addison
                                                Michael C. Addison

| | |
|---|---|
| Philip Bock, Esq. | Mark Mester, Esq. |
| Bock, Hatch, Lewis & Oppenheim, LLC | Kathleen Lally, Esq. |
| 134 N. LaSalle St., Suite 1000 | Lathem & Watkins |
| Chicago, IL 60602 | 330 N. Wabash Ave., Suite 2800 |
| 312-658-5501 direct | Chicago, Illinois 60611 |
| 312-658-5555 fax | 312-876-7623 direct |
| Attorneys for Technology Training Associates, Inc. | Attorneys for Buccaneers Limited Partnership |