# EXHIBIT 8

# ADDISON & HOWARD, P.A.

400 N. Tampa St. • Suite 1100
Tampa, Florida  33602-4714
Telephone:  813-223-2000
Telecopier:  813-228-6000

**Laura H. Howard**
howard@mcalaw.net



**Michael C. Addison**
Board Certified Civil Trial Lawyer
Board Certified Business Litigation Lawyer
m@mcalaw.net

May 23, 2016

<u>*VIA* email – mark.mester@lw.com</u>

Mark S. Mester, Esq.
Latham & Watkins
Suite 2800
330 North Wabash Ave.
Chicago, IL  60611

  Re: Cin-Q Automobiles, Inc., et al. v. Buccaneers Limited Partnership
     Case No. 13-cv-01592-AEP, Middle District of Florida

Dear Mr. Mester:

  This letter responds to your letter dated May 19, 2016.

  Contrary to your claim, there has been no "threat" directed to Judge Andersen.  Instead, there was an email to him dated May 12 from Attorney Wanca informing him of the "discovery" of *Technology Training Associates, Inc. v. Buccaneers Limited Partnership* case in Hillsborough County Circuit Court case, a new TCPA case filed May 6, that case's relationship to the case Judge Andersen had been mediating from August of 2015 until April of this year, the fact that Attorney Oppenheim (former counsel for the plaintiffs) had recently joined the Bock law firm (now known as Bock, Hatch, Lewis, and Oppenheim) and therefore had a conflict of interest and what was being attempted was viewed at that time as being a "fraud on the court" in which he was urged not to participate.  A copy of the email from Attorney Wanca was sent to you at the time and you therefore know that it was not a threat.  In fact, two affidavits have been filed in this matter, authored by me, detailing your behavior in trying to orchestrate two, successive secret mediations in the *Technology Training* case—both of which were discovered by me.

Letter to Mark S. Mester, Esq.
May 23, 2016
Page 2

You claim that negotiating with the plaintiff in *Technology Training* was not an attempt at a "reverse auction." The facts indicate otherwise. You set up an undisclosed mediation (for May 20) with counsel for Technology Training in a case where (i) BLP had not yet appeared, (ii) with a law firm that has had no involvement whatsoever in this case in the approximately three years it has been pending in federal court or the prior four years in state court (save Mr. Oppenheim's involvement representing the Plaintiffs in this case), (iii) where the claims (in the *Training Technology* case) are barred by the statute of limitations, (iv) where the law firm representing Training Technology has a conflict based on Mr. Oppenheim's representation of Cin-Q and Medical & Chiropractic Clinic in the mediation in this case and Mr. Oppenheim's (and certainly his new firm's) representation of the plaintiff in the *Training Technology* case, (v) where you failed to timely disclose to the Court the existence of the Training Technology case (clearly, you hoped to present the settlement as a *fait accompli* to Judge Porcelli) and instead did so only after I discovered the undisclosed May 20 mediation with Judge Andersen, and (vi) after your May 20 mediation with Judge Andersen was discovered and cancelled, you scheduled a new mediation for May 19 in Tampa with a new mediator, which was again uncovered by me through happenstance.

In the face of all of these facts, your claim that you are not trying to engineer a reverse auction is unsupportable.

You state unless the Plaintiffs "unequivocally withdraw [their] claim and allegations of a reverse auction, our client will be compelled to seek leave from the court in Cin-Q to disclose what transpired in the prior mediation to rebut any suggestion of a reverse auction."

First, the mediation privilege that attached to the discussions, both in person in Chicago with Judge Andersen functioning under the auspices of the mutually agreed-upon JAMS protocol and procedures, as well as the email and oral communications that followed for the many months Judge Andersen was attempting to get your clients to make a reasonable settlement offer, remains intact. There were no direct discussions with you or Attorney Lally on August 31, 2015. In fact, we were not even introduced or invited to be in one another's presence that day. Thereafter there were no email or oral discussions with me or with Attorney Wanca which could be interpreted as justifying the assertion that we were acting in bad faith or in any manner, other than seeking a recovery from your

Letter to Mark S. Mester, Esq.
May 23, 2016
Page 3

client in an amount that was in the best interests of the class, or that the confidentiality of the mediation process should be compromised.

Second, Plaintiffs' counsel has sought to obtain the best settlement for the class. That BLP's motivation is directly contrary to Plaintiffs, *i.e.*, BLP wants to pay as little as possible to settle this matter, does not somehow operate to make the differences between the parties solely about attorneys' fees. It is ironic that in attempting to pay as little as possible to settle this matter (including secretly negotiating with the Bock, Hatch, Lewis, and Oppenheim law firm), BLP accuses Plaintiffs' counsel of being only concerned with fees when in fact Plaintiffs' counsel is only attempting to settle on the most favorable terms for the class. While Plaintiffs' position is that the mediation privilege applies, Plaintiffs are confident that, in the event the Court determines such privilege does not apply, it will became inescapably clear that Plaintiffs acted in the best interests of the class during the entire course of the mediation process.

Moreover, should the mediation privilege be found by the Court to have been waived based on the filing of the motion to enjoin, it of course follows that any privilege as to the discussions/negotiations between BLP and Training Technology has also been waived. Plaintiffs will seek all documents regarding the attempted "*Training Technology*" mediation, including all communications made to secure Training Technology as a client and Defendant's communications with their counsel, and will seek to depose all of those individuals involved regarding the foregoing.

Finally, at the same time you demand that Plaintiffs "unequivocally" withdraw their motion to enjoin, you state in your letter that you "obviously reserve the right to use another mediator for any other competing case, and in the event a settlement were reached as a result of said mediation, then you and your clients would, of course, have the right and ability to object to such settlement, to the extent you believed it not to be fair, reasonable and adequate or, in the alternative, to opt out of any settlement class."

Thus, Plaintiffs are to "unequivocally" withdraw their motion to enjoin while BLP remains free to negotiate with some other party in some other unfiled/undisclosed new case. Not surprisingly, this is unacceptable to Plaintiffs. Instead, if BLP agrees to not mediate this case with any party other than Plaintiffs and their attorneys, in the instant case currently pending before Judge Porcelli, and enters a stipulation to that effect, Plaintiffs will withdraw their motion to enjoin.

Letter to Mark S. Mester, Esq.
May 23, 2016
Page 4

In addition, Plaintiffs will not object to the extension of time that BLP claims it needs to submit a response to Plaintiffs' motion for class certification (pending since March 25, 2016). You are not constrained to make a written settlement offer at any time. That is where the Judge Andersen mediation concluded (with our request that you make a written response to our last written demand).

  We look forward to hearing from you regarding these matters.

             Sincerely yours,

             Michael C. Addison

\\mca2014\clients open\cin-q auto.buccaneers\ltr\letter to mester 05 23 2016 92488.docx