IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
TAMPA DIVISION

TECHNOLOGY TRAINING            )
ASSOCIATES, INC., and LARRY E.  )
SCHWANKE, D.C. d/b/a BACK TO    )
BASICS FAMILY CHIROPRACTIC,     )
individually and as the representative of a  )
class of similarly-situated persons,  )
                                )
                  Plaintiffs,    )      Case No. 8:16-cv-01622-MSS-AEP
                                )      Mag. Judge Anthony E. Porcelli
                                )
           v.                    )
                                )
BUCCANEERS LIMITED              )
PARTNERSHIP,                     )
                                )
                  Defendant.     )

**PLAINTIFFS' MEMORANDUM OF LAW
FOR OCTOBER 20, 2016 HEARING**

Plaintiffs, Technology Training Associates, Inc. ("TTA") and Larry E.

Schwanke, DC ("Schwanke"), submit this memorandum of law in advance of the

hearing in this cause set for October 20, 2016.[1]

### Summary Background

On August 11, 2016, the Court advised the parties that it intended to hold a

hearing to "make a determination after a fact-finding whether there is a conflict of

interest given the nature of their [proposed class counsel's] relationship with Mr.

---

[1] Plaintiffs' counsel conferred with Defendant's counsel regarding the filing of this
memorandum. Defense counsel advised that Defendant has no opposition to its
filing.

Oppenheim and the former client." (Aug. 11, 2016 Tr. at 6) Subsequently, the hearing was scheduled for October 20, 2016.

## Relevant & Undisputed Facts

Prior to beginning his employment as an associate attorney with Bock Law Firm, LLC, David Oppenheim was employed as an associate attorney with Anderson + Wanca ("A+W"). While employed at A+W, Mr. Oppenheim participated in mediation efforts in *Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. v. Buccaneers Limited Partnership,* Case No. 8:13-CV-01592-AEP ("the CinQ action"). After Mr. Oppenheim switched firms, Bock Law Firm, LLC filed this action.

## The Conflict of Interest Issue

The issues raised *sua sponte* by the Court are (1) whether Mr. Oppenheim's previous employment with A+W, and his mediation efforts in the CinQ action, give rise to a conflict of interest that disqualifies him from prosecuting this action, and (2) whether any such conflict of interest, if any, is automatically imputed to Bock Law Firm, LLC so as to disqualify the firm from prosecuting this action.

APPLICABLE LAW

I.    **Florida Rules of Professional Conduct.**[2]

**Rule 4-1.7 Conflict of Interest, Current Clients**

(a) **Representing Adverse Interests.** Except as provided in subdivision (b), a lawyer must not represent a client if:

(1) the representation of 1 client will be directly adverse to another client; or

(2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**Rule 4-1.9 Conflict of Interest; Former Client**

A lawyer who has formerly represented a client in a matter must not afterwards:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

(b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or

---

[2] Mr. Oppenheim, an Illinois attorney, transferred between two Illinois law firms. The putative class representatives are in Florida. The A+W mediations took place in Illinois and Florida. Mr. Bock is licensed to practice in both Illinois and Florida. If there is a conflict between Florida and Illinois rules of professional conduct, that raises a conflict of laws issue as to which state's rules apply. Plaintiffs' counsel do not concede that Florida rules govern here. However, given that there is no "material adversity" under either state's rules, particularly in the context of a federal class action, this potential conflict of laws issue is irrelevant, and so this memorandum analyzes "conflict of interest" under Florida rules.

(c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

## Comment

…The principles in rule 4-1.7 determine whether the interests of the present and former client are adverse…

## Rule 4-1.10 Imputation of Conflicts of Interest; General Rule

(a) **Imputed Disqualification of All Lawyers in Firm.** While lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

(b) **Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

(c) **Representing Interests Adverse to Clients of Formerly Associated Lawyer.** When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(3) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(4) any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

**(d) Waiver of Conflict.** A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.

**(e) Government Lawyers.** The disqualification of lawyers associated in a firm with former or current government lawyers is governed by rule 4-1.11.

## II.   Conflict rules apply differently in the class action context because putative class counsel's duty is to the entire class.

Neither of the relevant Florida rules, Rule 4.1-9 and Rule 4-1.10, prevents Bock Law Firm, LLC from prosecuting this action. Attached as <u>Exhibit 1</u> is the declaration of Professor Timothy Chinaris, former Ethics Director of the Florida Bar. Consistent with this memorandum, it is Professor Chinaris's opinion that "neither Mr. Oppenheim nor Bock Law Firm are ethically precluded from representing class members in the Technology Training case or related cases." (Ex. 1 (Chinaris Declaration) at ¶ 20.)

The Florida Rules do not disqualify Bock Law Firm, LLC unless there is a "material adversity" of interests between (1) TTA and Schwanke and (2) the putative class representatives in the *CinQ* action. Rules 4.1-9 and 4.10 refer to Rule 1.7 in defining what is "materially adverse." "Rule 1.7 is generally implicated when counsel is representing one client in a lawsuit against another individual who is also the counsel's client. In other words, counsel is, in effect, on both sides of the lawsuit." *In re Commissioner of Banks and Real Estate*, 764 N.E.2d 66, 98 (Ill. App. 2001), *citing Guillen v. City of Chicago,* 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

In this case there is no "material adversity" because all of the parties at issue are putative class representatives with convergent interests. In the class context,

counsel's duty is to "the entire class and is not dependent on the special desires of the named plaintiffs." *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1981), *cert. denied*, 459 U.S. 828 (1982). *See Allapattah DFC Class Action Settlement Fund v. U.S.*, 2010 WL 6430699, at *8 (S.D. Fla. 2010) (holding that, as a matter of federal and state law, class counsel owe a duty to *all* class members throughout the litigation); *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) (noting that class counsel have a "heavy fiduciary responsibility to their clients – especially to those who are absent and those in the minority whose interests are at odds with the named plaintiffs and their group").

To that end, the plaintiff attorneys in a class action must act in a way that best represents the interests of "the entire class and is not dependent on the special desires of the named plaintiffs." *Parker*, 667 F.2d at 1211. "Because the client in a class action consists of numerous class members, in addition to the class representatives, and because the class itself often speaks in several voices, all that can be expected of class counsel is that he seek to protect the best interests of the class as a whole." *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 307 (N.D. Ill. 1997). "This duty may require class counsel to take actions which are in derogation of the express desires and contrary to the best interest of the class representatives in order to protect the interests of the plaintiff class." *Id.*

"Class counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiff or other objectors." *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983); *see also Kincade v. General Tire &*

*Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) (holding "'client' in a class action consists of numerous unnamed class members as well as the class representatives," which can force class counsel to act in what she or he perceives to be in the "'best interests of the class as a whole'").

In *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1176 (5th Cir. 1978), the Fifth Circuit held that "when a potential conflict arises between the named plaintiffs and the rest of the class, the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs. In such a situation, the attorney's duty to the class requires him to point out conflicts to the court so that the court may take appropriate steps to protect the interests of absentee class members." In other words, if there were some conflict between the putative class representatives in the *CinQ* action and the other class members—including the *Technology* plaintiffs—far from being obligated to keep it confidential, class counsel would be obligated to disclose it to the Court. *See also Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080 (7th Cir. 2013) (Posner, J.), *quoting* NEWBERG ON CLASS ACTIONS § 3:52 (observing that the class representative's role "is nominal," and that "class action attorneys are the real principals and the [class representatives are] their agents").

The decision in *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), confirms that conflict of interest rules apply differently in the class action context. "When the [*Pella*] settlement was presented … for preliminary approval, … [four of five] named plaintiffs opposed it, leaving only Saltzman … to support it." *Id.* at 722. The five

representatives and the class had been represented by partners, Lang and Weiss. Lang left and took four plaintiffs with him. *Id.* Weiss reached a class settlement, which Lang and his clients opposed. *Id.* Apart from Mr. Oppenheim being screened from the instant matter as a precautionary measure where Mr. Lang was not, the circumstances in *Eubank* are similar to those presented here. The *Pella* court held:

> Lang now represents the defrocked named plaintiffs, who are four of the six objectors. A lawyer's switching sides in the same lawsuit would normally be considered a fatal conflict of interest, but the courts are lenient when it is a class action lawyer. For often only the attorneys who have represented the class, rather than any of the class members themselves, have substantial familiarity with the prior proceedings, the fruits of discovery, the actual potential of the litigation. And when an action has continued over the course of many years, the prospect of having those most familiar with its course and status be automatically disqualified whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution.

*Id.* at 722-23 (internal citations and quotations omitted). Lang was allowed sequentially to represent a settling class representative and then an objector to the settlement. The Seventh Circuit found many things about which to criticize Weiss and his settlement, but forging ahead on it despite the disapproval of his former clients was not one of them. *Id.*

The Ninth Circuit held similarly in *Radcliffe v. Hernandez*, 818 F.3d 537 (9th Cir. 2016) ("*Radcliffe II*"). There, as here, two putative class actions were brought against the same defendants, *id.* at 539-40, and the "two teams of named plaintiffs and their respective lawyers [] disagree[d] over the proper direction for … settlement." *Id.* at 539. The cases were consolidated. One group reached a settlement; the other opposed it. *Id.* at 540. The settling plaintiffs in *Radcliffe*

conditioned the non-settling plaintiffs' right to an incentive award on their support of the settlement. *Id.* On appeal by the non-settling plaintiffs, the Ninth Circuit held "the conditional incentive award created a conflict of interest." *Id. See Radcliffe v. Experian Info. Solutions, Inc.,* 715 F.3d 1157, 1163 (9th Cir. 2013) ("*Radcliffe I*"). Specifically, "conditioning the incentive awards for the named plaintiffs on their support of the settlement 'changed the motivations for the class representatives.'" *Radcliffe II*, 818 F.3d at 540, *quoting Radcliffe I*, 715 F.3d at 1165. "'Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness and a promise of no reward if they opposed the settlement.' Moreover, 'as soon as the conditional-incentive awards provision divorced the interests of the class representatives from those of the absent class members, class counsel was simultaneously representing clients with conflicting interests.'" *Id.*

On remand, the non-settling plaintiffs moved to disqualify settling counsel based on that conflict. *Radcliffe II* at 541. The district court refused, agreeing with the settling counsel that "the automatic disqualification rule should not apply in class action[s]." *Id.* at 542. On another appeal by non-settling counsel, the Ninth Circuit explained the district court's reasoning as follows:

> The district court ... conclude[ed] ... there are "compelling reasons to interpret California's disqualification rule flexibly in light of California case law," for two reasons. "First and foremost, **this conflict was brief and caused by a specific provision in a now-defunct settlement**." "**[T]he class representatives did not have inherently opposing interests from absent class plaintiffs**," but rather "the conflict was manufactured by the faulty settlement terms."

*Id.* at 542-43 (emphasis added). In short, the district court held that simply

representing a class representative who supports a class settlement and another who opposes it does not, in and of itself, create a conflict.

The Ninth Circuit agreed:

> Lacking any case authority that is directly on point, White Counsel fall back on the hortatory language of automatic disqualification cases such as *Flatt* and *SpeeDee*. In essence, appellants' position is that because those decisions describe the automatic disqualification rule in *per se* terms, and make no mention of excluding class actions, the rule must therefore apply to class actions. This position is not implausible, but neither is it persuasive.

*Id.* at 544. The court held, "policy justifications that the California Supreme Court advanced for the automatic disqualification rule are not fully transferrable to class action cases," as the rule exists for circumstances where two clients are on both sides of a case, not to a "lawyer who represents a class of plaintiffs whose interests may in some ways be adverse to each other, but all of whose interests are adverse to the defendant." *Id.* "In a class action, conflicts often arise not because an attorney simultaneously represents litigation adversaries but because they simultaneously represent different members of the *same* class who develop divergent interests regarding how to prevail on their shared claims." *Id.* (emphasis in original). "[W]e are not willing to assume that California courts would apply the same disqualification rules to a class action case as they do in individual plaintiff cases." *Id.*

Thus, a disagreement among members of a class over whether to settle a case is not a ground for disqualification. By the same token, representing class members who want to settle when another represented class member does not is not a breach of fiduciary duty. To conclude otherwise would not "comport with federal law

regarding the requirements for adequate class counsel under [Fed. R. Civ. P.] 23." *Id.* at 545, *citing Rodriguez v. West Pub. Corp.,* 563 F.3d 948, 961 (9th Cir.2009) (holding "adequacy requirement for class counsel is satisfied" under Rule 23 despite "the presence of conflicted representatives"). Finally, echoing *Eubank,* the Ninth Circuit held in *Radcliffe II,* "'although automatic disqualification might promote the salutary ends of confidentiality and loyalty' in traditional cases, 'it would have a serious adverse effect on class actions.'" *Id., quoting In re "Agent Orange," supra, 800 F.2d at 18. See also Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581, 589 (3d Cir. 1999) ("In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class). If, by applying the usual rules on attorney-client relations, class counsel could easily be disqualified in these cases, not only would the objectors enjoy great 'leverage,' but many fair and reasonable settlements would be undermined[.]").

Also instructive is the Supreme Court of Florida's decision in *The Florida Bar v. Adorno,* 60 So.3d 1016 (2011). There, an attorney settled on a generous individual basis for the named plaintiffs in a putative class action, contrary to the interests of the other members of the uncertified class. The court affirmed a ruling that he had violated Rule 4.1.7, resulting in the suspension of his license to practice:

> He had the obligation to act to the benefit of the entire class and could not compromise the class action claim to the substantial detriment of the class members and to the substantial benefit of the named plaintiffs. Adorno is the person who brokered the settlement with City Manager Arriola and then abandoned the putative class members.

By focusing on the interests of the named plaintiffs during settlement discussions and abandoning the putative class in order to achieve the $7 million settlement for the named plaintiffs, Adorno violated rule 4–1.7(a)(1) (a lawyer shall not represent a client if the representation of one client will be directly adverse to another client). In addition, because Adorno negotiated the settlement in a manner that resulted in a large fee for his firm and abandoned the putative class, Adorno violated rule 4–1.7(a)(2) (a lawyer shall not represent a client if there is a substantial risk that the representation of one or more clients will be materially limited by a personal interest of the lawyer). *See Fla. Bar v. Rodriguez,* 959 So.2d 150 (Fla.2007) (holding that respondent violated rule 4–1.7(a) by entering into a secret engagement agreement with an opposing party and receiving a significant sum from the opposing party, while respondent was still representing his clients against that party).

60 So.3d at 1028-29. Thus, *Adorno* underscores that counsel's primary duty is to the entire putative class, even if no class has been certified, rather than the named plaintiffs.

## III. Disqualification is not appropriate under the "Conflict of Interest; Former Client" rule because the interests of putative class representatives are not divergent, let alone materially adverse.

Under Rule 4-1.9(a), disqualification arises only if there a new client's interests are "materially adverse" to that of a former client.  Here, there is no material adversity between the putative class representatives in the *CinQ* action and the putative class representatives in the case at bar. To begin with, all of them are "on the same side" against the same Defendant. This is not a case where the lawyer is "on both sides of the lawsuit." *In re Commissioner of Banks and Real Estate*, *supra*, 764 N.E.2d at 98. *See also Anderson Trucking Service, Inc. v. Gibson*, 884 So.2d 1046, 1051-52 (Fla. App. 2004) ("the interests of Minchew and ICE and

Anderson are consistent for the purpose of establishing that Minchew did not commit a wrongful act"). *See* Ex. 1 (Chinaris Declaration) at ¶ 22.

In any case, the paramount duty of both A+W and the Bock Law Firm, LLC was and is to the same class of fax recipients, including all the named plaintiffs. There is no material adversity, even though different named plaintiffs and other class members may have divergent views on the fairness of the settlement. *Parker*, 667 F.2d at 1211–12 ("class counsel must act in a way that best represents the interests of "the entire class and is not dependent on the special desires of the named plaintiffs"); *Pettway*, 576 F.2d at 1176; *Blanchard,* 175 F.R.D. at 307 (class counsel may have a duty to take actions "in derogation of the express desires and contrary to the best interest of the class representatives in order to protect the interests of the plaintiff class"). *See also Palmer v. Dynamic Recovery Solutions, LLC*, 2016 WL 2348704, *10 (M.D. Fla. May 4, 2016) (Byron, J.) (rejecting attempt by a putative class representative to maximize its incentive award at the expense of the class).

While at A+W, Oppenheim represented the entire putative class, including the TTA and Schwanke plaintiffs who were members of that putative class. Bock Law Firm, LLC, now known as Bock, Hatch, Lewis & Oppenheim, LLC, represents that same putative class. The fact that Cin-Q and Medical & Chiropractic have contrary views of the fairness of the negotiated settlement does not create a material adversity or raise a disqualifying conflict of interest.

**IV.    Disqualification is not appropriate under the "Former Clients of a Newly Associated Lawyer" rule because the interests of putative class representatives are not divergent and also because Attorney Oppenheim had no knowledge of any privileged material concerning the *Cin-Q* plaintiffs.**

Under Rule 4-1.10(b), Mr. Oppenheim's employment at Bock Law Firm, LLC does not disqualify the firm from representing the putative class. Under Rule 4-1.10(b), an attorney's employment at a new firm does not disqualify the new firm with respect to the new attorney's former clients unless there is both a material adversity between the new and former clients ***and*** the attorney acquired protected information about the former client. Neither of those prongs—adversity or protected information—exists here.

With respect to material adversity, for the reasons stated in section III above, Cin-Q and Medical & Chiropractic's interests as putative class representatives are no different than the interests of TTA and Schwanke. (Ex. 1 (Chinaris Declaration) at ¶¶ 22 and 23(b).

With respect to protected confidential information of Cin-Q and Medical Chiropractic, Mr. Oppenheim simply was not in possession of any such information. Mr. Oppenheim has previously testified, and will do so again, that in his limited contacts with representatives of Medical & Chiropractic, he did not acquire any information that was unique or specific to that company. Rather, any information he acquired through his involvement was generic to the entire class. Accordingly, there is no basis for disqualification. *See* Ex. 1 (Chinaris Declaration) at ¶ 23.

Indeed, Medical & Chiropractic has admitted that Mr. Oppenheim had no confidential information specific to it. At the July 18, 2016 preliminary injunction

hearing in *Medical & Chiropractic Clinic, Inc. v. Oppenheim et al.,* No. 8:16-cv-01477 (M. D. Fla.), Medical & Chiropractic's co-owner, Michelle Zakzrewski, confirmed this:

> Q.  As we sit here today, recognizing it's difficult to think back in time, can you think of anything unique and specific to Medical and Chiropractic, something different from all the rest of the class members, something different from the goal of getting a settlement for the benefit of everybody, can you think of anything specific to you or your company that you shared with Mr. Oppenheim?
>
> A.  Not offhand, no, sir.

Ex. 2, July 18, 2016 Tran., at 46. Accordingly, there is no basis for disqualification in this case under Rule 4-1.10.

**V.  The *CinQ* plaintiffs' interests in obtaining incentive awards for themselves does not create a conflict of interest, and the proposed class settlement in this case does not foreclose their ability to seek and obtain incentive awards from the Court.**

It has been suggested that a disqualifying conflict of interest exists because approval of the settlement proposed in this action would preclude the putative class representatives in the CinQ action from obtaining incentive awards to which they believe themselves entitled. This argument is misguided for two reasons.

First, the putative class representatives in the CinQ action are not, and never were, "entitled" to incentive awards. Rather, the Court has discretion to allow incentive awards for service to the class. *See Palmer v. Dynamic Recovery Solutions, LLC*, 2016 WL 2348704, *10 (M.D. Fla. May 4, 2016); NEWBERG ON CLASS ACTIONS § 17:4 ("It might be most apt to leave this section of the Treatise blank as Rule 23 does not currently make, and has never made, any reference to incentive

awards, service awards, or case contribution awards. The judiciary has created these awards out of whole cloth."). Indeed, a retainer agreement requiring counsel to seek such an award "create[s] an improper conflict … between the named plaintiffs and the class." *Radcliffe,* 818 F.3d at 545, *discussing Rodriguez v. Disner*, 563 F.3d 948, 957 (9th Cir. 2009).

Second, the putative class representatives in the CinQ action can request incentive awards from the Court in this action. Unlike in *Radcliffe I, supra*, their option is not constrained by their position on settlement approval (*see* 818 F.3d at 540, *discussing Radcliffe I*, 715 F.3d at 1163, 1165), because the settlement here does not restrict incentive awards to parties supporting the proposed settlement. *See* Doc. 18-1. Bock Law Firm, LLC will not object should they make such a request as part of the settlement of this action.

Indeed, the putative class representatives in the CinQ action may even request incentive awards after a failed objection to the settlement. Newberg identifies four categories of class members who are given incentive awards, two being "objectors" and "other class members [who] meaningfully participated in the litigation," including a class member deposed by the defendant. Newberg on Class Actions § 17:6 (5th ed.), *citing Camp v. Progressive Corp.,* 2004 WL 2149079, *7 (E.D. La. 2004), and *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, *4 (D. Colo. 2015). The putative class representatives in the CinQ action fit both categories.

"An objector is necessarily a class member and if that class member provides a service to the class, she stands in a similar position to the class representative

entitled to an award and should therefore be similarly entitled. Many courts have so held." NEWBERG, *supra*, *citing Hartless v. Clorox Co.,* 273 F.R.D. 630, 647 (S.D. Cal. 2011), *aff'd in part*, 473 Fed. Appx. 716 (9th Cir. 2012). *See also Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472, *9 (M.D. Pa. 2008) (awards to representatives who became objectors "for their work as Class Representatives from the inception of the litigation"); *Lazy Oil Co.*, *supra*, 95 F. Supp. 2d 290, 292 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (award to representative for service to class before objection, though conduct in opposing settlement did "not … benefit [] class members").

Medical & Chiropractic Clinic—one of the putative class representatives in the CinQ action—has already conceded that the proposed settlement in this action has not extinguished its opportunity to obtain an incentive award. Exhibit 2, Testimony of Michele Zakrzewski, co-owner of M&C, pp. 62-63 (Q: [Y]ou're not arguing that your likelihood of getting an incentive award at the end of the day has changed at all; right? A: Correct.) Nor could she identify any other harm she has suffered. *Id.*, pp. 61-64. Thus, there is no conflict of interest at all, let alone a disqualifying conflict of interest.[3]

---

[3] Notably, Ms. Zakrzewski testified that she would try to stop the settlement in this action even if she reviewed it and understood that it was a good result for the class. Ex. 2, July 18, 2016 Tran., at pp. 53-54 ("Q. If you reviewed that settlement agreement in detail, if you even had time to get independent counsel and your ultimate decision was, you know, this is a reasonable deal, if that were the way you felt, that on the whole the settlement in the TTA case was a reasonable settlement for the class of which you're a member, would you still be seeking to stop the attorneys in the TTA case from going forward with that settlement?  A. Yes.").

## CONCLUSION

For all these reasons, there is no conflict of interest that would require disqualification of Bock Law Firm, LLC as class counsel in this case.

Respectfully submitted,

TECHNOLOGY TRAINING ASSOCIATES,
INC. and LARRY E. SCHWANKE, D.C. d/b/a
BACK TO BASICS FAMILY CHIROPRACTIC,
individually and as the representatives of a
class of similarly-situated persons

By: /s/ Phillip A. Bock

Phillip A. Bock
Florida Bar Identification Number 0093895
Daniel J. Cohen (pro hac vice)
Jonathan B. Piper (pro hac vice)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL  60602
Telephone:  312-658-5500
Facsimile:  312-658-5555

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2016, I electronically filed the foregoing Memorandum of Law with the Clerk of the Court by using the CM/ECF system, which automatically serves a copy upon each counsel of record.

By: /s/ Phillip A. Bock
       One of its attorneys