# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHNOLOGY TRAINING ASSOCIATES,
INC., and LARRY E. SCHWANKE, D.C.
d/b/a BACK TO BASICS FAMILY
CHIROPRACTIC, individually and as the
representative of a class of similarly-
situated persons,

    Plaintiffs

Case No. 8:16-cv-01622-MSS-AEP

v.

BUCCANEERS LIMITED PARTNERSHIP,

    Defendant.
_____/

## DECLARATION OF TIMOTHY P. CHINARIS

### PROFESSIONAL BACKGROUND AND QUALIFICATIONS

1. My name is Timothy P. Chinaris.

2. I am a resident of the State of Tennessee, residing in Nolensville, Tennessee.

3. I am an attorney licensed in the State of Florida and a member in good standing of The Florida Bar.

4. My professional qualifications and experience are set forth in my curriculum vitae, which is attached hereto and incorporated herein by reference. The contents of said curriculum vitae are true and accurate.

5. I was employed by The Florida Bar in Tallahassee, Florida from August 1986 to April 1997. From 1986 to 1989, my position was Assistant Ethics Counsel. From December 1989 to April 1997, I was Ethics Director of The Florida Bar.

6. As Ethics Director, I was responsible for operation of The Florida Bar's Ethics Department. The Ethics Department employs licensed Florida attorneys whose duties include providing oral and written advisory opinions to practicing Florida Bar members on ethics-related topics. The Ethics Department annually renders thousands of ethics and advertising opinions to Florida lawyers.

7.  As Ethics Director of The Florida Bar, my responsibilities included: hiring, training, and supervising the Ethics Department's attorneys; providing oral and written advisory ethics opinions to practicing attorneys; advising The Florida Bar Board of Governors on issues of professional ethics; serving as counsel to Florida Bar committees; consulting with attorneys in The Florida Bar's Lawyer Regulation Department, Unlicensed Practice of Law Department, and Center for Professionalism regarding cases, advisory opinions, and programs; speaking to local, state, and national groups on matters of legal ethics; and writing about professional responsibility matters for various publications.

8.  During my employment with The Florida Bar, I personally rendered thousands of advisory ethics opinions to practicing Florida attorneys on a wide variety of matters concerning legal ethics and professional responsibility.

9.  From April 1997 to September 2000, I was employed by Florida Coastal School of Law in Jacksonville, Florida as Associate Professor of Law and Associate Dean for Information Resources and Technology. My duties included teaching courses in legal ethics.

10. From September 2000 to June 2005 I was employed by Appalachian School of Law in Grundy, Virginia as Associate Professor of Law and Assistant Dean of Information Resources. My duties included teaching courses in legal ethics.

11. From June 2005 through March 2014 I was employed by Faulkner University's Jones School of Law in Montgomery, Alabama, as Professor of Law. My duties included teaching courses in legal ethics, as well as holding administrative positions (Associate Dean for Academic Affairs from 2011 to 2014; Associate Dean for Information Resources from 2005 to 2012).

12. Since April 2014 I have been employed by Belmont University College of Law in Nashville, Tennessee, as Professor of Law and Associate Dean for Academic Affairs. My duties include teaching courses in legal ethics, as well as administering the law school's academic program.

13. While employed as Florida Bar Ethics Director or since leaving the Bar's employ, I have: advised lawyers on issues relating to various aspects of legal ethics, including conflicts of interest; advised lawyers and others on unlicensed practice of law issues; advised lawyers on legal malpractice issues; represented lawyers in various professional responsibility matters, including Florida Bar disciplinary cases; and consulted and testified as an expert on various legal ethics and professional responsibility issues, including in Florida Bar disciplinary cases.

14. I served as a member of the Professional Ethics Committee of The Florida Bar from 1997 to 2003 and from 2006 to 2012, and chaired the Professional Ethics Committee from 2002 to 2003. I currently chair The Florida Bar's Committee on Professionalism. I serve on the Bar's Vision 2016 Commission. I am a member of The Florida Bar Out of State Division Executive Council. I served as Vice-chair of The Florida Bar Standing Committee on the Unlicensed Practice of Law, as a member of The Florida Bar Special Committee to Review the ABA Model Rules 2002, and as a member of The Florida Bar Attorney-Client Privilege Task Force. I am or have been a member of state bar unauthorized practice of law committees in Alabama and Virginia.

15. I regularly write and speak on legal ethics topics. I developed and maintain the legal ethics website "sunEthics.com" (http://www.sunethics.com). I co-author the treatise *Florida Legal Malpractice and Attorney Ethics*.

16. I have consulted and testified in state and federal court matters, arbitration proceedings, and Florida Bar disciplinary matters as an expert witness on a variety of professional responsibility issues, including conflicts of interest, disqualification, attorney's fees, legal malpractice, confidentiality, and unauthorized practice of law.

17. I consult with and represent practicing attorneys and others regarding issues of professional responsibility and legal ethics.

## MATERIALS REVIEWED

18. In connection with this matter, I have reviewed documents provided to me by counsel representing David Oppenheim and Bock Law Firm, LLC ("Bock Law Firm"), including but not limited to: Verified Complaint; Plaintiff's Amended Motion for Entry of Temporary Restraining Order and Preliminary Injunction and Supporting Memorandum of Law; First Supplement to Amended Motion for Temporary Restraining Order and Preliminary Injunctive Relief; Plaintiff's Second Supplement to Amended Motion for Temporary Restraining Order and Preliminary Injunction; Defendants' Joint Motion to Dismiss Pursuant to Rule 12(b)(6) and the First Filed Action Doctrine or, in the Alternative, to Stay; Defendants' Corrected Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction; Class Action Complaint (filed on behalf of Technology Training Associates, Inc., et al.); Transcript of Hearing in Federal District Court on June 27, 2016; and Motion to Transfer Related Case Under Local Rule 1.04(b), to Consolidate Cases and Appoint Interim Class Counsel. Additionally, I have reviewed relevant Rules of Professional Conduct, statutes, case law, and ethics opinions.

## OPERATIVE FACTS

19. My understanding of the facts in this matter include the following. Prior to the filing of the class action by his former firm, Mr. Oppenheim had not represented Medical & Chiropractic Clinic, Inc. ("Medical") nor had he met or communicated with Medical's principal, Ms. Zakrewski. Mr. Oppenheim represented Medical as representative of the putative class at two mediation proceedings in Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership, No. 8:13-cv-01592-AEP (M.D. Fla.). Mr. Oppenheim spoke with Ms. Zakrewski on two occasions and always in the presence of others (Ryan Kelly and Ross Good). Mr. Oppenheim learned no privileged or confidential information regarding Medical or Ms. Zakreski. He had no access to such information. Mr. Oppenheim knew of no legal position that Medical had that was different or separate from that of the putative class.

## MY OPINIONS IN THIS MATTER

20. It is my opinion that, as explained more fully below, neither Mr. Oppenheim nor Bock Law

Firm are ethically precluded from representing class members in the Technology Training case or related cases.

21. Under the facts of this matter, it is my opinion that Mr. Oppenheim represented Medical in its capacity as a putative class representative.

    a. The Preamble to the Florida Rules of Professional Conduct states: "[F]or purposes of determining the lawyer's authority and responsibility, *principles of substantive law external to these rules determine whether a client-lawyer relationship exists.*" (Emphasis added.) Accordingly, in determining the existence and scope of an attorney-client relationship in class actions, it is necessary to look at sources such as case law and rules of procedure.

    b. Attorney-client relationships in class actions differ from typical attorney-client relationships. As a result, and as detailed below, ethical principles often apply differently in the class action setting.

    c. Federal Rule of Civil Procedure 23(a) provides that, if certain criteria are met, "[o]ne or more members of a class may sue or be sued *as representative parties on behalf of all members.*" (Emphasis added.)

    d. A named plaintiff in a putative class action is a representative of the putative class, and Mr. Oppenheim's representation of Medical was in such a representative capacity. This principle is similar to that expressed in Florida Rule of Professional Conduct 4-1.13(a), which provides that a lawyer who represents an organization represents the organization as an entity, even though the organization necessarily must act through its individual constituents (such as officers and employees). This principle applies to the representation of unincorporated associations. Comment, Rule 4-4.2. *See also Jesse v. Danforth*, 485 N.W.2d 3 (Wis. 1992); Arizona Ethics Op. 02-06 (lawyer may form business entity for various individuals and be counsel only for the yet-to-be formed entity).

    e. Examples of how ethics rules are applied differently in class actions include:

        i. When members of the class have differing goals or interests, the lawyer does not face a disqualifying conflict but must proceed in the best interests of the class. *See, e.g., Florida Bar v. Adorno*, 60 So. 3d 1016 (Fla. 2011). In contrast, in a non-class representation the lawyer would be required to withdraw.

        ii. The lawyer may conclude a settlement agreement that is in the best interests of the class, even over the objections of named class members. *See, e.g., Kincide v. General Tire and Rubber Co.*, 635 F.2d 501 (5th Cir. 1981). In contrast, in a non-class representation this would not be permissible.

        iii. The lawyer may undertake an unrelated concurrent representation that is adverse to a class member (other than a named plaintiff), without that class

member's consent. That class member is not considered a client for purposes of the conflict of interest rules. New York City Bar Ass'n Op. 2004-01. In contrast, in a non-class representation that would not be permissible.

      iv.     An opposing lawyer may contact members of a putative class without putative class counsel's permission. *See, e.g., Winfield v. St. Joe Paper Co.*, 1977 WL 15325 (N.D. Fla. 1977); ABA Formal Op. 07-445; *Restatement of the Law Governing Lawyers* §99, cmt. *l*. In contrast, in a non-class representation this would not be permissible.

22.    Under the facts of this matter, it is my opinion that Rule 4-1.9 does not preclude Mr. Oppenheim or Bock Law Firm from representing class members in the Technology Training case or related cases.

    a.    Rule 4-1.9(a) provides:

        A lawyer who has formerly represented a client in a matter must not afterwards: (a) represent another person in the same or a substantially related matter *in which that person's interests are materially adverse to the interests of the former client* unless the former client gives informed consent[.] (Emphasis added.).

    b.    The interests of Medical and the named plaintiffs in the Technology Training case are not materially adverse and thus there is no violation of the former client conflict rule, Rule 4-1.9.

    c.    Medical, the named plaintiffs in the Technology Training case, and the other members of the class do not have adverse interests. All are members of the same class and, as a result, have consistent interests in a fair and reasonable settlement of their claims.

    d.    Medical does not have a right to be a named plaintiff. The court decides who is to be a named plaintiff. Accordingly, the fact that Mr. Oppenheim and Bock Law Firm may seek to have others made named plaintiffs for the same class, in the best interests of the class, demonstrates no material adversity to any recognized interest of Medical. The fact that others may be approved as named plaintiffs would not preclude Medical from seeking an incentive award for the role it has played in the class action.

23.    Under the facts of this matter, it is my opinion that Rule 4-1.10(b) does not preclude Mr. Oppenheim or Bock Law Firm from representing class members in the Technology Training case or related cases.

    a.    Rule 4-1.10(b) provides:

        (b) Former Clients of Newly Associated Lawyer. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was

associated, had previously represented a client whose interests are materially adverse to that person *and* about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter. (Emphasis added.)

b. As explained in paragraph 22., the interests of Medical and the named plaintiffs in the Technology Training case are not materially adverse.

c. The Comment to Rule 4-1.10(b) explains: "Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has *actual knowledge of relevant information protected by* rules 4-1.6 and 4-1.9(b) and (c)." (Emphasis added.).

d. When lawyers move between law firms, allegations of conflict are analyzed under Rule 4-1.10(b). *See, e.g., Solomon v. Dickison*, 916 So. 2d 943 (Fla. 1st DCA 2005); *Scott v. Higginbotham*, 834 So. 2d 221 (Fla. 2d DCA 2002); *Gaton v. Health Coalition, Inc.*, 745 So. 2d 510 (Fla. 3d DCA 1999). The irrefutable presumption that the moving lawyer obtained confidences regarding his former firm's client does not apply. *Gaton v. Health Coalition, Inc.*, 745 So. 2d 510 (Fla. 3d DCA 1999).

e. Mr. Oppenheim states clearly in his Declaration filed in this matter that he has no actual knowledge of material, confidential information regarding Medical.

f. Under RPC 4-1.10(b), there is no basis for precluding Mr. Oppenheim or Bock Law Firm from representing class members in the Technology Training case or related cases.

24. Finally, any confidentiality obligation that Mr. Oppenheim may have with respect to representation of the class, including any representation of Medical in a representative capacity, is owed *to the class* rather than to individual class members. This principle is similar to the way the duty of confidentiality applies when a lawyer represents an organization. The ethical duty of confidentiality runs to the organization, rather to an individual constituent. *See* Rule 4-1.13(b) (prescribing duty of organization's lawyer to share information within organization to advance best interest of organization); *Kaplan v. Cowan Liebowitz & Latman, P.C.*, 832 So. 2d 138, 140, n.2 (Fla. 3d DCA 2002), decision approved on other grounds by *Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So. 2d 755 (Fla. 2005) (citing to Comment, Rule 4-1.13). *See also Restatement of the Law Governing Lawyers* §73, cmt. j.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 18, 2016.

_____
TIMOTHY P. CHINARIS