# EXHIBIT 2

1               UNITED STATES OF AMERICA
               UNITED STATES DISTRICT COURT
2             MIDDLE DISTRICT OF FLORIDA

3                -   -   -

4       HONORABLE CHARLENE EDWARDS HONEYWELL
       UNITED STATES DISTRICT JUDGE PRESIDING
5

6

7  MEDICAL & CHIROPRACTIC CLINIC, INC, )
                            )
8              PLAINTIFF,    )
                            )
9            VS.         )8:16-cv-1477-CEH
                            )
10  DAVID M. OPPENHEIM, an individual  )
    and BOCK LAW FIRM, LLC d/b/a BOCK,  )
11  HATCH, LEWIS & OPPENHEIM, LLC.    )
                            )
12            DEFENDANTS.     )

13

14

15                **EVIDENTIARY HEARING**
          REPORTER'S TRANSCRIPT OF PROCEEDINGS
16               **JULY 18, 2016**
                TAMPA, FLORIDA
17

18

19

20

21

22  SHARON A. HELBIG, CSR, RPR, CRR,FCRR
    IL CSR 084-2617
23  FEDERAL OFFICIAL COURT REPORTER
    801 N. FLORIDA AVENUE, SUITE 13A
24  TAMPA, FLORIDA 33602

25

```
 1      APPEARANCES OF COUNSEL:

 2      ON BEHALF OF PLAINTIFF:

 3              FOLEY & LARDNER, LLP
                MR. JEFFREY A. SOBLE
 4              MS. LAUREN MICHELLE LOEW
                MR. CHRISTOPHER LEE GRIFFIN
 5              100 N. TAMPA STREET
                SUITE 2700
 6              TAMPA, FL  33602
                (813)229-2300
 7              jsoble@foley.com
                lloew@foley.com
 8              cgriffin@foley.com

 9      ON BEHALF OF DEFENDANT DAVID OPPENEHIM

10              BLONIEN LEGAL COUNSEL
                MR. BARRY BLONIEN
11              1718 ADAMS STREET
                MADISON, WI  53711
12              (608 ) 620-357
                barry&blonienlegal.com
13

14

15      ON BEHALF OF THE DEFENDANT BOCK LAW FIRM

16              BOCK LAW FIRM, LLC
                MR. JONATHAN PIPER
17              MR. DANIEL COHEN
                134 N. LaSALLE STREET, SUITE 1000
18              CHICAGO, IL  60602
                (312)658-5000
19              jon@classlawyers.com
                danieljaycohen209@gmail.com
20

21              THE POLOSZEK LAW FIRM, PLLC
                MR. CHRISTOPHER STEPHEN POLASZEK
22              3407 W. KENNEDY BLVD
                TAMPA, FL  33609
23              (813)574-7678
                chris@polaszeklaw.com
24

25
```

UNITED STATES DISTRICT COURT                    2

```
 1                I  N  D  E  X

 2

 3              PLAINTIFF WITNESSES                 PAGES

 4                MICHELLE ZAKZREWSKI

 5    Direct examination by Mr. Soble              19
      Cross examination by Mr. Cohen               34
 6    Cross examination by Mr. Blonien             54
      Redirect examination by Mr. Soble            64
 7

 8                MICHAEL C. ADDISON

 9    Direct examination by Ms. Loew               68
      Cross examination by Mr. Cohen               91
10    Cross Examination by Mr. Blonien            117

11               DEFENSE WITNESSES

12                DAVID MAX OPPENHEIM

13    Direct examination by Mr. Blonien           145
      Cross examination by Mr. Cohen              151
14    Cross examination by Mr. Soble              153
      Redirect examination by Mr. Blonien         169
15

16                MR. PHILLIP A. BOCK

17    Direct examination by Mr. Cohen             171
      Cross examination by Mr. Blonien            179
18    Cross examination by Ms. Loew               180
      Redirect examination by Mr. Cohen           197
19

20    PLAINTIFF EXHIBITS

21    Exhibits 1, 2, 4, 7, 8, 9, 10, 11             8
      Exhibit No. 3                                 9
22    Exhibit No. 12                               11
      Exhibit No. 5                                82
23    Exhibit No. 6                                84

24    DEFENDANT'S EXHIBITS

25    Bock Exhibit No. 1                           48
```

1            THE COURT:  Good afternoon.

2            MR. GRIFFIN:  Good afternoon, your Honor.

3            THE COURT:  We are in the matter of

4    Medical and Chiropractic Clinic versus Oppenheim,

5    case 8:16-cv-1477.  Counsel, please identify

6    yourselves for the record.

7            MR. GRIFFIN:  Chris Griffin from the law

8    firm of Foley and Lardner.  With me are my law firm

9    colleagues, Jeff Soble and Lauren Loew admitted pro

10   hac vice and with us at Counsel table is the

11   president and co-owner of our client Medical and

12   Chiropractic Clinic, Inc., Michelle Zakrzewski.

13           THE COURT:  All right.  Thank you.

14           MR. COHEN:  Dan Cohen with the law firm of

15   Bock Law Firm, LLC.  We represent the Defendant Bock

16   Law Firm, LLC.  I'm joined by co-Counsel Jonathan

17   Piper of the same law firm.  Both of us have pro hac

18   status.  Representing Bock Law Firm, LLC is Phillip

19   A. Bock.  We also have David Oppenheim who's a

20   member of the law firm.  He's also a Defendant.  He

21   has his independent Counsel here with him today.

22           MR. POLASZEK:  Your Honor, Chris Polaszek

23   with Polaszek Law Firm, here for the Bock Law Firm

24   as well.

25           MR. BLONIEN:  Barry Blonien with Blonien

1    Legal Counsel on behalf of David Oppenheim.   I

2    submitted with this court without objection.

3              THE COURT:  Okay.  So there's been no

4    order entered on that?

5              MR. BLONIEN:  There has not been.

6              THE COURT:  A magistrate judge handles

7    that, so it's not something that I would think of at

8    this point.  If there's no opposition I suspect as

9    long as you've met the requirements of the Middle

10   District it will be granted at some point, hopefully

11   sooner rather than later.

12             MR. BLONIEN:  Your Honor, may I have the

13   Court's leave to represent Mr. Oppenheim this

14   afternoon for this case hearing?

15             THE COURT:  I'm not -- not if you've

16   haven't been admitted yet you can't, so we'll see.

17   Let me pull it up and take a look at it.  Yes.  You

18   all may be seated.  Has the special admission of

19   certification form been submitted?

20             MR. BLONIEN:  Yes, your Honor.

21             THE COURT:  And what about the fee?  Has

22   that been paid?

23             MR. BLONIEN:  I'm not sure, your Honor,

24   but I can make sure that it's done as promptly as

25   possible after this hearing.

 1          MR. OPPENHEIM:  I think the fee has been

 2     paid.

 3          THE COURT:  All right.  Based upon the

 4     representation that you have complied with all of

 5     the requirements of the local rules for the Middle

 6     District of Florida, I will go ahead and grant your

 7     motion to appear pro hac vice with regard to your

 8     representation of Mr. Oppenheim in this proceeding.

 9          MR. BLONIEN:  Thank you, your Honor.

10          THE COURT:  All right.  We are here on the

11     Plaintiff's motion for preliminary injunction.

12     Mr. Griffin, it's your motion.  You may proceed.

13     I'll say I scheduled this for an evidentiary

14     hearing.  Although our local rules typically provide

15     for oral argument, upon review of the affidavits

16     submitted in support of the motion, in opposition of

17     the motion, there appear to be conflicting

18     information and the only way we resolve conflicts in

19     the evidence is by an evidentiary proceeding.  So

20     that's why it was noticed in as an evidentiary

21     proceeding.  Mr. Griffin, you may proceed.

22          MR. GRIFFIN:  Mr. Soble and Miss Loew will

23     take matters from here if the Court, please.

24          MR. SOBLE:  Jeff Soble from Foley Lardner.

25     Thank you for the admission of court.  We appreciate

1    the opportunity to represent our client here.  We'd

2    like to start by providing an exhibit list for the

3    Court.  I have three copies for the Court.

4              THE COURT:  You can come to the lecturn.

5              MR. SOBLE:  Your Honor, as I was saying I

6    have three copies of our exhibit list for the Court

7    and a copy for Counsel, if I could provide them to

8    the Court.

9              THE COURT:  Yes.

10             MR. SOBLE:  Your Honor, for convenience

11   sake we'd like to move some of these exhibits into

12   evidence now.  I think that they will mostly not be

13   in dispute and I can take them one by one.  The vast

14   majority of them are pleadings and existing cases

15   which the Court can take judicial notice of.

16             THE COURT:  Okay.

17             MR. SOBLE:  That applies to Exhibit 1,

18   Exhibit 2, Exhibit 4, Exhibit 7, Exhibit 8, Exhibit

19   9, Exhibit 10 and Exhibit 11.  Those are all

20   existing pleadings entered in this case or the

21   underlying class actions and we would submit them

22   pursuant and ask the Court to take judicial notice

23   of them pursuant to Rule 10B.

24             THE COURT:  As to 1, 2, 4, 7, 8, 9, 10 and

25   11 coming into evidence at this time?

1          MR. COHEN:  Your Honor, if I may just --

2          MR. BLONIEN:  All of these are pleadings

3     or filings and other dockets in this case.

4          THE COURT:  That's right.

5          MR. BLONIEN:  No objection.

6          THE COURT:  Not in this case but in the

7     other pending case.

8          MR. SOBLE:  In the underlying cases.

9          MR. BLONIEN:  Thank you.  No objection.

10         MR. COHEN:  No objection on behalf of Bock

11    Law Firm, LLC, your Honor.

12                        (Plaintiff's Exhibit Nos. 1, 2,

13                        4, 7, 8, 9, 10 and 11 were

14                        offered and received in

15                        evidence.)

16         MR. SOBLE:  We'd move to Exhibit 3 which

17    is a letter dated May 5th, 2016 from the law firm of

18    Bock, Hatch, Lewis and Oppenheim, LLC, to my client

19    Medical and Chiropractic which is not being used for

20    the truth of the matter asserted but is also a party

21    pointed admission and admissible 801(c)(2) and

22    801(d)(2)(A).

23         THE COURT:  Is there any objection to

24    Exhibit 3?

25         MR. COHEN:  No objection.  I'm not certain

1    that stating it's not been admitted for the truth of

2    the matter asserted but it's been admitted as an

3    admission of a party is a little inconsistent but no

4    objection.

5        MR. SOBLE:  Simply noting it's admissible

6    under both rules, your Honor.

7        MR. BLONIEN:  Assuming it is what it

8    purports to be, your Honor, I have no objection.  We

9    haven't seen a copy of the letter itself.

10       THE COURT:  All right.  Counsel, do you

11   have a copy of the exhibit for opposing counsel?

12       MR. SOBLE:  We do.  Your Honor, next we

13   would move --

14       THE COURT:  Exhibit 3 is admitted.  You

15   may continue.

16                    (Plaintiff's Exhibit No. 3 was

17                    offered and received in

18                    evidence.)

19       MR. SOBLE:  Exhibit 12 is a copy of our

20   verified complaint.  At this stage of preliminary

21   injunction we think this is admissible in support of

22   our preliminary injunction though we also do plan to

23   call two live witnesses.  For the support I would

24   cite the Court to GMC versus Fat Cat Cards, Inc.,

25   504 F.2d 1278 for the Middle District of Florida

1      where under a preliminary injunction hearing the

2      Court held an evidentiary hearing and admitted the

3      verified complaint into evidence.  Also -- and I'm

4      going to spell this because I can't pronounce it.

5      D-I-C-T-I-O-M-A-T-C, Ink, versus United States

6      Fidelity and Guaranty company, 14 Florida Law weekly

7      F.d 159 which is Southern District of Florida from

8      2000 also involving a verified complaint admitted

9      into evidence at the preliminary injunction hearing

10     and an evidentiary hearing.

11          THE COURT:  Is there any objection?

12          MR. COHEN:  Judge, we don't object to the

13     extent that the complaint contains verified

14     allegations in fact.  There are going to be legal

15     propositions and legal allegations in there.  Rather

16     than going through it line by line we would simply

17     like to reserve objections as to legal conclusions

18     but not as to factual content.

19          MR. SOBLE:  That's fine, your Honor.

20          MR. BLONIEN:  No objection, your Honor.

21          THE COURT:  All right.  With regard to

22     Exhibit 12, Exhibit 12 is admitted to the extent it

23     is verified as to and contains factual allegations

24     but not necessarily with regard to the legal

25     conclusions stated therein.

```
 1                        (Plaintiff's Exhibit No. 12 was
 2                        offered and received in
 3                        evidence.)
 4              MR. SOBLE:  Okay.  Your Honor, we have two
 5    more exhibits but we'll handle them during the
 6    evidence as opposed to at this time, so that covers
 7    our exhibits.
 8              THE COURT:  Thank you.  Do you wish to
 9    make a brief opening or proceed to evidentiary
10    testimony?
11              MR. SOBLE:  Your Honor, before I do that
12    I'd like to excuse witnesses who have not testified
13    with the exception, of course, of a party or a party
14    representative.
15              THE COURT:  Okay.  Any objection?  The
16    rule of sequestration has been invoked.
17              MR. COHEN:  I would advise the Court we
18    have obviously Mr. Bock who's a party and
19    representative of the party and the same holds true
20    for Mr. Oppenheim.  We have an ethics expert whom we
21    have asked for review in this case.  At times other
22    than the sequestration rule, Courts allow experts to
23    sit in because it would form further part of the
24    factual predicate upon which they would offer
25    opinions.  We would ask the Court to consider that
```

1    exception for Timothy Chinaris, our proposed expert,

2    but otherwise I don't believe we have anyone else in

3    the courtroom who will be subject to sequestration.

4            THE COURT:  Do you expect the expert will

5    be testifying in this proceeding?

6            MR. COHEN:  We will be proffering him for

7    the Court's consideration.

8            THE COURT:  Okay.  All right.  Is there

9    any objection to the request of the expert remaining

10   in the courtroom?

11           MR. SOBLE:  There is, your Honor.  We will

12   be objecting to the expert testifying today.

13           THE COURT:  Then he can remain in the

14   courtroom because we do frequently allow experts to

15   remain in the courtroom to determine facts that may

16   serve as the bases for their opinion or provide

17   support for any opinions that they intend to offer.

18           If there are any other witnesses present

19   who will be testifying in this proceeding,

20   Mr. Addison is here and the Court is going to ask

21   that you step outside until you are called upon to

22   testify.  I also make you aware of the fact that you

23   are not to discuss your testimony with any other

24   witnesses in this proceeding.

25           MR. ADDISON:  Thank you.

1          THE COURT:  Thank you.

2          MR. SOBLE:  Your Honor, if I may ask just

3    one point of clarification.

4          THE COURT:  Yes.

5          MR. SOBLE:  I understood from Counsel's

6    statement, and I certainly don't mean to misstate it

7    if I get it wrong, that the only witnesses who may

8    testify are Mr. Oppenheim and Mr. Bock, and

9    certainly we don't object to them staying.  They are

10   a party representative and a party.  There are not

11   any other expert witnesses who are testifying in the

12   courtroom.

13         THE COURT:  You may call the -- may

14   proffer the expert.

15         MR. SOBLE:  I just wanted to make sure

16   there weren't any other fact witnesses.

17         MR. COHEN:  We have no other fact

18   witnesses that I'm aware of in the courtroom.

19         MR. SOBLE:  Before I call my first fact

20   witness, I'd like to make a very brief opening

21   statement.

22         THE COURT:  Thank you.

23         MR. SOBLE:  Your Honor, there's a couple

24   of seminal issues here for the Court to decide, and

25   the first one is choice of law.  From our

1    perspective, Florida law obviously applies.  We're

2    talking about a Florida Plaintiff.  We're talking

3    Florida litigation.  We're talking about events

4    taking place in Florida and a Florida Defendant, and

5    that goes for all of the underlying class actions.

6    Everything about them is Florida except that Bock

7    Law Firm has its main office in Illinois.  Although

8    even when you look at the law firm that Mr. Bock and

9    Mr. Oppenheim are part of, Mr. Bock is himself a

10   Florida lawyer and he maintains a Florida residence

11   and there is a Florida P.O. box for firm business.

12           THE COURT:  Is there a dispute about what

13   the Florida law applies?

14           MR. SOBLE:  In the briefing from the

15   Defendants they have posted that Illinois law

16   applies.

17           THE COURT:  Okay.  I missed that.  I

18   didn't see that.  Is that in a response for the

19   motion for preliminary injunction?

20           MR. SOBLE:  Or the motion to dismiss.

21           THE COURT:  It must have been the motion

22   to dismiss because I didn't see that and I have

23   reviewed the response to the motion for preliminary

24   injunction, so at this point, you're not here on a

25   motion to dismiss today, so you may proceed.

1          MR. SOBLE:  Thank you, your Honor.

2     Applying the facts of this case, it could not be

3     more obvious that Mr. Oppenheim had an

4     attorney-client relationship with my client Medical

5     and Chiropractic.  Mr. Oppenheim represented my

6     client at two different mediations, one of which

7     took place in the State of Florida.

8          Mr. Oppenheim has taken the position that

9     he had no confidential or other information for

10    those mediations which I find to be incredible.  I

11    cannot imagine taking a position where I tell my

12    client that I represented them in a mediation in

13    front of two different mediators and I didn't know

14    anything strategic and I didn't know anything about

15    the case and I didn't know anything that the

16    Plaintiff would want to do.

17         Keep in mind that this class action, the

18    underlying class action we're talking about, Medical

19    and Chiropractic, is individually a Plaintiff in the

20    case and is a class representative, so the idea that

21    a lawyer could come to Florida, appear in mediation,

22    prepare for that mediation with their client and

23    co-Counsel and have no information that would be

24    strategic or otherwise, that there's essentially no

25    attorney-client communications that took place as

1    they prepared for that or during the mediation is

2    quite frankly incredible.

3         Moreover, we have the issue of material

4    adversity in this case.  Again, it's the position of

5    the Defendants that there is no material adversity

6    in the underlying class actions.  And, again, I

7    think that the facts show how incredible that is.

8    And you'll hear about it directly from Medical and

9    Chiropractic, but essentially right now we have two

10   underlying class actions where the parties are at

11   war with each other where they're fighting over a

12   proposed settlement, where they're fighting over who

13   the class representative is going to be, where

14   they're fighting over who Counsel is going to be.

15   There are motions to enjoin.  There are motions to

16   dismiss.  There's a motion to intervene.  Two

17   different cases where the named class reps could not

18   be more adverse to each other, where they are

19   plainly fighting against each other over every

20   aspect of the class action.

21        Lastly, as part of my brief opening

22   remarks, I wish to emphasize that our case is not

23   about who gets the lead in that class action.  Our

24   case is about ethical fiduciary breaches under

25   Florida law.

1              If we're successful today, if the Court

2    grants our request for preliminary injunction, all

3    we're asking is that the law firm that is

4    Mr. Oppenheim and the Bock Oppenheim Law Firm cannot

5    represent a competing class representative in the

6    underlying class actions.

7              We're not asking the Court to enjoin the

8    Technology Training Associates case.  As a matter of

9    fact, if we could be successful today, tomorrow

10   Technology Training Associates could file a motion

11   for substitution of counsel and everything in that

12   case would go forward as is.

13             This case is about a lawyer representing a

14   client actively, leaving that client to join another

15   law firm and the new law firm decided to file a

16   competing materially adverse case against that new

17   law firm person's former client.  That's what at

18   issue here.  It doesn't have to do with whether

19   someone was walled off or screened off, because

20   under Florida law that doesn't matter.  There is no

21   consent with respect to the conflict of interest,

22   and in light of the clear conflict of interest, our

23   preliminary injunction to enjoin that activity from

24   going forward should be granted.

25             It's Rule 4 -- excuse me, 4-1.16(a) that

1    says a lawyer shall not represent a client when that

2    representation will result in a violation of the

3    Florida Rules of Professional Conduct.  The

4    representation of Technology Training Associates

5    results in precisely that in the conflict of

6    interest.

7            THE COURT:  You may call your first

8    witness.

9            MR. SOBLE:  We call Michelle Zakrzewski,

10   please.

11           THE COURT:  You may proceed.

12               (Witness sworn.)

13           COURTROOM DEPUTY CLERK:  Please state your

14   name and spell your last name for the record.

15           THE WITNESS:  Michelle Zakrzewski,

16   Z-A-K-R-Z-E-W-S-K-I.

17           COURTROOM DEPUTY CLERK:  Thank you.  You

18   may be seated.

19           THE COURT:  You may inquire.

20           MR. SOBLE:  Thank you, your Honor.

21

22

23

24

25

1             MICHELLE ZAKZREWSKI,

2    called as a witness on behalf of the Plaintiff, having

3    been first duly sworn under oath, was examined and

4    testified as follows:

5                 DIRECT EXAMINATION

6    BY MR. SOBLE:

7         Q    Miss Zakrzewski, could you tell the Court

8    who it is that you work for?

9         A    Yes.  I am the president and co-owner of

10   Medical and Chiropractic Clinic.

11            THE COURT:  Excuse me.  Miss Zakrzewski,

12   it's important that the Court hear your testimony,

13   so I'm going to ask you to get a little bit closer

14   to the microphone.  Can you move it and direct it a

15   little bit closer to your mouth so we can hear you?

16            THE WITNESS:  Is that better?

17            THE COURT:  That's much better.

18   BY MR. SOBLE:

19        Q    With whom do you co-own the business?

20        A    My husband Doctor Gregory Williams.

21        Q    And where is Medical and Chiropractic

22   located?

23        A    It's at 4602 North Nebraska Avenue, Tampa,

24   Florida, 33603.

25        Q    That's here in Hillsborough County?

1        A     Yes, sir.

2        Q     Do you have any other offices?

3        A     Yes, sir, we have a second location in

4   Zephyr Hills.

5        Q     You mention you're the president.  What

6   are your responsibilities?

7        A     Everything it takes to run a small

8   business, from answering phones, running the front

9   desk, scheduling patients, filing insurance claim

10   bills.

11        Q     You make sure the trains run on time at

12   the company essentially?

13        A     I try to.

14        Q     What kind of company is Medical and

15   Chiropractic?

16        A     It's a chiropractic physicians office.

17        Q     And you personally, where do you live?

18        A     I live at 1213 East Gideons Avenue, Tampa,

19   Florida, 33603.

20        Q     Now, I'd like to talk to you a little bit

21   about the underlying class actions against the

22   Buccaneers.  Okay?

23        A     Yes, sir.

24        Q     Can you tell me when it was that your

25   company Medical and Chiropractic first got involved

                UNITED STATES DISTRICT COURT            20

1    in any way with faxes and the Buccaneers?

2            A    Legally in 2013.

3            Q    What do you mean by legally in 2013?

4            A    I became the class representative in 2013.

5            Q    Now, when you say I, who are you referring

6    to?

7            A    Medical and Chiropractic Clinic.

8            Q    What preceded becoming the named

9    Plaintiff?  What was done before that?  How did you

10   first become aware of these issues?

11           A    I was involved with my husband at a

12   Hillsborough County Chiropractic Society and an

13   attorney colleague of his was there and he mentioned

14   that if we get any unsolicited faxes we needed to

15   save them, and he knew an attorney firm that handled

16   those litigations.

17           Q    And when was this, what year?

18           A    This is back in 2009.

19           Q    Did you eventually get involved with the

20   law firm?

21           A    Yes, sir.

22           Q    What law firm?

23           A    Anderson and Wanca.

24           Q    Were they your Counsel when the complaint

25   was filed in -- when you were added to the complaint

1     in 2013?

2          A    Yes, sir.

3          Q    Can you tell me just generally speaking

4     what sort of things were done related to the case

5     between 2009 and 2013 that you recall?

6          A    I believe there was a lot of discovery as

7     to a client list of all the people that received the

8     faxes, and I believe there was an issue in the State

9     of Florida that was the first part of the class

10    action.

11         Q    After the action was filed, did you

12    understand that Medical and Chiropractic was a named

13    class representative?

14         A    Yes.

15         Q    What did you understand that to mean?

16         A    I would be -- the Medical and Chiropractic

17    Clinic would be handling questions, whatever needed

18    to arise for the whole class of people that had

19    received an illegal fax.

20         Q    A couple of times you've slipped and you

21    said I.  Who at Medical and Chiropractic had the

22    principal responsibility to be involved with this

23    litigation?

24         A    Me, Michelle, me, Zakrzewski.

25         Q    As a class rep, after the case was filed,

UNITED STATES DISTRICT COURT                    22

1     what sort of things were you personally involved

2     with on Medical and Chiropractics' behalf as a class

3     representative?

4          A     I reviewed papers that had to be filed

5     with the Court.  I had to produce documentation that

6     I owned the fax number that I received the faxes at.

7     I participated at depositions.  I participated in

8     mediations.  My husband had been depositioned,

9     reviewed paperwork for filings, gone over paperwork

10    that hadn't been signed, produced phone bills.

11         Q     And this was all done with your Counsel?

12         A     Yes, sir.

13         Q     The firm of Anderson and Wanca?

14         A     Yes, sir.

15         Q     You mentioned being deposed.  How long

16    were you deposed for?

17         A     I was deposed for eight hours.

18         Q     And was anyone else at Medical and

19    Chiropractic deposed?

20         A     Yes, sir, my husband.

21         Q     And do you know how long he was deposed

22    for?

23         A     I would say it was close to five hours.

24         Q     Are you aware of what incentive award is

25    in a class action?

1        A    Yes, sir.

2        Q    Can you tell me what you understand it to

3   be?

4        A    It's a fee that could be awarded either

5   through negotiations for a settlement or it could be

6   awarded by the judge.

7        Q    Now, you've talked about a variety of

8   things that you and the company were involved in as

9   a class rep.  At any point did you become aware of

10  any potential burdens of being the class rep?

11       A    Yes, sir, in my deposition.

12       Q    How did you become aware of them in your

13  deposition?

14       A    Mr. Barry Postman who was the opposing

15  Counsel for the Buccaneers, he brought it to my

16  attention in my deposition.

17       Q    And what sort of things through that did

18  you learn that could be burdens on Medical and

19  Chiropractic?

20       A    I could be responsible for deposition

21  fees, mediation fees, court filing fees, expert

22  witness fees and legal fees.

23       Q    You mentioned being involved in a couple

24  mediations.  I'd like to talk to you about that now.

25  Okay, ma'am?

1      A    Yes.

2      Q    Can you tell me when the first mediation

3   occurred that you were involved with?

4      A    Yes, February of 2015.

5      Q    Where did it take place?

6      A    In Miami.

7      Q    Who represented Medical and Chiropractic

8   at that mediation?

9      A    Anderson and Wanca and Mr. Addison.

10      Q    And who from Medical and Chiropractic was

11   there?

12      A    I was.

13      Q    Did you specifically tell me the

14   individual lawyers who represented Medical and

15   Chiropractic at that mediation?

16      A    Yes, sir.  Ryan Kelly, Ross Good and David

17   Oppenheim.

18      Q    Did you form an understanding as to who

19   the lead lawyer for Medical and Chiropractic at the

20   mediation was?

21      A    Yes, sir.

22      Q    Who is it that you formed that

23   understanding?

24      A    I was told that Dave Oppenheim is the

25   attorney for Anderson and the one that would put

UNITED STATES DISTRICT COURT                    25

```
 1     together the negotiation briefs and that he's
 2     usually the one that handle -- the one that handles
 3     the negotiations in the mediations.
 4          Q    Did you meet with Mr. Oppenheim before the
 5     mediation?
 6          A    Yes, sir.
 7          Q    Now, I want to ask you a few questions
 8     about that meeting and about the mediation, but I
 9     want to tell you, Miss Zakrzewski, that I don't want
10     to get into the details of your privileged
11     discussions with Mr. Oppenheim, so I'd like you to
12     at a very high level -- and I'm not going to ask you
13     any of the details of the mediation itself, about
14     the negotiations because I don't want to invade the
15     mediation privilege.  Do you understand?
16          A    Yes, sir.
17          Q    When did you meet with Mr. Oppenheim
18     before the mediation?
19          A    The day before, sir.
20          Q    Where did you meet with him?
21          A    We met at dinner.
22          Q    Did you meet anywhere else before dinner?
23          A    No.
24          Q    Who else was present when you met him?
25          A    I'm sorry, sir?
```

1      Q    Who else was present when you met?

2      A    Ross Good and Ryan Kelly.

3      Q    Over dinner did you discuss the mediation?

4      A    Yes, sir.

5      Q    From a very high level, generally what

6   about the mediation did you discuss?

7      A    The strategies that would be used, layout,

8   how the day may proceed.

9      Q    Process-type things in addition to

10  strategies?

11     A    Yes, sir.

12     Q    Were you involved personally in these

13  strategic discussions?

14     A    It was all laid out in the brief before.

15  It could go any way in the mediation but I believe

16  it was all written out in the brief.  It may have

17  been discussed with previously, phone calls.

18     Q    And you discussed those sorts of things at

19  dinner with Mr. Oppenheim?

20     A    Yes, sir.

21     Q    At any point did Mr. Oppenheim ever tell

22  you that he was not Medical and Chiropractic's

23  Counsel?

24     A    No, sir.

25     Q    Did you understand him to be your Counsel?

1        A    Yes, sir.

2        Q    You mentioned a second mediation.  When

3    did that mediation take place?

4        A    August of 2015.

5        Q    Where did it take place?

6        A    Chicago.

7        Q    Were you present for that?

8        A    I was not.

9        Q    How come?

10        A    I had had a major surgery.

11        Q    And had you not had the surgery, would you

12    have gone and traveled to it?

13        A    Yes, sir.

14        Q    Even though you weren't present were you

15    available during the mediation?

16        A    Yes.

17        Q    How were you available?

18        A    I could have been by phone.

19        Q    Do you know who attended the mediation on

20    behalf of Medical and Chiropractic?

21        A    Mr. Addison, Mr. Good and Mr. Oppenheim.

22        Q    And do you know whether anyone else was

23    there?

24        A    I do not, sir.

25        Q    Did you have any discussions about the

1    mediation with your legal team before the mediation?

2         A    Yes, sir.

3         Q    How were those discussions had?

4         A    By phone.

5         Q    Would that have included with

6    Mr. Oppenheim?

7         A    I believe so.  I think there was a

8    conference call.

9         Q    Did you understand again that

10   Mr. Oppenheim was the lead lawyer for the

11   negotiations at that mediation?

12        A    I was told to believe that Mr. Oppenheim

13   is the closer, he goes to mediations as the director

14   of them with negotiations.

15        Q    Now, I'm going to show you Exhibit No. 3

16   which has already been admitted.  Your Honor, I

17   presume you'd like me to use the overhead?

18             THE COURT:  You don't have to.  I mean you

19   can if it's convenient and would expedite the

20   proceedings.

21             MR. SOBLE:  I'm sorry, your Honor.

22             THE COURT:  You may use the overhead if it

23   will expedite the proceeding and if it's convenient.

24             MR. SOBLE:  I'm going to fold back the

25   exhibit mark.

1    BY MR. SOBLE:

2         Q    Miss Zakrzewski, I'm showing you what's

3    been admitted into evidence as Plaintiff's Exhibit

4    3.  Do you recognize this?

5         A    Yes, sir.

6         Q    Can you tell me what it is?

7         A    It's a solicitation letter for business

8    that I received in our Zephyr Hills office.

9         Q    When you say you received it, it says it's

10   to Michelle Williams and Doctor Gregory L. Williams.

11   I assume you're not Doctor Gregory L.?

12        A    No, sir, I'm his wife.

13        Q    Who is Michelle Williams, it's you?

14        A    Yes, sir.

15        Q    But your legal name is Zakrzewski?

16        A    Yes, sir.

17        Q    So can you tell me when you use your

18   married name?

19        A    In social settings.

20        Q    And did you understand this letter to be

21   from the law firm of Bock, Hatch, Lewis and

22   Oppenheim?

23        A    Yes, sir.

24        Q    Was there anyone at that law firm who knew

25   that you used your husband's name in social

```
 1    settings?

 2         A    I believe so, sir.

 3         Q    Who?

 4         A    Dave Oppenheim.

 5         Q    And this letter is dated May 5th, 2016?

 6         A    Yes.

 7         Q    About when did you receive it?

 8         A    Around May 11th.

 9         Q    What was your reaction when you got this?

10         A    I thought it was poor taste.

11         Q    Why do you say that?

12         A    Because Mr. Oppenheim knew that we were

13    clients with Anderson and Wanca.

14         Q    Did you understand Mr. Oppenheim to have

15    been Medical and Chiropractic's attorney?

16         A    Yes, sir.

17         Q    Now, if you look at the very first line

18    that's underlined, it says are you tired of

19    receiving fax advertisements, question mark.  Did

20    you read through the whole letter?

21         A    Yes, sir.

22         Q    What did you understand the letter to be

23    soliciting from Medical and Chiropractic?

24         A    Our fax, illegal faxes or advertising

25    faxes.
```

1          Q     Did you understand it to be different at

2     all from the class action you were already a named

3     class representative in?

4          A     Can you repeat that, please?

5          Q     Sure.  The letter that's soliciting you

6     about fax advertisements, did you understand this to

7     be the same sort of issue that you were already a

8     named class representative in a class action?

9          A     Yes, sir.

10         Q     Did Mr. Oppenheim contact you before you

11    were sent this letter?

12         A     No, sir.

13         Q     Did anyone from the law firm contact you

14    before you were sent this letter?

15         A     No, sir.

16         Q     What did you do after you got the letter?

17         A     I'm sorry, sir?

18         Q     What did you do after you got the letter?

19         A     I called Mr. Good at Anderson and Wanca

20    and asked him if he knew about this and that we had

21    received this solicitation letter from Dave.

22         Q     You say from Dave.  Did you eventually

23    confirm that the Oppenheim -- the letterhead was

24    David Oppenheim?

25         A     Yes.

1    Q    When did you learn that Mr. Oppenheim's

2    new law firm had filed a Technology Training

3    Associates case?

4    A    The next day, Saturday, May 13th.

5    Q    At the time you learned about that case,

6    had Mr. Oppenheim contacted you about the new case?

7    A    No, sir.

8    Q    Had he contacted you about the

9    solicitation letter that his law firm had sent?

10   A    No, sir.

11   Q    Did anyone from Bock Hatch contact you

12   before filing of the Technology Training Associates

13   case?

14   A    No, sir.

15   Q    Miss Zakrzewski, you're aware that there

16   are currently these two competing class action

17   cases; is that right?

18   A    Yes, sir.

19   Q    And Medical and Chiropractic is a named

20   class rep in one?

21   A    Yes, sir.

22   Q    And Technology Training Associates is a

23   named class representative in the other?

24   A    Yes, sir.

25   Q    From a very general or broad level, what

UNITED STATES DISTRICT COURT                    33

1      do you understand is going on between the two cases?

2          A      They are trying to compete with our class

3      action and take it over.

4          Q      And how do you feel about that as their

5      representative for Medical and Chiropractic?

6          A      It's upsetting.

7          Q      Are you opposed to it?

8          A      Yes, sir.

9          Q      Are you working with your lawyers to stop

10     it?

11         A      Yes, sir.

12         Q      Why are you fighting it?

13         A      Because I don't think it's fair.

14         Q      What's not fair?

15         A      What they're doing.

16                MR. SOBLE:  If I could have just a moment

17     please, your Honor.

18                         (Brief pause.)

19                MR. SOBLE:  Your Honor, we have nothing

20     further at this time.  Thank you, Miss Zakrzewski.

21                THE COURT:  Thank you.  Cross examination.

22                MR. COHEN:  Thank you, Judge.

23                     CROSS EXAMINATION

24     BY MR. COHEN:

25         Q      Good afternoon, ma'am.

1          A     Hello.

2          Q     We haven't been introduced.  My name is

3    Dan Cohen and I'm an attorney with Bock Law Firm,

4    LLC.  Do you understand that?

5          A     Yes, sir.

6          Q     You filed a verified complaint to initiate

7    the case that we're here about today.  Do you

8    understand that?

9          A     Yes, sir.

10          Q     And you signed a verification page dated

11    May 31, 2016.  This is Plaintiffs -- your Exhibit 12

12    which has been admitted stating that under penalties

13    of perjury I declare I've read the foregoing

14    verified complaint and the facts stated in it are

15    true?

16          A     Yes, sir.

17          Q     And you would have reviewed the verified

18    complaint itself before signing that verification;

19    correct?

20          A     Yes, sir.

21          Q     And I just want to make sure I understand

22    a few things about this.  This is Page 1 of

23    Plaintiff's Exhibit 12, the first page of the

24    verified complaint.  Paragraph No. 4 which is

25    highlighted states "Defendant Bock Hatch is an

UNITED STATES DISTRICT COURT                    35

1    Illinois Limited Liability corporation with its

2    principal place of business in Illinois."  You

3    verified that you know that on your own personal

4    knowledge.

5            Ma'am, what did you do to develop personal

6    knowledge of that allegation in your verified

7    complaint that you swore under oath you knew to be

8    true?

9        A    I used the advice of my attorney.

10       Q    And that's what I thought you were going

11   to say, and I want you to know I'm not here to

12   attack you.  I want to make certain there are

13   certain things that are understood and I want to

14   flush that out a little bit.

15           You did not, in fact, have personal

16   knowledge of what is set forth in Paragraph No. 4.

17   Your attorney told you that was true and based on

18   your attorney telling you a fact was true, you

19   verified a complaint stating on personal knowledge

20   you knew it to be true; correct?

21           MR. SOBLE:  Objection, your Honor.  First

22   of all, I don't want to invade the attorney-client

23   privilege, but also this was admitted for the facts

24   for which the witness had personal knowledge, these

25   background facts of personal jurisdiction.  If

UNITED STATES DISTRICT COURT                    36

```
 1          Counsel next is going to start to question about
 2          legal causes of action, obviously it will be the
 3          same answer.  If there's inquiry about the
 4          underlying facts of the complaint, I certainly have
 5          no objection to that.
 6                  MR. COHEN:  Judge, just to clarify the
 7          Court's ruling, if I understood as to those
 8          represented factual allegations, it was admitted for
 9          that purpose but not for legal conclusions, and as
10          we'll get into further, that's a factual allegation
11          in Paragraph 4 and then many other factual
12          allegations I want to know if it falls into the same
13          category that she's simply basing it on what an
14          attorney told her was true and she said she swore
15          she knew it to be true or does she actually know
16          these things to be true.
17                  THE COURT:  The problem --  You're
18          correct.  It was admitted with regard to the factual
19          allegations contained therein, not with regard to
20          the legal conclusions.  That is a factual allegation
21          contained therein and so your examination is
22          appropriate; however, I just caution you all that I
23          don't know that you want to spend a lot of time on
24          this point because we have a finite period of time
25          for this hearing today, and I can pretty much tell
```

1    just like you can which things she knows and which

2    things her attorney told her about.

3              MR. COHEN:  Understood.

4              THE COURT:  That's not a big issue.

5    That's really not significant to me in ruling on

6    this matter, but to the extent that you're allowed

7    to cross examine her, you may do so.  We have a

8    finite period of time, and I'd like to get through

9    all of the witnesses.  You'll be next coming back

10   when I can fit you back on my schedule.

11             MR. COHEN:  I understand that, and we'll

12   get to the meet and potatoes.

13             THE COURT:  Thank you.

14             MR. COHEN:  I'm going to skip to some of

15   the other issues or paragraphs that might fall into

16   that category which the Court accurately recognized

17   are just basics.

18             I'd like to jump to Paragraph 25 of your

19   verified complaint that Mr. Oppenheim was granted

20   full authority to settle on behalf of the Cin-Q and

21   Medical and Chiropractic at the mediations, and I

22   just want to understand.

23             Are you representing that that's something

24   Mr. Oppenheim himself told you he has full authority

25   or did you learn that elsewhere?

1          A     Can you rephrase that, please?

2          Q     Yes.   What is the basis, what is the

3    source of your information in Paragraph 25 that

4    Mr. Oppenheim had full authority to settle at the

5    mediation?

6          A     The attorneys that are representing us in

7    the class action said that that's what their purpose

8    was to do in mediation.

9          Q     Certainly.   And I don't want to argue

10   about it, but you're not suggesting that

11   Mr. Oppenheim who is merely an associate of the

12   Wanca Law Firm wasn't taking his marching orders

13   from Mr. Wanca.   You understood he worked for

14   Mr. Wanca and Mr. Wanca was in charge; correct?

15         A     Not -- No.

16         Q     So you didn't think Mr. Wanca the attorney

17   you hired had a say or a role in deciding what

18   settlement was or was not going to be acceptable?

19         A     I think anything would have been discussed

20   with all the attorneys, but I believe he had the

21   ability to do that at a mediation.

22         Q     Let's talk about Paragraph 26 and 27.   It

23   says before the mediation Mr. Oppenheim had

24   discussions with you; correct --

25         A     Yes.

1          Q      -- regarding the Federal Action, and then

2     27 says, "on February 12th, 2015 you had in-person

3     discussion with Mr. Oppenheim regarding your

4     company's legal position for the February

5     mediation," is that correct?  That's what those

6     speak to?

7          A     Yes, sir.

8          Q     Paragraph 30 says that you and

9     Mr. Oppenheim had further discussions regarding

10    Medical and Chiropractic's legal positions after the

11    mediation session; correct?

12         A     Yes.

13         Q     And then 35, that you and Mr. Oppenheim

14    had further discussions regarding your company's

15    legal positions?

16         A     Yeah.  Yes, sir.

17         Q     I'm going to ask you to tell us not what

18    Mr. Oppenheim shared with you about his thoughts,

19    his strategies, what he or the firm were planning to

20    do.  I'm going to ask you to tell us what

21    confidential strategic information you believed that

22    you have shared with Mr. Oppenheim either about your

23    company or yourself or your suggested inputs to the

24    class action?

25              MR. SOBLE:  Objection.  To the extent that

```
 1      this is going to invade the attorney-client
 2      privilege and ask for specific strategic positions
 3      that they discussed as opposed to the general --
 4      first off, we have not alleged specific confidential
 5      information nor have we alleged that it was shared
 6      with the Bock Oppenheim law firm nor do we need to
 7      under Florida law to make our case.
 8              MR. COHEN:  I didn't mean to interrupt.
 9              MR. SOBLE:  No.  Go ahead.
10              MR. COHEN:  My response would be as the
11      Court knows from the pleadings on file today with
12      written declarations what Miss Zakrzewski has just
13      said is no different than her conclusory allegation
14      in her pleadings and declarations.
15              Mr. Oppenheim has given a declaration
16      where he denies that any such confidential
17      information was exchanged, and the Court said we're
18      here for a preliminary injunction because there's a
19      conflict in credibility.
20              If all the witnesses, both Miss Zakrzewski
21      and Mr. Oppenheim, are going to do is get up and say
22      the exact same conclusory affirmations and denials,
23      the Court's going to have a rather difficult time
24      deciding credibility between that.
25              I believe under the law if a client of an
```

1    attorney sues the lawyer and makes representations

2    of fact relating to matters involved allegedly in

3    the representation, they've placed those

4    communications at issue.

5         We're not claiming a complete waiver of

6    the attorney-client privilege, but under the

7    at-issue exception to the attorney-client privilege,

8    they can't make a claim that depends on the facts of

9    the attorney-client communications and then say but

10   we're invoking attorney-client privilege to prevent

11   disclosure of those communications.

12        THE COURT:  Anything further?  I'm sorry,

13   Mr. Blonien.

14        MR. BLONIEN:  My name is Mr. Blonien, your

15   Honor.

16        THE COURT:  Blonien.

17        MR. BLONIEN:  I wanted to add one further

18   thing with respect to the issue waiver of privilege

19   that is to the extent that the Plaintiff is willing

20   to concede that no information was, in fact, shared

21   from the Plaintiff to Mr. Oppenheim or from

22   Mr. Oppenheim to the Bock Law Firm, perhaps then no

23   invasion of attorney-client privilege would be

24   necessary.

25        MR. SOBLE:  Mr. Oppenheim has stated that

UNITED STATES DISTRICT COURT                    42

1    he didn't get any information at all, that they

2    didn't discuss the mediations, they didn't have

3    discussions about strategy, et cetera.  What matters

4    is that they discussed the strategy to mediation,

5    settlement strategy, not whether confidential

6    business information was provided which is

7    unnecessary and irrelevant particularly at the

8    preliminary injunction phase.

9          MR. COHEN:  Judge, we would disagree with

10   that only to the extent that if all he's telling --

11   all Mr. Oppenheim is doing is sharing with a class

12   member what his plans are or their angles and

13   strategies are, that's not her involvement and her

14   creating some confidentiality, and we believe under

15   the case law she is the necessary source.  She must

16   share some information with Mr. Oppenheim that then

17   creates a problem for her if and when Mr. Oppenheim

18   happens to be at another law firm where that law

19   firm is purporting to represent a competing class

20   and she is standing up and she's saying not just as

21   all the rest of the thousands of class members, but

22   as to me there's something unique that creates a

23   material adversity of interest.  And if we don't get

24   into what it is that was claimed was said, then I

25   don't know how she proves the material adversity of

1     the injuries.

2              THE COURT:  I'm going to overrule the

3     objection.  I think that you're correct with regard

4     to the exception to the extent that the witness Miss

5     Zakrzewski contends that she shared confidential

6     information with Mr. Oppenheim with regard to the

7     company Medical and Chiropractic Clinic, herself

8     individually, information that would then have been

9     used against her as asserted in the actions here and

10    so I will allow a response to that question.

11             Would you like for the attorney to reask

12    the question?

13             THE WITNESS:  Yes, please.

14    BY MR. COHEN:

15        Q    Thank you, ma'am.  What I'm wondering is,

16    and, again, you don't have to and I would ask for

17    the sake of preserving everything for the moment,

18    don't tell us anything that Mr. Oppenheim said

19    specifically to you that you feel was confidential

20    or strategic about the case.  What information did

21    you at any time as referenced in all those

22    paragraphs in your verified complaint where it says

23    we talked about this, me and Mr. Oppenheim, at any

24    of those times, what information did you share with

25    Mr. Oppenheim that was confidential about you

1    personally, your company or in your assessment you

2    contributing to the strategic assessment of the

3    case?  Anything unique and personal that you

4    conveyed.

5         A    Such a broad question.  We had discussions

6    before the mediation.  It was about the settlement

7    of the class action, where it was going, figures,

8    numbers and how we would have to agree to the

9    mediation settlement.

10        Q    And I appreciate that and I also

11   appreciate we're reaching back in time over multiple

12   days.  I'm trying to pull out specific little

13   needles.  What you just generally described -- and

14   if I'm summarizing what you said wrong, you correct

15   me -- it sounds like you're saying that to the

16   extent that you're there, Mr. Oppenheim is there,

17   perhaps Mr. Good, perhaps Mr. Addison are there,

18   you're all there working together trying to see if

19   you can get a settlement for the benefit of the

20   class that you want to represent?

21        A    That was the main purpose, yes.

22        Q    And at least the conversations, the topics

23   you just described to me when you were answering my

24   last question, it sounds like all of those

25   communications fit right into that general purpose

                 UNITED STATES DISTRICT COURT            45

1    about the class as a whole, about strategy to get a

2    good settlement for the benefit of the whole class,

3    is that fair?

4         A    Yes.

5         Q    And so I'm going to take all of that and

6    I'm sure there's plenty.  We'll set that aside for a

7    moment.  As we sit here today, recognizing it's

8    difficult to think back in time, can you think of

9    anything unique and specific to you or to Medical

10   and Chiropractic, something different from all the

11   rest of the class members, something different from

12   the goal of getting a settlement for the benefit of

13   everybody, can you think of anything specific to you

14   or your company that you shared with Mr. Oppenheim?

15        A    Not offhand, no, sir.

16        Q    And as we're going forward I'll have a few

17   more minutes of questions.  If something comes to

18   mind, would you just raise your hand and say I

19   thought of something?

20        A    Yes, sir.

21        Q    You mentioned something in your testimony

22   responding to your attorney's question, you talked

23   about I became class representative in 2013 and at

24   another point in your testimony you said that you

25   became the named class representative.

1              What I wanted to ask you, have you at any

2      time become familiar with the difference between

3      class representative status before the Court

4      certifies the class versus after the Court certifies

5      the class?

6              I don't want you to say an attorney told

7      me such and such, but at any point have you become

8      aware of the difference between being a certified

9      class representative versus what we call a putative

10     class representative before certification happens?

11       A    Yes, to some degree, but I don't believe

12     that ever happened in this case.

13       Q    And when you say that didn't happen, you

14     mean to your knowledge in the Cin-Q case where you

15     were one of the named Plaintiffs, you don't believe

16     the case was ever certified?

17       A    No, sir, I don't believe so.

18       Q    And so although you were a named Plaintiff

19     and your goal in that case was and is to become the

20     certified court-appointed class representative, you

21     understand at least at the present time in the Cin-Q

22     case you have not been appointed that status by the

23     Court yet; correct?

24       A    My understanding of the papers that were

25     filed are sitting on the judge's desk.

1        Q    But as far as you know, you haven't been

2    appointed by the Court yet; right?

3        A    No, sir.

4        Q    I need to ask you another thing, ma'am.

5    Your Honor, we would offer this as Defendant Bock

6    firm's proffered Exhibit 1.  It's the declaration,

7    the declaration of Michelle Zakrzewski that was

8    attached as an exhibit to the Defendant's motion to

9    shorten time on rule to show cause.

10            THE COURT:  Is there any objection?

11            MR. SOBLE:  No objection, your Honor.

12            THE COURT:  Defendant Bock firm's Exhibit

13    1 is admitted.

14                        (Defendant Bock Exhibit No. 1

15                         was offered and received in

16                         evidence.)

17            MR. COHEN:  Thank you, Judge.

18    BY MR. COHEN:

19        Q    Miss Zakrzewski, you were asked the

20    question by your attorney how did you feel when you

21    found out that the Bock Law Firm where Mr. Oppenheim

22    is now an associate attorney had filed a competing

23    class action, and you said, if I took my notes

24    right, it was upsetting and you're fighting it;

25    correct?

1          A     Yes, sir.

2          Q     And are you aware that you're not just

3     fighting it here through this lawsuit you filed but

4     that Mr. Wanca and Mr. Addison are fighting it in

5     both the Cin-Q case where you are a named Plaintiff

6     and in the Technology Training Associates case, the

7     competing case?  Are you aware that your class

8     action attorneys are fighting it in the class action

9     cases as well as your attorneys here fighting it

10    today?

11         A     Can you clarify that, please?

12         Q     Sure.  Are you aware that Mr. Wanca and

13    Mr. Addison are fighting this competing class action

14    that upsets you, that they're fighting it in front

15    of Judge Porcelli in those actual class action

16    cases?

17         A     Yes, sir.  Yes.

18         Q     So you understand that you have attorneys

19    in here in front of Judge Honeywell fighting this

20    competing case and you also have your own class

21    action attorneys over there in Judge Porcelli's

22    courtroom making the fight as well?

23         A     Yes, sir.

24         Q     One of the things that you said in

25    response to your attorney here today, his question,

1    you said it's not fair.  He said why is it

2    upsetting?  Because you said because it's not fair

3    and I asked why, and I didn't pick up on your

4    answer.

5              What about it -- what is it about the fact

6    that there's a competing class action in the same

7    courthouse with different named Plaintiffs seeking

8    to represent the same class and get a settlement for

9    all those thousands of class members, what is it

10   about that that's not fair?

11      A    I think it's dirty pool to tell you the

12   truth because there's one attorney that's been

13   involved in this whole thing and he's worked for two

14   different firms.  I just don't think it's correct.

15      Q    And I appreciate that.  I just want to

16   make sure before I ask you some other questions that

17   I'm understanding.  If Technology Training

18   Associates, the named Plaintiff in the competing

19   case, that upsets you --

20      A    Okay.

21      Q    -- if they were represented by attorneys

22   that were never employed by the Wanca law firm but

23   they were still trying to settle the class that

24   you're a member of --

25      A    Okay.

1        Q      -- before you and your attorney settled,

2   would that still upset you?

3        A      Yeah.

4        Q      It would still be dirty pool?

5        A      They've had all these years to come

6   forward.  Why now?

7        Q      And then there's a question that I don't

8   think came up in your testimony but it's in the

9   pleadings the parties have filed.  What harm, and by

10  harm I'll let you say any answer you got, whether

11  it's some kind of an intangible harm, a feeling, or

12  whether it's dollars and cents, what harm are you

13  claiming you suffered in this case by -- because of

14  the Technology Training lawsuit and that you're in

15  here claiming a breach?  What harm?

16       A      I believe I could be exposed to fees and

17  costs, expert witness fees, anything could be filed

18  against me for any reason by any attorney, so I

19  believe there could be a door opened that can allow

20  me to be exposed to heavy fees and fines or legal

21  costs.

22       Q      Does the contract that you signed when you

23  hired on as a desiring class representative with the

24  Wanca Law Firm -- and when was that, back in 2000

25  what?

1          A     Somewhere around 2009 I believe.

2          Q     As you recall does that contract speak to

3     whether the Wanca Law Firm will be responsible for

4     litigation costs?

5          A     I believe so.

6          Q     And does it speak to the fact that you

7     will not owe them any fees unless they make a

8     recovery on your behalf?

9          A     I believe so.

10         Q     Was it ever revealed to you?  Did you ever

11    develop an understanding throughout this whole class

12    action process with the Wanca firm that as a class

13    representative if you get the case certified, if the

14    judge certifies it and appoints you the

15    representative and either it settles or it goes to

16    trial and wins, that in that event you would be

17    allowed to ask the judge for what they call an

18    incentive award?  Was that ever brought to your

19    attention?  Did you ever develop an understanding,

20    hey, if we get this done favorably for the class I

21    can at least ask the judge for an incentive award?

22         A     Yes, but never an amount.

23         Q     And that was my next question.  Nobody

24    ever told you an amount and nobody ever promised you

25    that you would get that; correct?

1        A    Correct.

2        Q    And you were doing what you were doing for

3   the class even if it meant in the end you didn't get

4   an incentive award?  You were not basing your

5   willingness to do it purely on the idea that maybe

6   one day I might get an incentive award; right?

7        A    Correct.

8        Q    And I just don't know how you're going to

9   feel about this.  I want to find out.  Are you aware

10  that in the Technology Training Associates case, I'm

11  going to call it TTA because it's shortened, the

12  competing case that upsets you, are you aware that

13  the attorneys for TTA and TTA have announced a

14  proposed class settlement and they've put it in

15  front of Judge Porcelli asking him to approve or

16  reject it?

17       A    Pardon me.  Yes.

18       Q    Have you reviewed in detail the terms of

19  that settlement to make your own assessment as to

20  whether you think it tends to be a good deal for the

21  class or not?

22       A    Not all of it.

23       Q    If you reviewed that settlement agreement

24  in detail, if you even had time to get independent

25  counsel and your ultimate decision was, you know,

                    UNITED STATES DISTRICT COURT              53

1   this is a reasonable deal, if that were the way you

2   felt, that on the whole the settlement in the TTA

3   case was a reasonable settlement for the class of

4   which you're a member, would you still be seeking to

5   stop the attorneys in the TTA case from going

6   forward with that settlement?

7        A    Yes.

8             MR. COHEN:  Judge, I don't have anything

9   further at this time.  Thank you.

10             THE COURT:  All right.  Thank you.

11   Mr. Blonien.

12             MR. BLONIEN:  Thank you, your Honor.

13                     CROSS EXAMINATION

14   BY MR. BLONIEN:

15        Q    Good afternoon, Miss Zakrzewski.

16        A    Hi.

17        Q    My name is Barry Blonien, and we haven't

18   met before, have we?

19        A    No, sir.

20        Q    If I understand your testimony, you

21   contacted Anderson and Wanca's firm based on a

22   referral in 2009; is that correct?

23        A    Yes, sir.

24        Q    Okay.  How soon after contacting them did

25   your attorney-client relationship end with

1    Mr. Wanca?

2        A    Around 2011 I believe.

3        Q    Okay.  And why do you identify 2011?  Can

4    you tell me why that date is important for you?

5        A    I was going through medical treatment.

6        Q    Okay.

7        A    And I don't believe I had time to pursue

8    anything or follow up on anything with the firm

9    until then.

10       Q    Okay.  So what happened in 2011 that in

11   your mind created an attorney-client relationship

12   with Mr. Wanca?

13       A    I was informed that we had a fax regarding

14   a class action or proposed class action the

15   Buccaneers and that I was in the class at the time.

16       Q    Okay.

17       A    And that was the first contact I believe.

18       Q    So you said that you were informed.  Did

19   someone from Mr. Wanca's firm call you?

20       A    Ryan Kelly.

21       Q    Ryan Kelly called you?

22       A    Correct.

23       Q    Did you consider that in your mind that an

24   attorney-client relationship existed with Mr. Wanca

25   before that phone call?

1        A     It didn't cross my mind, no.

2        Q     Okay.  Did you consider that -- did you

3   believe that an attorney-client relationship exists

4   that -- existed after that phone call?

5        A     Yes.

6        Q     Because of that phone call?

7        A     Yes.  They asked -- they asked about the

8   facts and I -- they informed me that I was included

9   in the class at that time.

10       Q     And did they ask you if you wanted to be a

11   class representative at that time?

12       A     It was not required then, no.

13       Q     Okay.  So they simply called you and told

14   you that you were a part of the class?

15       A     Yes.

16       Q     At that time did you receive any sort of

17   written agreement from Mr. Wanca's firm outlining

18   the terms of your representation with the firm?

19       A     In 2011, yes.

20       Q     That was in 2011?

21       A     I believe so, yes.

22       Q     And what was the date of that agreement?

23       A     I can't remember, sir.  I don't believe it

24   was involved with the Buccaneers' case.  It was in

25   another case.

1     Q     Do you remember which case that was?

2     A     I believe it was Wellcare.

3     Q     Wellcare?

4     A     Yes, sir.

5     Q     Okay.  With respect to this case I should

6   say -- strike that.  With respect to the Buccaneers'

7   case --

8     A     Okay.

9     Q     -- when was it that you believed your

10  relationship with Mr. Wanca began as an

11  attorney-client relationship?

12    A     I believe it was in 2013.

13    Q     And did you sign or see a written

14  agreement that outlined terms of that representation

15  with respect to the Buccaneers' class action?

16    A     Yes, sir.

17    Q     Okay.  And can you tell me when that was

18  signed?

19    A     Sometime in 2013.  I don't know the exact

20  date.

21    Q     Now, with respect to this Wellcare case,

22  Miss Zakrzewski, did you ever speak with

23  Mr. Oppenheim about that case?

24    A     I don't know, sir.

25    Q     Do you recall any advice that

1     Mr. Oppenheim provided to you in connection with the

2     Wellcare case?

3          A     No, sir.

4          Q     When was the first time you met

5     Mr. Oppenheim?

6          A     2015.

7          Q     Is that in connection with the mediation?

8          A     Yes, sir.

9          Q     Was that at the dinner?

10         A     Yes, sir.

11         Q     Can you identify any phone calls that you

12    had with Mr. Oppenheim before that time?

13         A     Not specifically, no, sir.

14         Q     Can you identify any E-mail conversations

15    that you had with Mr. Oppenheim before that time?

16         A     No, sir.

17         Q     Now, back to the agreement that you said

18    you received in 2013 with respect to this -- with

19    respect to the class action involving the

20    Buccaneers, do you remember the specific date?

21         A     It was in February 2015, sir.

22         Q     And do you remember the terms of that

23    agreement?  Do you remember what that written

24    agreement said?

25         A     Not offhand, sir.  No, sir.

1        Q     Did you bring a copy with you today?

2        A     No, sir.

3        Q     Do you remember what attorney within

4    Mr. Wanca's firm signed that retention letter?

5        A     It was most likely Ryan Kelly.

6        Q     Okay.  I don't want you to speculate about

7    who it most likely was.  Simply base your answer on

8    personal knowledge.  Do you have any knowledge of

9    who signed that letter?

10       A     I'm trying to remember.  I believe it was

11   Ryan Kelly.

12       Q     Okay.  And do you know in that letter

13   whether it specified the scope of your

14   attorney-client relationship what would be included

15   and what would not?

16       A     I would speculate that I was retained by

17   Anderson and Wanca and whatever attorney that works

18   for them is my attorney.

19       Q     Okay.  And when you say your attorney, I

20   assume you're referring to Medical and Chiropractic?

21       A     Correct, sir.

22       Q     And that's Medical and Chiropractic's

23   capacity as a member of the class; right?

24       A     Correct.

25       Q     Do you recall anything specific in the

1    retention agreement that indicated that they were

2    also representing you in any other capacity?

3         A    Not that I can recall, sir, no.

4         Q    Do you recall anything in the agreement

5    that specified that Mr. Wanca's firm owed you any

6    duties outside of the context of the Buccaneers'

7    class action?

8         A    No, sir, not that I can recall.

9         Q    With respect to the mediation that

10   happened, can you identify any aspect of the

11   discussions that you had with Mr. Oppenheim, of

12   information that he shared with you that was

13   different than his role representing all of the

14   other class members in that mediation?

15        A    He was the lead in that mediation, sir.

16        Q    I appreciate that.  And maybe my question

17   is not clear, so maybe let me try it a different

18   way.  You understand that Mr. Oppenheim at that

19   class mediation was representing everybody in that

20   class; right?

21        A    Yes, sir.

22        Q    Did he tell you or do anything or give you

23   any reason to believe that he was treating you any

24   differently than everyone else in the class?

25        A    No.  It was considered the class as a

1    whole.

2         Q    Okay.  How in your mind are you different

3    from any other class member in the Buccaneers'

4    litigation?

5         A    I have -- I have my specific thoughts and

6    be there representing people.  I've had to take time

7    off of work.  I've had to answer phone calls and

8    E-mails.  I think I've produced a lot of my time

9    above anybody else in the class.

10        Q    And I appreciate that.  And thank you.

11   And for that work that you've committed to this

12   class action, you expect at the end of the day that

13   there will be an incentive award to compensate you

14   for that time; right?

15        A    It's never been promised.

16        Q    Do you expect it to be the case?

17        A    I can't say yes or no.

18        Q    So it's possible that the incentive award

19   doesn't happen?

20        A    Anything can happen.

21        Q    Are you responsible for any of the legal

22   fees in the Buccaneers' class action?

23        A    From which side, sir?

24        Q    Have you acquired any responsibility to

25   pay a bill so far with respect to the class action?

1        A    No, sir, not yet.

2        Q    Okay.  Do you anticipate that you will

3    necessarily have to pay some bill?

4        A    I was informed in a deposition I could be.

5        Q    Okay.  Setting aside, you know, what could

6    be, is there anything that you have deemed to be

7    likely that you have to pay in terms of legal fees

8    or cost associated with the Buccaneers' class

9    action?

10       A    No, sir.

11       Q    Is there any legal fees or costs in this

12   action that you expect that you'll be responsible

13   for?

14       A    I don't know.

15       Q    How did Mr. Oppenheim's changing firms

16   change the likelihood in your mind that you're

17   getting an incentive award?

18       A    I've never been -- said that I was going

19   to be given anything.  I just thought it was not --

20   it was just not right what he did.

21       Q    Okay.  I understand your position that you

22   think that this is dirty pool, but aside from that,

23   it's -- you're not arguing that your likelihood of

24   getting an incentive award at the end of the day has

25   changed at all; right?

1        A    Correct.

2        Q    Okay.  How specifically has

3   Mr. Oppenheim's changing firms hurt Medical and

4   Chiropractic?

5        A    It's just that I have been removed from my

6   business and my hours that I would normally be at my

7   work I have had devoted to this, so I have had loss

8   of time and loss of income that way.

9        Q    Sure.  I understand that, and that's

10  happened regardless and would happen so long as you

11  remain class representative there would be those

12  sorts of burdens that you have to undertake; right?

13       A    Yes, sir.

14       Q    How have those burdens changed because

15  Mr. Oppenheim has gone to a different firm?

16       A    It would end.  I wouldn't be responsible

17  for anything any more I guess.

18       Q    So those costs and burdens would just stop

19  at worst is what you're saying?

20       A    I would say so.

21       Q    Can you think of anything that

22  Mr. Oppenheim's conduct has done to cause your

23  company harm that you can identify for the court

24  today?

25       A    Not offhand.

1        Q    Can you think of anything that's likely to

2    happen tomorrow or sometime in the near future where

3    you believe it's really likely that Mr. Oppenheim's

4    conduct is causing you or your company harm?

5        A    No, I can't, but that doesn't mean someone

6    couldn't file something against us from the

7    Buccaneers' side to recover anything from us.

8        Q    Sure.  That possibility is always floating

9    out there.

10       A    That's always been there, yes, sir.

11       Q    It's involved in any sort of litigation.

12       A    Yes, sir.  Okay.

13            MR. BLONIEN:  Thank you.  I have no

14    further questions, your Honor.

15            THE COURT:  Thank you.  Redirect.

16            MR. SOBLE:  Thank you, your Honor.

17                    REDIRECT EXAMINATION

18    BY MR. SOBLE:

19       Q    Miss Zakrzewski, I think you were asked

20    about whether you had taken a look at the proposed

21    settlement that Technology Training Associates had

22    submitted to the Court.  Do you remember that

23    questioning from cross?

24       A    Yes, sir.

25       Q    Do you recall whether that proposed

1    settlement had an incentive award in it for Medical

2    and Chiropractic?

3         A    No.

4         Q    No, it did not?

5         A    It did not.

6         Q    I'm going to show you what's been marked

7    as Plaintiff's Exhibit 2.  This is the first page of

8    the Second Amended Class Action client.  This is the

9    one where Medical and Chiropractic was added to the

10   litigation; is that correct?

11        A    Yes, sir.

12        Q    It says Plaintiffs Cin-Q Automobiles,

13   Inc., and Medical and Chiropractic Clinic, Inc.,

14   Plaintiffs bring this action on behalf of themselves

15   and all others similarly situated.  Did I read that

16   correctly?

17        A    Yes, sir.

18        Q    When Mr. Oppenheim represented Medical and

19   Chiropractic at two mediations, did he tell you, by

20   the way, the complaint is on behalf of yourself and

21   all class members but I'm only here for the class

22   members?

23        A    No.

24        Q    You were asked by Counsel whether you'd be

25   upset even if Mr. Oppenheim was not involved in the

UNITED STATES DISTRICT COURT                65

1      Technology Training Associates case.  Do you recall
2      that?
3           A      Yes, sir.
4           Q      Are you more upset or less upset than you
5      would be otherwise since he's involved?
6           A      More upset.
7           Q      You talked about the mediations and you
8      testified that Mr. Oppenheim prepared the mediation
9      briefs.  Do you remember that?
10          A      Yes, sir.
11          Q      Did you read the mediation briefs?
12          A      No, sir.
13          Q      You never looked at them?
14          A      No, sir.  They had to be submitted from
15     what I understand to the mediator before the
16     mediation so that the mediators could review them.
17          Q      So you don't know what information about
18     Medical and Chiropractic would have been in the
19     mediation briefs?
20          A      No, sir.
21          Q      If there was information in the mediation
22     briefs about Medical and Chiropractic could it have
23     been obtained from you?
24          MR. BLONIEN:  Objection, your Honor, calls
25     for speculation.

1                THE COURT:  Response.

2                MR. SOBLE:  There's only so many ways it

3      could be obtained, your Honor.  There's Counsel for

4      Medical and Chiropractic and a mediation brief.

5      It's either through Miss Zakrzewski or through the

6      discovery documents in the case.  It's not

7      speculation.  The point is it had to be obtained

8      from the case itself.  The mediation brief

9      information was not obtained publicly.

10               THE COURT:  All right.  I'm going to

11     overrule the objection.  You may answer it.

12     BY MR. SOBLE:

13          Q    Did you provide information about Medical

14     and Chiropractic to your lawyers that may have been

15     in the mediation brief?

16          A    Yes.

17          Q    You mentioned being involved in discovery.

18     That discovery information that Medical and

19     Chiropractic provided may have been in the mediation

20     brief?

21          A    Yes, sir.

22               MR. SOBLE:  I have nothing further, your

23     Honor.

24               THE COURT:  All right.  Thank you.  You

25     may return to your seat.

1                    THE WITNESS:  Thank you.

2                    THE COURT:  Mr. Soble, you may call your

3     next witness.

4                    MS. LOEW:  We call Mike Addison to the

5     stand.

6                         (Witness sworn.)

7                    COURTROOM DEPUTY CLERK:  Please state your

8     name and spell your last name for the record.

9                    THE WITNESS:  Michael C. Addison,

10    A-D-D-I-S-O-N.

11                   COURTROOM DEPUTY CLERK:  Thank you.  You

12    may be seated.

13                   MICHAEL C. ADDISON,

14    called as a witness on behalf of the Plaintiff, having

15    been first duly sworn under oath, was examined and

16    testified as follows:

17                        DIRECT EXAMINATION

18    BY MS. LOEW:

19         Q    Good afternoon, Mr. Addison.  Although I

20    think you're probably pretty familiar with everyone

21    in this courtroom, can you please identify your

22    current occupation.

23         A    I'm an attorney in Tampa.

24         Q    How long have you been practicing?

25         A    I've been admitted to the bar since 1972

1    and active practice in Tampa since 1974.

2         Q    What are your areas of practice?

3         A    I describe it as commercial litigation,

4    complex litigation, among other things class

5    actions.

6         Q    And are you involved in any class actions

7    involving Medical and Chiropractic?

8         A    Yes, ma'am.

9         Q    And when did you first get involved in --

10   I'll refer to the pending case as the Medical and

11   Chiropractic case.  I'm referring to that Cin-Q

12   Automobiles versus Buccaneers Limited Partnership.

13   Do you understand that?

14        A    Yes.

15        Q    When did you first get involved in the

16   Medical and Chiropractic case?

17        A    Well, if you describe it as that, it

18   started out as the Cin-Q Automobiles case and I got

19   involved in that in August of 2009.

20        Q    And how did you get involved in that?

21        A    Mr. Cin-Q was referred to me by an

22   attorney I knew in Gainesville.

23        Q    And I understand there was a complaint

24   that's been marked as Exhibit 1, the class action

25   complaint.

```
 1        A    I don't have it in front of me, but I

 2   understand that there was an Exhibit 1 that's

 3   admitted.  Oh, okay.

 4        Q    Do you see that document?

 5        A    Yes.

 6        Q    And that document was filed it says on

 7   June 18th of 2013?

 8        A    That's correct.

 9        Q    Were there any lawsuits involving the

10   subject matter before this claim was filed?

11        A    Yes.  The original lawsuit that I filed on

12   behalf of Cin-Q Automobiles against the Buccaneers

13   Limited Partnership was filed in Hillsborough County

14   Circuit Court in August of 2009.

15        Q    And other than the case that was pending

16   in Hillsborough County, were there any other

17   litigations involving the Buccaneers' faxes?

18        A    I don't believe so, no.

19        Q    How did you identify the class members for

20   this class action complaint?

21        A    How did I describe them or identify them?

22        Q    How did you identify who they were?

23        A    Well, it was very difficult.

24        Q    What was that process?

25        A    Well, the problem was I filed a case in
```

1       State court.  We had some pleadings.  I think I did

2       an Amended Complaint.  I served discovery on the

3       Buccaneers trying to identify -- get them to

4       identify who they sent the faxes to and the response

5       was generally they didn't know who they sent them

6       to.

7            Q    So how did you find that out?

8            A    That was the problem -- well, eventually I

9       realized I needed to find the data that would

10      demonstrate what faxes were sent to who, when and

11      how many times, and that was why I approached the

12      Anderson Wanca firm to seek their assistance to

13      pursue that line of discovery because that was an

14      area that that firm was specializing in to my

15      knowledge.

16           Q    And what was Medical and Chiropractic's

17      involvement in that process?

18           A    Well, they were referred to me in 2012 by

19      Mr. Wanca, and in March of 2012 we filed an action

20      against an individual named Michael Clement who my

21      discovery in the Buccaneers' case in State court had

22      disclosed was the individual with whom the

23      Buccaneers dealt in arranging for the facsimiles to

24      be sent in 2009 and 2010.

25           Q    Then ultimately you filed this complaint

1     which I believe you signed; correct?

2         A     That's correct.  I filed that in June of

3     2013.

4         Q     And when was Medical and Chiropractic

5     added as a party to this case?

6         A     We filed a motion in October of 2013 to

7     file a Second Amended Complaint I believe and that

8     would have added or it did add Medical and

9     Chiropractic as an additional named Plaintiff to the

10    class action that was filed in June.

11        Q     Is that this document (indicating)?  Can

12    you read that?

13        A     Yes.  Eventually the Court ruled over

14    objection by the Buccaneers that we could file the

15    Second Amended Complaint and that was done in

16    January, on January 3rd, 2014.

17        Q     What was the class that was identified in

18    the Medical and Chiropractic action?

19        A     Generally described as the people who

20    received the facsimile advertisements from the

21    Buccaneers Limited Partnership seeking to sell

22    either group tickets or single game tickets by using

23    a facsimile ad which did not comply with the

24    Telephone Consumer Protection Act.

25        Q     And that class is set forth in that

1    Paragraph 25?

2         A    Yes.

3         Q    Now, as a class representative, what were

4    Medical and Chiropractic's obligations in the

5    action?

6         A    Well, the first obligation in my opinion

7    is they had the obligation to select competent

8    Counsel to represent them and the class that they

9    seek to represent.  Once Counsel is retained or

10   arrangements were made for the attorney to work with

11   the individual class representative, they need to

12   supply information that's appropriate to prepare and

13   file a complaint in State or Federal court.  Once

14   that's done, they have an obligation to participate

15   meaningfully in discovery requests that need to be

16   responded to by the opposing party as well as to

17   help prepare the case for ultimate presentation in

18   support of a motion to certify the class.  And then

19   finally -- well, I shouldn't say finally.  Sometimes

20   during the course of class action litigation

21   settlement discussions take place, the class

22   representative has the responsibility to be involved

23   in those discussions with his or her attorney and

24   help evaluate any settlement proposals that are

25   made.

1          If a settlement proposal is made that's

2     deemed to be susceptible of being approved, to

3     advance that settlement effort to the Court and

4     participate in filing the paperwork to get that

5     settlement approved.

6          If there is no settlement offer or the

7     settlement isn't approved, then they have the

8     obligation to participate in the trial on the merits

9     and see the case to a conclusion on behalf of the

10    class they represent.

11         Q    And did Medical and Chiropractic actually

12    participate in the action?

13         A    Yes.

14         Q    Did they participate in discovery?

15         A    Yes.

16         Q    And did they participate in the settlement

17    negotiations and evaluation?

18         A    Yes.

19         Q    What -- just very briefly because this is

20    obviously a limited amount of time, what work has

21    happened up until this point in the Medical and

22    Chiropractic action?

23         A    Well, initially in the case in June we

24    picked up on the discovery that I had been able to

25    accomplish in the State court proceeding and

1     resubmitted that and request for admissions and

2     requests for production, re-establish that evidence

3     for the purposes of moving forward with the case.

4              There were several pleading activities

5     that went on in getting the Second Amended Complaint

6     finalized as you've seen here in January of 2014.

7     Then we engaged in additional documentary discovery

8     from the Buccaneers.  Our clients Medical and

9     Chiropractic and Cin-Q were required to produce

10    their discovery responses and Answers to

11    Interrogatories.  We then engaged in a number of

12    depositions on behalf of the class of third parties

13    as well as representatives of the Buccaneers Limited

14    Partnership.  Counsel for Buccaneers in turn took

15    depositions of Miss Zakrzewski and her husband as

16    the owners of Medical and Chiropractic and Mr. Cin-Q

17    and his wife as owners of Cin-Q Automobiles.  Both

18    of those sets of depositions took a day each in

19    order to establish that they received the facsimile.

20        Q    As Mr. Cin-Q or Cin-Q Automobiles, are

21    they also your client?

22        A    Yes.

23        Q    Now, did Miss Zakrzewski participate in

24    mediations?

25        A    Yes, she did.  Mr. Cin-Q and Miss

1    Zakrzewski attended the mediation in Miami for a

2    full day with mediator Rodney Max.

3        Q    And who participated in that mediation

4    other than Miss Zakrzewski on behalf of Medical and

5    Chiropractic?

6        A    I was there on their behalf.

7    Mr. Oppenheim was there.  Mr. Ross Good was there.

8    Mr. Ryan Kelly was there and I think that was it on

9    behalf of the Plaintiffs.

10       Q    And who was the -- was there somebody that

11   took the lead or was the point person for Medical

12   and Chiropractic as their representative?

13       A    Well, you haven't asked me about other

14   cases I was involved with with Anderson and Wanca

15   but there are a number of cases and I came to know

16   how the work was assigned or allocated in that firm

17   and basically different lawyers had different areas

18   of responsibility.

19            David Oppenheim's responsibility was to

20   prepare for and present the mediation so that you

21   could speak with one voice and he was somebody who

22   was very familiar with mediation and the role that

23   the mediator had to play in order to get a

24   settlement.

25       Q    Did you take that role with the Medical

UNITED STATES DISTRICT COURT                    76

1      and Chiropractic mediation in February of 2015?

2          A    Yes, ma'am.

3          Q    And were there any discussions before the

4      mediation regarding the approach to the mediation,

5      the strategy?

6          A    Yes.  Again it's my understanding that

7      Mr. Oppenheim and Anderson and Wanca dealt with

8      Michelle Zakrzewski as the representative of Medical

9      and Chiropractic.  I dealt with Mr. Cin-Q as the

10     representative of Cin-Q Automobiles to make sure

11     that they understood the mediation summary that had

12     been prepared by Mr. Oppenheim and what the strategy

13     was going to be as we moved forward with that

14     process.

15         Q    And do you consider that information

16     confidential?

17         A    Absolutely.

18         Q    The preparations, you mentioned that

19     Mr. Oppenheim prepared the mediation statement?

20         A    Yes.

21         Q    And what about at the mediation itself?

22     What was his role?

23         A    Well, I'm not saying -- I said nothing but

24     basically we had an agreement that we would speak

25     with one voice.  Mr. Oppenheim dealt with the

1    mediator in explaining the position of the

2    Plaintiffs and explaining the cause of action

3    although Mr. Max was very experienced with TCPA

4    cases, explaining the calculations of damages,

5    explaining how the case would proceed in a

6    settlement if one was to be negotiated because he

7    had a historical practice as far as I can tell of

8    negotiating a settlement with what's called a term

9    sheet where you would not just talk about a monetary

10   amount but there are a number of deal points that

11   have to be discussed and agreed on or negotiated

12   towards an agreement and they are summarized in

13   what's called a term sheet, and that strategy was

14   implemented by Mr. Oppenheim and submitted to the

15   mediator to convey to the Buccaneers.

16        Q    And we don't want to get into the very

17   specifics of the mediation discussions to understand

18   the privilege that applies there.  But did the case

19   settle at the mediation?

20        A    No.

21        Q    Was there another mediation?

22        A    Yes, ma'am.

23        Q    And when was that?

24        A    It was scheduled and took place on

25   August 31, 2015.

1        Q     Who was the mediator?

2        A     Judge -- a retired judge Wayne Andersen,

3    that's s-e-n, from the JAMS office in Chicago.

4        Q     Who attended that mediation for Medical

5    and Chiropractic?

6        A     I attended the mediation, Mr. Oppenheim,

7    Mr. Good, Mr. Wanca and Mr. Kelly I believe.

8        Q     And what was Mr. Oppenheim's role at that

9    mediation?

10        A     Again, he had updated the mediation

11    summary with the additional information that had

12    been acquired between January and August to bring it

13    up to speed, provided that to Judge Andersen several

14    days in advance of the mediation and basically again

15    the spokesperson on behalf of the Plaintiffs class

16    in dealing with Judge Andersen.  We were not allowed

17    to meet with Counsel for the Buccaneers during that

18    full-day session, so our total interactions with the

19    Judge and Mr. Oppenheim is the individual who

20    primarily communicated with the Judge concerning the

21    Plaintiffs' demands, if you will.

22        Q     And did the case settle at that mediation?

23        A     It did not.

24        Q     Were there any further mediation

25    discussions after the August 31st mediation?

1        A    There were discussions that went back and

2    forth principally between Judge Andersen and

3    Mr. Oppenheim on behalf of the class.  Judge

4    Andersen with Mr. Mester or Miss Lally on behalf of

5    the Buccaneers, but of course we weren't privy to

6    their communications and they weren't supposed to be

7    privy to ours, but there was some intermittent and

8    fairly nonspecific communications that went back and

9    forth that didn't amount to anything.

10       Q    And were you not privy to each other's

11   conversations with the mediator because those were

12   confidential?

13       A    Well, I was privy after the fact for the

14   communications between Mr. Oppenheim and the

15   mediator.  I was never privy to the conversations

16   between the mediator and Mr. Mester or Miss Lally on

17   behalf of the Buccaneers except to the extent that

18   Judge Andersen gave us some feedback.

19       Q    And at some point in time, did you come to

20   learn that there was another class action filed

21   against the Buccaneers?

22       A    Yes, I did.

23       Q    And how did you learn that?

24       A    I got an E-mail from Judge Andersen's

25   assistant Brooke the evening of May 11 where my name

1    was in the addressee list advising that a mediation

2    was scheduled on May 20 in the JAMS office in

3    Chicago and it was described as the Buccaneers TCPA

4    case and it included Mr. Mester as an addressee and

5    Daniel J. Cohen who I didn't know and so I called --

6    well, I got that E-mail.

7        Q    I don't know if you'll be able to see this

8    very well.  If not, I'll bring you a copy.

9        A    No, I can see it.

10       Q    You can see it.  Okay.  And this is a --

11   do you recognize this document?

12       A    Yes, I do.

13       Q    And what is this?

14       A    This is the E-mail from Brooke with Judge

15   Andersen's office in Chicago advising that a

16   mediation was scheduled for Friday, May 20 beginning

17   at 9:00 a.m. for eight hours with Judge Andersen and

18   the subject matter is Buccaneers Limited Partnership

19   TCPA with a reference number.

20       Q    And is this a true and accurate copy of

21   the E-mail that you received?

22       A    Yes.

23            MS. LOEW:  Your Honor, we'd move for

24   admission of Plaintiff's Exhibit 5.

25            THE COURT:  Is there any objection?

```
 1              MR. BLONIEN:  No, your Honor.
 2              MR. COHEN:  No, your Honor.
 3              THE COURT:  Plaintiff's Exhibit 5 is
 4     admitted.
 5                        (Plaintiff's Exhibit No. 5 was
 6                         offered and received in
 7                         evidence.)
 8     BY MS. LOEW:
 9         Q    The first line of this E-mail reads your
10     mediation scheduled for Friday May 20th, 2016.  Was
11     that a mediation that was for your case?
12         A    It wasn't a mediation I knew anything
13     about.
14         Q    So what happened after you received this
15     E-mail?
16         A    Well, I received it at 7:20 in the evening
17     Wednesday, so the first thing in the morning
18     Thursday I called Brooke.  First thing for her, it
19     was about probably about 9:30 or 9:45 my time,
20     recognizing there's an hour difference, and I
21     inquired about, you know, has somebody set a
22     mediation that they forgot to tell me about, and so
23     I had some discussion with her.
24         Q    And did she get back to you about that?
25         A    Well, first thing she said she needed to
```

1    go check and take a look at what she had sent, and

2    then she called back and said basically that that

3    was sent to me in error.

4        Q    And did you receive any E-mails from her

5    about that?

6        A    Subsequently sometime afternoon I got an

7    E-mail from her advising me in writing that the

8    E-mail that caused me to call her had been sent to

9    me in error.

10       Q    Do you recognize this document?

11       A    Yes.

12       Q    And what is it?

13       A    That's the E-mail she sent me at 12:11.

14   her time advising me to disregard the invitation

15   that she E-mailed to me yesterday.

16       Q    And is this a true and accurate copy of

17   the E-mail that you received?

18       A    Yes.

19            MS. LOEW:  Your Honor, we move for

20   admission of Plaintiff's Exhibit 6.

21            MR. COHEN:  No objection.

22            MR. BLONIEN:  No objection, your Honor.

23            THE COURT:  Plaintiff's Exhibit 6 is

24   admitted.

25

1                              (Plaintiff's Exhibit No. 6 was

2                              offered and received in

3                              evidence.)

4       BY MS. LOEW:

5            Q    So what happened after you realized this

6       mediation was not scheduled for your case?

7            A    Well, before I heard back from Brooke I

8       took the initiative to go on line both to the

9       Federal Court website in Tampa and the State --

10      well, Federal Court I looked at to see if there were

11      any new Buccaneers lawsuits that had been filed and

12      I didn't see any or at least none that related to

13      the subject matter I was involved in, and then I

14      went on line to the Hillsborough County Circuit

15      Court website and saw a new lawsuit had been filed

16      against the Buccaneers by Technology Training

17      indicating that it was a Constitutional question or

18      a Constitutional law dispute of some sort, but I was

19      able to get on line and access a copy of the

20      complaint and that's when I realized it was the same

21      case.

22           Q    And that action, this is the action that

23      you're referring to?

24           A    Yes.  I'm not sure what exhibit number it

25      is.

1      Q    That's Exhibit 4, I apologize for that.

2   So in Exhibit 4 the class action complaint and

3   Technology Training Associates case, how does the

4   class compare to the class in the Medical and

5   Chiropractic case?

6      A    Basically it's the same class.  It's all

7   persons who from July 1, 2009 to present were sent

8   one or more facsimile advertisements offering group

9   or individual game tickets for Tampa Bay Buccaneers'

10  games but not stating on the first page that the fax

11  recipient may make a request to the sender, et

12  cetera.  That's just the statutory language that was

13  recited in our definition of the class.

14     Q    Did the members of this class overlap with

15  the Medical and Chiropractic class?

16     A    Yes.  They not only overlapped, it's the

17  same class.

18     Q    And what law firm or I should say which

19  attorney filed this case?

20     A    From reviewing the complaint that I

21  located on line, it showed that Phillip Bock had

22  filed it on behalf of Bock and Hatch.

23     Q    At that point in time, did you know that

24  Mr. Oppenheim had left Andersen and Wanca?

25     A    I don't know.  I don't believe so.  I'm

UNITED STATES DISTRICT COURT                    85

1    trying to recall when I first figured that out, but

2    I don't think I was in the need-to-know category at

3    that time.

4        Q    And after you discovered this class, what

5    did you do to respond to this action?

6        A    Well, I spoke with my co-Counsel and

7    jointly we prepared a motion, what's called a motion

8    to intervene in the State court case on behalf of

9    our clients Cin-Q Automobiles and Medical and

10   Chiropractic Clinic in order to try to step in and

11   take control of it.

12       Q    And did those motions go forward?

13       A    Well, we filed the motions in State court

14   on Friday.  We filed another motion in the pending

15   Cin-Q and Medical Chiropractic case in Federal court

16   here on Monday, but I was advised that by the

17   attorney for the Buccaneers, Mr. Mester, that they

18   had canceled the mediation that was the subject of

19   the motion to enjoin and ultimately Judge Andersen

20   confirmed directly to me on Tuesday via E-mail that

21   he had not been retained to mediate a dispute with

22   the Buccaneers over the Telephone Consumer

23   Protection Act or words to that effect.  And I had

24   indicated to Mr. Mester when I got that confirmation

25   I would file something in the case where the motion

1    to enjoin had been filed the day previous, and upon

2    receipt of Judge Andersen's E-mail, I did a notice

3    of filing in the Cin-Q/Medical Chiropractic case and

4    posted that E-mail as an indication that the

5    mediation had been canceled and therefore

6    theoretically muted the motion to enjoin that Judge

7    Porcelli had.

8         Q    And did you come to learn that the case

9    did ultimately proceed to a mediation, the

10   Technology Training case?

11        A    Well, what I learned was on the following

12   day on Wednesday I went to attorney Peter Grilli's

13   office for a mediation in a case of mine that was

14   scheduled weeks or months before and when I walked

15   in to his office, he advised me first that my

16   clients were already there in one of the conference

17   rooms and then asked me if I was going to be at the

18   mediation the next day involving the Buccaneers fax

19   case.

20        Q    And were you planning to be at that

21   mediation?

22        A    I didn't know anything about it.

23        Q    So what happened next in that Technology

24   Training case?

25        A    Well, we went ahead and mediated my case

1    and then afterwards I advised Mr. Grilli that not

2    only would I not be at the mediation but we had

3    filed action trying to enjoin the mediation with

4    Judge Andersen and therefore --

5            MR. BLONIEN:  Your Honor, if I may

6    interpose an objection on hearsay on discussions

7    that occurred out of court.

8            THE COURT:  Response.

9            MS. LOEW:  Your Honor, we are using this

10   not for the truth of the matter asserted, but for

11   the effect on Mr. Addison as far as the actions he

12   took on behalf of Medical and Chiropractic as a

13   result of the discussions.

14           THE COURT:  The objection is sustained.

15   BY MS. LOEW:

16       Q    Mr. Addison, did you ultimately learn that

17   the Technology Training case was dismissed in the

18   State court?

19       A    Yes.  Wednesday afternoon in advance of

20   the hearing we had scheduled the next day.

21       Q    And did that case, did you learn

22   ultimately that that case was refiled in Federal

23   Court?

24       A    Yes.

25       Q    And how did you learn that?

1        A    I had traveled to Chicago for the

2    mediation that Judge Porcelli requested or required

3    us to participate in as the third mediation in the

4    Medical and Chiropractic versus Buccaneers case.

5    That was on Thursday afternoon on I think June 16,

6    and when I got to Chicago I got an E-mail from

7    Attorney Mester indicating that they had settled the

8    Buccaneers -- with the Buccaneers and the --

9    basically settled the case and that a lawsuit would

10   be filed and a settlement agreement would be filed

11   in that lawsuit at some point in the future.

12        Q    And that settlement was not with the

13   Medical and Chiropractic or Cin-Q?

14        A    It was not.

15        Q    And when was that complaint refiled?

16        A    I think they refiled the complaint Monday

17   morning, June 20, and then filed I think on

18   Wednesday, the 22nd, the motion to approve a

19   settlement that had been negotiated with the

20   Buccaneers I guess with the assistance of Mr. Grilli

21   because the paperwork indicated that they had had

22   two days of mediation.  One of them was on May 20 --

23   on May 19 and the other one was sometime like, I

24   don't know, June 5 or 10 or something like that.

25        Q    So they had had two mediations in front of

1    Mr. Grilli?

2        A    That's what they advised us in the papers

3    they filed.

4        Q    And is Medical and Chiropractic supporting

5    the approval of the settlement reached in the

6    Technology Training Federal Action?

7        A    Absolutely not.

8        Q    Just briefly, what is Medical and

9    Chiropractic's position that is set forth for the

10   court?

11       A    Medical and Chiropractic is objecting to

12   the settlement.  It is contending in papers filed in

13   the Technology Training case as well as –– that were

14   earlier filed in the Medical and Chiropractic case

15   that this is a reverse auction and an attempt to

16   eliminate Medical and Chiropractic from its role as

17   a class Plaintiff on behalf of the recipients of

18   these fax advertisements.

19       Q    And has the settlement been approved to

20   date?

21       A    No.

22            MS. LOEW:  Just give me one moment,

23   please.

24                      (Brief pause.)

25            MS. LOEW:  No additional questions at this

```
 1    time.
 2              THE COURT:  Thank you.  Cross examination.
 3              MR. COHEN:  Thank you, Judge.
 4                      CROSS EXAMINATION
 5    BY MR. COHEN:
 6         Q    Good afternoon Mr. Addison.
 7         A    Good afternoon.
 8         Q    I think we've had an occasion to chat if
 9    not meet in person.
10         A    Yes, you called me.
11         Q    And then I saw you at the June 27th
12    hearing in front of Judge Porcelli?
13         A    I guess.  I don't recall interacting.
14         Q    I have a couple questions.  Counsel for
15    the Plaintiff asked you if -- well, actually she
16    asked Miss Zakrzewski?
17         A    Zakrzewski.
18         Q    Zakrzewki, I apologize.  The letters
19    befuddle me, Zakrzewski.  She asked Miss Zakrzewski
20    if we had negotiated an incentive award for her as
21    part of the proposed TTA settlement pending before
22    Judge Porcelli and Miss Zakrzewski indicated there's
23    nothing in the paperwork indicating that we had
24    sought an incentive award for her; correct?
25         A    I don't know what she testified to because
```

1    I was in the conference room where I couldn't hear
2    anything.
3        Q    I wish I had remembered that.  I
4    appreciate you bringing that to my attention.  I'll
5    represent to you that that did happen.
6        A    That she said that there wasn't anything
7    in the settlement agreement for her.
8        Q    Correct.
9        A    I don't recall seeing anything in the
10    settlement agreement for her, but I'm not sure what
11    she said.
12        Q    Okay.  Let's start with the basic class
13    benefit.  Miss Zakrzewski would get anything and
14    everything that's available to all the other class
15    members; correct?
16        A    Well, the corporation would, Medical and
17    Chiropractic.
18        Q    I apologize.  That's what I meant, and I
19    appreciate you clarifying that.  And in the same way
20    your original clients, the Cin-Q clients, would be
21    entitled to whatever all the other class members
22    would be entitled to in the TTA settlement if it
23    were approved and they chose to make a claim;
24    correct?
25        A    And their claim was audited and approved

1    by the Buccaneers and -- yeah, there's a bunch of

2    steps that you have to go through, but if you file a

3    claim and you could establish that you got the faxes

4    and you didn't make a mistake about estimating how

5    many you got and the Buccaneers accepted your claim

6    and so on, then theoretically you would get some

7    money as a claimant.

8        Q    Simply put, if the case and settlement

9    were approved for settlement by Judge Porcelli, then

10   your clients would have the opportunity, both

11   Medical and Chiropractic on the one hand and the

12   Cin-Q clients on the other hand to file claims and

13   have them processed the same way as all the other

14   class members could; correct?

15       A    Yes, that's my understanding.

16       Q    Would it have been satisfactory to you had

17   the Bock Law Firm negotiated incentive awards for

18   Cin-Q and for Medical and Chiropractic at the time

19   they mediated this case?

20       A    No.

21       Q    I had a question about the history of

22   events.  You said that you originally developed a

23   client relationship with Cin-Q in August of 2009;

24   correct?

25       A    That's correct.

```
 1        Q    And then the case was refiled in June of

 2   2013?

 3        A    That's correct.

 4        Q    And I believe you indicated that there

 5   were no other cases on file, correct, at any time?

 6        A    Well, I remember -- I filed an action on

 7   behalf of Medical and Chiropractic in 2012 against

 8   Mr. Clement.  I think I also filed an action on

 9   behalf of Cin-Q against Mr. Clement.

10        Q    Do you know who Joseph Siprut is?

11        A    Yes.

12        Q    He is a class action attorney who handles

13   TCPA Plaintiffs class action work as well; correct?

14        A    Well, let's put it this way.  I know of

15   him.  I don't know him.  I've spoken with him and

16   had some E-mail correspondence with him.

17        Q    Can you tell me what your understanding is

18   as to any involvement or relationship Mr. Siprut has

19   to the Cin-Q and Medical pending class actions in

20   terms of any arrangement as to a division of

21   attorneys' fees for him in the event the Cin-Q

22   medical cases were successfully resolved and

23   attorneys' fees were paid?

24        A    The predicate, I understand Mr. Siprut

25   joined in to a case that was filed by an attorney
```

1    named -- last named Thomas.  After I filed the

2    action in June of 2013 in Tampa Federal court, there

3    was a newspaper article that occurred that described

4    the lawsuit.  Attorney Thomas brought an action on

5    behalf of a series of doctors starting with Doctor

6    Stein and the Buccaneers picked him off before they

7    could get really started and Judge Merryday

8    dismissed the case as mute.

9          He then filed an action with Mr. Siprut

10   with a client called Accounting To You, Incorporated

11   and that was filed in the fall of 2013 and

12   Mr. Siprut asked us to join in and represent

13   Accounting To You as a consolidated case.  The case

14   was consolidated and in that fashion Mr. Siprut if

15   the matter is successfully included by trial or

16   settlement will have an interest in an attorney fee

17   claim in some amount.

18          I didn't negotiate it, so I'm not

19   specifically sure what the arrangement is.

20     Q    I need to understand a little

21   clarification.  The case Stein versus Buccaneers

22   filed by Mr. Siprut, you indicated it had been

23   dismissed on what's called a pick-off where the

24   Defendant offers full value on the named Plaintiffs

25   case in an attempt to make the case disappear so

1     there's no named representative?

2          A     Probably make it mute.

3          Q     Were you aware that case had gone up to

4     the Eleventh Circuit and there had been a "no

5     pickoff" holding?

6          A     They took -- Mr. Siprut and Mr. Thomas

7     took it to the Eleventh Circuit.  It was an open

8     question in the Eleventh Circuit whether the

9     Defendant could pick the class Plaintiff off and

10    that case established in the Eleventh Circuit you

11    could not do that.

12         Q     So Mr. Siprut and Mr. Thomas had a viable

13    case pending for viable class representatives;

14    correct.

15         A     Well, they did once they refiled for

16    Accounting To You.  They didn't make the same

17    mistake that time.  They did a motion for class

18    certification immediately which prevented a pickoff

19    even if it would have otherwise been allowed.

20         Q     But the Eleventh Circuit decision also

21    would have revalidated their original filing;

22    correct?

23         A     It did.  That case is back in the district

24    court.

25         Q     So Mr. Siprut and Mr. Thomas have some

1    stake as attorneys in the outcome in terms of

2    attorneys' fees and the outcome of the Cin-Q and

3    Medical case pending in front of Judge Porcelli?

4    Whatever happened to Mr. Siprut and Mr. Thomas' six

5    named class representatives?

6         A    They refused to participate in discovery

7    like our class Plaintiffs agreed to do and sit for

8    an eight-hour deposition about getting a fax.

9         Q    I'm sorry.  I guess I'm misunderstanding.

10   Were Mr. Siprut and Mr. Thomas' original six

11   Plaintiffs named as Plaintiffs in your original

12   filing of the Cin-Q and medical cases?

13        A    No.  They were named in the lawsuit

14   Mr. Thomas filed copying my complaint.

15        Q    So an attorney who represented six class

16   representatives in a previous incarnation of this

17   same class action case is now essentially joined in

18   for part of the fee, attorney fee on the outcome of

19   your Cin-Q and Medical case and he's not

20   representing directly his six named representatives

21   anymore?

22        A    He's representing Accounting To You which

23   is his client as well.

24        Q    Are they named in your case?

25        A    They are con -- their case is consolidated

                    UNITED STATES DISTRICT COURT          97

1    with ours.  All pleadings are now filed in the

2    consolidated case which is the original low number

3    case.

4         Q    I had an uncertainty about what you were

5    talking about when you said that you had to find the

6    data and you approached the Andersen and Wanca law

7    firm, and now if I understood what you mean in terms

8    of the data, you've tried to get discovery from the

9    Buccaneers, you can't get access to electronic data

10   which will help to identify all the fax recipients

11   and sort the successfully sent from the not

12   successful and you approached Andersen Wanca,

13   Mr. Wanca, to see if he could bring something to

14   bear in that regard?

15        A    Yes.

16        Q    Did you and Mr. Wanca obtain production of

17   the electronic logs for the Buccs' fax broadcast at

18   issue in the Cin-Q class action from the Buccaneers?

19        A    No.  They didn't have them -- they

20   produced the records they had which were a series of

21   E-mails telling them at the end of each day how many

22   faxes had been sent and how many had been received

23   successfully but in a gross number, not identifying

24   fax number by fax number.

25        Q    Eventually you obtained access to the

UNITED STATES DISTRICT COURT                    98

1    actual electronic data; correct?

2         A    Yes.

3         Q    Where did that come from?

4         A    Came from two different sources.  The

5    original faxes that were sent in July of 2009 were

6    sent by one fax blast broadcaster and apparently

7    their data base was somehow deemed to be inadequate.

8    There were a lot of fail broadcasts in that

9    company's effort and so a new company was hired for

10   August of 2009 and then used again in May and June

11   of 2010.

12        Q    And I appreciate that understanding of

13   where the faxing happened and then presumably the

14   electronic data was with those companies.  How did

15   it come to be in your possession or Mr. Wanca's

16   possession?

17        A    We had to issue discovery subpoenas for

18   discovery depositions and travel to distant cities

19   and track down the individuals who had no interest

20   in being located or identified or participating or

21   cooperating and ultimately force them to disgorge

22   the computer hard drives that contained information.

23   The computer hard drives had to be, I won't say had

24   to be decoded or accessed through password

25   protection and so on in order to ultimately get

UNITED STATES DISTRICT COURT              99

1    access to the data, and ultimately when that was

2    done, I filed the action in Federal court in June of

3    2013 because we finally had the ability to identify

4    the class by fax number.

5        Q    So if the refiling in Federal court in

6    June 2013 had not happened, help me understand the

7    case in which the court-compulsory process was

8    issued to obtain this electronic data?

9        A    Well, the case that I had pending was in

10   Florida State Court.  Getting a Subpoena issued from

11   Florida State Court and served in Canada or in the

12   State of Washington or Pennsylvania is not easy, so

13   we ultimately used the lawsuit against Mr. Clement

14   to Subpoena the records and then obtain the data and

15   then it was -- in the meantime the U. S. Supreme

16   Court had issued its ruling in NIMS identifying the

17   TCPA as a Federal cause of action so we were able to

18   file in Federal court finally instead of State

19   court.

20       Q    I understand that, so what you're telling

21   the Court is that you use the Court compulsory

22   process in the Clement case as the vehicle to obtain

23   the electronic data?

24       A    That and the State court case as well.  We

25   had subpoenas in there too.

1       Q    Now, you talked earlier, and I'm glad you

2    brought up the Clement case because you talked

3    earlier in response to Plaintiff's Counsel's

4    questions about all of the involvement that Miss

5    Zakrzewski had, and if I understand correctly you

6    were not simply speaking at the end or with

7    mediations, you were talking about throughout the

8    entirety of your involvement in the case; correct?

9       A    Well, her involvement in getting the case

10   started, and then her involvement after that would

11   be only if the Defendant participated in and sought

12   discovery depositions or production from her but

13   Mr. Clement never participated.

14      Q    I'm sorry.  I wasn't focusing just on the

15   Clement case.  I was actually talking about her

16   involvement throughout the endeavor to pursue and

17   succeed on a class action against the Buccaneers.

18      A    Okay.  All right.  If you're talking about

19   the case I filed in June of 2013 where her company

20   was added as a Plaintiff in January of 2014 with the

21   Second Amended Complaint, yes, she was involved

22   thereafter in the various aspects.

23      Q    You attended her deposition in the Cin-Q

24   case, did you not?

25      A    I either attended it in person or I

1    attended it via telephone, but I think it was in

2    person.

3            MR. COHEN:  May I approach the witness?

4            THE COURT:  You may.

5    BY MR. COHEN:

6        Q    Showing you Volume 1 of the videotaped

7    deposition of Michelle Zakrzewski dated February 12,

8    2014, does that show you present?

9        A    It sure does.

10           MS. LOEW:  Counsel, can I have a copy of

11   that?

12           MR. COHEN:  Sure.

13   BY MR. COHEN:

14       Q    Sir, not to belabor the point, but if you

15   were sitting in on the deposition you would have

16   been present to hear miss Zakrzewski testify at Page

17   114 that she had no involvement whatsoever in

18   strategy or decisions or any other aspect of the

19   prosecution of the case.  Would you have been

20   present when at Pages 137 to 142 of the deposition

21   when she got confused and she thought the currently

22   pending case was the case against Clement and that

23   the case against the Buccaneers was the one that had

24   been dismissed when she testified that she thought

25   the lawsuit we're here on was the one dismissed in

                 UNITED STATES DISTRICT COURT            102

1    2013?  That's at Pages 152 and 153, that, quote, "as

2    it relates to this case I'm basically leaving it up

3    to the lawyers to do everything."  And that at Page

4    175 in this case she doesn't know if depositions

5    were taken, if hearings were held or if discovery

6    was even sent out?  You would have been present in

7    the deposition to hear those aspects of her

8    testimony as well, correct, sir?

9         A    One would assume if you recited the

10   information correctly and I wasn't in the bathroom.

11   What was the date of that deposition anyway?

12        Q    February 12, 2014.

13        A    So the lawsuit had just been filed by her.

14   Less than a month before.

15        Q    You said something in response to

16   Plaintiff's Counsel's questions.  You said it's my

17   understanding that David Oppenheim did such and such

18   with Miss Zakrzewski before the mediations.  Can you

19   clarify for me?  I don't know if I wasn't writing

20   fast enough or I've got a blank.  I want to get

21   detail.

22             Can you tell me what on personal knowledge

23   you know that David Oppenheim communicated to Miss

24   Zakrzewski or she communicated to him at any time

25   relating to the case, the mediations, the strategy

1    or anything confidential?

2         A    Prior to the start of the mediation are

3    you saying or --

4         Q    At any point.

5         A    I was in her presence with Mr. Oppenheim

6    and heard many discussions that occurred during the

7    course of the mediation process in February of 2015

8    but I don't know want -- first of all, it's

9    attorney-client privilege but it's also protected by

10   the mediation privilege, so I don't want to get into

11   discussions of what was actually said.

12        Q    Let me ask it to you this way.  I'm not

13   focusing, and my last question wasn't as clear so

14   this isn't you, it's on me.  I'm not interested in

15   any communications from Mr. Oppenheim to Miss

16   Zakrzewski or from Miss Zakrzewski to Mr. Oppenheim.

17   It simply spoke about things that were equally

18   applicable and relevant to the entire class as they

19   would be to Miss Zakrzewski, strategy for the entire

20   class, something that would benefit the entire

21   class, a concern for the entire class.

22             What I'm asking is can you remember

23   anything at any time said by Mr. Oppenheim to

24   Miss Zakrzewski or her to him that was specific and

25   unique to her or her company that was different from

1    and in any manner adverse to the rights of all the

2    other class members?  Can you remember anything like

3    that?

4         A    I remember there were substantive

5    discussions throughout that nine-hour day in Miami

6    where we were all in the conference room waiting for

7    Mr. Max to come back from his various visits with

8    Mr. Postman and his client.  I remember they were

9    discussions that Miss Zakrzewski was interested in,

10   but I don't have a specific recollection of what was

11   said and I don't think I should be saying what was

12   said assuming I did remember it.

13        Q    Sir, I appreciate that.  I just want to

14   narrow it and make sure the limitation of what I was

15   asking was clear.  You can withhold until we get a

16   ruling from the judge if it's an affirmative answer.

17   But can you recall specifically anything

18   Miss Zakrzewski would have said to Mr. Oppenheim

19   that was personal and unique to her or her company

20   and was not for the benefit and equally applicable

21   to all the other class members?

22        A    Yes.

23             MR. COHEN:  Judge, for the same reasons we

24   generally raised before about the issue of the

25   waiver of attorney-client privilege under the

 1    at-issue exception for the specific factual matters

 2    that the Plaintiff claims entitle them to a claim of

 3    fiduciary duty and something unique to her, we would

 4    ask that the Court rule on whether Mr. Addison can

 5    answer that question as to communications specific

 6    to her, unique to her.

 7              THE COURT:  Response.

 8              MS. LOEW:  And, your Honor, we renew our

 9    objection to the invasion of the attorney-client

10    privilege and specifically to any implication that

11    the waiver would be -- if your Honor goes there, any

12    implication that it be broader than that specific

13    communication to a subject matter.

14              THE COURT:  Right.  And my other question

15    is here is unless there was some joint

16    attorney-client agreement, why is it privileged

17    because Mr. Addison was there and heard these

18    conversations but he didn't represent her, so isn't

19    that a waiver?

20              THE WITNESS:  I did, your Honor.

21              THE COURT:  Did you represent her?  No.

22              THE WITNESS:  Medical and Chiropractic?

23              THE COURT:  Who were you representing?

24              THE WITNESS:  I represented Medical and

25    Chiropractic and she was the president.

```
 1                THE COURT:  Okay.  I thought you were
 2      representing the other party.
 3                THE WITNESS:  I represented both of them.
 4                THE COURT:  Okay.  That was my error.  I
 5      thought you said that you only represented one.  I
 6      wasn't aware that you represented both.  Okay.  Then
 7      my ruling with regard to that is the same as it was
 8      earlier.  I think it falls within the exception.
 9      You may answer the question, Mr. Addison.
10                THE WITNESS:  Okay.  I'm sorry.  What was
11      the question?
12      BY MR. COHEN:
13          Q    In light of the limitations of the ruling,
14      I want to make certain we're very clear.  I'm not
15      seeking any information that Mr. Oppenheim shared
16      with Miss Zakrzewski or she shared with him that is
17      simply in her role as the -- as any other class
18      member, her rights, strategies that would benefit
19      her the same as they would any other class member,
20      any concerns she has just like any other class
21      member would have.  I'm asking if she communicated
22      to Mr. Oppenheim or he communicated to her
23      information unique and specific to Miss Zakrzewski
24      or her company that would distinguish her from the
25      other class members and potentially make her adverse
```

1       to the other class members because of the nature of

2       that information?

3           A    I don't think she would ever be adverse to

4       the other class members.  I think her concern was,

5       for example, that she had spent the money and the

6       time to come down from Tampa to Miami to spend the

7       day there, the evening before and the day there to

8       attend the mediation and she was doing that on

9       behalf of the class.  You know, she knew somebody

10      had to be there and she was the somebody, and she

11      was concerned that in addition to spending the time

12      she spent in deposition, she's now spending another

13      day, what appeared to be a day, it just went on and

14      on and on and she was interested in being

15      compensated for the effort that she was expending on

16      behalf of the class.  Because if somebody like her

17      didn't expend it, there wouldn't be a class and

18      there wouldn't be a successful conclusion of the

19      case, so that was her interest in making sure the

20      class got represented and the settlement got

21      negotiated in a proper way and that she upon

22      successful conclusion would be compensated.

23          Q    I appreciate that.  Are there any other

24      communications that fall within the parameters, the

25      limits of what I asked?

UNITED STATES DISTRICT COURT                    108

1          A     I just recall during the course of the

2     mediation as it went on and on and on, there were

3     many assurances that Mr. Oppenheim gave her as she

4     got more and more frustrated and more and more

5     concerned about how much was happening that wasn't

6     happening and he would assure her, don't worry, you

7     know, we're going to take care of this, we're going

8     to get -- we're going to get a settlement you can

9     live with.  You can get a settlement that you can

10    approve and it was designed to allay her anxiety

11    about being there and participating in a process

12    that didn't seem to be going anywhere.

13         Q     Are you aware that Medical and

14    Chiropractic in this case, Miss Zakrzewski, I'm

15    getting it, that Miss Zakrzewski has made a claim

16    that David Oppenheim breached his fiduciary duty to

17    Medical and Chiropractic?

18         A     Yes.

19         Q     Do you believe you have personal knowledge

20    of specific evidence of breaches?

21         A     Yes.

22         Q     Will you tell the Court the specific

23    knowledge you have, personal knowledge of

24    affirmative breaches of fiduciary duty by David

25    Oppenheim?

```
 1              A    My specific knowledge is that
 2    Mr. Oppenheim worked for the Andersen Wanca firm as
 3    a licensed attorney and along with my firm
 4    represented Medical and Chiropractic in the lawsuit
 5    that was filed in 2013 that her company joined in
 6    January of 2014, that Mr. Oppenheim functioned as an
 7    attorney acting on behalf of Medical and
 8    Chiropractic in two different mediations, one in
 9    Miami and one in Chicago, that he was privy to
10    communications with Miss Zakrzewski and with others
11    in her presence concerning the strategy and the
12    tactics and the approach that was being made.  He
13    was the individual who was the point man who
14    communicated with the mediator on behalf of the
15    group, if you will, both in Miami and in Chicago and
16    subsequently he left the Andersen and Wanca firm and
17    joined Bock, Hatch, Lewis and Oppenheim and filed a
18    competing class action copying the complaint, using
19    the discovery that I got from the Buccaneers in the
20    original filing in 2009 and negotiated in secret and
21    tried to on behalf of the Bock Hatch firm as
22    employed by that entity at the present time compete
23    with Medical and Chiropractic in the handling and
24    the resolution of the claim for that advertising
25    campaign engaged in by the Buccaneers in 2009 and
```

1    2010.

2         Q    Thank you.  I want to focus on something.

3    I want to focus on none of what you said up to the

4    time that Mr. Oppenheim left the Wanca Law Firm.  I

5    want to focus on everything that happened after

6    Mr. Oppenheim left the Wanca Law Firm.

7              To the extent that David Oppenheim says I

8    had nothing to do with the Bock Law Firm's filing of

9    that case, I was not notified of it beforehand, I

10   did not share confidential information or strategic

11   information, I did not participate in that case at

12   all through to its consummation of a settlement, do

13   you have any personal knowledge that's not true?

14        A    I have no personal knowledge that that's

15   not true.

16        Q    So I want you to assume for a moment just

17   for purposes of exploring your statement that you

18   have personal knowledge of a breach of fiduciary

19   duty.  If Bock Law Firm were going to proceed with

20   this case and had never hired David Oppenheim, would

21   David Oppenheim have breached any fiduciary duty?

22        A    No.

23        Q    Would Bock Law Firm have been doing --

24        A    Well, I mean if that's the only predicate

25   or if that's the only assumption, if they were just

1    hired by Technology Training and filed a case a

2    couple years after the statute of limitations ran

3    out, would they be breaching, would Oppenheim be

4    breaching a fiduciary duty?  No, I don't think so,

5    unless he shared information with Mr. Bock secretly

6    that set up the process and provided the documents

7    and the analysis of what happened at the mediations

8    that led to the various unsuccessful mediation.

9            Assuming that didn't happen, assuming

10   Oppenheim doesn't know Bock, they never had any

11   discussions, there's no involvement, then, no,

12   Mr. Oppenheim would not be breaching a fiduciary

13   duty.  He joined the law firm however.

14       Q    So I want you to assume that the only

15   thing that changed is if he did join the law firm

16   and the law firm without his knowledge, without his

17   approval, without inquiring of him, without his

18   input and without him conveying any confidential

19   information proceeded to file that lawsuit.  Now,

20   what was Mr. Oppenheim's choice?  He should have

21   quit the firm to avoid breaching fiduciary duty?  By

22   merely staying at the firm he is affirmatively

23   breaching his fiduciary duty although under my

24   hypothesis he's done nothing?

25       A    I think --

1          MS. LOEW:  Objection, compound.

2          THE COURT:  I'm sorry.  There's an

3    objection.  Compound.  Response.

4          MR. COHEN:  Judge, there was quite a bit

5    there.  I was trying to make sure we got through it

6    and I guess the -- I guess the fundamental question

7    is did the witness seem to understand.

8          THE COURT:  It's a hypothetical and

9    Mr. Addison is an attorney expert, if you will, so

10   if he can answer it, you may answer it, if you

11   understood it.

12         THE WITNESS:  I think my take on it is the

13   Bock Hatch law firm has to decline representation.

14   BY MR. COHEN:

15        Q    And I appreciate what you're saying.  You

16   have a position on the conflict-of-interest issue,

17   and if the Bock Law Firm had a conflict of interest

18   then maybe they end up being disqualified, but

19   that's a different thing than saying that David

20   Oppenheim affirmatively breached some fiduciary duty

21   just because the law firm he happened to work for

22   that he has no control over chose to file a lawsuit

23   without regard to what he did or didn't want and

24   without any confidential or strategic information

25   shared by him.

1             Are you suggesting that -- you're an

2      attorney, you can say, are you suggesting that

3      Mr. Oppenheim's only alternative when he found out

4      that the Bock Hatch law firm was filing that case to

5      avoid a breach of fiduciary duty was to quit?

6         A    If I were to believe all of that predicate

7      that you just gave me, yeah, I think so.

8         Q    Let me ask you very quickly.  Do you

9      recall being at a hearing on a motion for summary

10     judgment in Tampa State court in the case Florida

11     First versus Term Provider?

12        A    Yes.

13        Q    Do you recall that Mr. Bock, Phil Bock was

14     present there with you?

15        A    Yes.

16        Q    And do you recall sharing with him at that

17     time on April 18th of 2016 after Mr. Oppenheim had

18     left the employment of the Wanca firm your concern

19     about the fact that Brian Wanca was holding up

20     settlement in the Buccaneers' case to increase the

21     fund to get more attorneys' fees?

22        A    No.

23        Q    Do you recall on May 2nd of 2016 just shy

24     of a month after Mr. Oppenheim had left the Wanca

25     Law Firm and long after he had started at the Bock

1     Hatch Law Firm, do you recall attending a scheduling

2     conference in a case in Tampa Federal court called

3     Zurich versus Dausel?

4          A     Yes.

5          Q     And do you recall Mr. Oppenheim was

6     present?

7          A     I don't recall that, no, sir.

8          Q     So you wouldn't recall telling

9     Mr. Oppenheim at that time with regard to the

10    Buccaneers' case that Brian Wanca is holding the

11    class hostage to his ego and expressing frustration

12    with Mr. Wanca's role in negotiation?

13         A     What I think I said, and I don't think

14    that's exactly what I said.  I think I said that the

15    mediation process had evolved to a point where a

16    settlement offer had been made by the Buccaneers in

17    accordance with the term sheet protocol that

18    Mr. Oppenheim had insisted on and then I insisted

19    upon receipt of that that we respond with a

20    counteroffer or a counterdemand using the same term

21    sheet protocol but laying out the requirements that

22    the class had at that point and that I insisted

23    Mr. Wanca allow Mr. Oppenheim to prepare that term

24    sheet and resubmit it with the counteroffer, so that

25    was the gist -- that was the gist of getting

1     Mr. Wanca in line because his reaction was he didn't

2     want to respond to it at all, and I said, no, we

3     asked for a term sheet, we got it, we're going to

4     respond to the term sheet in the same manner.

5          Q    I just want to make sure I understand.  A

6     moment ago you told me you couldn't remember David

7     Oppenheim being there and now you recall that that's

8     actually the level of detailed information you

9     shared with Mr. Oppenheim?

10         A    I don't know if that it was there at that

11    hearing.  I remember the discussion over a period of

12    time because we had the original term sheet offer

13    from the Buccaneers in mid-March when Mr. Oppenheim

14    is still working with Andersen Wanca and we

15    ultimately get the counter response somewhat about a

16    week later so that would have had to be that

17    discussion in the March time frame of this year.

18         Q    You would agree, and I understand you have

19    your view or recollection of what you did or didn't

20    say to Mr. Bock on April 18th, Mr. Oppenheim on

21    May 2nd.  You would agree that if you made those

22    communications as I proposed them to you, as I

23    asked, isn't it true that what you said is that

24    Mr. Wanca is holding the class hostage, he's

25    attempting to inflate the fund to increase the

1    attorneys' fee, that that would have been

2    confidential information covered by your mediation

3    privilege that you shouldn't have been sharing with

4    outsiders?

5        A    It would have been and I wouldn't have

6    shared it with Phil Bock because I knew better than

7    to talk to Phil Bock about this at all about the

8    Cin-Q case.

9            MR. COHEN:  Thank you, sir.

10           THE COURT:  We are going to take our

11   afternoon break.  It's 4:00 o'clock.  We'll be in

12   recess until 4:10.  You may step down, Mr. Addison.

13                   (Whereupon a recess was had,

14                    after which the proceedings were

15                    resumed as follows:)

16           THE COURT:  All right.  Cross examination,

17   Mr. Blonien.

18           MR. BLONIEN:  Thank you, your Honor.

19                   CROSS EXAMINATION

20   BY MR. BLONIEN:

21       Q    Good afternoon, Mr. Addison.  I want to

22   move as quickly as I can with these questions.  I

23   hope that's okay with you.  With respect to the

24   mediation, which attorney was the final

25   decision-maker, the one holding the reigns on behalf

UNITED STATES DISTRICT COURT                117

1    of the class?

2         A    Well, I'm not going to say that you would

3    ever have a settlement that would be reached in a

4    mediation with your client there, with three or four

5    lawyers representing your client where it wouldn't

6    be done by virtue of a consensus and agreement by

7    everybody there, so I don't think there's ever any

8    concept of somebody just saying, indicating, yes,

9    we're going to settle it, the rest of you be quite.

10        Q    You understood Mr. Oppenheim was an

11   associate at the firm; is that correct?

12        A    That's correct.

13        Q    Who's the principal and owner of the firm?

14        A    My understanding is it's Mr. Brian Wanca.

15        Q    Is it your understanding that Mr. Wanca

16   gave instructions to Mr. Oppenheim as to how he

17   should approach mediation?

18        A    Sorry?

19        Q    Is it your understanding that Mr. Wanca

20   gave marching orders to Mr. Oppenheim?

21        A    Well, at the outset -- I've dealt with a

22   number of cases with Anderson Wanca and a number of

23   mediations and Mr. Oppenheim is the mediator.  He's

24   the attorney who goes to the mediations.  He's the

25   attorney who prepares for the mediations.  At the

```
 1    time he was first hired was he given direction or

 2    marching orders?  I don't know anything about that,

 3    but I know that he was the individual that

 4    orchestrated and participated and concluded the

 5    mediation when I was there.

 6         Q    In your opinion or understanding based on

 7    your personal knowledge, could Mr. Oppenheim have

 8    settled the case on terms that Mr. Oppenheim thought

 9    favorable but Mr. Wanca disagreed with?

10         A    Probably not.

11         Q    Okay.  You stated that you represented

12    Medical and Chiropractic.  Did I hear that

13    correctly?

14         A    Yes.

15         Q    In connection with the Buccaneers

16    litigation; right?

17         A    Yes.

18         Q    Do you have the written agreement -- did

19    you have a written agreement with her?

20         A    Yes.

21         Q    Okay.  Did you bring it today?

22         A    No.

23         Q    Do you know what it says?

24         A    Do I know what it says?  Well, it's a

25    standard contingency fee retainer agreement for a
```

1    class action.

2         Q    Did you make any promises to Medical and

3    Chiropractic that they would receive an incentive

4    award?

5         A    No.

6         Q    Did you make any promises that Medical and

7    Chiropractic would remain class representative in

8    that case?

9         A    No.

10        Q    And to the extent that any conflicts

11   arose, you would understand that she would have to

12   be withdrawn as class representative and someone

13   else appointed in her place; correct?

14        A    If conflicts arose that were a problem

15   that she caused the conflict?

16        Q    If there were any conflicts of interest

17   between her and any other individual within the

18   class, any other class member, then she would not be

19   an adequate class representative; correct?

20        A    No, I don't think that's true.

21        Q    Okay.  Identify for me, please, all the

22   ways in which the interests of Medical and

23   Chiropractic are in tension with the interests of

24   the Plaintiff in the TTA action?

25        A    Well, she has an action that she's

                UNITED STATES DISTRICT COURT              120

1    basically followed through from January of 2014

2    through today seeking to recover a class-wide fund

3    of money to be distributed equitably to the various

4    class members.  She's invested her time.  She's

5    invested her energy.  She's invested her work with

6    us as her company's counsel to prepare the case and

7    to work with the case and do the discovery and to

8    appear at the mediations and to evaluate the

9    discussions that occur during the course of those

10   mediations, so to the extent that she has that

11   investment in her time and her energy and she's

12   exposed for the costs that were incurred, her

13   company is exposed, she has a conflict with somebody

14   who tries to come in and usurp that and take it away

15   and settle for an amount that she disagrees with.

16        Q    Are you aware of any obligations she's

17   undertaken thus far to pay any money?

18        A    Yes.

19        Q    And what is that?

20        A    She's testified under oath in her

21   deposition about her obligation to pay the costs

22   associated with the case if it's unsuccessful.

23        Q    How much has she undertaken to pay?

24        A    Is she out of pocket now?

25        Q    Yes.

1       A    Other than her travel to Miami and staying

2   overnight in Miami for the mediation in February I'm

3   not sure I'm aware of any other costs that she's

4   incurred out of pocket.

5       Q    And what other costs is she certain to

6   occur in the future, incur in the future?

7       A    Well, if the case -- if the stay of the

8   case is removed, we intend to press on with the case

9   and get a class certification order if that's

10  possible from Judge Porcelli and move the case

11  towards trial and she'll be required to participate

12  in that.

13      Q    Okay.  So is it your position here today

14  in court that the interests of Medical and

15  Chiropractic are materially adverse to the interests

16  of TTA?

17      A    I think to the extent that TTA is trying

18  to take the case away and settle it without a

19  participation of Medical and Chiropractic as the

20  sponsor of this case, yes, I think they are

21  inconsistent with the relationship that Medical and

22  Chiro has with all the rest of the class members.

23      Q    You also represent another class

24  representative called Cin-Q; is that correct?

25      A    That's correct, Cin-Q Automobiles.

UNITED STATES DISTRICT COURT                122

1            MR. BLONIEN:  Thank you.  I have no

2       further questions, your Honor.  Thank you.

3            THE COURT:  Thank you.  Any redirect?

4            MS. LOEW:  No redirect, your Honor.

5            THE COURT:  Thank you, Mr. Addison.

6       You're excused.  Are there any other witnesses on

7       behalf of Plaintiff?

8            MR. SOBLE:  Your Honor, Plaintiff has no

9       other witness.  We do have a binder of the admitted

10      exhibits for the Court which we're happy to give to

11      the Court.

12           THE COURT:  You'll need to bring them up

13      to the clerk.  Would the Defendants like an

14      opportunity to make a brief statement before

15      presenting any witnesses you have?

16           MR. COHEN:  If we may, your Honor.

17           THE COURT:  You may.

18           MR. COHEN:  Thank you, Judge.  Judge,

19      given the time constraint, I'm going to do this very

20      quickly.  This is not a trial on the merits.

21      Technically procedurally a motion for a directed

22      verdict at the close of the Plaintiffs case is not

23      technically the appropriate vehicle, but given the

24      time and everything else involved in this case,

25      before we embark upon presenting evidence where --

1    we talked about this during the break, it's almost

2    like there's been no evidence that creates something

3    we need to come in and negate and so we would be

4    attempting to prove a negative because there has not

5    been a prime facie case established in the

6    Plaintiff's case, and I don't say that as a

7    theatrical or tactical move.  It's simply the fact

8    that we would have three witnesses to put on today

9    and I'm not certain that it's warranted under the

10   current evidentiary presentation.

11          If the Court would like, I can essentially

12   take what was going to be my opening statement and

13   dovetail that in so it will serve both purposes and

14   then the Court can decide if I should go ahead and

15   call our witness after Mr. Blonien is done.

16          THE COURT:  Why don't you do that.

17          MR. COHEN:  Thank you.  Judge, the case

18   that's been brought against Mr. Oppenheim alleges

19   breach of fiduciary duty.  In the context in which

20   it's been pled it is an affirmative breach.  It

21   alleges an affirmative act of commission, something

22   he has done wrong.  There has been no evidence

23   presented by the Plaintiff in support of the prime

24   facie case that he has done anything wrong.

25          All the evidence supports at the present

```
 1     time is that sometime after he left the Wanca firm
 2     and joined the Bock Law Firm -- bock Law Firm is --
 3     and there's no evidence Mr. Oppenheim had anything
 4     to do with it, and his declaration which is part of
 5     the record before the Court at this time
 6     demonstrates he had no involvement whatsoever
 7     precipitating or facilitating the Bock Law Firm's
 8     decision to pursue this case, so you have
 9     Mr. Addison, the only witness who is able to address
10     this, essentially espousing the Plaintiff's
11     position; namely, in that situation Mr. Oppenheim's
12     only choice is to quit his employment.  That would
13     eradicate, according to them, the breach of
14     fiduciary duty.  But what that highlights is that
15     it's not a breach of fiduciary duty really operative
16     here.  What they're claiming is there's a conflict
17     of interest.  They're wrong, but they are allowed to
18     make that argument and the proper forum to make that
19     argument is to Judge Porcelli.
20              As the case law we've cited in all of our
21     pleadings to date show, conflict-of-interest
22     arguments are commonly made during the approval
23     process in class actions.  It is entirely within the
24     jurisdiction of the class action court to address
25     that.
```

1          What they've done is taken a conflict of

2     interest scenario that is properly within the

3     province of the class action court and tried to wrap

4     it up in the terminology of breach of fiduciary

5     duty.  They are not one in the same.  And in this

6     instance where there's no affirmative evidence of

7     Mr. Oppenheim breaching any duty affirmatively

8     through any act of commission, there's no evidence

9     that he provided any confidential information

10    whatsoever to Bock Law Firm.

11         The notion that a competing class action

12    that has reached a settlement that serves the

13    benefits of 131,000 class members as to 343,000

14    unlawful fax transmissions on a case where the

15    theory, the violation happened seven years ago, that

16    that should be derailed based on the hollow motion

17    or petition for preliminary injunction, it seems to

18    be an abuse of the process.

19         I would also argue back to the fact that

20    the Plaintiff herself, Miss Zakrzewski, specifically

21    testified she can't identify any harm in terms of

22    actual dollars.  To the extent that she the ability

23    to petition for an additional incentive award she

24    can still do that.  We have cited cases to that

25    effect, and what she's clarified is she thinks this

1    is dirty pool.  She hasn't -- I'm not criticizing

2    her for this when I say she has a problem.  She has

3    a fundamental disagreement with the way class action

4    procedure goes where it does allow for competing

5    class actions, because I said to her, if

6    Mr. Oppenheim were not at the Bock Law Firm so there

7    was no issue of his behavior and Bock Law Firm were

8    still seeking to proceed with that settlement, would

9    you still be in here trying to stop it?  And she

10   said yes.

11              I understand her concern and her

12   complaint.  It's simply one that the law does not

13   provide a remedy for outside her status as an

14   objective and outside of her status to petition for

15   her own incentive award if she wants to.  This is an

16   attempt to get around Judge Porcelli's jurisdiction

17   and no criticism of your Honor's jurisdiction but

18   it's an attempt to get away from a judge that they

19   don't like the rulings of.

20              They already asked Judge Porcelli to

21   prevent Bock Law Firm from negotiating a settlement

22   with the Buccaneers before the settlement was

23   reached, and Judge Porcelli expressly declined to do

24   so, and now Judge Porcelli has stayed the Cin-Q case

25   in favor of the TTA case and is grappling with some

```
 1    important issues, many of which overlap with exactly

 2    what is being presented by the Plaintiff here today,

 3    and they should be resolved in that courtroom as the

 4    consolidated goal toward the end.

 5           Judge, if the Court is inclined to ask the

 6    Defendant to go forward with their evidence, we

 7    would present the testimony of Mr. Bock.  We would

 8    present the testimony of Mr. Oppenheim, and we would

 9    proffer the testimony of our expert Timothy

10    Chinaris.

11           As a foreshadowing, Mr. Bock will testify

12    that it was his decision to go forward with this.

13    He didn't learn any confidential information from

14    Mr. Oppenheim and he would have gone on with this

15    case with or without Mr. Oppenheim in the firm

16    that -- whether it was necessary or not because it's

17    our opinion it wasn't necessary; namely, that

18    Mr. Oppenheim did not have a conflict of interest in

19    the first place, but as a good faith prophylactic

20    and cautionary measure, Mr. Oppenheim was walled off

21    at all times in this case.  The only thing he was

22    told was this case is pending.

23           It's my understanding Mr. Oppenheim will

24    testify consistent with his declaration and

25    consistent with Mr. Bock's testimony, and if the
```

1    Court entertains Mr. Chinaris' expert testimony,

2    he'll indicate he is the former Ethics Director for

3    the Florida bar from 1989 to 1997.  He has held

4    several other decisions of similar distinction

5    within the Florida Ethical and Disciplinary bar.

6         MR. SOBLE:  Objection, your Honor.  We

7    object to any reference to the expert.  The

8    disclosure that was provided is not consistent with

9    Rule 26(a)(2) and we're going to object to all of

10   it.  They're simply trying to put any of his

11   opinions into the record before the Court has

12   accepted his testimony.  We object.

13        THE COURT:  I don't require compliance

14   with Rule 26 before a preliminary injunction

15   hearing.  Absolutely for trial.  This is a

16   preliminary hearing, and I don't actually even

17   require the parties to disclose who their witnesses

18   will be because I recognize that you are coming in

19   quickly after the cases have been filed or the case

20   has been filed for the Court to then hear your

21   evidence.

22         I also recognize at this stage you haven't

23   had an opportunity to partake discovery, and so in

24   this case it just happens that there are enough --

25   there are other proceedings and so you have

UNITED STATES DISTRICT COURT                    129

1      information from those other proceedings, but I

2      don't -- I purposely don't enter any kind of order

3      with regard to procedure for preliminary injunction

4      hearings because I don't think the rules require

5      that because it is just that, a preliminary hearing.

6           Usually there's not been discovery and the

7      party determines which witnesses they think they

8      need, and typically the parties come in with their

9      witnesses who have given declarations in the case,

10     but if there's -- if someone else presents an

11     additional witness, all that meets your argument

12     with regard to why the Court should consider that

13     witness.

14          MR. COHEN:  Judge, I'm at the end of my

15     opening.  I would just say Mr. Chinaris would

16     essentially offer opinions that based upon his

17     experience and expertise and taking into account the

18     unique context of class action law and how the

19     courts and the bars of the states have interpreted

20     class action law as having a more relaxed conflict

21     of interest standard, one that does not derail the

22     policy behind the beneficial procedure that there's

23     no disqualifying conflict of interest, and more

24     importantly that Mr. Oppenheim breached no fiduciary

25     duty, so obviously Bock Law Firm could not have

1    aided and abetted that.  Thank you very much.

2              THE COURT:  So in that sense as it relates

3    to preliminary injunction, your argument is that the

4    likelihood of on the merits is slim which is one of

5    the prongs that the Court considers when looking at

6    a preliminary injunction.

7              MR. COHEN:  I'm an advocate, so I would

8    say it's zero, but I would appreciate the Court

9    taking into account slim possibility.

10             THE COURT:  Okay.  Now I'm looking -- I

11   know there was an affidavit from Mr. Oppenheim.

12             MR. COHEN:  That was submitted as an

13   exhibit in support of Plaintiff's response now in

14   opposition to the motion to dismiss.

15             THE COURT:  Right, I have it.  Is there an

16   affidavit for Mr. Bock as well?

17             MR. COHEN:  There is not, your Honor.

18             THE COURT:  Okay.  Mr. Soble, you may

19   respond, sir.  And the hearing also is provided to

20   give the Plaintiffs an opportunity to ask questions

21   of those declarants from the Defendants, so even

22   though you may not wish to present any affirmative

23   testimony, the Plaintiff may still wish to cross

24   examine Mr. Oppenheim precisely with regard to the

25   declaration that he submitted, so this still may not

1    be -- Did you wish to be heard, Mr. Blonien, before

2    we -- before I hear from Plaintiff's Counsel?

3              MR. BLONIEN:  If it pleases your Honor.

4              THE COURT:  All right.  Why don't we hear

5    from you and therefore Mr. Soble will have the

6    arguments of both Counsels to respond to.

7              MR. BLONIEN:  Thank you, your Honor.

8    Recognizing this is the context -- in the context of

9    the preliminary injunction and framing it against

10   the standards with respect to the preliminary

11   injunction, I don't think any of the prongs of the

12   tests can be met in this instance, and I want to run

13   through them fairly quickly if I may.

14              The likelihood of success, I think we can

15   stand on these arguments and the briefs of those

16   made today by co-Counsel.  With respect to injury, I

17   want to focus on that one second.  Given the

18   testimony that has been made in open court here

19   today, there is nothing that has harmed the

20   Plaintiff Medical and Chiropractic based on the

21   conduct of Defendant or of Defendants' new firm that

22   he's currently employed at and, therefore, this case

23   must fail both in terms of a preliminary injunction

24   standard where it requires imminent and irreparable

25   harm, but also under Article III which requires

1    "injury in fact" under Lujan in order to proceed

2    with the action and I would move instanter to

3    dismiss the case on lack of standing on that basis.

4

5            There hasn't been anything identified by

6    the Plaintiff as forming a fact to suggest that

7    there was information that was confidential and

8    protected under the privileged cloak of an

9    attorney-client relationship that had been used

10   against her and, therefore, there's no conceivable

11   harm.

12           And with respect to the harm and concern

13   for others, as co-Counsel notes there is a pending

14   proposed settlement in the class action, and if the

15   Court were to grant the injunction in this case, it

16   would effect the rights and interests of all of the

17   remaining class members in a way that would serve to

18   the detriment of them.

19           Also with respect to the public interest,

20   your Honor, to the extent that a Plaintiff enters

21   into a court and files a complaint, without having a

22   basis to establish "injury in fact" and harm related

23   to particular conduct, it would be inappropriate to

24   advance the litigation any further, and for that

25   basis I would cite both Tuambly and Ichbal which do

                    UNITED STATES DISTRICT COURT            133

```
 1    require that something more than conclusory

 2    allegations be made in the context of a complaint

 3    which Rule 11 which requires a reasonable

 4    investigation into the facts and the Eleventh

 5    Circuit decision called Chudasama.  And I'm sorry I

 6    don't have the cite but I can spell it,

 7    C-H-U-D-A-S-A-M-A,  which requires in many instances

 8    the District courts make a threshold determination

 9    before proceeding in to discovery and placing

10    burdens on Defendants to have to defend themselves.

11            In this instance because of the

12    likelihood -- the likelihood that there is no merit

13    to the claims and because of the lack of any

14    identifiable injury we think that this preliminary

15    injunction should be denied and the case dismissed

16    as soon as practicable.

17            THE COURT:  Thank you.  Mr. Soble, you may

18    now respond, sir.

19            MR. SOBLE:  Your Honor, I find the

20    discussion of the damages to be ironic considering

21    it's both Defendants who removed the case alleging

22    the damages were well in excess of $75,000 in a

23    claim to obtain subject matter jurisdiction and now

24    have reversed saying there's no injury at all.

25            So the pleading has not changed since
```

1       then.  The verified complaint has not changed since

2       then, but suddenly the case, it must be removed to

3       get diversity jurisdiction has no damages at all

4       which would make their original removal to be

5       improper in a variety of ways.  And certainly if the

6       case is going to be remanded in that instance, the

7       remand statute entitles us to plead to get our fees

8       and costs related to all of this activity in Federal

9       Court which has been a waste of everyone's time for

10      a claim that they state has no damages.

11              As to the damages itself, certainly our

12      client having invested years as the named class

13      representative in the underlying class action stands

14      to be reduced in their share of the recovery in

15      multiple ways.

16              One, there is no request in the proposed

17      settlement for any sort of award, fee award related

18      to their work in the case and they stand to get

19      none.

20              The Plaintiffs who are there, Technology

21      Trade Associates, they have been in the case for six

22      weeks.  After six weeks they asked for a fee of

23      $20,000, so certainly my client has been in the case

24      for years would have an opportunity to petition for

25      success fees far in excess of that as the lead class

1       rep, not as a secondary class rep, not as another

2       class rep.

3                  Also as was made clear by the Buccaneers

4       Counsel as Miss Zakrzewski testified to in her

5       deposition, the Buccaneers very aggressively

6       questioned her about the fact that if she does not

7       prevail in her case that they may pursue all sorts

8       of costs and fees, and now that there's a new

9       settlement with a new lead class Plaintiff, that is

10      certainly a potential liability for my client.

11                 Moreover, if there is a breach of

12      fiduciary duty firmly established, there can be some

13      sort of disgorgement particularly against

14      Mr. Oppenheim related to when he was in breach, and

15      those -- we certainly don't have them calculated.

16      We'll need lots of discovery on that issue, but that

17      is another potential source of damages.

18                 As far as the likelihood of success of the

19      merits, I keep hearing about confidential

20      information, but when I read Florida Rule 4 -- keep

21      doing that -- 4-1.9, it says, "a lawyer who has

22      formally represented a client in a matter must not

23      afterwards, A, represent another person in the same

24      or substantially related matter in which that

25      person's interest are materially adverse to the

1    interests of the former client unless the former

2    client gives informed consent."

3            The confidential information is Part B,

4    and then further information in C, but those are or.

5    These are not and.  It is a hard stop.  A lawyer who

6    formerly represented a client who now represents

7    another client of substantially related matter in

8    which there's material adversity without informed

9    consent, that is a conflict of interest.

10            Now, we have dispute about material

11    adversity.  Fine.  There can be no dispute that

12    Mr. Oppenheim proactively represented Medical and

13    Chiropractic individually and as the named

14    Plaintiffs in -- excuse me -- as a class

15    representatives at multiple mediations over the span

16    of almost a complete year.  That is certainly

17    representing Medical and Chiropractic.  Thereafter

18    Mr. Oppenheim joins the new firm, that is Bock and

19    Oppenheim and the name on the door, and they

20    represent someone in a substantially related matter,

21    and I don't believe there's any dispute of that.

22    The only dispute is whether they are materially

23    adverse, and the pleadings currently at issue --

24            THE COURT:  Well, the other issue is that

25    the firm represents the new entity, not

UNITED STATES DISTRICT COURT                     137

1     Mr. Oppenheim.  I mean he's of the firm but he's

2     been walled off and has no involvement in that

3     litigation is what I at least gathered from the

4     argument that's been made thus far.

5          MR. SOBLE:  And under Florida Rule 4-1.10

6     that's irrelevant.  There's an imputed

7     disqualification of all lawyers in the firm.  While

8     lawyers are associated in the firm, none of them may

9     knowingly represent a client when any one of them

10    practicing alone would be prohibited from doing so

11    by Rule 4-1.7 or 4-1.9 except as provided elsewhere

12    in this rule unless the prohibition is based on a

13    personal interest of the prohibited lawyer and does

14    not present a significant risk of materially

15    limiting the representation of the client by the

16    remaining lawyers in the firm.

17         It's imputed to the new law firm, and we

18    heard the questions on cross examination of

19    Mr. Addison.  Should he not be the firm?  Well, as

20    we all lawyers know, lawyers try to lateral all the

21    time and one of the things that always done is a

22    conflict check and that conflict check often leads

23    to lawyers not being matches for firms for one

24    conflict of interest or another.  This happens to be

25    one of those conflicts of interest.

1              The idea that -- I would add to that, the
2       idea that Mr. Oppenheim represented a client in two
3       mediations and learned nothing about case strategy,
4       settlement strategy, negotiation strategy, prepared
5       two mediation briefs without knowing anything about
6       his own client?  I mean that would bring up a whole
7       different set of issues.
8              I don't know how a lawyer could stand and
9       say under oath, though he already has, that he
10      didn't know anything.  That doesn't make any sense.
11      It's simply not credible.
12             So because it is imputed to the lawyer --
13      and this is where Florida and Illinois law differ.
14      In Illinois, if Illinois law were to apply, which it
15      does not, you can wall the lawyer off and our claim
16      is in trouble.  But in Florida you can't do that.
17      You need to obtain consent, which they didn't even
18      attempt to do.  They never called -- as a matter of
19      fact, they solicited Medical and Chiropractic.  The
20      new law firm, including Mr. Oppenheim, sent a letter
21      signed by Phil Bock, it's in one of our many
22      exhibits, soliciting our client for the exact same
23      action.  So not -- they are not just going along
24      quietly, they are proactively soliciting
25      Mr. Oppenheim's former client.  It's plainly under

1    the Florida rules as a conflict of interest.  And

2    there's plainly material adversity.  If there wasn't

3    material adversity, Trained Technology Associates

4    and Medical and Chiropractic would not be involved

5    in a small war in front of Judge Porcelli right now.

6         If there wasn't material adversity, then

7    Training Technology Associates would not have filed

8    their action, voluntarily dismissed it, sought

9    settlement and had it filed immediately fully

10   packaged in a span of six weeks.

11        THE COURT:  The material adversity that

12   the Plaintiffs contend relates to the attorney fees

13   to be awarded, any incentive award to the class

14   representative.  Are those the awards that your

15   client primarily claims that create the material

16   adversity?

17        MR. SOBLE:  Those would primarily be the

18   awards and, of course, the two parties fighting over

19   being the class rep and the settlement.  I mean

20   there is -- we're not going to argue over the

21   settlement here, but the fact of the matter is there

22   is a reversal auction allegation.  There's

23   allegations about the settlement itself and those

24   are filed under papers signed on behalf of Medical

25   and Chiropractic against Training Technology

1    Associates, so.

2            THE COURT:  Tell me why you believed that

3    there is irreparable injury because, No. 1, my

4    understanding is that there's an objection that's

5    been lodged before Judge Porcelli with regard to the

6    class settlement.  Doesn't your client have the

7    right to make this argument before the judge who

8    will ultimately have to approve the settlement

9    that's pending?

10           MR. SOBLE:  Yes, but there will be

11   irreparable harm to my client if the lawyer with a

12   conflict of interest is entitled to continue

13   forward.  That the first --

14           THE COURT:  How so?

15           MR. SOBLE:  Because there will be an

16   ongoing conflict of interest.  It will --

17           THE COURT:  Is the conflict of interest

18   the same thing as a breach of fiduciary duty?

19           MR. SOBLE:  Under Florida law conflict of

20   interest can absolutely support a breach of

21   fiduciary duty.

22           THE COURT:  You may continue.

23           MR. SOBLE:  Your Honor, if you could give

24   me just one moment, please.

25           THE COURT:  Sure.

1                    (Brief pause.)
2              MR. SOBLE:  I think the Court also under
3    the preliminary injunction standard must balance the
4    harm to issue, and there's no harm to Training
5    Technology Associates.  Training Technology
6    Associates can continue on with their case.  They'll
7    simply find new counsel.  My client will be stuck
8    litigating against their former client -- excuse
9    me -- their former counsel at a conflict of interest
10   who as we allege is under a breach of fiduciary
11   duty, and I think part of that also becomes the
12   public interest.  Certainly there's a public
13   interest in enforcing ethical rules of the State of
14   Florida against lawyers practicing in Florida, and
15   while Mr. Oppenheim --
16             THE COURT:  We usually don't enforce them
17   in court.  We usually enforce them with a Florida
18   bar complaint.  That's typically how they're
19   enforced.
20             MR. SOBLE:  That's certainly one way they
21   can be enforced also, your Honor, but I think the
22   bar itself and the courts have a public interest in
23   doing that as well, otherwise there wouldn't be
24   breach of fiduciary duty claims.  Certainly a
25   fiduciary duty claims can have to do with other

1     things such as funds and accounts and the like but

2     those also are almost always ethical violations as

3     well, so it's not -- our position is not unusual

4     that we would use ethical violations and a conflict

5     of interest to proceed for a breach of fiduciary

6     duty and there's certainly a public interest in

7     enforcing those rules.

8            I'd also point out, your Honor, that many

9     of the actions they take are inconsistent with their

10    position now.  If there was truly no confidential

11    information exchanged, there would be no reason to

12    wall Mr. Oppenheim off.  If Mr. Oppenheim never

13    learned any confidential information in the case,

14    why wall him off at all?  Why have the discussions?

15    Why alert him to the filing?

16           From their position taken to its logical

17    extreme, they can use Mr. Oppenheim in the case

18    because he never actually learned any confidential

19    information, and I think taken further, this would

20    allow an opportunity where a lawyer is representing

21    class representatives, can dump class

22    representatives and pick up competing class

23    representatives at will, that there's no conflict of

24    interest.  One lawyer can leave a firm and do

25    exactly what Mr. Oppenheim has done and under their

1    briefs doesn't need to do anything about it, that as

2    long as you're at a firm, even if you work directly

3    on that case, right?  And we're not talking about a

4    lawyer who didn't do anything on this case.

5    Mr. Oppenheim led the settlement negotiations on

6    behalf of his client Medical and Chiropractic and

7    the class, so the idea that lawyers can work on

8    cases and file competing cases with different

9    representatives, different clients is something that

10   certainly there's a public interest in protecting

11   small companies like the Medical and Chiropractic

12   firm.

13            And that public interest, the balancing of

14   these harms all support granting preliminary

15   injunction not to stop the underlying class actions

16   but to prevent an ongoing conflict of interest from

17   impacting our client.  Thank you, your Honor.

18            THE COURT:  I am going to proceed with

19   testimony today at least from the Defendants as it

20   pertains to the declarant and party member

21   Mr. Oppenheim and perhaps even at least Mr. Bock.

22   We'll see how far we get, but I do have some

23   concerns.  I do have some concerns about the case.

24   I have some concerns with regard to the irreparable

25   harm which as you all know is a very high standard

1     for purposes of a preliminary injunction hearing,

2     and I have some questions also with regard to

3     likelihood of success on the merits, but my bigger

4     issue is with regard to the irreparable harm, so at

5     this point the Defendants may call their first

6     witness.

7             MR. BLONIEN:  Your Honor, at this point we

8     call Mr. Oppenheim, Mr. David Oppenheim.

9                     (Witness sworn.)

10            COURTROOM DEPUTY CLERK:  Please state your

11    name and spell your last name for the record.

12            THE WITNESS:  David Max Oppenheim,

13    O-P-P-E-N-H-E-I-M.

14            COURTROOM DEPUTY CLERK:  Thank you.

15            THE COURT:  You may proceed.

16            MR. BLONIEN:  Thank you, your Honor.

17                DAVID MAX OPPENHEIM,

18    called as a witness on behalf of the Defendants, having

19    been first duly sworn under oath, was examined and

20    testified as follows:

21                  DIRECT EXAMINATION

22    BY MR. BLONIEN:

23      Q    Mr. Oppenheim, can you identify the first

24    time that you met Miss Zakrzewski?

25      A    It would have been dinner before the first

                UNITED STATES DISTRICT COURT                145

1      mediation that's been discussed.

2          Q    Okay.  And can you identify the instances

3      thereafter that you met Miss Zakrzewski?

4          A    I spent several hours, however long the

5      duration, at the mediation in Miami, was in the room

6      with her.  That was it.

7          Q    And can you identify any other

8      communications that you had with her that were not

9      in person?

10         A    I don't believe I've ever spoken with her

11     other than those two situations in person.

12         Q    When you attended the mediations, were you

13     acting as an attorney in those mediations?

14         A    I was.

15         Q    Who were you an attorney for?

16         A    The class.

17         Q    Were you an attorney for the individual

18     Ms. Zakrzewski?

19         A    No.  It was a class action.  I was there

20     to negotiate a class settlement only.

21         Q    Were you the attorney for Medical and

22     Chiropractic as an individual party?

23         A    I was an attorney for them as the named

24     class representative as well as Cin-Q is the named

25     class representative and I was there as I said to

1     negotiate a class-wide settlement.

2          Q     Based on your understanding of the class

3     action rules to the extent that Ms. Zakrzewski

4     shared individual information particular to Medical

5     and Chiropractic that was in some way adverse to any

6     other member of the class, what is your

7     understanding of what the next step should be?

8          A     In that circumstances my understanding is

9     under Rule 23 I'd have an obligation to disclose

10    that information to the Court and to seek to

11    substitute a new class representative whose

12    interests aren't adverse to the class.

13         Q     Has Ms. Zakrzewski -- did Ms. Zakrzewski

14    at any time give you confidential information

15    particular to the Plaintiff Medical and

16    Chiropractic?

17         A     No.

18         Q     When you terminated your firm, did you

19    also terminate any representation of the class at

20    that time?

21         A     Yes.  I did not take the clients to the

22    case with me.

23         Q     And have you participated in the

24    preparation, the filing of the second class action

25    that's at issue in this case, the TTA action?

UNITED STATES DISTRICT COURT                    147

1        A     I have not.

2        Q     To your knowledge is there any material

3    adversity between TTA and Medical and Chiropractic?

4        A     No.  Both are similarly situated potential

5    Plaintiffs within a large class.

6        Q     Based on your understanding of the

7    operation of the class action rules, Mr. Oppenheim,

8    is it permissible under those rules to represent

9    some party who proposes a settlement and also at the

10   same time represent somebody who opposes the

11   settlement?

12       A     Well, I think that if you're Counsel for a

13   class and some of your named representatives object

14   to a settlement, at that point presumably they get

15   their own counsel.

16       Q     Is it your understanding by operation of

17   the class action rules that an individual can

18   represent one party against a class member in an

19   ongoing class that they represent?

20       A     Say that again?  I'm sorry.

21       Q     That was a little bit garbled there.  My

22   hypothetical is this:  You're a class action lawyer

23   representing a particular class.  Your firm or you

24   also have an action against one of the class

25   members.  Is that permissible based on your

1     understanding of the class action rules?

2          A    So we have -- there's somebody who's part

3     of a class and then they are also a Defendant?

4          Q    Right.

5          A    Something else?

6          Q    Yes.

7          A    I'm not sure.

8          Q    Do you know of any reason why that

9     presents a problem?

10         A    No.  No.  I mean classes are often very,

11    very large and inclusive, so I'm sure it's come up.

12         Q    In your understanding, are the operation

13    of the rules as they pertain to conflicts the same

14    in class action settings as they are in an

15    individual representation?

16         A    No.

17         Q    Ordinarily with respect to an individual

18    representation, isn't it the case that if you have

19    two clients with potentially opposing interests that

20    that would be a disqualifier in and of itself?

21         A    Yes.

22              MR. SOBLE:  Objection, leading.

23              THE COURT:  Sustained.

24    BY MR. BLONIEN:

25         Q    Can you explain to me under the ordinary

1    rules how they would play out with respect to two

2    individual people that you represent?

3         A    Well --

4              MR. SOBLE:  Objection.  It's unclear if

5    the witness is testifying to the Florida or Illinois

6    rules and if Florida, the foundation for him to be

7    able to testify to those ethical rules.

8              THE COURT:  He's a member of the Florida

9    bar, isn't he?

10             THE WITNESS:  I am not a member of the

11   Florida bar.

12             THE COURT:  Thank you.  All right.  Lay

13   the foundation -- well, first of all --

14             MR. BLONIEN:  I'll withdraw.

15             THE COURT:  Is this under Florida or

16   Illinois law?

17             MR. BLONIEN:  I'll withdraw the question

18   and, in fact, I think I'm done.  I don't have any

19   further questions, your Honor.  Thank you, your

20   Honor.  Thank you, Mr. Oppenheim.

21             THE COURT:  All right.  Mr. Cohen.

22             MR. COHEN:  Thank you, Judge.

23             THE COURT:  I saw a Miami address, and I

24   assumed because of that you were a member of the

25   Florida bar, so.

UNITED STATES DISTRICT COURT                    150

1              THE WITNESS:  Mr. Bock has that address.

2      I have a Chicago.

3              THE COURT:  All right.

4                    CROSS EXAMINATION

5      BY MR. COHEN:

6          Q    Mr. Oppenheim, when was the first time you

7      found out that the Bock Law Firm was filing or had

8      filed a claim against the Buccaneers that would

9      overlap with or compete with the medical Cin-Q class

10     action?

11         A    Well, I got an electronic filing receipt

12     from the Hillsborough County State court late in the

13     day as I was walking out the door on Friday, May 6th

14     of this year.  I was intending to ask Mr. Bock about

15     what it was, and then he texted me the following

16     morning to let me know that he filed a case and that

17     I was screened off.

18         Q    Do you understand that you've been accused

19     by Medical and Chiropractic of an affirmative breach

20     of fiduciary duty?

21         A    I've read the complaint, yes.

22         Q    And do you understand that's an

23     intentional tort that speaks to your state of mind

24     of knowingly doing something wrong?

25         A    That's my understanding, yes.

1        Q    As far as you know, did you knowingly do

2   anything wrong?

3        A    No, sir.

4        Q    There was a discussion with your Counsel

5   Mr. Blonien about the differing approach to conflict

6   of interest that exists in the class action context

7   and I want to ask you this.  To the extent that you

8   were confronted with the fact that your new law

9   firm, Bock Law Firm had filed this case which

10  obviously overlaps with or competes with the Cin-Q

11  case, were you familiar with the case law such as

12  Eubank versus Pella and the Radcliffe case, the

13  latter being out of the Ninth Circuit, and the

14  former being out of the Seventh Circuit, were you

15  familiar with those case decisions?

16       A    Well, I was familiar with the Pella case

17  being the main objector who represented the

18  objecting class representatives in the Seventh

19  Circuit.  I learned of the Radcliffe case when I was

20  researching these issues after being sued.

21       Q    Now, I understand that this Court will

22  have to make a decision about what rule does or

23  doesn't apply under the Florida rules governing this

24  context, but taking account of what the Eubank case

25  said which you knew about at the time and taking

1    account of what you've seen in the Radcliffe case,

2    did you believe and knowingly persist any kind of

3    breach of fiduciary duty as toward Medical and

4    Chiropractic?

5         MR. SOBLE:  Objection.  He's a fact

6    witness testifying for himself as a fact witness,

7    and they're asking him to give basically a legal

8    opinion to apply those facts to case law that they

9    rely on in their briefs.  It's really asking him for

10   his opinion of whether their briefs are correct.

11        MR. COHEN:  I'm actually speaking to his

12   state of mind as a Defendant who's been accused of a

13   knowing breach of fiduciary duty, what he knew at

14   the time and how it influences what he thought was

15   right or wrong, whether he engaged in a knowing

16   breach of fiduciary duty.

17        THE COURT:  The objection is overruled.

18        THE WITNESS:  No, sir, I did not.

19        MR. COHEN:  I have nothing further.  Thank

20   you.

21        THE COURT:  Mr. Soble.

22             CROSS EXAMINATION

23   BY MR. SOBLE:

24        Q    Mr. Oppenheim, you mentioned that you got

25   an electronic notice of a case from Hillsborough

UNITED STATES DISTRICT COURT          153

1      County; is that right?

2           A     That's correct.

3           Q     And it was electronic notice of a newly

4      filed complaint?

5           A     Right.  My recollection is that it said

6      filing receipt, fee received and gave a caption -- a

7      caption including a title.

8           Q     Why did you get electronic notice?

9           A     I asked Phil Bock about that later and

10     what he told me was the electronic system of the

11     firm is set up to spit out that filing receipt that

12     come in to the entire office.

13          Q     So you didn't get it from Hillsborough

14     County?  You got it internally from your own firm?

15          A     The E-mail as I understand it came from

16     Hillsborough County and then got automatically

17     routed to everyone in our office.

18          Q     But you didn't get notice directly from

19     Hillsborough County?

20          A     I'm not sure what you are asking.

21          Q     Hillsborough County did not send the

22     E-mail directly to your E-mail address at the new

23     firm?  You're saying that it was internally routed

24     by the Bock firm?

25          A     I don't know the answer to that.

1          Q     How on earth would Hillsborough County

2     know to send a notice directly to you on a newly

3     filed complaint in the new Technology Training

4     Associates case if you weren't named as counsel for

5     it?

6               MR. BLONIEN:  Objection, your Honor.

7     Calls for speculation.  Asked and answered.

8               THE COURT:  Sustained as to asked and

9     answered.

10    BY MR. SOBLE:

11         Q     Now, you worked at Anderson and Wanca from

12    July 15th, 2009 to April 8th, 2016; is that right?

13         A     Yes.

14         Q     And you gave your notice that you were

15    resigning on April 8th, 2016?

16         A     I think it was the day before the 7th.

17         Q     And then you started work at your new law

18    firm -- the 7th is a Thursday; is that correct?

19         A     Yes.

20         Q     And you started work at your new law firm

21    on Monday, the 11th of April?

22         A     Yes.

23         Q     And that law firm does business as Bock,

24    Hatch, Lewis and Oppenheim, LLC; correct?

25         A     Yes.

1        Q      You were the Oppenheim?

2        A      I am.

3        Q      You're licensed in Illinois?

4        A      Yes.

5        Q      You're not licensed in Florida though;

6   correct?

7        A      That's correct.

8        Q      You're also not a resident of the State of

9   Florida?

10       A      No, sir.

11       Q      It's your position that you do not have

12   such frequent or regular appearances in separate

13   cases to such a degree as to constitute the

14   maintenance of a regular practice of law in the

15   State of Florida at least as recently as of

16   April 27th, 2016; isn't that correct?

17       A      I think that's a fair statement.

18       Q      But in reality you practice in Florida

19   quite a bit for a lawyer from Illinois, don't you?

20       A      I'm not sure what you're asking me to

21   compare myself to.

22       Q      Sure.  You've been admitted in to the

23   U. S. District Court in Florida in one or more of

24   the districts at least nine times; isn't that

25   correct?

1          A     I don't know the number, no.

2          Q     Okay.  Do I need to pull out the pro hoc

3     vice admissions for all nine to get to the nine?

4     You don't think it's very many at all?

5               MR. BLONIEN:  I object on grounds that

6     this isn't relevant to the proceeding at hand.

7               THE COURT:  Response.

8               MR. SOBLE:  Your Honor, as we talked about

9     there is a challenge as to the jurisdiction, the law

10    that should apply to this case, and if this lawyer

11    is constantly appearing in Florida and admitting pro

12    hoc vice in various cases and very notably in the

13    Medical and Chiropractic did not appear pro hac vice

14    and challenges the application of Florida law, it is

15    certainly probative whether Florida law should apply

16    here.

17              THE COURT:  I'm going to overrule the

18    objection.  It is cross examination.  I'll allow you

19    some leeway.  You may answer the question.

20              THE WITNESS:  I don't have any knowledge

21    sitting here today whether the number is greater or

22    lesser than nine.

23    BY MR. SOBLE:

24         Q     Were you admitted pro hoc vice in the case

25    of American Casualty Company of Reading, PA versus

1       Bob Wines Nursery in August of 2012 in the U.S.

2       District Court for the Middle District of Florida?

3           A    Yes.  I was admitted in the case.  The

4       date sounds plausible.  I don't have independent

5       knowledge of what it was sitting here.

6           Q    Were you admitted in June, on June 4th,

7       2012 in the case of American Casualty Company of

8       Reading, Pennsylvania versus Superior Pharmacy, LLC

9       also Middle District of Florida?

10          A    Same answer.

11          Q    And what about October 15th, 2013 in the

12      Southern District of Florida in the case of

13      A Aventura Chiropractic Center, Inc., versus

14      Midwaste Management, LLC?

15          A    Same answer.

16          Q    And Southern District of Florida

17      October 31, 2013 in the case of Seemar versus

18      Metropolitan Life Insurance Company admitted

19      November 26th, 2013?

20          A    Yes.

21          Q    Now, actually that brings us to Physicians

22      Health Source, Inc., versus Doctor Diabetic Supply,

23      LLC again in the Southern District of Florida.

24      Isn't it true that in that case the Court denied

25      your request to be admitted pro hac vice?

1        A    Yes.

2        Q    And the Court denied your request to be

3   pro hac vice in light of your agreement at a hearing

4   on August 20th, 2014 that you would seek admission

5   to the bar in the Southern District of Florida;

6   correct?

7        A    I don't recall that.

8        Q    Would it refresh your recollection to look

9   at the order that the Court entered that says that?

10       A    Possibly.

11       Q    Okay.  Your Honor, since I'm just

12  refreshing recollection, normally I would not

13  publish the exhibit through the overhead.  Would the

14  Court prefer that I give it to Counsel?

15            THE COURT:  If you're just refreshing

16  recollection, just give it to him.

17  BY MR. SOBLE:

18       Q    Sir, if you could just take a look at this

19  and tell me when you're done reading it.

20       A    I'm finished.

21       Q    Hand it back it me.  Does that refresh

22  your recollection that in light of your agreement at

23  the August 20th, 2014 hearing that you would seek

24  admission to the bar in the Southern District of

25  Florida, that the Court Judge Patricia Seitz denied

UNITED STATES DISTRICT COURT              159

1      your motion to appear pro hac vice in that case?

2          A    No, it just confirms that the pro hac was

3      denied.

4          Q    Would it refresh your recollection to look

5      at the transcript of the hearing when you told the

6      court that?

7          A    Possibly.

8               MR. SOBLE:  Can I have the transcript,

9      please?

10              MR. BLONIEN:  Your Honor, if I may just

11     place a standing objection to this line of inquiry

12     on the grounds of relevance.

13              THE COURT:  Yes.  You may respond.

14              MR. SOBLE:  Your Honor, again, this is a

15     situation where Counsel promised a Federal judge

16     that he would get admitted to the Court and did not

17     and continues to practice in the State of Florida

18     including in our case but says that Florida law

19     should not apply to his representation of Medical

20     and Chiropractic.

21              THE COURT:  You may proceed.

22     BY MR. SOBLE:

23         Q    Mr. Oppenheim, I'm handing you a copy of

24     what purports to be the transcript of August 20th,

25     2014.  You're welcome to read as much as you'd like

1       but I'm going to ask you about Pages 4 and 5.  Does

2       that refresh your recollection, Mr. Oppenheim?

3               A       It does.

4               Q       And so isn't it true that you told the

5       Court that you would get admitted in the Southern

6       District of Florida?

7               A       The Court suggested that I get admitted to

8       the Federal District, and I'm admitted to several

9       Federal District courts in states in which I am not

10      a member of the bar.  I was unaware at that time

11      that one of the requirements to get admitted as a

12      member of the Southern District of Florida is to be

13      a member of the Florida bar which I'm not.

14              Q       And then further and -- we'll get into

15      2016 now.  Palm Beach Golf Center Boca, Inc., versus

16      John G. Syrus.  You were admitted pro hac vice

17      March 11, 2016 in the Southern District of Florida;

18      correct?

19              A       That sounds right.

20              Q       And S.A.S.B. Corporation d/b/a/ Okeechobee

21      Discount Drug versus Concordia Pharmaceuticals,

22      Inc., Southern District of Florida admitted on or

23      about June 28th, 2016?

24              A       Again, sounds correct.

25              Q       Same with Daisy, Inc., versus Polo

1    Operations, Middle District of Florida, June 4th,

2    2016?

3         A    2016?

4         Q    Yes.

5         A    No.  That would have been much earlier.

6    That's and -- that's a Wanca case.

7         Q    But you were admitted in that case?

8         A    Yes.

9         Q    Now, you did represent Medical and

10   Chiropractic as its attorney in the underlying class

11   action again the Buccaneers, didn't you?

12        A    I fulfilled a niche role in the Anderson

13   and Wanca assembly line process for handling cases.

14   My role was to come in when a class case was ready

15   for a class settlement to try and get it done.

16   That's the role I performed in that case.

17        Q    So, Mr. Oppenheim, on direct you were

18   asked, at least what I thought, were some

19   complicated questions about whether you breached a

20   fiduciary duty and so on and so forth.  All I did

21   was ask you whether they were your client and that

22   seemed to be hard to say yes or no.

23             Can you say yes or no whether you

24   represented them and they were your client and

25   client of the law firm?

1        A    They were named representatives in a case

2   in which I worked on behalf of a class.

3        Q    So yes or no, were they your client?

4        A    I stand by my prior answer.

5        Q    Which is you can't answer yes or no

6   whether they were your client?

7        A    I stand by my prior answer.

8        Q    Are any of the companies or individuals

9   that you ever represented in your entire career as

10  class representative your client?

11       A    They are class representatives in a case

12  in which I worked for a class.  I can't think of a

13  specific instance in which I had an individual

14  representation of any of them at that time.

15  Obviously my career is not only class actions.

16       Q    I know, but I only asked about class

17  actions.

18       A    Okay.

19       Q    And the class actions would just like in

20  this case include a complaint, that someone was

21  filing a complaint both individually and as a class

22  representative?

23       A    Presumably that would be the terminology

24  employed.

25       Q    But then presuming that was the

                    UNITED STATES DISTRICT COURT                   163

1    terminology employed, you can't tell me whether you

2    individually represented any of those companies?

3          A    Well, I've never been on any of the

4    retainer agreements, number one, and, number two,

5    the role that I played at least in this case was

6    only in terms of trying to come in and get a class

7    settlement done.  I'd have to look at all sorts of

8    files from all these other cases you're asking me

9    about to know if my role was broader.

10         Q    Well, in that role, is it your position

11   you weren't representing any of those individual

12   companies?

13         A    I was representing the class.

14         Q    So not the individual companies?

15         A    I think -- yeah, I was representing the

16   class.

17         Q    All right.  So, Mr. Oppenheim, I

18   understand, right?  Your name is not on Andersen or

19   Wanca, and while your name is on the door at the

20   Bock Law Firm, the Florida name is Bock Law Firm

21   LLC, just like my name is not Jeff, Foley and

22   Lardner, right?  And all the letterhead is Foley and

23   Lardner and not Soble, but I'm pretty sure that I

24   know when I represent clients and don't, but you

25   don't seem to know?

1          A     Are you asking for an answer?

2          Q     Yeah, I'm asking whether you know when you

3     are representing clients or not.

4                MR. BLONIEN:  Objection, your Honor, asked

5     and answered, badgering the witness.

6                THE COURT:  Well, actually I don't think

7     the question has been answered.  I think the

8     question is simply is whether -- when you asked him

9     whether he represented the organization individually

10    or as a class representative.  I think that was the

11    limit the witness was having.  Maybe if you qualify

12    the question, we'll get a straight answer.

13               MR. SOBLE:  That is the question I've been

14    trying to ask multiple different ways, your Honor,

15    and I'm just trying to get an answer as to whether

16    he represented them individually and they were his

17    clients.

18               THE WITNESS:  I represent --

19               THE COURT:  Whether he represented Medical

20    and Chiropractic individually?

21               MR. SOBLE:  Yes.

22               THE WITNESS:  No, I did not.

23    BY MR. SOBLE:

24         Q     From your perspective?

25         A     I would imagine all of my testimony is

                    UNITED STATES DISTRICT COURT          165

1    from my perspective.

2        Q    Who represented Medical and Chiropractic

3    individually?

4        A    I don't know that anyone did at least in

5    the context of this case.

6        Q    So Medical and Chiropractic filed a

7    complaint, a class action complaint in which it says

8    it is filing it both individually and as a class

9    representative and no law firms represented them

10   individually?

11       A    I don't know.  The complaint itself was

12   only ever a class action.

13       Q    I understand that.  But every class

14   representative files their complaint both

15   individually for the direct harm they've incurred

16   and on behalf of the class and corporations are not

17   permitted in Federal court to appear pro se, so who

18   represented Medical and Chiropractic in the fax case

19   when you were at Andersen and Wanca?

20       A    I hadn't seen the retainer agreement so I

21   don't know that I can answer that.

22       Q    Now, it's your testimony, isn't it, that

23   you worked diligently as an attorney involved in the

24   mediations of the class action on behalf of the

25   class that Medical and Chiropractic represented?

1       A    Yes, sir.

2       Q    And that diligent representation involved

3  putting together the mediation briefs?

4       A    I did that, yes.

5       Q    Which would have included I presume

6  generally speaking all of the legal arguments?

7       A    Yes.

8       Q    All of the factual bases for the claims?

9       A    To some extent, yes.

10      Q    And you would need to look at whatever

11 file it is to put that together, wouldn't you?

12      A    Yes.

13      Q    And that would include the pleadings in

14 the case?

15      A    Yes.

16      Q    The discovery in the case?

17      A    Yes, to the extent that I drafted the fact

18 section.  A lot of times Mr. Kelly would draft that

19 section for me.

20      Q    You would submit the mediation briefs?

21      A    Yes, or -- well, my assistant would.

22      Q    And not only looking at the discovery but

23 discovery in particular, interrogatories answers

24 that were signed by Medical and Chiropractic?

25      A    I don't recall if those were included in

UNITED STATES DISTRICT COURT          167

1    this one.

2         Q    Documents produced by Medical and

3    Chiropractic?

4         A    I don't think there were any.

5         Q    Would it be your routine practice,

6    wouldn't it, in doing a mediation statement to at

7    least consider looking at things like what the named

8    class rep had produced in discovery, if anything?

9         A    Yes.  But typically only if we saw issue

10   with respect to that particular class rep in terms

11   of their adequacy or that it was one of the

12   Defendants' arguments to attack the adequacy,

13   otherwise this was a brief designed to convince the

14   Defendant that they want to make a class settlement,

15   so it's going to focus on the common class issues.

16        Q    And certainly if you're doing a mediation

17   brief on behalf of the named class rep, if they'd

18   been deposed particularly for eight hours over the

19   Federal limit, that would be something that you'd

20   consider in putting the brief together, isn't it?

21        A    I don't recall if I did or not.  Am I

22   supposed to confirm or deny what's actually in the

23   mediation statement?

24        Q    No.  I have another question pending for

25   you, sir.

1          A     Okay.

2          Q     Now, at the time you left Anderson and

3     Wanca, the class had been not been certified;

4     correct?

5          A     That's correct.

6               MR. SOBLE:  Can I have just a moment

7     please, your Honor?

8               THE COURT:  Yes.

9               MR. SOBLE:  Nothing further, your Honor.

10     Thank you, Mr. Oppenheim.

11               THE COURT:  All right.  Thank you.  Is

12     there any redirect?

13               MR. BLONIEN:  Yes, your Honor.

14                    REDIRECT EXAMINATION

15     BY MR. BLONIEN:

16          Q     Mr. Oppenheim, in class cases, who is your

17     foremost duty of loyalty and fiduciary to?

18          A     The class.

19          Q     To the extent that there's a conflict

20     between the class and a named representative, who do

21     you owe your duties to?

22          A     The class.

23          Q     In a class action, who's the adverse

24     party?

25          A     The Defendant.

1          Q    In the underlying class action that forms

2     the basis for the complaint in this case, who was

3     the adverse party?

4          A    Buccaneers Limited Partnership, LP.

5          Q    Are there any other adverse parties?

6          A    No.  I believe they are the only one.

7          Q    Have you ever represented the Buccaneers?

8          A    No.

9          Q    In this case or in any other?

10         A    No.  Never.

11         Q    Have you ever represented anyone suing

12    Medical and Chiropractic?

13         A    I have not.

14         Q    Have you ever told any information to the

15    Buccaneers and their lawyers, any confidential

16    information you learned in the course of the

17    mediation?

18         A    No.

19              MR. BLONIEN:  No further questions, your

20    Honor.

21              THE COURT:  All right.  Thank you.  All

22    right.  Thank you, Mr. Oppenheim.  You may return to

23    your seat.  Defendants may call their next witness.

24              MR. COHEN:  Your Honor, the Defendant

25    would call Phillip A. Bock.

1                        (Witness sworn.)

2            COURTROOM DEPUTY CLERK:  Please state your

3    name and spell your last name for the record.

4            THE WITNESS:  Phillip Andrew Bock,

5    B-O-C-K.

6            COURTROOM DEPUTY CLERK:  Thank you.

7            THE COURT:  You may inquire.

8            MR. COHEN:  Thank you, Judge.

9                      PHILLIP A. BOCK,

10   called as a witness on behalf of the Defendants, having

11   been first duly sworn under oath, was examined and

12   testified as follows:

13                   DIRECT EXAMINATION

14   BY MR. COHEN:

15       Q    I know the court reporter has it, but

16   would you state your name for the record?

17       A    Phillip Bock, B-O-C-K.

18       Q    Mr. Bock, are you the owner of Bock Law

19   Firm, LLC indirectly through another entity Phillip

20   A. Bock, PC?

21       A    Yes.

22       Q    Are you essentially the owner of Bock and

23   Hatch?

24       A    Yes.

25       Q    And at some point after Mr. Oppenheim

                UNITED STATES DISTRICT COURT            171

1    joined the firm, did you decide to change the name

2    to Bock, Hatch, Lewis and Oppenheim?

3         A    Well, yes.  That was something that I had

4    agreed to before he came.

5         Q    Is Mr. Oppenheim a principal in the firm?

6    Does he have any ownership stake?

7         A    No, I'm the only principal.

8         Q    Who made the decision on behalf of Bock

9    Law Firm, LLC to pursue the class action, what we're

10   describing as the TTA action against the Buccaneers?

11        A    I did in consultation with other attorneys

12   not including and excluding David Oppenheim.

13        Q    And when you speak of other attorneys,

14   you've got how many attorneys at the firm?

15        A    Ten total.

16        Q    You conferred with some of them?

17        A    I did.

18        Q    And just to be clear that your answer is

19   not misunderstood, did you confer at all with

20   Mr. Bock in deciding to pursue the case?

21        A    With Mr. Oppenheim?

22        Q    My apologies.

23        A    I did not confer with Mr. Oppenheim in

24   deciding to file the case.

25        Q    I understand you said you conferred with

1     other attorneys in the office.  Whose ultimate

2     decision was it whether to pursue and file that

3     case?

4          A     Mine.  Well, the clients.

5          Q     There's been a suggestion in some of the

6     pleadings in this case about the manner by which the

7     TTA client and the Doctor Schwanke client were

8     obtained.  In particular I believe it's been

9     suggested that somehow you mimed the Cin-Q

10    production discovery to find a Plaintiff and that

11    you used the Cin-Q list of the Buccaneers fax

12    broadcast recipient population to form a

13    solicitation letter in order to get a Buccaneers

14    class member.  Is that what happened?

15         A     No.

16         Q     Can you tell the Court how it came about

17    that Bock Law Firm, LLC had the clients TTA and

18    Schwanke available as Buccaneers class action

19    Plaintiffs?

20         A     We had sent marketing letters to various

21    and lots of places in Florida.  After acquiring

22    lists of mostly medical providers, we -- I drafted

23    solicitation letters and had them approved by the

24    Florida bar and then sent them to those lists

25    looking for people who get junk faxes and would like

1     to pursue such claims because that's what I've been

2     doing since 2003.  And I'm licensed in Florida, and

3     I moved to Florida, and I thought it would be a good

4     idea to file cases in Florida.

5          Q     How was it then -- well, first of all, did

6     TTA and Doctor Schwanke respond to those

7     solicitation letters that had been approved by the

8     Florida bar?

9          A     Yes, they did.

10         Q     How was it that you ultimately were able

11    to ascertain that TTA and Doctor Schwanke were

12    members of a putative Buccaneers TCPA class?

13         A     I looked at the class certification brief

14    on file in the case.  Attached is a report from a

15    guy named Robert Biggerstaff who's been my expert in

16    something like a hundred cases where he looks at

17    phone records or -- not phone records, but computer

18    records of fax transmissions to decide how many hits

19    there are, how many successes there are, and I

20    looked for fax numbers of clients of people who had

21    contacted me and wanted me to represent them.

22         Q     And TTA and Doctor Schwanke showed up in

23    the Biggerstaff report?

24         A     Them among others.

25         Q     Why did you decide to wall David Oppenheim

                    UNITED STATES DISTRICT COURT                174

1     off of this case?

2         A    Because I knew that his former employer

3     with whom I've had hundreds of TCPA class actions

4     and currently have probably 30 or 40 would complain

5     that David was going to work on the case, so I

6     screened David off as an abundance of caution to

7     make sure nobody could claim there was some

8     skulduggery or whatever.

9         Q    Was there any --

10        A    But let me add that it wasn't something I

11    really wanted to do because David Oppenheim is a

12    great lawyer and should work on every class action

13    involving the TCPA frankly, but I knew that somebody

14    would complain if he was working for my firm and

15    working on a competing case trying to get a

16    settlement or -- yeah -- get a settlement done for

17    the class, so I screened him off and I told him out

18    of an abundance of caution you will be treated like

19    the plague, don't feel bad.

20        Q    Did you believe that it was a breach of

21    fiduciary duty for David to be working at your firm

22    while the rest of the firm with him walled off

23    pursued the TTA class action?

24        A    No, I did not.  I still don't.

25        Q    If you had thought so, would you have

1    proceeded?

2         A    No, I wouldn't.

3         Q    Do you believe that you have in any

4    fashion aided and abetted a breach of fiduciary

5    duty?

6         A    No.  He has not breached a fiduciary duty

7    because a class counsel —— a class attorney's duty

8    is to the class, not to the named Plaintiff, and if

9    there's ever a conflict you choose the class, and it

10   happens all the time and I've never heard of it

11   going the other way.

12        Q    And I just want to ask you, because you

13   understand that Medical and Chiropractic is

14   represented by the Wanca Law Firm; correct?

15        A    Well, I've heard that, yeah.

16        Q    So have you ever become aware of a

17   scenario in which the Wanca Law Firm on a case, for

18   example, a class action case that you're working

19   with them on behalf of a class with one or two named

20   class representatives, that while that case is still

21   pending the Wanca Law Firm went out and got new and

22   different class members to be representatives and

23   filed that case in a different jurisdiction without

24   you and without your original class representatives

25   in the case where it's still pending?  Are you aware

1      of any such example of that?

2                MS. LOEW:  Objection, relevance.

3                THE COURT:  Response.

4                MR. COHEN:  Judge, they're saying here,

5      and this is Medical and Chiropractic, the client

6      with different lawyers, but they're speaking to what

7      is supposedly and across the board well-recognized

8      breach of fiduciary duty and an untenable conflict

9      of interest that any and every court should

10     recognize, and the reality I think is that Mr. Bock

11     is going to testify on personal knowledge to the

12     fact that Medical and Chiropractic's attorneys in

13     this Cin-Q class action with Wanca have, in fact,

14     done the exact same thing, and the reason he's never

15     taken any action about it is because it's not a

16     breach of fiduciary duty and it's not a conflict of

17     interest.

18                THE COURT:  All right.  I'll overrule the

19     objection and allow you some leeway.

20                MR. COHEN:  Thank you, Judge.

21                THE WITNESS:  Yes, I am aware of such an

22     example.

23     BY MR. COHEN:

24         Q    Can you explain to the Court what you're

25     aware of?

```
 1            A     That we have a case pending in
 2      Pennsylvania or New Jersey Federal court, I think
 3      New Jersey, City Select versus BMW in which my firm,
 4      Anderson Wanca firm and a local Counsel firm in New
 5      Jersey, Alan Millstein's firm, I don't remember the
 6      name of his firm right now, represents a putative
 7      class against BMW.  The class certification was
 8      denied under the ascertainability arguments in the
 9      Third Circuit.  Mr. Pfeiffer there filed a petition
10      for leave to appeal.  It was granted by the Third
11      Circuit.  It's got -- it's gotten some notoriety.
12      The Chamber of Commerce has weighed in because the
13      defense bar wants to argue that to preserve this
14      ascertainability test that other circuits have
15      rejected, and meanwhile Mr. Wanca files a new
16      competing class action in Federal court in Illinois,
17      not sure why, didn't mention it to any of us, and
18      it's kind of a routine thing that people file
19      competing cases but usually not the people you're
20      doing your case with.
21            Q     And I understand you're obviously not
22      pleased about the fact that Mr. Wanca did that, but
23      did you think that in some fashion Mr. Wanca was
24      breaching a fiduciary duty to the class
25      representative in the case the two of you had
```

1    originally filed together?

2         A    No.  I don't think he breached a fiduciary

3    duty.  I just think it's a stupid thing to do, and

4    in this situation where we're going to win in the

5    Third Circuit and make some changes in the law and

6    have a good case, to file a competing case, I don't

7    know what the point of that is, but he makes his own

8    choices I guess.  But, yes, it's a competing case,

9    overlapping classes with a different client that

10   isn't represented by me.  It doesn't include our

11   current client City Select who's litigating an

12   appeal in the Third Circuit.

13            MR. COHEN:  I don't think I have anything

14   else.  Thank you.

15            THE COURT:  Mr. Blonien.

16            MR. BLONIEN:  Thank you, your Honor.

17                     CROSS EXAMINATION

18   BY MR. BLONIEN:

19        Q    I have two brief questions I hope and they

20   focus on the financial compensation related to the

21   Buccaneers' litigation.  Can you describe in

22   connection with walling off Mr. Oppenheim what

23   impact it would have on any revenue that your firm

24   obtains as a result of that litigation?

25        A    Well, I would not pay him a bonus or

                 UNITED STATES DISTRICT COURT            179

1      anything based on whatever fees we might recover in

2      a settlement with the Buccaneers because he's

3      screened off.

4          Q    Okay.  Is it your understanding that part

5      of the screening-off process requires that no

6      financial compensation be paid to the person

7      screened off?

8          A    Yes.

9              MR. BLONIEN:  No further questions, your

10     Honor.

11             THE COURT:  All right.  Thank you.  Miss

12     Loew.

13                    CROSS EXAMINATION

14     BY MS. LOEW:

15         Q    Good afternoon, Mr. Bock.  So before you

16     hired Mr. Oppenheim, you were aware that he had

17     worked on the Medical and Chiropractic lawsuit?

18         A    The Buccaneers case?  I don't know if I

19     knew it was Medical and Chiropractic.  I knew there

20     was a case called Cin-Q that he was working on.

21         Q    You were aware that that was a case that

22     he worked on when he was at Anderson and Wanca?

23         A    Yes.

24         Q    And you -- after he came to the firm, you

25     did not ask for a waiver from Medical and

1    Chiropractic?

2           A    I did not ask for a waiver.

3           Q    You did not ask for a waiver at any point

4    in time from either Cin-Q or Medical and

5    Chiropractic?

6           A    Correct.

7           Q    And the case, the Technology Training

8    case, this wasn't a case that just fell in your lap,

9    was it?

10          A    What does that mean?

11          Q    You described the efforts that you just

12   undertook to get this case, reviewing the docket of

13   the Cin-Q Automobiles lawsuit; is that correct?

14          A    Can you repeat that?

15          Q    So you've described on direct the efforts

16   that you took to start this Technology Training

17   Associates lawsuit.  Specifically you described

18   reviewing the expert report that was filed in the

19   Cin-Q Automobiles case and comparing the class -- I

20   apologize -- the fax numbers from Technology

21   Training Associates and Mr. Schwanke to the expert

22   report in that case; isn't that correct?

23          A    Kind of.  Because I didn't read the whole

24   expert report.  I just looked at the list of unique

25   fax numbers that Robert Biggerstaff says received

1       the faxes at issue and I then looked for my clients

2       who have those fax numbers.  There's a hundred

3       thousand fax numbers, just about everybody in Tampa

4       or the surrounding area and that's how I found that

5       my clients are in the class and that's how I was

6       able to file a case on behalf of clients against the

7       Buccaneers.

8                  THE COURT:  Mr. Bock, I need you a little

9       bit closer to the microphone.

10      BY MS. LOEW:

11           Q    And in doing that you knew that this was a

12      case that Mr. Oppenheim had worked on before?

13           A    Yes, I did know that.

14           Q    And you went ahead, even though you didn't

15      have a waiver, you went ahead with filing the

16      Technology Training Associates case in Hillsborough

17      County; isn't that right?

18           A    Well, I didn't file it even though I

19      didn't do something.  I just filed the case.  That's

20      true.

21           Q    But before doing that, you had reviewed

22      the docket and the class members, compared you

23      described the hundred thousand fax numbers to the

24      clients that you had to determine whether they were

25      in the class; isn't that correct?

1        A     Yeah.  That's what I did.

2        Q     And when you filed the case Technology

3    Training Associates, did you represent Technology

4    Training Associates individually?

5        A     No.

6        Q     You only filed a -- the case as a class

7    representative?

8        A     I filed the case.  They're class

9    representative.  I'm class counsel, and both of us

10   know that the whole thing is we're representing the

11   class to try to accomplish a settlement.  That's the

12   idea.

13       Q     And the case -- is that true for every

14   class action that you filed?  You do not represent

15   the class representatives individually?

16       A     Yes.  If it's a class action, I represent

17   the named Plaintiffs in their capacity as proposed

18   class representatives of a class, yes.

19       Q     This case, you filed it on May 6th of

20   2016; isn't that right?

21       A     Well, the first Technology Training versus

22   Buccaneers case was filed in State court on May 6,

23   2016.

24       Q     This was after Mr. Oppenheim had joined

25   your firm?

1          A     Yes.

2          Q     And the class definition in the Technology

3     Training complaint covered the same persons who were

4     covered in the Medical and Chiropractic action;

5     isn't that correct?

6          A     Yes, I think so.

7          Q     The faxes at issue were in 2009 and 2010;

8     isn't that right?

9          A     Yes.

10         Q     And is there a four-year statute of

11    limitations applicable to TCPA claims?

12         A     Yes.

13         Q     So you filed this Technology Training

14    action more than four years after the faxes were

15    sent?

16         A     Yes.

17         Q     So did you -- you filed this case then

18    after the statute of limitations had run?

19         A     Yes.  I don't know if it was tolled.  I

20    would have argued it was tolled in State court for

21    sure.

22              MR. BLONIEN:  Your Honor, I would like to

23    interpose an objection on the grounds that these

24    call for legal conclusions on matters that hadn't

25    been settled in the class litigation.

1                THE COURT:  Response.

2                MS. LOEW:  Your Honor, Mr. Bock has

3     represented himself as a class attorney who filed

4     this case.  I assume he's familiar with the statute

5     of limitations for the claims that he has filed.  In

6     addition it talks in some of the briefing about the

7     fact that the Buccaneers have agreed to waive the

8     statute of limitations argument.

9                THE COURT:  The objection is overruled.  I

10    think the witness can answer the question

11    specifically, the question directed to a complaint

12    that he filed.

13                MS. LOEW:  Correct.

14                THE COURT:  You may respond.

15                THE WITNESS:  I guess that I would say

16    that, no, the statute of limitations had not run,

17    but it was tolled by the filing of the prior cases.

18    BY MS. LOEW:

19         Q    And when you filed this case on May 6th,

20    someone from your firm immediately reached out to

21    the Buccaneers about settlement; isn't that correct?

22         A    Yes.

23         Q    And you scheduled a mediation, you being

24    the Bock Law Firm, scheduled a mediation that was

25    scheduled for 13 days after the filing of the

1     complaint?

2          A     You know, I don't know the number of days,

3     but...

4          Q     The complaint was filed on May 6th and

5     initially there was a mediation that was going to go

6     forward on May 19th?

7          A     Okay.

8          Q     Does that sound correct?

9          A     Yes.  Yes.

10         Q     And the underlying class action, the Cin-Q

11    Automobiles versus Buccaneers class action, that had

12    been pending for several years at that point;

13    correct?

14         A     Two I think, three, yeah.

15         Q     You never served the Buccaneers with the

16    Technology Training action in State court; correct?

17         A     I don't know.  I mean I know you're saying

18    me, the law firm, but I don't know Phil Bock because

19    that's not something that I do.  I don't issue the

20    subpoenas and follow up on that.

21         Q     You don't know whether your firm ever

22    served the Technology Training action on the

23    Buccaneers?

24         A     I don't know.  Not formally.  Obviously we

25    gave them a copy of the complaint or they had a copy

                    UNITED STATES DISTRICT COURT          186

1    of the complaint.

2         Q     Before the mediation?

3         A     Yes.

4         Q     And before the mediation, you dismissed

5    the pending State court action; isn't that right?

6         A     Yes.

7         Q     And that was because of the efforts that

8    Medical and Chiropractic and their Counsel were

9    taking with respect to the State court case; isn't

10   that right?

11        A     Sort of.  I mean it was because all of a

12   sudden these people are trying to prevent us from

13   negotiating with the Defendant to reach a settlement

14   that would then be proposed for the approval of all

15   the class members and the judge and them and

16   everybody involved in the class action would have an

17   opportunity to object.  But that's not the only

18   reason I dismissed it.  I didn't need to have a case

19   on file to negotiate a settlement with the

20   Buccaneers and I decided that rather than fighting

21   and wasting some Judge's time in Tampa with this

22   stuff, just dismiss the case.

23        Q     And there was a motion for intervention

24   that was supposed to be heard the day after the

25   dismissal; isn't that right?

1          A     I don't think it was supposed to be heard,

2     but we filed a case.  Mike Addison filed some kind

3     of motion to intervene and somehow got a hearing

4     scheduled without any participation or cooperation

5     or knowledge of me.

6          Q     And that was scheduled for May 19th?

7          A     I don't remember the date, but yes, it was

8     scheduled and I did nonsuit the case before.

9          Q     On May 18th?

10         A     Probably the day before, yeah.  Yeah, I

11    did, because I remember calling judge's clerk to

12    tell her that I had nonsuited the case --  No.  I

13    take that back.  I take that back.  I can't remember

14    who called.  I called when we were -- when we

15    removed this case.

16         Q     And you removed this case when there was a

17    pending motion for temporary injunction; correct?

18         A     I think it was -- it wasn't a temporary

19    restraining order.  It was a preliminary injunction.

20         Q     A motion for a temporary injunction?

21         A     Motion.

22         Q     And going back to the report, the expert

23    report that you looked at the several hundred

24    thousand or hundred thousand fax numbers, that was

25    information that had been obtained during the

UNITED STATES DISTRICT COURT                    188

1    litigation to -- against the Buccaneers and their

2    fax broadcaster; correct?

3        A    No, I don't think so.

4        Q    Was that expert report attaching the fax

5    numbers something that came out of the Buccaneers

6    litigation, the Cin-Q Automobiles --

7        A    I don't remember.  I don't think --

8    Biggerstaff usually doesn't even say what case his

9    report is for I don't think, but it was filed in the

10   Cin-Q/Buccaneers case attached for motion for class

11   certification.

12       Q    So that was information you pulled from

13   the Cin-Q Automobiles' case in which Medical and

14   Chiropractic is the class representative; correct?

15       A    No.  They're one of the proposed class

16   representatives and I went on the ECF system and

17   pulled the motion for class certification.  That's

18   where I found it.

19       Q    Now, the mediation on May 19th, you did,

20   in fact, go forward with that mediation in front of

21   mediator Peter Grilli; correct?

22       A    I don't remember.  I don't remember the

23   date right now.  I think it was -- we were going to

24   have it on a Friday, and instead --  We were going

25   to have it on a Friday in Chicago with Judge Wayne

UNITED STATES DISTRICT COURT            189

1    Andersen and then he was going to do it because he'd

2    already done the mediations of the class actions

3    against the Buccaneers already and then he was

4    threatened and as general counsel issued some thing

5    and Judge Andersen said based on his advice, I'm not

6    going to do it.  And so we had to find a different

7    mediator and that was Peter Grilli here in Tampa,

8    and when he was available was a day earlier, so I

9    think it was a Thursday.  I don't remember if that

10   was the 19th, though.

11        Q    He didn't have the same reservations about

12   proceeding with this mediation as Mr. Andersen -- as

13   Judge Andersen?

14        A    I don't know that Judge Andersen had any

15   reservations about proceeding.  I think he wanted to

16   do this mediation.

17        Q    But he didn't go forward with it?

18        A    He did not.

19        Q    And so the Technology Training action, the

20   Technology Training Plaintiffs mediated two times

21   with the Buccaneers; isn't that correct?

22        A    Two -- two formal mediations, yes.

23        Q    The second one was on June 1st, 2016?

24        A    I don't remember the date.  I thought it

25   was June 2nd, but I don't remember the date.

1        Q    It was in early June?

2        A    Okay.  Yes.

3        Q    And Medical and Chiropractic filed this

4    case on June 1st, 2016; isn't that right?

5        A    I don't remember the date.  I know that at

6    the end of that second mediation with Peter Grilli I

7    got a letter from your office saying hold on to all

8    documents or something like that.  I don't remember

9    if it said that you'd filed a case and I didn't know

10   that anybody had filed anything.  If there was

11   something filed before, I didn't know about it, so I

12   don't know the dates and where they lined up.  I

13   just know the first time I heard about it was I got

14   a letter from your firm saying hold on to all the

15   documents and then subsequent to that I got -- I

16   found -- I don't remember when I found this case.

17       Q    And so the actual form in terms of the

18   settlement agreement with the Buccaneers you've

19   reached on June 16th of 2016?

20       A    I don't remember the date that it was

21   signed.  Whatever the date is is the date.

22       Q    If your motion for preliminary approval

23   represented that it was June 16th, 2016, would you

24   have any reason to disagree with that date?

25       A    Well, I don't know if we signed the

UNITED STATES DISTRICT COURT                191

1   settlement agreement on the date that the motion for

2   preliminary approval was filed, but I think the

3   settlement agreement would have a date on it

4   somewhere.  By the signature lines maybe?

5       Q    And at the point in time that you reached

6   the settlement agreement, you were aware of the

7   pending lawsuit for Medical and Chiropractic;

8   correct?

9       A    Yes.

10      Q    And you actually removed the case to this

11  court; right?

12      A    I removed this case, yes, I mean the firm

13  may have, yeah.

14      Q    And the settlement terms of the action of

15  the proposed settlement, excuse me, in the Medical

16  and Chiropractic action, the potential attorneys'

17  fees is 25 percent of the settlement fund; is that

18  correct?

19      A    Yes.

20      Q    And that's $4,875,000?

21      A    That's 25 percent of the $19.5 million

22  fund, yes.

23      Q    And this is for a lawsuit that your firm

24  filed on May 6th of 2016?

25      A    Yes.  Well, not really.  It's the one that

1    was filed later in Federal court.

2         Q    So even less time pending than the one

3    that had been filed on May 6th of 2016?

4         A    I don't know what the time has to do with

5    this.  It's not really an issue.

6         Q    And you're asking the Court to approve an

7    award of $20,000 for Technology Training Associates?

8         A    No, we have not asked for that.

9         Q    In the settlement agreement, did you put

10   as a term in the settlement agreement that you could

11   ask the Court to approve an award of $20,000 for

12   Technology Training Associates?

13        A    I didn't put that in there but that is

14   probably -- yeah, that's in there I'm sure.

15        Q    And $3,000 for Mr -- excuse me -- Doctor

16   Schwanke?

17        A    Yes.

18        Q    And --

19             THE COURT:  I'm sorry.  Are you referring

20   to incentive awards?

21             MS. LOEW:  Yes.

22   BY MS. LOEW:

23        Q    And they have not given any depositions in

24   this case; correct?  And by this case, I'm referring

25   to the Technology Training Associates case.

1          A     Correct.

2          Q     And they haven't responded to any

3     discovery?

4          A     That's correct.  Technology Training

5     Associates was at the mediations both times.

6          Q     If your firm is enjoined from representing

7     the Plaintiffs in the Technology Training action,

8     Technology Training can obtain other counsel;

9     correct?

10         A     I'm not sure.

11         Q     And so could Mr. Schwanke or Doctor

12    Schwanke?

13         A     Probably, yeah.

14         Q     Now, you argued that neither Oppenheim nor

15    your firm nor the Technology Training Associates

16    Plaintiffs are pursuing relief that is materially

17    adverse to Medical and Chiropractic; correct?

18         A     You mean today?

19         Q     In this case.

20         A     Yeah.  That's true.

21         Q     And nonetheless, you still walled off

22    Mr. Oppenheim; correct?

23         A     Right.

24         Q     And you understand that Medical and

25    Chiropractic has argued to Judge Porcelli that your

                    UNITED STATES DISTRICT COURT          194

1    firm has pursued a reverse auction; right?

2         A    I'm not sure.  I'm not sure.  They throw

3    the word reverse auction around, but I think they

4    filed a brief last week or the week before just

5    saying that as a matter of law looking at the

6    document it's a reverse auction, but it's not the

7    result of a reverse auction.

8         Q    But that's their argument; correct?

9         A    I'm not sure.

10        Q    That they've also taken steps to ask to

11   try to intervene in the State court action, right,

12   Medical and Chiropractic?

13        A    Pardon me?  They filed a petition to

14   intervene in the State court case.

15        Q    And they asked the Court to enjoin the

16   Buccaneers from proceeding in a competing case

17   previously?

18        A    I think you're -- Are you saying in the

19   Cin-Q versus Buccaneers case?

20        Q    Correct.

21        A    They asked Judge Porcelli to enjoin the

22   Buccaneers.

23        Q    Yes.

24        A    Yes, I've seen that pleading.

25        Q    And they also asked the Court to dismiss

UNITED STATES DISTRICT COURT                195

1        the Technology Training Plaintiffs class claims sue

2        sponte for lack of Article III standing?

3             A    I don't remember whether that's their

4        argument.

5             Q    But you understand that they have

6        submitted papers to the Court asking the Court not

7        to approve the settlement?

8             A    I don't know that.  I know they moved to

9        consolidate the cases.  They moved to intervene in

10       the settlement.  I don't know if they're asking them

11       to reject the settlement.  I don't remember seeing

12       that, but, yeah, maybe they are.  I don't remember.

13            Q    And they've also filed this lawsuit and

14       are taking all of these actions as well; correct?

15            A    Taken all of what actions?  For some

16       reason they've tried to prevent anybody from

17       settling, from negotiating one of the biggest TCPA

18       settlements ever with the Buccaneers in a seven year

19       old case or seven year old faxes.  To say they take

20       all these actions, I mean, yeah, we're here.

21            Q    And specifically they asked to stop your

22       law firm from settling that case; correct?

23            A    I can't -- yes, probably.  I don't

24       remember.  The wherefore clause, I'm not sure.  It's

25       been in several iterations I think.  I don't

1    remember if it's just directed at the firm.  I think

2    it says the firm and Technology Training Associates

3    and anybody acting in concert with them which would

4    I think include the Buccaneers and Judge Porcelli I

5    guess.

6              MS. LOEW:  Just one moment, your Honor.

7                   (Brief pause.)

8              MS. LOEW:  No further questions, your

9    Honor.

10             THE COURT:  All right.  Thank you.  Is

11   there any redirect?

12             MR. COHEN:  Briefly, Judge.

13                  REDIRECT EXAMINATION

14   BY MR. COHEN:

15        Q    Counsel had asked you if you ever

16   contacted Medical and Chiropractic or Cin-Q and

17   sought a waiver of a conflict of interest and you

18   indicated that you had not done so; correct?

19        A    Yes.

20        Q    If you had thought there was a conflict of

21   interest, would you had done so?

22        A    Yes.  If I thought there was a conflict I

23   probably wouldn't have filed the case, but I don't

24   see a conflict.  Probably not.  I would not approach

25   the clients of somebody else I know to be

                    UNITED STATES DISTRICT COURT          197

1     represented by an attorney and ask them anything.  I

2     would have asked them for a waiver I guess.

3          Q     Did you believe there was a conflict --

4          A     No.

5          Q     -- that raised waiver issues in the first

6     place?

7          A     No, there is not.

8          Q     Just to be clear, has your firm ever

9     represent the Buccaneers?

10         A     No.

11         Q     Has your firm ever represented Medical and

12    Chiropractic?

13         A     I don't know.

14         Q     Do you have any reason to believe your

15    firm has represented Medical and Chiropractic?  And

16    I don't mean as an absent class member.  I mean as a

17    named class representative in a case you have

18    pursued.

19         A     Yeah.  I don't know.  I know that on

20    Wanca's, one of his expense spread sheets in

21    preparation for this hearing, I was looking to see

22    what kind of expenses we had reimbursed and there

23    was a reimbursement for something called Medical and

24    Chiropractic versus Clement, but I don't know -- I

25    don't know -- I think that was an error.  I have no

1    idea, but I've never seen any retainer agreement or

2    nobody has told me that I represent them in any

3    case.

4        Q    Counsel brought up something that you had

5    said when I was asking questions on direct and she

6    said it like three times, so I just want to make

7    certain there's wasn't a misunderstanding.

8            There's like 131,000 separate and distinct

9    fax numbers in Robert Biggerstaff's expert report

10   filed in the Cin-Q case, and you have Doctor

11   Schwanke and you have Technology Training

12   Associates.  How do you go about miming the

13   Biggerstaff list of 131,000 phone numbers, fax

14   numbers to ascertain whether Schwanke or TTA are in

15   there?  Do you review on --

16       A    I did.  I used Adobe Acrobat to OCR the

17   Biggerstaff report or -- I think I OCR'd the whole

18   class certification motion including all the

19   exhibits, and then I looked at fax numbers of my

20   clients, people who have asked me to represent -- or

21   us to represent them pursuing, you know, claims

22   about junk faxes and found several hits by doing

23   that, control F, and there's fax numbers that belong

24   to clients and people we know.

25       Q    It was not time-consuming for you to do

UNITED STATES DISTRICT COURT          199

1    that?

2         A    No.  No.

3         Q    There was a question about the Cin-Q case

4    pending for three years.  Had you been aware of the

5    fact that Anderson Wanca had a Buccaneers class

6    action pending long before you ever got involved and

7    decided to pursue a case?

8         A    Yes.

9         Q    I want to focus on what could have been a

10   triggering event for you to decide to do this case.

11   Did you meet with Mike Addison at some point on

12   April 18th?

13        A    Yes.

14        Q    What was the context?

15        A    The context was I was there to argue

16   summary judgment in a case called Florida First

17   versus Term Provider.  That's a certified class, and

18   my firm Anderson and Wanca and Mike Addison's firm

19   are co-Counsel.  I was there preparing to argue the

20   hearing, and while I'm sitting there outside in the

21   little lobby where everybody waits to be told it's

22   your turn to go back in chambers for an argument,

23   Mike brought up the Buccaneers case and said -- you

24   know, I don't remember if I said how are you or if

25   he just blurted it out, but he said something like

1    Brian, you know, Brian Wanca is holding up the

2    settlement trying to get a bigger fund so we get a

3    bigger fee, and I don't know which way it's going to

4    go.  And I said I'm not in that case, Mike, because

5    I think he was asking me to call Brian, and I don't

6    know what to do, but I'm not sure.  And actually he

7    also did ask me about the fact that David Oppenheim

8    had changed firms, and I, like, why or something

9    like that.  I can't remember exactly what he asked

10   and I said, well, David and I have worked for a long

11   time together on these -- TCPA cases and we just

12   decided it made more sense for him to work at my

13   firm, and that was it.  And I think in that

14   situation he seemed like he was trying to get some

15   gossip and I said everybody is happy with

16   everything.

17        Q    In negotiating a settlement in the TTA

18   case, did you represent the interests of all class

19   members equally in an attempt to get them all a good

20   settlement benefit?

21        A    Yes.

22        Q    Given your experience, and I know this

23   will come up in a later to some extent more

24   appropriate forum, but another time, but is this a

25   good settlement?

1          A    I think it's a good settlement, yes.

2          Q    There's a discussion of the fact we

3     didn't -- Bock Law Firm didn't seek inclusion in the

4     settlement provisions of an incentive award

5     opportunity for Cin-Q or for Medical and

6     Chiropractic.  Were you in the courtroom when you

7     heard Mr. Addison indicate he would not have wanted

8     you and he would not have thought it was appropriate

9     for you to negotiate an incentive award opportunity

10    for what he describes as his clients?

11         A    Yes.

12         Q    If Cin-Q and the Medical and Chiropractic

13    Clinics want to petition the Court in front of Judge

14    Porcelli in the TTA case for an incentive award, if

15    the settlement that your firm has reached with the

16    Buccs is approved, would you oppose their right and

17    opportunity to make that petition to the Court?

18         A    No.  I mean I don't have any plans to.  I

19    don't know if they're going to ask for $100,000

20    incentive award or something like that.  I do

21    represent the class.  It's the class' money.  At the

22    end of the day, you know, there will be money that

23    if they want -- if they petition Judge Porcelli for

24    an incentive award, we will not oppose it because

25    Judge Porcelli is going to decide then.  He's not

1    going to need input from us about it.

2              MR. COHEN:  Thank you.  Nothing further,

3    Judge.

4              THE COURT:  All right.  Thank you.

5    Mr. Bock, thank you.  You may return to your seat.

6              THE WITNESS:  Thank you, your Honor.

7              THE COURT:  It's almost 6:00 o'clock which

8    is the time that we all turn into pumpkins and we

9    need to be out of the courthouse, so I am not going

10   to get to the testimony of the Defendants' expert

11   today.  If you wish we can reschedule.

12   Alternatively, you can proffer his testimony.  I

13   know that there was an objection by Plaintiffs any

14   way.  My point at this point is to allow you each

15   about three minutes for a closing including the --

16   by the Plaintiffs some indication of if the Court

17   were to enter a preliminary injunction the amount

18   for bond which there's been no discussion on

19   whatsoever yet, so you have about six minutes

20   remaining.

21             MR. SOBLE:  Your Honor, just to make sure

22   I understand, as far as the proffer of the expert

23   testimony, how is the Court intending to do that?

24             THE COURT:  If the Defendants wish to

25   proffer, they may proffer.  You have an objection

1    which I think you've already made.  Do you wish to

2    be heard further?

3              I have not ruled on your objection.  I did

4    state that my procedure with regard to Rule 23 in

5    this case is there's not even been the case

6    management meeting.  There's been no case management

7    scheduling order.  I don't think Rule 23, Rule 26 --

8    excuse me -- comes into play at this point at this

9    stage of the litigation for a case that was filed

10   what, June -- sometime in June.

11             MR. SOBLE:  And there's not, your Honor.

12   There's no case management order.

13             THE COURT:  Right.

14             MR. SOBLE:  I understand, your Honor.

15   I'll be very brief.  And just for the record with

16   respect -- I realize I made a very brief objection

17   before about the disclosure.  I'll just put the

18   grounds for it briefly in the record.  I understand

19   the Court's position.  I just wish to preserve it

20   for the record.

21             The disclosure itself is not consistent

22   with Rule 26(a)(2)(B) Sections 5 and 6.  5 requires

23   a list of all other cases during the previous four

24   years the witness has testified as an expert at

25   trial by deposition.  The declaration does not

1    include that.  6 includes it requires a statement of

2    the compensation be paid for the study and testimony

3    in the case.  It also does not include that.

4           Lastly, while there is a declaration under

5    28 U.S.C. 1746, the U. S. Code requires that it be

6    done under penalty of perjury and dated and, in

7    fact, includes two forms including -- and in both

8    forms it says executed on date blank and the date is

9    not included, so I have no idea when this was

10   provided and it doesn't meet the requirements of 28

11   U.S.C. 1746.  And, of course, we didn't receive it

12   today, so I've been doing it today before the

13   hearing.

14          Lastly, it doesn't actually provide any

15   testimony to assist the trier of fact, you, your

16   Honor.  It's really just a regurgitation of the

17   briefs.  It's from a lawyer trying to opine over the

18   law which is in the briefs to the facts which are in

19   the declarations.  It doesn't have any specialized

20   knowledge or experience beyond that.  I will address

21   first bond because the Court asked about that.

22          THE COURT:  I think it's required if I'm

23   going to enter a preliminary injunction that you

24   address it.

25          MR. SOBLE:  I agree, your Honor, that a

UNITED STATES DISTRICT COURT                    205

```
 1    bond is required.  The amount of the bond is
 2    something actually under the law that must be set
 3    forth by the Defendants who will be asking for the
 4    bond.  They will have to value and come up with
 5    support for the value of the potential damages to
 6    them should the preliminary injunction be set.  I
 7    don't know what they're going to say; that is, we
 8    certainly acknowledge that bond will be entered and
 9    that we'll be required to post the bond, but until I
10    hear what they say their alleged damages are from
11    the preliminary injunction that would be subject to
12    the bond I couldn't possibly propose what a bond is.
13         The Defendants have the obligation to
14    quantify it and the burden to establish what that
15    quantity is, and we'll either agree or argue about
16    it, but I certainly agree that should they do that,
17    my client will be required to put up a bond and we
18    will put up said bond.  I'm not going to argue
19    whether it's required or not.
20         THE COURT:  Okay.  As I said my experience
21    is that I allow the Plaintiffs to be heard, and most
22    Plaintiffs offer something regardless of what the
23    Defendant does.
24         MR. SOBLE:  Since I couldn't fathom what
25    they would argue their damages are.  Should they be
```

```
 1    enjoined from representing Training Technology
 2    Associates, I couldn't start to quantify what it is,
 3    but once they do that and come up with some sort of
 4    support for it, then certainly we'd want to be heard
 5    in response potentially or simply post the bond.
 6    They may ask for a very small bond and we'll simply
 7    agree.  Who knows.
 8              THE COURT:  Okay.
 9              MR. SOBLE:  So I'm going to focus on the
10    irreparable harm that the Court heard about.  I
11    think we have all argued likely the success on the
12    merits quite a bit and I don't want to regurgitate
13    that.
14              I think one of the key points is that the
15    irreparable harm occurs at the point that the law
16    firm hires Mr. Oppenheim and engages in representing
17    competing client.  It's at that point that there is
18    a conflict but the Florida rules are clear that
19    under 4-1.16(a) that a lawyer shall not represent a
20    client if it will result in a violation of the
21    rules.  It's shall, not may.  And at that point
22    there is harm immediately.  There's a conflict and
23    there's a harm from the conflict and that is imputed
24    to the new law firm, Bock, Hatch, Oppenheim law
25    firm.
```

1          The irreparable harm here is specifically

2     if you look at all the loss of benefits of being a

3     class representative there are plainly benefits of

4     being a class representative.  There's the incentive

5     award that the Court has heard a lot about.  You get

6     to choose and monitor Counsel.  You get to be

7     actively involved in the case.  You get

8     participation in settlement discussions.

9          As we know any mediator worth their salt

10    is going to want a class representative there to

11    negotiate the class settlement.  It's been portrayed

12    that these class representatives are essentially

13    stooges who don't do anything and the law firms just

14    represent the classes, but I prefer to think the

15    process doesn't work that way.

16         Mr. Bock himself when he talked about

17    looking at the fax numbers, he talked about looking

18    for fax numbers of my clients.  He didn't talk about

19    looking for fax numbers of class representatives

20    I've represented in other cases as class

21    representatives.  He referred to them as my clients.

22         And it's very similar to representing a

23    competitor and having your competitive position

24    harmed and that's a case, the Maritrans versus

25    Pepper Case.  It's a Pennsylvania case.  It's in our

UNITED STATES DISTRICT COURT                    208

1    briefing I know the Court has reviewed where the

2    Court upheld a preliminary injunction where someone

3    was representing a former client's competitor.  And

4    they were trying to start -- stop that lawyer from

5    representing a competing company prospectively going

6    forward, and the Court granted a preliminary

7    injunction.

8            I think that Mr. Bock again said it best

9    on direct examination.  He said if there's ever a

10   conflict you choose the class, but the point of that

11   is there's a conflict.  If there's ever a conflict

12   you choose the class.

13           Well, okay.  Then you're electing if there

14   is a conflict of interest between the rep and the

15   class to choose the class, but that doesn't mean

16   that there's no conflict of interest.

17           By their estimation they could easily in

18   that situation just turn to their client and

19   continue to represent the class rep adverse to the

20   class and the class adverse to the class rep, and

21   that's untenable.  Lawyers are not allowed to do

22   that.

23           So when we hit a situation where if

24   there's ever a conflict you choose a class, that

25   means we have a conflict of interest and the same

1    law firm or the imputed law firm cannot be involved

2    in that and that's what we have here.  We have a

3    conflict of interest.  There's no other way for my

4    client to stop Mr. Oppenheim's new law firm from

5    ongoing this conflict of interest except a

6    preliminary injunction, and that's what we seek.

7    Thank you, your Honor.

8              THE COURT:  Thank you.  All right.  Mr.

9    Cohen.

10             MR. COHEN:  Thank you, ma'am.  Judge, I'm

11   not certain how Plaintiff's Counsel can take the

12   podium and describe a significant if not the most

13   primary and obvious harm and irreparable harm to his

14   client being the loss of the benefit of being the

15   class counsel including the incentive award.

16             She specifically acknowledged that she had

17   never been promised an incentive award.  She had no

18   guaranty of it and she would do this job without it.

19   She also acknowledged that being the class

20   representative has been a significant burden.

21             You also heard Michael Addison testify

22   about what a supposed burden it has been for her and

23   she admitted that if, in fact, she is not successful

24   here and the TTA settlement in front of Judge

25   Porcelli goes forward, in fact, it will relieve her

1    of burdens, not in fact harm her.

2         I don't understand Plaintiffs counsel's

3    analogies or metaphors.  He said this is very

4    similar to representing a competitor.  Since when

5    did the concept of a class action of similarly

6    situated people become a situation analogous to

7    competitors, that all the class members are

8    competitors of one another?

9         The only way to then extend his analogy is

10   to suggest that, well, they're all the same, they're

11   all similar, they all have similar interests,

12   there's no adversity.  God forbid unless one of them

13   wants to be a class rep and another one wants to

14   also, now they are competitors, now they have

15   materially adverse interests and these are now

16   disqualifying features.

17        Well, not only is that counterintuitive,

18   unproductive and would frustrate the fundamental

19   policy goal of the class action procedure but it's

20   unprecedented nationwide in the case law.

21        What we've cited your Honor to throughout

22   our briefing are cases where a class counsel has an

23   approved settlement and his class representative

24   ends up being the one objecting to it.  That doesn't

25   end up being a disqualifying conflict for class

1    counsel at all.  Class counsel is still advocating

2    for what's in the best interest of the class and the

3    objector is allowed to object but it doesn't create

4    a disqualifying conflict.  If it did, the objector

5    could always prevent the class settlement from going

6    forward.

7           That's all the more true in the case that

8    was discussed earlier today and is cited in our

9    proposed reply brief which is the Pella case in

10   which you have two class counsel working at one firm

11   with five class representatives in a certified case.

12   One of the attorneys and four of the five class

13   representatives don't agree with the settlement.

14   They leave and go to another firm and they stand as

15   the ultimately successful objectors.

16          Defense -- Plaintiff's Counsel's argument

17   if it was true, if it was valid, an application of

18   law would mean suddenly both of those attorneys

19   became disqualified by intolerable conflicts of

20   interest because the attorney who took four clients

21   with him was in a conflict of interest with the one

22   he left behind.  The attorney who's left with the

23   one is in an intolerable conflict of interest with

24   the four who left.  That can't be the law and it's

25   not the law.

UNITED STATES DISTRICT COURT                212

1            And I listened to Mr. Bock's testimony.

2    He was not describing, and our position is by no

3    means that the class representatives are, quote

4    unquote, stooges.  They form and participate and

5    perform an extraordinarily important function and we

6    have no criticism right now of the role that Medical

7    and Chiropractic played, nor is there a reason for

8    criticism of the role that TTA and Schwanke had

9    played.

10            Counsel says there's really no

11    alternative.  There's no other way for Medical and

12    Chiropractic to be relieved of this threat and harm

13    except by a preliminary injunction.

14            Well, they say that, but they seem to

15    be -- have unending avenues they seek to pursue to

16    stop anyone else from having a chance to negotiate

17    with the Buccaneers and reach a settlement and then

18    get that settlement approved.

19            When the class action was filed in State

20    court in Florida so that Bock Law Firm would have a

21    case on file, when it negotiated with the

22    Buccaneers, they sought to intervene and stop that.

23    Then they criticized Bock Law Firm for having

24    dismissed that case and having no case on file when

25    they mediate, but Bock Law Firm knew that if they

1   had a case on file while they're trying to mediate

2   with the Buccaneers they'll be fighting off an

3   intervention and an injunctive relief.

4          Then when we don't have a case on file so

5   there's nowhere else they can go, they go in front

6   of Judge Porcelli and they ask him to enjoin the

7   Bucks and derivatively us and Judge Porcelli said

8   I'm not doing that.

9          Then they file their case in State court

10  and we bring it here.  The bottom line is they're

11  trying every avenue but the right one which is to be

12  objectors to the preliminary and then final approval

13  of the settlement pending in front of Judge

14  Porcelli.

15         There's been no reverse auction.  There's

16  been no evidence of a reverse auction but in the end

17  those are the issues for Judge Porcelli.  More

18  importantly and fundamental today, there's been no

19  evidence of any breach of fiduciary whatsoever by

20  Mr. Oppenheim or Bock Law Firm let alone a knowing

21  and intentional breach of fiduciary duty.  There's

22  no irreparable harm.  There's no likelihood of

23  prevailing on the merits, and what a preliminary

24  injunction here would do is stop the wheels of

25  justice from turning on the possible preliminary

1     approval of a class action settlement that would

2     benefit 131,000 persons and legal entities in the

3     State of Florida, most of them right here in Tampa

4     who have been waiting since 2009 and 2010 for some

5     justice under the TCPA which for some reason Medical

6     and Chiropractic's attorneys Wanca and Addison alike

7     seem simply incapable of delivering after all these

8     year.

9          If our settlement is not good, it will get

10    rejected, but for this Court to on the flimsy record

11    and the lacking legal jurisprudence to preliminarily

12    enjoin a settlement would work massive harm to a

13    class and that's why I don't want to do the math and

14    address it now, but if we were ever called upon to

15    address what an appropriate bond would be, it would

16    be a bond calculated as a function of the $19.5

17    million settlement, that access to it by 131,000

18    Florida residents is being delayed and denied.

19    Thank you, Judge.

20          THE COURT:  So what is the amount?  I mean

21    I think you should address an amount so that in the

22    event the Court grants it, I can enter an amount in

23    the injunction order.  I don't give you an

24    opportunity to come back again for the issue of the

25    bond.

1          MR. COHEN:  Certainly, Judge, and I don't

2     know how that applies in light of the pendency,

3     No. 1, of the Defendants' motion to dismiss which is

4     briefed and it might be procedurally unusual to rule

5     on the merits on a preliminary injunction request

6     either way when there might be a meritorious motion

7     to dismiss pending.

8          THE COURT:  No.  They are separate issues.

9     I mean the preliminary injunction again is just

10    that, it's a preliminary matter that's heard as soon

11    as the Court can get you all before us, and usually

12    it's heard within the first three weeks of the case

13    being filed.

14         In this case that wasn't the fact because

15    I had to decide the issue of jurisdiction.  So, no,

16    the motion to dismiss is heard at a later point.

17    The case may ultimately be dismissed and if so the

18    bond is released, but we're not there yet and the

19    motion to dismiss is not being -- is not before the

20    Court for consideration today.

21         MR. COHEN:  I understand, Judge.  The

22    other issue I wasn't certain how the Court's

23    addressing it is we were not proposing to proffer

24    Mr. Chinaris' expert opinion via his report.  We

25    were tendering it as a gratuitous disclosure so they

1    would have some awareness before Mr. Chinaris took

2    the stand and we would at some point before the

3    Court rules like the opportunity to make whatever

4    proffer the Court will allow.  On the issue of the

5    bond --

6              THE COURT:  Okay.

7              MR. COHEN:  -- 19.5 million dollars,

8    excuse me, in delayed distribution and access to the

9    class at an interest rate of 5 percent per year

10   divided by 365 days is $2,671.23 harm to the class

11   who are the beneficiaries of the work we've done and

12   of the settlement we're trying to get approved which

13   will be stopped by a preliminary injunction, and so

14   we would suggest that a bond in that amount on a

15   daily basis would be appropriate.

16             THE COURT:  And what then do you expect

17   your expert would testify about if he were allowed

18   to testify today?

19             MR. COHEN:  Judge, he'll analyze the rules

20   and he'll -- the Florida Rules in particular and

21   he'll analyze and address them through the lens of

22   what the Florida Supreme Court, the Florida

23   Disciplinary Bar and the Florida lower courts have

24   said and he'll put it in the context of what courts

25   that have considered conflict of interest issues in

1     this scenario, class actions, how courts have found
2     that it requires as a function of the policy
3     underlying class actions to not be automatic and
4     reflux and not have a rigid rule and to look to the
5     policy underlying class action procedure to find
6     that it takes a very substantial conflict of
7     interest, very substantial to justify disqualifying
8     Plaintiff's class counsel on that basis.  And I
9     think you would also address the issue of the
10    concept of materially adverse interests which even
11    Plaintiff's Counsel at all times has acknowledged.
12    There's no way to get around the fact.  The Court
13    would have to find not merely a conflict of
14    interest, but a conflict of materially adverse
15    interests and there's no evidence of that at all.
16    Thank you, Judge.
17            THE COURT:  So then with regard to your
18    expert, it sounds like it goes to the likelihood of
19    success on the merits in terms of the issue of
20    whether, in fact, a breach occurred, the breach of
21    fiduciary duty.  I'm just trying to categorize it in
22    terms of the prongs that the Court considers for
23    purposes of a preliminary injunction, and it goes to
24    the issue it sounds like of the likelihood of
25    success on the merits.

1            MR. COHEN:  I would agree with that,

2    Judge.

3            THE COURT:  And is that argument already

4    briefed?  I mean isn't that the argument that you

5    made in response and haven't you cited cases with

6    regard to that in your responsive motion?

7            MR. COHEN:  We have.  We have added

8    arguments further to that effect with additional

9    case citations in our proposed reply in support of

10   the motion to dismiss.

11           THE COURT:  That's why I said, you don't

12   have a proposed reply with the motion for

13   preliminary injunction.  Your proposed reply goes to

14   the motion to dismiss, which, again, I'm not

15   considering today.

16           MR. COHEN:  I understand.  I was simply

17   addressing the fact that we have adduced, developed

18   and briefed additional law on that topic.

19            I think what the Court is not unreasonably

20   identifying is that when you have a legal ethics

21   expert come in and he analyzes the way I've just

22   described, what's the difference between that and

23   legal briefing?  And I guess the difference is we're

24   true and unabashed advocates for our case and our

25   clients.  There's some legal presupposition that

1    experts come in and they offer an unbiased

2    assessment of things through the lens of their

3    expertise.

4            THE COURT:  Right.  And that's the case

5    with most legal experts, if you will.  I mean they

6    may be beneficial to a jury but they may not be that

7    beneficial to a judge, because I have great law

8    clerks and I have access to West Law, Lexis and

9    anything else you need to do the same research, so

10   while he may be considerably beneficial for a jury,

11   this is not a matter for the jury.  It's a matter

12   for the Judge, so if upon consideration of this

13   matter the Court is of the opinion that his

14   testimony would be helpful, I'll reschedule a

15   continuation of this hearing.

16           Right now I don't think that I'm going to

17   need his testimony.  I think we're going to be able

18   to reach an opinion without it, but certainly as I

19   said if there is any question, we will reschedule it

20   and we'll all reconvene so that you can present his

21   testimony and he can be cross examined.

22           I agree with you that the Rule 26 report

23   was not needed for purposes of this hearing, but I

24   do appreciate your giving it to the Plaintiff so

25   that they have some indication before they were

1     given an opportunity to cross examine him of what he

2     had to say and, of course, it's fueled their

3     objection that falls in the category of no good deed

4     goes undone, so.  Nevertheless, I'm not going to

5     allow his testimony today because of the time

6     constraints and limitations.  I don't think Rule 26

7     disclosures apply to his testimony for purposes of

8     this preliminary injunction hearing.

9             MR. COHEN:  Thank you, Judge.  If I may --

10            THE COURT:  Yes.

11            MR. COHEN:  -- because I just --

12    procedurally I'm not sure how it would otherwise

13    work.  May we in anticipation of the possibility

14    that the Court may decide it doesn't need to hear

15    his live testimony so it doesn't reconvene, may we

16    with the Court's permission file a properly executed

17    dated under penalty of perjury report as a proffer

18    in the event the Court decides it doesn't want to

19    hear his testimony so that at least our record is

20    preserved as to what we intended to offer.

21            THE COURT:  Not really because then -- I

22    mean Plaintiffs don't have an opportunity, or the

23    Plaintiff doesn't have an opportunity to examine him

24    and that's why we have an evidentiary hearing so

25    that all the parties have an opportunity to examine

1    all witnesses, and so the only recourse I would have

2    would be to reschedule the hearing so that he could

3    present testimony and then he can be cross examined

4    by the Plaintiff.

5            MR. COHEN:  I understand, Judge.  Thank

6    you.

7            THE COURT:  All right.  Mr. Blonien.

8            MR. BLONIEN:  With full recognition of

9    where we are in time, your Honor, I'll try and be as

10   quick but pronounce my words as clearly as I can at

11   the same time.

12           We don't take a position with respect to

13   the bond.  I want to raise three points.  One, act

14   or omission.  Any breach has to be based upon an act

15   or omission, and with respect to my client

16   Mr. Oppenheim, the only thing that has been shown in

17   Court is that he changed firms.  That cannot form a

18   basis for a breach of fiduciary duty action in and

19   of itself.

20           With respect to -- and I would say that

21   that prong goes to the likelihood of success on the

22   merits.  If there's fundamentally no act or omission

23   that can form the basis of a breach, there can be no

24   cause of action.

25           With respect to the irreparable harm,

1    there's two things that I want to say.  Number one,

2    the materially adverse party in a class action is

3    the Defendant.  All of the class action participants

4    are considered to be similarly situated and have

5    similar interests even to the extent that they don't

6    agree with a particular outcome and -- or they ask

7    for different amounts for incentive awards.

8            There is no case that I'm aware of or one

9    that has been cited that that would form a basis for

10   a materially adverse position sufficient to give

11   rise to a conflict of interest.

12           And the third point I want to make with

13   respect to irreparable harm is if there's a more

14   appropriate way to solve the problem, it should be

15   done, and the more appropriate way to solve the

16   problem that's being alleged here is to seek

17   disqualification in the context of the class action,

18   not to bring this separate action or -- there's a

19   case Mockeans (phonetic), I don't know how to

20   pronounce it, but it's been cited in the briefs that

21   an injunction is appropriate, but that was done in

22   the context of a transaction where there wasn't

23   oversight by a court already.  And here we have

24   oversight by a court, the judge who's overseeing the

25   class action.  That would be the appropriate form to

1    resolve these issues.  Thank you for your time, your

2    Honor.

3            THE COURT:  Okay.  And then final comments

4    on the moving party.

5            MR. SOBLE:  Your Honor, simply on the

6    bond, no preliminary injunction here will stop the

7    settlement from going forward if Judge Porcelli

8    approves it, so to do an almost $20 million bond for

9    a settlement that Technology Training Associates can

10   still pursue has no connection with the preliminary

11   injunction in this case.

12           Absent any other information about any

13   harm to either of the Defendants, Mr. Oppenheim's

14   Counsel's passing on the bond issue, the bond should

15   be a nominal amount.  Thank you.

16           THE COURT:  All right.  Thank you.  All

17   right.  Thank you, Counsel.  We will take this

18   matter under advisement and issue a written opinion

19   as quickly as possible.  And so that you know, Judge

20   Porcelli is aware of this hearing.  In fact, his

21   clerks were in the courtroom today so, you know, he

22   and I are in communication with regard to what's

23   going on in the two cases even though they are

24   separate.  Obviously he's handling his case and I'm

25   handling mine, but he was aware of this afternoon's

1    hearing.   We are adjourned.

2              Make sure that the clerk has all of the

3    exhibits that were admitted so that we have a proper

4    record.

5                          (Whereupon the proceedings were

6                          adjourned at 6:22 p.m.)

7                          (Which were all the proceedings

8                          had in the above-entitled

9                          cause.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1     UNITED STATES DISTRICT COURT  )

 2                                   )

 3     MIDDLE DISTRICT OF FLORIDA    )

 4

 5

 6              I, SHARON A. HELBIG, Official Court Reporter

 7     for the United States District Court, Middle District of

 8     Florida, do hereby certify that pursuant to Section 753,

 9     Title 28, United States Code that the foregoing is a

10     true and correct transcript of the stenographic notes

11     taken by computer-aided transcription taken in the

12     above-entitled cause by the undersigned and that the

13     transcript format is in conformance with the regulations

14     of the Judicial conference of the United States.

15

16     /S/Sharon A. Helbig, CSR, RPR, CRR, FCRR

17     Official Court Reporter

18

19

20

21

22

23

24

25
```

**BY MR. BLONIEN: [6]** 54/13 117/19 145/21 149/23 169/14 179/17
**BY MR. COHEN: [12]** 34/23 44/13 48/17 91/4 102/4 102/12 107/11 113/13 151/4 171/13 177/22 197/13
**BY MR. SOBLE: [11]** 19/5 19/17 29/25 64/17 67/11 153/22 155/9 157/22 159/16 160/21 165/22
**BY MS. LOEW: [8]** 68/17 82/7 84/3 88/14 180/13 182/9 185/17 193/21
**COURTROOM DEPUTY CLERK: [8]** 18/12 18/16 68/6 68/10 145/9 145/13 171/1 171/5
**MR. ADDISON: [1]** 12/24
**MR. BLONIEN: [37]** 4/24 5/4 5/11 5/19 5/22 6/8 8/1 8/4 8/8 9/6 10/19 42/13 42/16 54/12 66/23 81/25 83/21 88/4 117/17 122/25 132/2 132/6 145/6 145/15 150/13 150/16 155/5 157/4 160/9 165/3 169/12 170/18 179/15 180/8 184/21 222/7
**MR. COHEN: [54]** 4/13 7/25 8/9 8/24 10/11 11/16 12/5 13/16 34/21 37/5 38/2 38/10 38/13 41/7 41/9 43/8 48/16 54/7 82/1 83/20 91/2 102/2 102/11 105/22 113/3 117/8 123/15 123/17 124/16 130/13 131/6 131/11 131/16 150/21 153/10 153/18 170/23 171/7 177/3 177/19 179/12 197/11 203/1 210/9 215/25 216/20 217/6 217/18 218/25 219/6 219/15 221/8 221/10 222/4
**MR. GRIFFIN: [3]** 4/1 4/6 6/21
**MR. OPPENHEIM: [1]** 5/25
**MR. POLASZEK: [1]** 4/21
**MR. SOBLE: [63]** 6/23 7/4 7/9 7/16 8/7 8/15 9/4 9/11 9/18 10/18 11/3 11/10 12/10 13/1 13/4 13/14 13/18 13/22 14/13 14/19 14/25 18/8 18/19 29/20 29/23 34/15 34/18 36/20 40/24 41/8 42/24 48/10 64/15 67/1 67/21 123/7 129/5 134/18 138/4 140/16 141/9 141/14 141/18 141/22 142/1 142/19 149/21 150/3 153/4 157/7 160/7 160/13 165/12 165/20 169/5 169/8 203/20 204/10 204/13 205/24 206/23 207/8 224/4
**MS. LOEW: [16]** 68/3 81/22 83/18 88/8 90/21 90/24 102/9 106/7 112/25 123/3 177/1 185/1 185/12 193/20 197/5 197/7
**THE COURT: [145]** 3/25 4/2 4/12 5/2 5/5 5/14 5/20 6/2 6/9 7/3 7/8 7/15 7/23 8/3 8/5 8/22 9/9 9/13 10/10 10/20 11/7 11/14 12/3 12/7 12/12 12/25 13/3 13/12 13/21 14/11 14/16 14/20 18/6 18/10 18/18 19/10 19/16 29/17 29/21 34/20 37/16 38/3 38/12 42/11 42/15 44/1 48/9 48/11 54/9 64/14 66/25 67/9 67/23 68/1 81/24 82/2 83/22 88/7 88/13 91/1 102/3 106/6 106/13 106/20 106/22 106/25 107/3 113/1 113/7 117/9 117/15 123/2 123/4 123/11 123/16 124/15 129/12 131/1 131/9 131/14 131/17 132/3 134/16 137/23 140/10 141/1 141/13 141/16 141/21
141/24 142/12 144/17 145/14 149/22 150/1 151/6 151/10 151/13 151/17 151/2 153/16 153/20 155/7 157/6 157/16 159/14 160/12 160/20 165/5 165/18 169/7 169/10 170/20 171/6 177/2 177/17 179/14 180/10 182/7 184/25 185/8 185/13 193/18 197/9 203/3 203/6 203/23 204/12 205/21 206/19 207/7 210/7 215/19 216/7 217/5 217/15 218/16 219/2 219/10 220/3 221/9 221/20 222/6 224/2 224/15
**THE WITNESS: [22]** 18/14 19/15 44/12 67/25 68/8 106/19 106/21 106/23 107/2 107/9 113/11 145/11 150/9 150/25 153/17 157/19 165/17 165/21 171/3 177/20 185/14 203/5

**$**
**$100,000 [1]** 202/19
**$19.5 [2]** 192/21 215/16
**$2,671.23 [1]** 217/10
**$20 [1]** 224/8
**$20 million [1]** 224/8
**$20,000 [3]** 135/23 193/7 193/11
**$3,000 [1]** 193/15
**$4,875,000 [1]** 192/20
**$75,000 [1]** 134/22

**/**

**/S/Sharon [1]** 226/16

**0**

**084-2617 [1]** 1/22

**1**

**1.10 [1]** 138/5
**1.16 [2]** 17/25 207/19
**1.7 [1]** 138/11
**1.9 [2]** 136/21 138/11
**10 [5]** 3/21 7/19 7/24 8/13 89/24
**100 [1]** 2/5
**1000 [1]** 2/17
**10B [1]** 7/23
**11 [8]** 3/21 3/22 7/19 7/25 8/13 80/25 134/3 161/17
**114 [1]** 102/17
**117 [1]** 3/10
**11th [2]** 31/8 155/21
**12 [9]** 3/22 9/19 10/22 10/22 11/1 35/11 35/23 102/7 103/12
**1213 [1]** 20/18
**1278 [1]** 9/25
**12:11 [1]** 83/13
**12th [1]** 40/2
**13 [1]** 185/25
**131,000 [5]** 126/13 199/8 199/13 215/2 215/17
**134 [1]** 2/17
**137 [1]** 102/20
**13A [1]** 1/23
**13th [1]** 33/4
**14 [1]** 10/6
**142 [1]** 102/20
**145 [1]** 3/13
**1477 [1]** 4/5
**151 [1]** 3/13

**152 [1]** 103/1
**159 [1]** 10/7
**15th [2]** 155/12 158/11
**16 [1]** 89/5
**169 [1]** 3/14
**16th [2]** 191/19 191/23
**171 [1]** 3/17
**1718 [1]** 2/11
**1746 [2]** 205/5 205/11
**175 [1]** 103/4
**179 [1]** 3/17
**18 [1]** 1/16
**180 [1]** 3/18
**18th [5]** 70/7 114/17 116/20 188/9 200/12
**19 [2]** 3/5 89/23
**19.5 [1]** 217/7
**197 [1]** 3/18
**1972 [1]** 68/25
**1974 [1]** 69/1
**1989 [1]** 129/3
**1997 [1]** 129/3
**19th [4]** 186/6 188/6 189/19 190/10
**1st [2]** 190/23 191/4

**2**

**20 [4]** 81/2 81/16 89/17 89/22
**2000 [2]** 10/8 51/24
**2003 [1]** 174/2
**2009 [16]** 21/18 22/5 52/1 54/22 69/19 70/14 71/24 85/7 93/23 99/5 99/10 110/20 110/25 155/12 184/7 215/4
**2010 [5]** 71/24 99/11 111/1 184/7 215/4
**2011 [5]** 55/2 55/3 55/10 56/19 56/20
**2012 [5]** 71/18 71/19 94/7 158/1 158/7
**2013 [23]** 21/2 21/3 21/4 22/1 22/5 46/23 57/12 57/19 58/18 70/7 72/3 72/6 94/2 95/2 95/11 100/3 100/6 101/19 103/1 110/5 158/11 158/17 158/19
**2014 [10]** 72/16 75/6 101/20 102/8 103/12 110/6 121/1 159/4 159/23 160/25
**2015 [8]** 25/4 28/4 40/2 58/6 58/21 77/1 78/25 104/7
**2016 [23]** 1/16 8/17 31/5 35/11 82/10 114/17 114/23 155/12 155/15 156/16 161/15 161/17 161/23 162/2 162/3 183/20 183/23 190/23 191/4 191/19 191/23 192/24 193/3
**20th [4]** 82/10 159/4 159/23 160/24
**229-2300 [1]** 2/6
**22nd [1]** 89/18
**23 [3]** 147/9 204/4 204/7
**2300 [1]** 2/6
**25 [3]** 38/18 39/3 73/1
**25 percent [2]** 192/17 192/21
**26 [7]** 39/22 129/9 129/14 204/7 204/22 220/22 221/6
**2617 [1]** 1/22
**26th [1]** 158/19
**27 [2]** 39/22 40/2
**2700 [1]** 2/5
**27th [2]** 91/11 156/16
**28 [3]** 205/5 205/10 226/9

**2**
**28th** [1] 161/23
**2nd** [3] 114/23 116/21 190/25

**3**
**30** [2] 40/8 175/4
**31** [3] 35/11 78/25 158/17
**312** [1] 2/18
**31st** [1] 79/25
**33602** [1] 1/24 2/6
**33603** [2] 19/24 20/19
**33609** [1] 2/22
**34** [1] 3/5
**343,000** [1] 126/13
**35** [1] 40/13
**357** [1] 2/12
**365** [1] 217/10
**3rd** [1] 72/16

**4**
**4-1.10** [1] 138/5
**4-1.16** [2] 17/25 207/19
**4-1.7** [1] 138/11
**4-1.9** [2] 136/21 138/11
**40** [1] 175/4
**4602** [1] 19/23
**48** [1] 3/25
**4:00** [1] 117/11
**4:10** [1] 117/12
**4th** [2] 158/6 162/1

**5**
**5 percent** [1] 217/9
**5000** [1] 2/18
**504** [1] 9/25
**53711** [1] 2/11
**54** [1] 3/6
**574-7678** [1] 2/23
**5th** [2] 8/17 31/5

**6**
**60602** [1] 2/18
**608** [1] 2/12
**620-357** [1] 2/12
**64** [1] 3/6
**658-5000** [1] 2/18
**68** [1] 3/9
**6:00** [1] 203/7
**6:22** [1] 225/6
**6th** [6] 151/13 183/19 185/19 186/4 192/24 193/3

**7**
**753** [1] 226/8
**7678** [1] 2/23
**7:20** [1] 82/16
**7th** [2] 155/16 155/18

**8**
**801** [3] 1/23 8/21 8/22
**813** [2] 2/6 2/23
**82** [1] 3/22
**84** [1] 3/23
**8:16-cv-1477** [1] 4/5
**8:16-cv-1477-CEH** [1] 1/9
**8th** [2] 155/12 155/15

**9**
**91** [1] 3/9
**9:00** [1] 81/17
**9:30** [1] 82/19
**9:45** [1] 82/19

**A**
**A-D-D-I-S-O-N** [1] 68/10
**a.m** [1] 81/17
**abetted** [2] 131/1 176/4
**ability** [3] 39/21 100/3 126/22
**able** [9] 74/24 81/7 84/19 100/17 125/9 150/7 174/10 182/6 220/17
**about** [136] 5/21 14/2 14/3 14/6 14/12 15/14 15/18 16/8 16/23 16/24 17/13 20/21 24/7 24/24 26/8 26/8 26/13 27/6 28/25 31/7 32/6 32/20 33/5 33/6 33/8 34/4 35/7 35/22 37/1 37/3 38/2 39/10 39/22 40/18 40/22 43/3 44/20 44/23 44/25 45/6 46/1 46/1 46/23 50/5 50/5 50/10 53/9 56/7 57/23 59/6 64/20 66/7 66/17 66/22 67/13 76/13 77/21 78/9 82/13 82/19 82/19 82/21 82/22 82/24 83/5 87/22 93/4 93/21 97/8 98/4 98/5 101/4 101/7 101/15 101/18 104/17 105/24 109/5 109/11 114/19 116/15 117/7 117/7 119/2 121/21 124/1 136/6 136/19 137/10 139/3 139/5 140/23 144/1 144/3 144/23 151/14 152/5 152/22 152/25 154/9 157/8 158/11 161/1 161/23 162/19 163/16 164/9 173/6 173/16 177/15 178/22 182/3 185/6 185/21 190/11 190/15 191/11 191/13 199/12 199/22 200/3 201/7 203/1 203/15 203/19 204/17 205/21 206/15 207/10 208/5 208/16 208/17 208/18 210/22 217/17 224/12
**above** [6] 61/9 225/8 226/12
**above-entitled** [2] 225/8 226/12
**absent** [2] 198/16 224/12
**absolutely** [4] 77/17 90/7 129/15 141/20
**abundance** [2] 175/6 175/18
**abuse** [1] 126/18
**acceptable** [1] 39/18
**accepted** [2] 93/5 129/12
**access** [7] 84/19 98/9 98/25 100/1 215/17 217/8 220/8
**accessed** [1] 99/24
**accomplish** [2] 74/25 183/11
**accordance** [1] 115/17
**according** [1] 125/13
**account** [4] 130/17 131/9 152/24 153/1
**Accounting** [4] 95/10 95/13 96/16 97/22
**accounts** [1] 143/1
**accurate** [2] 81/20 83/16
**accurately** [1] 38/16
**accused** [2] 151/18 153/12
**acknowledge** [1] 206/8
**acknowledged** [3] 210/16 210/19 218/11
**acquired** [2] 61/24 79/12
**acquiring** [1] 173/21
**Acrobat** [1] 199/16
**across** [1] 177/7

**act** [7] 72/24 86/23 124/21 126/8
**acting** [3] 110/7 146/13 197/3
**action** [135] 15/17 15/18 16/20 16/23 22/10 22/11 23/25 32/2 32/8 33/16 34/3 37/2 39/7 40/1 40/24 45/7 48/23 49/8 49/8 49/13 49/15 49/21 50/6 52/12 55/14 55/14 57/15 58/19 60/7 61/12 61/22 61/25 62/9 62/12 65/8 65/14 69/24 70/20 71/19 72/10 72/18 73/5 73/20 74/12 74/22 78/2 80/20 84/22 84/22 85/2 86/5 88/3 90/6 94/6 94/8 94/12 94/13 95/2 95/4 95/9 97/17 98/18 100/2 100/17 101/17 110/18 120/1 120/24 120/25 125/24 126/3 126/11 127/3 130/18 130/20 133/2 133/14 135/13 139/23 140/8 146/19 147/3 147/24 147/25 148/7 148/17 148/22 148/24 149/1 149/14 151/10 152/6 162/11 166/7 166/12 166/24 169/23 170/1 172/9 172/10 173/18 175/12 175/23 176/18 177/13 177/15 178/16 183/14 183/16 184/4 184/14 186/10 186/11 186/16 186/22 187/5 187/16 190/19 192/14 192/16 194/7 195/11 200/6 211/5 211/19 213/19 215/1 218/5 222/18 222/24 223/2 223/3 223/17 223/18 223/25
**actions** [25] 7/21 14/5 16/6 16/10 17/6 20/21 44/9 69/5 69/6 88/11 94/19 125/23 127/5 143/9 144/15 163/15 163/17 163/19 175/3 190/2 196/14 196/15 196/20 218/1 218/3
**active** [1] 69/1
**actively** [2] 17/14 208/7
**activities** [1] 75/4
**activity** [2] 17/23 135/8
**actual** [4] 49/15 99/1 126/22 191/17
**actually** [16] 37/15 74/11 91/15 101/15 104/11 116/8 129/16 143/18 153/11 158/21 165/6 168/22 192/10 201/6 205/14 206/2
**ad** [1] 72/23
**ADAMS** [1] 2/11
**add** [4] 42/17 72/8 139/1 175/10
**added** [6] 21/25 65/9 72/5 72/8 101/20 219/7
**ADDISON** [28] 3/8 12/20 25/9 28/21 45/17 49/4 49/13 68/4 68/9 68/13 68/19 88/11 88/16 91/6 106/4 106/17 107/9 113/9 117/12 117/21 123/5 125/9 138/19 188/2 200/11 202/7 210/21 215/6
**Addison's** [1] 200/18
**addition** [3] 27/9 108/11 185/6
**additional** [8] 72/9 75/7 79/11 90/25 126/23 130/11 219/8 219/18
**address** [12] 125/9 125/24 150/23 151/1 154/22 205/20 205/24 215/14 215/15 215/21 217/21 218/9
**addressee** [2] 81/1 81/4
**addressing** [2] 216/23 219/17
**adduced** [1] 219/17
**adequacy** [2] 168/11 168/12
**adequate** [1] 120/19
**adjourned** [2] 225/1 225/6
**admissible** [3] 8/21 9/5 9/21

**A**

**admission [8]**  5/18 6/25 8/21 9/3 81/24 83/20 159/4 159/24

**admissions [2]**  75/1 157/3

**admitted [36]**  4/9 5/16 9/1 9/2 9/14 10/2 10/8 10/22 29/16 30/3 35/12 36/23 37/8 37/18 48/13 68/25 70/3 82/4 83/24 123/9 156/22 157/24 158/3 158/6 158/18 158/25 160/16 161/5 161/7 161/8 161/11 161/16 161/22 162/7 210/23 225/3

**admitting [1]**  157/11

**Adobe [1]**  199/16

**advance [4]**  74/3 79/14 88/19 133/24

**adverse [21]**  16/18 17/16 105/1 107/25 108/3 122/15 136/25 137/23 147/5 147/12 169/23 170/3 170/5 194/17 209/19 209/20 211/15 218/10 218/14 223/2 223/10

**adversity [13]**  16/4 16/5 43/23 43/25 137/8 137/11 140/2 140/3 140/6 140/11 140/16 148/3 211/12

**advertisements [5]**  31/19 32/6 72/20 85/8 90/18

**advertising [2]**  31/24 110/24

**advice [3]**  36/9 57/25 190/5

**advise [1]**  11/17

**advised [4]**  86/16 87/15 88/1 90/2

**advisement [1]**  224/18

**advising [4]**  81/1 81/15 83/7 83/14

**advocate [1]**  131/7

**advocates [1]**  219/24

**advocating [1]**  212/1

**affidavit [2]**  131/11 131/16

**affidavits [1]**  6/15

**affirmations [1]**  41/22

**affirmative [7]**  105/16 109/24 124/20 124/21 126/6 131/22 151/19

**affirmatively [3]**  112/22 113/20 126/7

**after [36]**  5/25 22/11 22/25 32/16 32/18 40/10 47/4 54/24 56/4 79/25 80/13 82/14 84/5 86/4 95/1 101/10 111/5 112/2 114/17 114/24 114/25 117/14 124/15 125/1 129/19 135/22 152/20 171/25 173/21 180/24 183/24 184/14 184/18 185/25 187/24 215/7

**afternoon [14]**  4/1 4/2 5/14 34/25 54/15 68/19 83/6 88/19 89/5 91/6 91/7 117/11 117/21 180/15

**afternoon's [1]**  224/25

**afterwards [2]**  88/1 136/23

**again [17]**  16/4 16/6 29/9 44/16 77/6 79/10 79/14 99/10 148/20 158/23 160/14 161/24 162/11 209/8 215/24 216/9 219/14

**against [31]**  16/19 17/16 20/21 44/9 51/18 64/6 70/12 71/20 80/21 84/16 94/7 94/9 100/13 101/17 102/22 102/23 124/18 132/9 133/10 136/13 140/25 142/8 142/14 148/18 148/24 151/8 172/10 178/7 182/6 189/1 190/3

**aggressively [1]**  136/5

**ago [2]**  116/6 126/15

**agree [11]**  45/8 116/18 116/21 205/25 206/15 206/16 207/7 212/13 219/1 220/22 223/6

**agreed [8]**  78/11 97/7 172/4 185/7

**agreement [29]**  53/23 56/17 56/22 57/14 58/2 58/10 69/10 69/24 77/24 78/12 89/10 92/7 92/10 106/16 118/6 119/18 119/19 119/25 159/3 159/22 166/20 191/18 192/1 192/3 192/6 193/9 193/10 199/1

**agreements [1]**  164/4

**ahead [6]**  6/6 41/9 87/25 124/14 182/14 182/15

**aided [3]**  131/1 176/4 226/11

**Alan [1]**  178/5

**alert [1]**  143/15

**alike [1]**  215/6

**all [135]**  4/13 5/18 6/3 6/4 6/10 7/19 8/2 9/10 10/21 12/8 14/5 17/2 22/7 23/11 27/14 27/16 32/2 36/22 37/22 38/9 39/20 41/20 43/1 43/10 43/11 43/21 44/21 45/18 45/24 46/5 46/10 50/9 51/5 53/22 54/10 60/13 62/25 65/15 65/21 67/10 67/24 85/6 92/14 92/21 93/13 98/1 98/10 101/4 101/18 104/8 105/1 105/6 105/21 111/12 114/6 116/2 117/7 117/16 120/21 122/22 124/25 125/20 128/21 129/9 130/11 132/4 133/16 134/24 135/3 135/8 136/7 138/7 138/20 138/20 143/14 144/14 144/25 150/12 150/13 150/21 151/3 157/3 157/4 162/20 164/7 164/8 164/17 164/22 165/25 167/6 167/8 169/11 170/21 170/21 172/19 174/5 176/10 177/18 180/11 187/11 187/14 191/7 191/14 196/14 196/15 196/20 197/10 199/18 201/18 201/19 203/4 203/8 204/23 207/11 208/2 210/8 211/7 211/10 211/11 211/11 212/1 212/7 215/7 216/11 218/11 218/15 220/20 221/25 222/1 222/7 223/3 224/16 224/16 225/2 225/7

**allay [1]**  109/10

**allegation [5]**  36/6 37/10 37/20 41/13 140/22

**allegations [8]**  10/14 10/15 10/23 37/8 37/12 37/19 134/2 140/23

**allege [1]**  142/10

**alleged [4]**  41/4 41/5 206/10 223/16

**allegedly [1]**  42/2

**alleges [2]**  124/18 124/21

**alleging [1]**  134/21

**allocated [1]**  76/16

**allow [13]**  11/22 12/14 44/10 51/19 115/23 127/4 143/20 157/18 177/19 203/14 206/21 217/4 221/5

**allowed [8]**  38/6 52/17 79/16 96/19 125/17 209/21 212/3 217/17

**almost [5]**  124/1 137/16 143/2 203/7 224/8

**alone [2]**  138/10 214/20

**along [2]**  110/3 139/23

**already [11]**  29/16 32/2 32/7 87/16 127/20 139/9 190/2 190/3 204/1 219/3 223/23

**also [43]**  4/19 4/20 8/20 9/22 10/3 10/8 12/22 36/23 45/10 49/20 60/2 75/21 94/8 96/20 104/9 122/23 126/19 129/22 131/19 132/25 133/19 136/3 142/2 142/11 142/21 143/2 143/8

**alternative [2]**  114/3 213/11

**Alternatively [1]**  203/12

**although [6]**  6/14 14/7 47/18 68/19 78/3 112/23

**always [5]**  64/8 64/10 138/21 143/2 212/5

**am [8]**  19/9 144/18 150/10 156/2 161/9 168/21 177/21 203/9

**Amended [6]**  65/8 71/2 72/7 72/15 75/5 101/21

**AMERICA [1]**  1/1

**American [2]**  157/25 158/7

**among [2]**  69/4 174/24

**amount [14]**  52/22 52/24 74/20 78/10 80/9 95/17 121/15 203/17 206/1 215/20 215/21 215/22 217/14 224/15

**amounts [1]**  223/7

**analogies [1]**  211/3

**analogous [1]**  211/6

**analogy [1]**  211/9

**analysis [1]**  112/7

**analyze [2]**  217/19 217/21

**analyzes [1]**  219/21

**Andersen [22]**  79/2 79/13 79/16 80/2 80/4 80/18 81/17 85/24 86/19 88/4 98/6 98/12 110/2 110/16 116/14 164/18 166/19 190/1 190/5 190/12 190/13 190/14

**Andersen's [1]**  80/24 81/15 87/2

**Anderson [19]**  21/23 23/13 25/9 25/25 31/13 32/19 54/21 59/17 71/12 76/14 77/7 118/22 155/11 162/12 169/2 178/4 180/22 200/5 200/18

**Andrew [1]**  171/4

**angles [1]**  43/12

**announced [1]**  53/13

**another [21]**  17/14 43/18 46/24 48/4 56/25 78/21 80/20 86/14 108/12 122/23 136/1 136/17 136/23 137/7 138/24 168/24 171/19 201/24 211/8 211/13 212/14

**answer [24]**  37/3 50/4 51/10 59/7 61/7 67/11 105/16 106/5 107/9 113/10 113/10 154/25 157/19 158/10 158/15 163/4 163/5 163/7 165/1 165/12 165/15 166/21 171/18 185/10

**answered [4]**  155/7 155/9 165/5 165/7

**answering [2]**  20/8 45/23

**answers [2]**  75/10 167/23

**anticipate [1]**  62/2

**anticipation [1]**  221/13

**anxiety [1]**  109/10

**any [157]**  8/23 10/11 11/15 12/9 12/17 12/18 12/23 13/11 13/16 20/2 21/1 21/14 24/9 24/10 26/13 27/15 27/21 28/25 41/16 43/1 44/21 44/23 47/1 47/7 48/10 51/10 51/18 51/18 52/7 56/16 57/25 58/11 58/14 59/8 60/2 60/5 60/10 60/20 60/23 61/3 61/21 61/24 62/11 63/17 64/11 69/6 70/9 70/16 73/24 77/3 79/24 81/25 83/4 84/11 84/12 94/5 94/18 94/20 102/18 103/24 104/4 104/15 104/23 105/1

145/2 147/19 148/9 148/24 149/3 153/6 153/7 153/10 154/8 165/6 179/3 201/7 205/3 210/19 210/21 211/14 218/9

**any... [93]** 106/10 106/11 107/15 107/17 107/19 107/20 107/20 108/23 111/13 111/21 112/10 112/18 113/24 118/7 120/2 120/6 120/10 120/16 120/17 120/18 121/16 121/17 122/3 123/3 123/6 123/15 126/7 126/8 126/9 126/21 128/13 129/7 129/10 130/2 131/22 132/11 133/24 134/13 135/17 137/21 138/9 139/10 140/13 143/13 143/18 146/7 147/5 147/14 147/19 148/2 149/8 150/18 153/2 157/20 163/8 163/14 164/2 164/3 164/11 168/4 169/12 170/5 170/9 170/14 170/15 172/6 175/9 176/3 177/1 177/9 177/15 178/17 179/23 181/3 188/4 190/14 191/24 193/23 194/2 197/11 198/14 199/1 199/2 202/18 203/13 205/14 205/19 208/9 214/19 220/19 222/14 224/12 224/12

**anybody [4]** 61/9 191/10 196/16 197/3

**anymore [1]** 97/21

**anyone [9]** 12/2 23/18 28/22 30/24 32/13 33/11 166/4 170/11 213/16

**anything [50]** 15/14 15/14 15/15 39/19 42/12 44/18 45/3 46/9 46/13 51/17 54/8 55/8 55/8 59/25 60/4 60/22 61/20 62/6 62/19 63/17 63/21 64/1 64/7 80/9 82/12 87/22 92/2 92/6 92/9 92/13 104/1 104/23 105/2 105/17 119/2 124/24 125/3 133/5 139/5 139/10 144/1 144/4 152/2 168/8 179/13 180/1 191/10 198/1 203/18 220/9

**anyway [1]** 103/11

**anywhere [2]** 26/22 109/12

**apologies [1]** 172/22

**apologize [4]** 85/1 91/18 92/18 181/20

**apparently [1]** 99/6

**appeal [2]** 178/10 179/12

**appear [7]** 6/7 6/17 15/21 121/8 157/13 160/1 166/17

**appearances [2]** 2/1 156/12

**appeared [1]** 108/13

**appearing [1]** 157/11

**applicable [3]** 104/18 105/20 184/11

**application [2]** 157/14 212/17

**applies [6]** 7/17 14/1 14/13 14/16 78/18 216/2

**apply [7]** 139/14 152/23 153/8 157/10 157/15 160/19 221/7

**Applying [1]** 15/2

**appointed [4]** 47/20 47/22 48/2 120/13

**appoints [1]** 52/14

**appreciate [14]** 6/25 45/10 45/11 50/15 60/16 61/10 92/4 92/19 99/12 105/13 108/23 113/15 131/8 220/24

**approach [6]** 77/4 102/3 110/12 118/17 152/5 197/24

**approached [3]** 71/11 98/6 98/12

**appropriate [11]** 37/22 73/12 123/23 201/24 202/8 215/15 217/15 223/14 223/15 223/21 223/25

**approval [8]** 90/5 112/17 125/22 187/14 191/22 192/2 214/12 215/1

**approve [7]** 53/15 89/18 109/10 141/8 193/6 193/11 196/7

**approved [13]** 74/2 74/5 74/7 90/19

92/23 92/25 93/9 173/23 174/7 202/16

**approves [1]** 224/8

**April [7]** 114/17 116/20 155/12 155/15 155/21 156/16 200/12

**April 18th [3]** 114/17 116/20 200/12

**April 27th [1]** 156/16

**April 8th [2]** 155/12 155/15

**are [141]** 4/3 4/8 6/10 7/14 7/19 8/2 10/14 12/18 12/21 12/23 13/8 13/9 13/10 13/11 14/9 16/10 16/15 16/15 16/18 20/6 21/5 23/24 31/18 33/16 34/2 34/7 34/9 34/12 35/14 36/12 36/13 38/17 38/23 39/6 41/21 43/12 42/13 45/17 47/25 49/2 49/9 49/5 49/7 49/8 49/12 49/13 51/12 53/9 53/12 61/2 61/21 66/4 69/2 69/6 73/24 75/20 76/15 78/10 78/12 88/9 97/24 97/25 98/1 104/2 108/23 109/13 114/1 114/2 117/10 120/23 121/16 122/15 122/20 123/6 125/17 125/22 126/5 129/18 129/24 129/25 135/20 136/25 137/4 137/5 137/22 138/8 139/23 139/24 140/14 140/24 143/2 143/9 148/4 149/3 149/10 149/12 149/14 153/10 154/20 163/8 163/11 165/1 165/3 166/16 170/5 170/6 171/18 171/22 174/19 174/19 176/25 182/5 187/12 193/19 194/16 195/18 196/12 196/14 199/14 200/19 200/24 205/18 206/10 206/25 207/18 208/3 208/12 209/21 211/7 211/14 211/15 211/22 213/3 214/17 216/8 217/11 222/9 223/4 224/22 224/23 225/1

**area [2]** 71/14 182/4

**areas [2]** 69/2 76/17

**aren't [1]** 147/12

**argue [9]** 39/9 126/19 140/20 178/13 200/15 200/19 206/15 206/18 206/25

**argued [4]** 184/20 194/14 194/25 207/11

**arguing [1]** 62/23

**argument [14]** 6/15 125/18 125/19 130/11 131/3 138/4 141/7 185/8 195/8 196/4 200/22 212/16 219/3 219/4

**arguments [7]** 125/22 132/6 132/15 167/6 168/12 178/8 219/8

**arise [1]** 22/18

**arose [2]** 120/11 120/14

**around [6]** 31/8 52/1 55/2 127/16 195/3 218/12

**arrangement [2]** 94/20 95/19

**arrangements [1]** 73/10

**arranging [1]** 71/23

**article [3]** 95/3 132/25 196/2

**as [242]**

**ascertain [2]** 174/11 199/14

**ascertainability [2]** 178/8 178/14

**aside [3]** 46/6 62/5 62/22

**ask [39]** 7/22 11/25 12/20 13/2 19/13 26/7 26/12 40/17 40/20 41/2 44/16 47/1 48/4 50/16 52/17 52/21 56/10 104/12 106/4 114/8 128/5 131/20 151/14 152/7 161/1 162/21 165/14 176/12 180/25 181/2 181/3 193/11 195/10 198/1 201/7 202/19 207/6 214/6 223/6

asked [36] 11/21 32/20 48/19 50/3 91/15 91/16 91/19 95/12 108/25 116/3 116/23 127/20 135/22 154/9 155/7 155/8 162/18 163/16 165/4 165/8 193/8 195/15 195/21 195/22 196/21 197/15 198/2 199/20 201/9 205/21

**asking [19]** 17/3 17/7 53/15 104/22 105/15 107/21 153/7 153/9 154/20 156/20 164/8 165/1 165/2 193/6 196/6 196/10 199/5 201/5 206/3

**aspect [3]** 16/20 60/10 102/18

**aspects [2]** 101/22 103/7

**assembly [1]** 162/13

**asserted [4]** 8/20 9/2 44/9 88/10

**assessment [4]** 45/1 45/2 53/19 220/2

**assigned [1]** 76/16

**assist [1]** 205/15

**assistance [2]** 71/12 89/20

**assistant [2]** 80/25 167/21

**associate [3]** 39/11 48/22 118/11

**associated [3]** 62/8 121/22 138/8

**Associates [33]** 17/8 17/10 18/4 33/3 33/12 33/22 49/6 50/18 53/10 64/21 66/1 85/3 135/21 140/3 140/7 141/1 142/5 142/6 155/4 181/17 181/21 182/16 183/3 183/4 193/7 193/12 193/25 194/5 194/15 197/2 199/12 207/2 224/9

**assume [6]** 30/11 59/20 103/9 111/16 112/14 185/4

**assumed [1]** 150/24

**assuming [4]** 9/7 105/12 112/9 112/9

**assumption [1]** 111/25

**assurances [1]** 109/3

**assure [1]** 109/6

**at-issue [2]** 42/7 106/1

**attached [3]** 48/8 174/14 189/10

**attaching [1]** 189/4

**attack [2]** 36/12 168/12

**attempt [6]** 90/15 95/25 127/16 127/18 139/18 201/19

**attempting [2]** 116/25 124/4

**attend [1]** 108/8

**attended [8]** 28/19 76/1 79/4 79/6 101/23 101/25 102/1 146/12

**attending [1]** 115/1

**attention [3]** 24/16 52/19 92/4

**attorney [77]** 15/4 15/25 21/13 21/15 25/25 31/15 35/3 36/9 36/17 36/18 36/22 37/14 38/2 39/16 41/1 42/1 42/6 42/7 42/9 42/10 42/23 44/11 47/6 48/20 48/22 49/25 50/12 51/1 51/18 54/25 55/11 55/24 56/3 57/11 59/3 59/14 59/17 59/18 59/19 68/23 69/22 73/10 73/23 85/19 86/17 87/12 89/7 94/12 94/25 95/4 95/16 97/15 97/18 104/9 105/25 106/9 106/16 110/3 110/7 113/9 114/2 117/24 118/24 118/25 133/9 140/12 146/13 146/15 146/17 146/21 146/23 162/10 166/23 185/3 198/1 212/20 212/22

**attorney's [2]** 46/22 176/7

**attorney-client [20]** 15/4 15/25 36/22 41/1 42/6 42/7 42/9 42/10 42/23 54/25 55/11 55/24 56/3 57/11 59/14 104/9 105/25 106/9 106/16 133/9

## A

**attorneys [18]** 39/6 39/20 49/8 49/9 49/18 49/21 50/21 53/13 54/5 97/1 172/11 172/13 172/14 173/1 177/12 212/12 212/18 215/6
**attorneys' [6]** 94/21 94/23 97/2 114/21 117/1 192/16
**auction [8]** 90/15 140/22 195/1 195/3 195/6 195/7 214/15 214/16
**audited [1]** 92/25
**August [12]** 28/4 69/19 70/14 78/25 79/12 79/25 93/23 99/10 158/1 159/4 159/23 160/24
**August 20th [3]** 159/4 159/23 160/24
**August 31 [1]** 78/25
**August 31st [1]** 79/25
**authority [3]** 38/20 38/24 39/4
**automatic [1]** 218/3
**automatically [1]** 154/16
**Automobiles [13]** 65/12 69/12 69/18 70/12 75/17 75/20 77/10 86/9 122/25 181/13 181/19 186/11 189/6
**Automobiles' [1]** 189/13
**available [5]** 28/15 28/17 92/14 173/18 190/8
**Aventura [1]** 158/13
**avenue [4]** 1/23 19/23 20/18 214/11
**avenues [1]** 213/15
**avoid [2]** 112/21 114/5
**award [28]** 23/24 52/18 52/21 53/4 53/6 61/13 61/18 62/17 62/24 65/1 91/20 91/24 120/4 126/23 127/15 135/17 135/17 140/13 193/7 193/11 202/4 202/9 202/14 202/20 202/24 208/5 210/15 210/17
**awarded [3]** 24/4 24/6 140/13
**awards [5]** 93/17 140/14 140/18 193/20 223/7
**aware [29]** 12/22 13/18 21/10 23/24 24/9 24/12 33/15 47/8 49/2 49/7 49/12 53/9 53/12 96/3 107/6 109/13 121/16 122/3 176/16 176/25 177/21 177/25 180/16 180/21 192/6 200/4 223/8 224/20 224/25
**awareness [1]** 217/1
**away [3]** 121/14 122/18 127/18

## B

**B-O-C-K [2]** 171/5 171/17
**back [22]** 21/18 29/24 38/9 38/10 45/11 46/8 51/24 58/17 80/1 80/8 82/24 83/2 84/7 96/23 105/7 126/19 159/21 188/13 188/13 188/22 200/22 215/24
**background [1]** 36/25
**bad [1]** 175/19
**badgering [1]** 165/5
**balance [1]** 142/3
**balancing [1]** 144/13
**bar [16]** 68/25 129/3 129/5 142/18 142/22 150/9 150/11 150/25 159/5 159/24 161/10 161/13 173/24 174/8 178/13 217/23
**barry [5]** 2/10 2/12 4/25 24/14 54/17
**bars [1]** 130/19
**base [2]** 59/7 99/7
**based [14]** 6/3 36/17 54/21 119/6

126/16 130/16 132/20 138/12 147/2 148/6 152/20 180/10 180/16
**bases [2]** 12/16 167/8
**basic [1]** 92/12
**basically [9]** 76/17 77/24 79/14 83/2 85/6 89/9 103/2 121/1 153/7
**basics [1]** 38/17
**basing [2]** 37/13 53/4
**basis [10]** 39/2 133/3 133/22 133/25 170/2 217/15 218/8 222/18 222/23 223/9
**bathroom [1]** 103/10
**Bay [1]** 85/9
**be [219]** 5/10 5/18 6/17 7/12 9/8 10/14 12/3 12/5 12/6 12/12 12/19 15/2 15/10 15/23 16/13 16/14 16/18 17/9 17/24 18/18 22/16 22/17 22/22 23/4 24/3 24/4 24/5 24/18 24/20 27/7 27/25 30/20 31/22 32/1 32/7 36/7 36/20 37/2 37/15 37/16 38/9 39/18 41/10 42/23 43/18 51/4 51/16 51/17 51/19 51/20 52/3 52/16 53/20 54/4 56/10 59/14 61/6 61/13 61/16 62/4 62/6 62/6 62/12 62/19 63/6 63/11 63/16 65/24 66/5 66/14 67/3 67/7 68/12 71/24 73/15 73/22 74/2 77/13 78/6 78/11 80/6 81/7 87/17 87/20 88/2 89/10 89/10 92/20 92/22 99/7 99/15 99/23 99/24 101/11 104/19 105/11 106/11 106/12 108/3 108/10 108/13 108/17 108/18 108/22 109/12 112/3 112/3 112/12 116/16 117/11 118/3 118/6 118/9 120/12 120/18 121/3 122/11 124/3 124/12 126/16 126/18 127/9 128/3 129/18 132/1 132/1 132/12 133/23 134/2 134/15 134/20 135/2 135/4 135/6 135/14 136/12 137/11 138/10 138/19 138/24 140/4 140/13 140/17 141/10 141/15 142/17 142/21 142/23 143/11 147/7 149/20 150/6 158/25 159/2 160/24 161/12 162/22 163/23 168/5 168/19 172/18 174/3 175/18 175/21 176/22 180/6 187/14 187/24 188/1 197/25 198/8 200/21 202/22 203/9 204/2 204/15 205/2 205/5 206/2 206/3 206/6 206/8 206/9 206/11 206/17 206/21 206/25 207/4 208/6 210/1 211/13 212/24 213/12 213/15 214/2 214/11 215/15 215/16 216/4 216/6 216/17 217/13 217/15 218/3 220/6 220/6 220/10 220/14 220/17 220/21 222/2 222/3 222/9 222/14 222/23 223/4 223/14 223/25 224/15
**Beach [1]** 161/15
**bear [1]** 98/14
**became [4]** 21/4 46/23 46/25 212/19
**because [68]** 10/4 11/23 12/14 14/22 17/19 26/14 31/12 34/13 37/24 41/18 50/2 50/2 50/12 51/13 53/11 56/6 63/14 71/13 74/19 78/6 80/11 89/21 91/25 100/3 101/2 106/17 108/1 108/16 113/21 116/1 116/12 117/6 124/4 127/5 128/16 129/18 130/4 130/5 134/11 134/13 139/12 141/3 141/15 143/18 150/24 174/1 175/2 175/11 176/7 176/12 177/15 178/12 180/2 181/23 186/18 187/7 187/11

188/11 190/1 201/4 202/24 205/21 205/24 211/24 211/25 219/6 220/11 221/21
**become [8]** 21/10 24/9 24/12 47/2 47/7 47/19 176/16 211/6
**becomes [1]** 142/11
**becoming [1]** 21/8
**been [123]** 5/3 5/5 5/16 5/19 5/22 6/1 9/1 9/2 11/16 14/21 19/3 23/8 23/10 27/17 28/18 29/16 30/3 31/15 35/2 35/12 39/19 44/8 47/22 48/1 50/12 61/15 62/18 63/5 64/10 65/6 66/18 66/23 67/14 67/19 68/15 68/24 68/25 69/24 74/24 77/12 79/12 83/8 84/11 84/15 86/21 87/1 87/5 89/19 90/19 93/16 95/22 96/4 96/19 98/22 98/22 102/16 102/19 102/24 103/6 103/13 111/23 115/16 117/1 117/3 117/5 124/2 124/5 124/18 124/20 124/22 129/19 129/20 130/6 132/18 133/5 133/9 135/9 135/21 135/23 138/2 138/4 141/5 145/19 145/25 146/1 151/18 153/12 156/22 162/5 164/3 165/7 165/13 168/18 169/3 169/3 171/11 173/5 173/8 174/1 174/7 174/15 184/25 186/12 188/25 193/3 196/25 200/4 200/9 203/18 204/5 204/6 205/12 208/11 210/17 210/20 210/22 214/15 214/16 214/18 215/4 222/16 223/9 223/20
**before [65]** 11/11 13/19 21/9 26/4 26/18 26/19 26/22 27/14 29/1 32/10 32/14 33/12 35/18 39/23 45/6 47/3 47/10 50/16 51/1 54/18 55/25 58/12 58/15 66/15 70/10 77/3 84/7 87/14 91/21 95/6 103/14 103/18 105/24 108/7 123/14 123/25 125/5 127/22 129/11 129/14 132/1 132/2 134/9 141/5 141/7 145/25 155/16 172/4 180/15 182/12 182/21 187/2 187/4 188/8 188/10 191/11 195/4 200/6 204/17 205/12 216/11 216/19 217/1 217/2 220/25
**beforehand [1]** 111/9
**befuddle [1]** 91/19
**began [1]** 57/10
**beginning [1]** 81/16
**behalf [48]** 2/2 2/9 2/15 5/1 8/10 19/2 23/2 28/20 38/20 52/8 65/14 65/20 68/14 70/12 74/9 75/12 76/4 76/6 76/9 79/15 80/3 80/4 80/17 85/22 86/8 88/12 90/17 94/7 94/9 95/5 108/9 108/16 110/7 110/14 110/21 117/25 123/7 140/24 144/6 145/18 163/2 166/16 166/24 168/17 171/10 172/8 176/19 182/6
**behavior [1]** 127/7
**behind [2]** 130/22 212/22
**being [33]** 8/19 23/15 24/10 24/23 47/8 67/17 74/2 99/20 108/14 109/11 110/12 113/18 114/9 116/7 128/2 138/23 140/19 152/13 152/14 152/17 152/20 185/23 208/2 208/4 210/14 210/14 210/19 211/24 211/25 215/10 216/13 216/19 223/16
**belabor [1]** 102/14
**believe [46]** 12/2 22/6 22/8 27/15 29/7

**B**

believe... **[41]** 29/12 31/2 39/20 41/25 43/14 47/11 47/15 47/17 51/16 51/19 52/1 52/5 52/9 55/2 55/7 55/17 56/3 56/21 56/23 57/12 57/12 59/10 60/23 64/3 70/18 72/1 72/7 79/7 85/25 94/4 109/19 114/6 137/21 146/10 153/2 170/6 173/8 175/20 176/3 198/3 198/14
believed **[3]** 40/21 57/9 141/2
belong **[1]** 199/23
beneficial **[4]** 130/22 220/6 220/7 220/10
beneficiaries **[1]** 217/11
benefit **[10]** 45/19 46/2 46/12 92/13 104/20 105/20 107/18 201/20 210/14 215/2
benefits **[3]** 126/13 208/2 208/3
best **[2]** 209/8 212/2
better **[3]** 19/16 19/17 117/6
between **[14]** 22/5 34/1 41/24 47/2 47/8 79/12 80/2 80/16 120/17 148/3 169/20 209/14 219/22
beyond **[1]** 205/20
big **[1]** 38/4
bigger **[3]** 145/3 201/2 201/3
Biggerstaff **[6]** 174/15 174/23 181/25 189/8 199/13 199/17
Biggerstaff's **[1]** 199/9
biggest **[1]** 196/17
bill **[2]** 61/25 62/3
bills **[2]** 20/10 23/10
binder **[1]** 123/9
bit **[9]** 19/13 19/15 20/20 36/14 113/4 148/21 156/19 182/9 207/12
blank **[2]** 103/20 205/8
blast **[1]** 99/6
BLONIEN **[20]** 2/10 2/10 3/6 3/10 3/13 3/14 3/17 4/25 4/25 42/13 42/14 42/16 54/11 54/17 117/17 124/15 132/1 152/5 179/15 222/7
blonienlegal.com **[1]** 2/12
blurted **[1]** 200/25
BLVD **[1]** 2/22
BMW **[2]** 178/3 178/7
board **[1]** 177/7
Bob **[1]** 158/1
Boca **[1]** 161/15
bock **[98]** 1/10 1/10 2/15 2/16 3/16 3/25 4/15 4/15 4/18 4/19 4/23 8/10 8/18 11/18 13/8 14/6 14/8 14/9 17/4 30/21 33/11 35/3 35/25 41/6 42/22 48/5 48/12 48/14 48/21 85/21 85/22 93/17 110/17 110/21 111/8 111/19 111/23 112/5 112/10 113/13 113/17 114/4 114/13 114/13 114/25 116/20 117/6 117/7 125/2 125/2 125/7 126/10 127/6 127/7 127/21 128/7 128/11 131/16 137/18 139/21 144/21 151/1 151/7 151/14 152/9 154/9 154/24 155/23 164/20 164/20 170/25 171/4 171/9 171/17 171/18 171/18 171/20 171/22 172/2 172/8 172/20 173/17 177/10 180/15 182/8 185/2 185/24 186/18 202/3 203/5 207/24 208/16 209/8 213/20 213/23 213/25 214/20

Bock's **[2]** 128/25 213/1
bond **[24]** 205/1 206/1 206/4 206/4 206/8 206/9 206/12 206/12 206/17 206/18 207/5 207/6 215/15 215/16 215/25 216/18 217/5 217/14 222/13 224/6 224/8 224/14 224/14
bonus **[1]** 179/25
both **[23]** 4/17 9/6 41/20 49/5 75/17 84/8 93/10 107/3 107/6 110/15 124/13 132/6 132/23 133/25 134/21 148/4 163/21 166/8 166/14 183/9 194/5 205/7 212/18
bottom **[1]** 214/10
box **[1]** 14/11
breach **[30]** 51/15 111/18 114/5 124/19 124/20 125/13 125/15 126/4 136/11 136/14 141/18 141/20 142/10 142/24 143/5 151/19 153/3 153/13 153/16 175/20 176/4 177/8 177/16 214/19 214/21 218/20 218/20 222/14 222/18 222/23
breached **[7]** 109/16 111/21 113/20 130/24 162/19 176/6 179/2
breaches **[3]** 16/24 109/20 109/24
breaching **[7]** 112/3 112/4 112/12 112/21 112/23 126/7 178/24
break **[2]** 117/11 124/1
Brian **[6]** 114/19 115/10 118/14 201/1 201/1 201/5
brief **[23]** 11/9 13/20 16/21 27/14 27/16 34/18 67/4 67/8 67/15 67/20 90/24 123/14 142/1 168/13 168/17 168/20 174/13 179/19 195/4 197/7 204/15 204/16 212/9
briefed **[3]** 216/4 219/4 219/18
briefing **[5]** 14/14 185/6 209/1 211/22 219/23
briefly **[4]** 74/19 90/8 197/12 204/18
briefs **[15]** 26/1 66/9 66/11 66/19 66/22 132/15 139/5 144/1 153/9 153/10 167/3 167/20 205/17 205/18 223/20
bring **[10]** 59/1 65/14 79/12 81/8 98/13 119/21 123/12 139/6 214/10 223/18
bringing **[1]** 92/4
brings **[1]** 158/21
broad **[2]** 33/25 45/5
broadcast **[2]** 98/17 173/12
broadcaster **[2]** 99/6 189/2
broadcasts **[1]** 99/8
broader **[2]** 106/12 164/9
Brooke **[4]** 80/25 81/14 82/18 84/7
brought **[7]** 24/15 52/18 95/4 101/2 124/18 199/4 200/23
Buccaneers **[83]** 20/22 21/1 24/15 55/15 58/20 69/12 70/13 71/23 72/14 72/21 75/8 75/13 75/14 78/15 79/17 80/5 80/17 80/21 81/3 81/18 84/11 84/16 86/17 86/22 87/18 89/4 89/8 89/8 89/20 93/1 93/5 95/6 95/21 98/9 98/18 101/17 102/23 110/19 110/25 115/16 116/13 119/15 127/22 136/3 136/5 151/8 162/11 170/4 170/7 170/15 170/12 173/1 173/13 173/18 174/12 180/2 180/18 182/7 183/22 185/7 185/21 186/11 186/15 186/23 187/20 189/1 189/5 189/10 190/3

190/21 191/18 195/16 195/19 195/22 213/17 213/22 214/2
Buccaneers' **[14]** 56/24 57/6 57/15 60/6 61/3 61/22 62/8 64/7 70/17 71/21 85/9 114/20 115/10 179/21
Buccs **[1]** 202/16
Buccs' **[1]** 98/17
Bucks **[1]** 214/7
bunch **[1]** 93/1
burden **[3]** 206/14 210/20 210/22
burdens **[7]** 24/10 24/18 63/12 63/14 63/18 134/10 211/1
business **[8]** 14/11 19/19 20/8 30/7 36/2 43/6 63/6 155/23

**C**

C-H-U-D-A-S-A-M-A **[1]** 134/7
calculated **[2]** 136/15 215/16
calculations **[1]** 78/4
call **[23]** 9/23 13/13 13/19 18/7 18/9 29/8 47/9 52/17 53/11 55/19 55/25 56/4 56/6 68/2 68/4 83/8 124/15 145/5 145/8 170/23 170/25 184/24 201/5
called **[27]** 12/21 19/2 32/19 55/21 56/13 68/14 78/8 78/13 81/5 82/18 83/2 86/7 91/10 95/10 95/23 115/2 122/24 134/5 139/18 145/18 171/10 180/20 188/14 188/14 198/23 200/16 215/14
calling **[1]** 188/11
calls **[5]** 27/17 58/11 61/7 66/24 155/7
came **[8]** 51/8 76/15 99/4 154/15 172/4 173/16 180/24 189/5
campaign **[1]** 110/25
can **[101]** 5/24 7/4 7/13 7/15 12/13 19/14 19/15 20/24 22/3 24/2 25/2 29/19 30/6 30/17 32/4 37/25 38/1 38/10 39/1 45/19 46/8 46/13 49/11 51/19 52/21 55/3 57/17 58/11 58/14 60/3 60/8 60/10 61/20 63/21 63/23 64/1 68/21 72/11 78/7 81/9 81/10 94/17 102/10 103/18 103/22 104/22 105/2 105/15 105/17 106/4 109/8 109/9 109/9 113/10 114/2 117/22 124/11 124/14 126/24 132/12 132/14 134/6 136/12 137/11 139/15 141/20 142/6 142/21 142/25 143/17 143/21 143/24 144/7 145/23 146/2 146/7 148/17 149/25 160/8 162/23 166/21 169/6 173/16 177/24 179/21 181/14 185/10 194/8 203/11 203/12 210/11 214/5 215/22 216/11 220/20 220/21 222/3 222/10 222/23 222/23 224/9
can't **[16]** 5/16 10/4 42/8 56/23 61/17 64/5 98/9 126/21 139/16 163/5 163/12 164/1 188/13 196/23 201/9 212/24
Canada **[1]** 100/11
canceled **[2]** 86/18 87/5
cannot **[4]** 15/11 17/4 210/1 222/17
capacity **[3]** 59/23 60/2 183/17
caption **[2]** 154/6 154/7
Cards **[1]** 9/24
care **[1]** 109/7
career **[2]** 163/9 163/15
case **[338]**
cases **[34]** 7/14 8/8 16/17 33/17 34/1

cases... [29]   49/9 49/16 76/14 76/15
 78/4 94/5 94/22 97/12 118/22 126/24
 129/19 144/8 144/8 156/13 157/12
 162/13 164/8 169/16 174/4 174/16
 178/19 185/17 196/9 201/11 204/23
 208/20 211/22 219/5 224/23
Casualty [2]   157/25 158/7
Cat [1]   9/24
categorize [1]   218/21
category [4]   37/13 38/16 86/2 221/3
cause [7]   48/9 63/22 78/2 100/17
 222/24 225/9 226/12
caused [2]   83/8 120/15
causes [1]   37/2
causing [1]   64/4
caution [3]   37/22 175/6 175/18
cautionary [1]   128/20
CEH [1]   1/9
Center [2]   158/13 161/15
cents [1]   51/12
certain [9]   8/25 36/12 36/13 107/14
 122/5 124/9 199/7 210/11 216/22
certainly [22]   13/6 13/9 37/4 39/9
 135/5 135/11 135/23 136/10 136/15
 137/16 142/12 142/20 142/24 143/6
 144/10 157/15 168/16 206/8 206/16
 207/4 216/1 220/18
certification [9]   5/19 47/10 96/18
 122/9 174/13 178/7 189/11 189/17
 199/18
certified [7]   47/8 47/16 47/20 52/13
 169/3 200/17 212/11
certifies [3]   47/4 47/4 52/14
certify [2]   73/18 226/8
cetera [2]   43/3 85/12
cgriffin [1]   2/8
challenge [1]   157/9
challenges [1]   157/14
Chamber [1]   178/12
chambers [1]   200/22
chance [1]   213/16
change [2]   62/16 72/1
changed [7]   62/25 63/14 112/15
 134/25 135/1 201/8 222/17
changes [1]   179/5
changing [2]   62/15 63/3
charge [1]   39/14
CHARLENE [1]   1/4
chat [1]   91/8
check [3]   83/1 138/22 138/22
CHICAGO [11]   2/18 28/6 79/3 81/3
 81/15 89/1 89/6 110/9 110/15 151/2
 189/25
Chinaris [4]   12/1 128/10 130/15 217/1
Chinaris' [2]   129/1 216/24
Chiro [1]   122/22
chiropractic [134]   1/7 4/4 4/12 8/19
 15/5 15/19 16/9 19/10 19/21 20/15
 20/16 20/25 21/7 21/12 22/12 22/16
 22/21 23/19 24/19 25/7 25/10 25/15
 25/19 28/20 31/23 33/19 34/5 38/21
 44/7 46/10 59/20 63/4 65/2 65/9 65/13
 65/19 66/18 66/22 67/4 67/14 67/19
 69/7 69/11 69/16 72/4 72/9 72/18
 74/11 74/22 75/9 75/16 76/5 76/12
 77/1 77/9 79/5 85/5 85/15 86/10 86/15

87/3 88/12 89/4 89/13 90/4 90/11
 90/17 90/18 92/14 93/16 94/7 104/15
 106/22 106/25 109/14 109/17 110/4
 110/8 110/23 119/12 120/3 120/7
 120/23 122/15 122/19 132/20 137/13
 137/17 139/19 140/4 140/25 144/6
 144/11 146/22 147/5 147/16 148/3
 151/19 153/4 157/13 158/13 160/20
 162/10 165/20 166/2 166/6 166/18
 166/25 167/24 168/3 170/12 176/13
 177/5 180/17 180/19 181/1 181/5
 184/4 187/8 189/14 191/3 192/7
 192/16 194/17 194/25 195/12 197/16
 198/12 198/15 198/24 202/6 202/12
 213/7 213/12
Chiropractic's [9]   27/22 31/15 40/10
 59/22 71/16 73/4 90/9 177/12 215/6
Chiropractics' [1]   23/2
choice [3]   13/25 112/20 125/12
choices [1]   179/8
choose [6]   176/9 208/6 209/10 209/12
 209/15 209/24
chose [2]   92/23 113/22
chris [3]   2/23 4/7 4/22
CHRISTOPHER [2]   2/4 2/21
Chudasama [1]   134/5
Cin [57]   38/20 47/14 47/21 49/5 65/12
 69/11 69/18 69/21 70/12 75/9 75/16
 75/17 75/20 75/20 75/25 77/9 77/10
 86/9 86/15 87/3 89/13 92/20 93/12
 93/18 93/23 94/9 94/19 94/21 97/2
 97/12 97/19 98/18 101/23 117/8
 122/24 122/25 127/24 146/24 151/9
 152/10 173/9 173/11 177/13 180/20
 181/4 181/13 181/19 186/10 189/6
 189/13 195/19 197/16 199/10
 200/3 202/5 202/12
Cin-Q [50]   38/20 47/14 47/21 49/5
 65/12 69/11 69/18 70/12 75/9 75/17
 75/20 77/10 86/9 86/15 89/13 92/20
 93/12 93/18 93/23 94/9 94/19 94/21
 97/2 97/12 97/19 98/18 101/23 117/8
 122/24 122/25 127/24 146/24 151/9
 152/10 173/9 173/11 177/13 180/20
 181/4 181/13 181/19 186/10 189/6
 189/13 195/19 197/16 199/10 200/3
 202/5 202/12
Cin-Q/Buccaneers [1]   189/10
Cin-Q/Medical [1]   87/3
Circuit [15]   70/14 84/14 96/4 96/7
 96/8 96/10 96/20 134/5 152/13 152/14
 152/19 178/9 178/11 179/5 179/12
circuits [1]   178/14
circumstances [1]   147/8
citations [1]   219/9
cite [3]   9/24 133/25 134/6
cited [7]   125/20 126/24 211/21 212/8
 219/5 223/9 223/20
cities [1]   99/18
City [2]   178/3 179/11
claim [16]   20/9 42/8 70/10 92/23 92/25
 93/3 93/5 95/17 106/2 109/15 110/24
 134/23 135/10 135/19 151/8 175/7
claimant [1]   93/7
claimed [1]   43/24
claiming [4]   42/5 51/13 51/15 125/16
claims [12]   93/12 106/2 134/13 140/15

142/24 142/25 167/8 174/1 184/11
 223/4 223/25 224/21
clarification [2]   13/3 95/21
clarified [1]   126/25
clarify [3]   37/6 49/11 103/19
clarifying [1]   92/19
class [358]
class' [1]   202/21
class-wide [2]   121/2 147/1
classes [3]   149/10 179/9 208/14
classlawyers.com [1]   2/19
clause [1]   196/24
clear [9]   17/22 60/17 104/13 105/15
 107/14 136/3 172/18 198/8 207/18
clearly [1]   222/10
Clement [10]   71/20 94/8 94/9 100/13
 100/22 101/2 101/13 101/15 102/22
 198/24
clerk [3]   123/13 188/11 225/2
clerks [2]   220/8 224/21
client [80]   4/11 7/1 8/18 15/4 15/4
 15/6 15/12 15/22 15/25 17/14 17/14
 17/17 18/1 22/7 36/22 41/1 41/25 42/6
 42/7 42/9 42/10 42/23 54/25 55/11
 55/24 56/3 57/11 59/14 65/8 75/21
 93/23 95/10 97/23 104/9 105/8 105/25
 106/9 106/16 118/4 118/5 133/9
 135/12 135/23 136/10 136/22 137/1
 137/2 137/6 137/7 138/9 138/15 139/2
 139/6 139/22 139/25 140/15 141/6
 141/11 142/7 142/8 144/6 144/17
 162/21 162/24 162/25 163/3 163/6
 163/10 173/7 173/7 177/5 179/9
 179/11 206/17 207/17 207/20 209/18
 210/4 210/14 222/15
client's [1]   209/3
clients [29]   31/13 75/8 86/9 87/16
 92/20 92/20 93/10 93/12 144/9 147/21
 149/19 164/24 165/3 165/17 173/4
 173/17 174/20 182/1 182/5 182/6
 182/24 197/25 199/20 199/24 202/10
 208/18 208/21 212/20 219/25
CLINIC [9]   1/7 4/4 4/12 19/10 21/7
 22/17 44/7 65/13 86/10
Clinics [1]   202/13
cloak [1]   133/8
close [2]   23/23 123/22
closer [4]   19/13 19/15 29/13 182/9
closing [1]   203/15
co [9]   4/11 4/16 15/23 19/9 19/19 86/6
 132/16 133/13 200/19
co-Counsel [6]   4/16 15/23 86/6
 132/16 133/13 200/19
co-own [1]   19/19
co-owner [2]   4/11 19/9
Code [2]   205/5 226/9
COHEN [11]   2/17 3/5 3/9 3/13 3/17
 3/18 4/14 35/3 81/5 150/21 210/9
colleague [1]   21/13
colleagues [1]   4/9
come [23]   7/4 15/21 28/9 51/5 80/19
 87/8 99/3 99/15 105/7 108/6 121/14
 124/3 130/8 149/11 154/12 162/14
 164/6 201/23 206/4 207/3 215/24
 219/21 220/1
comes [2]   46/17 204/8
coming [3]   7/25 38/9 129/18

comments [1] 224/3
Commerce [1] 178/12
commercial [1] 69/3
commission [2] 124/21 126/8
committed [1] 61/11
common [1] 168/15
commonly [1] 125/22
communicated [6] 79/20 103/23 103/24 107/21 107/22 110/14
communication [2] 106/13 224/22
communications [14] 15/25 42/4 42/9 42/11 45/25 80/6 80/8 80/14 104/15 106/5 108/24 110/10 116/22 146/8
companies [6] 99/14 144/11 163/8 164/2 164/12 164/14
company [22] 10/6 20/12 20/14 20/25 24/8 40/23 44/7 45/1 46/14 63/23 64/4 99/9 101/19 104/25 105/19 107/24 110/5 121/13 157/25 158/7 158/18 209/5
company's [4] 40/4 40/14 99/9 121/6
compare [2] 85/4 156/21
compared [1] 182/22
comparing [1] 181/19
compensate [1] 61/13
compensated [2] 108/15 108/22
compensation [3] 179/20 180/6 205/2
compete [3] 34/2 110/22 151/9
competent [1] 73/7
competes [1] 152/10
competing [24] 17/5 17/16 33/16 43/19 48/22 49/7 49/13 49/20 50/6 50/18 53/12 110/18 126/11 127/4 143/22 144/8 175/15 178/16 178/19 179/6 179/8 195/16 207/17 209/5
competitive [1] 208/23
competitor [3] 208/23 209/3 211/4
competitors [3] 211/7 211/8 211/14
complain [2] 175/4 175/14
complaint [54] 9/20 10/3 10/8 10/13 21/24 21/25 35/6 35/14 35/18 35/24 36/7 36/19 37/4 38/19 44/22 65/20 69/23 69/25 70/20 71/2 71/25 72/7 72/15 73/13 75/5 84/20 85/2 85/20 89/15 89/16 97/14 101/21 110/18 127/12 133/21 134/2 135/1 142/18 151/21 154/4 155/3 163/20 163/21 166/7 166/7 166/11 166/14 170/2 184/3 185/11 186/1 186/4 186/25 187/1
complete [2] 42/5 137/16
complex [1] 69/4
compliance [1] 129/13
complicated [1] 162/19
complied [1] 6/4
comply [1] 72/23
compound [2] 113/1 113/3
compulsory [2] 100/7 100/21
computer [4] 99/22 99/23 174/17 226/11
computer-aided [1] 226/11
con [1] 97/25
concede [1] 42/20
conceivable [1] 133/10
concept [3] 118/8 211/5 218/10
concern [5] 104/21 108/4 114/18

127/11 133/12
concerned [2] 79/3
concerning [2] 79/20 110/11
concerns [4] 107/20 144/23 144/23 144/24
concert [1] 197/3
concluded [1] 119/4
conclusion [3] 74/9 108/18 108/22
conclusions [5] 10/17 10/25 37/9 37/20 184/24
conclusory [3] 41/13 41/22 134/1
Concordia [1] 161/21
conduct [5] 18/3 63/22 64/4 132/21 133/23
confer [2] 172/19 172/23
conference [6] 29/8 87/16 92/1 105/6 115/2 226/14
conferred [2] 172/16 172/25
confidential [25] 15/9 40/21 41/4 41/16 43/5 44/5 44/19 44/25 77/16 80/12 104/1 111/10 112/18 113/24 117/2 126/9 128/13 133/7 136/19 137/3 143/10 143/13 143/18 147/14 170/15
confidentiality [1] 43/14
confirm [2] 32/23 168/22
confirmation [1] 86/24
confirmed [1] 86/20
confirms [1] 160/2
conflict [58] 17/21 17/22 18/5 41/19 113/16 113/17 120/15 121/13 125/16 125/21 126/1 128/18 130/20 130/23 137/9 138/22 138/22 138/24 140/1 141/12 141/16 141/17 141/19 142/9 143/4 143/23 144/16 152/5 163/19 176/9 177/8 177/16 197/17 197/20 197/22 197/24 198/3 207/18 207/22 207/23 209/10 209/11 209/11 209/14 209/16 209/24 209/25 210/3 210/5 211/25 212/4 212/21 212/23 217/25 218/6 218/13 218/14 223/11
conflict-of-interest [2] 113/16 125/21
conflicting [1] 6/17
conflicts [7] 6/18 120/10 120/14 120/16 138/25 149/13 212/19
conformance [1] 226/13
confronted [1] 152/8
confused [1] 102/21
connection [5] 58/1 58/7 119/15 179/22 224/10
consensus [1] 118/6
consent [4] 17/21 137/2 137/9 139/17
consider [7] 11/25 55/23 56/2 77/15 130/12 168/7 168/20
considerably [1] 220/10
consideration [3] 12/7 216/20 220/12
considered [3] 60/25 217/25 223/4
considering [2] 134/20 219/15
considers [2] 131/5 218/22
consistent [4] 128/24 128/25 129/8 204/21
consolidate [1] 196/9
consolidated [5] 95/13 95/14 97/25 98/2 128/4
constantly [1] 157/11
constitute [1] 156/13
Constitutional [2] 84/17 84/18

constraint [1] 123/19
constraints [1] 123/16
consultation [1] 172/11
Consumer [2] 72/24 86/22
consuming [1] 199/25
consummation [1] 111/12
contact [4] 32/10 32/13 33/11 55/17
contacted [5] 33/6 33/8 54/21 174/21 197/16
contacting [1] 54/24
contained [3] 37/19 37/21 99/22
contains [2] 10/13 10/23
contend [1] 140/12
contending [1] 90/12
contends [1] 44/5
content [1] 10/18
context [14] 60/6 124/19 130/18 132/8 132/8 134/2 152/6 152/24 166/5 200/14 200/15 217/24 223/17 223/22
contingency [1] 119/25
continuation [1] 220/15
continue [5] 9/15 141/12 141/22 142/6 209/19
continues [1] 160/17
contract [2] 51/22 52/2
contributing [1] 45/2
control [3] 86/11 113/22 199/23
convenience [1] 7/10
convenient [2] 29/19 29/23
conversations [5] 45/22 58/14 80/11 80/15 106/18
convey [1] 78/15
conveyed [1] 45/4
conveying [1] 112/18
convince [1] 168/13
cooperating [1] 99/21
cooperation [1] 188/4
copies [2] 7/3 7/6
copy [13] 7/7 9/9 9/11 9/19 59/1 81/8 81/20 83/16 84/19 102/10 160/23 186/25 186/25
copying [2] 97/14 110/18
corporation [3] 36/1 92/16 161/20
corporations [1] 166/16
correct [88] 35/19 36/20 37/18 39/14 39/24 40/5 40/11 44/3 45/14 47/23 48/25 50/14 52/25 53/1 53/7 54/22 55/22 59/21 59/24 63/1 65/10 70/8 72/1 72/2 91/24 92/8 92/15 92/24 93/14 93/24 93/25 94/3 94/5 94/13 96/14 96/22 99/1 101/8 103/8 118/11 118/12 120/13 120/19 122/24 122/25 153/10 154/2 155/18 155/24 156/6 156/7 156/16 156/25 159/6 161/18 161/24 169/4 169/5 176/14 181/6 181/13 181/22 182/25 184/5 185/13 185/21 186/8 186/13 186/16 188/17 189/2 189/14 189/21 190/21 192/8 192/18 193/24 194/1 194/4 194/9 194/17 194/22 195/8 195/20 196/14 196/22 197/18 226/10
correctly [4] 65/16 101/5 103/10 119/13
correspondence [1] 94/16
cost [1] 62/8
costs [11] 51/17 51/21 52/4 62/11 63/18 121/12 121/21 122/3 122/5

**C**

costs... [2]  135/8 136/8

could [42]  7/7 15/2 15/21 16/17 17/9 17/10 19/7 24/4 24/5 24/18 24/20 27/15 28/18 34/16 51/16 51/17 51/19 62/4 62/5 66/16 66/22 67/3 72/14 76/21 93/3 93/14 95/7 96/9 96/11 98/13 119/7 130/25 139/8 141/23 159/18 175/7 193/10 194/11 200/9 209/17 212/5 212/7

couldn't [6]  64/6 92/1 116/6 206/12 206/24 207/2

counsel [62]  2/1 2/10 4/5 4/10 4/16 4/21 5/1 7/7 9/10 9/11 15/23 16/14 17/11 21/24 23/11 24/15 27/23 27/25 37/1 53/25 65/24 67/3 73/8 73/9 75/14 79/17 86/6 91/14 102/10 121/6 132/2 132/16 133/13 136/4 142/7 142/9 148/12 148/15 152/4 155/4 159/14 160/15 176/7 178/4 183/9 187/8 190/4 194/8 197/15 199/4 200/19 208/6 210/11 210/15 211/22 212/1 212/1 212/10 213/10 218/8 218/11 224/17

counsel's [6]  13/5 101/3 103/16 211/2 212/16 224/14

Counsels [1]  132/6

counter [1]  116/15

counterdemand [1]  115/20

counterintuitive [1]  211/17

counteroffer [2]  115/20 115/24

County [13]  19/25 21/12 70/13 70/16 84/14 151/12 154/1 154/14 154/16 154/19 154/21 155/1 182/17

couple [5]  13/23 22/20 24/23 91/14 112/2

course [10]  11/13 73/20 80/5 104/7 109/1 121/9 140/18 170/16 205/11 221/2

court [156]  1/1 1/23 5/2 6/23 6/25 7/3 7/3 7/6 7/8 7/15 7/22 9/24 10/2 11/17 11/25 12/20 13/24 17/1 17/7 19/7 19/12 23/5 24/21 38/16 41/11 41/17 47/3 47/4 47/20 47/23 48/2 63/23 64/22 70/14 71/1 71/21 72/13 73/13 74/3 74/25 84/9 84/10 84/15 86/8 86/13 86/15 88/7 88/18 88/23 90/10 95/2 96/24 100/2 100/5 100/7 100/10 100/11 100/16 100/18 100/19 100/21 100/21 100/24 106/4 109/22 114/10 115/2 122/14 123/10 123/11 124/11 124/14 125/5 125/24 126/3 128/5 129/1 129/11 129/20 130/12 131/5 131/8 132/18 133/15 133/21 135/9 142/2 142/17 147/10 151/12 152/21 156/23 158/2 158/24 159/2 159/9 159/14 159/25 160/6 160/16 161/5 161/7 166/17 171/15 173/16 177/9 177/24 178/2 178/16 183/22 184/20 186/16 187/5 187/9 192/11 193/1 193/6 193/11 195/11 195/14 195/15 195/25 196/6 196/9 196/22 202/17 203/16 203/23 205/21 207/10 208/5 209/1 209/2 209/6 213/20 214/9 215/10 215/22 216/11 216/20 217/3 217/4 217/22 218/12 218/22 219/19 220/13 221/14 221/18 222/17 223/23 223/24 226/1 226/6 226/7 226/17

**Court's [7]**  5/13 12/7 37/7 41/23 189/6 221/17

court-appointed [1]  47/20

court-compulsory [1]  100/7

courthouse [2]  50/7 203/9

courtroom [11]  12/3 12/10 12/14 12/15 13/12 13/18 49/22 68/21 128/3 202/6 224/21

courts [8]  11/22 130/19 134/8 142/22 161/9 217/23 217/24 218/1

covered [3]  117/2 184/3 184/4

covers [1]  11/6

create [2]  140/15 212/3

created [1]  55/11

creates [3]  43/17 43/22 124/2

creating [1]  43/14

credibility [2]  41/19 41/24

credible [1]  139/11

criticism [3]  127/17 213/6 213/8

criticized [1]  213/23

criticizing [1]  127/1

cross [28]  3/5 3/6 3/9 3/10 3/13 3/14 3/17 3/18 34/21 34/23 38/7 54/13 56/1 64/23 91/2 91/4 117/16 117/19 131/23 138/18 151/4 153/22 157/18 179/17 180/13 220/21 221/1 222/3

CRR [1]  226/16

CRR,FCRR [1]  1/22

CSR [3]  1/22 1/22 226/16

current [3]  68/22 124/10 179/11

currently [5]  33/16 102/21 132/22 137/23 175/4

cv [2]  1/9 4/5

**D**

D-I-C-T-I-O-M-A-T-C [1]  10/5

d/b/a [2]  1/10 161/20

daily [1]  217/15

Daisy [1]  161/25

damages [10]  78/4 134/20 134/22 135/3 135/10 135/11 136/17 206/5 206/10 206/25

Dan [2]  4/14 35/3

DANIEL [2]  2/17 81/5

danieljaycohen209 [1]  2/19

data [11]  71/9 98/6 98/8 98/9 99/1 99/7 99/14 100/1 100/8 100/14 100/23

date [21]  55/4 56/22 57/20 58/20 90/20 103/11 125/21 158/4 188/7 189/23 190/24 190/25 191/5 191/20 191/21 191/21 191/24 192/1 192/3 205/8 205/8

dated [6]  8/17 31/5 35/10 102/7 205/6 221/17

dates [1]  191/12

Dausel [1]  115/3

Dave [4]  25/24 31/4 32/21 32/22

DAVID [28]  1/10 2/9 3/12 4/19 5/1 25/16 32/24 76/19 103/17 103/23 109/16 109/24 111/7 111/20 111/21 113/19 116/6 145/8 145/12 145/17 172/12 174/25 175/5 175/6 175/11 175/21 201/7 201/10

day [25]  26/19 27/8 33/4 53/6 61/12 62/24 75/18 76/2 79/18 87/1 87/12 87/18 88/20 98/21 105/5 108/7 108/7 108/13 108/13 151/13 155/16 187/24

**188/10 190/8 202/22**

days [6]  4/23 16/17 135/25 69/25 186/2 217/10

deal [3]  53/20 54/1 78/10

dealing [1]  79/16

dealt [5]  71/23 77/7 77/9 77/25 118/21

decide [9]  13/24 124/14 172/1 174/18 174/25 200/10 202/25 216/15 221/14

decided [4]  17/15 187/20 200/7 201/12

decides [1]  221/18

deciding [4]  39/17 41/24 172/20 172/24

decision [9]  53/25 96/20 117/25 125/8 128/12 134/5 152/22 172/8 173/2

decision-maker [1]  117/25

decisions [3]  102/18 129/4 152/15

declarant [1]  144/20

declarants [1]  131/21

declaration [8]  41/15 48/6 48/7 125/4 128/24 131/25 204/25 205/4

declarations [4]  41/12 41/14 130/9 205/19

declare [1]  35/13

decline [1]  113/13

declined [1]  127/23

decoded [1]  99/24

deed [1]  221/3

deemed [3]  62/6 74/2 99/7

defend [1]  134/10

DEFENDANT [22]  2/9 2/15 4/15 4/20 14/4 35/25 48/5 48/12 48/14 95/24 96/9 101/11 128/6 132/21 149/3 153/12 168/14 169/25 170/24 187/13 206/23 223/3

DEFENDANT'S [2]  3/24 48/8

DEFENDANTS [16]  1/12 14/15 16/5 123/13 131/21 134/10 134/21 144/19 145/5 145/18 170/23 171/10 203/24 206/3 206/13 224/13

Defendants' [4]  132/21 168/12 203/10 216/3

defense [3]  3/11 178/13 212/16

definition [2]  85/13 184/2

degree [2]  47/11 156/13

delayed [2]  215/18 217/8

delivering [1]  215/7

demands [1]  79/21

demonstrate [1]  71/10

demonstrates [1]  125/6

denials [1]  41/22

denied [7]  134/15 158/24 159/2 159/25 160/3 178/8 215/18

denies [1]  41/16

deny [1]  168/22

depends [1]  42/8

deposed [6]  23/15 23/16 23/17 23/19 23/21 168/18

deposition [16]  24/11 24/13 24/16 24/20 62/4 97/8 101/23 102/7 102/15 102/20 103/7 103/11 108/12 121/21 136/5 204/25

depositioned [1]  23/8

depositions [8]  23/7 75/12 75/15 75/18 99/18 101/12 103/4 193/23

derail [1]  130/21

derailed [1]  126/16

**D**

**derivatively [1]** 214/7
**describe [5]** 69/3 69/17 70/21 179/21 210/12
**described [10]** 45/13 45/23 72/19 81/3 95/3 181/11 181/15 181/17 182/23 219/22
**describes [1]** 202/10
**describing [2]** 172/10 213/2
**designed [2]** 109/10 168/13
**desiring [1]** 51/23
**desk [2]** 20/9 47/25
**detail [3]** 53/18 53/24 103/21
**detailed [1]** 116/8
**details [2]** 26/10 26/13
**determination [1]** 134/8
**determine [2]** 12/15 182/24
**determines [1]** 130/7
**detriment [1]** 133/18
**develop [3]** 36/5 52/11 52/19
**developed [2]** 93/22 219/17
**devoted [1]** 63/7
**Diabetic [1]** 158/22
**did [171]** 21/9 21/19 22/11 22/15 24/9 24/12 24/17 25/5 25/13 25/18 26/4 26/17 26/20 26/22 27/3 27/6 27/21 27/25 28/3 28/5 28/25 29/9 30/20 31/7 31/14 31/19 31/22 32/1 32/6 32/10 32/13 32/16 32/18 32/22 33/1 33/11 36/5 36/15 38/25 44/20 44/24 48/20 52/10 52/19 54/24 55/18 55/23 56/2 56/2 56/10 56/16 57/13 57/22 59/1 60/22 62/15 62/20 65/4 65/5 65/15 65/19 66/11 67/13 69/9 69/15 69/20 70/19 70/21 70/22 71/1 71/7 72/8 72/23 74/11 74/14 74/16 75/23 75/25 76/25 78/18 79/22 79/23 80/19 80/22 80/23 82/24 83/4 85/14 85/23 86/5 86/12 87/2 87/8 87/9 88/16 88/21 88/21 88/25 92/5 96/15 96/17 96/23 96/25 99/3 99/14 101/24 103/17 105/12 106/20 106/21 111/10 111/11 112/15 113/7 113/23 116/19 119/12 119/18 119/21 120/2 120/6 128/18 132/1 147/13 147/18 147/21 152/1 152/3 153/18 154/8 154/21 157/13 160/16 162/9 162/20 165/22 166/4 167/4 168/21 172/1 172/11 172/17 172/19 172/23 174/5 174/9 174/25 175/20 175/24 178/22 178/23 180/25 182/1 181/3 182/13 183/1 183/3 184/17 188/8 188/11 189/19 190/18 193/9 198/3 199/16 200/11 201/7 201/18 204/3 211/5 212/4
**didn't [52]** 14/18 14/22 15/13 15/14 15/15 39/16 41/8 43/1 43/2 43/2 47/13 50/3 53/3 56/1 71/5 80/9 81/5 84/12 87/22 93/4 95/18 96/16 98/19 106/18 108/17 109/12 112/9 113/23 116/1 116/19 128/13 139/10 139/17 144/4 154/13 154/18 162/11 178/17 181/23 182/14 182/18 182/19 187/18 190/11 190/17 191/9 191/11 193/13 202/3 202/3 205/11 208/18
**differ [1]** 139/13
**difference [5]** 47/2 47/8 82/20 219/22 219/23

**different [29]** 15/6 15/13 16/17 32/1 40/17 61/2 63/15 76/17 76/17 99/4 104/25 110/8 113/19 139/7 144/8 144/9 165/14 176/22 176/23 177/6 179/9 190/6 223/7
**differently [1]** 60/24
**differing [1]** 152/5
**difficult [3]** 41/23 46/8 70/23
**diligent [1]** 167/2
**diligently [1]** 166/23
**dinner [6]** 26/21 26/22 27/3 27/19 58/9 145/25
**direct [14]** 3/5 3/9 3/13 3/17 19/5 19/14 68/17 145/21 162/17 166/15 171/13 181/15 199/5 209/9
**directed [3]** 123/21 185/11 197/1
**direction [1]** 119/1
**directly [7]** 16/8 86/20 97/20 144/2 154/18 154/22 155/2
**director [2]** 29/13 129/2
**dirty [4]** 50/11 51/4 62/22 127/1
**disagree [2]** 43/9 191/24
**disagreed [1]** 119/9
**disagreement [1]** 127/3
**disagrees [1]** 121/15
**disappear [1]** 95/25
**Disciplinary [2]** 129/5 217/23
**disclose [2]** 129/17 147/9
**disclosed [1]** 71/22
**disclosure [5]** 42/11 129/8 204/17 204/21 216/25
**disclosures [1]** 221/7
**Discount [1]** 161/21
**discovered [1]** 86/4
**discovery [30]** 22/6 67/6 67/17 67/18 71/2 71/13 71/21 73/15 74/14 74/24 75/7 75/10 97/6 98/8 99/17 99/18 101/12 103/5 110/19 121/7 129/23 130/6 134/9 136/16 167/16 167/22 167/23 168/8 173/10 194/3
**discuss [4]** 12/23 27/3 27/6 43/2
**discussed [8]** 27/17 27/18 39/19 41/3 43/4 78/11 146/1 212/8
**discussion [8]** 40/3 82/23 116/11 116/17 134/20 152/4 202/2 203/18
**discussions [26]** 26/11 27/13 28/25 29/3 39/24 40/9 40/14 43/3 45/5 60/11 73/21 73/23 77/3 78/17 79/25 80/1 88/6 88/13 104/6 104/11 105/5 105/9 112/11 121/9 143/14 208/8
**disgorge [1]** 99/21
**disgorgement [1]** 136/13
**dismiss [14]** 14/20 14/22 14/25 16/16 131/14 133/3 187/22 195/25 216/3 216/7 216/16 216/19 216/10 219/14
**dismissal [1]** 187/25
**dismissed [11]** 88/17 95/8 95/23 102/24 102/25 134/15 140/8 187/4 187/18 213/24 216/17
**dispute [8]** 7/13 14/12 84/18 86/21 137/10 137/11 137/21 137/22
**disqualification [2]** 138/7 223/17
**disqualified [2]** 113/18 212/19
**disqualifier [1]** 149/20
**disqualifying [5]** 130/23 211/16 211/25 212/4 218/7

**disregard [1]** 83/14
**distant [1]** 99/24
**distinct [1]** 199/8
**distinction [1]** 129/4
**distinguish [1]** 107/24
**distributed [1]** 121/3
**distribution [1]** 217/8
**district [29]** 1/1 1/2 1/4 5/10 6/6 9/25 10/7 96/23 134/8 156/23 158/2 158/2 158/9 158/12 158/16 158/23 159/5 159/24 161/6 161/8 161/9 161/12 161/17 161/22 162/1 226/1 226/3 226/7 226/7
**districts [1]** 156/24
**diversity [1]** 135/3
**divided [1]** 217/10
**division [1]** 94/20
**do [129]** 9/10 9/12 9/22 11/8 11/11 12/4 12/14 15/16 17/18 19/19 20/2 20/17 21/3 23/21 26/15 28/19 28/22 28/24 30/4 31/11 32/16 32/18 34/1 34/4 35/4 35/7 36/5 38/7 39/8 39/21 40/20 41/6 41/21 53/5 55/3 57/1 57/25 58/20 58/22 58/23 59/3 59/8 59/12 59/25 60/4 60/22 61/16 62/2 64/22 64/25 66/1 66/9 69/13 70/4 77/15 81/11 81/12 83/10 86/5 94/10 96/11 97/7 103/3 109/19 111/8 111/12 114/8 114/13 114/16 114/23 115/1 115/5 119/18 119/23 119/24 121/7 123/9 123/19 124/16 125/4 126/24 127/23 133/25 139/16 139/18 142/25 143/24 144/1 144/4 144/22 144/23 149/8 151/18 151/22 152/1 156/11 157/2 169/20 175/11 176/3 179/3 182/19 183/14 186/19 190/1 190/6 190/16 193/4 198/14 199/12 199/15 199/25 200/10 201/6 202/20 203/23 204/1 206/16 207/3 208/13 209/21 210/18 214/24 215/13 217/16 220/9 220/24 224/8 226/8
**docket [2]** 181/12 182/22
**dockets [1]** 8/3
**Doctor [12]** 19/20 30/10 30/11 95/5 158/22 173/7 174/6 174/11 174/22 193/15 194/11 199/10
**doctors [1]** 95/5
**document [6]** 70/4 70/6 72/11 81/11 83/10 195/6
**documentary [1]** 75/7
**documentation [1]** 23/5
**documents [5]** 67/6 112/6 168/2 191/8 191/15
**does [24]** 37/15 51/22 52/2 52/6 85/3 102/8 102/9 127/4 127/12 130/21 136/6 138/13 139/15 152/22 155/23 159/21 161/1 161/3 172/6 181/10 186/8 204/25 205/3 206/23
**doesn't [23]** 17/18 17/20 61/19 64/5 103/4 112/10 139/10 141/6 144/1 152/23 179/10 189/8 205/10 205/14 205/19 208/15 209/15 211/24 212/3 221/14 221/15 221/18 221/23
**doing [19]** 34/15 43/11 53/2 53/2 108/8 111/23 136/21 138/10 142/23 151/24 168/6 168/16 174/2 178/20 182/11 182/21 199/22 205/12 214/8

**D**

**dollars [3]** 51/12 126/22 217/7
**don't [157]** 10/12 12/2 13/6 13/9 26/9 26/14 29/18 34/13 36/22 37/23 39/9 43/23 43/25 44/16 44/18 47/6 47/11 47/15 47/17 50/14 51/7 53/8 54/8 55/7 56/23 57/19 57/24 59/6 62/14 66/17 70/1 70/18 78/16 81/7 85/25 85/25 86/2 89/24 91/13 91/25 92/9 94/15 103/19 104/8 104/10 105/10 105/11 108/3 109/6 112/4 115/7 115/13 116/10 118/7 119/2 120/20 124/6 124/16 127/19 129/13 129/16 130/2 130/2 130/4 132/4 132/11 134/6 136/15 137/21 139/8 142/16 146/10 150/18 154/25 156/19 157/1 157/4 157/20 158/4 159/7 164/24 164/25 165/6 166/4 166/11 166/21 167/25 168/4 168/21 175/19 175/24 178/5 179/2 179/6 179/13 180/18 184/19 186/2 186/17 186/18 186/19 186/21 186/24 188/1 188/7 189/3 189/7 189/7 189/9 189/22 189/22 190/9 190/14 190/24 190/25 191/5 191/8 191/12 191/16 191/20 191/25 193/4 196/3 196/8 196/10 196/11 196/12 196/23 196/25 197/23 198/13 198/16 198/19 198/24 198/25 200/24 201/3 201/5 202/18 202/19 204/7 206/7 207/12 208/13 211/2 212/13 214/4 215/13 215/23 216/1 219/11 220/16 221/6 221/22 222/12 223/5 223/19
**done [30]** 5/24 21/9 22/4 23/11 52/20 63/22 72/15 73/14 100/2 112/24 118/6 124/15 124/22 124/24 126/1 138/21 143/25 150/18 159/19 162/15 164/7 175/16 177/14 190/2 197/18 197/21 205/6 217/11 223/15 223/21
**door [4]** 51/19 137/19 151/13 164/19
**dovetail [1]** 124/13
**down [3]** 99/19 108/6 117/12
**draft [1]** 167/18
**drafted [2]** 167/17 173/22
**drives [2]** 99/22 99/23
**Drug [1]** 161/21
**duly [4]** 19/3 68/15 145/19 171/11
**dump [1]** 143/21
**duration [1]** 146/5
**during [12]** 11/5 16/1 28/15 73/20 79/17 104/6 109/1 121/9 124/1 125/22 188/25 204/23
**duties [2]** 60/6 169/21
**duty [41]** 106/3 109/16 109/24 111/19 111/21 112/4 112/13 112/21 112/23 113/20 114/5 124/19 125/14 125/15 126/5 126/7 130/25 136/12 141/18 141/21 142/11 142/24 142/25 143/6 151/20 153/3 153/13 153/16 162/20 169/17 175/21 176/5 176/6 176/7 177/8 177/16 178/24 179/3 214/21 218/21 222/18

**E**

**E-mail [19]** 58/14 80/24 81/6 81/14 81/21 82/9 82/15 83/7 83/8 83/13 83/17 86/20 87/2 87/4 89/6 94/16 154/15 154/22 154/22
**E-mailed [1]** 83/15
**E-mails [8]** 61/8 81/13 81/19 81/21 83/4 83/11 154/13 154/25
**each [7]** 16/11 16/18 16/19 75/19 80/10 98/21 203/14
**earlier [7]** 90/14 101/1 101/3 107/8 162/5 190/8 212/8
**early [1]** 191/1
**earth [1]** 155/1
**easily [1]** 209/17
**East [1]** 20/18
**easy [1]** 100/12
**ECF [1]** 189/16
**EDWARDS [1]** 1/4
**effect [5]** 86/23 88/11 126/25 133/16 219/8
**effort [3]** 74/3 99/9 108/15
**efforts [3]** 181/11 181/15 187/7
**ego [1]** 115/11
**eight [4]** 23/17 81/17 97/8 168/18
**eight-hour [1]** 97/8
**either [10]** 24/4 40/22 52/15 67/5 72/22 101/25 181/4 206/15 216/6 224/13
**electing [1]** 209/13
**electronic [11]** 98/9 98/17 99/1 99/14 100/8 100/23 151/11 153/25 154/3 154/8 154/10
**Eleventh [6]** 96/4 96/7 96/8 96/10 96/20 134/4
**eliminate [1]** 90/16
**else [17]** 12/2 23/18 26/22 26/24 27/1 28/22 60/24 61/9 120/13 123/24 130/10 149/5 179/14 197/25 213/16 214/5 220/9
**elsewhere [2]** 38/25 138/11
**embark [1]** 123/25
**emphasize [1]** 16/22
**employed [5]** 50/22 110/22 132/22 163/24 164/1
**employer [1]** 175/2
**employment [2]** 114/18 125/12
**end [14]** 53/3 54/25 61/12 62/24 63/16 98/21 101/6 113/18 128/4 130/14 191/6 202/22 211/25 214/16
**endeavor [1]** 101/16
**ends [1]** 211/24
**energy [2]** 121/5 121/11
**enforce [2]** 142/16 142/17
**enforced [2]** 142/19 142/21
**enforcing [2]** 142/13 143/7
**engaged [4]** 75/7 75/11 110/25 153/15
**engages [1]** 207/16
**enjoin [11]** 16/15 17/7 17/23 86/19 87/1 87/6 88/3 195/15 195/21 214/6 215/12
**enjoined [2]** 194/6 207/1
**enough [2]** 103/20 129/24
**enter [4]** 130/2 203/17 205/23 215/22
**entered [4]** 5/4 7/20 159/9 206/8
**enters [1]** 133/20
**entertains [1]** 129/1
**entire [6]** 104/18 104/19 104/20 104/21 154/12 163/9
**entirely [1]** 125/23
**entirety [1]** 101/8
**entities [1]** 215/2
**entitle [1]** 106/2
**entitled [5]** 92/21 92/22 141/12 225/8 226/2
**entitles [1]** 135/7
**entity [3]** 110/22 137/25 171/19
**equally [2]** 104/17 105/20 201/19
**equitably [1]** 121/3
**eradicate [1]** 125/13
**error [4]** 83/3 83/9 107/4 198/25
**espousing [1]** 125/10
**essentially [9]** 15/24 16/9 20/12 97/17 124/11 125/10 130/16 171/22 208/12
**establish [5]** 75/2 75/19 93/3 133/22 206/14
**established [3]** 96/10 124/5 136/12
**estimating [1]** 93/4
**estimation [1]** 209/17
**et [2]** 43/3 85/11
**ethical [6]** 16/24 129/5 142/13 143/2 143/4 150/7
**ethics [3]** 11/20 129/2 219/20
**Eubank [2]** 152/12 152/24
**evaluate [2]** 73/24 121/8
**evaluation [1]** 74/17
**even [20]** 14/8 28/14 53/3 53/24 65/25 96/19 103/6 129/16 131/21 139/17 144/2 144/21 182/14 182/18 189/8 193/2 204/5 218/10 223/5 224/23
**evening [3]** 80/25 82/16 108/7
**event [5]** 52/16 94/21 200/10 215/22 221/18
**events [2]** 14/3 93/22
**eventually [5]** 21/19 32/22 71/8 72/13 98/25
**ever [31]** 27/21 47/12 47/16 52/10 52/10 52/18 52/19 52/24 52/24 57/22 108/3 118/3 118/7 146/10 163/9 166/12 170/7 170/11 170/14 176/9 176/16 186/21 196/18 197/15 198/8 198/11 200/6 209/9 209/11 209/24 215/14
**every [6]** 16/19 166/13 175/12 177/9 183/13 214/11
**everybody [7]** 46/13 60/19 118/7 182/3 187/16 200/21 201/15
**everyone [6]** 60/24 68/20 154/17
**everyone's [1]** 135/9
**everything [9]** 14/6 17/11 20/7 44/17 92/14 103/3 111/5 123/24 201/16
**evidence [27]** 6/19 7/12 7/25 8/15 9/18 10/3 10/9 11/3 11/6 30/3 48/16 75/2 82/7 84/3 109/20 123/25 124/2 124/22 124/25 125/3 126/6 126/8 128/6 129/21 214/16 214/19 218/15
**evidentiary [9]** 1/15 6/13 6/19 6/20 10/2 10/10 11/9 124/10 221/24
**evolved [1]** 115/15
**exact [4]** 41/22 57/19 139/22 177/14
**exactly [4]** 115/14 128/1 143/25 201/9
**examination [37]** 3/5 3/5 3/6 3/6 3/9 3/9 3/10 3/13 3/13 3/14 3/14 3/17 3/17 3/18 3/18 19/5 34/21 34/23 37/21 54/13 64/17 68/17 91/2 91/4 117/16 117/19 138/18 145/21 151/4 153/22 157/18 169/14 171/13 179/17 180/13 197/13 209/9
**examine [5]** 38/7 131/24 221/1 221/23 221/25

**E**

examined [6] 19/3 68/15 145/19 171/11 220/21 222/3
example [4] 108/5 176/18 177/1 177/22
except [5] 14/6 80/17 138/11 210/5 213/13
exception [6] 11/13 12/1 42/7 44/4 106/1 107/8
excess [2] 134/22 135/25
exchanged [2] 41/17 143/11
excluding [1] 172/12
excuse [9] 11/12 17/25 19/11 137/14 142/8 192/15 193/15 204/8 217/8
excused [1] 123/6
executed [2] 205/8 221/16
exhibit [48] 3/21 3/22 3/22 3/23 3/25 7/2 7/6 7/17 7/18 7/18 7/18 7/18 7/19 7/19 8/12 8/16 8/24 9/11 9/14 9/16 9/19 10/22 10/22 11/1 29/15 29/25 30/3 35/11 35/23 48/6 48/8 48/12 48/14 65/7 69/24 70/2 81/24 82/3 82/5 83/20 83/23 84/1 84/24 85/1 85/2 131/13 159/13
exhibits [10] 3/20 3/21 3/24 7/11 11/5 11/7 123/10 139/22 199/19 225/3
existed [2] 55/24 56/4
existing [2] 7/14 7/20
exists [2] 56/3 152/6
expect [5] 12/4 61/12 61/16 62/12 217/16
expedite [2] 29/19 29/23
expend [1] 108/17
expending [1] 108/15
expense [1] 198/20
expenses [1] 198/22
experience [4] 130/17 201/22 205/20 206/20
experienced [1] 78/3
expert [27] 11/20 12/1 12/4 12/9 12/12 13/11 13/14 24/21 51/17 113/9 128/9 129/1 129/7 174/15 181/18 181/21 181/24 188/22 189/4 199/9 203/10 203/22 204/24 216/24 217/17 218/18 219/21
expertise [2] 130/17 220/3
experts [4] 11/22 12/14 220/1 220/5
explain [2] 149/25 177/24
explaining [4] 78/1 78/2 78/4 78/5
exploring [1] 111/17
exposed [4] 51/16 51/20 121/12 121/13
expressing [1] 115/11
expressly [1] 127/23
extend [1] 211/9
extent [22] 10/13 10/22 38/6 40/25 42/19 43/10 44/4 45/16 80/17 111/7 120/10 121/10 122/17 126/22 133/20 147/3 152/7 167/9 167/17 169/19 201/23 223/5
extraordinarily [1] 213/5
extreme [1] 143/17

**F**

F.2d [1] 9/25
F.d [1] 10/7
facie [2] 124/5 124/24

facilitating [1] 125/7
facsimile [4] 70/23 96/3 195/5 195/8
facsimiles [1] 71/23
fact [45] 10/14 12/22 13/16 13/17 13/19 17/9 36/16 36/18 42/2 42/20 50/5 52/6 80/13 114/19 124/7 126/19 133/1 133/6 133/22 136/6 139/19 140/21 150/18 152/8 153/5 153/6 167/17 177/12 177/13 178/22 185/7 189/20 200/5 201/7 202/2 205/7 205/15 210/23 210/25 211/1 216/14 218/12 218/20 219/17 224/20
facts [12] 12/15 15/2 16/7 35/14 36/23 36/25 37/4 42/8 56/8 134/4 153/8 205/18
factual [10] 10/18 10/23 11/24 37/8 37/10 37/11 37/18 37/20 106/1 167/8
fail [2] 99/8 132/23
fair [7] 34/13 34/14 46/3 50/1 50/2 50/10 156/17
fairly [2] 80/8 132/13
faith [1] 128/19
fall [3] 38/15 95/11 108/24
falls [3] 37/12 107/8 221/3
familiar [7] 47/2 68/20 76/22 152/11 152/15 152/16 185/4
far [11] 48/1 61/25 78/7 88/11 121/17 135/25 136/18 138/4 144/22 152/1 203/22
fashion [3] 95/14 176/4 178/23
fast [1] 103/20
Fat [1] 9/24
fathom [1] 206/24
favor [1] 127/25
favorable [1] 119/9
favorably [1] 52/20
fax [36] 22/19 23/6 31/19 31/24 32/6 55/13 85/10 87/18 90/18 97/8 98/10 98/17 98/24 98/24 99/6 100/4 126/14 166/18 173/11 174/18 174/20 181/20 181/25 182/2 182/3 182/23 188/24 189/2 189/4 199/9 199/13 199/19 199/23 208/17 208/18 208/19
faxes [18] 21/1 21/14 22/8 23/6 31/24 31/25 70/17 71/4 71/10 93/3 98/22 99/5 173/25 182/1 184/7 184/14 196/19 199/22
faxing [1] 99/13
FCRR [1] 226/16
features [1] 211/11
February [9] 25/4 40/2 40/4 58/21 77/1 102/7 103/12 104/7 122/2
February 12 [2] 102/7 103/12
February 12th [1] 40/2
February 2015 [1] 58/21
FEDERAL [23] 2/23 40/1 73/13 84/9 84/10 86/15 88/22 90/6 95/2 100/2 100/5 100/17 100/18 115/2 135/8 160/15 161/8 161/9 166/17 168/19 178/2 178/16 193/1
fee [12] 5/21 6/1 24/4 95/16 97/18 97/18 117/1 119/25 135/17 135/22 154/6 201/3
feedback [1] 80/18
feel [5] 34/4 44/19 48/20 53/9 175/19
feeling [1] 51/11
fees [22] 24/21 24/21 24/21 24/22

24/22 51/16 51/17 51/20 52/7 61/22 135/7 135/25 136/8 140/12 180/1 192/17
fell [2] 181/8
felt [1] 54/2
few [3] 26/7 35/22 46/16
Fidelity [1] 10/6
fiduciary [41] 16/24 106/3 109/16 109/24 111/18 111/21 112/4 112/12 112/21 112/23 113/20 114/5 124/19 125/14 125/15 126/4 130/24 136/12 141/18 141/21 142/10 142/24 142/25 143/5 151/20 153/3 153/13 153/16 162/20 169/17 175/21 176/4 176/6 177/8 177/16 178/24 179/2 214/19 214/21 218/21 222/18
fight [1] 49/22
fighting [16] 16/11 16/12 16/14 16/19 34/12 48/24 49/3 49/4 49/8 49/9 49/13 49/14 49/19 140/18 187/20 214/2
figured [1] 86/1
figures [1] 45/7
file [31] 17/10 17/15 41/11 64/6 72/7 72/14 73/13 86/25 93/2 93/12 94/5 100/18 112/19 113/22 144/8 167/11 172/24 173/2 174/4 174/14 178/18 179/6 182/6 182/18 187/19 213/21 213/24 214/1 214/4 214/9 221/16
filed [99] 21/25 22/11 22/25 23/4 33/2 35/6 47/25 48/22 49/3 51/9 51/17 70/6 70/10 70/11 70/13 70/25 71/19 71/25 72/2 72/6 72/10 80/20 84/11 84/15 85/19 85/22 86/13 86/14 87/1 88/3 89/10 89/10 89/17 90/3 90/12 90/14 94/6 94/8 94/25 95/1 95/9 95/11 95/22 97/14 98/1 100/2 101/19 103/13 110/5 110/17 112/1 129/19 129/20 140/7 140/9 140/24 151/8 151/16 152/9 154/4 155/3 166/6 176/23 178/9 179/1 181/18 182/19 183/2 183/6 183/8 183/14 183/19 183/22 184/13 184/17 185/3 185/5 185/12 185/19 186/4 188/2 188/2 189/9 191/3 191/9 191/10 191/11 192/2 192/24 193/1 193/3 195/4 195/13 196/13 197/23 199/10 204/9 213/19 216/13
files [4] 133/21 164/8 166/14 178/15
filing [21] 20/9 24/21 33/12 74/4 87/3 96/21 97/12 110/20 111/8 114/4 143/15 147/24 151/7 151/11 154/6 154/11 163/21 166/8 182/15 185/17 185/25
filings [2] 8/3 23/9
final [3] 117/24 214/12 224/3
finalized [1] 75/6
finally [4] 73/19 73/19 100/3 100/18
financial [2] 179/20 180/6
find [11] 15/10 53/9 71/7 71/9 98/5 134/19 142/7 173/10 190/6 218/5 218/13
fine [2] 10/19 137/11
fines [1] 51/20
finished [1] 159/20
finite [2] 37/24 38/8
firm [171] 1/10 2/15 2/16 2/21 4/8 4/8 4/14 4/15 4/16 4/17 4/18 4/20 4/23

**F**

**firm... [158]** 4/23 8/11 8/17 14/7 14/8
14/11 17/3 17/4 17/15 17/15 17/17
21/15 21/20 21/22 23/13 30/21 30/24
32/13 33/2 33/9 35/3 39/12 40/19 41/6
42/22 43/18 43/19 48/21 50/22 51/24
52/3 52/12 54/21 55/8 55/19 56/17
56/18 59/4 60/5 63/15 71/12 71/14
76/16 81/8 93/17 98/7 110/2 110/3
110/16 110/21 111/4 111/6 111/19
111/23 112/13 112/15 112/16 112/21
112/22 113/13 113/17 113/21 114/4
114/18 114/25 115/1 118/11 118/13
125/1 125/2 125/2 126/10 127/6 127/7
127/21 128/15 130/25 132/21 137/18
137/25 138/1 138/7 138/8 138/16
138/17 138/19 139/20 143/24 144/2
144/12 147/18 148/23 151/7 152/9
152/9 154/11 154/14 154/23 154/24
155/18 155/20 155/23 162/25 164/20
164/20 171/19 172/1 172/5 172/9
172/14 173/17 175/14 175/21 175/22
176/14 176/17 176/21 178/3 178/4
178/4 178/5 178/6 179/23 180/24
183/25 185/20 185/24 186/18 186/21
191/14 192/12 192/23 194/6 194/15
195/1 196/22 197/1 197/2 198/8
198/11 198/15 200/18 200/18 201/13
202/3 202/15 207/16 207/24 207/25
210/1 210/1 210/4 212/10 212/14
213/20 213/23 213/25 214/20
**Firm is [1]** 125/2
**firm's [4]** 48/6 48/12 111/8 125/7
**firmly [1]** 136/12
**firms [8]** 50/14 62/15 63/3 138/23
166/9 201/8 208/13 222/17
**first [45]** 13/19 13/25 18/7 19/3 20/25
21/10 22/9 25/2 31/17 35/23 36/21
41/4 55/17 58/4 65/7 68/15 69/9 69/15
73/6 82/9 82/17 82/18 82/25 85/10
86/1 87/15 104/8 114/11 119/1 128/19
141/13 145/5 145/19 145/23 145/25
150/13 151/6 171/11 174/5 183/21
191/13 198/5 200/16 205/21 216/12
**fit [2]** 38/10 45/25
**five [3]** 23/23 212/11 212/12
**FL [2]** 2/6 2/22
**flimsy [1]** 215/10
**floating [1]** 64/8
**FLORIDA [89]** 1/2 1/16 1/23 1/24 6/6
9/25 10/6 10/7 14/1 14/2 14/3 14/4
14/4 14/6 14/10 14/10 14/11 14/13
15/7 15/21 16/25 17/20 18/3 19/24
20/19 22/9 41/7 100/10 100/11 114/10
129/3 129/5 136/20 138/5 139/13
139/16 140/1 141/19 142/14 142/14
142/17 150/5 150/6 150/8 150/11
150/15 150/25 152/23 156/5 156/9
156/15 156/18 156/23 157/11 157/14
157/15 158/2 158/9 158/12 158/16
158/23 159/5 159/25 160/17 160/18
161/6 161/12 161/13 161/17 161/22
162/1 164/20 173/21 173/24 174/2
174/3 174/4 174/8 200/16 207/18
213/20 215/3 215/16 218/2
**flush [1]** 36/14

**focus [8]** 111/2 111/3 111/5 132/17
132/17 203/22 203/24 219/16
**focusing [2]** 101/14 104/13
**fold [1]** 29/24
**FOLEY [5]** 2/3 4/8 6/24 164/21 164/22
**foley.com [3]** 2/7 2/7 2/8
**follow [2]** 55/8 186/20
**followed [1]** 121/1
**following [2]** 87/11 151/15
**follows [5]** 19/4 68/16 117/15 145/20
171/12
**forbid [1]** 211/12
**force [1]** 99/21
**foregoing [2]** 35/13 226/9
**foremost [1]** 169/17
**foreshadowing [1]** 128/11
**forgot [1]** 82/22
**form [10]** 5/19 11/23 25/18 173/12
191/17 213/4 222/17 222/23 223/9
223/25
**formal [1]** 190/22
**formally [2]** 136/22 186/24
**format [1]** 226/13
**formed [1]** 25/22
**former [10]** 17/17 129/2 137/1 137/1
139/25 142/8 142/9 152/14 175/2
209/3
**formerly [1]** 137/6
**forming [1]** 133/6
**forms [3]** 170/1 205/7 205/8
**forth [7]** 36/16 72/25 80/2 80/9 90/9
162/20 206/3
**forum [2]** 125/18 201/24
**forward [18]** 17/12 17/24 46/16 51/6
54/6 75/3 77/13 86/12 128/6 128/12
141/13 186/6 189/20 190/17 209/6
210/25 212/6 224/7
**found [9]** 48/21 114/3 151/7 182/4
189/18 191/16 191/16 199/22 218/1
**foundation [2]** 150/6 150/13
**four [7]** 118/4 184/10 184/14 204/23
212/12 212/20 212/24
**four-year [1]** 184/10
**frame [1]** 116/17
**framing [1]** 132/9
**frankly [2]** 16/2 175/13
**frequent [1]** 156/12
**frequently [1]** 12/14
**Friday [6]** 81/16 82/10 86/14 151/13
189/24 189/25
**front [15]** 15/13 20/8 49/14 49/19
53/15 70/1 89/25 91/12 97/3 140/5
189/20 202/13 204/14 214/5 214/13
**frustrate [1]** 211/18
**frustrated [1]** 109/4
**frustration [1]** 115/11
**fueled [1]** 221/2
**fulfilled [1]** 162/12
**full [7]** 38/20 38/24 39/4 76/2 79/18
95/24 222/8
**full-day [1]** 79/18
**fully [1]** 140/9
**function [3]** 213/5 215/16 218/2
**functioned [1]** 110/6
**fund [6]** 114/21 116/25 121/2 192/17
192/22 201/2
**fundamental [4]** 113/6 127/3 211/18

214/18
**funds [1]** 143/1
**further [25]** 11/23 34/20 37/10 40/9
40/14 42/12 42/17 54/9 64/14 67/22
79/24 123/2 133/24 137/4 143/19
150/19 153/19 161/14 169/9 170/19
180/9 197/8 203/2 204/2 219/8
**future [4]** 64/2 89/11 122/6 122/6

**G**

**Gainesville [1]** 69/22
**game [2]** 72/22 85/9
**games [1]** 85/10
**garbled [1]** 148/21
**gathered [1]** 138/3
**gave [8]** 80/18 109/3 114/7 118/16
118/20 154/6 155/14 186/25
**general [4]** 33/25 41/3 45/25 190/4
**generally [7]** 22/3 27/5 45/13 71/5
72/19 105/24 167/6
**get [82]** 3/7 19/13 21/14 21/19 26/10
37/10 38/8 38/12 41/21 43/1 43/23
45/19 46/1 50/8 52/13 52/20 52/25
53/3 53/6 53/24 69/9 69/15 69/20 71/3
74/4 76/23 78/16 82/24 84/19 92/13
93/6 95/7 98/8 98/9 99/25 103/20
104/10 105/15 109/8 109/8 109/9
114/21 116/15 122/9 127/16 127/18
135/3 135/7 135/18 144/22 148/14
154/8 154/13 154/18 157/3 160/16
161/5 161/7 161/11 161/14 162/15
164/6 165/12 165/15 173/13 173/25
175/15 175/16 181/12 201/2 201/2
201/14 201/19 203/10 208/5 208/6
208/7 213/18 215/9 216/11 217/12
218/12
**gets [1]** 16/23
**getting [9]** 46/12 62/17 62/24 75/5
97/8 100/10 101/9 109/15 115/25
**Gideons [1]** 20/18
**gist [2]** 115/25 115/25
**give [11]** 60/22 90/22 123/10 131/20
141/23 147/14 153/7 159/14 159/16
215/23 223/10
**given [10]** 41/15 62/19 119/1 123/19
123/23 130/9 132/17 193/23 201/22
221/1
**gives [1]** 137/2
**giving [1]** 220/24
**glad [1]** 101/1
**gmail.com [1]** 2/19
**GMC [1]** 9/24
**go [20]** 6/6 17/12 27/15 41/9 83/1 84/8
86/12 93/2 124/14 126/8 128/12 186/5
189/20 190/17 199/12 200/22 201/4
212/14 214/5 214/5
**goal [4]** 46/12 47/19 128/4 211/19
**God [1]** 211/12
**goes [12]** 14/5 29/13 52/15 106/11
118/24 127/4 210/25 218/18 218/23
219/13 221/4 222/21
**going [80]** 10/4 10/14 10/16 12/20
16/13 16/14 17/24 19/13 26/12 29/15
29/24 34/1 36/10 37/1 38/14 39/18
40/17 40/20 41/1 41/21 41/23 44/2
45/7 45/6 46/16 53/8 53/11 54/5 55/5

# G

**going... [51]** 62/18 65/6 67/10 77/13 87/17 109/7 109/7 109/8 109/12 111/19 116/3 117/10 118/2 118/9 123/19 124/12 129/9 135/6 139/23 140/20 144/18 157/17 161/1 168/15 175/5 176/11 177/11 179/4 186/5 188/22 189/23 189/24 190/1 190/6 201/3 202/19 202/25 203/1 203/9 205/23 206/7 206/18 207/9 208/10 209/5 212/5 220/16 220/17 221/4 224/7 224/23
**Golf [1]** 161/15
**gone [5]** 23/9 28/12 63/15 96/3 128/14
**good [26]** 4/1 4/2 25/16 27/2 28/21 32/19 34/25 45/17 46/2 53/20 54/15 68/19 76/7 79/7 91/6 91/7 117/21 128/19 174/3 179/6 180/15 201/19 201/25 202/1 215/9 221/3
**gossip [1]** 201/15
**got [34]** 20/25 31/9 32/16 32/18 51/10 69/18 80/24 81/6 83/6 86/24 89/6 89/6 93/3 93/5 102/21 103/20 108/20 108/20 109/4 110/19 113/5 116/3 151/11 153/24 154/14 154/16 172/14 176/21 178/11 188/3 191/7 191/13 191/15 200/6
**gotten [1]** 178/11
**governing [1]** 152/23
**grant [2]** 6/6 133/15
**granted [5]** 5/10 17/24 38/19 178/10 209/6
**granting [1]** 144/14
**grants [2]** 17/2 215/22
**grappling [1]** 127/25
**gratuitous [1]** 216/25
**great [2]** 175/12 220/7
**greater [1]** 157/21
**Gregory [3]** 19/20 30/10 30/11
**GRIFFIN [4]** 2/4 4/7 6/12 6/21
**Grilli [6]** 88/1 89/20 90/1 189/21 190/7 191/6
**Grilli's [1]** 87/12
**gross [1]** 98/23
**grounds [4]** 157/5 160/12 184/23 204/18
**group [3]** 72/22 85/8 110/15
**guaranty [2]** 10/6 210/18
**guess [11]** 63/17 89/20 91/13 97/9 113/6 113/6 179/8 185/15 197/5 198/2 219/23
**guy [1]** 174/15

# H

**hac [9]** 4/10 4/17 6/7 157/13 158/25 159/3 160/1 160/2 161/16
**had [172]** 15/3 15/9 22/18 22/21 23/4 23/5 23/8 28/10 28/10 28/11 28/11 29/3 32/20 33/2 33/6 33/8 33/9 36/24 39/4 39/17 39/20 39/23 40/2 40/9 40/14 45/5 48/22 51/5 53/24 55/7 55/13 58/12 58/15 60/11 61/6 61/7 63/7 63/7 64/20 64/21 65/1 66/14 67/7 71/1 71/21 73/7 74/24 76/17 76/23 77/11 77/24 78/7 79/10 79/11 82/23 83/1 83/8 84/11 84/15 85/21 85/24 86/18 86/21 86/23 87/1 87/5 87/7 88/2

**88/20 89/1 89/7 89/19 89/21 89/21** 90/23 91/8 91/20 92/1 92/18 92/23 93/16 93/21 94/16 95/22 96/3 96/4 96/12 98/4 98/5 98/20 98/22 98/22 99/17 99/19 99/23 99/23 100/3 100/6 100/9 100/16 100/25 101/5 102/17 102/23 103/13 108/5 108/10 111/8 111/20 112/10 113/17 114/17 114/24 114/25 115/15 115/16 115/18 115/22 116/12 116/16 117/13 125/3 125/6 129/23 133/9 140/9 146/8 151/7 152/9 163/13 168/8 169/3 172/3 173/17 173/20 173/23 174/7 174/20 175/3 175/25 178/25 180/16 182/12 182/21 182/24 183/24 184/18 185/16 186/11 186/25 188/12 188/25 190/6 190/14 191/10 193/3 197/15 197/18 197/20 197/21 198/22 199/4 200/4 200/5 201/8 210/16 210/17 213/8 214/1 216/15 221/2 225/8
**hadn't [3]** 23/10 166/20 184/24
**hand [5]** 46/18 93/11 93/12 157/6 159/21
**handing [1]** 160/23
**handle [2]** 11/5 26/2
**handled [1]** 21/15
**handles [3]** 5/6 26/2 94/12
**handling [5]** 22/17 110/23 162/13 224/24 224/25
**happen [7]** 47/13 61/19 61/20 63/10 64/2 92/5 112/9
**happened [16]** 47/12 55/10 60/10 63/10 74/21 82/14 84/5 87/23 97/4 99/13 100/6 111/5 112/7 113/21 126/15 173/14
**happening [2]** 109/5 109/6
**happens [5]** 43/18 47/10 129/24 138/24 176/10
**happy [2]** 123/10 201/15
**hard [4]** 99/22 99/23 137/5 162/22
**harm [33]** 51/9 51/10 51/11 51/12 51/15 63/23 64/4 126/21 132/25 133/11 133/12 133/22 141/11 142/4 142/4 144/25 145/4 166/15 207/10 207/15 207/22 207/23 208/1 210/13 210/13 211/1 213/12 214/22 215/12 217/10 222/25 223/13 224/13
**harmed [2]** 132/19 208/24
**harms [1]** 144/14
**has [84]** 4/21 5/5 5/18 5/21 6/1 11/16 14/7 15/8 29/16 35/12 38/24 41/12 41/15 42/25 62/24 63/2 63/15 63/22 73/22 74/20 82/21 90/19 94/18 107/20 109/15 113/13 113/22 120/25 121/10 121/13 121/23 122/22 123/8 124/4 124/22 124/22 124/24 126/12 127/2 127/2 127/24 129/3 129/11 129/20 132/18 132/19 134/25 135/1 135/3 135/9 135/10 135/23 136/21 138/2 139/9 143/25 147/13 151/1 165/7 171/15 176/6 178/12 185/2 185/5 193/4 194/25 195/1 198/8 198/11 198/15 199/2 202/15 204/24 208/5 209/1 210/20 210/22 211/22 218/11 222/14 222/16 223/9 224/10 225/2
**hasn't [2]** 127/1 133/5
**HATCH [15]** 1/11 8/18 30/21 33/11

**35/25 85/22 110/17 110/21 113/13** 207/24
**have [256]**
**haven't [9]** 5/16 9/9 35/2 48/1 54/17 76/13 129/22 194/2 219/5
**having [12]** 19/2 68/14 130/20 133/21 135/12 145/18 165/11 171/10 208/23 213/16 213/23 213/24
**he [132]** 4/20 12/13 14/10 15/9 21/13 21/15 23/21 24/15 27/22 29/13 32/20 33/8 38/24 39/13 39/20 40/19 41/16 43/1 50/1 60/12 60/15 60/22 60/23 62/20 65/19 76/21 78/6 79/10 86/21 87/15 88/11 94/12 95/9 98/13 106/18 107/22 109/6 110/9 110/12 110/16 112/5 112/13 112/15 112/20 112/22 113/10 113/21 113/22 113/23 114/3 114/25 116/1 118/16 119/1 119/1 119/3 124/22 124/24 125/1 125/6 126/9 128/13 128/14 128/21 129/2 129/3 131/25 136/14 138/19 139/9 139/9 143/18 150/9 151/15 151/16 165/9 165/16 165/19 172/4 172/6 174/16 175/14 176/6 179/2 179/7 180/16 180/20 180/22 180/22 180/24 185/5 185/12 190/1 190/3 190/8 190/11 190/15 190/17 190/18 200/25 200/25 201/5 201/6 201/9 201/14 201/14 202/7 202/8 202/10 208/16 208/17 208/18 208/21 209/9 211/3 212/22 213/2 217/17 219/21 220/10 220/21 221/1 222/2 222/3 222/17 224/21 224/25
**he'd [1]** 190/1
**he'll [5]** 129/2 217/19 217/20 217/21 217/24
**he's [21]** 4/20 26/1 43/10 50/13 66/5 97/19 97/22 112/24 116/24 118/23 118/24 132/22 138/1 138/1 150/8 153/5 177/14 180/2 185/4 202/25 224/24
**Health [1]** 158/22
**hear [13]** 16/8 19/12 19/15 92/1 102/16 103/7 119/12 129/20 132/2 132/4 206/10 221/14 221/19
**heard [20]** 84/7 104/6 106/17 132/1 138/18 176/10 176/15 187/24 188/1 191/13 202/7 204/2 206/21 207/4 207/10 208/5 210/21 216/10 216/12 216/16
**hearing [33]** 1/15 5/14 5/25 6/14 10/1 10/2 10/9 10/10 37/25 88/20 91/12 114/9 116/11 129/15 129/16 130/5 131/19 136/19 145/1 159/3 159/23 160/5 188/3 198/21 200/20 205/13 220/15 220/23 221/8 221/24 222/2 224/20 225/1
**hearings [2]** 103/5 130/4
**hearsay [1]** 88/6
**heavy [1]** 51/20
**HELBIG [3]** 1/22 226/6 226/16
**held [3]** 10/2 103/5 129/3
**Hello [1]** 35/1
**help [4]** 73/17 73/24 98/10 100/6
**helpful [1]** 220/14

**H**

**her [87]** 37/14 38/2 38/2 38/7 41/13 41/14 43/13 43/13 43/17 44/9 73/23 75/15 82/18 82/23 83/4 83/7 83/8 83/14 91/20 91/24 92/7 92/10 101/9 101/10 101/12 101/15 101/19 101/23 103/7 103/13 104/5 104/24 104/25 104/25 105/19 105/19 106/3 106/6 106/6 106/18 106/21 107/17 107/18 107/19 107/22 107/24 107/24 107/25 108/4 108/16 108/19 109/3 109/6 109/10 110/5 110/11 119/19 120/13 120/17 121/4 121/5 121/5 121/6 121/11 121/11 121/12 121/20 121/21 122/1 127/2 127/5 127/11 127/11 127/13 127/14 127/15 133/10 136/4 136/6 136/7 146/6 146/8 146/10 188/12 210/22 210/25 211/1

**here [46]** 4/21 4/23 6/10 6/23 7/1 12/20 13/24 14/24 17/18 19/25 35/7 36/11 41/18 44/9 46/7 49/3 49/9 49/19 49/25 51/15 65/21 75/6 86/16 102/25 106/15 122/13 125/16 127/9 128/2 132/18 140/21 157/16 157/21 158/5 177/4 190/7 196/20 208/1 210/2 210/24 214/10 214/24 215/3 223/16 223/23 224/6

**hereby [1]** 226/8
**herself [2]** 44/7 126/20
**hey [1]** 52/20
**Hi [1]** 54/16
**high [3]** 26/12 27/5 144/25
**highlighted [1]** 35/25
**highlights [1]** 125/14
**Hills [2]** 20/4 30/8
**Hillsborough [13]** 19/25 21/12 70/13 70/16 84/14 151/12 153/25 154/3 154/16 154/19 154/21 155/1 182/16
**him [36]** 4/21 12/6 26/20 26/24 27/25 32/20 53/15 94/15 94/15 94/15 94/16 94/21 95/6 103/24 104/24 107/16 112/17 112/18 113/25 114/16 143/14 143/15 150/6 153/7 153/9 159/16 165/8 175/17 175/17 175/22 179/25 201/12 212/21 214/6 221/1 221/23
**himself [5]** 14/9 38/24 153/6 185/3 208/16
**hired [7]** 39/17 51/23 99/9 111/20 112/1 119/1 180/16
**hires [1]** 207/16
**his [60]** 4/21 21/13 30/12 33/9 39/12 40/18 40/19 43/12 49/25 60/13 73/23 75/17 77/22 87/15 97/20 97/23 105/7 105/8 109/16 112/16 112/16 112/17 112/23 115/11 116/1 125/4 125/12 127/7 128/12 128/24 129/10 129/12 130/16 139/6 144/6 153/10 153/11 160/19 165/16 175/2 178/6 179/7 189/8 190/5 198/20 202/10 203/12 210/13 211/9 211/23 216/24 220/13 220/17 220/20 221/5 221/7 221/15 221/19 224/20 224/24
**historical [1]** 78/7
**history [1]** 93/21
**hit [1]** 209/23
**hits [2]** 174/18 199/22
**hoc [3]** 157/2 157/12 157/24
**hold [2]** 191/7 191/14
**holding [2]** 96/4 116/20
**holds [1]** 11/19
**hollow [1]** 126/16
**HONEYWELL [2]** 1/4 49/19
**Honor [94]** 4/2 4/22 5/12 5/20 5/23 6/9 7/5 7/10 8/1 8/11 9/6 9/8 9/12 10/19 10/20 11/4 11/11 12/11 13/2 13/23 15/1 18/20 29/16 29/21 34/17 34/19 36/21 42/15 48/5 48/11 54/12 64/14 64/16 66/24 67/3 67/23 81/23 82/1 82/2 83/19 83/22 88/5 88/9 106/8 106/11 106/20 117/18 123/2 123/4 123/8 123/16 129/6 131/17 132/3 132/7 133/20 134/19 141/23 142/21 143/8 144/17 145/7 145/16 150/19 150/20 155/6 157/8 159/11 160/10 160/14 165/4 165/14 169/7 169/9 169/13 170/20 170/24 179/16 180/10 184/22 185/2 197/6 197/9 203/6 203/21 204/11 204/14 205/16 205/25 210/7 211/21 222/9 224/2 224/5
**Honor's [1]** 127/17
**HONORABLE [1]** 1/4
**hope [2]** 117/23 179/19
**hopefully [1]** 5/10
**hostage [2]** 115/11 116/24
**hour [3]** 82/20 97/8 105/5
**hours [6]** 23/17 23/23 63/6 81/17 146/4 168/18
**how [63]** 16/7 21/9 23/15 23/21 24/12 27/8 28/9 28/17 29/3 34/4 43/25 45/8 48/20 53/8 54/24 61/2 62/15 63/2 63/14 68/24 69/20 70/19 70/21 70/22 71/7 71/11 76/16 78/5 80/23 85/3 88/25 93/4 98/21 98/22 99/14 109/5 118/16 121/23 130/18 139/8 141/14 142/18 144/22 150/1 153/14 155/1 172/14 173/16 174/5 174/10 174/18 174/19 182/4 182/5 199/12 200/24 203/23 210/11 216/2 216/22 218/1 221/12 223/19
**however [3]** 37/22 112/13 146/4
**hundred [5]** 174/16 182/2 182/23 188/23 188/24
**hundreds [1]** 175/3
**hurt [1]** 63/3
**husband [5]** 19/20 21/11 23/8 23/20 75/15
**husband's [1]** 30/25
**hypothesis [1]** 112/24
**hypothetical [2]** 113/8 148/22

**I**

**I'd [10]** 11/12 13/20 20/20 24/24 26/11 38/8 38/18 143/8 147/9 164/7
**I'll [14]** 6/13 46/16 51/10 69/10 81/8 92/4 150/14 150/17 157/18 177/18 204/15 204/17 220/14 222/9
**I'm [107]** 4/16 5/15 5/23 8/25 10/3 13/18 19/13 26/12 26/25 29/15 29/21 29/24 30/2 30/12 32/17 35/3 36/11 38/14 40/17 40/20 42/12 44/2 44/15 45/12 45/14 46/5 46/6 50/17 53/10 59/10 65/6 65/21 67/10 68/23 69/11 77/23 84/24 85/25 92/10 95/18 97/9
**I've [22]** 35/13 61/6 61/7 61/8 62/18 68/25 94/15 103/20 118/21 146/10 151/21 164/3 165/13 174/1 175/3 176/10 176/15 195/24 199/1 205/12 208/20 219/21
**Ichbal [1]** 133/25
**idea [9]** 15/20 53/5 139/1 139/2 144/7 174/4 183/12 199/1 205/9
**identifiable [1]** 134/14
**identified [3]** 72/17 99/20 133/5
**identify [19]** 4/5 55/3 58/11 58/14 60/10 63/23 68/21 70/19 70/21 70/22 71/3 71/4 98/10 100/3 120/21 126/21 145/23 146/2 146/7
**identifying [3]** 98/23 100/16 219/20
**III [2]** 132/25 196/2
**IL [2]** 1/22 2/18
**illegal [2]** 22/19 31/24
**Illinois [12]** 14/7 14/15 36/1 36/2 139/13 139/14 139/14 150/5 150/16 156/3 156/19 178/16
**imagine [2]** 15/11 165/25
**immediately [4]** 96/18 140/9 185/20 207/22
**imminent [1]** 132/24
**imminent and [1]** 132/24
**impact [1]** 179/23
**impacting [1]** 144/17
**implemented [1]** 78/14
**implication [2]** 106/10 106/12
**important [4]** 19/12 55/4 128/1 213/5
**importantly [2]** 130/24 214/18
**improper [1]** 135/5
**imputed [5]** 138/6 138/17 139/12 207/23 210/1
**in-person [1]** 40/2
**inadequate [1]** 99/7
**inappropriate [1]** 133/23
**INC [10]** 1/7 4/12 9/24 65/13 65/13 158/13 158/22 161/15 161/22 161/25
**incapable [1]** 215/7
**incarnation [1]** 97/16
**incentive [27]** 23/24 52/18 52/21 53/4 53/6 61/13 61/18 62/17 62/24 65/1 91/20 91/24 93/17 120/3 126/23 127/15 140/13 193/20 202/4 202/9 202/14 202/20 202/24 208/4 210/15 210/17 223/7
**inclined [1]** 128/5
**include [6]** 163/20 167/13 179/10 197/4 205/1 205/3
**included [8]** 29/5 56/8 59/14 81/4 95/15 167/5 167/25 205/9

97/9 101/1 101/14 103/2 104/12 104/13 105/2 107/7 107/21 109/14 113/2 118/2 122/2 122/3 123/19 124/9 127/1 130/14 131/7 131/10 134/5 148/20 149/7 149/11 150/18 153/11 154/20 156/20 157/17 159/11 159/20 160/23 161/1 161/8 161/13 164/23 165/2 165/15 172/7 174/2 183/9 190/5 193/14 193/19 193/24 194/10 195/2 195/2 195/9 196/24 200/20 201/4 201/6 205/22 206/18 207/9 210/10 214/8 218/21 219/14 220/16 221/4 221/12 223/8 224/24

## I

**includes [2]** 205/1 205/7
**including [8]** 139/20 154/7 160/18 172/12 199/18 203/15 205/7 210/15
**inclusion [1]** 202/3
**inclusive [1]** 149/11
**income [1]** 63/8
**inconsistent [3]** 9/3 122/21 143/9
**Incorporated [1]** 95/10
**increase [2]** 114/20 116/25
**incredible [3]** 15/10 16/2 16/7
**incur [1]** 122/6
**incurred [3]** 121/17 122/4 166/15
**independent [3]** 4/21 53/24 158/4
**indicate [2]** 129/2 202/7
**indicated [7]** 60/1 86/24 89/21 91/22 94/4 95/22 197/18
**indicating [5]** 72/11 84/17 89/7 91/23 118/8
**indication [3]** 87/4 203/16 220/25
**indirectly [1]** 171/19
**individual [20]** 1/10 25/14 71/20 71/22 73/11 79/19 85/9 110/13 119/3 120/17 146/17 146/22 147/4 148/17 149/15 149/17 150/2 163/13 164/11 164/14
**individually [14]** 15/19 44/8 137/13 163/21 164/2 165/9 165/16 165/20 166/3 166/8 166/10 166/15 183/4 183/15
**individuals [2]** 99/19 163/8
**inflate [1]** 116/25
**influences [1]** 153/14
**information [54]** 6/18 15/9 15/23 39/3 40/21 41/5 41/17 42/20 43/1 43/6 43/16 44/6 44/8 44/20 44/24 60/12 61/17 66/21 67/9 67/13 67/18 73/12 77/15 79/11 99/22 103/10 107/15 107/23 108/2 111/10 111/11 112/5 112/19 113/24 116/8 117/2 126/9 128/13 130/1 133/7 136/20 137/3 137/4 143/11 143/13 143/19 147/4 147/10 147/14 170/14 170/16 188/25 189/12 224/12
**informed [6]** 55/13 55/18 56/8 62/4 137/2 137/8
**initially [2]** 74/23 186/5
**initiate [1]** 35/6
**initiative [1]** 84/8
**injunction [46]** 6/11 9/21 9/22 10/1 10/9 14/19 14/24 17/2 17/23 41/18 43/8 126/17 129/14 130/3 131/3 131/6 132/9 132/11 132/23 133/15 134/15 142/3 144/15 145/1 188/17 188/19 188/20 203/17 205/23 206/6 206/11 209/2 209/7 210/6 213/13 214/24 215/23 216/5 216/9 217/13 218/23 219/13 221/8 223/21 224/6 224/11
**injunctive [1]** 214/3
**injuries [1]** 44/1
**injury [6]** 132/16 133/1 133/22 134/14 134/24 141/3
**lnk [1]** 10/5
**input [2]** 112/18 203/1
**inputs [1]** 40/23
**inquire [2]** 18/19 171/7
**inquired [1]** 82/21
**inquiring [1]** 112/17

**inquiry [2]** 37/3 160/11
**insisted [3]** 75/1 146/4 175/2
**instance [5]** 126/6 132/12 134/11 135/6 163/13
**instances [2]** 134/7 146/2
**instanter [1]** 133/2
**instead [2]** 100/18 189/24
**instructions [1]** 118/16
**insurance [2]** 20/9 158/18
**intangible [1]** 51/11
**intend [2]** 12/17 122/8
**intended [1]** 221/20
**intending [2]** 151/14 203/23
**intentional [2]** 151/23 214/21
**interacting [1]** 91/13
**interactions [1]** 79/18
**interest [56]** 17/21 17/22 18/6 43/23 95/16 99/19 108/19 113/16 113/17 120/16 125/17 125/21 126/2 128/18 130/21 130/23 133/19 136/25 137/9 138/13 138/24 138/25 140/1 141/12 141/16 141/17 141/20 142/9 142/12 142/13 142/22 143/5 143/6 143/24 144/10 144/13 144/16 152/6 177/9 177/17 197/17 197/21 209/14 209/16 209/25 210/3 210/5 212/2 212/20 212/21 212/23 217/9 217/25 218/7 218/14 223/11
**interested [3]** 104/14 105/9 108/14
**interests [14]** 120/22 120/23 122/14 122/15 133/16 137/1 147/12 149/19 201/18 211/11 211/15 218/10 218/15 223/5
**intermittent [1]** 80/7
**internally [2]** 154/14 154/23
**interpose [2]** 88/6 184/23
**interpreted [1]** 130/19
**interrogatories [2]** 75/11 167/23
**interrupt [1]** 41/8
**intervene [7]** 16/16 86/8 188/3 195/11 195/14 196/9 213/22
**intervention [2]** 187/23 214/3
**intolerable [2]** 212/19 212/23
**introduced [1]** 35/2
**invade [3]** 26/14 36/22 41/1
**invasion [2]** 42/23 106/9
**invested [4]** 121/4 121/5 121/5 135/12
**investigation [1]** 134/4
**investment [1]** 121/11
**invitation [1]** 83/14
**invoked [1]** 11/16
**invoking [1]** 42/10
**involved [33]** 20/25 21/11 21/19 22/22 23/1 24/8 24/23 25/3 27/12 42/2 50/13 56/24 64/11 65/25 66/5 67/17 69/6 69/9 69/15 69/19 69/20 73/22 76/14 84/13 101/21 123/24 140/4 166/23 167/2 187/16 200/6 208/7 210/11
**involvement [12]** 43/13 71/17 94/18 101/4 101/8 101/9 101/10 101/16 102/17 112/11 125/6 138/2
**involving [7]** 10/8 58/19 69/7 70/9 70/17 87/18 175/13
**ironic [1]** 134/20
**irrelevant [2]** 43/7 138/6
**irreparable [12]** 132/24 141/3 141/11 144/24 145/4 207/10 207/15 208/1

**210/13 214/22 222/25 223/13**
**inside [1]** 141/2
**isn't [27]** 74/7 104/14 106/18 116/23 149/18 150/9 156/16 156/24 157/6 158/24 161/4 166/22 168/20 179/10 181/22 182/17 182/25 183/20 184/5 184/8 185/21 187/5 187/9 187/25 190/21 191/4 219/4
**issue [34]** 16/3 17/18 22/8 32/7 38/4 42/4 42/7 42/18 98/18 99/17 105/24 106/1 113/16 127/7 136/16 137/23 137/24 142/4 145/4 147/25 168/9 182/1 184/7 186/19 193/5 215/24 216/15 216/22 217/4 218/9 218/19 218/24 224/14 224/18
**issued [4]** 100/8 100/10 100/16 190/4
**issues [12]** 13/24 21/10 38/15 128/1 139/7 152/20 168/15 198/5 214/17 216/8 217/25 224/1
**it [380]**
**it's [112]** 5/7 5/24 6/12 9/1 9/2 9/5 16/4 17/25 19/12 19/23 20/16 24/4 29/19 29/23 30/7 30/9 30/13 34/6 34/13 46/7 48/6 50/1 50/2 50/11 50/14 51/8 51/11 51/12 53/11 61/15 61/18 62/23 63/5 64/3 64/11 67/5 67/6 77/6 85/6 85/6 85/16 103/16 104/8 104/9 104/14 105/16 113/8 117/11 118/14 119/24 121/22 124/1 124/7 124/9 124/20 125/15 127/12 127/18 128/16 128/23 131/8 134/21 138/17 139/11 139/21 139/25 143/3 149/11 150/4 153/9 156/11 157/4 166/22 168/15 173/8 176/25 177/15 177/16 178/11 178/11 178/18 179/3 179/8 183/16 192/25 193/5 195/6 195/6 196/24 197/1 200/21 201/3 202/1 202/21 203/7 205/16 205/17 205/22 206/19 207/17 207/21 208/11 208/22 208/25 208/25 211/19 212/24 216/10 216/12 220/11 221/2 223/20
**iterations [1]** 196/25
**its [7]** 14/7 36/1 90/16 100/16 111/12 143/16 162/10
**itself [12]** 9/9 26/13 35/18 67/8 77/21 135/11 140/23 142/22 149/20 166/11 204/21 222/19

## J

**JAMS [2]** 79/3 81/2
**January [7]** 72/16 72/16 75/6 79/12 101/20 110/6 121/1
**January 3rd [1]** 72/16
**Jeff [3]** 4/9 6/24 164/21
**JEFFREY [1]** 2/3
**Jersey [3]** 178/2 178/3 178/5
**job [1]** 210/18
**John [1]** 161/16
**join [3]** 17/14 95/12 112/15
**joined [9]** 4/16 94/25 97/17 110/5 110/17 112/13 125/2 172/1 183/24
**joins [1]** 137/18
**joint [1]** 106/15
**jointly [1]** 86/7
**jon [1]** 2/19
**JONATHAN [2]** 2/16 4/16
**Joseph [1]** 94/10

**J**

**jsoble** [1]  2/7

**judge** [95]  1/4 5/6 10/12 24/6 34/22
37/6 43/9 48/17 49/15 49/19 49/21
52/14 52/17 52/21 53/15 54/8 79/2
79/2 79/13 79/16 79/19 79/20 80/2
80/3 80/18 80/24 81/14 81/17 86/19
87/2 87/6 88/4 89/2 91/3 91/12 91/22
93/9 95/7 97/3 105/16 105/23 113/4
122/10 123/18 123/18 124/17 125/19
127/16 127/18 127/20 127/23 127/24
128/5 130/14 140/5 141/5 141/7
150/22 159/25 160/15 171/8 177/4
177/20 187/15 189/25 190/5 190/13
190/14 194/25 195/21 197/4 197/12
202/13 202/23 202/25 203/3 210/10
210/24 214/6 214/7 214/13 214/17
215/19 216/1 216/21 217/19 218/16
219/2 220/7 220/12 221/9 222/5
223/24 224/7 224/19

**judge's** [3]  47/25 187/21 188/11

**judgment** [2]  114/10 200/16

**judicial** [3]  7/15 7/22 226/14

**JULY** [4]  1/16 85/7 99/5 155/12

**July 1** [1]  85/7

**July 15th** [1]  155/12

**jump** [1]  38/18

**June** [26]  70/7 72/2 72/10 74/23 89/5
89/17 89/24 91/11 94/1 95/2 99/10
100/2 100/6 101/19 158/6 158/6
161/23 162/1 190/23 190/25 191/1
191/4 191/19 191/23 204/10 204/10

**June 16** [1]  89/5

**June 16th** [2]  191/19 191/23

**June 18th** [1]  70/7

**June 1st** [1]  190/23

**June 20** [1]  89/17

**June 2013** [1]  100/6

**June 27th** [1]  91/11

**June 28th** [1]  161/23

**June 2nd** [1]  190/25

**June 4th** [1]  162/1

**junk** [2]  173/25 199/22

**jurisdiction** [9]  36/25 125/24 127/16
127/17 134/23 135/3 157/9 176/23
216/15

**jurisprudence** [1]  215/11

**jury** [3]  220/6 220/10 220/11

**just** [85]  8/1 13/2 13/15 22/3 34/16
35/21 37/6 37/22 38/1 38/17 38/22
41/12 43/20 45/13 45/23 46/18 49/2
50/14 50/15 53/8 62/19 62/20 63/5
63/18 74/19 78/9 85/12 90/8 90/22
101/14 103/13 105/13 107/20 108/13
109/1 111/16 111/25 113/21 114/7
114/23 116/5 118/8 129/24 130/5
130/15 139/23 141/24 159/11 159/15
159/16 159/18 160/2 160/10 163/19
164/21 165/15 169/6 172/18 176/12
179/3 181/8 181/11 181/24 182/3
182/19 187/22 191/13 195/4 197/1
197/6 198/8 199/6 200/25 201/11
203/21 204/15 204/17 204/19 205/16
208/13 209/18 216/9 218/21 219/21
221/11

**justice** [2]  214/25 215/5

**justify** [1]  218/7

**K**

**keep** [3]  15/17 136/19 136/20

**Kelly** [5]  25/16 27/2 55/20 55/21 59/5
59/11 76/8 79/7 167/18

**KENNEDY** [1]  2/22

**key** [1]  207/14

**kind** [8]  20/14 51/11 130/2 153/2
178/18 181/23 188/2 198/22

**knew** [19]  21/15 30/24 31/12 32/20
36/7 36/20 37/15 69/22 82/12 108/9
117/6 152/25 153/13 175/2 175/13
180/19 180/19 182/11 213/25

**know** [113]  15/13 15/14 15/15 23/21
28/19 28/22 36/3 36/11 37/12 37/15
37/23 43/25 48/1 53/8 53/25 57/19
57/24 59/12 62/5 62/14 66/17 71/5
76/15 81/5 81/7 82/21 85/23 85/25
86/2 87/22 89/24 91/25 94/10 94/14
94/15 103/4 103/19 103/23 104/8
108/9 109/7 112/10 116/10 119/2
119/3 119/23 119/24 131/11 138/20
139/8 139/10 144/25 149/8 151/16
152/1 154/25 155/2 157/1 163/16
164/9 164/24 164/25 165/2 166/4
166/11 166/21 171/15 179/7 180/18
182/13 183/10 184/19 186/2 186/2
186/17 186/17 186/18 186/21 186/24
190/14 191/5 191/9 191/11 191/12
191/13 191/25 193/4 196/8 196/8
196/10 197/25 198/13 198/19 198/19
198/24 198/25 199/21 199/24 200/24
201/1 201/3 201/6 201/22 202/19
202/22 203/13 206/7 208/9 209/1
216/2 223/19 224/19 224/21

**knowing** [4]  139/5 153/13 153/15
214/20

**knowingly** [4]  138/9 151/24 152/1
153/2

**knowledge** [25]  36/4 36/6 36/16 36/19
36/24 47/14 59/8 59/8 71/15 103/22
109/19 109/23 109/23 110/1 111/13
111/14 111/18 112/16 119/7 148/2
157/20 158/5 177/11 188/5 205/20

**knows** [3]  38/1 41/11 207/7

**L**

**lack** [3]  133/3 134/13 196/2

**lacking** [1]  215/11

**laid** [1]  27/14

**Lally** [2]  80/4 80/16

**language** [1]  85/12

**lap** [1]  181/8

**LARDNER** [5]  2/3 4/8 6/24 164/22
164/23

**large** [2]  148/5 149/11

**LaSALLE** [1]  2/17

**last** [8]  18/14 45/24 68/8 95/1 104/13
145/11 171/3 195/4

**Lastly** [3]  161/21 205/4 205/14

**late** [1]  151/12

**later** [6]  5/11 116/16 154/9 193/1
201/23 216/16

**lateral** [1]  138/20

**latter** [1]  152/13

**LAUREN** [2]  2/4 4/9

**law** [135]  1/10 2/15 2/16 2/21 4/7 4/8
4/14 4/15 4/16 4/17 4/18 4/20 4/23
4/23 8/11 8/17 10/6 13/25 14/1 14/7
17/15 17/15 17/17 17/20 21/20 21/22
20/21 30/24 32/13 33/2 33/9 35/3
39/12 41/6 41/7 41/25 42/22 43/15
43/18 43/18 48/21 50/22 51/24 52/3
84/18 85/18 93/17 98/6 111/4 111/6
111/8 111/19 111/23 112/13 112/15
112/16 113/13 113/17 113/21 114/4
114/25 115/1 125/2 125/2 125/7
125/20 126/10 127/6 127/7 127/12
127/21 130/18 130/20 130/25 138/17
139/13 139/14 139/20 141/19 150/16
151/7 152/8 152/9 152/11 153/8
155/17 155/20 155/23 156/14 157/9
157/14 157/15 160/18 162/25 164/20
164/20 166/9 171/18 172/9 173/17
176/14 176/17 176/21 179/5 185/24
186/18 195/5 196/22 202/3 205/18
206/2 207/15 207/24 207/24 208/13
210/1 210/1 210/4 211/20 212/18
212/24 212/25 213/20 213/23 213/25
214/20 219/18 220/7 220/8

**lawsuit** [20]  49/3 51/14 70/11 84/15
89/9 89/11 95/4 97/13 100/13 102/25
103/13 110/4 112/19 113/22 180/17
181/13 181/17 192/7 192/23 196/13

**lawsuits** [2]  70/9 84/11

**lawyer** [24]  14/10 15/21 17/13 18/1
25/19 29/10 42/1 136/21 137/5 138/13
139/8 139/12 139/15 141/11 143/20
143/24 144/4 148/22 156/19 157/10
175/12 205/17 207/19 209/4

**lawyers** [17]  25/14 34/9 67/14 76/7
103/3 118/5 138/7 138/8 138/16
138/20 138/20 138/23 142/14 144/7
170/15 177/6 209/21

**Lay** [1]  150/12

**laying** [1]  115/21

**layout** [1]  27/7

**lead** [7]  16/23 25/19 29/10 60/15 76/11
135/25 136/9

**leading** [1]  149/22

**leads** [1]  138/22

**learn** [10]  24/18 33/1 38/25 80/20
80/23 87/8 88/16 88/21 88/25 128/13

**learned** [7]  33/5 87/11 139/3 143/13
143/18 152/19 170/16

**least** [14]  45/22 47/21 52/21 84/12
138/3 144/19 144/21 156/15 156/24
162/18 164/5 166/4 168/7 221/19

**leave** [4]  5/13 143/24 178/10 212/14

**leaving** [2]  17/14 103/2

**lecturn** [1]  7/4

**led** [2]  112/8 144/5

**LEE** [1]  2/4

**leeway** [1]  157/19 177/19

**left** [11]  85/24 110/16 111/4 111/6
114/18 114/24 125/1 169/2 212/22
212/22 212/24

**legal** [28]  2/10 5/1 10/14 10/15 10/17
10/24 24/22 29/1 30/15 37/2 37/9
37/20 40/4 40/10 40/15 51/20 61/21
62/7 62/11 153/7 167/6 184/24 215/2
215/11 219/20 219/23 219/25 220/5

**legally** [2]  21/2 21/3

**lens** [2]  217/21 220/2

**L**

**less [3]** 66/4 103/14 193/2
**lesser [1]** 157/22
**let [8]** 5/17 51/10 60/17 104/12 114/8
151/16 175/10 214/20
**let's [3]** 39/22 92/12 94/14
**letter [21]** 8/17 9/9 30/7 30/20 31/5
31/20 31/22 32/5 32/11 32/14 32/16
32/18 32/21 33/9 59/4 59/9 59/12
139/20 173/13 191/7 191/14
**letterhead [2]** 32/23 164/22
**letters [4]** 91/18 173/20 173/23 174/7
**level [2]** 26/12 27/5 33/25 116/8
**LEWIS [6]** 1/11 8/18 30/21 110/17
155/24 172/2
**Lexis [1]** 220/8
**liability [2]** 36/1 136/10
**licensed [4]** 110/3 156/3 156/5 174/2
**Life [1]** 158/18
**light [5]** 17/22 107/13 159/3 159/22
216/2
**like [46]** 7/2 7/11 10/17 11/12 13/20
20/20 24/24 26/11 29/17 38/1 38/8
38/18 44/11 45/15 45/24 89/23 89/24
97/7 105/2 107/20 108/16 123/13
124/2 124/11 127/19 143/1 144/11
160/25 163/19 164/21 168/7 173/25
174/16 175/18 184/22 191/8 199/6
199/8 200/25 201/8 201/9 201/14
202/20 217/3 218/18 218/24
**likelihood [12]** 62/16 62/23 131/4
132/14 134/12 134/12 136/18 145/3
214/22 218/18 218/24 222/21
**likely [6]** 59/5 59/7 62/7 64/1 64/3
207/11
**limit [2]** 165/11 168/19
**limitation [1]** 105/14
**limitations [8]** 107/13 112/2 184/11
184/18 185/5 185/8 185/16 221/6
**limited [8]** 36/1 69/12 70/13 72/21
74/20 75/13 81/18 170/4
**limiting [1]** 138/15
**limits [1]** 108/25
**line [13]** 10/16 10/16 31/17 71/13 82/9
84/8 84/14 84/19 85/21 116/1 160/11
162/13 214/10
**lined [1]** 191/12
**lines [1]** 192/4
**list [8]** 7/2 7/6 22/7 81/1 173/11 181/24
199/13 204/23
**listened [1]** 213/1
**litigating [2]** 142/8 179/11
**litigation [18]** 14/3 22/23 52/4 61/4
64/11 65/10 69/3 69/4 73/20 119/16
133/24 138/3 179/21 179/24 184/25
189/1 189/6 204/9
**litigations [2]** 21/16 70/17
**little [10]** 9/3 19/13 19/15 20/20 36/14
45/12 95/20 148/21 182/8 200/21
**live [5]** 9/23 20/17 20/18 109/9 221/15
**LLC [17]** 1/10 1/11 2/16 4/15 4/16 4/18
8/11 8/18 35/4 155/24 158/8 158/14
158/23 164/21 171/19 172/9 173/17
**lloew [1]** 2/7
**LLP [1]** 2/3
**lobby [1]** 200/21

**local [3]** 6/5 6/14 178/4
**located [3]** 18/21 18/21 55/20
**location [1]** 20/3
**lodged [1]** 141/5
**LOEW [6]** 2/4 3/9 3/18 4/9 6/22 180/12
**logical [1]** 143/16
**logs [1]** 98/17
**long [10]** 5/9 23/15 23/21 63/10 68/24
114/25 144/2 146/4 200/6 201/10
**look [5]** 5/17 14/8 31/17 64/20 83/1
159/8 159/18 160/4 164/7 167/10
208/2 218/4
**looked [8]** 66/13 84/10 174/13 174/20
181/24 182/1 188/23 199/19
**looking [10]** 131/5 131/10 167/22
168/7 173/25 195/5 198/21 208/17
208/17 208/19
**looks [1]** 174/16
**loss [4]** 63/7 63/8 208/2 210/14
**lot [6]** 22/6 37/23 61/8 99/8 167/18
208/5
**lots [2]** 136/16 173/21
**low [1]** 98/2
**lower [1]** 217/23
**loyalty [1]** 169/17
**LP [1]** 170/4
**Lujan [1]** 133/1

**M**

**ma'am [9]** 24/25 34/25 36/5 44/15 48/4
69/4 77/2 78/22 210/10
**made [18]** 73/10 73/25 74/1 109/15
110/12 115/16 116/21 125/22 132/16
132/18 134/2 136/3 138/4 172/8
201/12 204/1 204/16 219/5
**MADISON [1]** 2/11
**magistrate [1]** 5/6
**mail [19]** 58/14 80/24 81/6 81/14 81/21
82/9 82/15 83/7 83/8 83/13 83/17
86/20 87/2 87/4 89/6 94/16 154/15
154/22 154/22
**mailed [1]** 83/15
**mails [3]** 61/8 83/4 98/21
**main [3]** 14/7 45/21 152/17
**maintains [1]** 14/10
**maintenance [1]** 156/14
**major [1]** 28/10
**majority [1]** 7/14
**make [44]** 5/24 11/9 12/22 13/15 13/20
20/11 35/21 36/12 41/7 42/8 50/16
52/7 53/19 77/10 85/11 92/23 93/4
95/25 96/2 96/16 105/14 107/14
107/25 113/5 116/5 120/2 120/6
123/14 125/18 125/18 134/8 135/4
139/10 141/7 152/22 168/14 175/7
179/5 199/6 202/17 203/21 217/3
223/12 225/2
**maker [1]** 117/25
**makes [2]** 42/1 179/7
**making [2]** 49/22 108/19
**man [1]** 110/13
**management [4]** 158/14 204/6 204/6
204/12
**manner [3]** 105/1 116/4 173/6
**many [16]** 37/11 67/2 71/11 93/5 98/21
98/22 104/6 109/3 128/1 134/7 139/21
143/8 157/4 172/14 174/18 174/19

**March [4]** 71/19 116/13 116/17 161/17
**marching [3]** 39/12 118/20 119/2
**Maritrans [1]** 208/24
**mark [2]** 29/25 31/19
**marked [2]** 65/6 69/24
**marketing [1]** 173/20
**married [1]** 30/18
**massive [1]** 215/12
**matches [1]** 138/23
**material [12]** 16/3 16/5 43/23 43/25
137/8 137/10 140/2 140/3 140/6
140/11 140/15 148/2
**materially [11]** 17/16 122/15 136/25
137/22 138/14 194/16 211/15 218/10
218/14 223/2 223/10
**math [1]** 215/13
**matter [25]** 4/3 8/20 9/2 17/8 17/20
38/6 70/10 81/18 84/13 88/10 95/15
106/13 134/23 136/22 136/24 137/7
137/20 139/18 140/21 195/5 216/10
220/11 220/11 220/13 224/18
**matters [5]** 6/23 42/2 43/3 106/1
184/24
**MAX [6]** 3/12 76/2 78/3 105/7 145/12
145/17
**may [92]** 5/12 5/18 6/12 6/21 8/1 8/17
9/15 12/11 13/2 13/7 13/13 13/13
14/25 18/7 18/11 18/18 18/19 27/8
27/16 29/22 31/5 31/8 33/4 35/11 38/7
67/11 67/14 67/19 67/25 68/2 68/12
80/25 81/2 81/16 82/10 85/11 88/5
89/22 89/23 99/10 102/3 102/4 107/9
113/10 114/23 116/21 117/12 123/16
123/17 131/18 131/22 131/23 131/25
132/13 134/17 136/7 138/8 141/22
145/5 145/15 151/13 157/19 160/10
160/13 160/21 170/22 170/23 171/7
183/19 183/22 185/14 185/19 186/4
186/6 188/6 188/9 189/19 192/13
192/24 193/3 203/5 203/25 207/6
221/9 221/13 221/14 221/15
**May 11 [1]** 80/25
**May 11th [1]** 31/8
**May 13th [1]** 33/4
**May 18th [1]** 188/9
**May 19 [1]** 89/23
**May 19th [3]** 186/6 188/6 189/19
**May 20 [3]** 81/2 81/16 89/22
**May 20th [1]** 82/10
**May 2nd [2]** 114/23 116/21
**May 31 [1]** 35/11
**maybe [7]** 53/5 60/16 60/17 113/18
165/11 192/4 196/12
**me [85]** 4/8 5/17 17/25 19/11 20/24
22/3 22/24 22/24 24/2 25/2 25/13
29/17 30/6 30/17 38/5 43/22 44/23
45/15 45/23 47/7 51/18 51/20 53/17
55/4 56/8 57/17 60/17 69/21 70/1
71/18 76/13 82/22 83/3 83/7 83/8 83/9
83/13 83/14 83/15 86/20 87/15 87/7
90/22 91/10 91/19 94/17 100/6 103/19
103/22 104/12 104/14 114/7 114/8
116/6 120/21 137/14 141/2 141/24
142/9 147/22 149/25 151/15 151/16
151/10 156/20 159/19 159/21 164/1

**M**

me... [17]  164/8 167/19 174/21 174/21
175/10 179/10 186/18 188/5 192/15
193/15 195/13 199/2 199/20 201/5
201/7 204/8 217/8
mean [29]  13/6 21/3 22/15 29/18 41/8
47/14 64/5 98/7 111/24 138/1 139/6
140/19 149/10 181/10 186/17 187/11
192/12 194/18 196/20 198/16 198/16
202/18 209/15 212/18 215/20 216/9
219/4 220/5 221/22
meaningfully [1]  73/15
means [2]  209/25 213/3
meant [2]  53/3 92/18
meantime [1]  100/15
meanwhile [1]  178/15
measure [1]  128/20
mediate [3]  86/21 213/25 214/1
mediated [3]  87/25 93/19 190/20
mediation [118]  15/12 15/21 15/22
16/1 24/21 25/2 25/8 25/15 25/20 26/5
26/8 26/13 26/15 26/18 27/3 27/6
27/15 28/2 28/3 28/15 28/19 29/1 29/1
29/11 39/5 39/8 39/21 39/23 40/5
60/15 60/19 66/8 66/11 66/16 66/19
66/21 67/4 67/8 67/15 67/19 76/1 76/3
76/20 76/22 77/1 77/4 77/4 77/11
77/19 77/21 78/17 78/19 78/21 79/4
79/6 79/9 79/10 79/14 79/22 79/24
79/25 81/1 81/16 82/10 82/11 82/12
82/22 84/6 86/18 87/5 87/9 87/13
87/18 87/21 88/2 88/3 89/2 89/3 89/22
104/2 104/7 104/10 108/8 109/2 112/8
115/15 117/2 117/24 118/4 118/17
119/5 122/2 139/5 146/1 146/5 167/3
167/20 168/6 168/16 168/23 170/17
185/23 185/24 186/5 187/2 187/4
189/19 189/20 190/12 190/16 191/6
mediations [30]  15/6 15/10 23/8 24/24
26/3 29/13 38/21 43/2 65/19 66/7
75/24 89/25 101/7 103/18 103/25
110/8 112/7 118/23 118/24 118/25
121/8 121/10 137/15 139/3 146/12
146/13 166/24 190/2 190/22 194/5
mediator [14]  66/15 76/2 76/23 78/1
78/15 79/1 80/11 80/15 80/16 110/14
118/23 189/21 190/7 208/9
mediators [2]  15/13 66/16
medical [150]  1/7 4/4 4/11 8/19 15/4
15/18 16/8 19/10 19/21 20/14 20/25
21/7 22/12 22/16 22/21 23/2 23/18
24/18 25/7 25/10 25/14 25/19 27/22
28/20 31/15 31/23 33/19 34/5 38/21
40/10 44/7 46/9 55/5 59/20 59/22 63/3
65/1 65/9 65/13 65/18 66/18 66/22
67/4 67/13 67/18 69/7 69/10 69/16
71/16 72/4 72/8 72/18 73/4 74/11
74/21 75/8 75/16 76/4 76/11 76/25
77/8 79/4 85/4 85/15 86/9 86/15 87/3
88/12 89/4 89/13 90/4 90/8 90/11
90/14 90/16 92/16 93/11 93/18 94/7
94/19 94/22 97/3 97/12 97/19 106/22
106/24 109/13 109/17 110/4 110/7
110/23 119/12 120/2 120/6 120/22
122/14 122/19 122/21 132/20 137/12
137/17 139/19 140/4 140/24 144/6

144/11 146/21 147/4 147/15 148/3
156/5 159/11 159/17 162/1 162/4
162/9 165/19 166/2 166/6 166/18
166/25 167/24 168/2 170/12 173/22
176/13 177/5 177/12 180/17 180/19
180/25 181/4 184/4 187/8 189/13
191/3 192/7 192/15 194/17 194/24
195/12 197/16 198/11 198/15 198/23
202/5 202/12 213/6 213/11 215/5
meet [9]  26/4 26/17 26/20 26/22 38/12
79/17 91/9 200/11 205/10
meeting [2]  26/8 204/6
meets [1]  130/11
member [21]  4/20 43/12 50/24 54/4
59/23 61/3 107/18 107/19 107/21
120/18 144/20 147/6 148/18 150/8
150/10 150/24 161/10 161/12 161/13
173/14 198/16
members [27]  43/21 46/11 50/9 60/14
65/21 65/22 70/19 85/14 92/15 92/21
93/14 105/2 105/21 107/25 108/1
108/4 121/4 122/22 126/13 133/17
148/25 174/12 176/22 182/22 187/15
201/19 211/7
mention [2]  20/5 178/17
mentioned [8]  21/13 23/15 24/23 28/2
46/21 67/17 77/18 153/24
merely [3]  39/11 112/22 218/13
merit [1]  134/12
meritorious [1]  216/6
merits [11]  74/8 123/20 131/4 136/19
145/3 207/12 214/23 216/5 218/19
218/25 222/22
Merryday [1]  95/7
Mester [6]  80/4 80/16 81/4 86/17
86/24 89/7
met [9]  5/9 26/21 26/24 27/1 54/18
58/4 132/12 145/24 146/3
metaphors [1]  211/3
Metropolitan [1]  158/18
Miami [10]  25/6 76/1 105/5 108/6
110/9 110/15 122/1 122/2 146/5
150/23
MICHAEL [5]  3/8 68/9 68/13 71/20
210/21
MICHELLE [12]  2/4 3/4 4/12 18/9
18/15 19/1 22/24 30/10 30/13 48/7
77/8 102/7
microphone [2]  19/14 182/9
mid [1]  116/13
mid-March [1]  116/13
MIDDLE [9]  1/2 5/9 6/5 9/25 158/2
158/9 162/1 226/3 226/7
Midwaste [1]  158/14
might [5]  38/15 53/6 180/1 216/4
216/6
Mike [6]  68/4 188/2 200/11 200/18
200/23 201/4
million [4]  192/21 215/17 217/7 224/8
Millstein's [1]  178/5
mimed [1]  173/9
miming [1]  199/12
mind [9]  15/17 46/18 55/11 55/23 56/1
61/2 62/16 151/23 153/12
mine [3]  87/13 173/4 224/25
minutes [3]  46/17 203/15 203/19
miss [45]  6/22 19/7 19/11 26/9 30/2

33/15 34/20 41/12 41/20 44/4 48/19
48/22 49/8 50/24 54/3 59/23 67/23
75/25 76/4 80/4 80/16 91/16 91/19
91/22 92/13 101/4 102/16 103/18
103/23 104/15 104/16 104/19 104/24
105/9 105/18 107/16 107/23 109/14
109/15 110/10 126/20 136/4 145/24
146/3 180/11
Miss Lally [1]  80/16
Miss Zakrzewski [13]  104/19 104/24
105/9 105/18 107/16 107/23 109/14
109/15 110/10 126/20 136/4 145/24
146/3
missed [1]  14/17
misstate [1]  13/6
mistake [2]  93/4 96/17
misunderstanding [2]  97/9 199/7
misunderstood [1]  172/19
Mockeans [1]  223/19
moment [9]  34/16 44/17 46/7 90/22
111/16 116/6 141/24 169/6 197/6
Monday [3]  86/16 89/16 155/21
monetary [1]  78/9
money [6]  93/7 108/5 121/3 121/17
202/21 202/22
monitor [1]  208/6
month [2]  103/14 114/24
months [1]  87/14
more [24]  11/5 15/3 16/18 46/17 63/17
66/4 66/6 85/8 109/4 109/4 109/4
109/4 114/21 130/20 130/23 134/1
156/23 184/14 201/12 201/23 212/7
214/17 223/13 223/15
Moreover [2]  16/3 136/11
morning [3]  82/17 89/17 151/16
most [6]  59/5 59/7 206/21 210/12
215/3 220/5
mostly [2]  7/12 173/22
motion [46]  6/7 6/11 6/12 6/16 6/17
14/19 14/20 14/21 14/23 14/25 16/16
17/10 48/8 72/6 73/18 86/7 86/7 86/14
86/19 86/25 87/6 89/18 96/17 114/9
123/21 126/16 131/14 160/1 187/23
188/3 188/17 188/20 188/21 189/10
189/17 191/22 192/1 199/18 216/3
216/6 216/16 216/19 219/6 219/10
219/12 219/14
motions [4]  16/15 16/15 86/12 86/13
mouth [1]  19/15
move [10]  7/11 8/16 9/13 19/14 81/23
83/19 117/22 122/10 124/7 133/2
moved [4]  77/13 174/3 196/8 196/9
moving [2]  75/3 224/4
MR [26]  2/3 2/4 2/10 2/16 2/17 2/21
3/5 3/5 3/6 3/6 3/9 3/10 3/13 3/13 3/14
3/14 3/16 3/17 3/17 3/18 6/21 6/22
42/25 118/16 193/15 210/8
Mr. [303]
Mr. Addison [20]  12/20 25/9 28/21
45/17 49/4 49/13 68/19 88/11 88/16
91/6 106/4 106/17 107/9 113/9 117/12
117/21 123/5 125/9 138/19 202/7
Mr. Andersen [1]  190/12
Mr. Barry [1]  24/14
Mr. Blonien [9]  42/13 42/14 54/11
117/17 124/15 132/1 152/5 179/15
222/7

**M**

**Mr. Bock [22]** 11/18 13/8 14/8 14/9 112/5 114/13 116/20 128/7 128/11 131/16 144/21 151/1 151/14 171/18 172/20 177/10 180/15 182/8 185/2 203/5 208/16 209/8
**Mr. Bock's [2]** 128/25 213/1
**Mr. Brian [1]** 118/14
**Mr. Chinaris [2]** 130/15 217/1
**Mr. Chinaris' [1]** 129/1 216/24
**Mr. Cin-Q [5]** 69/21 75/16 75/20 75/25 77/9
**Mr. Clement [4]** 94/8 94/9 100/13 101/13
**Mr. Cohen [1]** 150/21
**Mr. David [1]** 145/8
**Mr. Good [4]** 28/21 32/19 45/17 79/7
**Mr. Griffin [1]** 6/12
**Mr. Grilli [3]** 88/1 89/20 90/1
**Mr. Kelly [2]** 79/7 167/18
**Mr. Max [2]** 78/3 105/7
**Mr. Mester [5]** 80/4 80/16 81/4 86/17 86/24
**Mr. Oppenheim [146]** 5/13 6/8 11/20 13/8 14/9 15/3 15/5 15/8 17/4 26/4 26/11 26/17 27/19 27/21 28/21 29/6 29/10 29/12 31/12 31/14 32/10 33/6 38/19 38/24 39/4 39/11 39/23 40/3 40/9 40/13 40/18 40/22 41/15 41/21 42/21 42/22 43/11 43/16 43/17 44/6 44/18 44/23 44/25 45/16 46/14 48/21 57/23 58/1 58/5 58/12 58/15 60/11 60/18 63/15 65/18 65/25 66/8 76/7 77/7 77/12 77/19 77/25 78/14 79/6 79/19 80/3 80/14 85/24 104/5 104/15 104/16 104/23 105/18 107/15 107/22 109/3 110/2 110/6 111/4 111/6 112/12 114/17 114/24 115/5 115/9 115/18 115/23 116/9 116/13 116/20 118/10 118/20 118/23 119/7 119/8 124/18 125/3 126/7 127/6 128/8 128/14 128/15 128/18 128/20 128/23 130/24 131/11 131/24 136/14 137/12 137/18 138/1 139/2 139/20 142/15 143/12 143/12 143/17 143/25 144/5 144/21 145/8 145/23 148/7 150/20 151/6 153/24 160/23 161/2 162/17 164/17 169/10 169/16 170/22 171/25 172/5 172/21 172/23 179/22 180/16 182/12 183/24 194/22 207/16 214/20 222/16
**Mr. Oppenheim's [12]** 33/1 62/15 63/3 63/22 64/3 79/8 112/20 114/3 125/11 139/25 210/4 224/13
**Mr. Pfeiffer [1]** 178/9
**Mr. Postman [1]** 105/8
**Mr. Ross [1]** 76/7
**Mr. Ryan [1]** 76/8
**Mr. Schwanke [2]** 181/21 194/11
**Mr. Siprut [11]** 94/18 94/24 95/9 95/12 95/14 95/22 96/6 96/12 96/25 97/4 97/10
**Mr. Soble [5]** 68/2 131/18 132/5 134/17 153/21
**Mr. Thomas [4]** 96/6 96/12 96/25 97/14
**Mr. Thomas' [2]** 97/4 97/10
**Mr. Wanca [23]** 39/13 39/14 39/14 39/16 49/4 49/12 55/1 55/12 55/24 55/24 71/1 90/24 96/1 Filed 10/19/16 116/1 116/24 118/15 118/19 119/9 178/15 178/22 178/23
**Mr. Wanca's [6]** 55/19 56/17 59/4 60/5 99/15 115/12
**MS [4]** 2/4 3/9 3/18 147/13
**Ms. [3]** 146/18 147/3 147/13
**Ms. Zakrzewski [3]** 146/18 147/3 147/13
**much [7]** 19/17 37/25 109/5 121/23 131/1 160/25 162/5
**multiple [4]** 45/11 135/15 137/15 165/14
**must [7]** 14/21 43/15 132/23 135/2 136/22 142/3 206/2
**mute [2]** 95/8 96/2
**muted [1]** 87/6
**my [94]** 4/8 8/18 13/19 15/4 15/5 15/11 16/21 19/20 21/11 23/8 23/20 24/11 24/15 24/16 35/2 36/9 38/10 41/10 42/14 45/23 47/24 48/23 52/23 54/17 56/1 59/18 60/16 61/5 61/8 63/5 63/6 63/6 71/14 71/20 73/6 77/6 80/25 82/19 86/6 87/15 87/25 92/4 93/15 97/14 103/16 104/13 106/14 107/4 107/7 110/1 110/3 112/23 113/12 118/14 124/12 128/23 130/14 135/23 136/10 141/3 141/11 142/7 145/3 147/8 148/21 151/25 154/5 162/14 163/4 163/7 163/15 164/9 164/21 165/25 166/1 167/21 172/22 174/15 175/14 178/3 182/1 182/5 199/19 200/18 201/12 203/14 204/4 206/17 206/20 208/18 208/21 210/3 222/10 222/15
**myself [1]** 156/21

**N**

**name [23]** 18/14 18/14 30/15 30/18 30/25 35/2 42/14 54/17 68/8 68/8 80/25 137/19 145/11 145/11 164/18 164/19 164/20 166/21 171/3 171/3 171/16 172/1 178/6
**named [39]** 16/17 21/8 22/12 32/2 32/8 33/19 33/23 46/25 47/15 47/18 49/5 50/7 50/18 71/20 72/9 95/1 95/1 95/24 96/1 97/5 97/11 97/13 97/20 97/24 135/12 137/13 146/23 146/24 148/13 155/4 163/1 168/7 168/17 169/20 174/15 176/8 176/19 183/17 198/17
**namely [2]** 125/11 128/17
**narrow [1]** 105/14
**nationwide [1]** 211/20
**nature [1]** 108/1
**near [1]** 64/2
**Nebraska [1]** 19/23
**necessarily [2]** 10/24 62/3
**necessary [4]** 42/24 43/15 128/16 128/17
**need [21]** 41/6 48/4 73/11 73/15 86/2 95/20 123/12 124/3 130/8 136/16 139/17 144/1 157/2 167/10 182/8 187/18 203/1 203/9 220/9 220/17 221/14
**need-to-know [1]** 86/2

**needed [5]** 21/14 22/17 71/9 82/25
**needles [1]** 45/13
**negate [1]** 124/3
**negative [1]** 124/4
**negotiate [7]** 95/18 146/20 147/1 187/19 202/9 208/11 213/16
**negotiated [8]** 78/6 78/11 89/19 91/20 93/17 108/21 110/20 213/21
**negotiating [5]** 78/8 127/21 187/13 196/17 201/17
**negotiation [3]** 26/1 115/12 139/4
**negotiations [7]** 24/5 26/3 26/14 29/11 29/14 74/17 144/5
**neither [1]** 194/14
**never [19]** 50/22 52/22 61/15 62/18 66/13 80/15 101/13 111/20 112/10 139/18 143/12 143/18 164/3 170/10 176/10 177/14 186/15 199/1 210/17
**Nevertheless [1]** 221/4
**new [28]** 17/15 17/16 33/2 33/6 84/11 84/15 99/9 132/21 136/8 136/9 137/18 137/25 138/17 139/20 142/7 147/11 152/8 154/22 155/3 155/17 155/20 176/21 178/2 178/3 178/4 178/15 207/24 210/4
**newly [2]** 154/3 155/2
**newspaper [1]** 95/3
**next [11]** 9/12 33/4 37/1 38/9 52/23 68/3 87/18 87/23 88/20 147/7 170/23
**niche [1]** 162/12
**NIMS [1]** 100/16
**nine [5]** 105/5 156/24 157/3 157/3 157/22
**nine-hour [1]** 105/5
**Ninth [1]** 152/13
**no [201]** 3/21 3/22 3/22 3/23 3/25 5/3 5/8 8/5 8/9 8/10 8/25 9/3 9/8 9/16 10/20 11/1 13/17 15/9 15/23 15/24 16/5 17/20 26/23 27/24 29/15 30/12 32/12 32/15 33/7 33/10 33/14 35/24 36/16 37/5 39/15 41/9 41/13 42/20 42/22 46/15 47/17 48/3 48/11 48/14 54/19 56/1 56/12 58/3 58/13 58/16 58/25 59/2 60/3 60/8 60/25 61/17 62/1 62/10 64/5 64/13 65/3 65/4 65/23 66/12 66/14 66/20 70/18 74/6 78/20 81/9 82/1 82/2 82/5 83/21 83/22 84/1 90/21 90/25 93/20 94/5 96/1 96/4 97/13 98/19 99/19 102/17 106/21 111/14 111/22 112/4 112/11 112/11 113/22 114/22 115/7 116/2 119/22 120/5 120/9 120/20 123/1 123/4 123/8 124/2 124/22 125/3 125/6 126/6 126/8 127/7 127/17 130/23 130/24 133/10 134/12 134/24 135/3 135/10 135/16 137/11 138/2 141/3 142/4 143/10 143/11 143/23 146/19 147/17 148/4 149/10 149/10 149/16 152/3 153/18 156/10 157/1 160/2 162/5 162/22 162/23 163/3 163/5 165/22 166/9 168/24 170/6 170/8 170/10 170/18 170/19 172/7 173/15 175/24 176/2 176/6 179/2 180/5 180/9 183/5 185/16 188/12 189/3 189/15 193/8 197/8 198/4 198/7 198/10 198/25 200/2 200/2 202/18 203/18 204/6 204/12

**N**

no... [26]  205/9 209/16 210/3 210/17
211/12 213/2 213/6 213/10 213/11
213/24 214/15 214/16 214/18 214/22
214/22 216/3 216/8 216/15 218/12
218/15 221/3 222/22 222/23 223/8
224/6 224/10
**nobody [4]**  52/23 52/24 175/7 199/2
**nominal [1]**  224/15
**none [4]**  84/12 111/3 135/19 138/8
**nonetheless [1]**  194/21
**nonspecific [1]**  80/8
**nonsuit [1]**  188/8
**nonsuited [1]**  188/12
**normally [2]**  63/6 159/12
**North [1]**  19/23
**Nos [1]**  8/12
**not [267]**
**notably [1]**  157/12
**notes [3]**  48/23 133/13 226/10
**nothing [11]**  34/19 67/22 77/23 91/23
111/8 112/24 132/19 139/3 153/19
169/9 203/2
**notice [9]**  7/15 7/22 87/2 153/25 154/3
154/8 154/18 155/2 155/14
**noticed [1]**  6/20
**notified [1]**  111/9
**noting [1]**  9/5
**notion [1]**  126/11
**notoriety [1]**  178/11
**November [1]**  158/19
**November 26th [1]**  158/19
**now [50]**  7/12 16/9 20/20 21/5 24/7
24/24 26/7 29/15 31/17 48/22 51/6
57/21 58/17 73/3 75/23 97/17 98/1
98/7 101/1 108/12 112/19 116/7
121/24 127/24 131/10 131/13 134/18
134/23 136/8 137/6 137/10 140/5
143/10 152/21 155/11 158/21 161/15
162/9 166/22 169/2 178/6 189/19
189/23 194/14 211/14 211/14 211/15
213/6 215/14 220/16
**nowhere [1]**  214/5
**number [19]**  23/6 75/11 76/15 78/10
81/19 84/24 98/2 98/23 98/24 98/24
100/4 118/22 118/22 157/1 157/21
164/4 164/4 186/2 223/1
**numbers [17]**  45/8 174/20 181/20
181/25 182/2 182/3 182/23 188/24
189/5 199/9 199/13 199/14 199/19
199/23 208/17 208/18 208/19
**Nursery [1]**  158/1

**O**

**o'clock [2]**  117/11 203/7
**O-P-P-E-N-H-E-I-M [1]**  145/13
**oath [7]**  19/3 36/7 68/15 121/20 139/9
145/19 171/11
**object [9]**  10/12 13/9 129/7 129/9
129/12 148/13 157/5 187/17 212/3
**objecting [4]**  12/12 90/11 152/18
211/24
**objection [48]**  5/2 8/5 8/9 8/10 8/23
8/25 9/4 9/8 10/11 10/20 11/15 12/9
36/21 37/5 40/25 44/3 48/10 48/11
66/24 67/11 72/14 81/25 83/21 83/22
88/6 88/14 106/9 113/1 113/3 129/6

141/4 149/22 150/4 153/5 153/17
154/11 164/24 165/22 176/19 177/16
177/19 184/23 185/9 203/13 203/25
204/3 204/16 221/3
**objections [1]**  10/17
**objective [1]**  127/14
**objector [3]**  152/17 212/3 212/4
**objectors [2]**  212/15 214/12
**obligation [7]**  73/6 73/7 73/14 74/8
121/21 147/9 206/13
**obligations [2]**  73/4 121/16
**obtain [7]**  98/16 100/8 100/14 100/22
134/23 139/17 194/8
**obtained [7]**  66/23 67/3 67/7 67/9
98/25 173/8 188/25
**obtains [1]**  179/24
**obvious [2]**  15/3 210/13
**obviously [10]**  11/18 14/1 37/2 74/20
130/25 152/10 163/15 178/21 186/24
224/24
**occasion [1]**  91/8
**occupation [1]**  68/22
**occur [2]**  121/9 122/6
**occurred [5]**  25/3 88/7 95/3 104/6
218/20
**occurs [1]**  207/15
**OCR [1]**  199/16
**OCR'd [1]**  199/17
**October [3]**  72/6 158/11 158/17
**October 15th [1]**  158/11
**October 31 [1]**  158/17
**off [23]**  17/19 17/19 41/4 61/7 95/6
95/23 96/9 128/20 138/2 139/15
143/12 143/14 151/17 175/1 175/6
175/17 175/22 179/22 180/3 180/5
180/7 194/21 214/2
**offer [10]**  11/24 12/17 48/5 74/6
115/16 116/12 130/16 206/22 220/1
221/20
**offered [6]**  8/14 9/17 11/2 48/15 82/6
84/2
**offering [1]**  85/8
**offers [1]**  96/24
**offhand [3]**  46/15 58/25 63/25
**office [12]**  14/7 20/16 30/8 79/3 81/2
81/15 87/13 87/15 154/12 154/17
173/1 191/7
**offices [1]**  20/2
**OFFICIAL [3]**  1/23 226/6 226/17
**often [2]**  138/22 149/10
**Oh [1]**  70/3
**okay [57]**  5/3 7/16 11/4 11/15 12/8
14/17 20/22 24/25 50/20 50/25 54/24
55/3 55/6 55/10 55/16 56/2 56/13 57/5
57/8 57/17 59/6 59/12 59/19 61/2 62/2
62/5 62/21 63/2 64/12 70/3 81/10
92/12 101/18 107/1 107/4 107/6
107/10 117/23 119/11 119/21 120/21
122/13 131/10 131/18 146/2 157/2
159/11 163/18 169/1 180/4 186/7
191/2 206/20 207/8 209/13 217/6
224/3
**Okeechobee [1]**  161/20
**old [2]**  196/19 196/19
**omission [3]**  222/14 222/15 222/22
**once [4]**  73/9 73/13 96/15 207/3
**one [75]**  7/13 7/13 13/3 13/25 15/6

25/25 26/2 26/2 33/20 42/17 47/15
47/17 54/24 54/24 64/22 65/11 70/25
78/6 85/8 87/16 89/22 89/23 90/22
93/11 99/6 102/23 102/25 103/9 107/5
110/8 110/9 117/25 126/5 127/12
130/21 131/4 132/17 135/16 138/9
138/21 138/23 138/25 139/21 141/24
142/20 143/24 148/18 148/24 156/23
161/11 164/4 168/1 168/11 170/6
176/19 189/15 190/23 192/25 193/2
196/17 197/6 198/20 207/14 211/8
211/12 211/13 211/24 212/10 212/12
212/21 212/23 214/11 222/13 223/1
223/8
**ongoing [4]**  141/16 144/16 148/19
210/5
**only [32]**  6/18 13/7 43/10 65/21 67/2
85/16 88/2 101/11 107/5 111/24
111/25 112/14 114/3 125/9 125/12
128/21 137/22 146/20 163/15 163/16
164/6 166/12 167/22 168/9 170/6
172/7 183/6 187/17 211/9 211/17
222/1 222/16
**open [2]**  96/7 132/18
**opened [1]**  51/19
**opening [5]**  11/9 13/20 16/21 124/12
130/15
**operation [3]**  148/7 148/16 149/12
**Operations [1]**  162/1
**operative [1]**  125/15
**opine [1]**  205/17
**opinion [10]**  12/16 73/6 119/6 128/17
153/8 153/10 216/24 220/13 220/18
224/18
**opinions [4]**  11/25 12/17 129/11
130/16
**OPPENEHIM [1]**  2/9
**OPPENHEIM [188]**  1/10 1/11 3/12 4/4
4/19 5/1 5/13 6/8 8/18 11/20 13/8 14/9
15/3 15/5 15/8 17/4 17/4 25/17 25/24
26/4 26/11 26/17 27/19 27/21 28/21
29/6 29/10 29/12 30/22 31/4 31/12
31/14 32/10 32/23 32/24 33/6 38/19
38/24 39/4 39/11 39/23 40/3 40/9
40/13 40/18 40/22 41/6 41/15 41/21
42/21 42/22 42/25 43/11 43/16 43/17
44/6 44/18 44/23 44/25 45/16 46/14
48/21 57/23 58/1 58/5 58/12 58/15
60/11 60/18 63/15 65/18 65/25 66/8
76/7 77/7 77/12 77/19 77/25 78/14
79/6 79/19 80/3 80/14 85/24 103/17
103/23 104/5 104/15 104/16 104/23
105/18 107/15 107/22 109/3 109/16
109/25 110/2 110/6 110/17 111/4
111/6 111/7 111/20 111/21 112/3
112/10 112/12 113/20 114/17 114/24
115/5 115/9 115/18 115/23 116/7
116/9 116/13 116/20 118/10 118/16
118/20 118/23 119/7 119/8 124/18
125/3 126/7 127/6 128/8 128/14
128/15 128/18 128/20 128/23 130/24
131/11 131/24 136/14 137/12 137/18
137/19 138/1 139/2 139/20 142/15
143/12 143/12 143/17 143/25 144/5
144/21 145/8 145/8 145/12 145/17
145/23 148/7 150/20 151/6 153/24
155/24 156/1 160/23 161/2 162/17

**O**

**OPPENHEIM...** **[23]** 164/17 169/10 169/16 170/22 171/25 172/2 172/5 172/12 172/21 172/23 174/25 175/11 179/22 180/16 182/12 183/24 194/14 194/22 201/7 207/16 207/24 214/20 222/16
**Oppenheim's [13]** 33/1 62/15 63/3 63/22 64/3 76/19 79/8 112/20 114/3 125/11 139/25 210/4 224/13
**opportunity [17]** 7/1 93/10 123/14 129/23 131/20 135/24 143/20 187/17 202/5 202/9 202/17 215/24 217/3 221/1 221/22 221/23 221/25
**oppose [2]** 202/16 202/24
**opposed [3]** 11/6 34/7 41/3
**opposes [1]** 148/10
**opposing [4]** 9/11 24/14 73/16 149/19
**opposition [3]** 5/8 6/16 131/14
**oral [1]** 6/15
**orchestrated [1]** 119/4
**order [14]** 5/4 75/19 76/23 86/10 99/25 122/9 130/2 133/1 159/9 173/13 188/19 204/7 204/12 215/23
**orders [3]** 39/12 118/20 119/2
**Ordinarily [1]** 149/17
**ordinary [1]** 149/25
**organization [1]** 165/9
**original [11]** 70/11 92/20 96/21 97/10 97/11 98/2 99/5 110/20 116/12 135/4 176/24
**originally [2]** 93/22 179/1
**other [73]** 8/3 8/7 11/21 12/18 12/23 13/11 13/16 13/17 15/9 16/11 16/18 16/19 20/2 33/23 37/11 38/15 50/16 60/2 60/14 61/3 69/4 70/15 70/16 76/4 76/13 89/23 92/14 92/21 93/12 93/13 94/5 102/18 105/2 105/21 106/14 107/2 107/17 107/19 107/20 107/25 108/1 108/4 108/23 120/17 120/18 122/1 122/3 122/5 123/6 123/9 129/4 129/25 130/1 137/24 142/25 146/7 146/11 147/6 164/8 170/5 170/9 172/11 172/13 173/1 176/11 178/14 194/8 204/23 208/20 210/3 213/11 216/22 224/12
**other's [1]** 80/10
**others [4]** 65/15 110/10 133/13 174/24
**otherwise [7]** 12/2 15/24 66/5 96/19 142/23 168/13 221/12
**our [47]** 4/11 6/14 7/1 7/6 9/19 9/22 11/7 12/1 13/25 16/22 16/23 17/2 17/22 30/8 31/24 34/2 41/7 75/8 79/18 85/13 86/9 97/7 106/8 117/10 124/15 125/20 128/9 128/17 135/7 135/11 139/15 139/21 139/22 143/3 144/17 154/17 160/18 179/10 208/25 211/22 212/8 213/2 215/9 219/9 219/24 219/24 221/19
**ours [2]** 80/7 98/1
**out [31]** 27/14 27/16 36/14 45/12 48/21 53/9 64/9 69/18 71/7 86/1 88/7 103/6 112/3 114/3 115/21 121/24 122/4 143/8 150/1 151/7 151/13 152/13 152/14 154/11 157/2 175/17 176/21 185/20 189/5 200/25 203/9
**outcome [4]** 97/1 97/2 97/18 223/6

**outlined [1]** 57/14
**outlining [1]** 46-2
**outset [1]** 118/21
**outside [5]** 12/21 60/6 127/13 127/14 200/20
**outsiders [1]** 117/4
**over [18]** 16/11 16/12 16/14 16/19 23/9 27/3 34/3 45/11 49/21 72/13 86/22 113/22 116/11 137/15 140/18 140/20 168/18 205/17
**overhead [3]** 29/17 29/22 159/13
**overlap [3]** 85/14 128/1 151/9
**overlapped [1]** 85/16
**overlapping [1]** 179/9
**overlaps [1]** 152/10
**overnight [1]** 122/2
**overrule [4]** 44/2 67/11 157/17 177/18
**overruled [1]** 153/17 185/9
**overseeing [1]** 223/24
**oversight [2]** 223/23 223/24
**owe [2]** 52/7 169/21
**owed [1]** 60/5
**own [9]** 19/19 36/3 49/20 53/19 127/15 139/6 148/15 154/14 179/7
**owned [1]** 23/6
**owner [5]** 4/11 19/9 118/13 171/18 171/22
**owners [2]** 75/16 75/17
**ownership [1]** 172/6

**P**

**p.m [1]** 225/6
**P.O [1]** 14/11
**PA [1]** 157/25
**packaged [1]** 140/10
**page [7]** 35/10 35/22 35/23 65/7 85/10 102/16 103/3
**PAGES [4]** 3/3 102/20 103/1 161/1
**paid [5]** 5/22 6/2 94/23 180/6 205/2
**Palm [1]** 161/15
**papers [6]** 23/4 47/24 90/2 90/12 140/24 196/6
**paperwork [5]** 23/9 23/9 74/4 89/21 91/23
**Paragraph [8]** 35/24 36/16 37/11 38/18 39/3 39/22 40/8 73/1
**paragraphs [2]** 38/15 44/22
**parameters [1]** 108/24
**Pardon [2]** 53/17 195/13
**part [12]** 11/23 14/9 16/21 22/9 56/14 91/21 97/18 125/4 137/3 142/11 149/2 180/4
**partake [1]** 129/23
**participants [1]** 223/3
**participate [12]** 73/14 74/4 74/8 74/12 74/14 74/16 75/23 89/3 97/6 111/11 122/11 213/4
**participated [7]** 23/7 23/7 76/3 101/11 101/13 119/4 147/23
**participating [2]** 99/20 109/11
**participation [3]** 122/19 188/4 208/8
**particular [9]** 133/23 147/4 147/15 148/23 167/23 168/10 173/8 217/20 223/6
**particularly [3]** 43/7 136/13 168/18
**parties [8]** 16/10 51/9 75/12 129/17 130/8 140/18 170/5 221/25

**Partnership [6]** 69/12 70/13 72/21
**party [20]** 8/20 9/3 11/13 11/13 11/18 11/19 13/10 13/10 72/5 73/16 107/2 130/7 144/20 146/22 148/9 148/18 169/24 170/3 223/2 224/4
**passing [1]** 224/14
**password [1]** 99/24
**patients [1]** 20/9
**Patricia [1]** 159/25
**pause [4]** 34/18 90/24 142/1 197/7
**pay [7]** 61/25 62/3 62/7 121/17 121/21 121/23 179/25
**PC [1]** 171/20
**Pella [3]** 152/12 152/16 212/9
**penalties [1]** 35/12
**penalty [2]** 205/6 221/17
**pendency [1]** 216/2
**pending [26]** 8/7 69/10 70/15 86/14 91/21 94/19 96/13 97/3 100/9 102/22 128/22 133/13 141/9 168/24 176/21 176/25 178/1 186/12 187/5 188/17 192/7 193/2 200/4 200/6 214/13 216/7
**Pennsylvania [4]** 100/12 158/8 178/2 208/25
**people [13]** 22/7 22/18 61/6 72/19 150/2 173/25 174/20 178/18 178/19 187/12 199/20 199/24 211/6
**Pepper [1]** 208/25
**per [1]** 217/9
**percent [3]** 192/17 192/21 217/9
**perform [1]** 213/5
**performed [1]** 162/16
**perhaps [4]** 42/22 45/17 45/17 144/21
**period [3]** 37/24 38/8 116/11
**perjury [3]** 35/13 205/6 221/17
**permissible [2]** 148/8 148/25
**permission [1]** 221/16
**permitted [1]** 166/17
**persist [1]** 153/2
**person [9]** 40/2 76/11 91/9 101/25 102/2 136/23 146/9 146/11 180/6
**person's [2]** 17/17 136/25
**personal [18]** 36/3 36/5 36/15 36/19 36/24 36/25 45/3 59/8 103/22 105/19 109/19 109/23 111/13 111/14 111/18 119/7 138/13 177/11
**personally [4]** 20/17 23/1 27/12 45/1
**persons [3]** 85/7 184/3 215/2
**perspective [3]** 14/1 165/24 166/1
**pertain [1]** 149/13
**pertains [1]** 144/20
**Peter [4]** 87/12 189/21 190/7 191/6
**petition [9]** 126/17 126/23 127/14 135/24 178/9 195/13 202/13 202/17 202/23
**Pfeiffer [1]** 178/9
**Pharmaceuticals [1]** 161/21
**Pharmacy [1]** 158/8
**phase [1]** 43/8
**Phil [6]** 114/13 117/6 117/7 139/21 154/9 186/18
**PHILLIP [8]** 3/16 4/18 85/21 170/25 171/4 171/9 171/17 171/19
**phone [12]** 23/10 27/17 28/18 29/4 55/25 56/4 56/6 58/11 61/7 174/17 174/17 199/13

**phones [1]** 20/8
**phonetic [1]** 223/19
**physicians [2]** 20/16 158/21
**pick [4]** 50/3 95/23 96/9 143/22
**pick-off [1]** 95/23
**picked [2]** 74/24 95/6
**pickoff [2]** 96/5 96/18
**PIPER [2]** 2/16 4/17
**place [13]** 14/4 15/7 15/25 25/5 28/3
28/5 36/2 73/21 78/24 120/13 128/19
160/11 198/6
**placed [1]** 42/3
**places [1]** 173/21
**placing [1]** 134/9
**plague [1]** 175/19
**plainly [4]** 16/19 139/25 140/2 208/3
**PLAINTIFF [38]** 1/8 2/2 3/3 3/20 14/2
15/16 15/19 19/2 21/9 42/19 42/21
47/18 49/5 50/18 68/14 72/9 90/17
91/15 96/9 101/20 106/2 120/24 123/7
123/8 124/23 126/20 128/2 131/23
132/20 133/6 133/20 136/9 147/15
173/10 176/8 220/24 221/23 222/4
**Plaintiff's [23]** 6/11 8/12 9/16 11/1
30/3 35/23 65/7 81/24 82/3 82/5 82/20
83/23 84/1 101/3 103/16 124/6 125/10
131/13 132/2 210/11 212/16 218/8
218/11
**Plaintiffs [31]** 35/11 47/15 50/7 65/12
65/14 76/9 78/2 79/15 94/13 95/24
97/7 97/11 97/11 123/22 131/20
135/20 137/14 140/12 148/5 173/19
183/17 190/20 194/7 194/16 196/1
203/13 203/16 206/21 206/22 211/2
221/22
**Plaintiffs' [1]** 79/21
**plan [1]** 9/22
**planning [2]** 40/19 87/20
**plans [2]** 43/12 202/18
**plausible [1]** 158/4
**play [3]** 76/23 150/1 204/8
**played [3]** 164/5 213/7 213/9
**plead [1]** 175/2
**pleading [3]** 75/4 134/25 195/24
**pleadings [12]** 7/14 7/20 8/2 41/11
41/14 51/9 71/1 98/1 125/21 137/23
167/13 173/6
**please [18]** 4/5 6/23 18/10 18/13 32/4
34/17 39/1 44/13 49/11 68/7 68/21
90/23 120/21 141/24 145/10 160/9
169/7 171/2
**pleased [1]** 178/22
**pleases [1]** 132/3
**pled [1]** 124/20
**plenty [1]** 46/6
**PLLC [1]** 2/21
**pocket [2]** 121/24 122/4
**podium [1]** 210/12
**point [40]** 5/8 5/10 13/3 14/24 24/9
27/21 37/24 46/24 47/7 67/7 74/21
76/11 80/19 85/23 89/11 102/14 104/4
110/13 115/15 115/22 143/8 145/5
145/7 148/14 171/25 179/7 181/3
186/12 192/5 200/11 203/14 203/14
204/8 207/15 207/17 207/21 209/10
216/16 217/2 223/12

**pointed [1]** 8/21
**points [9]** 7/20 7/22 7/16
**POLASZEK [3]** 2/21 4/22 4/23
**polaszeklaw.com [1]** 2/23
**policy [3]** 130/22 211/19 218/2 218/5
**Polo [1]** 161/25
**POLOSZEK [1]** 2/21
**pool [4]** 50/11 51/4 62/22 127/1
**poor [1]** 31/10
**population [1]** 173/12
**Porcelli [28]** 49/15 53/15 87/7 89/2
91/12 91/22 93/9 97/3 122/10 125/19
127/20 127/23 127/24 140/5 141/5
194/25 195/21 197/4 202/14 202/23
202/25 210/25 214/6 214/7 214/14
214/17 224/7 224/20
**Porcelli's [2]** 49/21 127/16
**portrayed [1]** 208/11
**position [20]** 15/8 15/11 16/4 40/4
62/21 78/1 90/9 113/16 122/13 125/11
143/3 143/10 143/16 156/11 164/10
204/19 208/23 213/2 222/12 223/10
**positions [3]** 40/10 40/15 41/2
**possession [2]** 99/15 99/16
**possibility [2]** 64/8 131/9 221/13
**possible [5]** 5/25 61/18 122/10 214/25
224/19
**possibly [3]** 159/10 160/7 206/12
**post [2]** 206/9 207/5
**posted [2]** 14/15 87/4
**Postman [2]** 24/14 105/8
**potatoes [1]** 38/12
**potential [6]** 24/10 136/10 136/17
148/4 192/16 206/5
**potentially [3]** 107/25 149/19 207/5
**practicable [1]** 134/16
**practice [7]** 69/1 69/2 78/7 156/14
156/18 160/17 168/5
**practicing [3]** 68/24 138/10 142/14
**preceded [1]** 21/8
**precipitating [1]** 125/7
**precisely [2]** 18/5 131/24
**predicate [4]** 11/24 94/24 111/24
114/6
**prefer [2]** 159/14 208/14
**preliminarily [1]** 215/11
**preliminary [48]** 6/11 9/20 9/22 10/1
10/9 14/19 14/23 17/2 17/23 41/18
43/8 126/17 129/14 129/16 130/3
130/5 131/3 131/6 132/9 132/10
132/23 134/14 142/3 144/14 145/1
188/19 191/22 192/2 203/17 205/23
206/6 206/11 209/2 209/6 210/6
213/13 214/12 214/23 214/25 216/5
216/9 216/10 217/13 218/23 219/13
221/8 224/6 224/10
**preparation [2]** 147/24 198/21
**preparations [1]** 77/18
**prepare [6]** 15/22 73/12 73/17 76/20
115/23 121/6
**prepared [6]** 16/1 66/8 77/12 77/19
86/7 139/4
**prepares [1]** 118/25
**preparing [1]** 200/19
**presence [2]** 104/5 110/11
**present [22]** 12/18 26/24 27/1 28/7
28/14 27/1 76/20 85/7 102/8 102/16

102/20 103/6 110/22 114/14 115/6
120/5 120/11 137/8 158/7 187/25 204/14
220/20 222/3
**presentation [2]** 73/17 124/10
**presented [2]** 124/23 128/2
**presenting [2]** 123/15 123/25
**presents [2]** 130/10 149/9
**preserve [2]** 178/13 204/19
**preserved [1]** 221/20
**preserving [1]** 44/17
**president [4]** 4/11 19/9 20/5 106/25
**PRESIDING [1]** 1/4
**press [1]** 122/8
**presumably [3]** 99/13 148/14 163/23
**presume [2]** 29/17 167/5
**presuming [1]** 163/25
**presupposition [1]** 219/25
**pretty [3]** 37/25 68/20 164/23
**prevail [1]** 136/7
**prevailing [1]** 214/23
**prevent [6]** 42/10 127/21 144/16
187/12 196/16 212/5
**prevented [1]** 96/18
**previous [3]** 87/1 97/16 204/23
**previously [2]** 27/17 195/17
**primarily [3]** 79/20 140/15 140/17
**primary [1]** 210/13
**prime [2]** 124/5 124/23
**principal [5]** 22/22 36/2 118/13 172/5
172/7
**principally [1]** 80/2
**prior [4]** 104/2 163/4 163/7 185/17
**privilege [14]** 26/15 36/23 41/2 42/6
42/7 42/10 42/18 42/23 78/18 104/9
104/10 105/25 106/10 117/3
**privileged [3]** 26/10 106/16 133/8
**privy [6]** 80/5 80/7 80/10 80/13 80/15
110/9
**pro [13]** 4/9 4/17 6/7 157/2 157/11
157/13 157/24 158/25 159/3 160/1
160/2 161/16 166/17
**proactively [2]** 137/12 139/24
**probably [11]** 68/20 82/19 96/2 119/10
175/4 188/10 193/14 194/13 196/23
197/23 197/24
**probative [1]** 157/15
**problem [9]** 37/17 43/17 70/25 71/8
120/14 127/2 149/9 223/14 223/16
**procedurally [3]** 123/21 216/4 221/12
**procedure [6]** 127/4 130/3 130/22
204/4 211/19 218/5
**proceed [15]** 6/12 6/21 11/9 14/25
18/11 27/8 78/5 87/9 111/19 127/8
133/1 143/5 144/18 145/15 160/21
**proceeded [2]** 112/19 176/1
**proceeding [13]** 6/8 6/19 6/21 12/5
12/19 12/24 29/23 74/25 134/9 157/6
190/12 190/15 195/16
**proceedings [7]** 1/15 29/20 117/14
129/25 130/1 225/5 225/7
**process [16]** 27/9 52/12 70/24 71/17
77/14 100/7 100/22 104/7 109/11
112/6 115/15 125/23 126/18 162/13
180/5 208/15
**Process-type [1]** 27/9
**processed [1]** 93/13
**produce [2]** 23/5 75/9

**P**

**produced [5]** 23/10 61/8 98/20 168/2 168/8
**production [4]** 75/2 98/16 101/12 173/10
**Professional [1]** 18/3
**proffer [9]** 13/14 128/9 203/12 203/22 203/25 203/25 216/23 217/4 221/17
**proffered [1]** 48/6
**proffering [1]** 12/6
**prohibited [2]** 138/10 138/13
**prohibition [1]** 138/12
**promised [4]** 52/24 61/15 160/15 210/17
**promises [2]** 120/2 120/6
**promptly [1]** 5/24
**prong [1]** 222/21
**prongs [3]** 131/5 132/11 218/22
**pronounce [3]** 10/4 222/10 223/20
**proper [3]** 108/21 125/18 225/3
**properly [2]** 126/2 221/16
**prophylactic [1]** 128/19
**proposal [1]** 74/1
**proposals [1]** 73/24
**propose [1]** 206/12
**proposed [18]** 12/1 16/12 53/14 55/14 64/20 64/25 91/21 116/22 133/14 135/16 183/17 187/14 189/15 192/15 212/9 219/9 219/12 219/13
**proposes [1]** 148/9
**proposing [1]** 216/23
**propositions [1]** 10/15
**prosecution [1]** 102/19
**prospectively [1]** 209/5
**protected [2]** 104/9 133/8
**protecting [1]** 144/10
**protection [3]** 72/24 86/23 99/25
**protocol [2]** 115/17 115/21
**prove [1]** 124/4
**proves [1]** 43/25
**provide [6]** 6/14 7/7 12/16 67/13 127/13 205/14
**provided [10]** 43/6 58/1 67/19 79/13 112/6 126/9 129/8 131/19 138/11 205/10
**Provider [2]** 114/11 200/17
**providers [1]** 173/22
**providing [1]** 7/2
**province [1]** 126/3
**provisions [1]** 202/4
**public [7]** 133/19 142/12 142/12 142/22 143/6 144/10 144/13
**publicly [1]** 67/9
**publish [1]** 159/13
**pull [3]** 5/17 45/12 157/2
**pulled [2]** 189/12 189/17
**pumpkins [1]** 203/8
**purely [1]** 53/5
**purporting [1]** 43/19
**purports [2]** 9/8 160/24
**purpose [4]** 37/9 39/7 45/21 45/25
**purposely [1]** 130/2
**purposes [7]** 75/3 111/17 124/13 145/1 218/23 220/23 221/7
**pursuant [3]** 7/22 7/23 226/8
**pursue [12]** 55/7 71/13 101/16 125/8 136/7 172/9 172/20 173/2 174/1 200/7

213/15 224/10
**pursued [5]** 172/5 172/18 173/6 173/15 174/8
**pursuing [2]** 194/16 199/21
**put [13]** 25/25 53/14 93/8 94/14 124/8 129/10 167/11 193/9 193/13 204/17 206/17 206/18 217/24
**putative [3]** 47/9 174/12 178/6
**putting [2]** 167/3 168/20

**Q**

**qualify [1]** 165/11
**quantify [2]** 206/14 207/2
**quantity [1]** 206/15
**question [32]** 31/19 37/1 44/10 44/12 45/5 45/24 46/22 48/20 49/25 51/7 52/23 60/16 84/17 93/21 96/8 104/13 106/5 106/14 107/9 107/11 113/6 150/17 157/19 165/7 165/8 165/12 165/13 168/24 185/10 185/11 200/3 220/19
**questioned [1]** 136/6
**questioning [1]** 64/23
**questions [21]** 22/17 26/7 46/17 50/16 64/14 90/25 91/14 101/4 103/16 117/22 123/2 131/20 138/18 145/2 150/19 162/19 170/19 179/19 180/9 197/8 199/5
**quick [1]** 222/10
**quickly [6]** 114/8 117/22 123/20 129/19 132/13 224/19
**quietly [1]** 139/24
**quit [3]** 112/21 114/5 125/12
**quite [5]** 16/2 113/4 118/9 156/19 207/12
**quote [2]** 103/1 213/3

**R**

**Radcliffe [3]** 152/12 152/19 153/1
**raise [2]** 46/18 222/13
**raised [5]** 105/24 198/5
**ran [1]** 112/2
**rate [1]** 217/9
**rather [4]** 5/11 10/15 41/23 187/20
**re [1]** 75/2
**re-establish [1]** 75/2
**reach [3]** 187/13 213/17 220/18
**reached [8]** 90/5 118/3 126/12 127/23 185/20 191/19 192/5 202/15
**reaching [1]** 45/11
**reaction [2]** 31/9 116/1
**read [9]** 31/20 35/13 65/15 66/11 72/12 136/20 151/21 160/25 181/23
**reading [3]** 157/25 158/8 159/19
**reads [1]** 82/9
**ready [1]** 162/14
**reality [1]** 156/18 177/10
**realize [1]** 204/16
**realized [3]** 71/9 84/5 84/20
**really [11]** 38/5 64/3 95/7 125/15 153/9 175/11 192/25 193/5 205/16 213/10 221/21
**reask [1]** 44/11
**reason [11]** 51/18 60/23 143/11 149/8 177/14 187/18 191/24 196/16 198/14 213/7 215/5
**reasonable [3]** 54/1 54/3 134/3
**reasons [1]** 105/23

**recall [26]** 22/5 52/2 57/25 59/25 60/3 100/18 106/4 109/16 64/8 68/9 105/17 109/1 114/9 114/13 114/16 114/23 115/1 115/5 115/7 115/8 116/7 159/7 167/25 168/21
**receipt [5]** 87/2 115/19 151/11 154/6 154/11
**receive [5]** 31/7 56/16 83/4 120/3 205/11
**received [22]** 8/14 9/17 11/2 22/7 22/19 23/6 30/8 30/9 32/21 48/15 58/18 72/20 75/19 81/21 82/6 82/14 82/16 83/17 84/2 98/22 154/6 181/25
**receiving [1]** 31/19
**recently [1]** 156/15
**recess [2]** 117/12 117/13
**recipient [2]** 85/11 173/12
**recipients [2]** 90/17 98/10
**recited [2]** 85/13 103/9
**recognition [1]** 222/8
**recognize [6]** 30/4 81/11 83/10 129/18 129/22 177/10
**recognized [2]** 38/16 177/7
**recognizing [3]** 46/7 82/20 132/8
**recollection [9]** 105/10 116/19 154/5 159/8 159/12 159/16 159/22 160/4 161/2
**reconvene [2]** 220/20 221/15
**record [14]** 4/6 18/14 68/8 125/5 129/11 145/11 171/3 171/16 204/15 204/18 204/20 215/10 221/19 225/4
**records [5]** 98/20 100/14 174/17 174/17 174/18
**recourse [1]** 222/1
**recover [3]** 64/7 121/2 180/1
**recovery [2]** 52/8 135/14
**redirect [11]** 3/6 3/14 3/18 64/15 64/17 123/3 123/4 169/12 169/14 197/11 197/13
**reduced [1]** 135/14
**refer [1]** 69/10
**reference [2]** 81/19 129/7
**referenced [1]** 44/21
**referral [1]** 54/22
**referred [3]** 69/21 71/18 208/21
**referring [6]** 21/5 59/20 69/11 84/23 193/19 193/24
**refiled [5]** 88/22 89/15 89/16 94/1 96/15
**refiling [1]** 100/5
**reflux [1]** 218/4
**refresh [4]** 159/8 159/21 160/4 161/2
**refreshing [2]** 159/12 159/15
**refused [1]** 97/6
**regard [22]** 6/7 10/21 10/24 37/18 37/19 44/3 44/6 98/14 107/7 113/23 115/9 130/3 130/12 131/24 141/5 144/24 145/2 145/4 204/4 218/17 219/6 224/22
**regarding [6]** 40/1 40/3 40/9 40/14 55/13 77/4
**regardless [2]** 63/10 206/22
**regular [2]** 156/12 156/14
**regulations [1]** 226/13
**regurgitate [1]** 207/12
**regurgitation [1]** 205/16
**reigns [1]** 117/25

**R**
**reimbursed** [1] 198/22
**reimbursement** [1] 198/23
**reject** [2] 53/16 196/11
**rejected** [2] 178/15 215/10
**related** [10] 22/4 84/12 133/22 135/8
135/17 136/14 136/24 137/7 137/20
179/20
**relates** [3] 103/2 131/2 140/12
**relating** [2] 42/2 103/25
**relationship** [12] 15/4 54/25 55/11
55/24 56/3 57/10 57/11 59/14 93/23
94/18 122/21 133/9
**relaxed** [1] 130/20
**released** [1] 216/18
**relevance** [2] 160/12 177/2
**relevant** [2] 104/18 157/6
**relief** [2] 194/16 214/3
**relieve** [1] 210/25
**relieved** [1] 213/12
**rely** [1] 153/9
**remain** [4] 12/13 12/15 63/11 120/7
**remaining** [4] 12/9 133/17 138/16
203/20
**remand** [1] 135/7
**remanded** [1] 135/6
**remarks** [1] 16/22
**remedy** [1] 127/13
**remember** [38] 56/23 57/1 58/20 58/22
58/23 59/3 59/10 64/22 66/9 94/6
104/22 105/2 105/4 105/8 105/12
116/6 116/11 178/5 188/7 188/11
188/13 189/7 189/22 189/22 190/9
190/24 190/25 191/5 191/8 191/16
191/20 196/3 196/11 196/12 196/24
197/1 200/24 201/9
**remembered** [1] 92/3
**removal** [1] 135/4
**removed** [8] 63/5 122/8 134/21 135/2
188/15 188/16 192/10 192/12
**renew** [1] 106/8
**rep** [15] 22/25 24/9 24/10 33/20 136/1
136/1 136/2 140/19 168/8 168/10
168/17 209/14 209/19 209/20 211/13
**repeat** [2] 32/4 181/14
**rephrase** [1] 39/1
**reply** [4] 212/9 219/9 219/12 219/13
**report** [14] 174/14 174/23 181/18
181/22 181/24 188/22 188/23 189/4
189/9 199/9 199/17 216/24 220/22
221/17
**reporter** [4] 1/23 171/15 226/6 226/17
**REPORTER'S** [1] 1/15
**represent** [40] 4/15 5/13 7/1 17/5 18/1
43/19 45/20 50/8 73/8 73/9 74/10 92/5
95/12 106/18 106/21 122/23 136/23
137/20 138/9 148/8 148/10 148/18
148/19 150/2 162/9 164/24 165/18
174/21 183/3 183/14 183/16 198/9
199/2 199/20 199/21 201/18 202/21
207/19 208/14 209/19
**representation** [15] 6/4 6/8 18/2 18/4
42/3 56/18 57/14 113/13 138/15
147/19 149/15 149/18 160/19 163/14
167/2
**representations** [1] 42/1
**representative** [56] 11/14 11/19 13/10

15/20 16/13 17/5 21/4 22/13 23/3 32/3
35/20 45/24 47/1 46/6 46/10 46/18 46/24
47/10 47/20 51/23 52/13 52/15 56/11
63/11 73/3 73/11 73/22 76/12 77/8
77/10 96/1 120/7 120/12 120/19
122/24 135/13 140/14 146/24 146/25
147/11 163/10 163/22 165/10 166/9
166/14 169/20 178/25 183/7 183/3
189/14 198/17 208/3 208/4 208/10
210/20 211/23
**representatives** [26] 75/13 96/13 97/5
97/16 97/20 137/15 143/21 143/22
143/23 144/9 148/13 152/18 163/1
163/11 176/20 176/22 176/24 183/15
183/18 189/16 208/12 208/19 208/21
212/11 212/13 213/3
**represented** [40] 15/5 15/12 25/7
25/14 37/8 50/21 65/18 97/15 106/24
107/3 107/5 107/6 108/20 110/4
119/11 136/22 137/6 137/12 139/2
152/17 162/24 163/9 164/2 165/9
165/16 165/19 166/2 166/9 166/18
166/25 170/7 170/11 176/14 179/10
185/3 191/23 198/1 198/11 198/15
208/20
**representing** [28] 4/18 17/13 38/23
39/6 60/2 60/13 60/19 61/6 97/20
97/22 106/23 107/2 118/5 137/17
143/20 148/23 164/11 164/13 164/15
165/3 183/10 194/6 207/1 207/16
208/22 209/3 209/5 211/4
**represents** [3] 137/6 137/25 178/6
**reps** [1] 16/17
**request** [8] 12/9 17/2 75/1 85/11
135/16 158/25 159/2 216/5
**requested** [1] 89/2
**requests** [2] 73/15 75/2
**require** [4] 129/13 129/17 130/4 134/1
**required** [9] 56/12 75/9 89/2 122/11
205/22 206/1 206/9 206/17 206/19
**requirements** [5] 5/9 6/5 115/21
161/11 205/10
**requires** [9] 132/24 132/25 134/3
134/7 180/5 204/22 205/1 205/5 218/2
**reschedule** [4] 203/11 220/14 220/19
222/2
**research** [1] 220/9
**researching** [1] 152/20
**reservations** [2] 190/11 190/15
**reserve** [1] 10/17
**residence** [1] 14/10
**resident** [1] 156/8
**residents** [1] 215/18
**resigning** [1] 155/15
**resolution** [1] 110/24
**resolve** [2] 6/18 224/1
**resolved** [2] 94/22 128/3
**respect** [25] 17/21 42/18 57/5 57/6
57/15 57/21 58/18 58/19 60/9 61/25
117/23 132/10 132/16 133/12 133/19
149/17 150/1 168/10 187/9 204/16
222/12 222/15 222/20 222/25 223/13
**respond** [10] 44/5 115/19 116/2 116/4
131/19 132/6 134/18 160/13 174/6
185/14
**responded** [2] 73/16 194/2
**responding** [1] 46/22

**response** [19] , 14/18 14/23 41/10
103/15 106/7 113/3 116/15 131/13
157/7 177/3 185/1 207/5 219/5
**responses** [1] 75/10
**responsibilities** [1] 20/6
**responsibility** [5] 22/22 61/24 73/22
76/18 76/19
**responsible** [5] 24/20 52/3 61/21
62/12 63/16
**responsive** [1] 219/6
**rest** [5] 43/21 46/11 118/9 122/22
175/22
**restraining** [1] 188/19
**resubmit** [1] 115/24
**resubmitted** [1] 75/1
**result** [5] 18/2 88/13 179/24 195/7
207/20
**results** [1] 18/5
**resumed** [1] 117/15
**retained** [3] 59/16 73/9 86/21
**retainer** [4] 119/25 164/4 166/20 199/1
**retention** [2] 59/4 60/1
**retired** [1] 79/2
**return** [3] 67/25 170/22 203/5
**revalidated** [1] 96/21
**revealed** [1] 52/10
**revenue** [1] 179/23
**reversal** [1] 140/22
**reverse** [7] 90/15 195/1 195/3 195/6
195/7 214/15 214/16
**reversed** [1] 134/24
**review** [4] 6/15 11/21 66/16 199/15
**reviewed** [8] 14/23 23/4 23/9 35/17
53/18 53/23 182/21 209/1
**reviewing** [3] 85/20 181/12 181/18
**right** [74] 4/13 6/3 6/10 8/4 9/10 10/21
12/8 16/9 33/17 45/25 48/2 48/24 53/6
54/10 59/23 60/20 61/14 62/20 62/25
63/12 67/10 67/24 101/18 106/14
117/16 119/16 131/15 132/4 140/5
141/7 144/3 149/4 150/12 150/21
151/3 153/15 154/1 154/5 155/12
161/19 164/17 164/18 164/22 169/11
170/21 170/22 177/18 178/6 180/11
182/17 183/20 184/8 187/5 187/10
187/25 189/23 191/4 192/11 194/23
195/1 195/11 197/10 202/16 203/4
204/13 210/8 213/6 214/11 215/3
220/4 220/16 222/7 224/16 224/17
**rights** [3] 105/1 107/18 133/16
**rigid** [1] 218/4
**rise** [1] 223/11
**risk** [1] 138/14
**Robert** [3] 174/14 181/25 199/9
**Rodney** [1] 76/2
**role** [17] 39/17 60/13 76/22 76/25
77/22 79/8 90/16 107/17 115/12
162/12 162/14 162/16 164/5 164/9
164/10 213/6 213/8
**room** [3] 92/1 105/6 146/5
**rooms** [1] 87/17
**Ross** [3] 25/16 27/2 76/7
**routed** [3] 154/17 154/23
**routine** [2] 168/5 178/18
**RPR** [2] 1/22 226/16
**rule** [23] 7/23 11/16 11/22 17/25 48/9

**R**

**rule... [18]** 106/4 129/9 129/14 134/3 136/20 138/5 138/11 138/12 147/9 152/22 204/4 204/7 204/7 204/22 216/4 218/4 220/22 221/6
**ruled [2]** 72/13 204/3
**rules [23]** 6/5 6/14 9/6 18/3 130/4 140/1 142/13 143/7 147/3 148/7 148/8 148/17 149/1 149/13 150/1 150/6 150/7 152/23 207/18 207/21 217/3 217/19 217/20
**ruling [6]** 37/7 38/5 100/16 105/16 107/7 107/13
**rulings [1]** 127/19
**run [5]** 20/7 20/11 132/12 184/18 185/16
**running [1]** 20/8
**Ryan [7]** 25/16 27/2 55/20 55/21 59/5 59/11 76/8

**S**

**s-e-n [1]** 79/3
**S.A.S.B [1]** 161/20
**said [64]** 22/21 37/14 39/7 41/13 41/17 43/24 44/18 45/14 46/24 48/23 49/24 50/1 50/1 50/2 55/18 58/17 58/24 62/18 77/23 82/25 83/2 92/6 92/11 93/22 98/5 103/15 103/16 104/11 104/23 105/11 105/12 105/18 107/5 111/3 115/13 115/14 115/14 116/2 126/23 127/5 127/10 146/25 152/25 154/5 172/25 190/5 191/9 199/5 199/6 200/23 200/24 200/25 201/4 201/10 201/15 206/18 206/20 209/8 209/9 211/3 214/7 217/24 219/11 220/19
**sake [2]** 7/11 44/17
**salt [1]** 208/9
**same [36]** 4/17 11/19 32/7 37/3 37/12 41/22 50/6 50/8 84/20 85/6 85/17 92/19 93/13 96/16 97/17 105/23 107/7 107/19 115/20 116/4 126/5 136/23 139/22 141/18 148/10 149/13 158/10 158/15 161/25 177/14 184/3 190/11 209/25 211/10 220/9 222/11
**satisfactory [1]** 93/16
**Saturday [1]** 33/4
**save [1]** 21/15
**saw [4]** 84/15 91/11 150/23 168/9
**say [41]** 6/13 21/5 23/23 30/9 31/11 32/22 36/11 39/17 41/21 42/9 46/18 47/6 47/13 51/10 57/6 59/19 61/17 63/20 73/19 85/18 99/23 114/2 116/20 118/2 124/6 127/2 130/15 131/8 139/9 148/20 162/22 162/23 185/15 189/8 196/19 206/7 206/10 213/14 221/2 222/20 223/1
**saying [18]** 7/5 43/20 45/15 63/19 77/23 104/3 105/11 113/15 113/19 118/8 134/24 154/23 177/4 186/17 191/7 191/14 195/5 195/18
**says [20]** 18/1 30/9 31/18 39/23 40/2 40/8 44/22 65/12 70/6 111/7 119/23 119/24 136/21 159/9 160/18 166/7 181/25 197/2 205/8 213/10
**scenario [3]** 126/2 176/17 218/1
**schedule [1]** 38/10
**scheduled [14]** 6/13 78/24 81/2 81/16

82/10 84/6 87/14 88/20 185/23 185/24 199/25 199/25
**scheduling [3]** 20/9 115/1 204/7
**Schwanke [12]** 173/7 173/18 174/6 174/11 174/22 181/21 193/16 194/11 194/12 199/11 199/14 213/8
**scope [1]** 59/13
**screened [6]** 17/19 151/17 175/6 175/17 180/3 180/7
**screening [1]** 180/5
**screening-off [1]** 180/5
**se [1]** 166/17
**seat [3]** 67/25 170/23 203/5
**seated [3]** 5/18 18/18 68/12
**second [11]** 20/3 28/2 65/8 72/7 72/15 75/5 101/21 132/17 147/24 190/23 191/6
**secondary [1]** 136/1
**secret [1]** 110/20
**secretly [1]** 112/5
**section [3]** 167/18 167/19 226/8
**Sections [1]** 204/22
**see [16]** 5/16 14/18 14/22 45/18 57/13 70/4 74/9 81/7 81/9 81/10 84/10 84/12 98/13 144/22 197/24 198/21
**seeing [2]** 92/9 196/11
**seek [9]** 71/12 73/9 147/10 159/4 159/23 202/3 210/6 213/15 223/16
**seeking [6]** 50/7 54/4 72/21 107/15 121/2 127/8
**seem [5]** 109/12 113/7 164/25 213/14 215/7
**Seemar [1]** 158/17
**seemed [2]** 162/22 201/14
**seems [1]** 126/17
**seen [6]** 9/9 75/6 153/1 166/20 195/24 199/1
**Seitz [1]** 159/25
**select [3]** 73/7 178/3 179/11
**sell [1]** 72/21
**seminal [1]** 13/24
**send [2]** 154/21 155/2
**sender [1]** 85/11
**sense [3]** 131/2 139/10 201/12
**sent [21]** 32/11 32/14 33/9 71/4 71/5 71/10 71/24 83/1 83/3 83/8 83/13 85/7 98/11 98/22 99/5 99/6 103/6 139/20 173/20 173/24 184/15
**separate [5]** 156/12 199/8 216/8 223/18 224/24
**sequestration [3]** 11/16 11/22 12/3
**series [2]** 95/5 98/20
**serve [3]** 12/16 124/13 133/17
**served [4]** 71/2 100/11 186/15 186/22
**serves [1]** 126/12
**session [2]** 40/11 79/18
**set [10]** 36/16 46/6 72/25 82/21 90/9 112/6 139/7 154/11 206/2 206/6
**sets [1]** 75/18
**Setting [1]** 62/5
**settings [3]** 19/10 31/1 149/14
**settle [8]** 38/20 39/4 50/23 78/19 79/22 118/9 121/15 122/18
**settled [5]** 51/1 89/7 89/9 119/8 184/25
**settlement [114]** 16/12 24/5 39/18 43/5 45/6 45/9 45/19 46/2 46/12 50/8

53/14 53/19 53/23 54/2 54/3 54/6 74/6 74/7 74/16 76/24 78/6 78/8 89/10 89/12 89/19 90/5 90/12 90/19 91/21 92/7 92/10 92/22 93/8 93/9 95/16 108/20 108/8 109/9 111/12 114/20 115/16 118/3 126/12 127/8 127/21 127/22 133/14 135/17 136/9 139/4 140/9 140/19 140/21 140/23 141/6 141/8 144/5 146/20 147/1 148/9 148/11 148/14 162/15 164/7 168/14 175/16 175/16 180/2 183/11 185/21 187/13 187/19 191/18 192/1 192/3 192/6 192/14 192/15 192/17 193/9 193/10 196/7 196/10 196/11 201/2 201/17 201/20 201/25 202/1 202/4 202/15 208/8 208/11 210/24 211/23 212/5 212/13 213/17 213/18 214/13 215/1 215/9 215/12 215/17 217/12 224/7 224/9
**settlements [1]** 196/18
**settles [1]** 52/15
**settling [2]** 196/17 196/22
**seven [3]** 126/15 196/18 196/19
**Seventh [2]** 152/14 152/18
**several [9]** 75/4 79/13 129/4 146/4 161/8 186/12 188/23 196/25 199/22
**shall [3]** 18/1 207/19 207/21
**share [4]** 43/16 44/24 111/10 135/14
**shared [14]** 40/18 40/22 41/5 42/20 44/5 46/14 60/12 107/15 107/16 112/5 113/25 116/9 117/6 147/4
**sharing [3]** 43/11 114/16 117/3
**SHARON [3]** 1/22 226/6 226/16
**she [74]** 37/14 37/14 37/15 37/15 38/1 43/15 43/15 43/20 43/25 44/5 75/25 82/24 82/25 82/25 83/1 83/2 83/13 83/15 91/15 91/19 91/25 92/6 92/11 101/21 102/17 102/21 102/21 102/24 102/24 103/4 103/24 106/25 107/16 107/20 107/21 108/3 108/5 108/8 108/9 108/10 108/10 108/12 108/14 108/15 108/21 109/3 120/11 120/15 120/18 120/25 121/10 121/13 121/15 121/23 121/24 122/5 126/21 126/22 126/23 126/25 127/1 127/2 127/2 127/9 127/15 136/6 199/5 210/16 210/16 210/17 210/18 210/19 210/23 210/23
**she'll [1]** 122/11
**she's [12]** 37/13 43/20 108/12 120/25 121/4 121/4 121/5 121/11 121/16 121/20 122/3 126/25
**sheet [8]** 78/9 78/13 115/17 115/21 115/24 116/3 116/4 116/12
**sheets [1]** 198/20
**shorten [1]** 48/9
**shortened [1]** 53/11
**should [24]** 17/24 57/5 85/18 105/11 112/20 118/17 124/14 126/16 128/3 130/12 134/15 138/19 147/7 157/10 157/15 160/19 175/12 177/9 206/6 206/16 206/25 215/21 223/14 224/14
**shouldn't [2]** 73/19 117/3
**show [6]** 16/7 29/15 48/9 65/6 102/8 125/21
**showed [2]** 85/21 174/22

**showing [2]** 30/2 102/6
**shown [1]** 222/16
**shy [1]** 114/23
**side [2]** 61/23 64/7
**sign [1]** 57/13
**signature [1]** 192/4
**signed [12]** 23/10 35/10 51/22 57/18 59/4 59/9 72/1 139/21 140/24 167/24 191/21 191/25
**significant [4]** 38/5 138/14 210/12 210/20
**signing [1]** 35/18
**similar [6]** 129/4 208/22 211/4 211/11 211/11 223/5
**similarly [4]** 65/15 148/4 211/5 223/4
**simply [20]** 9/5 10/16 37/13 56/13 59/7 93/8 101/6 104/17 107/17 124/7 127/12 129/10 139/11 142/7 165/8 207/5 207/6 215/7 219/16 224/5
**since [10]** 66/5 68/25 69/1 134/25 135/1 159/11 174/2 206/24 211/4 215/4
**single [1]** 72/22
**Siprut [12]** 94/10 94/18 94/24 95/9 95/12 95/14 95/22 96/6 96/12 96/25 97/4 97/10
**sir [105]** 20/1 20/3 20/23 21/21 22/2 23/12 23/14 23/20 24/1 24/11 25/16 25/21 26/6 26/16 26/19 26/25 27/4 27/11 27/20 27/24 28/1 28/13 28/24 29/2 30/5 30/12 30/14 30/16 30/23 31/2 31/16 31/21 32/9 32/12 32/15 32/17 33/7 33/10 33/14 33/18 33/21 33/24 34/8 34/11 35/5 35/9 35/16 35/20 40/7 40/16 46/15 46/20 47/17 48/3 49/1 49/17 49/23 54/19 54/23 56/23 57/4 57/16 57/24 58/3 58/8 58/10 58/13 58/16 58/21 58/25 58/25 59/2 59/21 60/3 60/8 60/15 60/21 61/23 62/1 62/10 63/13 64/10 64/12 64/24 65/11 65/17 66/3 66/10 66/12 66/14 66/20 67/21 102/14 103/8 105/13 115/7 117/9 131/19 134/18 152/3 153/18 156/10 159/18 167/1 168/25
**sit [3]** 11/23 46/7 97/7
**sitting [5]** 47/25 102/15 157/21 158/5 200/20
**situated [4]** 65/15 148/4 211/6 223/4
**situation [7]** 125/11 160/15 179/4 201/14 209/18 209/23 211/6
**situations [1]** 146/11
**six [8]** 97/4 97/10 97/15 97/20 135/21 135/22 140/10 203/19
**skip [1]** 38/14
**skulduggery [1]** 175/8
**slim [2]** 131/4 131/9
**slipped [1]** 22/20
**small [4]** 20/7 140/5 144/11 207/6
**so [168]** 5/3 5/7 5/16 6/19 11/6 14/24 14/25 15/20 19/13 19/15 26/11 29/7 30/17 31/2 37/21 38/7 39/16 44/10 46/5 47/17 47/18 49/18 51/18 52/5 52/9 55/10 55/18 56/13 56/21 60/17 61/18 61/25 63/7 63/10 63/18 63/20 66/16 66/17 67/2 70/18 71/7 76/20

79/18 81/5 82/14 82/17 82/22 84/5 85/13 88/13 89/11 90/18 95/16 95/25 96/12 96/25 97/15 99/9 99/25 100/5 100/12 100/17 100/20 103/13 104/10 104/13 106/18 108/19 111/16 112/4 112/14 113/9 114/7 115/8 115/24 116/16 118/7 121/10 122/13 124/3 124/13 125/8 127/6 127/24 129/23 129/25 130/25 131/2 131/7 131/21 131/25 134/25 135/23 138/10 139/12 139/23 141/1 141/14 143/3 144/7 145/4 149/2 149/11 150/25 154/13 161/4 162/17 162/20 162/20 163/3 164/14 164/17 166/6 166/17 166/20 168/15 175/5 175/17 175/25 176/16 180/15 181/15 184/6 184/13 184/17 189/3 189/12 190/6 190/8 190/19 191/11 191/17 193/2 194/11 197/18 197/21 199/6 201/2 203/9 203/19 205/9 205/12 207/9 209/23 213/20 214/4 215/20 215/21 216/15 216/17 216/25 217/13 218/17 220/9 220/12 220/20 220/24 221/4 221/15 221/19 221/24 222/1 222/2 224/8 221/9 224/21 225/3
**SOBLE [13]** 2/3 3/5 3/6 3/14 4/9 6/22 6/24 68/2 131/18 132/5 134/17 153/21 164/23
**social [2]** 30/19 30/25
**Society [1]** 21/12
**solicitation [6]** 30/7 32/21 33/9 173/13 173/23 174/7
**solicited [1]** 139/19
**soliciting [4]** 31/23 32/5 139/22 139/24
**solve [2]** 223/14 223/15
**some [58]** 5/10 7/11 38/14 43/14 43/16 47/11 50/16 51/11 62/3 71/1 80/7 80/18 80/19 82/23 84/18 89/11 93/6 94/16 95/17 96/25 106/15 113/20 127/25 136/12 144/22 144/23 144/24 145/2 147/5 148/9 148/13 157/19 162/18 167/9 171/25 172/16 173/5 175/7 177/19 178/11 178/23 179/5 185/6 187/21 188/2 190/4 196/15 200/11 201/14 201/23 203/16 207/3 215/4 215/5 217/1 217/2 219/25 220/25
**somebody [12]** 76/10 76/21 82/21 108/9 108/10 108/16 118/8 121/13 148/10 149/2 175/13 197/25
**somehow [3]** 99/7 173/9 188/3
**someone [7]** 17/19 55/19 64/5 120/12 130/10 137/20 163/20 185/20 209/2
**something [38]** 5/7 38/23 43/22 46/10 46/11 46/17 46/19 46/21 64/6 86/25 89/24 98/13 103/15 104/20 106/3 111/2 124/2 124/21 134/1 144/9 149/5 151/24 168/19 172/3 174/16 175/10 182/19 186/19 189/5 191/8 191/11 198/23 199/4 200/25 201/8 202/20 206/2 206/22
**sometime [6]** 57/19 64/2 83/6 89/23 125/1 204/10
**Sometimes [1]** 73/19
**somewhat [1]** 116/15
**somewhere [1]** 52/1 192/4

**soon [3]** 54/24 134/16 216/10
**sooner [1]** 46/1
**sorry [12]** 26/25 29/21 32/17 42/12 97/9 101/14 107/10 113/2 118/18 134/5 148/20 193/19
**sort [12]** 22/4 23/1 24/17 32/7 56/16 64/11 84/18 98/11 135/17 136/13 187/11 207/3
**sorts [4]** 27/18 63/12 136/7 164/7
**sought [5]** 91/24 101/11 140/8 197/17 213/22
**sound [1]** 186/8
**sounds [7]** 45/15 45/24 158/4 161/19 161/24 218/18 218/24
**source [4]** 39/3 43/15 136/17 158/22
**sources [1]** 99/4
**Southern [10]** 10/7 158/12 158/16 158/23 159/5 159/24 161/5 161/12 161/17 161/22
**span [2]** 137/15 140/10
**speak [7]** 40/6 52/2 52/6 57/22 76/21 77/24 172/13
**speaking [5]** 22/3 101/6 153/11 167/6 177/6
**speaks [1]** 151/23
**special [1]** 5/18
**specialized [1]** 205/19
**specializing [1]** 71/14
**specific [18]** 41/2 41/4 45/12 46/9 46/13 58/20 59/25 61/5 104/24 105/10 106/1 106/5 106/12 107/23 109/20 109/22 110/1 163/13
**specifically [13]** 25/13 44/19 58/13 63/2 95/19 105/17 106/10 126/20 181/17 185/11 196/21 208/1 210/16
**specifics [1]** 78/17
**specified [2]** 59/13 60/5
**speculate [2]** 59/6 59/16
**speculation [3]** 66/25 67/7 155/7
**speed [1]** 79/13
**spell [6]** 10/4 18/14 68/8 134/6 145/11 171/3
**spend [2]** 37/23 108/6
**spending [2]** 108/11 108/12
**spent [3]** 108/5 108/12 146/4
**spit [1]** 154/11
**spoke [2]** 86/6 104/17
**spoken [2]** 94/15 146/10
**spokesperson [1]** 79/15
**sponsor [1]** 122/20
**sponte [1]** 196/2
**spread [1]** 198/20
**stage [3]** 9/20 129/22 204/9
**stake [2]** 97/1 172/6
**stand [8]** 68/5 132/15 135/18 139/8 163/4 163/7 212/14 217/2
**standard [5]** 119/25 130/21 132/24 142/3 144/25
**standards [1]** 132/10
**standing [4]** 43/20 133/3 160/11 196/2
**stands [1]** 135/13
**start [7]** 7/2 37/1 92/12 104/2 181/16 207/2 209/4
**started [6]** 69/18 95/7 101/10 114/25 155/17 155/20
**starting [1]** 95/5
**state [40]** 15/7 18/13 22/8 68/7 71/1

**S**

state... [35] 71/21 73/13 74/25 84/9 86/8 86/13 88/18 100/10 100/11 100/12 100/18 100/24 114/10 135/10 142/13 145/10 151/12 151/23 153/12 156/8 156/15 160/17 171/2 171/16 183/22 184/20 186/16 187/5 187/9 195/11 195/14 204/4 213/19 214/9 215/3

stated [4] 10/25 35/14 42/25 119/11

statement [10] 13/6 13/21 77/19 111/17 123/14 124/12 156/17 168/6 168/23 205/1

states [11] 1/1 1/1 1/4 10/5 35/25 130/19 161/9 226/1 226/7 226/9 226/14

stating [4] 9/1 35/12 36/19 85/10

status [5] 4/18 47/3 47/22 127/13 127/14

statute [7] 112/2 135/7 184/10 184/18 185/4 185/8 185/16

statutory [1] 85/12

stay [1] 122/7

stayed [1] 127/24

staying [3] 13/9 112/22 122/1

Stein [2] 95/6 95/21

stenographic [1] 226/10

step [4] 12/21 86/10 117/12 147/7

STEPHEN [1] 2/21

steps [2] 93/2 195/10

still [16] 50/23 51/2 51/4 54/4 116/14 126/24 127/8 127/9 131/23 131/25 175/24 176/20 176/25 194/21 212/1 224/10

stooges [2] 208/13 213/4

stop [13] 34/9 54/5 63/18 127/9 137/5 144/15 196/1 209/4 210/4 213/16 213/22 214/24 224/6

stopped [1] 217/13

straight [1] 165/12

strategic [9] 15/14 15/24 27/13 40/21 41/2 44/20 45/2 111/10 113/24

strategies [5] 27/7 27/10 40/19 43/13 107/18

strategy [14] 43/3 43/4 43/5 46/1 77/5 77/12 78/13 102/18 103/25 104/19 110/11 139/3 139/4 139/4

STREET [3] 2/5 2/11 2/17

strike [1] 57/6

stuck [1] 142/7

study [1] 205/2

stuff [1] 187/22

stupid [1] 179/3

subject [8] 12/3 70/10 81/18 84/13 86/18 106/13 134/23 206/11

submit [2] 7/21 167/20

submitted [9] 5/2 5/19 6/16 64/22 66/14 78/14 131/12 131/25 196/6

Subpoena [2] 100/10 100/14

subpoenas [3] 99/17 100/25 186/20

subsequent [1] 191/15

subsequently [2] 83/6 110/16

substantial [2] 218/6 218/7

substantially [3] 136/24 137/7 137/20

substantive [1] 105/4

substitute [1] 147/11

substitution [1] 17/11

succeed [1] 101/17

success [3] 101/20 225/23 236/1

145/3 207/11 218/19 218/25 222/21

successes [1] 174/19

successful [7] 17/1 17/9 98/12 108/18 108/22 210/23 212/15

successfully [4] 94/22 95/15 98/11 98/23

such [13] 41/16 45/5 47/7 47/7 103/17 103/17 143/1 152/11 156/12 156/13 174/1 177/1 177/21

sudden [1] 187/12

suddenly [2] 135/2 212/18

sue [1] 196/1

sued [1] 152/20

sues [1] 42/1

suffered [1] 51/13

sufficient [1] 223/10

suggest [3] 133/6 211/10 217/14

suggested [3] 40/23 161/7 173/9

suggesting [3] 39/10 114/1 114/2

suggestion [1] 173/5

suing [1] 170/11

SUITE [3] 1/23 2/5 2/17

summarized [1] 78/12

summarizing [1] 45/14

summary [4] 77/11 79/11 114/9 200/16

Superior [1] 158/8

supply [2] 73/12 158/22

support [12] 6/16 9/21 9/23 12/17 73/18 124/23 131/13 141/20 144/14 206/5 207/4 219/9

supporting [1] 90/4

supports [1] 124/25

supposed [5] 80/6 168/22 187/24 188/1 210/22

supposedly [1] 177/7

Supreme [2] 100/15 217/22

sure [42] 5/23 5/24 13/15 20/11 32/5 35/21 46/6 49/12 50/16 63/9 64/8 77/10 84/24 92/10 95/19 102/9 102/12 105/14 108/19 113/5 116/5 122/3 141/25 149/7 149/11 154/20 156/20 156/22 164/23 175/7 178/17 184/21 193/14 194/10 195/2 195/2 195/9 196/24 201/6 203/21 221/12 225/2

surgery [2] 28/10 28/11

surrounding [1] 182/4

susceptible [1] 74/2

suspect [1] 5/8

sustained [3] 88/14 149/23 155/8

swore [2] 36/7 37/14

sworn [8] 18/12 19/3 68/6 68/15 145/9 145/19 171/1 171/11

Syrus [1] 161/16

system [2] 154/10 189/16

**T**

table [1] 4/10

tactical [1] 124/7

tactics [1] 110/12

take [30] 5/17 6/23 7/13 7/15 7/22 25/5 28/3 28/5 34/3 46/5 61/6 73/21 76/25 83/1 86/11 109/7 113/12 117/10 121/14 122/18 124/12 143/9 147/21 159/18 188/13 188/13 196/19 210/11

222/12 224/17

taker [16] 10/19 110/15 143/25 145/11 143/16 143/19 177/15 195/10 196/15 226/11 226/11

takes [2] 20/7 218/6

taking [9] 14/4 15/11 39/12 130/17 131/9 152/24 152/25 187/9 196/14

talk [6] 20/20 24/24 39/22 78/9 117/7 208/18

talked [10] 24/7 44/23 46/22 66/7 101/1 101/2 124/1 157/8 208/16 208/17

talking [9] 14/2 14/2 14/3 15/18 98/5 101/7 101/15 101/18 144/3

talks [1] 185/6

TAMPA [19] 1/16 1/24 2/5 2/6 2/22 19/23 20/18 68/23 69/1 84/9 85/9 95/2 108/6 114/10 115/2 182/3 187/21 190/7 215/3

taste [1] 31/10

TCPA [12] 78/3 81/3 81/19 94/13 100/17 174/12 175/3 175/13 184/11 196/17 201/11 215/5

team [1] 29/1

technically [2] 123/21 123/23

Technology [52] 17/8 17/10 18/4 33/2 33/12 33/22 49/6 50/17 51/14 53/10 64/21 66/1 84/16 85/3 87/10 87/23 88/17 90/6 90/13 112/1 135/20 140/3 140/7 140/25 142/5 142/5 155/3 181/7 181/16 181/20 182/16 183/2 183/3 183/21 184/2 184/13 186/16 186/22 190/19 190/20 193/7 193/12 193/25 194/4 194/7 194/8 194/15 196/1 197/2 199/11 207/1 224/9

telephone [3] 72/24 86/22 102/1

tell [30] 15/11 19/7 20/24 22/3 24/2 25/2 25/13 26/9 27/21 30/6 30/17 37/25 40/17 40/20 44/18 50/11 55/4 57/17 60/22 65/19 78/7 82/22 94/17 103/22 109/22 141/2 159/19 164/1 173/16 188/12

telling [5] 36/18 43/10 98/21 100/20 115/8

temporary [3] 188/17 188/18 188/20

Ten [1] 172/15

tendering [1] 216/25

tends [1] 53/20

tension [1] 120/23

term [11] 78/8 78/13 114/11 115/17 115/20 115/23 116/3 116/4 116/12 193/10 200/17

terminate [1] 147/19

terminated [1] 147/18

terminology [3] 126/4 163/23 164/1

terms [17] 53/18 56/18 57/14 58/22 62/7 94/20 97/1 98/7 119/8 126/21 132/23 164/6 168/10 191/17 192/14 218/19 218/22

test [1] 178/14

testified [12] 11/12 19/4 66/8 68/16 91/25 102/24 121/20 126/21 136/4 145/20 171/12 204/24

testify [10] 12/22 13/8 102/16 128/11 128/24 150/7 177/11 210/21 217/17 217/18

testifying [6] 12/5 12/12 12/19 13/11

testifying... [2] 150/5 153/6

testimony [33] 11/10 12/23 19/12
46/21 46/24 51/8 54/20 103/8 128/7
128/8 128/9 128/25 129/1 129/12
131/23 132/18 144/19 165/25 166/22
203/10 203/12 203/23 205/2 205/15
213/1 220/14 220/17 220/21 221/5
221/7 221/15 221/19 222/3

tests [1] 132/12

texted [1] 151/15

than [20] 5/11 10/16 11/22 41/13
60/13 60/24 66/4 70/15 76/4 103/14
106/12 113/19 117/6 122/1 134/1
146/11 157/22 184/14 187/20 193/2

thank [75] 4/13 6/9 6/25 8/9 11/8
12/25 13/1 13/22 15/1 18/17 18/20
34/20 34/21 34/22 38/13 44/15 48/17
54/9 54/10 54/12 61/10 64/13 64/15
64/16 67/24 68/1 68/11 91/2 91/3
111/2 117/9 117/18 123/1 123/2 123/3
123/5 123/18 124/17 131/1 132/7
134/17 144/17 145/14 145/16 150/12
150/19 150/20 150/22 153/19 169/10
169/11 170/21 170/22 171/6 171/8
177/20 179/14 179/16 180/11 197/10
203/2 203/4 203/5 203/6 210/7 210/8
210/10 215/19 218/16 221/9 222/5
224/1 224/15 224/16 224/17

that [1138]

that's [99] 6/20 8/4 10/19 17/17 19/17
19/25 31/18 32/5 36/10 37/10 38/4
38/5 38/23 39/7 40/5 43/13 50/10
50/12 59/22 63/9 64/1 64/10 69/24
70/2 70/8 72/2 73/12 73/14 74/1 79/3
83/13 84/20 85/1 85/12 90/2 92/14
92/18 93/15 93/25 94/3 103/1 111/13
111/14 111/24 111/25 113/19 115/14
116/7 117/23 118/12 120/20 122/9
122/25 124/18 138/4 138/6 141/4
141/9 142/18 142/20 146/1 147/25
151/22 151/25 154/2 156/7 156/17
162/6 162/6 162/16 169/5 174/1 182/4
182/5 182/19 183/1 183/11 186/19
187/17 189/17 192/20 192/21 193/14
194/4 194/20 195/8 196/3 200/17
208/24 209/21 210/2 210/6 212/7
215/13 216/10 219/11 220/4 221/24
223/16

theatrical [1] 124/7

their [49] 12/16 15/22 34/4 39/7 43/12
71/12 75/10 76/6 76/12 80/6 92/25
96/21 97/25 99/7 128/6 129/17 130/8
135/4 135/14 135/18 140/8 142/6
142/8 142/9 143/9 143/16 143/23
145/5 148/15 153/9 153/10 166/14
168/11 170/15 170/23 183/17 187/8
189/1 195/8 196/3 202/16 206/10
206/25 208/9 209/17 209/18 214/9
220/2 221/2

them [64] 7/7 7/13 7/14 7/21 7/23 11/5
13/9 14/6 15/12 21/15 24/12 29/14
52/7 54/24 59/18 66/13 66/16 70/21
70/21 71/3 71/5 73/8 89/22 93/13
98/19 98/21 99/21 106/2 107/3 116/22
123/12 125/13 132/13 133/18 136/15
138/8 138/9 142/16 142/17 146/23

162/24 163/14 165/16 166/9 172/16
186/24 186/24 186/25 186/25
186/25 187/15 196/10 197/3 198/1
198/2 199/2 199/21 201/19 206/6
208/21 211/12 215/3 217/21

themselves [2] 65/14 134/10

then [72] 12/13 37/11 40/1 40/13 42/9
42/22 43/16 43/24 44/8 51/7 55/9
56/12 71/25 73/18 74/7 75/7 75/11
83/2 84/13 87/17 88/1 89/17 91/11
93/6 93/9 94/1 95/9 99/10 99/13
100/14 100/15 101/10 107/6 112/11
113/18 115/18 120/18 124/14 129/20
135/1 135/2 137/4 140/6 149/3 151/15
154/16 155/17 161/14 163/25 173/24
174/5 182/1 184/17 187/14 190/1
190/3 191/15 199/19 202/25 207/4
209/13 211/9 213/17 213/23 214/4
214/9 214/12 217/16 218/17 221/21
222/3 224/3

theoretically [2] 87/6 93/6

theory [1] 126/15

there [168] 5/5 6/17 8/23 10/11 10/14
10/15 12/8 12/11 12/18 13/10 13/16
14/11 14/12 16/5 16/15 16/15 17/20
21/13 22/6 22/8 25/11 28/23 29/7
30/24 33/15 36/12 45/16 45/16 45/17
45/18 48/10 49/21 51/19 61/6 61/13
62/6 62/11 63/11 64/9 64/10 66/21
69/23 70/2 70/9 70/16 74/6 75/4 76/6
76/7 76/7 76/8 76/10 76/15 77/3 78/10
78/18 78/21 79/24 80/1 80/7 80/20
81/25 84/10 87/16 92/6 94/4 95/2 96/4
99/8 100/25 105/4 106/11 106/15
106/17 108/7 108/7 108/10 108/17
108/18 108/23 109/2 109/11 113/4
113/5 114/14 116/7 116/10 118/4
118/7 119/5 120/16 123/6 124/4
124/22 127/6 129/24 129/25 131/11
131/15 131/17 132/19 133/5 133/7
133/13 134/12 135/16 135/20 136/11
136/12 137/11 140/2 140/6 140/20
140/21 141/3 141/10 141/15 142/23
143/10 143/11 146/19 146/25 148/2
148/21 152/4 157/9 168/4 169/12
170/5 174/19 174/19 175/7 175/9
178/9 180/19 184/10 186/5 187/23
188/16 191/10 193/13 193/14 197/11
197/20 197/22 198/3 198/7 198/22
199/15 200/3 200/15 200/19 200/20
202/22 203/13 205/4 207/17 207/22
208/3 208/10 209/13 213/7 216/6
216/18 220/19 222/23 223/8 223/22

there's [82] 5/3 5/8 13/23 15/24 16/16
37/3 41/18 43/22 46/6 50/6 50/12 51/7
67/2 67/3 82/20 91/22 93/1 96/1
112/11 113/2 118/7 124/2 125/3
125/16 126/6 126/8 130/6 130/10
130/22 133/10 134/24 136/8 137/8
137/21 138/6 140/2 140/22 141/4
142/4 142/12 143/6 143/23 144/10
149/2 169/19 173/5 176/9 182/2 199/7
199/8 199/23 202/2 203/18 204/5
204/6 204/11 204/12 207/22 207/23
208/4 209/9 209/11 209/11 209/16
209/24 210/3 211/12 213/10 213/11
213/15 214/15 214/18 214/21

214/22 218/12 218/15 219/25 222/22
222/25 223/1

thereafter [3] 101/22 137/17 146/3

therefore [5] 87/5 88/4 132/5 132/22
133/10

therein [1] 10/25 37/19 37/21

these [25] 7/11 8/2 21/10 27/12 33/16
36/24 37/16 51/5 90/18 106/17 117/22
132/15 137/5 144/14 152/20 164/8
184/23 187/12 196/14 196/20 201/11
208/12 211/15 215/7 224/1

they [172] 7/12 11/24 12/17 13/9 14/15
16/1 16/18 21/24 34/2 41/3 42/8 43/1
43/2 43/4 50/21 50/23 52/7 52/17 56/7
56/7 56/8 56/10 56/13 60/1 66/14
70/22 71/4 71/5 71/5 71/18 73/7 73/8
73/11 73/14 74/7 74/10 74/14 74/16
75/19 75/21 77/11 78/12 80/6 82/22
85/16 86/17 89/7 89/16 89/21 89/25
90/2 90/3 92/23 93/19 95/6 96/6 96/15
96/15 96/16 96/17 97/6 97/13 97/24
97/25 98/19 98/19 98/20 104/18 105/8
107/19 111/25 112/3 112/10 113/18
120/3 122/20 125/17 126/5 127/18
127/20 128/3 130/7 130/7 135/10
135/18 135/21 135/22 136/7 137/19
137/22 139/17 139/18 139/19 139/23
139/24 142/20 143/9 143/17 148/14
148/19 149/3 149/13 149/14 150/1
153/8 162/21 162/24 163/1 163/3
163/6 163/11 165/16 168/14 170/6
174/9 179/19 182/24 186/25 191/12
193/23 194/2 195/2 195/3 195/13
195/15 195/21 195/25 196/5 196/8
196/9 196/12 196/19 196/21 202/23
202/23 203/25 206/4 206/10 206/16
206/25 206/25 207/3 207/6 209/4
209/17 211/11 211/14 211/14 212/14
212/14 213/4 213/14 213/14 213/15
213/22 213/23 213/25 213/25 214/5
214/5 214/6 214/9 216/8 216/25 220/1
220/5 220/6 220/25 220/25 223/5
223/6 224/23

they'd [1] 168/17

they'll [2] 142/6 214/2

they're [21] 16/11 16/12 16/14 34/15
49/14 125/16 125/17 129/10 142/18
153/7 177/4 177/6 183/8 189/15
196/10 202/19 206/7 211/10 211/10
214/1 214/10

they've [8] 42/3 51/5 53/14 126/1
166/15 195/10 196/13 196/16

thing [16] 42/18 48/4 50/13 82/17
82/18 82/25 112/15 113/19 128/21
141/18 177/14 178/18 179/3 183/10
190/4 222/16

things [19] 22/4 23/1 24/8 24/17 27/9
27/18 35/22 36/13 37/16 38/1 38/2
49/24 69/4 104/17 138/21 143/1 168/7
202/2 223/1

think [108] 5/7 6/1 7/12 9/21 16/7 29/7
34/13 39/16 39/19 44/3 46/8 46/8
46/13 50/11 50/14 51/8 53/20 61/8
62/22 63/21 64/1 64/19 68/20 71/1
76/8 86/2 89/5 89/16 89/17 91/8 94/8
102/1 105/11 107/8 108/3 108/4 112/4
112/25 113/12 114/7 115/13 115/13

**think...** [66] 115/14 118/7 120/20
122/17 122/20 130/4 130/7 132/11
132/14 134/14 142/2 142/11 142/21
143/19 148/12 150/18 155/16 156/17
157/4 163/12 164/15 165/6 165/7
165/10 168/4 177/10 178/2 178/23
179/2 179/3 179/13 184/6 185/10
186/14 188/1 188/18 189/3 189/7
189/9 189/23 190/9 190/15 192/2
195/3 195/18 196/25 197/1 197/4
198/25 199/17 201/5 201/13 202/1
204/1 204/7 205/22 207/11 207/14
208/14 209/8 215/21 218/9 219/19
220/16 220/17 221/6

**think you're** [1] 195/18

**thinks** [1] 126/25

**third** [7] 75/12 89/3 178/9 178/10
179/5 179/12 223/12

**this** [222] 5/2 5/8 5/13 5/14 5/25 6/8
6/13 7/20 7/25 8/3 8/6 9/20 9/21 10/4
11/6 11/21 12/5 12/19 12/24 14/24
15/2 15/17 16/4 17/13 21/17 21/18
22/22 23/11 30/4 30/20 31/5 31/9 32/6
32/11 32/14 32/20 32/21 34/20 35/11
35/22 35/22 36/23 37/24 37/25 38/6
41/1 44/23 47/12 48/5 49/3 49/13
49/19 50/13 51/13 52/11 52/20 53/9
54/1 54/9 57/5 57/21 58/18 61/11
62/11 62/22 63/7 65/7 65/8 65/14
68/21 70/10 70/20 71/25 72/5 72/11
74/19 74/21 81/7 81/10 81/11 81/13
81/14 81/20 82/14 83/10 83/16
84/5 84/22 85/14 85/19 86/4 86/5 88/9
90/15 90/25 93/19 94/14 97/16 100/8
103/2 103/4 104/12 104/14 109/7
109/14 111/20 116/17 117/7 122/20
123/19 123/20 123/24 124/1 125/5
125/8 125/10 126/5 126/25 127/2
127/15 128/12 128/14 128/21 128/22
129/15 129/22 129/24 131/25 132/8
132/12 132/22 133/15 134/11 134/14
135/8 138/12 138/24 139/13 141/7
143/19 144/4 145/5 145/7 147/25
148/22 150/15 151/14 152/7 152/9
152/21 152/23 157/6 157/10 157/10
159/18 160/11 160/14 163/20 164/5
166/5 168/1 168/13 170/2 170/9 173/6
175/1 177/5 177/13 178/13 179/4
181/8 181/12 181/16 182/11 183/19
183/24 184/13 184/17 185/4 185/19
187/21 188/15 188/16 190/12 190/16
191/3 191/16 192/10 192/12 192/23
193/5 193/24 193/24 194/19 196/13
198/21 200/10 201/22 201/24 203/14
204/5 204/8 204/8 205/9 210/5 210/18
211/3 213/12 215/10 216/14 218/1
220/11 220/12 220/15 220/23 221/8
223/18 224/11 224/17 224/24 224/25

**Thomas** [6] 95/1 95/4 96/6 96/12
96/25 97/14

**Thomas'** [2] 97/4 97/10

**those** [50] 7/19 15/10 21/16 27/18
29/3 37/7 40/5 42/3 42/11 44/21 44/24
45/24 49/15 50/9 63/11 63/14 63/18
73/23 75/18 80/1 86/12 99/14 103/7
116/21 121/9 130/1 131/21 132/15
136/15 137/4 138/25 140/14 140/17
140/23 140/24 145/24 146/11 148/18
148/8 150/7 152/15 153/8 164/2
164/11 167/25 173/24 174/6 182/2
212/18 214/17

**though** [9] 9/22 28/14 131/22 139/9
156/5 182/14 182/18 190/10 224/23

**thought** [17] 31/10 36/10 46/19 62/19
102/21 102/24 107/1 107/5 119/8
153/14 162/18 174/3 175/25 190/24
197/20 197/22 202/8

**thoughts** [2] 40/18 61/5

**thousand** [4] 182/3 182/23 188/24
188/24

**thousands** [2] 43/21 50/9

**threat** [1] 213/12

**threatened** [1] 190/4

**three** [10] 7/3 7/6 118/4 124/8 186/14
199/6 200/4 203/15 216/12 222/13

**threshold** [1] 134/8

**through** [21] 10/16 24/5 24/17 31/20
38/8 49/3 55/5 67/5 67/5 93/2 99/24
111/12 113/5 121/1 121/2 126/8
132/13 159/13 171/19 217/21 220/2

**throughout** [5] 52/11 101/7 101/16
105/5 211/21

**throw** [1] 195/2

**Thursday** [4] 82/18 89/5 155/18 190/9

**thus** [2] 121/17 138/4

**tickets** [3] 72/22 72/22 85/9

**time** [83] 7/25 11/6 20/11 33/5 34/20
37/23 37/24 38/8 41/23 44/21 45/11
46/8 47/2 47/21 48/9 53/24 54/9 55/7
55/15 56/9 56/11 56/16 58/4 58/12
58/15 61/6 61/8 61/14 63/8 74/20
80/19 82/19 83/14 85/23 86/3 91/1
93/18 94/5 96/17 103/24 104/23 108/6
108/11 110/22 111/4 114/17 115/9
116/12 116/17 119/1 121/4 121/11
123/19 123/24 125/1 125/5 135/9
138/21 145/24 147/14 147/20 148/10
151/6 152/25 153/14 161/10 163/14
169/2 176/10 181/4 187/21 191/13
192/5 193/2 193/4 199/25 201/11
201/24 203/8 221/5 222/9 222/11
224/1

**time-consuming** [1] 199/25

**times** [11] 11/21 22/20 44/24 71/11
128/21 156/24 167/18 190/20 194/5
199/6 218/11

**Timothy** [2] 12/1 128/9

**tired** [1] 31/18

**title** [2] 154/7 226/9

**today** [33] 4/21 12/12 14/25 17/1 17/9
35/7 37/25 41/11 46/7 49/10 49/25
59/1 63/24 119/21 121/2 122/13 124/8
128/2 132/16 132/19 144/19 157/21
194/18 203/11 205/12 205/12 212/8
214/18 216/20 217/18 219/15 221/5
224/21

**together** [7] 26/1 45/18 167/3 167/11
168/20 179/1 201/11

**told** [18] 25/24 29/12 36/17 37/14 38/2
38/24 47/6 52/24 56/13 116/6 128/22
154/10 160/5 161/4 170/14 175/17
199/2 200/21

**tolled** [3] 184/19 184/20 185/17

**tomorrow** [2] 17/9 64/2

**took** [14] 15/7 15/25 48/23 75/14
75/18 76/11 78/24 84/8 88/12 96/6
96/7 181/16 212/20 217/1

**topic** [1] 219/18

**topics** [1] 45/22

**tort** [1] 151/23

**total** [2] 79/18 172/15

**toward** [2] 128/4 153/3

**towards** [2] 78/12 122/11

**track** [1] 99/19

**Trade** [1] 135/21

**Trained** [1] 140/3

**Training** [50] 17/8 17/10 18/4 33/2
33/12 33/22 49/6 50/17 51/14 53/10
64/21 66/1 84/16 85/3 87/10 87/24
88/17 90/6 90/13 112/1 140/7 140/25
142/4 142/5 155/3 181/7 181/16
181/21 182/16 183/3 183/4 183/21
184/3 184/13 186/16 186/22 190/19
190/20 193/7 193/12 193/25 194/4
194/7 194/8 194/15 196/1 197/2
199/11 207/1 224/9

**trains** [1] 20/11

**transaction** [1] 223/22

**transcript** [6] 1/15 160/5 160/8 160/24
226/10 226/13

**transcription** [1] 226/11

**transmissions** [2] 126/14 174/18

**travel** [2] 99/18 122/1

**traveled** [2] 28/12 89/1

**treated** [1] 175/18

**treating** [1] 60/23

**treatment** [1] 55/5

**trial** [7] 52/16 74/8 95/15 122/11
123/20 129/15 204/25

**tried** [4] 98/8 110/21 126/3 196/16

**trier** [1] 205/15

**tries** [1] 121/14

**triggering** [1] 200/10

**trouble** [1] 139/16

**true** [24] 11/19 35/15 36/8 36/17 36/18
36/20 37/14 37/15 37/16 81/20 83/16
111/13 111/15 116/23 120/20 158/24
161/4 182/20 183/13 194/20 212/7
212/17 219/24 226/10

**truly** [1] 143/10

**truth** [4] 8/20 9/1 50/12 88/10

**try** [8] 20/13 60/17 86/10 138/20
162/15 183/11 195/11 222/9

**trying** [25] 34/2 45/12 45/18 50/23
59/10 71/3 86/1 88/3 113/5 122/17
127/9 129/10 164/6 165/14 165/15
175/15 187/12 201/2 201/14 205/17
209/4 214/1 214/11 217/12 218/21

**TTA** [25] 53/11 53/13 53/13 54/2 54/5
91/21 92/22 120/24 122/16 122/17
127/25 147/25 148/3 172/10 173/7
173/17 174/6 174/11 174/22 175/23
199/14 201/17 202/14 210/24 213/8

**Tuambly** [1] 133/25

**Tuesday** [1] 86/20

**turn** [4] 75/14 200/22 203/8 209/18

**turning** [1] 214/25

**two** [32] 9/23 11/4 15/6 15/13 16/9
16/16 33/16 34/1 50/13 65/19 89/22

**T**

**two... [21]** 89/25 99/4 110/8 139/2 139/5 140/18 146/11 149/19 150/1 164/4 176/19 178/25 179/19 186/14 190/20 190/22 190/22 205/7 212/10 223/1 224/23
**type [1]** 27/9
**typically [4]** 6/14 130/8 142/18 168/9

**U**

**U.S [1]** 158/1
**U.S.C [2]** 205/5 205/11
**ultimate [3]** 53/25 73/17 173/1
**ultimately [14]** 71/25 86/19 87/9 88/16 88/22 99/21 99/25 100/1 100/13 116/15 141/8 174/10 212/15 216/17
**unabashed [1]** 219/24
**unaware [1]** 161/10
**unbiased [1]** 220/1
**uncertainty [1]** 98/4
**unclear [1]** 150/4
**under [42]** 9/6 10/1 16/24 17/20 19/3 35/12 36/7 41/7 41/25 42/6 43/14 68/15 105/25 112/23 121/20 124/9 132/25 133/1 133/8 138/5 139/9 139/25 140/24 141/19 142/2 142/10 143/25 145/19 147/9 148/8 149/25 150/15 152/23 171/11 178/8 205/4 205/6 206/2 207/19 215/5 221/17 224/18
**underlined [1]** 31/18
**underlying [16]** 7/21 8/8 14/5 15/18 16/6 16/10 17/6 20/21 37/4 135/13 144/15 162/10 170/1 186/10 218/3 218/5
**undersigned [1]** 226/12
**understand [56]** 22/12 22/15 24/2 26/15 27/25 29/9 30/20 31/14 31/22 32/1 32/6 34/1 35/4 35/8 35/21 38/11 38/22 47/21 49/18 54/20 60/18 62/21 63/9 66/15 69/13 69/23 70/2 78/17 94/24 95/20 100/6 100/20 105/7 113/7 116/5 116/18 120/11 127/11 151/18 151/22 152/21 154/15 164/18 166/13 172/25 176/13 178/21 194/24 196/5 203/22 204/14 204/18 211/2 216/21 219/16 222/5
**understanding [26]** 25/18 25/23 47/24 50/17 52/11 52/19 77/6 93/15 94/17 99/12 103/17 118/14 118/15 118/19 119/6 128/23 141/4 147/2 147/7 147/8 148/6 148/16 149/1 149/12 151/25 180/4
**understood [9]** 13/5 36/13 37/7 38/3 39/13 77/11 98/7 113/11 118/10
**undertake [1]** 63/12
**undertaken [2]** 121/17 121/23
**undertook [1]** 181/12
**undone [1]** 221/4
**unending [1]** 213/15
**unique [10]** 43/22 45/3 46/9 104/25 105/19 106/3 106/6 107/23 130/18 181/24
**UNITED [8]** 1/1 1/1 1/4 10/5 226/1 226/7 226/9 226/14
**unlawful [1]** 126/14
**unless [6]** 52/7 106/15 112/5 137/1

138/12 211/12
**unnecessary [1]** 49/9
**unprecedented [1]** 211/20
**unproductive [1]** 211/18
**unquote [1]** 213/4
**unreasonably [1]** 219/19
**unsolicited [1]** 211/17
**unsuccessful [2]** 112/8 121/22
**untenable [2]** 177/8 209/21
**until [6]** 12/21 55/9 74/21 105/15 117/12 206/9
**unusual [2]** 143/3 216/4
**up [35]** 5/17 41/21 43/20 50/3 51/8 55/8 74/21 74/24 79/13 96/3 101/2 103/2 111/3 112/6 113/18 114/19 123/12 126/4 139/6 143/22 149/11 154/11 174/22 186/20 191/12 199/4 200/23 201/1 201/23 206/4 206/7 206/18 207/3 211/24 211/25
**updated [1]** 79/10
**upheld [1]** 209/2
**upon [12]** 6/3 6/15 11/24 12/21 87/1 108/21 115/19 123/25 130/16 215/14 220/12 222/14
**upset [5]** 51/2 65/25 66/4 66/4 66/6
**upsets [3]** 49/14 50/19 53/12
**upsetting [3]** 34/6 48/24 50/2
**us [22]** 4/10 4/17 39/6 40/17 40/20 44/18 64/6 64/7 80/18 89/3 90/2 95/12 121/6 135/7 158/21 178/17 183/9 187/12 199/21 203/1 214/7 216/11
**use [6]** 29/17 29/22 30/17 100/21 143/4 143/17
**used [10]** 8/19 27/7 30/25 36/9 44/9 99/10 100/13 133/9 173/11 199/16
**using [4]** 72/22 88/9 110/18 115/20
**usually [7]** 26/2 130/6 142/16 142/17 178/19 189/8 216/11
**usurp [1]** 121/14

**V**

**valid [1]** 212/17
**value [2]** 95/24 206/4 206/5
**variety [2]** 24/7 135/5
**various [6]** 101/22 105/7 112/8 121/3 157/12 173/20
**vast [1]** 7/13
**vehicle [2]** 100/22 123/23
**verdict [1]** 123/22
**verification [2]** 35/10 35/18
**verified [15]** 9/20 10/3 10/8 10/13 10/23 35/6 35/14 35/17 35/24 36/3 36/6 36/19 38/19 44/22 135/1
**versus [26]** 4/4 9/24 10/5 47/4 47/9 69/12 89/4 95/21 114/11 115/3 152/12 157/25 158/8 158/13 158/17 158/22 161/15 161/21 161/25 178/3 183/21 186/11 195/19 198/24 200/17 208/24
**very [28]** 13/20 26/12 27/5 31/17 33/25 70/23 74/19 76/22 78/3 78/16 81/8 107/14 114/8 123/19 131/1 136/5 144/25 149/10 149/11 157/4 157/12 204/15 206/14 207/6 208/22 211/3 218/6 218/7
**via [3]** 86/20 102/1 216/24
**viable [2]** 96/12 96/13
**vice [10]** 4/10 6/7 157/3 157/12 157/13

157/24 158/25 159/3 160/1 161/16
**view [1]** 116/19
**violation [3]** 18/2 126/15 207/20
**violations [2]** 143/2 143/4
**virtue [1]** 118/6
**visits [1]** 105/7
**voice [2]** 76/21 77/25
**Volume [1]** 102/6
**voluntarily [1]** 140/8

**W**

**waiting [2]** 105/6 215/4
**waits [1]** 200/21
**waive [1]** 185/7
**waiver [12]** 42/5 42/18 105/25 106/11 106/19 180/25 181/2 181/3 182/15 197/17 198/2 198/5
**walked [1]** 87/14
**walking [1]** 151/13
**wall [4]** 139/15 143/12 143/14 174/25
**walled [5]** 17/19 128/20 138/2 175/22 194/21
**walling [1]** 179/22
**Wanca [68]** 21/23 23/13 25/9 31/13 32/19 39/12 39/13 39/14 39/14 39/16 49/4 49/12 50/22 51/24 52/3 52/12 55/1 55/12 55/24 57/10 59/17 71/12 71/19 76/14 77/7 79/7 85/24 98/6 98/12 98/13 98/16 110/2 110/16 111/4 111/6 114/18 114/19 114/24 115/10 115/23 116/1 116/14 116/24 118/14 118/15 118/19 118/22 119/9 125/1 155/11 162/6 162/13 164/19 166/19 169/3 176/14 176/17 176/21 177/13 178/4 178/15 178/22 178/23 180/22 200/5 200/18 201/1 215/6
**Wanca's [8]** 54/21 55/19 56/17 59/4 60/5 99/15 115/12 198/20
**want [51]** 15/16 26/7 26/9 26/9 26/14 35/21 36/11 36/12 36/13 36/22 37/12 37/23 38/22 39/9 45/20 47/6 50/15 53/9 59/6 78/16 103/20 104/8 104/10 105/13 107/14 111/2 111/3 111/5 111/16 112/14 113/23 116/2 116/5 117/21 132/12 132/17 152/7 168/14 176/12 199/6 200/9 202/13 202/23 207/4 207/12 208/10 215/13 221/18 222/13 223/1 223/12
**wanted [8]** 13/15 42/17 47/1 56/10 174/21 175/11 190/15 202/7
**wants [4]** 127/15 178/13 211/13 211/13
**war [2]** 16/11 140/5
**warranted [1]** 124/9
**was [418]**
**Washington [1]** 100/12
**wasn't [19]** 39/12 82/12 92/6 101/14 103/10 103/19 104/13 107/6 109/5 128/17 140/2 140/6 175/10 181/8 188/18 199/7 216/14 216/22 223/22
**waste [1]** 135/9
**wasting [1]** 187/21
**way [28]** 6/18 21/1 27/15 54/1 60/18 63/8 65/20 92/19 93/13 94/14 104/12 128/21 127/3 133/17 142/20 147/5 176/11 201/3 203/14 208/15 210/3

**way... [7]** 211/9 213/11 216/6 218/12 219/21 223/14 223/15
**Wayne [2]** 79/2 189/25
**ways [5]** 67/2 120/22 135/5 135/15 165/14
**we [182]** 4/3 4/15 4/19 6/10 6/18 6/25 7/21 9/8 9/12 9/12 9/21 9/22 10/12 10/16 11/4 11/17 11/20 11/20 11/25 12/2 12/6 12/11 12/14 13/9 13/17 16/3 16/9 17/9 18/9 19/15 20/3 21/14 21/14 26/21 31/12 32/20 34/19 35/2 37/24 38/7 41/4 41/5 41/6 43/9 43/14 43/23 44/23 45/5 45/8 46/7 47/9 48/5 52/20 54/17 54/18 55/13 68/4 71/1 71/19 72/6 72/14 74/23 75/7 75/11 77/13 77/24 77/24 78/16 79/16 80/5 83/19 86/7 86/13 86/14 87/25 88/2 88/9 88/20 91/20 91/23 99/17 100/3 100/13 100/17 100/24 105/6 105/15 105/23 106/3 106/8 113/5 115/19 116/2 116/3 116/12 116/14 117/10 122/8 123/9 123/16 123/25 124/1 124/3 124/3 124/8 126/24 128/6 128/7 128/8 129/6 129/12 132/2 132/4 132/14 134/14 136/15 137/10 138/17 138/20 142/10 142/16 142/17 143/4 144/22 145/7 149/2 157/8 168/9 173/20 173/22 178/1 180/1 186/24 188/2 188/14 188/14 189/23 189/24 190/6 191/25 193/8 198/22 199/24 201/2 201/11 202/2 202/24 203/8 203/8 203/11 205/11 206/7 206/17 207/11 208/9 209/23 209/25 210/2 210/2 210/6 213/5 214/4 214/10 215/14 216/23 216/24 217/2 217/14 219/7 219/7 219/17 220/19 221/13 221/15 221/20 221/24 222/9 222/12 223/23 224/17 225/1 225/3
**we'd [5]** 7/1 7/11 8/16 81/23 207/4
**we'll [14]** 5/16 11/5 37/10 38/11 46/6 117/11 136/16 144/22 161/14 165/12 206/9 206/15 207/6 220/20
**we're [32]** 14/1 14/2 14/3 15/18 17/1 17/3 17/7 35/7 41/17 42/5 42/10 45/11 46/16 102/25 107/14 109/7 109/7 109/8 116/3 118/9 123/10 129/9 140/20 144/3 172/9 179/4 183/10 196/20 216/18 217/12 219/23 220/17
**we've [4]** 91/8 125/20 211/21 217/11
**website [2]** 84/9 84/15
**Wednesday [4]** 82/17 87/12 88/19 89/18
**week [3]** 116/16 195/4 195/4
**weekly [1]** 10/6
**weeks [5]** 87/14 135/22 135/22 140/10 216/12
**weighed [1]** 178/12
**welcome [1]** 160/25
**well [76]** 4/24 49/9 49/22 69/17 70/23 70/25 71/8 71/18 73/6 73/16 73/19 74/23 75/13 76/13 77/23 80/13 81/6 81/8 82/16 82/25 84/7 84/10 86/6 86/13 87/11 87/25 90/13 91/15 92/16 94/6 94/13 94/14 96/15 97/23 100/9 100/24 101/9 103/8 111/24 118/2 118/21 119/24 120/25 122/7 131/16

134/22 137/24 138/19 142/23 143/3 144/2 144/3 146/5 147/21 150/5 152/16 164/3 164/10 165/6 167/21 172/3 173/4 174/5 176/15 177/7 179/25 182/18 183/21 191/25 192/25 196/14 201/10 209/13 211/10 211/17 213/14
**well-recognized [1]** 177/7
**Wellcare [4]** 57/2 57/3 57/21 58/2
**went [12]** 75/5 80/1 80/8 84/14 87/12 87/25 108/13 109/2 176/21 182/14 182/15 189/16
**were [148]** 8/13 21/24 21/25 22/4 23/1 23/16 24/8 25/3 27/12 28/7 28/14 28/17 29/3 31/12 32/2 32/7 32/11 32/14 36/10 40/19 45/23 47/15 47/18 47/24 48/19 50/21 50/22 50/23 53/2 53/2 53/4 54/1 55/18 56/14 60/1 64/19 65/24 70/9 70/16 70/22 71/10 71/18 73/3 73/10 75/4 75/9 77/3 79/16 79/24 80/1 80/10 80/11 84/10 85/7 87/16 87/20 90/13 92/23 93/9 94/5 94/22 94/23 96/3 97/10 97/13 98/4 98/20 99/5 99/5 99/8 100/17 101/6 101/7 102/15 103/5 103/5 104/17 105/4 105/6 105/8 106/23 107/1 109/2 111/19 111/25 114/6 117/14 120/14 120/16 121/12 127/6 127/7 133/15 134/22 139/14 146/8 146/12 146/15 146/17 146/21 150/24 152/8 152/11 152/14 155/14 156/1 157/24 158/6 161/16 162/7 162/17 162/18 162/21 162/24 163/1 163/3 163/6 165/16 166/19 167/24 167/25 168/4 173/7 174/10 174/11 180/16 180/21 182/24 184/3 184/7 184/14 187/8 188/14 189/23 189/24 192/6 202/6 203/17 209/4 215/14 216/23 216/25 217/17 220/25 224/21 225/3 225/5 225/7
**weren't [6]** 13/16 28/14 80/5 80/6 155/4 164/11
**West [1]** 220/8
**what [186]** 5/21 9/7 14/12 17/17 20/5 20/14 21/3 21/8 21/9 21/17 21/22 22/4 22/15 23/1 23/24 24/2 24/17 27/5 30/6 31/9 31/22 32/16 32/18 33/25 34/15 36/5 36/10 36/16 37/13 39/2 39/2 39/7 39/17 40/5 40/17 40/19 40/20 41/12 43/3 43/12 43/24 44/15 44/20 44/24 45/13 45/14 47/1 47/9 50/5 50/5 50/9 51/9 51/12 51/15 51/25 52/17 53/2 55/10 56/22 58/23 59/3 59/14 59/15 62/5 62/20 63/19 66/15 66/17 69/2 70/24 71/10 71/16 72/17 73/3 74/19 74/20 77/12 77/21 77/22 79/8 81/13 82/14 83/1 83/12 84/5 84/24 85/18 86/4 87/11 87/23 90/2 90/8 91/25 92/10 92/18 94/17 95/19 98/4 98/7 100/20 103/11 103/22 104/11 104/22 105/10 105/11 105/14 107/10 108/13 108/25 111/3 112/7 112/20 113/15 113/23 115/13 115/14 116/19 116/23 119/23 119/24 121/19 122/5 124/12 125/14 125/16 126/1 126/25 128/2 138/3 143/25 147/6 147/7 151/15 152/22 152/24 153/1 153/13 153/14 154/10 154/20 156/20 158/5 158/11

160/24 162/18 168/7 172/9 173/14 181/10 183/1 189/8 193/4 196/15 198/22 200/9 200/14 201/6 201/9 202/10 204/10 206/7 206/10 206/12 206/14 206/22 206/24 207/2 210/2 210/6 210/22 211/21 214/23 215/15 215/20 217/16 217/22 217/24 219/19 221/1 221/20
**what's [11]** 30/2 34/14 65/6 78/8 78/13 86/7 95/23 168/22 212/2 219/22 224/22
**whatever [9]** 22/17 59/17 92/21 97/4 167/10 175/8 180/1 191/21 217/3
**whatsoever [5]** 102/17 125/6 126/10 203/19 214/19
**wheels [1]** 214/24
**when [85]** 14/8 18/1 20/24 21/5 21/17 21/24 21/25 25/2 26/17 26/24 27/1 28/2 30/9 30/17 31/7 31/9 33/1 38/10 43/17 45/23 47/13 48/20 51/22 51/24 57/9 57/17 58/4 59/19 65/18 69/9 69/15 71/10 72/4 78/23 84/20 86/1 86/24 87/14 89/6 89/15 98/5 100/1 102/20 102/21 102/24 114/3 116/13 119/5 127/2 131/5 136/14 136/20 138/9 146/12 147/18 151/6 152/19 159/19 160/5 162/14 164/24 165/2 165/8 166/19 172/13 180/22 183/2 185/19 188/14 188/14 188/16 190/8 191/16 199/5 202/6 205/9 208/16 209/23 211/4 213/19 213/21 213/24 214/4 216/6 219/20
**where [53]** 10/1 15/11 16/10 16/11 16/12 16/13 16/17 16/18 19/21 20/17 25/5 26/20 28/5 41/16 43/18 44/22 45/7 47/14 48/21 49/5 64/2 65/9 78/9 80/25 86/25 92/1 95/23 99/3 99/13 101/19 105/6 115/15 118/5 123/25 126/6 126/14 127/4 132/24 139/13 143/20 160/15 174/16 176/25 179/4 189/18 191/12 200/21 209/1 209/2 209/23 211/22 222/9 223/22
**wherefore [1]** 196/24
**Whereupon [2]** 117/13 225/5
**whether [36]** 17/18 28/22 43/5 51/10 51/12 52/3 53/20 59/13 64/20 64/25 65/24 96/8 106/4 128/16 137/22 153/10 153/15 157/15 157/21 162/19 162/21 162/23 163/6 164/1 165/2 165/8 165/9 165/15 165/19 173/2 182/24 186/21 196/3 199/14 206/19 218/20
**which [78]** 7/15 8/16 8/19 10/7 11/24 15/6 15/10 29/16 35/12 35/24 36/24 38/1 38/1 38/16 43/6 54/4 57/1 61/23 72/1 72/23 85/18 96/18 97/22 98/2 98/10 98/20 100/7 117/14 117/24 120/22 123/10 124/19 125/4 128/1 130/7 131/4 132/25 133/25 134/3 134/3 134/7 135/4 135/9 136/24 137/8 139/14 139/17 144/25 152/9 152/25 161/9 161/13 163/2 163/5 163/12 163/13 166/7 167/5 173/6 176/17 178/3 189/13 197/3 201/3 203/7 203/18 204/1 205/18 205/18 212/9 212/10 214/11 215/5 216/3 217/12

**W**

**which...** [3]  218/10 219/14 225/7
**while** [9]  138/7 142/15 164/19 175/22
176/20 200/20 205/4 214/1 220/10
**who** [85]  11/12 12/3 12/19 13/7 13/11
16/12 16/14 16/23 19/8 21/5 22/21
24/14 25/7 25/10 25/14 25/18 25/22
26/24 27/1 28/19 30/13 30/24 31/3
39/11 59/7 59/9 70/22 71/4 71/5 71/10
71/20 72/19 76/3 76/10 76/21 79/1
79/4 79/19 81/5 85/7 94/10 94/12
97/15 99/19 106/23 110/13 110/13
118/24 118/25 121/14 125/9 129/17
130/9 134/21 135/20 136/21 137/5
137/6 141/7 142/10 144/4 146/15
148/9 148/10 152/17 166/2 166/17
169/16 169/20 170/2 172/8 173/25
174/20 182/2 184/3 185/3 188/14
199/20 206/3 207/7 208/13 212/20
212/24 215/4 217/11
**who's** [10]  4/19 11/18 118/13 149/2
153/12 169/23 174/15 179/11 212/22
223/24
**whole** [12]  22/18 31/20 46/1 46/2
50/13 52/11 54/2 61/1 139/6 181/23
183/10 199/17
**whom** [4]  11/20 19/19 71/22 175/3
**whose** [2]  147/11 173/1
**why** [25]  6/20 31/11 34/12 50/1 50/3
51/6 55/3 55/4 71/11 106/16 124/16
130/12 132/4 141/2 143/14 143/14
143/15 149/8 154/8 174/25 178/17
201/8 215/13 219/11 221/24
**WI** [1]  2/11
**wide** [2]  121/2 147/1
**wife** [2]  30/12 75/17
**will** [54]  5/10 6/6 6/22 7/12 12/3 12/4
12/6 12/11 12/19 18/2 29/23 37/2
44/10 52/3 52/7 61/13 62/2 79/21
95/16 98/10 109/22 110/15 113/9
124/13 128/11 128/23 129/18 132/5
141/8 141/10 141/15 141/16 142/7
143/23 152/21 175/18 201/23 202/22
202/24 205/20 206/3 206/4 206/8
206/17 206/18 207/20 210/25 215/9
217/4 217/13 220/5 220/19 224/6
224/17
**Williams** [4]  19/20 30/10 30/10 30/13
**willing** [1]  42/19
**willingness** [1]  53/5
**win** [1]  179/4
**Wines** [1]  158/1
**wins** [1]  52/16
**wish** [10]  11/8 16/22 92/3 131/22
131/23 132/1 203/11 203/24 204/1
204/19
**withdraw** [2]  150/14 150/17
**withdrawn** [1]  120/12
**withhold** [1]  105/15
**within** [9]  59/3 107/8 108/24 120/17
125/23 126/2 129/5 148/5 216/12
**without** [18]  5/2 112/16 112/16 112/17
112/17 112/18 113/23 113/24 122/18
128/15 133/21 137/8 139/5 176/23
176/24 188/4 210/18 220/18
**witness** [31]  13/20 18/8 18/12 19/2
24/22 36/24 44/4 51/17 68/3 68/6

68/14 102/3 113/7 123/9 124/15 125/9
125/14 146/6 148/17 149/23 150/1
150/5 153/6 153/6 165/5 165/11
170/23 171/1 171/10 185/10 204/24
**witnesses** [19]  3/3 3/11 9/23 11/12
12/18 12/24 13/7 13/11 13/16 13/18
38/9 41/20 123/6 123/15 124/8 129/17
130/7 130/9 222/1
**won't** [1]  99/23
**wondering** [1]  44/15
**word** [1]  195/3
**words** [2]  86/23 222/10
**work** [23]  19/8 61/7 61/11 63/7 73/10
74/20 76/16 94/13 113/21 121/5 121/7
135/18 144/2 144/7 155/17 155/20
175/5 175/12 201/12 208/15 215/12
217/11 221/13
**worked** [11]  39/13 50/13 110/2 155/11
163/2 163/12 166/23 180/17 180/22
182/12 201/10
**working** [9]  34/9 45/18 116/14 175/14
175/15 175/21 176/18 180/20 212/10
**works** [1]  59/17
**worry** [1]  109/6
**worst** [1]  63/19
**worth** [1]  208/9
**would** [204]  5/7 7/21 9/13 9/23 10/16
11/17 11/23 11/24 11/25 15/16 15/23
17/12 22/16 22/17 23/23 25/25 27/7
28/11 29/5 29/19 35/17 39/19 41/10
42/23 43/9 44/8 44/11 44/16 45/8
46/18 48/5 51/2 51/4 52/16 52/25 54/4
59/14 59/15 59/16 63/6 63/10 63/11
63/16 63/18 63/20 66/5 66/18 71/9
72/8 77/24 78/5 78/9 86/25 88/2 89/9
89/10 92/13 92/16 92/20 92/22 93/6
93/10 93/16 96/19 96/21 101/10
102/15 102/19 103/6 103/9 104/19
104/20 105/18 106/3 106/11 107/18
107/19 107/21 107/24 108/3 108/22
109/6 111/20 111/23 112/3 112/3
112/12 116/16 116/18 116/21 117/1
117/5 118/2 118/3 120/3 120/7 120/11
120/11 120/18 123/13 124/3 124/8
124/11 125/12 126/19 127/8 128/7
128/7 128/8 128/14 130/15 130/15
131/7 131/8 133/2 133/16 133/17
133/23 133/25 135/4 135/24 138/10
139/1 139/6 140/4 140/7 140/17 143/4
143/11 143/19 145/25 149/20 150/1
151/8 155/1 159/4 159/8 159/12
159/13 159/23 160/4 160/16 161/5
162/5 163/19 163/23 165/25 167/5
167/10 167/13 167/18 167/20 167/21
168/5 168/19 170/25 171/16 173/25
174/3 175/4 175/14 175/25 179/23
179/25 184/20 184/22 185/15 187/14
187/16 191/23 192/3 197/3 197/21
197/24 198/2 202/7 202/8 202/16
206/11 206/25 210/18 211/18 212/18
213/20 214/24 215/1 215/12 215/15
215/15 217/1 217/2 217/14 217/15
217/17 218/9 218/13 219/1 220/14
221/12 222/1 222/2 222/20 223/9
223/25
**wouldn't** [11]  63/16 108/17 108/18
115/8 117/5 118/5 142/23 167/11

168/6 176/2 197/23
**writing** [2]  83/7 103/19
**written** [8]  27/16 41/12 56/17 57/13
58/23 119/18 119/19 224/18
**wrong** [8]  13/7 45/14 124/22 124/24
125/17 151/24 152/2 153/15

**Y**

**yeah** [19]  40/16 51/3 93/1 114/7
164/15 165/2 175/16 176/15 183/1
186/14 188/10 188/10 192/13 193/14
194/13 194/20 196/12 196/20 198/19
**year** [9]  21/17 116/17 137/16 151/14
184/10 196/18 196/19 215/8 217/9
**years** [9]  51/5 112/2 126/15 135/12
135/24 184/14 186/12 200/4 204/22
**yes** [206]  5/17 5/20 7/9 13/4 19/9 20/1
20/3 20/23 21/21 22/2 22/14 23/12
23/14 23/20 24/1 24/11 25/1 25/4
25/16 25/21 26/6 26/16 27/4 27/11
27/20 28/1 28/13 28/16 29/2 30/5
30/14 30/16 30/23 31/6 31/16 31/21
32/9 32/25 33/18 33/21 33/24 34/8
34/11 35/5 35/9 35/16 35/20 39/2
39/25 40/7 40/12 40/16 44/13 45/21
46/4 46/20 47/11 49/1 49/17 49/17
49/23 52/22 53/17 54/7 54/23 56/5
56/7 56/15 56/19 56/21 57/4 57/16
58/8 58/10 60/21 61/17 63/13 64/10
64/12 64/24 65/11 65/17 66/3 66/10
67/16 67/21 69/8 69/14 70/5 70/11
72/13 73/2 74/13 74/15 74/18 75/22
75/25 77/2 77/6 77/20 78/22 80/22
81/12 81/22 83/11 83/18 84/24 85/16
88/19 88/24 91/10 93/15 94/11 98/15
99/2 101/21 105/22 109/18 109/21
114/12 114/15 115/4 118/8 119/14
119/17 119/20 121/18 121/25 122/20
127/10 141/10 147/21 149/6 149/21
151/21 151/25 155/13 155/19 155/22
155/25 156/4 158/3 158/20 159/1
160/13 162/4 162/8 162/22 162/23
163/3 163/5 165/21 167/1 167/4 167/7
167/9 167/12 167/15 167/17 167/21
168/9 169/8 169/13 171/21 171/24
172/3 174/9 177/21 179/8 180/8
180/23 182/13 183/16 183/18 184/1
184/6 184/9 184/12 184/16 184/19
185/22 186/9 186/9 187/3 187/6 188/7
190/22 191/2 192/9 192/12 192/19
192/22 192/25 193/17 193/21 195/23
195/24 196/23 197/19 197/22 200/8
200/13 201/21 202/1 202/11 221/10
**yesterday** [1]  83/15
**yet** [6]  5/16 47/23 48/2 62/1 203/19
216/18
**you** [884]
**you'd** [5]  29/17 65/24 160/25 168/19
191/9
**you'll** [5]  16/8 38/9 62/12 81/7 123/12
**you're** [49]  14/24 20/5 30/11 33/15
37/17 38/6 39/10 44/3 45/15 45/16
45/18 48/24 49/2 50/24 51/14 53/8
54/4 59/20 62/16 62/23 63/19 68/20
84/23 100/20 101/18 113/15 114/1
123/6 144/18 149/22 153/24 154/23

**Y**

**you're... [17]**  156/3 156/5 156/8
156/20 159/15 159/19 160/25 164/8
168/16 176/18 177/24 178/19 178/21
186/17 193/6 195/18 209/13
**you've [14]**  5/9 5/15 22/20 24/7 61/11
75/6 98/8 151/18 153/1 156/22 172/14
181/15 191/18 204/1
**your [284]**
**yourself [2]**  40/23 65/20
**yourselves [1]**  4/6

**Z**

**Z-A-K-R-Z-E-W-S-K-I [1]**  18/16
**Zakrzewki [1]**  91/18
**Zakrzewski [55]**  4/12 18/9 18/15 19/7
19/11 22/24 26/9 30/2 30/15 33/15
34/20 41/12 41/20 44/5 48/7 48/19
54/15 57/22 64/19 67/5 75/15 75/23
76/1 76/4 77/8 91/16 91/17 91/19
91/19 91/22 92/13 101/5 102/7 102/16
103/18 103/24 104/16 104/16 104/19
104/24 105/9 105/18 107/16 107/23
109/14 109/15 110/10 126/20 136/4
145/24 146/3 146/18 147/3 147/13
147/13
**ZAKZREWSKI [2]**  3/4 19/1
**Zephyr [2]**  20/4 30/8
**zero [1]**  131/8
**Zurich [1]**  115/3