UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHNOLOGY TRAINING ASSOCIATES,
INC., *et al.*,

        Plaintiffs,

v.                                                                                           Case No. 8:16-cv-1622-T-AEP

BUCCANEERS LIMITED PARTNERSHIP,

        Defendant.

_____/

## **ORDER**

      This case stems from the decision by the Buccaneers Limited Partnership ("BLP") to

send facsimile advertisements for tickets to the Tampa Bay Buccaneers games in 2009 and

2010. A decision that may have seemed innocuous at the time but which since spawned no less

than five separate but related lawsuits.[1]  In the instant action, Technology Training Associate,

Inc. ("TTA") and Larry E. Schwanke, D.C. d/b/a Back to Basics Family Chiropractic

("Schwanke") (collectively, "Plaintiffs") filed a Class Action Complaint against BLP on behalf

of themselves and a putative class after the parties reached a settlement as to the claims of the

putative class regarding unsolicited facsimile advertisements sent by or on behalf of BLP in

2009 and 2010 that purportedly failed to comply with the requirements of the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and its implementing regulations.

Currently before the Court for consideration are Cin-Q Automobiles, Inc.'s ("Cin-Q") and

---

[1]  Only four of the five cases of which the Court is aware are discussed at length
herein. The other case, *Jeffrey M. Stein, D.D.S.; M.S.D.; P.A., et al. v. Buccaneers Ltd.
P'ship*, Case No. 8:13-cv-2136-T-AEP (M.D. Fla. filed Aug. 16, 2013) ("*Stein Action*"),
involves yet another instance where the parties filed a class action complaint for a violation of
the Telephone Consumer Protection Act relating to faxes sent by BLP. The *Stein Action*
remains pending but does not bear upon the outcome of the motions in the instant action.

Medical and Chiropractic Clinic, Inc.'s ("M&C") (collectively, "*Cin-Q* Plaintiffs") Motion to Transfer Related Case under Local Rule 1.04(b), to Consolidate Cases, and Appoint Interim Class Counsel (Doc. 8); Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class (Doc. 18); and *Cin-Q* Plaintiffs' Motion to Intervene (Doc. 28).  For the reasons set forth below, Plaintiffs' request for preliminary approval of the class, settlement, and notice to the class is granted, while all of the relief requested by *Cin-Q* Plaintiffs is denied.

## I.       Background

### A.       *Cin-Q Action*

In June 2013, Cin-Q initiated an action against BLP, alleging that BLP sent unsolicited advertisements via facsimile to Cin-Q in violation of the TCPA and its implementing regulations.  *See Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*, Case No. 8:13-cv-1592-T-AEP (M.D. Fla. filed June 18, 2013) ("*Cin-Q Action*") (Doc. 1).  The faxed advertisements pertained to Tampa Bay Buccaneers tickets and were allegedly sent by or on behalf of BLP in 2009 and 2010.  In January 2014, the Court allowed Cin-Q to file a Second Amended Class Action Complaint adding M&C as another named plaintiff and putative class representative. *Cin-Q Action*, (Doc. 68).  The Second Amended Class Action Complaint in the *Cin-Q Action* defined the putative class as follows:

> All persons from July 1, 2009, to present who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt out language required by 47 C.F.R. 64.1200.

*See Cin-Q Action*, (Doc. 37, Ex. 1, at 5).

During the course of the proceedings in the *Cin-Q Action*, the parties engaged in extensive discovery, motion practice, and mediation conferences, with no resolution, over the course of three years.  On March 25, 2016, after surviving BLP's motions to dismiss and for

2

summary judgment, *Cin-Q* Plaintiffs filed their Motion for Class Certification.  *Cin-Q Action*, (Doc. 207).  BLP received extensions to file its response to the Motion for Class Certification, during which the parties continued to leave settlement discussions open.  On May 2, 2016, however, at the request of *Cin-Q* Plaintiffs, the mediator declared an impasse.  *Cin-Q Action*, (Doc. 218).

## B.     *Technology Training I Action*

After the settlement discussions in the *Cin-Q Action* reached an impasse, and while the motion for class certification was still pending in the *Cin-Q Action*, TTA contacted BLP regarding pursuit of the same class claims on behalf of the same purported class at issue in the *Cin-Q Action*.  Subsequently, on May 6, 2016, TTA initiated an action against BLP in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, alleging violations of the TCPA on behalf of the same class as the *Cin-Q Action* regarding the same facsimile advertisements.  *See Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, No. 16-CA-4333 (Fla. Cir. Ct.) (filed May 6, 2016) ("*Technology Training I Action*") (Doc. 1). TTA similarly sought damages and injunctive relief under the TCPA both on behalf of itself and a proposed class of similarly situated persons.  Upon becoming aware of the pending *Technology Training I Action*, *Cin-Q* Plaintiffs sought to enjoin BLP from proceeding in the *Technology Training I Action* and moved for an order immediately certifying the class in the *Cin-Q Action* rather than in any other action.  *Cin-Q Action*, (Docs. 223 & 224).  *Cin-Q* Plaintiffs also moved the state court on May 13, 2016, to allow them to intervene in, to dismiss, or to stay the *Technology Training I Action*.  The state court set the motion for a hearing to occur on May 19, 2016, but, prior to the state court's consideration of Cin-Q's motion, TTA voluntarily dismissed the *Technology Training I Action* on May 18, 2016.

Shortly thereafter, and given the existence of the claims by TTA, the undersigned conducted a status conference in the *Cin-Q Action* on May 25, 2016 to address multiple motions filed by the parties in that action, including BLP's motion for settlement conference, *Cin-Q* Plaintiffs' motion to enjoin BLP from participating in a competing case, and BLP's motion for a determination that the mediation privilege had been waived.  *Cin-Q Action*, (Docs. 215, 223, 231).  After hearing oral argument regarding the motions and the status of the *Technology Training I Action*, the undersigned denied all three motions and directed *Cin-Q* Plaintiffs and BLP to conduct another mediation conference prior to BLP's deadline for filing a response to the motion for class certification in the *Cin-Q Action* on June 20, 2016.  *Cin-Q Action*, (Doc. 233).  During the hearing, the undersigned further directed that, if BLP entered into a settlement affecting class certification in the *Cin-Q Action*, BLP must notify *Cin-Q* Plaintiffs of the potential settlement in any separate action three days prior to the filing of any settlement or pleading relating to a settlement.

### C.    *Technology Training II Action*

Following dismissal of the *Technology Training I Action*, TTA and BLP conducted two full days of mediation, which resulted in an agreement on a class settlement (the "Settlement") on June 16, 2016.  Upon reaching the Settlement with TTA, BLP provided written notice to *Cin-Q* Plaintiffs of the Settlement in accordance with the undersigned's directive at the May 25, 2016 hearing.  Subsequently, Plaintiffs initiated the instant action ("*Technology Training II Action*") on June 20, 2016 (Doc. 1).  Plaintiffs filed their Class Action Complaint on behalf of themselves and a class of similarly situated individuals, alleging claims for violations of the TCPA, conversion, and invasion of privacy.  Essentially, Plaintiffs alleged that BLP violated the TCPA by sending unsolicited advertisements by facsimile in 2009 or 2010 offering tickets

4

to Tampa Bay Buccaneers games, while failing to provide the proper opt-out notice required

by the TCPA.  In doing so, Plaintiffs defined the similarly situated members of the class as:

> All persons who, in 2009 or 2010, received one or more facsimile advertisements
> sent by or on behalf of BLP and offering tickets for Tampa Bay Buccaneers
> games.

(Doc. 1, at 4).  Specifically excluded from the Settlement Class are the following Persons:  (1)

BLP and its respective parents, subsidiaries, divisions, affiliates, associated entities, business

units, predecessors in interest, successors, successors in interest and representatives and each

of their respective immediate family members; (2) Class Counsel; and (3) the judges who have

presided over the Litigation and any related cases (Doc. 1, at 4).  As for the relief requested,

Plaintiffs sought statutory damages, treble damages, injunctive relief, costs and attorney's fees.

On the same day, *Cin-Q* Plaintiffs filed a Motion to Transfer Related Case under Local

Rule 1.04(b), to Consolidate Cases, and Appoint Interim Class Counsel seeking to (1) transfer

the *Technology Training II Action* to the undersigned pursuant to Local Rule 1.04(b); (2) to

consolidate the *Cin-Q Action* with the *Technology Training II Action* following transfer; and

(3) appoint the law firms of Addison & Howard, P.A. ("Addison"), and Anderson + Wanca as

interim co-lead counsel for the class (Doc. 8).  Additionally, on that day, *Cin-Q* Plaintiffs filed

an identical Motion to Transfer Related Case under Local Rule 1.04(b), to Consolidate Cases,

and Appoint Interim Class Counsel in the *Cin-Q Action* seeking the same relief, while BLP

filed a Motion for a Stay or, in the Alternative, an Extension of Time in the *Cin-Q Action*

seeking a stay of the *Cin-Q Action* or, alternatively, an extension of time to respond to the *Cin-

Q Action* motion for class certification.  *Cin-Q Action*, (Docs. 236 & 237).  Subsequently, on

June 22, 2016, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class

Action Settlement and Notice to the Class (Doc. 18).  Pursuant to Rule 23(e), Plaintiffs request,

on behalf of themselves and a proposed settlement class of similarly situated persons (the

"Settlement Class"), that the Court enter an order (1) preliminarily approving the parties' proposed class action settlement agreement (the "Settlement Agreement") that appoints Plaintiffs as class representatives and their attorneys as class counsel; (2) approving the form of Class Notice attached to the Settlement Agreement and its dissemination to the Settlement Class by U.S. mail, website, and publication; and (3) set dates for opt-outs, objections, and a fairness hearing (Doc. 18).

Thereafter, on June 27, 2016, the undersigned conducted a status conference in the *Cin-Q Action* and the *Technology Training II Action*. After hearing oral argument regarding the motions for class certification, to transfer, and to stay, pending in both actions, the undersigned granted BLP's request to stay the *Cin-Q Action*, stayed the *Cin-Q Action* pending further order of the Court, and permitted the parties in both the *Cin-Q Action* and the *Technology Training II Action* to file a supplemental memorandum regarding the appropriateness of conducting an inquiry into the allegations by *Cin-Q* Plaintiffs regarding the occurrence of a "reverse auction" in the *Technology Training II Action*. In accordance with the Court's directive, the parties briefed the issue of a "reverse auction" and the appropriateness of considering the issue prior to or after preliminary approval of class certification and the Settlement (Docs. 29-31).

### D.    *M&C Action*

Based on the initiation of the *Technology Training II Action*, M&C filed an action against David M. Oppenheim ("Oppenheim") and Bock Law Firm, LLC d/b/a Bock, Hatch, Lewis & Oppenheim, LLC ("Bock Hatch"), in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, on June 1, 2016, which Oppenheim and Bock Hatch then removed to federal court a week later. *See Med. & Chiropractic Clinic, Inc., v. Oppenheim, et al.*, Case No. 8:16-cv-1477-T-36TBM (M.D. Fla. filed June 8, 2016) ("*M&C Action*"). M&C asserted claims for (1) breach of fiduciary duty against Oppenheim and Bock Hatch and (2)

6

aiding and abetting breach of fiduciary duty against Bock Hatch.  *M&C Action*, (Doc. 2).

Essentially, M&C claimed that it had an interest in being named as class representative and

obtaining class certification for the proposed class after vigorously litigating the *Cin-Q Action*

for the past three years through fact discovery, class discovery, depositions, expert discovery,

dispositive motions, and mediation conferences.  *M&C Action*, (Doc. 2, at ¶¶14-15).  M&C

further alleged that, during the course of the proceedings in the *Cin-Q Action* through his

resignation from Anderson + Wanca on April 8, 2016, Oppenheim represented M&C as its

attorney in the *Cin-Q Action*, billing at least 80 hours on the matter; intimately involving himself

in the preparation, strategy, and participation in the two mediation conferences conducted in

the *Cin-Q Action*; completing multiple settlement negotiations in the *Cin-Q Action*; and

operating as the primary point of contact for Cin-Q and M&C with regard to the mediation

conferences in the *Cin-Q Action.  M&C Action*, (Doc. 2, at ¶¶17-23).  According to M&C,

Oppenheim became familiar with and received access to the case strategy, discovery, analysis,

and settlement strategy of Cin-Q, M&C, the purported class, and BLP, and was granted full

authority to settle on behalf of Cin-Q and M&C.  *M&C Action*, (Doc. 2, at ¶¶24-25).  M&C

alleges that Oppenheim prepared and submitted the mediation statements for both mediation

conferences held in the *Cin-Q Action*, represented Cin-Q and M&C at both mediation

conferences, and held discussions with Michele Zakrewski, President of M&C, both before and

after the mediation conferences *M&C Action*, (Doc. 2, at ¶¶26-8, 30-33, 35).  Even though the

parties to the *Cin-Q Action* did not reach a resolution during either of the first two mediation

conferences, M&C alleges that Oppenheim remained involved in the matter through continued

correspondence with the second mediator and other counsel for Cin-Q and M&C and continued

to receive access to purportedly privileged and confidential information regarding Cin-Q,

M&C, and the putative class.  *M&C Action*, (Doc. 2, at ¶¶37-40).  As a result of his involvement

in the *Cin-Q Action*, M&C asserted that Oppenheim acted as M&C's attorney and thus owed it ethical and fiduciary duties.  *M&C Action*, (Doc. 2, at ¶¶41-47).

In April 2016, shortly after the filing of the Motion for Class Certification Motion in the *Cin-Q Action*, Oppenheim resigned from Anderson + Wanca and joined Bock Hatch.  *M&C Action*, (Doc. 2, at ¶¶48-50).  Shortly thereafter, in May 2016, Bock Hatch filed the *Technology Training I Action* and then in June 2016 filed the *Technology Training II Action* asserting claims on behalf of the same putative class members identified in the *Cin-Q Action*, as discussed more fully above.  *See M&C Action*, (Doc 2, at ¶¶57-58).  Based on the foregoing, M&C alleged a claim for breach of fiduciary duty against Oppenheim, which it alleges is imputed to Bock Hatch, and a claim for aiding and abetting breach of fiduciary duty against Bock Hatch.  *M&C Action*, (Doc. 2, at ¶¶85-105).  Namely, M&C alleged that Oppenheim owed M&C an undivided duty of loyalty to represent M&C's interests and a duty not to represent a client with interests materially adverse to M&C, with such duties continuing after his resignation from Anderson + Wanca, which were then imputed to Bock Hatch.  *M&C Action*, (Doc. 2, at ¶¶87-94).  Further, M&C alleged that Bock Hatch aided and abetted the breach of fiduciary duty because Bock Hatch knew about Oppenheim's representation of M&C in the *Cin-Q Action*, and the attendant duties attached to such representation, and substantially assisted Oppenheim's breach of those duties.  *M&C Action*, (Doc. 2, at ¶¶99-102).

Following the filing of the Complaint and removal in the *M&C Action*, M&C filed its Amended Motion for Entry of Temporary Restraining Order and Preliminary Injunction seeking to enjoin Oppenheim and Bock Hatch from (1) representing any entity in a case alleging class-wide allegations substantially related to the *Cin-Q Action*; (2) representing TTA in any actions substantially related to the *Cin-Q Action*; (3) engaging in settlement negotiations with BLP, or reaching a settlement, in any matter substantially related to the *Cin-Q Action*; and (4)

using, disclosing, or relying upon confidential information Oppenheim gained while representing M&C, including information protected by the attorney-client privilege or mediation privilege. *M&C Action*, (Doc. 5). Upon consideration, United States District Judge Charlene E. Honeywell ("Judge Honeywell") denied the request for a temporary restraining order but reserved ruling on the request for a preliminary injunction. *M&C Action*, (Doc. 41).

After conducting an evidentiary hearing in July 2016 regarding the request for a preliminary injunction, Judge Honeywell denied M&C's motion for preliminary injunction in October 2016. *M&C Action*, (Doc. 71). In doing so, Judge Honeywell determined that M&C could not establish a substantial likelihood of success on the merits of either its breach of fiduciary duty claim or its aiding and abetting claim, could not establish a threat of irreparable harm, could not establish that any threatened injury to M&C outweighed the harm an injunction would cause Oppenheim or Bock Hatch, and could not establish that an injunction would serve the public interest. *M&C Action*, (Doc. 71, at 5-15). Namely, Judge Honeywell concluded that Oppenheim had a fiduciary duty to the entire class, including M&C, but it was questionable whether M&C could demonstrate the existence of a special fiduciary duty to M&C different from the fiduciary duty owed to all class members. *M&C Action*, (Doc. 71, at 7). Judge Honeywell further found, since neither Oppenheim nor Bock Hatch are pursuing relief for the class that is "materially adverse" to the interests of the other class members, including M&C, that M&C was unlikely to establish a breach of any duty owed by Oppenheim. *M&C Action*, (Doc. 71, at 9). Then, Judge Honeywell determined that M&C failed to demonstrate irreparable harm because, among other things, any issue related to an alleged "reverse auction" could be remedied through the normal course of litigation, namely, the approval process of the settlement. *M&C Action*, (Doc. 71, at 14). Given those findings, Judge Honeywell determined that the balance of harm weighed against entry of an injunction since M&C demonstrated no

irreparable harm it would suffer and that entry of an injunction would not serve the public interest as no materially adverse interest existed among the parties in the *M&C Action*, the *Cin-Q Action*, and the *Technology Training II Action*.  *M&C Action*, (Doc. 71, at 15).  The *M&C Action* remains ongoing concurrently with the *Technology Training II Action* and the *Cin-Q Action*, which remains stayed pending the undersigned's rulings on the instant motions.

Notably, though, given the issues raised during the pursuit of the preliminary injunction in the *M&C Action*, the undersigned conducted an independent evidentiary hearing in the *Technology Training II Action* in October 2016 to also consider any potential conflict of interest related to Oppenheim's participation in the *Cin-Q Action* on behalf of *Cin-Q* Plaintiffs and the proposed class given his subsequent departure from employment with Anderson + Wanca to employment with Bock Hatch, currently representing Plaintiffs in the *Technology Training II Action*.  Both Oppenheim and Bock provided testimony during the hearing.  Cin-Q and M&C were not permitted to participate in the evidentiary hearing in the *Technology Training II Action*, however.

## II.     Plaintiffs' Motion for Preliminary Approval of Class Settlement and Notice to the Class

Pursuant to Rule 23(e), Plaintiffs request on behalf of the Settlement Class that the Court enter an order (1) preliminarily approving the Agreement that appoints Plaintiffs as class representatives and their attorneys as class counsel; (2) approving the form of Class Notice attached to the Agreement and its dissemination to the Settlement Class by U.S. mail, website, and publication; and (3) set dates for opt-outs, objections, and a fairness hearing (Doc. 18).  District courts maintain broad discretion in determining whether to certify a class.  *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citation omitted).  Since the class action provides an exception to the general rule that litigation be conducted by and on behalf of the individual named parties only, to justify certification of a

class, a class representative must be a member of the class and possess the same interest and

suffer the same harm as the class members.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-

49 (2011) (citations omitted).  The advocate of the class thus carries the initial burden of proof

to establish the propriety of class certification.  *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d

1228, 1233 (11th Cir. 2000) (citation omitted), *cert denied*, *Zeirei Agudath Israel Bookstore v.*

*Avis Rent-A-Car System, Inc.*, 532 U.S. 919 (2001).

In determining whether class certification is appropriate, "Rule 23 establishes the legal

roadmap courts must follow."  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187

(11th Cir. 2003).  Namely, Rule 23(a) requires the moving party to demonstrate that:

> (1)   the class is so numerous that joinder of all members is impracticable;

> (2)   there are questions of law or fact common to the class;

> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).  "Failure to establish any one of these four factors and at least one

of the alternative requirements of Rule 23(b) precludes class certification."  *Valley Drug*, 350

F.3d at 1188 (citation omitted); *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th

Cir. 2011) ("To satisfy Rule 23, the putative class must meet each of the four requirements

specified in 23(a), as well as at least one of the three requirements set forth in 23(b)" (citation

omitted)).

Accordingly, if a court determines that the moving party established the numerosity,

commonality, typicality, and adequacy-of-representation requirements of Rule 23(a), the court

then determines whether the moving party established the requirements of one of three possible

categories under Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14

(1997); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citations omitted).

In this instance, Plaintiffs seek certification of the classes pursuant to Rule 23(b)(3).  Under

Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

In determining the propriety of a class action, the question is whether the moving party

meets the requirements of Rule 23, not whether the moving party states a cause of action or will

prevail on the merits.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation

omitted).  Though a district court should not reach the merits of a claim when considering the

propriety of class certification, "this principle should not be talismanically invoked to

artificially limit a trial court's examination of the factors necessary to a reasoned determination

of whether a plaintiff has met her burden of establishing each of the Rule 23 class action

requirements."  *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (internal citation and

omitted).  Instead, the district court can consider the merits of the moving party's claim at the

class certification stage to the degree necessary to determine whether the moving party satisfied

the requirements of Rule 23.  *Heffner v. Blue Cross and Blue Shield of Ala., Inc.*, 443 F.3d 1330,

1337 (11th Cir. 2006) (citations omitted); *see Dukes*, 564 U.S. at 350-51 (stating that

"sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, ... and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. ... Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.  The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action" (internal citations, internal quotations, and citations omitted)).

### A.    Standing

Prior to the certification of a class, and before undertaking any formal typicality or commonality review, "the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (noting that, to certify a class action, the named plaintiffs must have standing, and the putative class must meet all of the requirements of Rule 23(a) in addition to at least one of the requirements in Rule 23(b)).  Plaintiffs allege that they suffered harm because BLP's faxes caused the loss of paper and toner consumed in the printing of BLP's faxes, the faxes utilized Plaintiffs' fax machines such that Plaintiffs could not use the fax machines during that time, the faxes violated Plaintiffs' privacy interests in being left alone, and the faxes cost Plaintiffs' employees time receiving, reviewing, and routing BLP's faxes that would have otherwise been spent on Plaintiffs' business activities (*see* Doc. 1, at ¶45).  Such allegations establish a cognizable, particularized, and personal injury for purposes of Article III standing.  *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250-53 (11th Cir. 2015); *see JWD Auto. Inc. v. DJM Advisory Group LLC*, Case No. 2:15-cv-793-FtM-29MRM, 2016 WL 6835986, at *2 (M.D. Fla. Nov. 21, 2016) ("In other

words, in this Circuit, the successful transmission of even a single unsolicited fax causes an injury sufficiently concrete and particularized to confer standing under Article III to assert a TCPA claim."); *cf. C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 687 (S.D. Fla. 2014) (concluding that a plaintiff established Article III standing in a case involving TCPA violations where the plaintiff alleged that the defendants' conduct violated its legally protected interest under the TCPA); *cf. Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013) (concluding that a plaintiff established Article III standing in a case involving TCPA violations where the plaintiff alleged that the defendants' conduct violated the TCPA, since the statute confers on plaintiffs the right to be free from certain harassing and privacy-invading conduct and authorizes a statutory award of damages whenever a violation occurs).

Notwithstanding, *Cin-Q* Plaintiffs assert that Plaintiffs lack standing in this instance, because Plaintiffs' claims were filed after the statute of limitations applicable to the TCPA claims had run and that equitable tolling is inapplicable.  That argument is misplaced, however. Generally, as BLP asserts, the pendency of a class action tolls the applicable statute of limitations until the district court makes a decision as to class certification.  *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54 (1983) ("We conclude, as did the Court in *American Pipe*, that 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.'  414 U.S., at 554, 94 S.Ct., at 766. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."); *Armstrong v. Martin Merietta Corp.*, 138 F.3d 1374, 1391 (11th Cir. 1998) (*en banc*) ("We therefore conclude that the pendency of a class

action tolls the applicable statute of limitations only until the district court makes a class certification decision.  If class certification is denied in whole or in part, the statute of limitations begins to run again as to those putative class members who were excluded from the class."); *Barkley v. Pizza Hut of Am., Inc.*, No. 6:14-cv-376-Orl-37DAB, 2015 WL 5008468, at *3 (M.D. Fla. Aug. 21, 2015) ("The statute of limitations *is* tolled for the duration of a previously filed putative class action for plaintiffs who choose to intervene in the action to pursue their individual claims, *see Am. Pipe & Constr. Co.*, 414 U.S. at 552-53, or plaintiffs who subsequently file individual actions, *see Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)" (emphasis in original)).  The Court need not determine whether tolling applies in this action, however, because Plaintiffs do not seek to proceed on the basis of tolling or rely upon tolling as the basis for the timelines of their claims. Instead, Plaintiffs rely solely upon BLP's *unequivocal* waiver of any assertion of a statute of limitations defense regarding the timeliness issue of Plaintiffs' filing or of any claims on behalf of any class member.

As the Settlement Agreement indicates, BLP explicitly waived its affirmative defense regarding the statute of limitations, with such waiver surviving in the event of termination of the Settlement Agreement (Doc. 18, Ex. 1, at 36).  Such a waiver removes the issue from the controversy.  *See, e.g., Fox Hollow Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:11-cv-131-FtM-29DNF, 2011 WL 2222174, at *1 (M.D. Fla. June 7, 2011) ("The Court finds that counsel's written statements that the statute of limitations will not be asserted is a sufficient stipulation that the issue has been waived and there is no dispute in controversy as to it. ... [T]he statute of limitations is deemed waived, and Empire will be estopped from ever asserting to the contrary.").  Although *Cin-Q* Plaintiffs, as non-parties to this action, contend that the statute of limitations constitutes a jurisdictional issue not subject to waiver, such argument misses the

mark.  Namely, the Federal Rules of Civil Procedure, as well as numerous courts, indicate that the statute of limitations is an affirmative defense that a party may waive.  *See* Fed. R. Civ. P. 8(c)(1) (listing "statute of limitations" as an affirmative defense that must be plead by a party responding to a pleading); *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *cf. Ramirez v. Sec., U.S. Dep't of Transp.*, 686 F.3d 1239, 1243 (11th Cir. 2012) (quoting *Zipes* in concluding that a 45-day time limit set forth in the regulations regarding filing a charge under Title VII is not jurisdictional but rather functions like a statute of limitations, which is subject to waiver, estoppel, and equitable tolling); *see La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (stating that a statute of limitations is an affirmative defense, which plaintiffs need not negate in their complaint); *cf. Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003) (noting that a party can waive its right to advance an affirmative defense by failing to assert it in a responsive pleading); *see Paetz v. U.S.*, 795 F.2d 1533, 1536 (11th Cir. 1986) (explicitly determining that "[a] statute of limitations defense is an affirmative defense" and stating that the "[f]ailure to assert such a defense in a defendant's pleadings is a waiver" in determining that a statute of limitations defense was waived); *see Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1537 (11th Cir. 1984) (discussing a party's waiver of the statute of limitations affirmative defense and citing cases for the proposition that failure to assert an affirmative defense in a responsive pleading deems that affirmative defense waived); *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262, 1269 (M.D. Fla. 2012) ("The statute of limitations defense is an affirmative defense that if not asserted in a responsive pleading is generally deemed waived."); *cf. Felter v. Norton*, 412 F. Supp. 118, 122 (D.D.C. 2006) ("Ordinarily, a party's motion under Rule

12(b)(1) to dismiss for lack of subject matter jurisdiction cannot rest upon an assertion that an action is barred by the statute of limitations because the expiration of the limitations period is an affirmative defense and not a bar to jurisdiction.").

In contrast to *Cin-Q* Plaintiffs' contention, "[a] statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a *jurisdictional* prerequisite to suit.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (quoting *Zipes*, 455 U.S. at 393, with emphasis added).  Indeed, as the Supreme Court concluded, courts "have occasionally described a nonextendable time limit as mandatory and jurisdictional. ... But in recent decisions, we have clarified that time prescriptions, however emphatic, are not properly typed jurisdictional." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) (internal citations, citations, and quotation marks omitted). "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional ...." *U.S. v. Kwai Fun Wong*, 135 S.Ct. 1625, 1632 (2015).  In considering whether a statute of limitations is jurisdictional, a court must discern the legal character of the requirement by looking to such factors as the condition's text, context, and relevant historical treatment.  *Reed Elsevier*, 559 U.S. at 166 (citations omitted).

Importantly, as Plaintiffs argue, the statute of limitations governing TCPA claims is not found within the text of the TCPA.  *See* 47 U.S.C. § 227.  Instead, courts apply the four-year catchall statute of limitations provided under 28 U.S.C. § 1658(a), which states: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."  *Coniglio v. Bank of Am., NA*, 638 F. App'x 972, 974 n.1 (11th Cir. 2016) (citing 28 U.S.C. § 1658(a) and stating "[t]he TCPA has a four-year statute of limitations"); *see Tillman v. Ally Fin. Inc.*, No. 2:16-cv-313-FtM-99CM, 2016 WL 6996113, at *5 (M.D. Fla.

Nov. 30, 2016) (citing 28 U.S.C. § 1658(a) for the applicable statute of limitations under the TCPA).  Neither the text nor the context of such time prescription, located in a separate, catchall statute, indicates that the statute of limitations operates as jurisdictional bar to suit.  *Cf. Sarfati v. Wood Holly Assoc.*, 874 F.2d 1523, 1526 (11th Cir. 1989) ("The limitations period must be contained in the same statute or act in order to be deemed a substantive time limit on the right. ... Thus, if a right created by statute is in one act and the limitations period is in another act, then the limitations period is presumed not to be an integral part of the right itself. ... The limitations period is said to be only a procedural limit on the remedy, and not a substantive limit on the right.").  As such, the statute of limitations related to TCPA claims does not act as a jurisdictional bar to suit but is rather more appropriately considered only a procedural limit or an affirmative defense subject to waiver.

*Cin-Q* Plaintiff's reliance upon cases such as *Griffin v. Singletary*, 17 F.3d 356 (11th Cir. 1994), does not persuade the undersigned otherwise.  *Griffin* addresses a situation where subsequent actions were initiated on behalf of a class that the district court previously certified but that was later vacated due to the failure of the plaintiff to make a timely filing with the EEOC in an action brought under Title VII.  *Id.* at 357-59.  In *Griffin*, the Eleventh Circuit agreed with other circuit courts that "the pendency of a previously filed class action does *not* toll the limitations period for additional class actions by putative members of the original asserted class."  *Id.* at 359 (internal quotation and citations omitted) (emphasis in original). Such is not the case here, however.  This case is inapplicable because Plaintiffs do not seek to toll the statute of limitations to assert their claims but rather rely upon BLP's unequivocal waiver of the statute of limitations defense, and, even so, no prior class has been certified, so Plaintiffs do not seek to "piggyback" on a previous class action.

*Cin-Q* Plaintiffs also cite *Ewing Indust. Corp. v. Bob Wines Nursery, Inc.*, No. 3:13-cv-931-J-39JBT, 2014 WL 11370113 (M.D. Fla. June 26, 2014), *aff'd* 795 F.3d 1324 (11th Cir. 2015), in support of their position.  In the district-court proceedings in *Ewing*, the plaintiffs sought to file a subsequent class action using a different named representative after a state court dismissed a prior action because the court found the class representative did not have standing. 2014 WL 11370113, at *1.  *Ewing* is distinguishable as no action related to the instant claims has yet been dismissed based upon the lack of standing of the proposed class representative or for any defect with the putative class.  Most importantly, as the Eleventh Circuit explained, in *Ewing*, the defendants filed a motion to strike, specifically arguing that the claims were barred by the statute of limitations.  *Ewing Indust.*, 795 F.3d at 1326.  The exact opposite scenario is before the Court in this action.  Namely, BLP waives any argument that Plaintiffs' claims and the claims of any class members are barred based on the statute of limitations and, given such waiver, entered into a settlement agreement related to those claims.[2]

Similarly, in *Franze v. Equitable Assurance*, 296 F.3d 1250, 1253-54 (11th Cir. 2002), the defendants asserted that the plaintiffs failed to satisfy the Rule 23(a) requirements because they lacked standing due to the application of the statute of limitations, which would bar the plaintiffs' claims.  Given the opposition, the Eleventh Circuit considered the statute of limitations issue and determined that, because the plaintiffs filed suit after the statute of limitations had run for their claims, the plaintiffs lacked standing to assert a claim on behalf of a class.  *Id.* at 1255.  The case did not involve a scenario similar to the one in the instant action, where the defendant unequivocally waived the issue of the statute of limitations.

---

[2]  *Cin-Q* Plaintiffs contend that such a situation further supports their claim that a "reverse auction" is at play.  As discussed below, such a contention can be addressed during the objection period in the normal course of processing a class action under Rule 23.

The same is true for *Piazza v. Ebsco Indust., Inc.*, 273 F.3d 1341, 1347-49 (11th Cir. 2001).  There, the defendant argued that the plaintiff could not serve as the class representative because he did not have standing since his claims were barred by the statute of limitations.  *Id.* at 1347.  Noting that it was clear that a class representative whose claim is time-barred cannot assert the claim on behalf of the class, *id.* at 1347, the *Piazza* court concluded, considering the defendant's opposition, that the claim against one defendant was barred by the statute of limitations and thus that the district court abused its discretion in finding the plaintiff an adequate class representative.  *Id.* at 1349.  Nothing in the discussion addresses the situation presently before this Court, wherein the defendant waives such a defense, however.

In *Carter v. West Pub. Co.*, 225 F.3d 1258, 1263-67 (11th Cir. 2000), the defendant likewise argued that the plaintiff lacked standing because the claims were untimely.  In *Carter*, the Eleventh Circuit reversed the district court's order certifying a class, concluding, upon the defendant's opposition, that the named plaintiffs lacked standing to assert clams against the defendant, both individually and as class representatives, because the EEOC charge upon which the entire class relied was untimely, and that the district court erred in applying the doctrines of continuing violation and equitable tolling.  Yet again, nothing in the discussion addresses the situation presently before this Court, namely that the defendant waives the issue of timeliness and the application of the statute of limitations as to Plaintiffs and all class members.

Stated differently, such issue regarding the defendant's opposition to certification based upon untimeliness or a statute of limitations defense is simply not present in the instant action. BLP presents no opposition to Plaintiffs bringing their claims outside of the statute of limitations and, again, explicitly waived such defense as to all class members, regardless of the approval of the Settlement Agreement (Doc. 18, Ex. 1, at 36).  The cases cited by *Cin-Q* Plaintiffs do not address such situation, and the Court does not find adequate justification to

conclude that Plaintiffs claims are untimely or time-barred where BLP waives any claim to such defense on that basis.

In sum, Plaintiffs established Article III standing.  The timeliness of Plaintiffs' claims does not present a jurisdictional bar to suit.  Though the named plaintiff's claims must be timely filed to confer standing to represent a class, *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002), given the unequivocal waiver by BLP of its statute of limitations' affirmative defense as to Plaintiffs and the entire class, the timeliness of Plaintiffs' claims presents a non-issue and does not warrant denial of preliminary class certification in this action.  None of the cases cited by *Cin-Q* Plaintiffs persuades the undersigned otherwise.[3]

### B.      Rule 23(a)

The question now turns to whether Plaintiffs can establish the requirements for class certification.  As noted above, under Rule 23(a), one or more members of a class may sue as representative parties on behalf of all members only if the movant establishes the numerosity, commonality, typicality, and adequacy of representation requirements.  Fed. R. Civ. P. 23(a)(1)-(4).

### i.      Numerosity

Initially, Plaintiffs must demonstrate that the class is so numerous that joinder of all members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  To establish numerosity, the moving party typically must demonstrate either some evidence or a reasonable estimate of the number of purported class members.  *Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007) (citation omitted); *cf. Vega*, 564 F.3d at 1267 (noting that, while mere allegations of

---

[3] This discussion does not include an exhaustive list of every case cited by *Cin-Q* Plaintiffs in their numerous filings on the issue (*see, e.g.,* Docs. 28, 28-2, & 29).  Nonetheless, the undersigned considered the argument at length, along with the cases cited by *Cin-Q* Plaintiffs, and reached the conclusion fully informed of *Cin-Q* Plaintiffs' position and the basis for such position.

numerosity are insufficient, a plaintiff need not show the precise number of members in the class).  Though no fixed numerosity rule exists, courts generally determine less than twenty-one members of a proposed class is inadequate to establish numerosity and more than forty members of a proposed class is adequate to establish numerosity, with numbers between varying based upon other factors.  *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (concluding that a district court did not abuse its discretion in finding that the numerosity requirement had been met where a plaintiff identified at least thirty-one individual class members).  In determining numerosity, a district court may consider such factors as the size of the class, the ease of identifying the class members and determining the addresses of class members, the facility of effecting service upon class members if joined, and the geographic dispersion of class members.  *Kilgo*, 789 F.2d at 878.  Here, Plaintiffs contend that the numerosity requirement is satisfied, as the case involves more than 343,000 faxes sent to more than 131,000 unique fax numbers (Doc. 18, Brief, at 12).  Given the inordinately large amount of faxes and unique fax numbers, Plaintiffs easily establish numerosity.

### ii.      Commonality

Plaintiffs must next establish commonality, or that there exists questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Commonality pertains to the group characteristics of the class as a whole, whereas typicality pertains to the individual characteristics of the named plaintiff in relation to the class.  *Piazza*, 273 F.3d at 1346 (citation omitted).  To meet the commonality requirement, the moving party must demonstrate that the class action involves issues susceptible to class-wide proof.  *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (citation omitted).  Essentially, the moving party must show that the determination of the truth or falsity of a common contention will resolve an issue

that is central to the validity of each of the claims in one stroke.  *Dukes*, 564 U.S. at 350.

Commonality therefore requires "at least one issue whose resolution will affect all or a

significant number of the putative class members."  *Williams*, 568 F.3d at 1355 (citation and

quotation omitted).  Notably, "Rule 23 does not require that all the questions of law and fact

raised by the dispute be common."  *Cox*, 784 F.2d at 1557 (citations omitted).  In this instance,

common questions of fact and law exist regarding such issues as whether the faxes constitute

advertisements, whether the faxes were sent by or on behalf of BLP, and whether the faxes

complied with the regulations regarding opt-out notice.   Accordingly, Plaintiffs establish

commonality.

### iii.    Typicality

The next requirement Plaintiffs must demonstrate is that of typicality.  Though the issues

of commonality and typicality require separate inquiries, the proof required for each tends to

merge.  *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996) (citation and

quotation omitted).  As the Eleventh Circuit explained, typicality involves the following:

> A class may be certified only if the claims or defenses of the representative
> parties are typical of the claims or defenses of the class.  The claim of a class
> representative is typical if the claims or defenses of the class and the class
> representative arise from the same event or pattern or practice and are based on
> the same legal theory.  A class representative must possess the same interest and
> suffer the same injury as the class members in order to be typical under Rule
> 23(a)(3).  The typicality requirement may be satisfied despite substantial factual
> differences when there is a strong similarity of legal theories.

*Williams*, 568 F.3d at 1356-57 (internal citations and internal marks omitted); *see Kornberg v.

Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("A sufficient nexus is

established if the claims or defenses of the class and the class representative arise from the same

event or pattern or practice and are based on the same legal theory.  Typicality, however, does

not require identical claims or defenses.   A factual variation will not render a class

representative's claim atypical unless the factual position of the representative markedly differs

from that of other members of the class"). Plaintiffs contend that typicality is satisfied because Plaintiffs, like each class member, were sent the same or a similar fax from BLP and each class member's claim is based upon the same legal theory and same set of facts as Plaintiffs' claim during the same time period. Given that the claims of the class and Plaintiffs' claims are based on the same pattern or practice and the same legal theory, Plaintiffs established typicality.

### iv.      Adequacy of Representation

Finally, Plaintiffs must satisfy the adequacy-of-representation requirement, which requires the representative party in a class action to fairly and adequately protect the interests of those he or she purports to represent. Fed. R. Civ. P. 23(a)(4); *Valley Drug*, 350 F.3d at 1189. In considering this requirement, the moving party must demonstrate both (1) that the movant's interests and that of his or her counsel are not antagonistic to or in substantial conflict with those of the rest of the class and (2) that the movant and his or her counsel are generally able to adequately prosecute the action and conduct the proposed litigation. *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008); *see Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). Furthermore, in appointing class counsel, a district court must consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiffs demonstrate that they adequately represent the interests of the class. Plaintiffs engaged in two days of mediation with BLP, entered into the Settlement Agreement, initiated the instant action on behalf of themselves and the class, and otherwise demonstrated that proceeding as a class action is appropriate. The Court cannot ascertain any interests on behalf

of Plaintiffs that are antagonistic to or in substantial conflict with those of the rest of the class. Further, by reaching a class-wide settlement of the claims in this action, Plaintiffs demonstrated that they are generally adequate to prosecute the action and conduct the proposed litigation.

With respect to class counsel, Plaintiffs seek to appoint Attorneys Phillip A. Bock ("Bock"), Jonathan B. Piper, and Daniel J. Cohen of the law firm of Bock Hatch as counsel of record. Plaintiffs establish that Bock Hatch can adequately represent and protect the interests of the class and conduct the proposed litigation given that Bock Hatch has already negotiated the Settlement on behalf of the putative class; Bock Hatch has extensive experience handling class-action lawsuits, including class-action lawsuits involving the TCPA;[4] and Bock Hatch asserts that it will actively participate in the processing of the class claims, if approved. As such, Plaintiffs demonstrated that, considering those factors, Bock Hatch meets the adequacy-of-representation requirement.

As noted above, however, an issue arose with regard to whether a conflict existed with the representation of Bock Hatch based upon Oppenheim previously working for Anderson + Wanca on behalf of *Cin-Q* Plaintiffs in the *Cin-Q Action* and then switching firms to join Bock Hatch, and thereby representing Plaintiffs in the *Technology Training II Action*, while the *Cin-Q Action* remains pending. Under Florida Rule of Professional Conduct 4-1.9, to prevent an attorney from switching firms and creating a conflict of interest with a former client,

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
> **(a)** represent another person in the same or a substantially related matter in which that person's interests are *materially adverse* to the interests of the former client unless the former client gives informed consent;
>
> **(b)** use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or

---

[4] *See* Doc. 18, Brief at 11 n.2 (identifying numerous class-action cases litigated by Bock Hatch).

(c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Fla. Bar Reg R. 4-1.9(a)-(c) (emphasis added).  Interests are adverse where the representation of one client will be directly adverse to another client or where there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.  Fla. Bar Reg R.  4-1.7(a)(1)-(2).  If a conflict of interest exists, such conflict may be imputed to all lawyers in a firm.  Fla. Bar Reg R. 4-1.10.  Namely, while lawyers are associated with a firm, none of them may knowingly represent a client when any one of them practicing alone would be prohibited from doing so under rule 4-1.7 or 4-1.9, unless provided otherwise in Florida Rule of Professional Conduct 4-1.10 or the prohibition is based on a personal interest of the lawyer.  Fla. Bar Reg R. 4-1.10.  Further, "when a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are *materially adverse* to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter."  Fla. Bar Reg R. 4-1.10(b) (emphasis added).

Given the testimony and evidence presented during the hearing held on October 20, 2017, as well as Plaintiffs' supplemental briefing (Docs. 46, 47, & 54), the Court concludes that no conflict exists which would preclude the law firm of Bock Hatch from preliminarily being approved as class counsel.  Namely, the interests of Plaintiffs are not "materially adverse" to the interests of *Cin-Q* Plaintiffs.  Instead, each seeks certification of the same class regarding the same claims against the same defendant.  Both Plaintiffs and *Cin-Q* Plaintiffs represent the same interests, not materially adverse interests.  To the extent that *Cin-Q* Plaintiffs assert a

conflict exists because of the potentially lost incentive award and attorneys' fee award, such assertion lacks merit.  As discussed below, and as Plaintiffs conceded, *Cin-Q* Plaintiffs can assert objections and still seek such an award during the objection phase after preliminary certification and approval (*see* Doc. 46, at 15-17).[5]  Indeed, Bock Hatch affirmatively states that it "will not object should they make such a request as part of the settlement of this action" (Doc. 46, at 16).

Beyond that, any fiduciary duty Oppenheim owed in the *Cin-Q Action* belonged to the putative class, not to *Cin-Q* Plaintiffs.  In the context of a class action, class counsel owes a fiduciary duty to the class as a whole rather than being bound by the views of the named plaintiffs regarding any settlement.  *See Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) ("[C]lass counsel ultimately owe their fiduciary responsibility to the class as a whole and are therefore not bound by the views of the named plaintiffs regarding any settlement."); *see Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3rd Cir. 1983) ("Class counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiff or other objectors."); *see Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) ("The courts have recognized that the duty owed by class counsel is to the entire class and is not dependent on the special desires of the named plaintiffs."); *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 307 (N.D. Ill. 1997) ("One of the factors unique to class litigation is the existence of a class, rather than individual, client.  State another way, in a class suit, class counsel's client is the group which comprises the class, rather than any individual class member. ... Because the client in a class action consists of numerous class members, in addition to the class representatives, and because the class often speaks in several voices, all that can be expected of class counsel is

---

[5] BLP also explicitly recognized that *Cin-Q* Plaintiffs remain entitled to petition the Court for payment of an incentive award and attorneys' fees from the monies already set aside in the Settlement Agreement (Doc. 39, at 7 n.5).

that he seek to protect the best interests of the class as a whole" (citations omitted)).   As explained in greater detail by Judge Honeywell in her Order denying the Motion for Preliminary Injunction in the *M&C Action*, Oppenheim did not breach any duty or create a conflict of interest when leaving the firm of Anderson + Wanca to join Bock Hatch.  His limited participation in the *Cin-Q Action* furthered the interests of the class as a whole rather than the individual interests of *Cin-Q* Plaintiffs, and nothing indicates that simply by joining Bock Hatch he somehow breached any duty owed to the class or created a conflict of interest for himself or Bock Hatch.

Furthermore, nothing in the record indicated that Oppenheim used any information from the *Cin-Q Action* to the disadvantage of *Cin-Q* Plaintiffs or reveal any information relating to his participation in the *Cin-Q Action* with anyone at Bock Hatch.  Rather, the evidence indicated that Oppenheim did not participate in the filing of the *Technology Training II Action*; was not consulted by Bock Hatch prior to filing the *Technology Training II Action*; did not receive notice of the filing until receipt of electronic filing from the Circuit Court of the 13th Judicial Circuit of Hillsborough County, Florida; did not overlap employment between Anderson + Wanca and Bock Hatch; received a hiring bonus unrelated to and not conditioned upon any disloyalty to Anderson + Wanca; and did not obtain any protected confidential information during his participation in the *Cin-Q Action*.  Instead, Bock indicated that he independently took the initiative in soliciting a plaintiff using the information readily available in the *Cin-Q Action*, and, after obtaining plaintiffs to pursue the claims against BLP, Bock Hatch initiated communication with BLP about engaging in settlement discussions.   Throughout the proceedings, Bock Hatch continues to screen Oppenheim off the *Technology Training II Action* and specifically does not permit Oppenheim to receive any revenue or bonus derived from such proceedings.

In sum, therefore, Plaintiffs demonstrated that both they and Bock Hatch will adequately represent the interests of the class.  Based upon the present record, no conflict of interest exists to prevent Bock Hatch from representing the interests of the class in the *Technology Training II Action*.  Accordingly, Plaintiffs established each of the Rule 23(a) factors.

### C.      Rule 23(b)

Having established the requirements under Rule 23(a), Plaintiffs assert that the putative class also meets the requirements under Rule 23(b)(3).  Namely, Plaintiffs contend that the putative class satisfies the requirements regarding predominance of common issues and superiority of the class action to other means of litigation.  Fed. R. Civ. P. 23(b)(3).

### i.      Predominance

To satisfy the predominance requirement, the moving party must demonstrate that the issues in the class action subject to generalized proof, and therefore applicable to the class as a whole, predominate over the issues subject only to individualized proof.  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citations omitted).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Windsor*, 521 U.S. at 623.  The predominance inquiry thus focuses upon the legal or factual questions that qualify each class member's case as a genuine controversy and, therefore, is a far more demanding requirement than the commonality requirement under Rule 23(a).  *Jackson*, 130 F.3d at 1005.  Indeed, predominance requires more than just the presence of common issues.  The common issues must actually outweigh and predominate over any individualized issues involved in the litigation.  *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 518 (S.D. Fla. 2013).

As Plaintiffs contend, BLP engaged in a widespread, mass fax advertising campaign. The facts required to demonstrated liability relate to BLP's common course of conduct in

sending the same or similar faxes to more than 131,000 fax numbers.  Additionally, the legal questions of whether the faxes are advertisements, whether BLP qualifies as the sender, whether the faxes contain the appropriate opt-out notice, and whether BLP's violations were willful predominate over any issues subject only to individualized proof.  Accordingly, Plaintiffs established predominance.

### ii.      Superiority

Plaintiffs must also establish that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  The superiority analysis focuses upon the relative advantages of proceeding as a class action suit over any other forms of litigation that might be realistically available to a moving party.  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010). In determining the superiority of the class action, the court may consider (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, Plaintiffs assert that, given the large number of purported class members, the similarity of the claims of all class members, and the relatively small potential recovery in individual suits, proceeding as a class action lawsuit is superior over any other forms of litigation.  Indeed, such considerations demonstrate the superiority of proceeding as a class action and thus weigh in favor of proceeding as a class action.  Furthermore, nothing indicates that any class members maintain an interest in individually controlling the prosecution or defense of separate actions.  In fact, in the two other actions filed by potential class members,

*i.e.* the *Cin-Q Action* and the *Stein Action*, the named plaintiffs seek to proceed as a class action rather than proceed only on their individual claims.  Moreover, handling this matter as a class action would prove less difficult than handling hundreds of thousands of individual lawsuits.  Based on these considerations, therefore, Plaintiffs established that proceeding as a class action is superior to other methods available to fairly and efficiently adjudicate this controversy.

### D.      Rule 23(e)

Given that Plaintiffs and BLP entered into the Settlement Agreement, they seek the Court's preliminary approval of the class, appointment of Plaintiffs as class representatives, appointment of class counsel, issuance of the notice to the class, and the scheduling of a fairness hearing.  Under Rule 23(e), the claims, issues, or defenses of a certified class may be settled with the court's approval, with the following applicable procedures:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e)(1)-(5).  Having established that preliminary certification of the class is warranted, Plaintiffs also established that preliminary approval of the Settlement Agreement is similarly warranted.  To approve a class action settlement, a district court must determine that the settlement is fair, adequate, and reasonable and is not the result of collusion between the

parties. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quotation and citation omitted); *see Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) ("At the preliminary-approval step, the Court is required to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" (internal quotation and citation omitted)).  In making such determination, a district court should consider the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).  These factors are neither determinative nor exhaustive, and a district court may consider such other relevant factors as (1) an unjustifiably burdensome claims procedure; (2) unduly preferential treatment of the class representative; (3) the terms of settlement in similar cases; (4) an unreasonably high award of attorney's fees to prevailing class counsel; and (5) impermissibly broad releases of liability. *Palmer v. Dynamic Recovery Sol., LLC*, Case No. 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, at *2 (M.D. Fla. May 4, 2016).

Preliminary approval of a class settlement simply allows notice to issue to the class and for the class members to either object or opt out of the settlement. *Pierre-Val v. Buccaneers Ltd. P'ship.*, No. 8:14-CV-01182-CEH-EAJ, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015).  Accordingly, if a proposed settlement is within the range of possible approval, or if probable cause exists to notify the class of the proposed settlement, such settlement should be preliminarily approved. *Fresco*, 2007 WL 2330895, at *4.  Notably, "[a]lthough class action settlements should be reviewed with deference to the strong judicial policy favoring settlement, the court must not approve a settlement merely because the parties agree to its terms." *Palmer*,

2016 WL 2348704, at *3 (citations omitted).  With respect to precertification settlement, it is especially important since "the parties' speedy and seamless resolution of their dispute should prompt the court to consider whether the proposed settlement represents a bona fide end to the adversarial process or the collusive exploitation of the class action mechanism to the detriment of absent class members."  *Id.* (citations omitted).

Plaintiffs assert claims for violations of the TCPA and for conversion and invasion of privacy relating to the purported unsolicited facsimile advertisements sent by or on behalf of BLP (Doc. 1).  Under the TCPA, it is unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" except within certain enumerated circumstances, including that the unsolicited advertisement contains a proper notice.  47 U.S.C. § 227(b)(1)(C).  The TCPA provides that a person or entity may bring a private action to enjoin a TCPA violation; to recover actual monetary loss from such a violation, or to receive $500 in damages for each violation, whichever is greater; or both.  47 U.S.C. § 227(b)(3)(A)-(C).  If a court concludes that the defendant acted willfully or knowingly, the court, in its discretion, may award treble damages.  *See* 47 U.S.C. § 227(b)(3); *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667 (2016).  Although BLP denies each and every allegation of wrongdoing, liability, and damages, and further denies that litigation would be appropriate for class treatment, Plaintiffs and BLP entered into the Settlement Agreement to resolve all claims to avoid the expense, inconvenience, and inherent risk involved with litigation as well as to prevent the continued disruption of BLP's business operations (Doc. 18, Ex. 1, at 3-4).

In effecting this resolution, the Settlement Agreement provides, among other things, for a Settlement Fund up to $19.5 million; payments of up to $350 for the first facsimile and up to $565 total for up to five facsimiles to Settlement Class members who submit claims, to be

reduced on a *pro rata* basis if, after payment of fees and incentive awards, the Settlement Fund proves insufficient to fully pay the valid claims submitted; BLP bearing all notice and administration costs; BLP's agreement not to send any further unsolicited facsimile advertisements in violation of the TCPA; and potential incentive awards to Plaintiffs and a potential award of fees, costs, and attorneys' fees to class counsel not to exceed 25% of the Settlement Fund (Doc. 18, Ex. 1; *see* Doc. 39, Ex. 4).  Solely for purposes of preliminary approval, such terms appear fair, adequate, and reasonable.  Namely, though the potential recovery may exceed the agreed-upon amounts recoverable, the Settlement is either on par with or greatly exceeds prior TCPA settlements, both in the total amount in the Settlement Fund and in the amount awarded to each class member (*see, e.g.,* Doc. 39, Exs. 3 & 5) (listing TCPA settlement funds and individual amounts).

With respect to the possible request for expenses, costs, and attorney's fees, such request falls within the parameters of reasonable awards in the class-action context.  As the Eleventh Circuit stated, "'[a]ttorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'"  *Faught*, 668 F.3d at 1242 (quoting *Camden I Condo Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).  In this context, courts generally consider fee requests reasonable where the requests fall between 20-25% of the claims.  *Faught*, 668 F.3d at 1242 (citation omitted); *see Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012) (finding reasonable a fee award that constituted 25% of the common fund).  Here, Plaintiffs intend to seek an aggregate award of attorneys' fees and reimbursement of expenses and costs in an amount not to exceed 25% of the Settlement Fund and to be paid from the Settlement Fund, which would equate to an award up to $4.875 million (Doc. 18, Ex. 1, at 14).  Though, at first blush, the award may seem neither fair nor reasonable given the time spent by Bock Hatch so far in this action, much

34

work remains once preliminary approval occurs, and, more importantly, the undersigned anticipates potentially entertaining requests for an award of attorneys' fees and costs from *Cin-Q* Plaintiffs' counsel based on their efforts on behalf of the putative class, to the extent such request is made.  The requested amount for potential reimbursement of expenses, costs, and fees is thus fair, adequate, and reasonable for purposes of preliminary approval.

Similarly, the request for incentive awards in the amount of $20,000 in favor of TTA and in the amount of $3,000 for Schwanke does not appear unreasonable for purposes of preliminary approval.  Courts have permitted similar incentive awards, including in other TCPA cases.  *See Nelson*, 484 F. App'x at 432, 434-35 (affirming a district court's decision finding a class settlement fair, adequate, and reasonable where plaintiffs were awarded incentive awards in the amounts of $10,000 for one plaintiff; $2,500 for four plaintiffs; and $1,000 for the remaining named plaintiffs); *see Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 951-52 (D. Minn. 2016) (reducing a requested $27,500 requested incentive award to $15,000 based on a number of factors in a TCPA action); *see Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving an incentive award of $20,000 in a TCPA class action).  Accordingly, the requested incentive awards appear fair and reasonable for purposes of preliminary approval.

With respect to the other factors, Plaintiffs and BLP agree that they each seek to avoid the complexity, expense, and duration of litigation anticipated in this action.  As evidenced by the lengthy and detailed procedural history in the *Cin-Q Action*, the parties can reasonably anticipate similar procedural hurdles, a lengthy duration, and great expense to both parties if they are forced to litigate the issues present in this action.  The class members also benefit from the potential receipt of a monetary payment without the expense and risks associated with litigation, including the risk of a smaller or no award.  Furthermore, uncertainty remains on

both sides as to whether the claims upon which Plaintiffs seek to proceed are likely to succeed at trial.  Plaintiffs and BLP possess colorable arguments in support of and opposition to the claims in this action, which makes settlement an attractive option for each.  With respect to the stage at which the Settlement was reached, though the Settlement Agreement was entered into at the inception of the litigation, the parties were both familiar with the lengthy proceedings in the *Cin-Q Action*, and as to the issues raised therein, prior to engaging in settlement discussions.  The parties did not blindly enter into negotiations armed with little to no information.  Instead, each side entered into the negotiations with a full understanding of the issues and potential pitfalls related to litigation of the claims and engaged in arms-length negotiations before a Court-approved mediator.  The early resolution therefore does not weigh against preliminary approval.  Moreover, the Settlement Agreement does not delineate an unjustifiably burdensome claims procedure, unduly preferential treatment of the class representative, or impermissibly broad releases of liability.   Based on those factors, preliminary approval appears fair, reasonable, and adequate at this stage.

   With regard to the factor pertaining to the opposition to the settlement, *Cin-Q* Plaintiffs argue that preliminary approval of the class in *Technology Training II* should not occur because the Settlement Agreement is the product of a "reverse auction," wherein BLP negotiated with ineffectual lawyers and a plaintiff with the weakest claim to obtain a settlement in the hope that the Court will approve a weak settlement that will preclude other claims against BLP.[6]  *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282-86 (7th Cir. 2002) (describing and discussing an alleged "reverse auction").  Rule 23(e) allows any class member to object to the proposal if, as in the instant matter, it requires court approval.  Fed. R. Civ. P. 23(e)(5).  As

---

   [6]  As discussed at length above, *Cin-Q* Plaintiffs also oppose certification because they contend that Plaintiffs lack standing due to the timeliness of their claims.  Such argument lacks merit for the reasons stated in Section II.A. of this decision.

articulated more fully in the parties' briefs (Docs. 29 & 30), any issue related to a purported "reverse auction" may therefore subsequently be addressed through the objection process, as dictated by Rule 23.  In the alternative, *Cin-Q* Plaintiffs remain free to opt out of the *Technology Training II Action* entirely.  The limited opposition therefore does not weigh against preliminary approval of the settlement.

After consideration, therefore, the undersigned concludes that the Settlement Agreement represents a bona fide end to the adversarial process rather than the collusive exploitation of the class action mechanism to the detriment of absent class members.  The Settlement falls within the range of possible approval, and, based on the foregoing, is therefore preliminarily approved.  In doing so, the undersigned

(1) preliminarily approves the following class:

> All persons who, in 2009 or 2010, received one or more facsimile advertisements sent by or on behalf of BLP and offering tickets for Tampa Bay Buccaneers games.

> Specifically excluded from the Settlement Class are the following Persons:  (i) BLP and its respective parents, subsidiaries, divisions, affiliates,  associated entities, business units, predecessors in interest, successors, successors in interest and representatives and each of their respective immediate family members; (ii) Class Counsel; and (iii) the judges who have presided over the Litigation and any related cases;

(2) preliminarily appoints Plaintiffs Technology Training Associates, Inc., and Larry E. Schwanke, D.C. d/b/a Back to Basics Family Chiropracter as class representatives; and

(3) preliminarily appoints Attorneys Phillip A. Bock, Jonathan B. Piper, and Daniel J. Cohen of the law firm of Bock Hatch as class counsel.

### i.        Notice and Fairness Hearing

Following preliminary approval of a settlement, Rule 23 dictates that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Where a class is certified under Rule 23(b)(3), albeit preliminarily for our

purposes, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The notice must clearly and concisely include the following information in plain, easily understood language:

> (1) the nature of the action;
>
> (2) the definition of the class certified;
>
> (3) the class claims, issues, or defenses;
>
> (4) that a class member may enter an appearance through an attorney if the member so desires;
>
> (5) that the court will exclude from the class any member who requests exclusion;
>
> (6) the time and manner for requesting exclusion; and
>
> (7) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Upon review, the Notice provided by Plaintiffs, which is attached as Exhibit B to the Settlement Agreement (Doc. 18, Ex. 1), satisfy these requirements and is thus approved and incorporated herein.

Furthermore, the manner in which the parties intend to provide notice is fair, adequate, and reasonable.  Plaintiffs and BLP agree to provide notice by sending it both via U.S. mail to the addresses associated with the fax numbers at issue and by publication.  The claim form will be included with the mailed notice and will additionally be accessible to download from the settlement website.

Following issuance of the Notice and the time period for opting out and objecting, the undersigned will subsequently conduct a fairness hearing.  Such hearing will take place on October 25, 2017, at 10:00 a.m., in Courtroom 10A of the Sam M. Gibbons United States

Courthouse, 801 North Florida Avenue, Tampa, Florida.   Plaintiffs shall move for final approval of the Settlement no later than fourteen (14) days prior to the fairness hearing.

### III.   *Cin-Q* Plaintiffs' Motion to Transfer, to Consolidate, and to Appoint Interim Class Counsel

*Cin-Q* Plaintiffs filed a motion seeking to (1) transfer *Technology Training II* to the undersigned pursuant to Local Rule 1.04(b); (2) to consolidate the *Cin-Q Action* with *Technology Training II* following transfer; and (3) appoint the law firms of Addison & Howard, P.A., and Anderson + Wanca as interim co-lead counsel for the class (Doc. 8).   As an initial matter, the request to transfer is moot given that the *Technology Training II Action* was assigned to the undersigned by random assignment with the parties subsequently consenting to the undersigned's jurisdiction (*see* Docs. 9 & 13).   As such, the motion is denied with respect to *Cin-Q* Plaintiffs' request to transfer.

Similarly, the motion is denied with regard to *Cin-Q* Plaintiffs' requests to consolidate the *Cin-Q Action* and the *Technology Training II Action* and to appoint *Cin-Q* Plaintiffs' counsel as interim class counsel.   Namely, given that both cases are currently pending before the undersigned, *Cin-Q* Plaintiffs request that the *Cin-Q Action* and the *Technology Training II Action* be consolidated, with *Cin-Q* Plaintiffs' counsel appointed as interim counsel for the class following consolidation.   Under Rule 42, if common questions of law or fact exist, the court *may* consolidate the actions.   Fed. R. Civ. P. 42(a)(2) (emphasis added).   The rule is permissive not mandatory.   Indeed, the decision to consolidate under Rule 42(a) is "purely discretionary" yet should take into account such considerations as whether the risks of prejudice and possible confusion are outweighed by the risk of inconsistent adjudications of common factual and legal issues; the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits; the length of time required to conduct and conclude multiple lawsuits against a single

lawsuit; and the relative expense to all concerned of the single-trial, multiple-trial alternatives. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985) (citation omitted).

In this instance, none of the risks or burdens weigh in favor of consolidation.  Given the ruling regarding the preliminary approval of the Settlement and certification of the class, no inconsistent adjudications will occur and the *Technology Training II Action* will remain the only lawsuit going forward as to the Settlement Class and its claims against BLP.  Indeed, the Court's ruling obviates the need for the class claims in the *Cin-Q Action* to proceed any further. Accordingly, the motion is denied as to *Cin-Q* Plaintiffs' request to consolidate.

Likewise, the Court's ruling obviates the need for appointment of Addison & Howard, P.A., and Anderson + Wanca as interim class counsel.  Under Rule 23, a "court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  As explained more fully above, the Court appoints Bock and Hatch as class counsel for the Settlement Class, thereby removing the need to appoint interim class counsel for a putative class.[7]  The motion is thus also denied as to *Cin-Q* Plaintiffs' request to appoint Addison & Howard, P.A., and Anderson + Wanca as interim class counsel.

### IV.     *Cin-Q* Plaintiffs' Motion to Intervene

*Cin-Q* Plaintiffs additionally filed a motion seeking to intervene in this action, as a matter of right pursuant to Rule 24(a) and by permission pursuant to Rule 24(b), to (1) file a memorandum in response to the Court's June 27, 2016 Order in the *Cin-Q Action* staying the *Cin-Q Action* pending further order of the Court and (2) to file a motion to strike (Doc. 28). Under Rule 24(a), on a motion, a court must permit anyone to intervene who:

---

[7]  Such appointment does not foreclose either Addison & Howard, P.A., or Anderson + Wanca from later seeking in the *Technology Training II Action* an award of attorneys' fees for the work performed by each on behalf of the Settlement Class.

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(1)-(2).  As the parties agree, the class and the claims set forth in the *Cin-Q Action* and the *Technology Training II Action* are identical.  As such, by *Cin-Q* Plaintiffs own desire to certify the same class and pursue the same claims pursuant to the same allegations involving the same facsimile advertisements precludes any argument by *Cin-Q* Plaintiffs that the Court should not certify such class or permit such claims.  Instead, *Cin-Q* Plaintiffs contend that they maintain an interest that will be impaired or impeded if the Court does not permit *Cin-Q* Plaintiffs to intervene in this action.  Essentially, *Cin-Q* Plaintiffs' assert that Plaintiffs will not adequately represent *Cin-Q* Plaintiffs' interests, especially given the lengthy procedural history of the *Cin-Q Action* preceding the filing of the *Technology Training II Action*.

As discussed more fully above, however, *Cin-Q* Plaintiffs may assert their objections in the normal course of these proceedings, as anticipated by Rule 23.  Furthermore, the undersigned has not foreclosed any potential incentive award to *Cin-Q* Plaintiffs or any potential attorneys' fee award to *Cin-Q* Plaintiffs' counsel.  Notably, Plaintiffs explicitly represent that they will not oppose an incentive award in favor of *Cin-Q* Plaintiffs and BLP recognizes that *Cin-Q* Plaintiffs may seek an incentive award from the Settlement Fund (Doc. 39, at 7 n.5; Doc. 46, at 15-17).  As a result, *Cin-Q* Plaintiffs cannot argue that, as a practical matter, their ability to protect their interests are impaired or impeded by going forward with the preliminary approval of the settlement and class certification, thereby negating their contention regarding the necessity for intervention as of right.

In the alternative, *Cin-Q* Plaintiffs also contend that intervention should be allowed by permission.  Under Rule 24(b), on a motion, a court may permit anyone to intervene who:

(1) is given a conditional right to intervene by a federal statute; or

(2) has a claim or defense that share with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1)(A)-(B).  As Rule 24(b) indicates, the intervention is permissive not mandatory.  Though *Cin-Q* Plaintiffs maintain a claim or defense that share with this action a common question of law or fact, *Cin-Q* Plaintiffs may still assert such claims and defenses in this action following preliminary approval by asserting their objections at the appropriate time. *Cin-Q* Plaintiffs may also opt out of the class and continue to pursue their claims on an individual basis in the *Cin-Q Action*.  As a result, *Cin-Q* Plaintiffs need not be permitted to intervene in this action.  Again, *Cin-Q* Plaintiffs will receive an opportunity to object and to assert their entitlement to an incentive award, which Plaintiffs will not oppose, and attorneys' fees.  Accordingly, permitting *Cin-Q* Plaintiffs to intervene at this juncture would defeat the purposes behind the administration of class actions, as outlined in Rule 23, and only serve to delay this matter further.

To summarize, intervention by *Cin-Q* Plaintiffs as of right or by permission is unwarranted under the circumstances of this case.  *Cin-Q* Plaintiffs may state their objections and other claims at the times and in the manner set forth in this Order.  The motion to intervene is therefore denied.

## V.      Conclusion

For the foregoing reasons, it is hereby

ORDERED:

1.      *Cin-Q* Plaintiffs' Motion to Transfer Related Case under Local Rule 1.04(b), to Consolidate Cases, and Appoint Interim Class Counsel (Doc. 8) is DENIED.

2.      *Cin-Q* Plaintiffs' Motion to Intervene (Doc. 28) is DENIED.

3.     Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class (Doc. 18) is GRANTED as follows:

a.     Except as otherwise provided below, all capitalized terms used in this Order shall have the meanings and/or definitions given them in the Settlement Agreement and Release ("Agreement" hereafter) (Doc. 18, Ex. 1).

b.     The Court preliminarily approves the Agreement subject to the Fairness Hearing, the purpose of which will be to decide whether to grant final approval to the Settlement reached by the Parties. The Court finds that the Agreement, the Settlement set forth therein, and all exhibits attached thereto or to Plaintiffs' Motion For Preliminary Approval of Class Action Settlement are fair, reasonable, and adequate, entered into in good faith, free of collusion to the detriment of the Settlement Class and within the range of possible judicial approval to warrant sending notice of the Litigation and the proposed Settlement to the Settlement Class and to hold a full hearing on the proposed Settlement.

c.     For settlement purposes only, conditioned upon final certification of the proposed class and upon Final Judgment, the Court preliminarily certifies the following class:

> All persons who, in 2009 or 2010, received one or more facsimile advertisements sent by or on behalf of BLP and offering tickets for Tampa Bay Buccaneer games.

> Specifically excluded from the Settlement Class are the following Persons: (i) BLP and its respective parents, subsidiaries, divisions, affiliates, associated entities, business units, predecessors in interest, successors, successors in interest and representatives and each of their respective immediate family members; (ii) Class Counsel; and (iii) the judges who have presided over the Litigation and any related cases.

d.     The Court recognizes that BLP reserves all of its defenses and objections against and rights to oppose any request for class certification in the event that the proposed Settlement does not become final for any reason. BLP also reserves all its defenses

to the merits of the claims asserted in the event the Settlement does not become Final for any reason, with the notable exception regarding the statute of limitations.

        e.      For settlement purposes only, the Court preliminarily appoints Plaintiffs as representative of the Settlement Class.

        f.      For settlement purposes only, the Court preliminarily appoints the following attorneys to act as Class Counsel for the Settlement Class:

> Phillip A. Bock, Jonathan B. Piper, Daniel J. Cohen
> Bock, Hatch, Lewis & Oppenheim, LLC
> 134 North La Salle Street, Suite 1000
> Chicago, Illinois 60602
> Telephone: (312) 658-5500
> Facsimile: (312) 658-5555

        g.      The Court appoints the Settlement Administrator designated by the Parties, who will be an agent of the Court and subject to the Court's supervision and direction as circumstances may require.

        h.      The Settlement Class Notice Program shall be effectuated as follows:

        i.      Within ten (10) days of the entry of this Order, the Parties shall provide to the Settlement Administrator records identifying the fax numbers to which the facsimile advertisements offering tickets for Tampa Bay Buccaneer games were sent. The Settlement Administrator will then use these records to determine the mailing addresses for as many members of the Settlement Class as possible.

        ii.      No later than sixty (60) days after the entry of this Order, the Settlement Administrator will mail the Mailed Notice to all such members of the Settlement Class whose addresses were derived as part of the process described in the paragraph above.

        iii.      No later than sixty (60) days after the entry of this Order, the Settlement Administrator will also cause notice to be published in a manner that satisfies due

process when considered in conjunction with the Mailed Notice portion of the Settlement Class Notice Program discussed in the paragraph above.

        iv.    The Settlement Administrator will maintain the Settlement Website in accordance with the Agreement.

        i.    The form and content of the Class Notice are fair, reasonable, and adequate, and notice shall be disseminated to the Settlement Class in accordance with the Agreement and as due process and Rule 23 of the Federal Rules of Civil Procedure require.

        j.    The Court finds that the Settlement Class Notice Program is reasonably calculated, under the circumstance, to apprise the Settlement Class: (a) of the pendency of the Litigation and the essential terms of the Settlement; (b) of the procedures for allocating the Settlement Fund; (c) of any requested amounts for Attorneys' Fee Award and Incentive Awards; (d) of right of members of the Settlement Class to exclude themselves from the Settlement Class and the proposed Settlement; (e) that any judgment, whether favorable or not, will bind all members of the Settlement Class who do not request exclusion; (f) that any member of the Settlement Class who does not request exclusion may object to the Settlement, the request for Attorneys' Fee Award and/or Incentive Awards and, if he or she desires, enter an appearance personally or through counsel; (g) the time and place of the Final Approval Hearing; and (h) prominently display the address of Class Counsel and the Settlement Administrator as well as the procedure for making inquiries. The Court further finds that the notices are written in plain English and are readily understandable by members of the Settlement Class.

        k.    The Court finds the Settlement Class Notice Program: (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Litigation and of their right to object to or to exclude themselves from the proposed settlement; (iii) is reasonable and constitutes due, adequate and

sufficient notice to all Persons entitled to receive notice; and (iv) meets all requirements of applicable law.

l.      No later than fourteen (14) days before the Fairness Hearing, the Settlement Administrator shall file a declaration with the Court attesting to the: (a) completion of the Settlement Class Notice Program and (b) number of valid claims, opt-outs, and objections.

m.      The Court approves the Claim Form in substantially the same form as the Claim Form attached to the Agreement.   Any member of the Settlement Class who wishes to receive benefits under the Agreement must sign and return a complete and timely Claim Form in compliance with the process set forth in the Agreement, and such Claim Form shall be postmarked no later than one hundred twenty (120) days after the entry of this Order. Any Settlement Class Member who does not submit a complete and timely Claim Form in compliance with the Agreement shall not be entitled to any benefits under the Settlement, but nonetheless shall be barred by the release provisions of the Agreement and the Final Judgment and shall be deemed to have released the Released Parties from the Released Claims.

n.      Any member of the Settlement Class who wishes to opt out or exclude himself or herself from the Settlement Class must submit an appropriate, timely request for exclusion sent to the Settlement Administrator at the address on the Notice and to be postmarked no later than one hundred twenty (120) days after the entry of this Order (the "Opt-Out and Objection Date"). The opt-out request must be personally signed by the member of the Settlement Class requesting exclusion, contain a statement that indicates his or her desire to be excluded from the Settlement Class, and contain a statement that he or she is otherwise a member of the Settlement Class.  A timely and valid request to opt out of the Settlement Class shall preclude the person opting out from participating in the proposed Settlement and he or she

46

will be unaffected by the Agreement.  The Settlement Administrator shall compile a list of all members of the Settlement Class who properly and timely submit an opt-out request (the "Opt-Out List").

o.      Any member of the Settlement Class who does not submit a timely and valid written request for exclusion shall be bound by all subsequent proceedings, orders, and judgments in this Litigation, regardless of whether he or she currently is, or subsequently becomes, a plaintiff in any other lawsuit, arbitration, or other proceeding against any of the Released Parties asserting any of the Released Claims.

p.      The Settlement Administrator shall provide the Opt-Out List to Class Counsel and BLP Counsel no later seven (7) days after the Opt-Out and Objection Date and shall file the Opt-Out List along with an affidavit attesting to the completeness and accuracy thereof with the Court no later than five (5) days thereafter, or another such date as the Parties may agree.

q.      Any Settlement Class Member who does not properly and timely submit an opt-out request and who wishes to object to the fairness, reasonableness, or adequacy of the Agreement or the proposed Settlement or who wishes to object to the Attorneys' Fee Award or Plaintiffs' Incentive Awards must file with the Court and serve on Class Counsel and Defendant's Counsel, postmarked no later than the Opt-Out and Objection Date, a written statement of the objection signed by the Settlement Class Member containing all of the following information:

i.      The name, address, telephone number of the Person objecting and, if represented by counsel, of his/her counsel;

ii.      A signed declaration stating that he or she is a member of the Settlement Class and in 2009 and/or 2010, received one or more facsimile advertisements  sent by or on behalf of BLP;

iii.      A statement of all objections to the Settlement; and

iv.      A statement of whether he or she intends to appear at the Fairness Hearing, either with or without counsel, and, if with counsel, the name of his or her counsel who will attend.  Any Settlement Class Member who fails to file and serve a timely written objection and notice of his or her intent to appear at the Fairness Hearing pursuant to this paragraph and as detailed in the Class Notice shall not be permitted to object to the approval of the Settlement at the Fairness Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means.

r.      Any objections must be appropriately filed with the Court no later than the Opt-Out and Objection Date, or alternatively they must be mailed to the Court at the address below and postmarked no later than the Opt-Out/Objection Deadline.

> Clerk of Court
> United States District Court for the Middle District of Florida
> 801 North Florida Avenue
> Tampa, Florida 33602
> Attention:   "Technology Training Associates, Inc.  v.  Buccaneers Limited Partnership, Case No.  8:16-cv-1622-T-AEP"

A copy of the objection, postmarked no later than the Opt-Out and Objection Date, must also be mailed to the Settlement Administrator at the post office box described in the Mailed Notice.

s.      No person shall be heard and no paper or brief submitted by any objector shall be received or considered by the Court unless such person has filed with the Clerk of Court and timely mailed to the Settlement Administrator, as provided above, the concise written statement of objections as described above, together with copies of any supporting materials, papers, or briefs.  Any Settlement Class Member who does not file a written objection

48

in the time and manner described above shall be: (a) deemed to have waived and forfeited any objections to the proposed Settlement; (b) foreclosed from raising any objection to the proposed Settlement at the Fairness Hearing; (c) bound by all of the terms of the Agreement and by all proceedings, orders, and judgments by the Court; and (d) foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

        t.      Any objecting Settlement Class Member who intends to appear at the Fairness Hearing, either with or without counsel, must also file a notice of intention to appear with the Court postmarked no later than the Opt-Out/Objection Deadline, which notice shall be filed with, or mailed to, the Clerk of the Court, with copy to the Settlement Administrator, as set forth above.

        i.      If the objecting Settlement Class Member intends to appear at the Fairness Hearing through counsel, he or she must also identify any attorney representing the objector who will appear at the Fairness Hearing and include the attorney(s) name, address, phone number, e-mail address, and state bar(s) to which counsel is admitted.  Any attorney hired by a Settlement Class Member for the purpose of objecting to the Agreement or to the proposed Settlement or to the Attorneys' Fee Award will be at the Settlement Class Member's own expense; and

        ii.      If the objecting Settlement Class Member intends to request the Court allow the Class Member to call witnesses at the Fairness Hearing, the objecting Class Member must provide a list of any such witnesses together with a brief summary of each witness's expected testimony no later than the Opt-Out/Objection Deadline.  If a witness is not identified in the notice of appearance, such witness shall not be permitted to object or appear at the Fairness Hearing.

u.      The Settlement Administrator will establish a post office box to be used for receiving requests for exclusion or objections, Claim Forms, and any other communications relating to this Settlement.

v.      Absent further Court order, the Court preliminarily enjoins all members of the Settlement Class unless and until they have timely excluded themselves from the Settlement Class from (a) filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims; (b) filing, commencing, participating in or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any member of the Settlement Class who has not timely excluded himself or herself (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims; and (c) attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims. Any Person who knowingly violates such injunction shall pay the attorneys' fees and costs incurred by BLP, any other Released Person and Class Counsel as a result of the violation. This Order is not intended to prevent members of the Settlement Class from participating in any action or investigation initiated by a state or federal agency.

w.      A hearing to determine (a) whether the Settlement Class should be finally certified pursuant to Rule 23 of the Federal Rules of Civil Procedure and (b) whether

the proposed Settlement is fair, reasonable, and adequate (the "Fairness Hearing") shall be conducted in the United States District Court for the Middle District of Florida, Tampa Division, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida, Courtroom 10A, commencing on October 25, 2017, at 10:00 a.m. The Court may reschedule the Fairness Hearing without further written notice. If the Fairness Hearing is rescheduled from the currently scheduled date, information regarding a rescheduled Fairness Hearing will be posted on the Court's docket. Within fourteen (14) days prior to the Fairness Hearing, Plaintiffs shall move for final approval of the Settlement.

x.     Papers in support of the final approval of the Settlement, including responses to objections, shall be filed with the Court no later than seven (7) days before the Fairness Hearing.

y.     An application of Class Counsel for an award of fees and expenses shall be filed with the Court no later than fourteen (14) days before the Opt-Out/Objection Date.

z.     All discovery and other pre-trial proceedings in this Litigation are stayed and suspended pending the Fairness Hearing, except such actions as may be necessary to implement the Agreement and this Order.

aa.     BLP shall file proof of compliance with the notice requirements of The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b), no later than seven (7) days before the Fairness Hearing.

bb.     This Order shall become null and void, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if (a) the proposed Settlement is not finally approved by the Court, or does not become Final, pursuant to the terms of the Agreement or (b) the proposed Settlement is terminated in accordance with the Agreement or does not become

effective as required by the terms of the Agreement for any other reason.  In any such event, the proposed Settlement and Agreement shall become null and void and be of no further force and effect, and neither the Agreement  nor the Court's orders, including this Order, shall be used or referred to for any purpose whatsoever.

cc.     Neither the Agreement, nor any of its terms or provisions, nor any of its exhibits, nor any of the negotiations or proceedings connected with it, nor this Order shall be construed as an admission or concession by any Defendant of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind, or of the appropriateness of the certification of the Settlement Class for purposes other than for settlement.  This Order shall not be construed or used as an admission, concession, or declaration by or against any of the Released Parties of any fault, wrongdoing, breach, or liability.

dd.     The terms and provisions of the Agreement may be amended by agreement of the Parties in writing or with approval of the Court without further notice to the Settlement Class, if such changes are consistent with this Order and do not limit the rights of the Settlement Class.

DONE AND ORDERED in Tampa, Florida, on this 31st day of March, 2017.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:     Counsel of Record