# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| TECHNOLOGY TRAINING ASSOCIATES, INC., *et al.*, | ) ) |
| | ) No. 8:16-cv-01622-AEP |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BUCCANEERS LIMITED PARTNERSHIP, | ) |
| | ) |
| Defendant, | ) |
| _____ | ) |
| | ) |
| CIN-Q AUTOMOBILES, INC., and MEDICAL & CHIROPRACTIC CLINIC, INC., | ) ) |
| | ) |
| Intervenors. | ) |

## INTERVENORS' MOTION TO DECERTIFY SETTLEMENT CLASS, VACATE PRELIMINARY APPROVAL ORDER, AND STRIKE CLASS ALLEGATIONS

Following the Eleventh Circuit's decision in *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017), Intervenors, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. ("*Cin-Q* Plaintiffs"), move for an Order granting the following relief:

- decertifying the Settlement Class on the basis that Technology Training Associates, Inc. and Larry Schwanke ("*TTA* Plaintiffs") are inadequate class representatives and Bock, Hatch, Lewis & Oppenheim ("*TTA* Counsel") are inadequate class counsel;

- vacating the Preliminary Approval Order in its entirety, because a class settlement cannot be approved unless a class can be certified, and no class can be certified—litigation class or settlement class—if Rule 23(a)(4) adequacy of representation is not satisfied; and

- striking *TTA* Plaintiffs' class-action allegations, because it is impossible for *TTA* Plaintiffs to demonstrate adequacy of representation, given the Eleventh Circuit's finding that

they have a "greater incentive to settle" due to "the <u>risk</u>" of the statute-of-limitations defense, and that *TTA* Counsels' interests are "aligned with those of Buccaneers" and adverse to the class.

The Court should stay all other proceedings pending a ruling on this Motion, including any discovery. No amount of discovery by *TTA* Plaintiffs can cure the fundamental flaws the Eleventh Circuit identified in *TTA* Plaintiffs' claims due to the risk of the statute of limitations, nor can any amount of discovery undo the Eleventh Circuit's factual findings that *TTA* Counsels' interests are "aligned with those of Buccaneers," and that the *TTA* Settlement is a result of their "Machiavellian plan" to "underbid" *Cin-Q* Plaintiffs in settlement negotiations with BLP.

Finally, after vacating the *TTA* Settlement, the Court should lift the stay in *Cin-Q Auto. Inc. v. Buccaneers Ltd. P'Ship*, No. 8:13-cv-1592-T-AEP ("the *Cin-Q* Action"), and grant *Cin-Q* Plaintiffs' Motion for Class Certification, filed March 25, 2016 (*Cin-Q* Doc. 207).

## <u>MEMORANDUM OF LAW</u>

As argued below, the *TTA* Settlement cannot survive the Eleventh Circuit's rulings that (1) *TTA* Plaintiffs are inadequate because, unlike *Cin-Q* Plaintiffs, they are subject to "the <u>risk</u>" of BLP's statute-of-limitations defense, and (2) *TTA* Counsel are inadequate because their interests are "aligned with" BLP's interests. *Tech. Training*, 874 F.3d at 697. Those rulings are the law of this case, and so the Settlement Class must be decertified and the Preliminary Approval Order vacated. Because the defects in *TTA* Plaintiffs' claims cannot be cured by substituting a new plaintiff (whose claims would also be subject to the same risk posed by the statute of limitations), the Court should strike *TTA* Plaintiffs' class claims and order that the *TTA* Action can proceed only as an individual action.

## PROCEDURAL HISTORY

### A.      The *Cin-Q* Litigation.

As the Eleventh Circuit recognized, *Cin-Q* Plaintiffs and BLP vigorously litigated the

*Cin-Q* Action for several years, during which "the parties conducted discovery," and "both sides

filed cross-motions for summary judgment," which the Court denied. *Tech. Training*, 874 F.3d at

694. *Cin-Q* Plaintiffs were finally permitted by this Court to file their Motion for Class

Certification on March 25, 2016, and "extended settlement negotiations" were unsuccessful. *Id.*

*Cin-Q* Plaintiffs' Motion for Class Certification laid out the evidence obtained through

years of hard-fought discovery, showing that BLP paid a fax broadcaster to successfully transmit

343,122 faxes advertising tickets to Tampa Bay Buccaneers football games to fax numbers in

West Central Florida in three large sets of broadcasts in July 2009, August 2009, and May–June

2010. (*Cin-Q* Doc. 207). *Cin-Q* Plaintiffs sought to certify three Classes (A, B, and C) based on

these broadcasts, and asked the Court to set the case for trial on the issue it identified in its Order

denying the parties' cross-motions for summary judgment: whether BLP is the "sender" of the

faxes. (*Id.* at 27).

*Cin-Q* Plaintiffs advised that BLP's potential liability was at least $171,561,000 at $500

per fax,[1] the statutory minimum, and that *Cin-Q* Plaintiffs intend to seek treble damages up to

$1,500 per violation, for an aggregate judgment up to $514,683,000, for BLP's "willful or

knowing" violations, especially for faxes sent after attorney Phyllis Towzey advised BLP's

General Counsel in writing in August 2009 that it was violating the TCPA, and after BLP was

---

[1] Damages are actually per "violation" of the statute or the FCC regulations, and not "per 'call' or 'fax.'"
*Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015).

served with the first class-action lawsuit arising out of the fax broadcasts filed against it in state

court in August 2009. (*Id.* at 29, 34).

**B.    *TTA* Counsels' "Machiavellian" Plan to "Underbid" *Cin-Q* Plaintiffs and the subsequent *TTA* Settlement.**

The Eleventh Circuit recounted the events that unfolded after *Cin-Q* Plaintiffs filed their

Motion for Class Certification. *Tech. Training*, 874 F.3d at 695. The Eleventh Circuit's "findings

of fact" are binding law of this case. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, --- F.3d ---,

2018 WL 626799, at *5 (11th Cir. Jan. 31, 2018) (Carnes, C.J.):

- Shortly after *Cin-Q* Plaintiffs filed their Motion for Class Certification, attorney

David Oppenheim left Anderson + Wanca and told the principal of his new firm, Phil Bock, that

the *Cin-Q* mediations failed because the principal of Anderson + Wanca, Brian Wanca,

"want[ed] to set a record" TCPA settlement by "extracting more than $75 million in damages

from Buccaneers," which BLP was unwilling to pay. *Tech. Training*, 874 F.3d at 695.

- Bock came up with a "'Machiavellian' plan" to "underbid" *Cin-Q* Plaintiffs and

settle the case with BLP, and sent an email to his co-counsel stating, "Hmm. Brian [Wanca]

holding out for a record settlement . . . . We could find a plaintiff and approach the defendant

about settling? Lol." *Id.*

- *TTA* Counsel found two willing plaintiffs, negotiated a settlement with BLP

without having a case on file, and then filed the *TTA* Action, along with a motion for preliminary

approval, informing the Court that *TTA* Plaintiffs "reached a settlement with Buccaneers under

which the class would receive up to $19.5 million in damages," *TTA* Counsel would receive "up

to twenty-five percent of the total settlement amount"—$4.875 million—and *TTA* Counsel

would "request incentive awards for the named plaintiffs." *Id.*

- Finally, "[b]ecause the [*TTA*] plaintiffs filed this case outside the four year limitations period for TCPA claims, the settlement agreement also contained a waiver by Buccaneers of any statute of limitations defense." *Id.*

*TTA* Plaintiffs and BLP filed their agreed motion for preliminary approval of the *TTA* Settlement on June 22, 2016, two days after BLP's response to *Cin-Q* Plaintiffs' Motion for Class Certification was due.

### C.     *Cin-Q* **Plaintiffs' Motion to Intervene.**

On July 8, 2016, *Cin-Q* Plaintiffs moved to intervene in the *TTA* Action in order to (1) move to strike *TTA* Plaintiffs' class claims as time-barred; (2) file their brief arguing this was a "reverse auction" settlement on its face; and (3) "if necessary, to oppose the motion for preliminary or final approval." (*TTA* Doc. 28, *Cin-Q* Pls.' Mot. Intervene at 3, ¶ 5). *Cin-Q* Plaintiffs argued that *TTA* Plaintiffs' class claims were subject to a "fatal defect" because they filed suit outside the four-year limitations period, as evidenced by BLP's agreement to "waive this dispositive defense" as a material term of the *TTA* Settlement. (*Id.* at 14).

*Cin-Q* Plaintiffs argued that, due to this defect in *TTA* Plaintiffs' case, *TTA* Plaintiffs "had no leverage whatsoever in the negotiations with BLP, and it shows," given the inadequate settlement terms. (*Id.*) *Cin-Q* Plaintiffs argued that *TTA* Plaintiffs "had to bargain with BLP on the statute of limitations in exchange for BLP allowing their claims to survive," since "defendants in multi-million-dollar class actions do not waive dispositive defenses for free." (*Id.* at 7). In contrast, *Cin-Q* Plaintiffs argued that they "do not need to bargain over a statute-of-limitations defense because their claims are timely." (*Id.*)

*Cin-Q* Plaintiffs argued that this defect in *TTA* Plaintiffs' claims was reflected in the inadequate settlement terms they negotiated, arguing there was no reason why this case should "settle for 11.3% of the potential statutory damages at $500 per fax, or 3.8% of the damages at

$1,500 per fax," given the strength of the case on the merits and BLP's ability to satisfy a judgment. (*Id.* at 7–8). *Cin-Q* Plaintiffs argued that the $19.5 million settlement was not "reasonable," and that *TTA* Plaintiffs accepted it only because "BLP has a 100% chance of victory against the [*TTA*] plaintiffs—given that their claims are barred and they cannot obtain class certification" absent BLP's consent, whereas "*Cin-Q* Plaintiffs' case is significantly more valuable, since they timely filed suit, survived BLP's dispositive motions, and moved for class certification." (*Id.* at 8).

### D.   The Court's hearing on October 20, 2016.

On August 11, 2016, this Court held a status conference and announced its intention to "make a determination after a fact-finding whether there is any conflict of interest given the nature of their relationship with Mr. Oppenheim and the former client." (*TTA* Doc. 42, Hr'g Tr., Aug. 11, 2016, at 6). The Court ruled that *Cin-Q* Plaintiffs would not be permitted to intervene or to participate in the hearing "because this is I believe the court's function and responsibility to make this determination initially." (*Id.* at 7).

On October 20, 2016, the Court held the evidentiary hearing. (*TTA* Doc. 63, Hr'g Tr., Oct. 20, 2016). At the start of the hearing, *TTA* Counsel tendered to the Court incomplete email correspondence from April 29, 2016 (which the Court marked as Exhibit 1), in which Oppenheim told Bock that *Cin-Q* Counsel were holding out for "record settlement" larger than BLP was willing to pay, which Bock forwarded to the rest of the attorneys in his firm, asking if they should "find a plaintiff and approach the defendant about settling? Lol." (*Id.* at 8).

Under examination by the Court, Bock testified that Oppenheim "never said what they offered, or what the Buc's were willing to pay, or anything like that," and testified that any confidential information Oppenheim obtained during the *Cin-Q* mediations would have been irrelevant to him in any case. (*Id.* at 41:21–23).

6

The Court asked Oppenheim, "at any point did you inform anyone at the Bock Firm about any information you gathered during the mediation process in the underlying litigation when you were at the Wanca Firm?" (*Id.* at 49:11–14). Oppenheim testified that "[a]part from the notation that you'll see in that April 29th email chain that Brian wanted to set the record for TCPA settlements, which I think is $75 million, which I think was something Phil knew anyway is a professional goal of Brian's, no." (*Id.* at 49:15–29).

On October 28, 2016, *Cin-Q* Plaintiffs filed a Motion for Leave to File Additional Evidence Germane to the Court's Examination of Plaintiff's Counsel, explaining that "[*TTA*] Plaintiffs' Counsel provided the Court incomplete email correspondence dated April 29, 2016" at the October 20, 2016 hearing, and that the emails provided at the hearing failed to include emails within *TTA* Counsels' custody and control showing Oppenheim disclosed additional confidential information to Bock that Oppenheim obtained in the *Cin-Q* mediations conducted with Hon. Wayne Andersen (Ret.). (Doc. 53 at 2). *Cin-Q* Plaintiffs did not attach these emails to their motion, but instead sought leave to file them under seal, as they were covered by the mediation privilege. (*Id.*)

On November 8, 2016, *TTA* Plaintiffs filed an Unopposed Supplemental Submission Regarding the Court's *Sua Sponte* Inquiry into the Issue of Whether Plaintiffs' Counsel Have a Disqualifying Conflict of Interest. (Doc. 54). *TTA* Plaintiffs attached the complete email correspondence (not under seal) from April 29, 2016, which contained the three additional emails that were not tendered to the Court at the October 20, 2016 hearing:

(1) Email from Oppenheim to Bock, stating: "They actually brought in Mark Mester with Latham & Watkins after having a jamoke named Barry Postman for much of the case."

(2) Email from Bock to Oppenheim, stating: "Mesters is a settler."

(3) Email from Oppenheim to Bock, stating: "That was Andersen's read," referring to the opinion of the mediator in the *Cin-Q* mediations.

(Doc. 54-3, PageID 1055).

On November 10, 2016, the Court denied "as moot" *Cin-Q* Plaintiffs' Motion for Leave to File Additional Evidence Germane to the Court's Examination of Plaintiff's Counsel (Doc. 53), stating that "[t]he documents at issue in the motion were provided by [*TTA*] Plaintiffs with their supplemental submission [54]." (*TTA* Doc. 55).

### E.     The Preliminary Approval Order and denial of intervention, and *Cin-Q* Plaintiffs' appeal to the Eleventh Circuit.

On March 31, 2017, the Court entered the Preliminary Approval Order granting BLP and *TTA* Plaintiffs all the relief they sought and ruling that "all of the relief requested by *Cin-Q* Plaintiffs is denied." (*TTA* Doc. 56, Order at 2). The Court denied *Cin-Q* Plaintiffs' motion to intervene, preliminarily approved the *TTA* settlement, and ordered that notice of the settlement be disseminated by mail and publication by May 30, 2017.[2] (*TTA* Doc. 56, Order at 42–44).

On April 14, 2017, *Cin-Q* Plaintiffs filed their Notice of Appeal to the Eleventh Circuit from the Court's March 31, 2017 Order. (*TTA* Doc. 58). On appeal, *Cin-Q* Plaintiffs argued, as they argued in this Court, that "this is *not* a case where an 'absent' class member receives notice of a proposed settlement and then seeks to object," but instead "a highly unusual case where *Cin-Q* Plaintiffs were on the verge of obtaining the class-certification ruling that they had pursued for years, and BLP responded by settling the case with two 'disarmed' plaintiffs who did not even have a case on file and whose class claims were time-barred (which is why BLP had to attempt to revive those claims by purporting to 'waive' the statute of limitations in the settlement

---

[2] The parties to the *TTA* Settlement did not disseminate class notice by May 30, 2017, nor do they appear to have notified this Court prior to May 30, 2017, that they decided not to send the notice.

agreement)." (Ex. A, *Cin-Q* Pls.' Br. at 21). *Cin-Q* Plaintiffs argued that, since *TTA* Plaintiffs'

claims "were subject to dismissal at BLP's whim" if they did not settle, *TTA* Plaintiffs could not

possibly provide adequate representation for *Cin-Q* Plaintiffs or the class. (*Id.* at 28).

In response, *TTA* Plaintiffs and BLP argued that *Cin-Q* Plaintiffs' appeal was

"ridiculous," "frivolous," and devoid of "legal or practical merit." (Ex. B, *TTA* Pls.' Resp. Br. at

iii, 27, 29; Ex. C, BLP Resp. Br. at 44). *TTA* Plaintiffs in particular argued that the statute-of-

limitations issue was "irrelevant" because BLP "waived it unconditionally and without regard to

whether the proposed settlement is approved," and "so [*Cin-Q* Plaintiffs'] claims that [*TTA*]

Plaintiffs are compromised are without merit." (Ex. B, *TTA* Pls.' Br. at 28–29). *TTA* Plaintiffs

argued that this Court "made extensive and detailed findings to support its conclusion that

Plaintiffs were adequate after an evidentiary hearing and voluminous submissions and

argument." (*Id.* at 26–27).

BLP agreed with *TTA* Plaintiffs, arguing that the suggestion that *TTA* Plaintiffs were

inadequate due to the statute of limitations was "totally meritless," in light of "BLP's express and

irrevocable waiver of any statute of limitations defense," and asserting that this Court properly

held BLP "validly waived" the defense. (Ex. C, BLP Resp. Br. at 45, n.45). BLP argued that this

Court "expressly held that [*TTA*] Plaintiffs 'adequately represent the interests of the class,' as

part of its Rule 23(a)(4) analysis," and that, since *Cin-Q* Plaintiffs "are members of the proposed

class," *TTA* Plaintiffs "*can* fairly represent them." (*Id.* at 49–50).

BLP also defended *TTA* Counsels' adequacy, arguing that this Court properly held that

"Oppenheim had not (1) 'obtain[ed] any protected confidential information during his

participation in the *Cin-Q Action*,' (2) 'reveal[ed] any information relating to his participation in

the *Cin-Q Action* with anyone at Bock Hatch,' or (3) 'participate[d] in' filing the subsequent

TCPA case on behalf of Plaintiffs." (*Id.* at 20). "Indeed," BLP argued, this Court properly "concluded that Bock Hatch had completely 'screen[ed]' Oppenheim off from this case." (*Id.*)

### F.     The Eleventh Circuit's Decision.

On October 26, 2017, the Eleventh Circuit decided *Cin-Q* Plaintiffs' appeal without oral argument. *Tech. Training*, 874 F.3d at 692. The Eleventh Circuit held that neither *TTA* Plaintiffs nor *TTA* Counsel can adequately represent *Cin-Q* Plaintiffs' interests, and so *Cin-Q* Plaintiffs must be allowed to intervene to oppose the *TTA* Settlement. *Id.* at 697–98.

With respect to *TTA* Plaintiffs, the Eleventh Circuit held that, although there is a "presumption" of adequacy, since *TTA* Plaintiffs and *Cin-Q* Plaintiffs are "pursuing the same general objective—vindicating the class' rights under the TCPA," *Cin-Q* Plaintiffs had "rebutted the presumption by pointing to the emails that showed that [*TTA* Counsel] was engaged in a 'Machiavellian' plan to undercut [*Cin-Q* Plaintiffs'] negotiating position." *Id.* at 697. The Eleventh Circuit held "[t]hat is more than 'some evidence' that the [*TTA*] plaintiffs are not acting as adequate representatives of the movants' interests." *Id.*

With the presumption of adequacy rebutted, the Eleventh Circuit considered whether *TTA* Plaintiffs in fact adequately represent *Cin-Q* Plaintiffs' interests, answering that question in the negative, and holding that *TTA* Plaintiffs are inadequate because they have a "greater incentive to settle" than *Cin-Q* Plaintiffs, given that "their claims may be barred by the statute of limitations if they cannot secure a waiver from Buccaneers, while [*Cin-Q* Plaintiffs] have no statute of limitations issue." *Id.* The Eleventh Circuit held that this "greater willingness" to settle "impeded [*TTA* Plaintiffs] from adequately representing the interests of" *Cin-Q* Plaintiffs. *Id.*

The Eleventh Circuit recognized that "the parties fiercely contest whether [*TTA* Plaintiffs'] claims are actually time barred," but held it need not resolve that dispute because "the risk" of that defense "gives [*TTA* Plaintiffs] a greater incentive to settle as compared to

movants," and that "<u>risk</u>" alone makes *TTA* Plaintiffs inadequate. *Id.* (emphasis in original). The Eleventh Circuit held that this "greater incentive to settle" is "evidenced by [*TTA* Plaintiffs] getting a waiver of the statute of limitations as part of the settlement," and that "[i]t is plain from the record" that *TTA* Plaintiffs' interests are "aligned with those of Buccaneers and adverse to the movants' interests," meaning they cannot represent *Cin-Q* Plaintiffs. *Id.* at 698. The Eleventh Circuit distinguished *Grilli v. Metro. Life Ins. Co.*, 78 F.3d 1533 (11th Cir. 1996), where a class member was denied intervention, holding *Grilli* "does not extend to cases like this one in which the existing parties do <u>not</u> adequately represent the movants' interest." *Id.* at 696, n.3 (emphasis in original).

With respect to *TTA* Counsel, the Eleventh Circuit stated that the "record appears to show" that they "deliberately underbid the movants in an effort to collect attorney's fees while doing a fraction of the work that the movants' counsel did." *Id.* at 697. The Eleventh Circuit stated that "[i]f, as it appears, Bock Hatch was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best possible settlement for the class, it violated its ethical duty to the class." *Id.* The Eleventh Circuit held, as it held with respect to *TTA* Plaintiffs, that *TTA* Counsels' interests are "aligned with those of Buccaneers and adverse to the movants' interests," and so they "cannot be expected" to provide adequate representation. *Id.* at 698.

### G.    Proceedings following the Eleventh Circuit's decision.

On January 29, 2018, this Court held a status hearing and stated, "it appears, based upon the remand, the Court should vacate Document No. 56, which was my order denying the motion to intervene, and scheduling, and accepting with a conditional acceptance of the class in the settlement as proposed by the plaintiffs." (Ex. D, Hr'g Tr., Jan. 29, 2018, at 4). *TTA* Counsel agreed that the Preliminary Approval Order must be vacated as to the denial of intervention, but argued "[i]t is far less clear that order requires the Court to also set aside and vacate its order of

11

preliminary approval of the class action settlement." (*Id.* at 4:14–19). The Court stated that, after *Cin-Q* Plaintiffs consent to the Court's jurisdiction, it would "take up whether the class certification conditional settlement should be set aside" in its entirety. (*Id.* at 19:7–9). The Court ordered that "if any" additional discovery is necessary, the parties should submit a "suggested schedule," although stating, "I would not anticipate much given the discovery that has taken place in the Judge Honeywell case." (*Id.* at 19:12–15). The Court stated, "to be clear, the pleading schedule is going to be the intervenor filing their motion and then any appropriate responses to that." (*Id.* at 22:19–21).

On February 12, 2018, *Cin-Q* Counsel notified counsel for BLP and *TTA* Plaintiffs (1) that *Cin-Q* Plaintiffs would be filing this Motion to vacate the *TTA* Settlement based solely on the Eleventh Circuit's decision, (2) that *Cin-Q* Plaintiffs' position is that no additional discovery is necessary or appropriate in the *TTA* Action, and (3) that *Cin-Q* Plaintiffs' position is that any objections BLP has to class certification in the *Cin-Q* Action should be raised in that case in response to *Cin-Q* Plaintiffs' Motion for Class Certification.

## ARGUMENT

As the Court contemplated at the hearing on January 29, 2018, it should "vacate Document No. 56," the Preliminary Approval Order, in its entirety. (Ex. D, Hr'g Tr. at 4:3–5). It is the law of this case that *TTA* Plaintiffs do not adequately represent *Cin-Q* Plaintiffs' interests due to "the <u>risk</u>" of BLP's statute-of-limitations defense, a risk *Cin-Q* Plaintiffs do not face in the timely *Cin-Q* Action. The same analysis applies to every other class member. Every person or entity sent BLP fax advertisements in 2009–2010 is safe from the statute of limitations in the timely *Cin-Q* Action, and so *TTA* Plaintiffs, who *are* subject to that "risk," are not adequate to

negotiate a settlement on behalf of the class. Because *TTA* Plaintiffs are inadequate, the Settlement Class must be decertified and the Preliminary Approval Order vacated.

In addition, the Eleventh Circuit also held that the interests of *TTA* Counsel, like *TTA* Plaintiffs, are "aligned with" BLP's interests and "adverse to" *Cin-Q* Plaintiffs. If *TTA* Counsels' interests are "adverse to" *Cin-Q* Plaintiffs' interests, then they are "adverse to" the rest of the class, as well. A class cannot be certified without adequate class counsel, which is an independent basis to decertify the Settlement Class and vacate the Preliminary Approval Order.

The Court should also strike *TTA* Plaintiffs' class allegations, since it is impossible for them to cure the conflict they have with the rest of the class arising from their failure to file suit within the four-year limitations period. No amount of discovery or further litigation can change the fact that *TTA* Plaintiffs filed suit more than four years after the faxes were sent. *Cin-Q* Plaintiffs take no position on whether the *TTA* Action can proceed as an individual action, but it cannot proceed as a putative class action following the Eleventh Circuit's ruling.

I.      **The Court should decertify the Settlement Class.**

A.      **Standard for class decertification.**

An order granting or denying class certification is subject to being "altered or amended" at any time "before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The standard for decertification is the same as the standard for certification: if it becomes clear that one of the "prerequisites" of Rule 23(a) are not met, or if the class fails one of the Rule 23(b) elements, the class must be decertified. *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1276 (11th Cir. 2007) (affirming class decertification based on intervening change in law, holding "district courts are free to revisit the initial decision to certify a class, in light of subsequent developments in the case").

**B.    The Settlement Class must be decertified because *TTA* Plaintiffs are inadequate representatives.**

The Eleventh Circuit's holding that *TTA* Plaintiffs cannot adequately represent *Cin-Q*

Plaintiffs' interests due to their "greater incentive to settle" is law of the case. *See Winn-Dixie*

*Stores, Inc. v. Dolgencorp, LLC*, --- F.3d ---, 2018 WL 626799, at *8 (11th Cir. Jan. 31, 2018)

(Carnes, C.J.). This Court must "tak[e] into account the appellate court's opinion . . . and the

circumstances it embraces," and "follow the appellate court's holdings, both expressed and

implied." *Piambino v. Bailey*, 757 F.2d 1112, 1119–20 (11th Cir. 1985) (internal citations

omitted). An issue that is not expressly addressed but "decided by necessary implication" is

covered by law of the case and the mandate rule. *Winn-Dixie*, 2018 WL 626799, at *8 (citing

*AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1270–71 (11th Cir.

2009); *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1294 (11th Cir. 2008) ("The law of the

case doctrine and the mandate rule apply to all issues decided expressly or by necessary

implication.")).

Here, the Eleventh Circuit ruled that *TTA* Plaintiffs are inadequate to represent *Cin-Q*

Plaintiffs due to the "<u>risk</u>" of the statute of limitations, which applies equally to every class

member. At the very least, the necessary implication of the ruling is that *TTA* Plaintiffs are

inadequate to represent *Cin-Q* Plaintiffs *or* the class. The same conflict that exists between *TTA*

Plaintiffs and *Cin-Q* Plaintiffs also exists between *TTA* Plaintiffs and every other class member.

Class members are not subject to the risk of the statute of limitations in the timely *Cin-Q* Action;

rather, like *Cin-Q* Plaintiffs, class members "have no statute of limitations issue." *Tech.*

*Training*, 874 F.3d at 697. Therefore, like *Cin-Q* Plaintiffs, the class members' interests cannot

be adequately represented by plaintiffs who (like *TTA* Plaintiffs) are subject to that risk. *See id.*

If Rule 23(a)(4) adequacy of representation is not satisfied, then no class can be maintained, either a settlement class or litigation class. In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997), for example, the Supreme Court affirmed decertification of a settlement class on adequacy grounds, holding that the interests of class representatives were "not aligned" with many of the class members. "Most saliently," the Court held, "for the currently injured, the critical goal is generous immediate payments," a goal that "tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id.*

In this case, the conflict between the class representatives and the class is even worse than it was in *Amchem* because the *Amchem* plaintiffs' interests were aligned with some (but not all) of the class members, whereas *TTA* Plaintiffs' interests are not aligned with *any* of the class members. Rather, as the Eleventh Circuit held—and as is the law of the case—*TTA* Plaintiffs' interests are "aligned with" BLP's interests. *Tech. Training*, 874 F.3d at 697. *TTA* Plaintiffs and their counsel had a "greater incentive" than *Cin-Q* Plaintiffs or the rest of the class to achieve a settlement, *any* settlement, because the alternative to settling on terms BLP found acceptable was to face "the <u>risk</u>" of a motion to dismiss based on the statute of limitations. *Id.*

*TTA* Plaintiffs and BLP argued before the Eleventh Circuit that the statute of limitations was "irrelevant" because BLP "waived" that defense as part of the *TTA* Settlement, and so *Cin-Q* Plaintiff's objections were "meritless" or "frivolous." (Ex. B, *TTA* Pls.' Resp. Br. at iii, 27, 29; Ex. C, BLP Resp. Br. at 44). The Eleventh Circuit rejected those arguments, holding that the waiver in the *TTA* Settlement was itself merely additional "evidence[]" of the "greater incentive to settle" that compromised *TTA* Plaintiffs and *TTA* Counsel in negotiating the *TTA* Settlement. *Tech. Training*, 874 F.3d at 697. Like *Cin-Q* Plaintiffs, the other class members are not subject to

this conflict in the timely *Cin-Q* Action, and the *TTA* Plaintiffs cannot represent the class following the Eleventh Circuit's decision.

### C. The Settlement Class should be decertified because *TTA* Counsel are inadequate class counsel.

Although the Settlement Class should be decertified based on the inadequacy of *TTA* Plaintiffs alone, the Eleventh Circuit also stated that the "record appears to show" that *TTA* Counsel "deliberately underbid the movants in an effort to collect attorney's fees while doing a fraction of the work that the movants' counsel did," and that "[i]f, as it appears, Bock Hatch was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best possible settlement for the class, it violated its ethical duty to the class." *Tech. Training*, 874 F.3d at 697. In addition to these statements regarding what "appears" to be the case, the Eleventh Circuit also *held*—with no conditional language—that *TTA* Counsels' interests are "aligned with those of Buccaneers and adverse to the movants' interests," making *TTA* Counsel inadequate. *Id.* at 698. *TTA* Counsel cannot act as class counsel following this ruling, and the fact that the *TTA* Settlement was negotiated by inadequate counsel means the settlement must be rejected. *Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014).

### D. No amount of discovery can undo the Eleventh Circuit's determination that *TTA* Plaintiffs and *TTA* Counsel are inadequate.

At the hearing on January 29, 2018, the parties discussed whether any discovery is necessary in the *TTA* Action following the Eleventh Circuit's decision. (Ex. D, Hr'g Tr. at 19–20). *Cin-Q* Plaintiffs' position is that no discovery is necessary in the *TTA* Action because nothing can cure the conflict between *TTA* Plaintiffs (who filed their action more than four years after BLP sent its faxes) and the class members (who are free from the statute-of-limitations defense in the timely *Cin-Q* Action). No amount of discovery will reveal that BLP's fax-advertising campaign actually took place in 2012–2013 (rather than 2009–2010), or that the *TTA*

Action was actually filed in 2013 (instead of June 2016). There is no way to avoid decertifying the *TTA* Settlement Class.

If any additional discovery is required prior to a ruling on *Cin-Q* Plaintiffs' Motion for Class Certification (and *Cin-Q* Plaintiffs do not agree that it is), that discovery should be conducted in the *Cin-Q* Action. *Cin-Q* Plaintiffs maintain that discovery in closed in the *Cin-Q* Action, and BLP waived its ability to even respond to *Cin-Q* Plaintiffs' Motion for Class Certification. Ultimately, however, the issue of whether class certification is granted in the *Cin-Q* Action has no bearing on whether the *TTA* Action can remain a certified class action following the Eleventh Circuit's decision (which it cannot). In sum, the *TTA* Settlement Class must be decertified.

## II.     The Court should vacate the Preliminary Approval Order in its entirety.

### A.     Standard for vacating preliminary approval.

The Court has broad authority to issue orders dealing with "procedural matters" arising from any "proposed settlement" under Rule 23(d) & (e). A proposed class settlement merits preliminary approval only so long as (1) "the requirements of Rule 23(a) and (b) are met"; (2) there are no "grounds to doubt its fairness or other obvious deficiencies"; and (3) the terms of the settlement "appear[] to fall within the range of possible approval." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007). In light of the Eleventh Circuit's decision, each of these factors requires vacating the Preliminary Approval Order.

### B.     Because Rule 23(a)(4) is not met, preliminary approval must be vacated.

As argued above, the "necessary implication" of the Eleventh Circuit's decision is that *TTA* Plaintiffs are inadequate class representatives and *TTA* Counsel are inadequate class counsel, since the "risk" of the statute of limitations gave them a "greater incentive to settle," compared to *Cin-Q* Plaintiffs and the rest of the class, who "have no statute of limitations issue."

*Tech. Training*, 874 F.3d at 697. Because the Settlement Class must be decertified for lack of Rule 23(a)(4) adequacy of representation, the Preliminary Approval Order must be vacated.

C. **The Eleventh Circuit identified "grounds to doubt" the fairness of the *TTA* Settlement and "obvious deficiencies."**

The Eleventh Circuit's review of the *TTA* Settlement identified several "grounds to doubt its fairness or other obvious deficiencies." *Figueroa*, 517 F. Supp. 2d at 1299. First, the Eleventh Circuit doubted that the settlement was negotiated fairly, given that *TTA* Counsel "engaged in a 'Machiavellian' plan to undercut [*Cin-Q* Plaintiffs'] negotiating position," which it held is "more than 'some evidence' that the [*TTA*] plaintiffs are not acting as adequate representatives of the movants' interests." *Tech. Training*, 874 F.3d at 697.

Second, the Eleventh Circuit doubted that the *TTA* Settlement was fairly negotiated, given that *TTA* Plaintiffs "have a greater incentive to settle because their claims may be barred by the statute of limitations if they cannot secure a waiver from Buccaneers, while [*Cin-Q* Plaintiffs] have no statute of limitations issue," regardless of whether *TTA* Plaintiffs' claims "are actually time barred," due to "the <u>risk</u>" they faced, "[w]hich is evidenced by the [*TTA*] plaintiffs' getting a waiver of the statute of limitations as part of the settlement." *Id.*

Third, the Eleventh Circuit doubted that the *TTA* Settlement was fair because it appeared that *TTA* Counsel was "motivated by a desire to grab attorney's fees instead of a desire to secure the best possible settlement for the class," and that it "violated its ethical duty to the class." *Id.*

In sum, the Eleventh Circuit recognized that the *TTA* Settlement was negotiated under highly suspicious circumstances, where BLP settled on a class basis with plaintiffs who were subject to a serious "risk" of losing their individual claims, while agreeing to pay the attorneys nearly $5 million for doing essentially nothing. The Eleventh Circuit's decision shows that the

*TTA* Settlement presents "grounds to doubt its fairness or other obvious deficiencies," *Figueroa*,

517 F. Supp. 2d at 1299, and the Court should vacate the Preliminary Approval Order.

> **D.     The terms of the *TTA* Settlement are not within the range of approval.**

As the Eleventh Circuit recognized, the core terms of the *TTA* Settlement are (1) BLP

will pay no more than "$19.5 million in damages," (2) *TTA* Counsel receives "up to twenty-five

percent of the total settlement amount," which is $4.875 million, and (3) BLP "waives" the

statute of limitations against *TTA* Plaintiffs to effectuate the deal. *Tech. Training*, 874 F.3d at

695. As *Cin-Q* Plaintiffs have consistently argued, these terms are not fair, reasonable, or

adequate to the class. (*E.g.*, *TTA* Doc. 28, *Cin-Q* Pls.' Mot. Intervene at 7–8, 14).

First, the amount of the *TTA* Settlement is too low. The minimum classwide damages

BLP faces in the *Cin-Q* Action is $171,561,000 based on 343,122 successful fax transmissions at

$500 per fax. If damages are trebled to $1,500 per fax for "willful or knowing" violations—

which is a strong possibility, at least for the faxes sent in 2010, because BLP's general counsel

signed off on the original fax campaign at the outset and BLP continued sending faxes the

following year, even after attorney Phyllis Towzey advised BLP's general counsel it was

violating the TCPA *and* after Cin-Q sued BLP for the 2009 campaign in the first class-action

lawsuit in state court in August 2009—the damages could reach $514,683,000 on a per-fax basis.

Given the strength of the case on the merits, the $19.5 million in the *TTA* Settlement is

not within "the range of possible recovery." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1327

(11th Cir. 2013). There is no indication that BLP cannot satisfy a classwide judgment. *Cf. id.*

(reversing approval of class settlement where conclusion that it was within the "range of

recovery" was based on erroneous finding that defendant was unable to satisfy judgment). And

neither BLP nor *TTA* Counsel have ever made any attempt to justify why this case should settle

for 11.3% of the potential statutory damages at $500 per fax, or 3.8% of the damages at $1,500

per fax (blended percentage of 7.55%). At the very least, *TTA* Plaintiffs and BLP have failed to meet *their* burden to explain why such a substantial discount would be appropriate. *See Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 313 (W.D.N.Y. 2016) (denying motion for preliminary approval where parties failed to establish why a settlement of 34.4% of the maximum potential recovery, "a substantial discount," was warranted).

      *TTA* Plaintiffs' motion for preliminary approval does not even discuss the potential recovery or compare it to the settlement amount, relegating the entire issue to a single sentence asserting that "[w]ithout the settlement, the Class might recover substantially less, if anything at all." (*TTA* Doc. 18 at 14). That might be true in any case; any plaintiff "might" lose at trial. That does not mean that *any* settlement amount over $0.00 is reasonable in relation to the expected value of the case. From an economic perspective, the $19.5 million settlement means that *TTA* Counsel believe BLP's chances of prevailing on the merits at trial are 88.7% to 96.2%. Actually, without the purported settlement, the chances of BLP prevailing at trial against *TTA* Plaintiffs is 100%, given that their claims are time-barred and they cannot obtain class certification. But *Cin-Q* Plaintiffs' case is significantly more valuable, because they timely filed suit, advanced the case though discovery and dispositive motions, and timely moved for class certification.

      In addition, this Court has already held that there is "[a]mple evidence" from which a jury could find the faxes were sent "on behalf of" BLP. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2014 WL 7224943, at *9 (M.D. Fla. Dec. 17, 2014). And even if *Cin-Q* Plaintiffs were to lose the "on behalf of" issue at trial, they would still have their appeal on whether BLP is liable as the "sender" solely because its "goods or services" are advertised in the faxes. *See* 47 C.F.R. § 64.1200(f)(10). This Court rejected that argument at summary judgment, but it recognized there is "substantial ground for difference of opinion" on the question. *Cin-Q Automobiles, Inc.*

*v. Buccaneers Ltd. P'ship*, 2015 WL 2092810, at *3 (M.D. Fla. May 5, 2015). Since that ruling, the Sixth Circuit applied the plain language of the regulation to faxes sent after the effective date, *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 636 (6th Cir. 2015), as have four other courts in this District. *See Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 232 F. Supp. 3d 1201, 1205 (M.D. Fla. 2017); *Senior Care Group, Inc. v. Red Parrot Distrib., Inc*., 2017 WL 3288288, at *2 (M.D. Fla. Aug. 1, 2017); *Arkin v. Innocutis Holdings, LLC*, 188 F. Supp. 3d 1304, 1308 (M.D. Fla. 2016); *JWD Auto., Inc. v. DJM Advisory Group, LLC*, 218 F. Supp. 3d 1335, 1341 (M.D. Fla. 2016). In sum, the expected value of the case against BLP—in an action like the *Cin-Q* Action, where the class representative does not have to bargain for a waiver of the statute-of-limitations defense—is significantly higher than $19.5 million, and the *TTA* Settlement is not within the reasonable range of approval.

Second, aside from the dollar amount of the settlement, the *TTA* Settlement imposes an onerous claims process on class members, combined with a reversion of unclaimed funds to BLP, a "red-flag" combination. *See De Leon v. Bank of Am., N.A. (USA)*, 2012 WL 2568142, at *15 (M.D. Fla. Apr. 20, 2012), adopted 2012 WL 2543586 (M.D. Fla. July 2, 2012). Under the *TTA* Settlement, claimants will be paid on a declining scale, from $350 for the first fax, declining to $100, $75, and $20 for subsequent faxes, up to a maximum of $565 per claimant, provided that claimants swear, "**UNDER PENALTY OF PERJURY**" and threat of "audit" by BLP, as to the number of BLP fax advertisements they received in 2009–2010, with the claim form stating "[i]f you believe you received more than one fax to the number(s) listed above," you must "indicate how many you believe you received at each number in parenthesis next to each number." (*TTA* Doc. 18-1). Class members would also be told there are only "partial records" of

the transmissions, and that "BLP has the right to audit this claim form and verify your statements and dispute any claims that are based on inaccurate responses." (*Id.*)

Contrary to the allegation that there are only "partial records," *Cin-Q* Plaintiffs gathered complete records over years of hard work that shows the number of transmissions to each targeted fax number. Although it may be reasonable to require class members to state how many faxes they believe they received in a case *without* such complete records, requiring class members to swear to the number of BLP faxes they received under penalty of perjury, or threat of "audit" by BLP, will suppress the claims rate, thus increasing the reversion to BLP and reducing BLP's "bottom line," which is all BLP is concerned with. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). There is also no good reason—at least BLP and *TTA* Plaintiffs have not provided one—that class members should be paid on a declining scale, or be capped at $565, even if they received faxes in all three broadcasts, entitling them to $1,500 (at $500 per fax) to $4,500 (at $1,500 per fax). The Federal Judicial Conference warns courts to be alert to "a claims process which serves as a choke on the total amount paid to class members," including "where class members are required to produce documents or proof that they are unlikely to have access to or to have retained." FJC, Judges' Class Action Checklist at 6.[3] Combined with the inadequate overall settlement amount, these "red flags" show that the *TTA* Settlement is not fair, reasonable, or adequate, and should be vacated.

### E. Because the parties to the *TTA* Settlement never sent class notice, the class need not be given notice of the decertification.

Ordinarily, where a class is certified and class notice has been sent, and the district court later decides to decertify the class, the district court should order class counsel to send (and pay

---

[3] http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf

for) a second notice notifying the class of the decertification. *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1338–39 (11th Cir. 2003). The purpose of such notice is "to alert the class that the statute of limitations for any individual claims, which was tolled upon the motion for class certification, will begin running again upon the dismissal of the action."[4] *Id.* Without notice of decertification, class members might "find themselves time barred without knowing it." *Id.* (quoting *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002)).

No such notice is necessary here because the parties to the *TTA* Settlement never published or sent the class notice in the first place, and because the statute of limitations is tolled by the timely *Cin-Q* Action. Since the class notice plan approved in the Preliminary Approval Order was never implemented, no confusion or prejudice will result from undoing the *TTA* Settlement and decertifying the Settlement Class.

**III.     The Court should strike *TTA* Plaintiffs' class allegations.**

    **A.     Standard on motion to strike class allegations.**

An order striking class allegations is appropriate where "it will be *impossible* to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove." *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012); *see also Griffin v. Singletary*, 17 F.3d 356, 361 (11th Cir. 1994) (affirming order "strik[ing] all class allegations" on basis of statute of limitations). If it is impossible for a plaintiff to obtain certification, the class

---

[4] Obviously, this rationale is limited to "individual claims," since the Eleventh Circuit does not allow tolling for class-action claims under any circumstances. *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) ("the pendency of a previously filed class action does *not* toll the limitations period for additional class actions by putative members of the original asserted class"); *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795 F.3d 1324, 1328 (11th Cir. 2015) (applying rule in TCPA fax case).

claims should be stricken to avoid "needless delay and expense," and the case should proceed individually. *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995).

> **B.      It is impossible for *TTA* Plaintiffs or *TTA* Counsel to achieve class certification in this case.**

The Eleventh Circuit's ruling that *TTA* Plaintiffs are inadequate to represent *Cin-Q* Plaintiffs due to the "risk" of the statute of limitations means that *TTA* Plaintiffs are also inadequate to represent the class. *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) (adequacy not met where class representatives had "fundamental conflict" with the class). The same conflict that exists between *TTA* Plaintiffs and *Cin-Q* Plaintiffs exists with respect to every class member. Class members "have no statute of limitations issue" in the *Cin-Q* Action, *Tech. Training*, 874 F.3d at 697, and so they cannot be adequately represented by plaintiffs who, like *TTA* Plaintiffs, would have to bargain for a waiver of that defense.

*TTA* Counsel cannot cure this problem by finding another plaintiff because any new plaintiff who filed suit today would, like *TTA* Plaintiffs, be subject to "the risk" of the statute of limitations and would have to bargain for a waiver of the statute of limitations from BLP. No such plaintiff could adequately represent the class, and since class certification is impossible in the *TTA* Action, the Court should strike the class allegations.

## CONCLUSION

For the foregoing reasons, the Court should (1) decertify the *TTA* Settlement Class; (2) vacate the Preliminary Approval Order in its entirety; and (3) strike *TTA* Plaintiffs' class allegations.

Respectfully submitted,

ADDISON LAW OFFICE, P.A.
1304 Alicia Avenue
Tampa, Florida 33604
Telephone: (813) 223-2000

Facsimile:  (813) 228-6000

 /s/ Michael C. Addison
Michael C. Addison
Florida Bar No. 0145579
m@mcalaw.net

and

Ryan M. Kelly (Fla. Bar No: 90110)
Ross M. Good (Fla. Bar No: 116405)
Glenn L. Hara (admitted *pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Facsimile:  (847) 368-1501
rkelly@andersonwanca.com
rgood@andersonwanca.com
ghara@andersonwanca.com

*Attorneys for Intervenors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

_/s/ Glenn L. Hara_____
Glenn L. Hara (admitted *pro hac vice*)