# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| TECHNOLOGY TRAINING ASSOCIATES, INC., *et al.*, ) ) ) | |
| Plaintiffs, ) | No. 8:16-cv-01622-AEP |
| ) | |
| v. ) | |
| ) | |
| BUCCANEERS LIMITED PARTNERSHIP, ) | |
| ) | |
| Defendant, ) | |
| _____ ) | |
| ) | |
| CIN-Q AUTOMOBILES, INC., and MEDICAL ) | |
| & CHIROPRACTIC CLINIC, INC., ) | |
| ) | |
| Intervenors. ) | |

## INTERVENORS' *RENEWED* MOTION TO DECERTIFY SETTLEMENT CLASS, VACATE PRELIMINARY
## APPROVAL ORDER, AND STRIKE CLASS ALLEGATIONS

Ryan M. Kelly (Fla. Bar No: 90110)
Ross M. Good (Fla. Bar No: 116405)
Glenn L. Hara (admitted *pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Facsimile:   (847) 368-1501
rkelly@andersonwanca.com
rgood@andersonwanca.com
ghara@andersonwanca.com

Michael C. Addison (Fla. Bar. No. 0145579)
ADDISON LAW OFFICE, P.A.
1304 Alicia Avenue
Tampa, Florida 33604
Telephone: (813) 223-2000
Facsimile:  (813) 228-6000
m@mcalaw.net

## **Table of Contents**

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... iii

Memorandum of Law .................................................................................................... 2

Procedural History ........................................................................................................ 4

      A.     The *Cin-Q* Litigation ......................................................................... 4

      B.     *TTA* Counsels' "Machiavellian" Plan and the subsequent *TTA* Settlement........... 5

      C.     *Cin-Q* Plaintiffs' Motion to Intervene ................................................. 6

      D.     The Court's hearing on October 20, 2016 ........................................... 7

      E.     The Preliminary Approval Order and denial of intervention, and *Cin-Q* Plaintiffs' appeal to the Eleventh Circuit .............................................................. 8

      F.     The Eleventh Circuit's Decision ........................................................ 9

      G.     Proceedings following the Eleventh Circuit's decision ..................................... 11

Argument ..................................................................................................................... 12

I.     *China Agritech* requires dismissal or the Striking of the *TTA* class allegations............... 13

II.    In the alternative, the Court should decertify the *TTA* Class, vacate preliminary approval, and strike class allegations under the Eleventh Circuit's decision .................................. 16

      A.     The *TTA* settlement class should be decertified .................................. 16

            1.     The Settlement should be decertified because *TTA* Plaintiffs are inadequate representatives ....................................................... 16

            2.     The Settlement Class should be decertified because *TTA* Counsel are inadequate class counsel ....................................................... 18

            3.     Because the parties to the *TTA* Settlement never sent class notice, the class need not be given notice of the decertification ........................................ 18

      B.     Preliminary approval should be vacated ............................................. 19

C.      The *TTA* class allegations should be stricken  ..................................................... 24

III.  The history of settlement negotiations in the *Cin-Q* Action has no bearing on the adequacy
      of *TTA* Plaintiffs or *TTA* Counsel, and in any case that history shows that *Cin-Q* Counsel
      adequately represented the interests of the class ............................................................... 25

Conclusion  ................................................................................................................................. 35

Certificate of Service  ................................................................................................................ 36

## <u>Tables of Authorities</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591, 627 (1997) ..................................................................................... 17

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................................... 2, 13, 14

*Arkin v. Innocutis Holdings, LLC*,
   188 F. Supp. 3d 1304, 1308 (M.D. Fla. 2016) ......................................................... 23

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) ................................................................... 1, 13, 15, 19

*Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*,
   2014 WL 7224943 (M.D. Fla. Dec. 17, 2014) ................................................... 2, 22

*Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*,
   2015 WL 2092810 (M.D. Fla. May 5, 2015) ......................................................... 23

*Culpepper v. Irwin Mortg. Corp.*,
   491 F.3d 1260 (11th Cir. 2007) ............................................................................ 16

*Day v. Persels & Assocs., LLC*,
   729 F.3d 1309 (11th Cir. 2013) ............................................................................ 21

*De Leon v. Bank of Am., N.A. (USA)*,
   2012 WL 2568142 (M.D. Fla. Apr. 20, 2012),
   *adopted* 2012 WL 2543586 (M.D. Fla. July 2, 2012) ............................................. 23

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ................................................................................ 18

*Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*,
   795 F.3d 1324, 1326 (11th Cir. 2015) ................................................................... 15

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................................. 19

*Grilli v. Metro. Life Ins. Co.*,
   78 F.3d 1533 (11th Cir. 1996) .............................................................................. 10

## **Table of Authorities**

**Cases**

*JWD Auto., Inc. v. DJM Advisory Group, LLC*,
  218 F. Supp. 3d 1335 (M.D. Fla. 2016) ................................................................. 23

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
  780 F.3d 1101 (11th Cir. 2015) ............................................................................. 4

*Lawson v. Life of the S. Ins. Co.*,
  286 F.R.D. 689 (M.D. Ga. 2012) .......................................................................... 25

*Griffin v. Singletary*,
  17 F.3d 356 (11th Cir. 1994) ........................................................................... 19, 25

*Lumpkin v. E.I. Du Pont de Nemours & Co.*,
  161 F.R.D. 480 (M.D. Ga. 1995) .......................................................................... 25

*Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc.*,
  116 F.2d 845 (2d Cir. 1941) ................................................................................... 1

*Piambino v. Bailey*,
  757 F.2d 1112 (11th Cir. 1985) ............................................................................ 16

*Resh v. China Agritech, Inc.*,
  2014 WL 12599849 (C.D. Cal. Dec. 1, 2014) ...................................................... 13

*Resh v. China Agritech, Inc.*,
  2015 WL 12781246 (C.D. Cal. Feb. 23, 2015) .................................................... 13

*Resh v. China Agritech, Inc.*,
  857 F.3d 994 (9th Cir. 2017) ............................................................................... 13

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ............................................................................... 24

*Scoma Chiropractic, P.A. v. Dental Equities, LLC*,
  232 F. Supp. 3d 1201 (M.D. Fla. 2017) .............................................................. 23

*SEC v. U.S. Realty & Improvement Co.*,
  310 U.S. 434 (1940) ............................................................................................... 1

## Table of Authorities

**Cases**

*Senior Care Group, Inc. v. Red Parrot Distrib., Inc.*,
   2017 WL 3288288 (M.D. Fla. Aug. 1, 2017)............................................................ 23

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
   874 F.3d 692 (11th Cir. 2017)..................................................................................... 1

*United States v. City of Hialeah*,
   899 F. Supp. 603 (S.D. Fla. 1994) ............................................................................. 1

*Valley Drug Co. v. Geneva Pharm., Inc.*,
   350 F.3d 1181 (11th Cir. 2003)................................................................................... 25

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
   881 F.3d 835 (11th Cir. 2018)................................................................................ 5, 16

*Zink v. First Niagara Bank, N.A.*,
   155 F. Supp. 3d 297 (W.D.N.Y. 2016) ..................................................................... 22

**Other Authorities**

http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf............................ 24
Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.) ...................................... 1

**Rules**

47 C.F.R. § 64.1200(f)(10) .............................................................................. 2, 22
Fed. R. Civ. P. 23 .................................................................................................. 14
Fed. R. Civ. P. 23(a) ..................................................................................... 16, 17, 19
Fed. R. Civ. P. 23(a)(4) ................................................................................. 9, 17. 20
Fed. R. Civ. P. 23(b) ............................................................................................ 19
Fed. R. Civ. P. 23(c)(1)(C) ................................................................................ 18
Fed. R. Civ. P. 23(d) ........................................................................................... 19
Fed. R. Civ. P. 23(e) ........................................................................................... 19

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| TECHNOLOGY TRAINING ASSOCIATES, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 8:16-cv-01622-AEP |
| v. | ) ) ) | |
| BUCCANEERS LIMITED PARTNERSHIP, | ) ) | |
| Defendant, | ) ) | |
| _____ | ) ) | |
| CIN-Q AUTOMOBILES, INC., and MEDICAL & CHIROPRACTIC CLINIC, INC., | ) ) ) | |
| Intervenors. | ) | |

**INTERVENORS' *RENEWED* MOTION TO DECERTIFY SETTLEMENT CLASS,
VACATE PRELIMINARY APPROVAL ORDER,
AND STRIKE CLASS ALLEGATIONS**

Intervenors, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. ("*Cin-Q*

Plaintiffs"), respectfully move the Court for an Order dismissing this case (the "*TTA* Action"), or

alternatively striking the class allegations, pursuant to the Supreme Court's decision in *China

Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).[1]

In the alternative, *Cin-Q* Plaintiffs respectfully renew their Motion for an Order granting

the following relief in light of the Eleventh Circuit's decision in this case, *Tech. Training

Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017):

---

[1] An intervenor "may move to dismiss the proceeding and may challenge the subject-matter jurisdiction of the court." Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.) (citing *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434 (1940); *Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc.*, 116 F.2d 845, 847 (2d Cir. 1941)); *see also United States v. City of Hialeah*, 899 F. Supp. 603, 608 (S.D. Fla. 1994) (holding intervenors "have the same rights as the original parties in this action"), *aff'd* 140 F.3d 968 (11th Cir. 1998).

- decertifying the *TTA* Settlement Class on the basis that Technology Training Associates, Inc. and Larry Schwanke ("*TTA* Plaintiffs")  are inadequate class representatives and Bock, Hatch, Lewis & Oppenheim ("*TTA* Counsel") are inadequate class counsel;

- vacating the Preliminary Approval Order in its entirety; and

- striking *TTA* Plaintiffs' class-action allegations, because it is "impossible" for *TTA* Plaintiffs to demonstrate adequacy of representation.

After granting this Motion, the Court should lift the stay in *Cin-Q Auto. Inc. v. Buccaneers Ltd. P'Ship*, No. 8:13-cv-1592-T-AEP ("the *Cin-Q* Action"), grant *Cin-Q* Plaintiffs' Motion for Class Certification (*Cin-Q* Doc. 207), and set the *Cin-Q* Action for trial on whether BLP is a "sender" of the faxes at issue, as defined by 47 C.F.R. § 64.1200(f)(10). *See Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2014 WL 7224943, at *8–9 (M.D. Fla. Dec. 17, 2014).

## MEMORANDUM OF LAW

In *China Agritech*, the Supreme Court held that federal law "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech*, 138 S. Ct. at 1804. The Court gave two independent reasons for this bright-line rule: (1) that "[t]he 'efficiency and economy of litigation' that support tolling of individual claims" under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), "do not support maintenance of" an untimely class action; and (2) that equitable tolling requires a plaintiff to "have been diligent," but "[a] would-be class representative who commences suit after expiration of the limitation period . . . can hardly qualify as diligent," and so the untimely plaintiff's "interest in representing the class" is not "preserved by" a prior suit. *Id.* at 1808.

Neither of the two *China Agritech* rationales depends in any way on the defendant asserting (or not asserting) a statute-of-limitations defense. Rather, they form a policy-based

2

directive from the Supreme Court to the federal courts not to allow untimely, successive class actions. The district court ruling that was affirmed in *China Agritech* dismissed the entire action as untimely, and this Court should do the same with the *TTA* Action. *China Agritech*, 138 S. Ct. at 1805. At the very least, under the second prong of *China Agritech*, the *TTA* Plaintiffs' class allegations should be stricken because they were not "diligent" in asserting their claims, and so their "interest in representing the class" expired long before they filed suit. *Id.* at 1807, n.2.

In the alternative, if the Court does not dismiss or strike under *China Agritech*, the *TTA* Settlement cannot survive the Eleventh Circuit's rulings in reversing the denial of intervention in this case where (1) *TTA* Plaintiffs are inadequate to represent *Cin-Q* Plaintiffs because, unlike *Cin-Q* Plaintiffs, they are subject to "the <u>risk</u>" of BLP's statute-of-limitations defense, and (2) *TTA* Counsel are inadequate to represent *Cin-Q* Plaintiffs because their interests are "aligned with" BLP's interests. *Tech. Training*, 874 F.3d at 697. Those rulings are the law of the case, and they apply equally to the rest of the class. Thus, even if the Court does not dismiss or strike based on *China Agritech*, it should decertify the *TTA* settlement class, vacate preliminary approval, and strike *TTA* Plaintiffs' class claims under the Eleventh Circuit's decision.

Finally, as discussed in Section III, below, the settlement negotiations in the *Cin-Q* Action in 2015–2016, on which the Court allowed limited discovery prior to filing of this *Renewed* Motion, have no bearing on whether an untimely class action may be maintained following *China Agritech* or on the adequacy of *TTA* Plaintiffs or *TTA* Counsel following the Eleventh Circuit's opinion. To the extent the Court finds the *Cin-Q* negotiations relevant, it should review the timeline of those negotiations outlined in Section III and conclude (1) that *Cin-Q* Counsel adequately represented the class at all times; (2) that *Cin-Q* Counsel had every right to reject a pennies-on-the-dollar settlement offer from BLP; and (3) that the representations

3

that have repeatedly been made to this Court that there was some agreement between *Cin-Q* Plaintiffs and BLP on the material terms of a classwide settlement, but for the "stumbling block" of *Cin-Q* Counsels' attorney fees, are false.

## PROCEDURAL HISTORY

### A.      The *Cin-Q* Litigation.

As the Eleventh Circuit held, *Cin-Q* Plaintiffs and BLP litigated the *Cin-Q* Action for several years, during which "the parties conducted discovery," and "both sides filed cross-motions for summary judgment," which were denied. *Tech. Training*, 874 F.3d at 694. *Cin-Q* Plaintiffs were finally permitted to file their Motion for Class Certification on March 25, 2016, and "extended settlement negotiations" before and after that motion were unsuccessful.[2] *Id.*

*Cin-Q* Plaintiffs' Motion for Class Certification laid out the evidence they obtained through years of hard-fought discovery, showing that BLP paid a fax broadcaster to successfully transmit 343,122 faxes advertising tickets to Tampa Bay Buccaneers football games to fax numbers in West Central Florida in three large sets of broadcasts in July 2009, August 2009, and May–June 2010. (*Cin-Q* Doc. 207). *Cin-Q* Plaintiffs sought to certify three Classes (A, B, and C) corresponding to these sets of broadcasts, and asked the Court to set the case for trial on the issue it identified in its Order denying the parties' cross-motions for summary judgment: whether BLP is the "sender" of the faxes. *Id.* at 27.

*Cin-Q* Plaintiffs advised that BLP's potential liability was at least $171,561,000 at $500 per fax,[3] the statutory minimum, and that *Cin-Q* Plaintiffs intended to seek treble damages up to $1,500 per violation, for an aggregate judgment up to $514,683,000, for BLP's "willful or

---

[2] The *Cin-Q* settlement negotiations are discussed in detail in Section III, below.

[3] Damages are actually per "violation" of the statute or the FCC regulations, and not "per 'call' or 'fax.'" *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015).

knowing" violations, especially for the 2010 faxes sent after attorney Phyllis Towzey advised

BLP's General Counsel in writing that BLP was violating the TCPA, and after BLP was served

with the first class-action lawsuit arising out of the 2009 broadcasts in state court. *Id.* at 29, 34.

**B.**     ***TTA* Counsels' "Machiavellian" Plan and the subsequent *TTA* Settlement.**

The Eleventh Circuit recounted the events that unfolded after *Cin-Q* Plaintiffs filed their

Motion for Class Certification. *Tech. Training*, 874 F.3d at 695. The Eleventh Circuit's "findings

of fact" are binding law of the case. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835,

843 (11th Cir. 2018):

- Shortly after *Cin-Q* Plaintiffs filed their Motion for Class Certification, attorney
David Oppenheim left Anderson + Wanca and told the principal of his new firm, Phil Bock, that
the *Cin-Q* mediations failed because the principal of Anderson + Wanca, Brian Wanca,
"want[ed] to set a record" TCPA settlement by "extracting more than $75 million in damages
from Buccaneers," an amount Oppenheim told Bock that BLP was unwilling to pay. *Tech.
Training*, 874 F.3d at 695.

- Bock came up with a "'Machiavellian' plan" to "underbid" *Cin-Q* Plaintiffs and
settle the case with BLP, and sent an email to his co-counsel stating, "Hmm. Brian [Wanca]
holding out for a record settlement . . . . We could find a plaintiff and approach the defendant
about settling? Lol." *Id.*

- *TTA* Counsel found two willing plaintiffs, negotiated a settlement with BLP
without having a case on file, and then filed the *TTA* Action, along with a motion for preliminary
approval, informing the Court that *TTA* Plaintiffs "reached a settlement with Buccaneers under
which the class would receive up to $19.5 million in damages," *TTA* Counsel would receive "up

to twenty-five percent of the total settlement amount"—$4.875 million—and *TTA* Counsel

would "request incentive awards for the named plaintiffs." *Id.*

- Finally, "[b]ecause the [*TTA*] plaintiffs filed this case outside the four year

limitations period for TCPA claims, the settlement agreement also contained a waiver by

Buccaneers of any statute of limitations defense." *Id.*

*TTA* Plaintiffs and BLP filed their agreed motion for preliminary approval of the *TTA*

Settlement on June 22, 2016, two days after BLP's response to *Cin-Q* Plaintiffs' Motion for

Class Certification was due.

### C. *Cin-Q* Plaintiffs' Motion to Intervene.

On July 8, 2016, *Cin-Q* Plaintiffs moved to intervene in the *TTA* Action in order to (1)

move to strike *TTA* Plaintiffs' class claims as time-barred; (2) file their brief arguing this was a

"reverse auction" settlement on its face; and (3) "if necessary, to oppose the motion for

preliminary or final approval." (*TTA* Doc. 28, *Cin-Q* Pls.' Mot. Intervene at 3, ¶ 5). *Cin-Q*

Plaintiffs argued that *TTA* Plaintiffs' class claims were subject to a "fatal defect" because they

filed suit outside the four-year limitations period, as evidenced by BLP's agreement to "waive

this dispositive defense" as a material term of the *TTA* Settlement. *Id.* at 14.

*Cin-Q* Plaintiffs argued that, due to this defect in *TTA* Plaintiffs' case, *TTA* Plaintiffs "had

no leverage whatsoever in the negotiations with BLP, and it shows," given the inadequate

settlement terms. *Id. Cin-Q* Plaintiffs argued that "defendants in multi-million-dollar class

actions do not waive dispositive defenses for free," and this conflict made *TTA* Plaintiffs

inadequate class representatives. *Id.* at 7. In contrast, *Cin-Q* Plaintiffs argued that they "do not

need to bargain over a statute-of-limitations defense because their claims are timely." *Id.*

*Cin-Q* Plaintiffs argued that this defect in *TTA* Plaintiffs' claims was reflected in the

inadequate settlement terms they negotiated, arguing there was no reason why this case should

"settle for 11.3% of the potential statutory damages at $500 per fax, or 3.8% of the damages at $1,500 per fax," given the strength of the case and BLP's ability to satisfy a judgment. *Id.* at 7–8. *Cin-Q* Plaintiffs argued that the $19.5 million settlement was not "reasonable," and that *TTA* Plaintiffs accepted it only because "BLP has a 100% chance of victory against the [*TTA*] plaintiffs—given that their claims are barred and they cannot obtain class certification" absent BLP's consent, whereas "*Cin-Q* Plaintiffs' case is significantly more valuable, since they timely filed suit, survived BLP's dispositive motions, and moved for class certification." *Id.* at 8.

### D.      The Court's hearing on October 20, 2016.

On August 11, 2016, this Court held a status conference and announced its intention to "make a determination after a fact-finding whether there is any conflict of interest given the nature of their relationship with Mr. Oppenheim and the former client." (*TTA* Doc. 42, Hr'g Tr., Aug. 11, 2016, at 6). The Court ruled that *Cin-Q* Plaintiffs would not be permitted to intervene or to participate in the hearing "because this is I believe the court's function and responsibility to make this determination initially." *Id.* at 7.

On October 20, 2016, the Court held the evidentiary hearing. (*TTA* Doc. 63, Hr'g Tr., Oct. 20, 2016). At the start of the hearing, *TTA* Counsel tendered to the Court incomplete email correspondence from April 29, 2016 (which the Court marked as Exhibit 1), in which Oppenheim told Bock that *Cin-Q* Counsel were holding out for "record settlement" larger than BLP was willing to pay, which Bock forwarded to the rest of the attorneys in his firm, asking if they should "find a plaintiff and approach the defendant about settling? Lol." *Id.* at 8.

After *Cin-Q* Plaintiffs filed a motion pointing out that this email correspondence was incomplete (Doc. 53 at 2), *TTA* Plaintiffs filed the complete email correspondence from April 29, 2016, which contained three additional emails that were not tendered to the Court at the October 20, 2016 hearing:

(1) Email from Oppenheim to Bock, stating: "They actually brought in Mark Mester with Latham & Watkins after having a jamoke named Barry Postman for much of the case."

(2) Email from Bock to Oppenheim, stating: "Mesters is a settler."

(3) Email from Oppenheim to Bock, stating: "That was Andersen's read," thus conveying to Bock the opinion of BLP's new counsel that the mediator in the *Cin-Q* mediation, Hon. Wayne Andersen (Ret.), had expressed to Oppenheim. (*TTA* Doc. 54-3, PageID 1055).

### E.     The Preliminary Approval Order and denial of intervention, and *Cin-Q* Plaintiffs' appeal to the Eleventh Circuit.

On March 31, 2017, the Court entered a Preliminary Approval Order granting BLP and *TTA* Plaintiffs all the relief they sought and ruling that "all of the relief requested by *Cin-Q* Plaintiffs is denied." (*TTA* Doc. 56 at 2). The Court denied *Cin-Q* Plaintiffs' motion to intervene, preliminarily approved the *TTA* settlement, and ordered that notice of the settlement be disseminated by mail and publication by May 30, 2017.[4] *Id.* at 42–44.

On April 14, 2017, *Cin-Q* Plaintiffs appealed to the Eleventh Circuit from the Court's March 31, 2017 Order. (*TTA* Doc. 58). On appeal, *Cin-Q* Plaintiffs argued, as they argued in this Court, that "this is *not* a case where an 'absent' class member receives notice of a proposed settlement and then seeks to object," but instead "a highly unusual case where *Cin-Q* Plaintiffs were on the verge of obtaining the class-certification ruling that they had pursued for years, and BLP responded by settling the case with two 'disarmed' plaintiffs who did not even have a case on file and whose class claims were time-barred (which is why BLP had to attempt to revive those claims by purporting to 'waive' the statute of limitations in the settlement agreement)." (*TTA* Doc.  91-1, *Cin-Q* Pls.' Br. at 21). *Cin-Q* Plaintiffs argued that, since *TTA* Plaintiffs' claims

---

[4] Contrary to the Court's Order, the parties to the *TTA* Settlement did not disseminate class notice by May 30, 2017, nor did they notify this Court prior to that date that they had decided not to send the notice.

"were subject to dismissal at BLP's whim" if they did not settle, *TTA* Plaintiffs could not possibly provide adequate representation for *Cin-Q* Plaintiffs or the class. *Id.* at 28.

In response, *TTA* Plaintiffs and BLP argued that *Cin-Q* Plaintiffs' appeal was "ridiculous," "frivolous," and devoid of "legal or practical merit." (*TTA* Doc. 91-2, *TTA* Pls.' Resp. Br. at iii, 27, 29; *TTA* Doc. 91-3, BLP Resp. Br. at 3, 44). *TTA* Plaintiffs argued that the statute-of-limitations issue was "irrelevant" because BLP "waived it unconditionally and without regard to whether the proposed settlement is approved," and "so [*Cin-Q* Plaintiffs'] claims that [*TTA*] Plaintiffs are compromised are without merit." (*TTA* Doc. 91-2, *TTA* Pls.' Br. at 28–29).

BLP agreed with *TTA* Plaintiffs, arguing that the suggestion that *TTA* Plaintiffs were inadequate due to the statute of limitations was "totally meritless," in light of "BLP's express and irrevocable waiver of any statute of limitations defense," and asserting that this Court properly held BLP "validly waived" the defense. (*TTA* Doc. 91-3, BLP Resp. Br. at 45, n.12). BLP argued that this Court "expressly held that [*TTA*] Plaintiffs 'adequately represent the interests of the class,' as part of its Rule 23(a)(4) analysis," and that, since *Cin-Q* Plaintiffs "are members of the proposed class," *TTA* Plaintiffs "*can* fairly represent them." *Id.* at 49–50. BLP also defended *TTA* Counsels' adequacy, arguing they had acted wholly properly. *Id.*

### F.    The Eleventh Circuit's Decision.

On October 26, 2017, the Eleventh Circuit decided *Cin-Q* Plaintiffs' appeal without oral argument. *Tech. Training*, 874 F.3d at 692. The Eleventh Circuit held that neither *TTA* Plaintiffs nor *TTA* Counsel can adequately represent *Cin-Q* Plaintiffs' interests, and so *Cin-Q* Plaintiffs must be allowed to intervene to oppose the *TTA* Settlement. *Id.* at 697–98.

With respect to *TTA* Plaintiffs, the Eleventh Circuit held that, although there is a "presumption" of adequacy, since *TTA* Plaintiffs and *Cin-Q* Plaintiffs are "pursuing the same general objective—vindicating the class' rights under the TCPA," *Cin-Q* Plaintiffs had "rebutted

the presumption by pointing to the emails that showed that [*TTA* Counsel] was engaged in a 'Machiavellian' plan to undercut [*Cin-Q* Plaintiffs'] negotiating position." *Id.* at 697. The Eleventh Circuit held "[t]hat is more than 'some evidence' that the [*TTA*] plaintiffs are not acting as adequate representatives of the movants' interests." *Id.*

With the presumption of adequacy rebutted, the Eleventh Circuit considered whether *TTA* Plaintiffs in fact adequately represent *Cin-Q* Plaintiffs' interests, holding that *TTA* Plaintiffs are inadequate because they have a "greater incentive to settle" than *Cin-Q* Plaintiffs, given that "their claims may be barred by the statute of limitations if they cannot secure a waiver from Buccaneers, while [*Cin-Q* Plaintiffs] have no statute of limitations issue." *Id.* The Eleventh Circuit held that this "greater willingness" to settle in fact "impeded [*TTA* Plaintiffs] from adequately representing the interests of" *Cin-Q* Plaintiffs. *Id.*

The Eleventh Circuit recognized that "the parties fiercely contest whether [*TTA* Plaintiffs'] claims are actually time barred," but held it need not resolve that dispute because "the risk" of that defense "gives [*TTA* Plaintiffs] a greater incentive to settle as compared to movants," and that "risk" alone makes *TTA* Plaintiffs inadequate. *Id.* The Eleventh Circuit held this "greater incentive to settle" is "evidenced by [*TTA* Plaintiffs] getting a waiver of the statute of limitations as part of the settlement," and that "[i]t is plain from the record" that *TTA* Plaintiffs' interests are "aligned with those of Buccaneers and adverse to the movants' interests," meaning they cannot represent *Cin-Q* Plaintiffs. *Id.* at 698. The Eleventh Circuit distinguished *Grilli v. Metro. Life Ins. Co.*, 78 F.3d 1533 (11th Cir. 1996), where a class member was denied intervention, holding *Grilli* "does not extend to cases like this one in which the existing parties do not adequately represent the movants' interest." *Id.* at 696, n.3.

With respect to *TTA* Counsel, the Eleventh Circuit stated that the "record appears to show" that they "deliberately underbid the movants in an effort to collect attorney's fees while doing a fraction of the work that the movants' counsel did." *Id.* at 697. The Eleventh Circuit stated that "[i]f, as it appears, Bock Hatch was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best possible settlement for the class, it violated its ethical duty to the class." *Id.* The Eleventh Circuit held, as it held with respect to *TTA* Plaintiffs, that *TTA* Counsels' interests are "aligned with those of Buccaneers and adverse to the movants' interests," and so they "cannot be expected" to provide adequate representation. *Id.* at 698.

### G.   Proceedings following the Eleventh Circuit's decision.

On January 29, 2018, this Court held a status hearing and stated, "it appears, based upon the remand, the Court should vacate Document No. 56, which was my order denying the motion to intervene, and scheduling, and accepting with a conditional acceptance of the class in the settlement as proposed by the plaintiffs." (Ex. 1, Hr'g Tr., Jan. 29, 2018, at 4). *TTA* Counsel agreed that the Preliminary Approval Order must be vacated as to the denial of intervention, but argued "[i]t is far less clear that order requires the Court to also set aside and vacate its order of preliminary approval of the class action settlement." *Id.* at 4:14–19. The Court stated that it would "take up whether the class certification conditional settlement should be set aside" in its entirety, and ordered that "if any" additional discovery is necessary, the parties should raise the issue. *Id.* at 19:7–15. The Court stated, "to be clear, the pleading schedule is going to be the intervenor[s] filing their motion and then any appropriate responses to that." *Id.* at 22:19–21.

On August 3, 2018, the Court granted in part and denied in part *TTA* Plaintiffs' Motion for Order Allowing and Compelling Discovery, allowing *TTA* Plaintiffs to obtain "the formalized communications either between the parties or with the mediator" regarding settlement

negotiations in 2015–2016 in the *Cin-Q* Action. (*TTA* Doc. 116-2, Hr.'g Tr., Aug. 3, 2018, at 10:13–14), which *Cin-Q* Plaintiffs subsequently produced.

## ARGUMENT

The *TTA* Action should be dismissed, or the class claims stricken, based on the Supreme Court's pronouncement in *China Agritech* that federal law simply "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech*, 138 S. Ct. at 1804. Following that decision, a putative class action filed after the expiration of the statute of limitations simply cannot be "maintained," regardless of whether or not the defendant asserts a statute-of-limitations defense.

Aside from *China Agritech*, as the Court contemplated at the hearing on January 29, 2018, it should "vacate Document No. 56," the Preliminary Approval Order, in its entirety based on the rationale of the Eleventh Circuit's decision reversing the denial of intervention. (Ex. 1, Hr'g Tr., Jan. 29, 2018, at 4:3–5). It is the law of this case that *TTA* Plaintiffs do not adequately represent *Cin-Q* Plaintiffs' interests due to "the risk" of BLP's statute-of-limitations defense, and the same analysis applies to every other class member, all of whom are safe from the statute of limitations in the timely *Cin-Q* Action. *TTA* Plaintiffs, who *are* subject to that "risk," are not adequate to negotiate a settlement on behalf of the class. Because *TTA* Plaintiffs are inadequate, the Settlement Class must be decertified and the Preliminary Approval Order vacated.

As to *TTA* Counsel, the Eleventh Circuit expressly held their interests are "aligned with" BLP's interests and "adverse to" *Cin-Q* Plaintiffs. If *TTA* Counsels' interests are "adverse to" *Cin-Q* Plaintiffs' interests, then they are "adverse to" the rest of the class, as well. A class cannot be certified without adequate class counsel, which is an independent basis to decertify the Settlement Class and vacate the Preliminary Approval Order.

After decertifying the *TTA* settlement class and vacating preliminary approval, the Court should strike *TTA* Plaintiffs' class allegations because it is impossible for them to cure the fatal conflict they have with the rest of the class arising from their failure to file suit within the four-year limitations period. Nothing can change the fact that *TTA* Plaintiffs filed suit more than four years after the faxes were sent. The *TTA* Action cannot proceed as a class action.

Finally, as discussed in Section III, below, the history of settlement negotiations in the *Cin-Q* Action, on which this Court allowed limited discovery prior to the filing of this Motion, has no bearing on the Supreme Court's ruling in *China Agritech* or the adequacy of *TTA* Plaintiffs or *TTA* Counsel under the Eleventh Circuit's decision, and the *Cin-Q* negotiations show that *Cin-Q* Counsel adequately represented the class in seeking a reasonable settlement and in rejecting BLP's pennies-on-the-dollar settlement offer.

## I.     *China Agritech* requires dismissal or the striking of the *TTA* class allegations.

In *China Agritech*, the district court dismissed a putative class action filed after expiration of the statute of limitations, holding *American Pipe* did not apply to successive class actions, *Resh v. China Agritech, Inc.*, 2014 WL 12599849, at *5 (C.D. Cal. Dec. 1, 2014), and denied reconsideration, ruling that "Plaintiffs are not prevented from filing a complaint asserting individual, rather than class action, claims against [the defendants] if they so choose," *Resh v. China Agritech, Inc.*, 2015 WL 12781246, at *2 (C.D. Cal. Feb. 23, 2015). The Ninth Circuit reversed, holding *American Pipe* tolled the statute of limitations during the pendency of an earlier putative class action. *Resh v. China Agritech, Inc.*, 857 F.3d 994, 1005 (9th Cir. 2017).

The Supreme Court reversed the Ninth Circuit and affirmed the district court's dismissal, laying down a bright-line rule that "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech*, 138 S. Ct. at1804. The Supreme Court provided two rationales for this rule.

13

First, the Court reasoned that "[t]he 'efficiency and economy of litigation' that support tolling of individual claims" under *American Pipe* "do not support maintenance of" an untimely class action. *Id.* at 1806. The Court held "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." *Id.* The Court noted that Rule 23 itself "evinces a preference for preclusion of untimely successive class actions by instructing that class certification should be resolved early on," at an "early practicable time." *Id.* at 1807. The Court held that "[e]ncouraging early class filings will help ensure sufficient time remains under the statute of limitations, in the event that certification is denied for one of the actions or a portion of the class," and ensure that "as class discovery proceeds and weaknesses in the class theory or adequacy of representation come to light, the lead complaint might be amended or a new plaintiff might intervene." *Id.* at 1807, n.2.

Second, the Court reasoned that *American Pipe* is a doctrine of "equitable tolling," which requires plaintiffs to "demonstrate that they have been diligent in pursuit of their claims." *Id.* at 1808. The Court held that "[a] would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief," and so "[h]er interest in representing the class as lead plaintiff . . . would not be preserved by the prior plaintiff's timely filed class suit." *Id.*

Justice Sotomayor concurred in the judgment under the particular circumstances, but objected to the majority's "blanket no-tolling-of-class-claims-ever rule," arguing that class members in most Rule 23 class actions "are most likely unaware of the existence of a putative class action." *Id.* at 1814 (Sotomayor, J., concurring)). The majority rejected this argument, broadly holding that "sooner rather than later filings are just what Rule 23 encourages," and that its new policy of "allowing no tolling for out-of-time class actions" will "propel putative class

representatives to file suit well within the limitation period and seek certification promptly," as well as having the benefit of preventing "limitless bites at the apple." *Id.* at 1808 (quoting *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795 F.3d 1324, 1326 (11th Cir. 2015)).

Applied to this case, *China Agritech* requires dismissal of *TTA* Plaintiffs' case, or at the very least striking the class allegations and decertifying the *TTA* settlement class, regardless of BLP's agreement not to raise a statute-of-limitations defense in exchange for *TTA* Plaintiffs' agreement to the terms of the *TTA* Settlement. *China Agritech* simply "does not permit the maintenance of" *TTA* Plaintiffs' class action after the statute of limitations has expired, and the two policy rationales upon which the Court based this rule squarely apply to this case.

BLP's contractual agreement not to assert the statute of limitations as a defense in exchange for *TTA* Plaintiffs' agreement to accept the terms of the *TTA* Settlement makes no difference because *TTA* Plaintiffs' "interest[s] in representing the class" were "not . . . preserved by" the pendency of the *Cin-Q* Action, given *TTA* Plaintiffs' lack of "diligence" in filing suit. The Supreme Court has adopted "a blanket no-tolling-of-class-claims-ever rule," and because *TTA* Plaintiffs' interests in acting as class representatives were not "preserved," they simply cannot maintain a class action under *China Agritech*, regardless of whether BLP has agreed not to assert a statute-of-limitations defense.

Like the district court in *China Agritech*, this Court should dismiss the *TTA* Action as untimely. In the alternative, as discussed below, the Court should order the *TTA* settlement class decertified, vacate preliminary approval, and strike *TTA* Plaintiffs' class allegations. If the Court does so pursuant to *China Agritech*, it need go no further to decide this motion and should lift the stay in the *Cin-Q* Action and decide *Cin-Q* Plaintiffs' Motion for Class Certification.

**II.     In the alternative, the Court should decertify the *TTA* Class, vacate preliminary approval, and strike class allegations under the Eleventh Circuit's decision.**

**A.     The *TTA* settlement class should be decertified.**

An order granting or denying class certification is subject to being "altered or amended" at any time "before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The standard for decertification is the same as the standard for certification: if it becomes clear that one of the "prerequisites" of Rule 23(a) or (b) are not met, the class must be decertified. *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1276 (11th Cir. 2007) (affirming decertification, holding "district courts are free to revisit the initial decision to certify a class, in light of subsequent developments in the case").

**1.     The Settlement Class should be decertified because *TTA* Plaintiffs are inadequate representatives.**

The Eleventh Circuit's holding that *TTA* Plaintiffs cannot adequately represent *Cin-Q* Plaintiffs' interests due to their "greater incentive to settle" is law of the case. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018). This Court must "tak[e] into account the appellate court's opinion . . . and the circumstances it embraces," and "follow the appellate court's holdings, both expressed and implied." *Piambino v. Bailey*, 757 F.2d 1112, 1119–20 (11th Cir. 1985) (internal citations omitted). An issue that is not expressly addressed but "decided by necessary implication" is covered by law of the case and the mandate rule. *Winn-Dixie*, 881 F.3d at 848.

Here, the Eleventh Circuit ruled that *TTA* Plaintiffs are inadequate to represent *Cin-Q* Plaintiffs due to the "<u>risk</u>" of the statute of limitations, which applies equally to every member of the *TTA* settlement class. At the very least, the "necessary implication" of that ruling is that *TTA* Plaintiffs are inadequate to represent *Cin-Q* Plaintiffs *or* the class. The same conflict that exists between *TTA* Plaintiffs and *Cin-Q* Plaintiffs also exists between *TTA* Plaintiffs and every other class member. Class members are not subject to the risk of the statute of limitations in the timely

*Cin-Q* Action; rather, like *Cin-Q* Plaintiffs, class members "have no statute of limitations issue." *Tech. Training*, 874 F.3d at 697. Therefore, like *Cin-Q* Plaintiffs, the class members' interests cannot be adequately represented by *TTA* Plaintiffs, who are subject to that risk. *See id.*

If Rule 23(a)(4) adequacy of representation is not satisfied, then no class can be maintained, either a settlement class or litigation class. In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997), for example, the Supreme Court affirmed decertification of a settlement class on adequacy grounds, holding that the interests of class representatives were "not aligned" with many of the class members. "Most saliently," the Court held, "for the currently injured, the critical goal is generous immediate payments," a goal that "tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id.*

In this case, the conflict between the class representatives and the class is even worse than it was in *Amchem* because the *Amchem* plaintiffs' interests were aligned with some (but not all) of the class members, whereas *TTA* Plaintiffs' interests are not aligned with *any* of the class members. Rather, as the Eleventh Circuit held, *TTA* Plaintiffs' interests are "aligned with" BLP's interests. *Tech. Training*, 874 F.3d at 697. *TTA* Plaintiffs and their counsel had a "greater incentive" than *Cin-Q* Plaintiffs or the rest of the class to achieve a settlement, *any* settlement, because the alternative to settling on terms BLP found acceptable was to face "the risk" of a motion to dismiss based on the statute of limitations, which they were guaranteed to lose. *Id.* For *TTA* Counsel, the choice was to accept a low-ball settlement and receive nearly $5 million in attorney fees for doing next to nothing, or get nothing.

*TTA* Plaintiffs and BLP argued before the Eleventh Circuit that the statute of limitations was "irrelevant" and did not affect *TTA* Plaintiffs' ability to represent *Cin-Q* Plaintiffs because BLP "waived" that defense as part of the *TTA* Settlement, and so *Cin-Q* Plaintiff's objections

were "meritless" or "frivolous." (Doc. 91-2, *TTA* Pls.' Resp. Br. at iii, 27, 29; Doc. 91-3, BLP

Resp. Br. at 3, 44). The Eleventh Circuit rejected those arguments, holding that the waiver in the

*TTA* Settlement was itself merely additional "evidence[]" of the "greater incentive to settle" that

compromised *TTA* Plaintiffs and *TTA* Counsel in negotiating the *TTA* Settlement. *Tech. Training*,

874 F.3d at 697. This Court has no discretion to disagree with that ruling, and *TTA* Plaintiffs

should not be permitted to represent the class following the Eleventh Circuit's decision.

### 2.   The Settlement Class should be decertified because *TTA* Counsel are inadequate class counsel.

Although the Settlement Class should be decertified based on the inadequacy of *TTA*

Plaintiffs alone, the Eleventh Circuit also stated that the "record appears to show" that *TTA*

Counsel "deliberately underbid the movants in an effort to collect attorney's fees while doing a

fraction of the work that the movants' counsel did," and that "[i]f, as it appears, Bock Hatch was

indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best possible

settlement for the class, it violated its ethical duty to the class." *Tech. Training*, 874 F.3d at 697.

In addition to these statements regarding what "appears" to be the case, the Eleventh Circuit also

*held*—with no conditional language—that *TTA* Counsels' interests are "aligned with those of

Buccaneers and adverse to the movants' interests," making *TTA* Counsel inadequate. *Id.* at 698.

*TTA* Counsel cannot act as class counsel following this ruling, and the fact that the *TTA*

Settlement was negotiated by inadequate counsel means the settlement must be rejected. *Eubank*

*v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014).

### 3.   Because the parties to the *TTA* Settlement never sent class notice, the class need not be given notice of the decertification.

Ordinarily, where a class is certified and class notice is sent, and the district court later

decides to decertify the class, the district court should order class counsel to send (and pay for) a

second notice notifying the class of the decertification. *Birmingham Steel Corp. v. Tennessee*

*Valley Auth.*, 353 F.3d 1331, 1338–39 (11th Cir. 2003). The purpose of such notice is "to alert the class that the statute of limitations for any individual claims, which was tolled upon the motion for class certification, will begin running again upon the dismissal of the action."[5] *Id.* Without notice of decertification, class members might "find themselves time barred without knowing it." *Id.* (quoting *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002)).

No such notice is necessary here because the parties to the *TTA* Settlement never published or sent the class notice in the first place, and because the statute of limitations is tolled by the timely *Cin-Q* Action. Since the class notice plan approved in the Preliminary Approval Order was never implemented, no confusion or prejudice will result from undoing the *TTA* Settlement and decertifying the Settlement Class.

### B.    Preliminary approval should be vacated.

The Court has broad authority to issue orders dealing with "procedural matters" arising from any "proposed settlement" under Rule 23(d) & (e). A proposed class settlement merits preliminary approval only so long as (1) "the requirements of Rule 23(a) and (b) are met"; (2) there are no "grounds to doubt its fairness or other obvious deficiencies"; and (3) the terms of the settlement "appear[] to fall within the range of possible approval." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007). In light of the Eleventh Circuit's decision, each of these factors requires vacating the Preliminary Approval Order.

First, as argued above, under the Eleventh Circuit's decision, *TTA* Plaintiffs are inadequate class representatives and *TTA* Counsel are inadequate class counsel, since the "<u>risk</u>"

---

[5] Obviously, this rationale is limited to individual claims under *China Agritech*. Even before that decision, the Eleventh Circuit did not allow tolling for class claims. *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) ("the pendency of a previously filed class action does *not* toll the limitations period for additional class actions by putative members of the original asserted class"); *Ewing*, 795 F.3d at 1328 (applying rule in TCPA fax case).

of the statute of limitations gave them a "greater incentive to settle," compared to *Cin-Q*

Plaintiffs and the rest of the class, who "have no statute of limitations issue." *Tech. Training*, 874

F.3d at 697. Because the Settlement Class must be decertified for lack of Rule 23(a)(4) adequacy

of representation, the Preliminary Approval Order must be vacated.

Second, the Eleventh Circuit's review of the *TTA* Settlement identified several "grounds

to doubt its fairness or other obvious deficiencies." *Figueroa*, 517 F. Supp. 2d at 1299. The

Eleventh Circuit doubted that the settlement was negotiated fairly, given that *TTA* Counsel

"engaged in a 'Machiavellian' plan to undercut [*Cin-Q* Plaintiffs'] negotiating position," which it

held is "more than 'some evidence' that the [*TTA*] plaintiffs are not acting as adequate

representatives of the movants' interests." *Tech. Training*, 874 F.3d at 697.

The Eleventh Circuit doubted that the *TTA* Settlement was fairly negotiated, given that

*TTA* Plaintiffs "have a greater incentive to settle because their claims may be barred by the

statute of limitations if they cannot secure a waiver from Buccaneers, while [*Cin-Q* Plaintiffs]

have no statute of limitations issue," regardless of whether *TTA* Plaintiffs' claims "are actually

time barred," due to "the <u>risk</u>" they faced, "[w]hich is evidenced by the [*TTA*] plaintiffs' getting

a waiver of the statute of limitations as part of the settlement." *Id.* The Eleventh Circuit doubted

that the *TTA* Settlement was fair because it appeared that *TTA* Counsel was "motivated by a

desire to grab attorney's fees instead of a desire to secure the best possible settlement for the

class," and that it "violated its ethical duty to the class." *Id.*

In sum, the Eleventh Circuit recognized that the *TTA* Settlement was negotiated under

highly suspicious circumstances, where BLP settled on a class basis with plaintiffs who were

subject to a serious "risk" of losing their individual claims, while agreeing to pay the attorneys

nearly $5 million for doing essentially nothing. The Eleventh Circuit's decision shows that the

*TTA* Settlement presents "grounds to doubt its fairness or other obvious deficiencies," *Figueroa*, 517 F. Supp. 2d at 1299, and the Court should vacate the Preliminary Approval Order.

Third, as the Eleventh Circuit recognized, the core terms of the *TTA* Settlement are (1) BLP will pay no more than "$19.5 million in damages," (2) *TTA* Counsel receives "up to twenty-five percent of the total settlement amount," which is $4.875 million, and (3) BLP "waives" the statute of limitations against *TTA* Plaintiffs to effectuate the deal. *Tech. Training*, 874 F.3d at 695. As *Cin-Q* Plaintiffs have consistently argued, these terms are not fair, reasonable, or adequate to the class. (*E.g.*, *TTA* Doc. 28, *Cin-Q* Pls.' Mot. Intervene at 7–8, 14).

The amount of the *TTA* Settlement is far too low. The minimum classwide damages BLP faces in the *Cin-Q* Action are $171,561,000, based on 343,122 successful fax transmissions at $500 per fax. If damages are trebled to $1,500 per fax for "willful or knowing" violations—which is a strong possibility, at least for the faxes sent in 2010, because BLP's general counsel signed off on the fax campaign in 2009 and BLP continued sending faxes the following year, even after attorney Phyllis Towzey advised BLP's general counsel it was violating the TCPA *and* after Cin-Q sued BLP for the 2009 campaign in the first class-action lawsuit in state court in August 2009—the damages could reach $514,683,000 on a per-fax basis.

Given the strength of the case on the merits, the $19.5 million in the *TTA* Settlement is not within "the range of possible recovery." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1327 (11th Cir. 2013). There is no indication that BLP cannot satisfy a classwide judgment. *Cf. id.* (reversing approval of class settlement where conclusion that it was within the "range of recovery" was based on erroneous finding that defendant was unable to satisfy judgment). And neither BLP nor *TTA* Counsel have ever made any attempt to justify why this case should settle for 11.3% of the potential statutory damages at $500 per fax, or 3.8% of the damages at $1,500

21

per fax (blended percentage of 7.55%). At the very least, *TTA* Plaintiffs and BLP have failed to

meet *their* burden to explain why such a substantial discount would be appropriate. *See Zink v.*

*First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 313 (W.D.N.Y. 2016) (denying motion for

preliminary approval where parties failed to establish why a settlement of 34.4% of the

maximum potential recovery, "a substantial discount," was warranted).

     *TTA* Plaintiffs' motion for preliminary approval does not even discuss the potential

recovery or compare it to the settlement amount, relegating the entire issue to a single sentence

asserting that "[w]ithout the settlement, the Class might recover substantially less, if anything at

all." (*TTA* Doc. 18 at 14). That is true in any case—any plaintiff "might" lose at trial. That does

not mean that *any* settlement amount over $0.00 is reasonable in relation to the expected value of

the case. From an economic perspective, the $19.5 million settlement means that *TTA* Counsel

believe BLP's chances of prevailing on the merits at trial are 88.7% to 96.2%. Actually, without

the purported settlement, the chances of BLP prevailing at trial against *TTA* Plaintiffs is 100%,

given that their claims are time-barred and they cannot obtain class certification. But *Cin-Q*

Plaintiffs' case is significantly more valuable, because they timely filed suit, advanced the case

though discovery and dispositive motions, and timely moved for class certification.

     In addition, this Court has already held that there is "[a]mple evidence" from which a jury

could find the faxes were sent "on behalf of" BLP. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*,

2014 WL 7224943, at *9 (M.D. Fla. Dec. 17, 2014). And even if *Cin-Q* Plaintiffs were to lose

the "on behalf of" issue at trial, they would still have their appeal on whether BLP is liable as the

"sender" solely because its "goods or services" are advertised in the faxes, 47 C.F.R.

§ 64.1200(f)(10), or whether the evidence that BLP was a sender was so overwhelming that a

jury verdict to the contrary would be set aside on appeal. This Court rejected the strict, plain-

language reading of the "sender" regulation at summary judgment, but it recognized there is "substantial ground for difference of opinion" on the question. *Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*, 2015 WL 2092810, at *3 (M.D. Fla. May 5, 2015). Since that ruling, four other courts in this District have applied the plain language of the regulation. *See Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 232 F. Supp. 3d 1201, 1205 (M.D. Fla. 2017); *Senior Care Group, Inc. v. Red Parrot Distrib., Inc.*, 2017 WL 3288288, at *2 (M.D. Fla. Aug. 1, 2017); *Arkin v. Innocutis Holdings, LLC*, 188 F. Supp. 3d 1304, 1308 (M.D. Fla. 2016); *JWD Auto., Inc. v. DJM Advisory Group, LLC*, 218 F. Supp. 3d 1335, 1341 (M.D. Fla. 2016). In sum, the expected value of the case against BLP—in an action where the class representative is not subject to a fatal statute-of-limitations defense—is significantly higher than $19.5 million, and the *TTA* Settlement is not within the reasonable range of approval.

Aside from the dollar amount of the settlement, the *TTA* Settlement imposes an onerous claims process on class members, combined with a reversion of unclaimed funds to BLP, a "red-flag" combination. *See De Leon v. Bank of Am., N.A. (USA)*, 2012 WL 2568142, at *15 (M.D. Fla. Apr. 20, 2012), *adopted* 2012 WL 2543586 (M.D. Fla. July 2, 2012). Under the *TTA* Settlement, claimants will be paid on a declining scale, from $350 for the first fax, declining to $100, $75, and $20 for subsequent faxes, up to a maximum of $565 per claimant, provided that claimants swear, "**UNDER PENALTY OF PERJURY**" and threat of "audit" by BLP, as to the number of BLP fax advertisements they received in 2009–2010, with the claim form stating "[i]f you believe you received more than one fax to the number(s) listed above," you must "indicate how many you believe you received at each number in parenthesis next to each number." (*TTA* Doc. 18-1). Class members would also be told there are only "partial records" of the

transmissions, and that "BLP has the right to audit this claim form and verify your statements and dispute any claims that are based on inaccurate responses." *Id.*

Contrary to the allegation that there are only "partial records," *Cin-Q* Plaintiffs gathered *complete* records over years of hard work that shows the number of transmissions to each target fax number. Although it may be reasonable to require class members to state how many faxes they believe they received in a case *without* such records, requiring class members to swear to the number of BLP faxes they received under penalty of perjury, or threat of "audit" by BLP in this case, where the transmission records exist, will only suppress the claims rate (which is the obvious intent of such a term), thus increasing the reversion and reducing BLP's "bottom line," which is all BLP is concerned with. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). There is also no good reason—at least BLP and *TTA* Plaintiffs have never provided one—that class members should be paid on a declining scale, or be capped at $565, even if they received two, three, four, or even five faxes. (*See Cin-Q* Doc. 207-5, Expert Report of Robert Biggerstaff, Ex. 7 (showing number of transmissions received by each fax number). The Court should be alert to "a claims process which serves as a choke on the total amount paid to class members," including "where class members are required to produce documents or proof that they are unlikely to have access to or to have retained." FJC, Judges' Class Action Checklist at 6.[6] Combined with the inadequate overall settlement amount, these "red flags" show that the *TTA* Settlement is not fair, reasonable, or adequate, and should be vacated.

C.      **The *TTA* class allegations should be stricken.**

An order striking class allegations is appropriate where "it will be *impossible* to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to

---

[6] http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf

prove." *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012); *see also Griffin v. Singletary*, 17 F.3d 356, 361 (11th Cir. 1994) (affirming order "strik[ing] all class allegations" on basis of statute of limitations). If it is impossible for a plaintiff to obtain certification, the class claims should be stricken to avoid "needless delay and expense," and the case should proceed individually. *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995).

The Eleventh Circuit's ruling that *TTA* Plaintiffs are inadequate to represent *Cin-Q* Plaintiffs due to the "<u>risk</u>" of the statute of limitations means that *TTA* Plaintiffs are also inadequate to represent the class. *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) (adequacy not met where class representatives had "fundamental conflict" with the class). The same conflict that exists between *TTA* Plaintiffs and *Cin-Q* Plaintiffs exists with respect to every class member. Class members "have no statute of limitations issue" in the *Cin-Q* Action, *Tech. Training*, 874 F.3d at 697, and so they cannot be adequately represented by plaintiffs who, like *TTA* Plaintiffs, would have to bargain for a waiver of that defense. Since class certification is impossible in the *TTA* Action, the Court should strike the class allegations.

### III.    The history of settlement negotiations in the *Cin-Q* Action has no bearing on the adequacy of *TTA* Plaintiffs or *TTA* Counsel, and in any case that history shows that *Cin-Q* Counsel adequately represented the interests of the class.

As the Court has recognized, it "has been telegraphed many times to this Court," that the terms under discussion in settlement negotiations in the *Cin-Q* Action in 2015–2016 and the terms of the *TTA* Settlement are "nearly identical outside attorneys' fees" and that it was only *Cin-Q* Counsels' insistence on a larger fee that scuttled a settlement in the *Cin-Q* Action. (Ex. 1, Hr'g Tr., Jan. 29, 2018, at 18:13–19; *see also, e.g.*, Ex. 2, Hr'g Tr., May 1, 2018, at 24:8 (representation by BLP Counsel that the only "stumbling block" to a settlement in *Cin-Q* was the amount of attorney fees). BLP Counsel's representations are false.

The timeline of the negotiations in the *Cin-Q* Action is as follows:

















[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

In sum, the settlement negotiations in the *Cin-Q* Action in 2015–2016 have no bearing on the adequacy of *TTA* Plaintiffs or *TTA* Counsel in this action, and to the extent the Court considers the *Cin-Q* negotiations relevant, it should hold that *Cin-Q* Counsel adequately represented the class and reject any suggestion to the contrary.[7]

---

[7] The appropriate place to decide the adequacy of *Cin-Q* Plaintiffs and *Cin-Q* Counsel is in ruling on *Cin-Q* Plaintiffs' Motion for Class Certification in the *Cin-Q* Action, and not this action, where neither *Cin-Q* Plaintiffs nor *Cin-Q* Counsel are seeking to represent a class.

## CONCLUSION

For the foregoing reasons, the Court should (1) dismiss this action or strike the untimely class allegations pursuant to *China Agritech*; or (2) in the alternative, decertify the *TTA* Settlement Class, vacate the Preliminary Approval Order, and strike *TTA* Plaintiffs' class allegations pursuant to the Eleventh Circuit's decision in this case.

Respectfully submitted,

/s/ Ross M. Good
Ryan M. Kelly (Fla. Bar No: 90110)
Ross M. Good (Fla. Bar No: 116405)
Glenn L. Hara (admitted *pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Facsimile:   (847) 368-1501
rkelly@andersonwanca.com
rgood@andersonwanca.com
ghara@andersonwanca.com

and

Michael C. Addison (Fla. Bar. No. 0145579)
ADDISON LAW OFFICE, P.A.
1304 Alicia Avenue
Tampa, Florida 33604
Telephone: (813) 223-2000
Facsimile:  (813) 228-6000
m@mcalaw.net

*Attorneys for Intervenors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<div style="text-align: right;">

/s/ Ross M. Good
Ross M. Good

</div>