**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| TECHNOLOGY TRAINING ASSOCIATES, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) No. 8:16-cv-01622-AEP |
| v. | ) ) |
| BUCCANEERS LIMITED PARTNERSHIP, | ) ) ) |
| Defendant, | ) ) |
| _____ | ) ) |
| CIN-Q AUTOMOBILES, INC., and MEDICAL & CHIROPRACTIC CLINIC, INC., | ) ) ) |
| Intervenors. | ) ) |

**INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION**
**TO SUPPLEMENT RECORD**

Intervenors, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. ("*Cin-Q* Plaintiffs"), state as follows in response to the Motion to Supplement Record on Intervenors' *Renewed* Motion to Decertify Settlement Class, Vacate Preliminary Approval Order, and Strike Class Allegations filed by Technology Training Associates, Inc. and Larry Schwanke ("*TTA* Plaintiffs"). (Doc. 162).

1. The Motion to Supplement should be denied because the proposed settlement in *Arkin v. Smith Med. Partners, LLC*, No. 18 CH 984 (Cir. Ct. Lake Cty., Ill), is irrelevant to the questions before the Court on *Cin-Q* Plaintiffs' *Renewed* Motion to Decertify: (1) whether a class action filed after the expiration of the statute of limitations, like the *TTA* Action, is barred in federal court following the Supreme Court's decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018); and (2) whether *TTA* Plaintiffs and their counsel are inadequate to represent the class in light of the Eleventh Circuit's decision in *Tech. Training Assocs., Inc. v. Buccaneers Ltd.*

*P'ship*, 874 F.3d 692 (11th Cir. 2017). As argued in *Cin-Q* Plaintiffs' *Renewed* Motion (Doc. 128) and Reply (Doc. 154), if the answer to either question is yes, then the Court should decertify the class, vacate preliminary approval, and strike *TTA* Plaintiffs' class allegations.

2. Attempting to distract from the issues at hand, *TTA* Plaintiffs ask the Court to consider the proposed *Arkin* settlement "when evaluating the terms of the proposed *TTA* settlement . . . ." (Mot. Supp. Record ¶ 14). But the Court cannot "evaluat[e] the terms of" the *TTA* Settlement if *Cin-Q* Plaintiffs are right. If federal law "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations," as the Supreme Court held in *China Agritech*, 138 S. Ct. at 1804, then the *TTA* Action must be dismissed (which is what happened in *China Agritech*), or at least the class claims stricken. Similarly, if, as *Cin-Q* Plaintiffs contend, *TTA* Plaintiffs and/or *TTA* Counsel are inadequate under Rule 23(a)(4)— which they plainly are, given the Eleventh Circuit's holding that "the <u>risk</u>" of the statute of limitations gave them a "greater incentive to settle" and made their interests "aligned with Buccaneers," *Tech. Training*, 874 F.3d at 697–98—then the terms of the settlement are irrelevant. Under *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 621 (1997), a settlement class cannot be certified without adequate representation, even if the settlement terms are "fair."

3. In the alternative, to the extent the Court deems the *Arkin* settlement relevant here, it should note that the only objection to the *Arkin* settlement was filed by four related entities (the "Pill Box" entities) represented by *TTA* Counsel, and the Court should take judicial notice of the *Arkin* plaintiff's response to the Pill Box objections in the Brief in Support of Final Approval and related exhibits filed by *Cin-Q* Counsel, Anderson + Wanca, which are attached hereto as Exhibit 1. As the *Arkin* final approval brief explains, the Pill Box objections fail on the merits, and they ring hollow in light of the fact that Pill Box was the class representative in a

$12-million TCPA class-action settlement approved by the Lake County Court in *Pressman, Inc. d/b/a Pill Box Pharm. & Med. Supply v. Bayer Corp.*, No. 16 CH 325 (Berrones, J.), in an action initially filed in Florida federal court in *Pill Box Pines West, LLC v. Bayer Corp.*, No. 15-cv-62042 (S.D. Fla.) ("*Pill Box I*"), and *Pressman, Inc. d/b/a Pill Box Pharm. v. Bayer Corp.*, No. 16-cv-60089 (S.D. Fla.) ("*Pill Box II*"), and then dismissed and re-filed post-settlement in the Lake County Court. (Ex. 1, *Arkin* Final Approval Br. at 19–21).

4. In addition, *TTA* Plaintiffs ignore significant differences between *Arkin* and the case against BLP, distinguishing the $21 million *Arkin* settlement from the $19.5 million *TTA* settlement. *First*, *TTA* Plaintiffs ignore that the *Arkin* plaintiff was able to obtain fax logs showing transmissions to only a fraction of the fax numbers the defendant targeted. (*See id.* at 21–22). This lack of records meant the *Arkin* plaintiff (a) could not establish that most of the targeted fax numbers received *any* of the defendant's faxes; and (b) could not, even for those fax numbers that are reflected in an available transmission logs, establish precisely *how many* faxes that fax number received. (*Id.*)

5. In the *Cin-Q* Action, in contrast, *Cin-Q* Counsel were able to obtain fax transmission records for all 343,122 successful fax transmissions. (*See Cin-Q* Doc. 207, Pl.'s Mot. Class Certification at 6–8). As to more than half of the transmissions, which were sent using Rocket Messaging, Inc. ("RMI"), *Cin-Q* Plaintiffs obtained the testimony of RMI representative Ian Jenkins that he "actually look[ed] at the images that were sent out" and "compare[d] each and every one of them" with the transmission records, and the report of computer-forensics expert, Robert Biggerstaff, who concluded the RMI transmission records show that "120,232 unique fax numbers received 240,596 successful error-free transmissions, indicated by STATUS '0' in the logs, ranging in dates from August 17, 2009, to June 9, 2010

(inclusive)" (*Id.*) The RMI records cover the May–June 2010 faxes, which BLP sent after it appeared through counsel and moved to dismiss the first TCPA class action arising out of BLP's fax advertisements filed in Florida state court, giving rise to a strong claim that BLP "willfully or knowingly" violated the TCPA with the 2010 faxes. 47 U.S.C. § 227(b)(3). The *Arkin* plaintiff did not have any such records, nor evidence of "willful or knowing" TCPA violations, to use as leverage in settlement negotiations. This factual difference also explains why the *Arkin* case did not settle on a "per-fax" basis, since, unlike this case, it was impossible to determine how many faxes each targeted fax number received. (Ex. 1, *Arkin* Pl.'s Final Approval Br. at 24).

6.    *Second*, *TTA* Plaintiffs ignore that many of the class members in *Arkin* were the defendant's customers. For example, the Pill Box entities, the only objectors to the settlement, appear to have been longtime customers of Smith Medical. These relationships created a risk that the defendants could establish individualized issues with respect to the defenses of "established business relationship" or "prior express invitation or permission." (*Id.* at 2, 11).

7.    In this case, in contrast, BLP hired an outside vendor to send fax advertisements to *non*-customers with whom BLP did *not* have a business relationship. BLP's representative testified he undertook the faxing campaign to drum up "new business" by targeting non-customers, not BLP's "existing contacts." (*Cin-Q* Doc. 207, Pl.'s Mot. Class Certification at 3 (quoting Dep. of Matthew Kaiser at 68)). There is no credible claim that class members gave "prior express invitation or permission" to send BLP's fax advertisements, certainly not a "significant percentage" of the class, as would be necessary to defeat predominance. *Fauley v. Heska Corp.*, 326 F.R.D. 496, 507 (N.D. Ill. 2018) (granting certification in TCPA fax case); *see also True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (reversing denial of certification in TCPA fax case, holding "speculation and surmise" regarding

4

prior express permission cannot "tip the decisional scales in a class certification ruling" where defendant bears the burden of proving that defense); *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (same).

8. *Third*, *TTA* Plaintiffs ignore that most of the faxes the *Arkin* defendant sent were FDA product recalls and similar documents, not "advertisements" under the TCPA, and even as to the faxes that the plaintiff identified as potentially "advertisements," the defendant would have disputed that characterization as to many of the documents. (Ex. 1, *Arkin* Pl.'s Final Approval Br. at 2).

9. In this case, although BLP technically denies that its 2009–2010 faxes announcing prices for individual or group tickets to Tampa Bay Buccaneers games were "advertisements" (*see Cin-Q* Doc. 119, BLP's Amended Answer ¶ 38), there are not thousands of documents to be presented at trial, as in *Arkin*, but merely a handful. A jury would readily conclude on a classwide basis that all of BLP's faxes offering tickets to Buccaneers games promote the "commercial availability or quality of any property, goods, or services," making them advertisements under 47 U.S.C. § 227(a)(5).

10. *Fourth*, *TTA* Plaintiffs ignore that the *Arkin* settlement does not require that claiming class members swear under penalty of perjury that they received one or more of defendant's faxes, or swear to how many faxes were received. It merely requires class members to verify that the targeted fax number(s) "was/were mine or my company's" during the class period. (Ex. 1, *Arkin* Pl.'s Final Approval Br., Ex. B.B).

11. The *TTA* settlement, in contrast, requires that claiming class members "attest . . . to the number of faxes they received" nearly a decade ago under penalty of perjury and threat of "audit" by BLP, requirements BLP argues are required by the settlement agreement and which

BLP calls "hardly a burdensome task" (*TTA* Doc. 139, BLP Opp. Mot. Decertify at 33, n.38).[1] The fact is not even *TTA* Counsels' clients who are the lone objectors to the *Arkin* settlement appear to have retained a copy of the any fax they may have received. (*TTA* Doc. 162-9, Pill Box Objections to *Arkin* Settlement at 1–25).

12. Finally, to the extent the Court finds the *Arkin* settlement relevant to any issue in this case, the Court should be aware that on April 25, 2019, the *Arkin* court, at the parties' request, entered and continued the final approval hearing until May 31, 2019, in order to allow the parties to engage in another mediation to attempt to reach a modified settlement agreement. (*See* Ex. 2, *Arkin* Order (Lake Cty., Ill. Apr. 25, 2019)).

WHEREFORE, for the foregoing reasons, the Court should deny *TTA* Plaintiffs' Motion to Supplement Record on Intervenors' *Renewed* Motion to Decertify (Doc. 162).

                                       Respectfully submitted,

                                       /s/ Ross M. Good
                                       Ross M. Good (Fla. Bar No: 116405)
                                       Ryan M. Kelly (Fla. Bar No: 90110)
                                       Glenn L. Hara (admitted *pro hac vice*)
                                       ANDERSON + WANCA
                                       3701 Algonquin Road, Suite 500
                                       Rolling Meadows, IL  60008
                                       Telephone:  (847) 368-1500
                                       Facsimile:   (847) 368-1501
                                       rgood@andersonwanca.com
                                       rkelly@andersonwanca.com
                                       ghara@andersonwanca.com

                                       and

---

[1] *TTA* Plaintiffs disagree with BLP regarding the terms of the *TTA* settlement, arguing that claimants need not "verify the number of faxes they received at each fax number," and that "[i]f they do not have any idea how many faxes they received, they will be paid based upon the records anyway." (*TTA* Doc. 141, TTA Pls.' Opp. Mot. Decertify at 28).

>Michael C. Addison (Fla. Bar. No. 0145579)
>ADDISON LAW OFFICE, P.A.
>1304 Alicia Avenue
>Tampa, Florida 33604
>Telephone: (813) 223-2000
>Facsimile: (813) 228-6000
>m@mcalaw.net
>
>*Attorneys for Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

>/s/ Ross M. Good
>Ross M. Good