# EXHIBIT 1

**FILED**
**4/22/2019 12:00 AM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
Lake County, Illinois

**IN THE CIRCUIT COURT OF THE 19TH JUDICIAL DISTRICT**
**LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DR. STEVEN ARKIN, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 18 CH 984 |
| v. | ) ) | Judge Luis A. Berrones |
| SMITH MEDICAL PARTNERS, LLC and H.D. SMITH, LLC, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT**

Plaintiff, Dr. Steven Arkin ("Plaintiff"), on behalf of himself and a settlement class of similarly-situated persons (identified herein as the "Settlement Class"), respectfully requests that this Court grant final approval of the parties' class-action settlement pursuant to 735 ILCS 5/2-806. A proposed Final Approval Order is submitted with this brief and marked as Exhibit A.

**I.      Preliminary approval and dissemination of notice.**

On January 25, 2019, the Court held a hearing to consider Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class. After considering the parties' Settlement Agreement and the proposed class notice plan, the Court entered the Preliminary Approval Order, preliminarily approving the settlement and approving the notice plan.

In accordance with the Preliminary Approval Order, the parties caused the notice of settlement and information about claims submission to be disseminated to the Class members. (Ex. B, Affidavit of Brittany Mitchell ("Mitchell Aff.") ¶¶ 3–10). Out of 42,569 class members, the settlement administrator received one objection from four related entities (collectively, "Pill Box")

(*Id.* ¶ 14).[1] Ten class members opted out of the settlement. (*Id.* ¶ 13). The administrator has received 1,660 unique, timely claims to share in the Settlement Fund (*id.* ¶ 12), and those class members are awaiting payment of $493.32 per valid, unique fax number included in the Class List.

## II.     Background

Plaintiff's Class Action Complaint alleges that Defendants violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and regulations promulgated by the Federal Communications Commission ("FCC"), by faxing advertisements lacking a clear and conspicuous notice informing the recipients about, among other things, opting out to prevent future fax ads.

This is the second action in which these claims have been brought. Prior to reaching a settlement, the parties litigated for nearly a year in *Arkin v. Smith Med. Partners, LLC*, No. 17-cv-2233 (M.D. Fla.). The case required the review of an enormous amount of electronic discovery and thousands of documents Defendants sent by fax. During the class period, Defendants sent approximately 3,278 different documents by fax to thousands of fax numbers. Most of the faxes were FDA recall notices or otherwise informational and not "advertisements" under the TCPA. Furthermore, many fax recipients were Defendants' customers, who Defendants claim requested to receive faxes from Defendants. Based on these relationships, Defendants asserted defenses of "established business relationship" ("EBR") and "prior express invitation or permission," which Defendants argued presented individualized questions precluding class certification. *See, e.g.*, *Gorss Motels, Inc. v. Safemark Sys., LP*, 2018 WL 1635645, at *5 (M.D. Fla. Apr. 5, 2018)

---

[1] As discussed in Section VIII, below, Pill Box's objections are not made in good faith, and they fail on the merits. For example, Pill Box and its counsel obtained this Court's approval of a comparable $12-million TCPA settlement in a case originally filed in Florida federal court and then dismissed and re-filed in this Court post-settlement in *Pressman, Inc. d/b/a Pill Box Pharm. & Med. Supply v. Bayer Corp.*, No. 16 CH 325 (Berrones, J.).

(denying class certification in TCPA fax case on this basis), *petition for leave to appeal granted*, No. 19-90012 (11th Cir. June 15, 2018).

The case was also complicated by the fact that images and transmission records were not available for many of the fax broadcasts. In opposing class certification, Defendants undoubtedly would have argued that the lack of transmission records showing which fax numbers successfully received the faxes meant a class would not be "ascertainable" under the standards often applied by federal courts in the Eleventh Circuit. *See, e.g.*, *Physicians HealthSource, Inc. v. Doctor Diabetic*, 2014 WL 7366255, at *4 (S.D. Fla. Dec. 24, 2014) (holding federal "ascertainability" satisfied where plaintiff obtained the transmission logs showing fax was "successfully sent to *and received by* 4,324 unique recipients") (emphasis added); *cf. C.E. Design Ltd. v. C&T Pizza, Inc.*, 2015 IL App (1st) 131465 ¶¶ 12, 14 (holding class was "ascertainable" under Illinois law, where plaintiff obtained a "list of every fax number to which defendant's faxes *were sent*" and that "the statute prohibit[s] the *sending* of unsolicited fax advertisements and make[s] no reference at all to receipt") (emphasis added).

Defendants also undoubtedly would have argued the Florida federal court could not assert personal jurisdiction over Defendants with respect to claims of non-Florida residents under *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017). Defendants are Delaware corporations with their principal place of business in Carol Stream, Illinois, and are not subject to "general" personal jurisdiction in Florida, as they are in this Court. In light of the risks surrounding certification of a settlement class, as part of the settlement, Plaintiff proposed dismissing the Florida federal action and re-filing suit in this Court, which is more convenient for both Class Counsel and Defendants' counsel, both of whom are in the Chicago area, and Defendants, whose principal place of business is in Illinois.

As part of the settlement, Defendants are making available a common fund of $21 million. Out of the fund, Defendants will pay class members who submit valid claims $493.32 per valid, unique fax number included in the Class List, an Incentive Award as awarded by the Court, attorneys' fees and litigation expenses ("Fee Award," as defined in the Settlement Agreement) as awarded by the Court, and settlement administration costs. The Parties negotiated the settlement after extensive arm's-length negotiations, including a full-day mediation session with the Honorable James F. Holderman (Ret.). (*See* Ex. C, Affidavit of Hon. James F. Holderman (Ret.) ("Holderman Aff.")).

Pursuant to the Preliminary Approval Order, the Settlement Administrator, Kurtzman Carson Consultants, LLC ("KCC"), sent out the class notice in February 2019. (Ex. B, Mitchell Aff. ¶ 3–10). The settlement notice included a claim form permitting potential class members to submit claims for cash payments by identifying themselves as members of the Settlement Class— providing their names and addresses and confirming that they owned the fax number in question at the relevant time. (*Id.*, Ex. A thereto). The claim form does not require class members to affirm under penalty of perjury that they received one or more faxes sent by or on behalf of Defendants. (*Id.*) As of the filing of this Brief, KCC has received and processed 1,660 unique, timely claim forms. (*Id.* ¶ 12).

## III.   Principal Terms of Settlement.

The previously-approved settlement notice informed Class members that they would receive a share of the Settlement Fund if they submitted a timely, valid, and approved claim. The Settlement Administrator, KCC, a professional third-party class-action settlement administrator, disseminated the class notice by facsimile and by mail to persons who could not be reached by fax after three attempts, and maintained a settlement website. (Ex. B, Mitchell Aff. ¶¶ 3–10).

The Agreement's principal terms are as follows:

(a)     Class Certification. On January 25, 2019, the Court certified the Class pursuant to

735 ILCS 5/2-801 and 802 (the "Class"), defined as follows:

> All persons who were sent, by or on behalf of H. D. Smith, LLC or Smith Medical
> Partners, LLC, one or more advertisements by facsimile from September 26, 2013
> through the date of preliminary approval.

Excluded from the Class are (a) Defendants and their present and former members, managers,

employees and their successors, heirs, assigns, and legal representatives; (b) persons who timely

opted out of the settlement; and (c) members of the Illinois judiciary.

(b)     Class Representation. The Court appointed Plaintiff as the Class

Representative and Plaintiff's counsel, Brian J. Wanca of Anderson + Wanca, as Class Counsel.

(c)     Monetary Relief to Plaintiff and the Settlement Class. Defendants made $21

million available to fund the settlement (the "Settlement Fund"). Each class member who submits

a timely and valid claim form will be mailed a check for $493.32 per valid, unique fax number

included in the Class List. The number of valid claims submitted during the claims period

multiplied by $493.32 did not exceed the total value of the Net Settlement Fund, so there is no pro-

rata reduction. Any money remaining from checks issued to claiming class members but not cashed

within 90 days of issuance shall be paid to Prairie State Legal Services or as otherwise ordered by

the Court.

(d)     The Settlement Administrator. The Court approved the retention of KCC to

administer the class notice, process claims, and pay claims. The cost of the Settlement

Administrator is being paid by Defendants.

(e)     Class Notice. The Settlement Administrator sent the class notice to the

Settlement Class by facsimile transmission to the phone numbers identified on the Class List

provided by the Parties, and once by U.S. mail to all class members for whom facsimile notice was

unsuccessful after three attempts and a mailing address could be located. (Ex. B, Mitchell Aff.

¶¶ 3–10). KCC also maintained a settlement website, www.ArkinvSmithTCPASettlement.com, through which Class members could submit claims, view answers to frequently asked questions, download important case documents (including the Complaint, the full Settlement Agreement, the Preliminary Approval Order, and the Class Notice), and find contact information for KCC.

(f)     Settlement Class Opt-Out Rights. The notice informed Class members about their right to be excluded from this case and the settlement by opting out of the Settlement Class within the time period set by the Court. Only 10 class members opted out of the settlement. (*Id.* ¶ 13).

(g)     Right to Object. The Notice informed Class members of their right to object to the proposed class settlement within the time period set by the Court. KCC received one objection from Pressman, Inc. d/b/a Pill Box Pharmacies and Medical Supply; Weston Pill Box, Inc. d/b/a Pill Box Pharmacies and Medical Supply; Pill Box Pines West, LLC d/b/a Pill Box Pharmacies and Medical Supply; and Weston Pill Box, Inc. d/b/a Pill Box Pharmacies and Medical Supply (collectively, "Pill Box").

(h)     Release. In consideration of the relief provided by the settlement, the Settlement Class will release all claims as detailed in Section V of the Settlement Agreement.

(i)     Incentive Award and Attorney's Fees and Expenses. Class Counsel herein requests that the Court approve the Parties' agreement to pay $15,000 from the Settlement Fund to Plaintiff as an incentive award for serving as the Class Representative. Further, Class Counsel asks the Court to approve payment of attorneys' fees to Class Counsel equal to 33 1/3% of the Settlement Fund ($7,000,000) plus reasonable out-of-pocket litigation expenses of $31,564.13. Defendants do not oppose or object to these requests. These requests are consistent with the market rate for this type of case and with what other judges in this Court and others have awarded.

## IV.     The Class Was Appropriately Notified About the Settlement.

The Court should finally approve the settlement notice plan because it complied with due process. In Illinois, "whether notice is to be given at all and the kind of notice which may be required are matters for a trial court's discretion." *Carrao v. Health-Care Serv. Corp.*, 118 Ill. App. 3d 417, 429 (1st Dist. 1983). Section 2-803 of the Code of Civil Procedure provides that the Court "in its discretion may order such notice that it deems necessary to protect the interests of the class and the parties." The question of what notice should be given to satisfy due process depends on the circumstances of the individual action. *Miner v. Gillette-Co.*, 87 Ill.2d 7, 15–16 (1981). The means employed to notify class members need be reasonably calculated, under the circumstances, to apprise interested parties of the settlement. *See Fauley v. Metro. Life Ins. Co.*, 2016 IL App (2d) 150236, ¶ 36 ("*MetLife*") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950)). The notice, moreover, need not (and typically *cannot*) contain every settlement term, so long as it contains information on how to obtain the terms and fairly summarizes them. *GMAC Mort. Corp. of Penn. v. Stapleton*, 236 Ill. App. 3d 486, 496 (1st Dist. 1992).

The Second District, in *MetLife*, held that class notice in a TCPA fax case is "adequate" and "satisfie[s] the requirements of due process" where it is sent to the fax numbers targeted in the fax broadcasts, particularly where the notice refers class members to a website where the full settlement agreement is available. *MetLife*, 2016 IL App (2d) 150236, ¶ 37. In *MetLife*, the objectors to a $23-million TCPA settlement in a case originally filed in Florida federal court and re-filed in this Court post-settlement argued a class notice substantively identical to the notice in this case was inadequate, and the Second District rejected that argument. The Second District affirmed this Court's ruling that the fax notice adequately "informed potential class members of the class action's pendency and the opportunity to object to the proposed settlement, and it

provided a website containing the notice, preliminary approval order, and proposed settlement." *Id.* The Illinois Supreme Court denied the objectors' petition for leave to appeal in that case. *Fauley v. Metro. Life Ins. Co.*, 60 N.E.3d 872 (Ill. 2016).

Here, as in *MetLife*, the Class was notified by fax (and by mail, where an address was available for fax numbers unsuccessfully sent the fax notice after three attempts) and advised of their rights and given a chance to opt out. The settlement notice was informative and easy to read. (Mitchell Aff., Ex. A). The notice informed Class members about the general terms of the settlement and informed them of the relevant dates, such as the objection deadline, claims deadline, and the date for the fairness hearing and directed them to a website to obtain more information about the terms of the settlement, including the full Settlement Agreement. (*Id.*)

A settlement notice need not contain every settlement term so long as it contains information on how to obtain the terms and fairly summarizes them. *GMAC*, 236 Ill. App. 3d at 492. The notice here satisfied all of the requirements of due process. The notice described the case and clearly explained the Class members' rights, informed Class members of their right to inspect the Settlement Agreement or any other pleading filed with the Court, and gave Class members Class Counsels' contact information to obtain further information. The notice contained a unique User ID and Password for Class members to use when filing a claim online and explained that Class members could object to the settlement and gave precise instructions on how to do so. The notice informed Class members that Class Counsel would seek an award of attorneys' fees equal to one-third of the Settlement Fund plus out-of-pocket litigation expenses.

As directed in the Preliminary Approval Order, the Settlement Administrator sent the court-approved notice by facsimile to each of the 42,569 fax numbers on the class list. (Mitchell Aff. ¶¶ 3–10). Up to two more transmissions were attempted for those numbers that were not

successfully sent the notice during the initial transmission. (*Id.*) Of the 42,569 fax numbers, 27,572 were successfully delivered over three attempts, meaning 64.77% of the Settlement Class received individual fax notice. (*Id.* ¶ 6). This rate of success is reasonable and consistent with what would be expected for a broadcast of this nature given the age and size of the list. The Settlement Administrator performed a reverse-lookup search for those numbers that were unsuccessful and sent notice by mail to 6,052 individuals for whom addresses could be found, reaching an additional 13.18% of the class with individual mail notice, meaning 78.99% of the Settlement Class received individual notice by fax or mail. (*Id.* ¶¶ 7–8). The notice satisfied all the requirements of 735 ILCS 5/2-803 and 806. *See MetLife*, 2016 IL App (2d) 150236, at ¶ 37. And, as the Second District recognized, sending notice first by fax, and then, if unsuccessful, by regular mail, is especially appropriate, as reasonably calculated to apprise interested parties, since this matter arose from sending fax transmission to the Settlement Class. The notice plan, there and here, "constituted the best practicable notice under the circumstances, and provided due and sufficient notice to all persons entitled to notice of settlement of this lawsuit." *Id.*

## V.     The Class Relief is Fair, Reasonable, and Adequate.

### A.     The Illinois Approval Standard.

Illinois courts have consistently held that "[a] settlement compromising conflicting positions in class action litigation serves the public interest." *Langendorf v. Irving Trust Co.*, 244 Ill. App. 3d 70, 78 (1st Dist. 1992); *Security Pacific Fin. Serv. v. Jefferson*, 259 Ill. App. 3d 914, 919 (1st Dist. 1994); *People ex. rel. Wilcox v. Equity Funding Life Ins. Co.*, 61 Ill. 2d 303, 317 (1975). Illinois courts look with great favor on settlements of litigation. *See Sims v. Tezak*, 296 Ill. App. 3d 503, 510 (1st Dist. 1998). The standard for evaluating a class settlement is whether the agreement is fair, reasonable, and adequate. *People ex. rel. Wilcox*, 61 Ill. 2d at 317. This settlement easily meets this standard.

As a preliminary matter, because a settlement represents a compromise, the trial court may not decide the merits of the case, resolve disputed issues of law, or substitute its own judgment for that of the parties. *Langendorf*, 244 Ill. App. 3d at 78. Instead, the court must view the settlement as a whole, and consider all relevant factors in assess the compromise. *Id.* The reviewing court cannot alter the parties' agreement, or change portions it believes could be improved. *Waters v. City of Chicago*, 95 Ill. App. 3d 919, 924 (1st Dist. 1981); *People ex. rel. Wilcox*, 61 Ill. 2d at 319. Instead, the court must approve or disapprove the entire agreement. *Waters*, 95 Ill. App. 3d at 924. A trial court's approval of a settlement will not be overturned on appeal unless the settlement, on its face, appears so unfair as to preclude judicial approval. *GMAC*, 236 Ill. App. 3d at 493; *see also Steinberg v. Sys. Software Assocs.*, 306 Ill. App. 3d 157, 169 (1st Dist. 1999) (trial court's decision cannot be reversed absent "clear showing" that the court committed abuse of discretion).

In the seminal case of *City of Chicago v. Korshak*, 206 Ill. App. 3d 968 (1st Dist. 1990), the Appellate Court set eight factors in determining whether a settlement is fair, reasonable, and adequate (the "*Korshak* factors"). The eight *Korshak* factors are: (1) the strength of the case for plaintiff on the merits, balanced against the money or other relief offered in the settlement; (2) the defendant's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching the settlement; (6) the reaction of the members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Id.* at 971–72.

This settlement should be approved based on the *Korshak* factors. The settlement reflects a fair and reasonable compromise of the Class's claims, and provides significant monetary benefits to class members. Each class member who submitted an approved claim will receive a check for $493.32 per valid, unique fax number included in the Class List, just under the $500 statutory

recovery for non-willful TCPA violations. Additional considerations—including (1) that only four class members (related entities represented by the same law firm) object to the settlement; (2) that Class Counsel support the settlement; and (3) that the parties negotiated at arm's-length under Judge Holderman—all support final approval of the settlement.

> **B.      The Eight *Korshak* factors Support the Settlement.**

> **Factor 1: Strength of the case balanced against the relief offered.**

Generally, the most important factor in determining whether a settlement should be approved is the comparison of the terms of the settlement with the likely results of the litigation. *Steinberg*, 306 Ill. App. 3d at 170; *Langendorf*, 244 Ill. App. 3d at 78. Here, the comparison reveals that the settlement is well justified. The settlement eliminates risks associated with obtaining certification of a litigation class in the Florida federal court, establishing Defendants' liability, and winning on appeal. Plaintiff faced substantial risks at class certification and on the merits, in light of Defendants' asserted defenses of EBR and "prior express invitation or permission," *see Gorss Motels, Inc. v. Safemark Sys., LP*, 2018 WL 1635645, at *5 (M.D. Fla. Apr. 5, 2018); the potential class "ascertainability" issues, given the lack of images and transmission records for many of the fax broadcasts, *see Physicians HealthSource, Inc. v. Doctor Diabetic*, 2014 WL 7366255, at *4 (S.D. Fla. Dec. 24, 2014); and potential personal-jurisdiction issues, given that Defendants are not subject to "general" jurisdiction in Florida, *see Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017). Even if Plaintiff overcame these obstacles, without a settlement, the litigation could continue for years.

Under the settlement, class members obtained an immediate opportunity to receive a significant monetary payment by submitting a simple claim form. The claim form did not require class members to remember receiving a fax or to submit any evidence of receipt. There have been 1,660 unique, timely claims approved thus far. Each claimant will receive $493.32 per valid,

unique fax number included in the Class List. This recovery actually exceeds the TCPA statutory damages of $500 for non-willful violations when considering attorney's fees. Put another way, class members are getting a larger recovery simply by submitting a claim form in this case than they would net if they hired a lawyer, brought an individual claim against Defendants, and prevailed. Under any standard, the settlement is adequate. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 305 (N.D. Ga. 1993) (in approving class settlement, court commented that "it is unrealistic to expect a recovery that is the equivalent of a victory by plaintiffs at trial."); *People ex. rel. Wilcox*, 61 Ill. 2d at 319 (noting that in complex litigation reasonable minds may differ about the value of settlement terms, but the test for approval is not affected by the argument that some terms could be bettered).

### Factor 2: Defendants' ability to pay is not in question.

There is no doubt regarding Defendants' ability to pay, other than the truism that no entity could ever be considered a certainty to pay a potential billion-dollar judgment. Therefore, ability to pay is not much of a factor in the settlement. *See Korshak*, 206 Ill. App. 3d at 973.

### Factor 3: Further litigation would be complex, lengthy, and expensive.

Class actions have a well-deserved reputation for complexity. *See In re Domestic Air Transp.*, 148 F.R.D. at 315 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Undoubtedly, if this litigation had continued, Defendants would have challenged class certification based on class "ascertainability" and personal jurisdiction, as well as their claims to have individualized EBR and "prior express permission" defenses, resulting in additional litigation and likely appellate practice. Without a settlement, the litigation would likely take years to resolve. The settlement avoids these lengthy proceedings in favor of getting cash to the Class promptly.

### Factors 4 & 6: Amount of opposition and reaction of class members.

The fourth and sixth *Korshak* factors—the amount of opposition and the reaction of class members—are typically considered together. *Korshak*, 206 Ill. App. 3d at 973; *GMAC*, 236 Ill. App. 3d 496. Here, the notice was disseminated to the Class, and only 10 class members opted out. (Ex. B, Mitchell Aff. ¶ 13). Only four related entities object. These numbers mean that the Class resoundingly supports the settlement. *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement).

The absence of significant objections shows support for the settlement, particularly when compared to other class action settlements. *See GMAC*, 236 Ill. App. 3d at 497; *Steinberg*, 306 Ill. App. 3d at 168–69; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020–21 (acceptance rate of 99.9% of class members "is strong circumstantial evidence in favor of the settlements"); *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re: Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) (small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement").

### Factor 5: The absence of collusion.

There was no collusion. To achieve this settlement, the parties participated in good faith in extensive arm's-length negotiations, including an all-day mediation session with Judge Holderman, who confirms that the parties negotiated "in an adversarial, arm's-length, good faith, and non-collusive manner." (Ex. C, Holderman Aff. ¶ 6). The parties thoroughly considered their options and strategies before reaching their compromise.

**Factor 7: The Settlement is fair and reasonable in the opinion of competent counsel.**

Class Counsel believe that the settlement is in the best interests of the Settlement Class. Class Counsel have been involved in complex litigation for many years, with significant trial court and appellate court experience, and they have significant class-action experience. They have been appointed as lead or co-lead counsel in many contested class actions and have recovered substantial monies for their clients and the class members.

Class Counsel have successfully litigated TCPA claims since 2003 and have been appointed to represent class in many TCPA cases. *See, e.g.*, *MetLife*, 2016 IL App (2d) 150236; *Windmill Nursing Pavilion, Ltd. v. Res-Care Illinois, Inc.*, 09 CH 16377 (Cir. Ct. of Cook Cty., Aug. 27, 2014); *CE Design Ltd. v. C&T Pizza, Inc.*, 2015 IL App (1st) 131465; *CE Design v. Letrix USA, Inc.*, 06 CH 26834 (Cir. Ct. of Cook Cty., Aug. 30, 2010); *CE Design Ltd. v. Matrix LS, Inc.*, No. 05 L 269 (Cir. Ct. of Lake Cty., Apr. 16, 2010) (appeals denied); *G.M. Sign, Inc. v. 400 Freight Services, Inc.*, No. 07 CH 2772 (Cir. Ct. of Lake Cty., Jan. 7, 2010); *G.M. Sign, Inc. v. BackHauLine, Inc.*, No. 07 CH 758 (Cir. Ct. of Lake Cty., Mar. 31, 2009). Class Counsel have significant experience litigating cases through the appellate process. These include ensuring that TCPA claims may be brought in Illinois courts in *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350; winning affirmance of class certification in *C&T Pizza*; and ensuring insurance coverage for TCPA claims in Illinois in *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352 (2006), and *Standard Mut. Ins. Co. v. Lay*, 2013 IL 114617. Class Counsel have extensive experience with TCPA class actions, and pursuant to *Korshak*, the Court should give great weight to their opinion that the settlement is fair, reasonable, and adequate. The Court may also note Judge Holderman's opinion that "the mediated settlement reached in this matter is fair, reasonable, and adequate." (Ex. C, Holderman Aff. ¶ 8).

**Factor 8: The stage of proceedings and amount of discovery completed favor settlement.**

Class Counsel did not agree to settle until they possessed sufficient information to make an informed judgment regarding the likelihood of success on class certification and on the merits, and until they could weigh the risks and results that could be obtained through further litigation against the value of the settlement. They reviewed thousands of documents, researched and evaluated the law, and engaged in negotiations to achieve the settlement. They conducted significant analysis enabling them to conclude that reaching a settlement is in the best interests of the parties and the Class. Under these circumstances, the stage of proceedings, and the amount of discovery completed favor approval of the settlement.

## VI.   The Court Should Approve the Parties' Agreement on Attorney Fees.

If the settlement is approved, Defendants have agreed to pay Class Counsel's attorneys' fees of one-third of the Settlement Fund, plus out-of-pocket expenses. It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill. 2d 560, 572–73 (2000); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

In *Brundidge v. Glendale Fed. Bank, F.S.B.*, 168 Ill. 2d 235, 244 (1995), the Illinois Supreme Court held, "[a]warding attorney fees to plaintiffs' counsel based on a percentage of the fund held by the court is, overall, a fair and expeditious method that reflects the economics of legal practice and equitably compensates counsel for the time, effort, and risks associated with representing the plaintiff class." The U.S. Supreme Court held that in common fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984). In *Boeing*, the U.S. Supreme Court explained as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled

to a reasonable attorney's fee from the fund as a whole. … [T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf."

*Boeing*, 444 U.S. at 478–79.

Then, in *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996), the Illinois Supreme Court cited *Boeing*'s "fund as a whole" language with approval. The *Scholtens* court stated, "It is now well established that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole.'" *Id.* (quoting *Boeing*, 444 U.S. at 478). Consequently, in Illinois the determination of attorneys' fees in a common benefit case is based on the fund created for the class members. *Id.*; *see also DeBruyn v. Elrod*, 121 Ill. App. 3d 290, 292 (1st Dist. 1983); *Wolens v. American Airlines, Inc.*, No. 88 CH 7554 (Cir. Ct. Cook Cty., Jul. 2, 2001) (awarding attorneys' fees of $12 million based on entire fund); *Liebhard v. Suare D. Co.*, No. 91 C 1103 (N.D. Ill. June 6, 1993) (Plunkett, J.) (awarding 33.33% of common fund for $2,500,000 fee).

Here, the fund is $21 million, and Class Counsel's request for one-third of the fund is within the well-established range for attorneys' fees in TCPA cases. Judges have awarded attorneys' fees of one-third of the fund in dozens of TCPA cases. *See, e.g.*, *See MetLife*, 2016 IL App (2d) 150236 (approving one-third fee award in $23-million TCPA settlement over objections); *Mt. Lookout Chiropractic Ctr., Inc. v. Quest Diagnostics Inc.*, No. 13 CH 1790 (Lake County, Ill. Nov. 22, 2013) (Berrones, J.) (33.33% plus expenses); *Eclipse v. U.S. Compliance*, No. 03 CH 922 (Lake County, Ill Dec. 23, 2008) (Hoffman, J.) (same); *G.M. Sign, Inc. v. Backhauline*, 07 CH 758 (Lake County, Ill. Dec. 10, 2009) (Hoffman, J.) (same); *Regent Ins. Co. v. Agility Computer Networking Services, LLC*, 03 CH 13467 (Cook County, Ill.) (Palmer, J.) (same); *see also Saf-T-Gard Int'l, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Doc. 100) (fees and expenses equal to thirty-three percent of the settlement fund);

*Accounting Outsourcing, LLC v. Verizon Wireless*, 2007 U.S. Dis. LEXIS 97153 (M.D. La. 2007) (awarding $2,314,328, or more than 35% of the common fund, plus costs); *Community Vocational Schools v. Turner Educational Prods., LLC*, No. 0800853-31-1 (Bucks Cty., Penn. Aug. 4, 2010) (fees of 37.96% of fund); *Locklear Electric, Inc. v. Normal L. Lay*, 09 C 0531 (S.D. Ill. Sept. 8, 2010) (Doc. 67) (approving fees equal to one-third from future recovery from insurer); *CE Design, Ltd. v. Cy's Crab House North, Inc., et al.*, No. 07 C 5456 (N.D. Ill. Oct. 27, 2011) (Doc. 424) (same); *Hinman v. M&M Rentals, Inc.*, 06 C 1156 (N.D. Ill. Oct. 6, 2009) (Doc. 225) (same).

Only four related entities out of over 42,000 have objected to the fees. Courts have recognized the lack of objections from members of the class as an important factor in awarding fees. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorney-fee provisions are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the federal court of appeals concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees. Here, as demonstrated above, the Settlement Agreement's attorneys' fees and expenses provision is reasonable and proper under well-established legal precedent. The Court should permit the parties to settle on their agreed terms.

Finally, the litigation expenses total $31,564.13, which should be reimbursed from the Settlement Fund as Defendants agreed. The Court should approve Defendants' agreement to pay Class Counsel's attorneys' fees and expenses as requested.

## VII.   The Court Should Approve the Parties' Agreement on an Incentive Award.

Defendants have agreed to pay Plaintiff $15,000 from the Settlement Fund as an incentive payment for its services to the Class. Illinois courts routinely award such incentive payments to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *See GMAC*, 236 Ill. App. 3d at 497 (noting that incentive awards "are not atypical class action cases" and "serve to encourage the filing of class action suits."); *Fauley v. Metro. Life Ins. Co.*, 2015 WL 10571723, at *3 (Cir. Ct. Lake Cty. Mar. 06, 2015); *CE Design, Ltd. v. Cy's Crab House North, Inc.*, No. 07 C 5456 (N.D. Ill. Oct. 27, 2011) (Doc. 424) (awarding $25,000 to CE Design); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award, holding "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce individual to participate in the suit").

Class action suits conserve judicial and litigant resources. *GMAC*, 236 Ill. App. 3d at 497 (citing C. Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation, 78 Ill. B.J. 286 (June 1990)). Class representatives assume the burdens of litigation that absent Class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. Plaintiff here is no exception. But for Plaintiff's efforts, the benefits available to all Class members would not have been realized. Many people refuse to participate as class representatives, fearing ridicule and attack. Without class members like Plaintiff willing to come forward and face attacks from defendants and objectors, class actions are impossible. The Court should approve the incentive payments as agreed.

**VIII.    The Court Should Overrule the Pill Box Objections.**

Only the four "Pill Box" entities have objected to the settlement. As argued below, the Pill Box objections were not filed in good faith, and they should be rejected on the merits. In the alternative, Class Counsel asked Pill Box Counsel (the law firm of Bock Hatch Lewis & Oppenheim) to voluntarily produce a representative of Pill Box for deposition, and Pill Box Counsel refused. (Ex. D, Affidavit of Ross Good ("Good Aff.") ¶ 19). If the Court determines any further inquiry into the Pill Box objections is warranted, the Court should order Pill Box to produce a representative for deposition.

**A.    The Pill Box Objections were not Filed in Good Faith.**

Pill Box was the class representative in a $12-million TCPA class-action settlement approved by this Court in *Pressman, Inc. d/b/a Pill Box Pharm. & Med. Supply v. Bayer Corp.*, No. 16 CH 325 (Berrones, J.). Like this case, the *Pill Box* action was initially filed in Florida federal court in *Pill Box Pines West, LLC v. Bayer Corp.*, No. 15-cv-62042 (S.D. Fla.) ("*Pill Box I*"), and *Pressman, Inc. d/b/a Pill Box Pharm. v. Bayer Corp.*, No. 16-cv-60089 (S.D. Fla.) ("*Pill Box II*"). And, as in this case, Pill Box negotiated a class settlement, dismissed the Florida federal actions, and filed the case in this Court, along with a motion for preliminary approval of the settlement. (Ex. E (*Pill Box* Lake County Complaint); Ex. F, (*Pill Box* Motion for Preliminary Approval)).

Pill Box's motion for preliminary approval did not mention that the case originated in Florida federal court. (*See* Ex. F at 1–10). The *Pill Box* settlement agreement attached to the motion for preliminary approval recited that the "*Pill Box Litigation I* and *Pill Box Litigation II* asserted the same claims as the Litigation on behalf of the same putative class as the Litigation" and that "both cases were dismissed without prejudice." (Ex. F, Pill Box Settlement Agreement at 1). It did

not, however, provide an explanation of why the case was dismissed in Florida federal court and re-filed in this Court. (*Id.*)

The Pill Box class notice attached to the motion for preliminary approval does not mention the federal *Pill Box I* or *Pill Box II* action. (Ex. F, Pill Box Notice of Class Action and Proposed Settlement at 1–2). The Pill Box motion for final approval before this Court does not mention the prior federal litigation. (Ex. G, Pill Box Mot. Final Approval at 1–19). This Court granted final approval of the *Pill Box* settlement on July 15, 2016, noting that "each member of the Settlement Class who submits a valid Claim Form will be sent a check" (for $435.09 or $65.85, depending on which "Pool" the class member was in) (Ex. H, Pill Box Final Approval Order ¶ 11); that all "[u]nclaimed monies in the Settlement Fund will revert back to Defendants" (*id.* ¶ 10); and that "[t]he Court approves and awards attorney's fees to [Bock Hatch] in the amount of $4,000,000.00 (one third of the Settlement Fund) plus their reasonable out·of·pocket expenses incurred in the litigation in the amount of $25,000.00" (*id.* ¶ 13).

Pill Box's objections ring hollow in light of the settlement it asked this Court to approve just a few years ago. Pill Box's argument that the class notice in this case should have advised that the case was litigated in Florida federal court before it was settled makes no sense, given that there was no such notice in Pill Box's settlement with Bayer. Pill Box's argument that there is something improper about a reversionary settlement in which attorney fees are paid on the total amount made claimable—an argument that is contrary to *Boeing*, 444 U.S. at 478, and *Scholtens*, 173 Ill. 2d at 385—is contradicted by the fact that these were the same terms in Pill Box's $12-million reversionary settlement with Bayer. In reality, neither Pill Box nor Plaintiff in this case did

anything improper in dismissing the federal action post-settlement and refiling in this Court, or in negotiating a reversion.[2]

Unfortunately, the real reason for the Pill Box objections lies with Pill Box Counsel. Bock Hatch and Class Counsel have a long-running dispute over a TCPA case against the Tampa Bay Buccaneers that led to the Eleventh Circuit's decision in *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697–98 (11th Cir. 2017), which described Bock Hatch's "'Machiavellian' plan" to "deliberately underbid [Anderson + Wanca] in an effort to collect attorney's fees while doing a fraction of the work that [Anderson + Wanca] did" and suggested Bock Hatch "violated its ethical duty to the class." That litigation is ongoing in the Middle District of Florida.

During a telephone call on April 3, 2019, in which Anderson + Wanca attorney Ross Good attempted to arrange the deposition of a representative of Pill Box (which was refused), Bock Hatch attorney David Oppenheim suggested a "global" mediation to resolve, among other things, (1) Pill Box's objections to the settlement in this case; *and* (2) Anderson + Wanca's attempts to vacate the "Machiavellian" settlement Bock Hatch arranged in the case against the Buccaneers. (Good Aff. ¶¶ 20–23).  Class Counsel refused. (*Id.*)

**B.    A Class Notice Cannot be Expected to Recite Every Fact and Litigation Decision, and Pill Box's Objections Fail on the Merits.**

Pill Box complains that the class notice fails to provide certain information, such as stating that this case was originally filed in Florida federal court and explaining why it was refiled in this Court. (Obj. at 3–4, 17–18 & n.7). The parties had good reasons for this litigation decision, but they are not appropriate subjects for a class notice, which is supposed to be a short, plain-language

---

[2] The Illinois Code of Civil Procedure expressly contemplates "reversions to a defendant agreed upon by the parties" in the class-action context. 735 ILCS 5/2-807(a).

summary of the case to "inform[] potential class members of the class action's pendency and the opportunity to object to the proposed settlement," not an exposition of the litigation history of the case that class members will not read. *MetLife*, 2016 IL App (2d) 150236, ¶ 37.[3]

First, the parties agreed to dismiss the Florida action and seek approval of the settlement before this Court because this forum is more convenient for both Plaintiff and Defendants. Counsel for both Plaintiff and Defendants are located in the Chicago area, and Defendants' principal place of business is in Carol Stream, Illinois. Resolving the matter in this Court conserves resources for both parties, and allows the case to be resolved in a Court with substantial experience reviewing TCPA settlements.

Second, because the fax images and transmission records were not available for most of the fax broadcasts, there was a serious risk that the Florida federal court would have held that a class, even a settlement class, was not "ascertainable" under the standards often applied by federal courts in the Eleventh Circuit. *See, e.g., Physicians HealthSource, Inc. v. Doctor Diabetic*, 2014 WL 7366255, at *4 (S.D. Fla. Dec. 24, 2014) (holding federal court "ascertainability" satisfied where plaintiff obtained the transmission logs showing fax was "successfully sent to *and received by* 4,324 unique recipients") (emphasis added); *see also Ocwen Loan Servicing, LLC v. Belcher*, 2018 WL 3198552, at *3 (11th Cir. June 29, 2018) (unpublished) (holding Eleventh Circuit "has yet to address" circuit split over federal "ascertainability" requirement). The Middle District of Florida has applied the "heightened" ascertainability requirement *sua sponte* to bar certification of a TCPA settlement class. *See, e.g., Preman v. Pollo Operations, Inc.*, 2017 WL 4861471, at *3 (M.D. Fla. Sept. 22, 2017) (Report & Recommendation), *adopted* 2017 WL 4810798 (M.D. Fla. Oct. 25, 2017). In contrast, under Illinois law, a TCPA fax class is "ascertainable" if there is a "list

---

[3] The *MetLife* case was also extensively litigated for years in a Florida federal district court before it was settled, but this Court did not find it was necessary to discuss that history in the class notice.

of every fax number to which defendant's faxes *were sent*," since "the statute prohibit[s] the *sending* of unsolicited fax advertisements and make[s] no reference at all to receipt." *C.E. Design Ltd. v. C&T Pizza, Inc.*, 2015 IL App (1st) 131465 ¶¶ 12, 14 (emphasis added).

Third, the Florida federal court may have held that it could not assert personal jurisdiction over Defendants with respect to claims of non-Florida residents under *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017), since Defendants are Delaware corporations with their principal place of business in Illinois. At least one federal district court, in a decision rendered after the original case was filed in the Florida federal court, held it will apply the *Bristol-Myers* objection to personal jurisdiction even if the defendant has waived the defense, reasoning that "'[t]he court . . . retains the independent power to identify and apply the proper construction of governing law,' even where the parties 'fail[ ] to advert' to the applicable rule in their own briefing." *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 863 (N.D. Ill. 2018). This Court, in contrast, has "general" jurisdiction over Defendants because their principal place of business is in Illinois.

Pill Box's objections run counter to the general proposition that a class notice need not contain every detail of the litigation, and should simply summarize the claims and information on how to obtain the full settlement terms and fairly summarize them. *GMAC*, 236 Ill. App. 3d at 496. In *GMAC Mortg.*, for example, the objectors argued the class notice was defective because "class members were not informed of how any changed escrow formula would affect their individual escrow accounts in the future; that the class was not informed that only some members will receive compensation while others will not; and the amount of compensation each member would receive, if any." *Id.* The Court of Appeals rejected this argument, holding the notice "informed the class that it merely summarized the settlement's provisions and that the exact terms of the settlement

were available from the circuit court" and that "if any particular homeowner disliked the terms of the settlement, questioned its particular effect, or approved of how much GMACM was currently handing their escrow account, they could opt-out of the settlement." *Id.*

In sum, the class notice appropriately does not discuss the prior litigation history of this case, and Pill Box's objections should be overruled.

### C. Pill Box's other objections are without merit.

Pill Box also argues the settlement is inadequate because it provides for a lump-sum payment of $492.32 per fax number, rather than paying class members according to the number of faxes received at each fax number. (Obj. at 4, 15). The problem with this argument is that Plaintiff was unable to obtain the fax transmission logs necessary to enable a per-fax payment structure. Plaintiff was able to recover only a fraction of the transmission logs, indicating only 8,859 of the 42,569 fax numbers on the Class List were successfully sent one or more faxes. (Ex. D, Good Aff. ¶ 7). None of the fax transmission logs recovered contains either Plaintiff's fax number or the fax numbers provided by the Pill Box entities. (*Id.* ¶¶ 9, 11–14).

For the 8,859 fax numbers that *are* contained on one of the recovered fax logs, it may be possible to say whether a particular fax number received more than one fax, but one would *not* be able to determine how many of Defendants' faxes that number received. Every class member is in the same boat on that score. It is impossible to determine how many faxes Plaintiff or any other class member actually received, and under those circumstances, the equitable thing to do is negotiate the highest payment possible per unique fax number and give every class member an opportunity to recover that same amount. In fact, Mr. Bock has negotiated such settlements where fax logs were unavailable or *incomplete*, as in this case, but the target list was available. (*See, e.g.*, Ex. I, Pl.'s Mot. Preliminary Approval in *Neurocare Inst. of Central Fla. v. Healthtap, Inc.*, No. 13-cv-1228 (M.D. Fla. Nov. 14, 2014) at 3–4 (seeking approval of TCPA settlement where records

showed defendant sent fax ads "to as many as 250,000 Settlement Class members," but "no transmission records" existed, so class members were offered "[1] a cash payment of up to $75; or [2] five months of HealthTap's Premium Service," without regard to the number of faxes each class member received); Ex. J, Pl.'s Mot. Preliminary Approval in *ARcare v. Cynosure, Inc.*, No. 16-cv-11547 (D. Mass. Mar. 3, 2017) at 1–3 (Bock Hatch $8.5 million TCPA settlement wherein "[u]pwards of 800,000 total facsimiles appear to have been sent, but transmission records do not exist *for any but one fax campaigns*," and fund was paid to claiming class members "pro rata," with no consideration as to the number of faxes received by each class member reflected in the incomplete transmission records) (emphasis added)).

Pill Box further argues the settlement is inadequate because "[t]he proposed release of claims is not limited to persons on the Class List." (Obj. at 17). That is incorrect. The 42,596 fax numbers on the Class List include every fax number that Defendants targeted during the class period. (Ex. D, Good Aff. ¶¶ 5–6). Notably, the Class List includes every fax number targeted in Defendants' broadcasts, even if that number did not successfully receive the fax. (*Id.*). The class definition does not, as Pill Box suggests, include class members whose fax numbers are not in the class list, distinguishing this settlement from at least one settlement Mr. Bock has previously negotiated, where the class was defined to include "[e]ach person, *including but not limited to* the lists of persons produced by Defendants totaling 683 fax numbers, that was sent one or more" of the defendant's faxes during the class period. (Ex. N, Final Approval Order in *Rusgo & Depanicis, Inc. v. Walter J. Svenkesen Ins. Agency, Inc.*, No. 16-cv-12966 (E.D. Mich. Sept. 9, 2017) ¶ 3 (emphasis added)).

Pill Box next argues that the class notice "includes additional requirements" for objections that are not in the Settlement Agreement or Preliminary Approval Order. (Obj. at 22). Pill Box is

mistaken. The statement in the notice that an objection must state "e-mail address (if any)," is not a "requirement" at all. It simply allows an objector to list an email address if it chooses to do so. The statement in the notice that the objection must state "any legal support of the objection you believe is applicable," is the same as the requirement in the Settlement Agreement that the objection "set forth the complete legal and factual bases for the objection, including citation to relevant authorities." (Settlement Agreement § IV.6(b)(v)). The statement in the notice that the objection should state the "identity of all your lawyers (if any) who will appear at the Final Approval Hearing" is the same as the required "signature of counsel for the Settlement Class Member," if represented by counsel. (Settlement Agreement § IV.6(b)(iii)). The statement in the notice that the objection must state "whether you intend to personally appear and/or testify at the Final Approval Hearing" is the same as the requirement to state "whether the objecting Settlement Class Member intends on appearing at the Final Approval Hearing pro se or through counsel and whether the objecting Settlement Class Member plans on offering testimony at the Final Approval Hearing." (Settlement Agreement § IV.6(b)(vii)). These are not "additional requirements."

Pill Box complains that the procedure for objecting was "confusing" because (1) the notice states that objections must be submitted in writing to the Clerk of the Court, "postmarked" by the objection deadline, while the Preliminary Approval Order states objections must be "filed" with the Court, and the Clerk advised Mr. Bock he must file his objections electronically; and (2) the notice does not state that the objection must be served on the Settlement Administrator. (Obj. at 23). The first provision is not confusing because a class member acting pro se (as opposed to one represented by Mr. Bock, who practices regularly in this Court) who timely "postmarked" objections to the Clerk would be deemed to have "filed" the objections. *See* Local Rule 1-2.05B (stating "the Court may allow a document or pleading to be filed in a specific case using a

nonelectronic manner of filing," in which case "the Clerk of the Circuit Court shall scan nonelectronically filed documents into the electronic file as text-searchable PDF documents").

The failure of the notice to advise that objections should be served upon the administrator was admittedly an oversight, and if any class member had filed an otherwise proper objection without serving it on the administrator, Plaintiff would surely have agreed that "substantial compliance" would have been sufficient, as Pill Box requests. But there was no such objection in this case, and this oversight does not warrant the drastic relief Pill Box seeks of reissuing class notice.

Pill Box additionally argues the settlement is inadequate because it contains a "secret fringe benefit" of allowing for Defendants to pay Class Counsel's fees "in the form of periodic payments in lieu of a lump sum payment." (Obj. at 10). This is not a "secret" because it is clearly disclosed in the settlement agreement. And there is nothing improper about the parties deciding among themselves to pay attorney fees in periodic payments. Ultimately, the timing of the payment of a reasonable amount of attorney fees has no impact on the amounts paid to claiming class members (which will be $493 regardless of when attorney fees are paid) or the timing of those payments (which will be immediate, instead of the prospect of a future recovery, or no recovery at all, without a settlement). It has no bearing on whether the settlement is reasonable and fair to the absent class members. Moreover, the use of an "assignment company" for periodic payments of attorney fees is nothing unusual and has been approved numerous times by this Court, including at least one matter in which Objectors' counsel appeared as co-counsel for plaintiff and the class. (*See, e.g.,* Ex. K, Final Approval Order in *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 15 CH 1926 (Cir. Ct. Lake Cty. June 24, 2016) (Marcouiller, J.) ¶ 13); Ex. L, Final Approval Order in *Good v. Rogan Shoes, Inc.*, No. 09 CH 3731 (Cir. Ct. Lake Cty. Feb. 14, 2017) (Winter, J.) ¶ 13

(approving structure in case with Bock Hatch as co-class counsel); *see also Childs v. Comm'r Internal Revenue*, 103 T.C. 634 (1994), *aff'd per curiam*, 89 F.3d 856 (11th Cir. 1996)).

Finally, Pill Box argues that "neither the Court nor the Class knows all the terms governing that proposed settlement agreement" because the Settlement Agreement incorporates the parties' term sheet. (Obj. at 13). The term sheet is attached as Exhibit M. The Court will find it is perfectly consistent with the terms of the Settlement Agreement.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant final approval of the settlement as fair, reasonable, and adequate. The parties' proposed order is submitted with this brief as Exhibit A.

DR. STEVEN ARKIN, individually and as the representative of a class of similarly-situated persons

By: /s/ Brian J. Wanca
 One of Plaintiff's Attorneys

   Brian J. Wanca #3126474
   ANDERSON + WANCA
   3701 Algonquin Road, Suite 500
   Rolling Meadows, IL 60008
   Telephone: 847/368-1500
   Facsimile: 847/368-1501

## <u>CERTIFICATE OF SERVICE</u>

   I, the undersigned, state that on April 19, 2019, I filed the foregoing through the Court's electronic filing system and served a true and correct copy on the below listed party(s) via email:

Martin W. Jaszczuk mjaszczuk@jaszczuk.com
Seth Corthell scorthell@jaszczuk.com
Jaszczuk P.C.
311 S. Wacker Drive, Suite 3200
Chicago, IL 60606


Phillip A. Bock phil@classlawyers.com
David M. Oppenheim david@classlawyers.com
Jonathan B. Piper jon@classlawyers.com
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602


      /s/ Brian J. Wanca
      One of Plaintiff's Attorneys

## IN THE CIRCUIT COURT OF THE 19TH JUDICIAL DISTRICT
## LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| DR. STEVEN ARKIN, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 18 CH 984 |
| v. | ) ) | Judge Luis A. Berrones |
| SMITH MEDICAL PARTNERS, LLC and H.D. SMITH, LLC, | ) ) ) | |
| Defendants. | ) | |

## INDEX OF EXHIBITS TO PLAINTIFF'S BRIEF
## IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

| | |
|---|---|
| Plaintiff's Proposed Final Approval Order | Exhibit A |
| Affidavit of Brittany Mitchell | Exhibit B |
| Affidavit of Hon. James F. Holderman (Ret.) | Exhibit C |
| Affidavit of Ross Good | Exhibit D |
| *Pill Box* Class Action Complaint, *Pressman, Inc. d/b/a Pill Box Pharm. & Med. Supply v. Bayer Corp.*, No. 16 CH 325 (Cir. Ct. Lake Cty.) ("*Pill Box*") | Exhibit E |
| *Pill Box* Pl.'s Mot. Preliminary Approval | Exhibit F |
| *Pill Box* Pl.'s Mot. Final Approval w/o Exhibits | Exhibit G |
| *Pill Box* Final Approval Order | Exhibit H |
| Pl.'s Mot. Preliminary Approval in *Nuerocare Inst. of Central Fla. v. Healthtap, Inc.*, No. 13-cv-1228 (M.D. Fla. Nov. 14, 2014) | Exhibit I |
| Pl.'s Mot. Preliminary Approval in *ARcare v. Cynosure, Inc.*, No. 16-cv-11547 (D. Mass. Mar. 3, 2017) | Exhibit J |
| Final Approval Order in *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 15 CH 1926 (Cir. Ct. Lake Cty. June 24, 2016) | Exhibit K |
| Final Approval Order in *Good v. Rogan Shoes, Inc.*, No. 09 CH 3731 (Cir. Ct. Lake Cty. Feb. 14, 2017) | Exhibit L |
| Term Sheet | Exhibit M |
| Final Approval Order in *Rusgo & Depanicis, Inc. v. Walter J. Svenkesen Ins. Agency, Inc.*, No. 16-cv-12966 (E.D. Mich. Sept. 9, 2017) | Exhibit N |

**EXHIBIT A**

### IN THE CIRCUIT COURT OF THE 19TH JUDICIAL DISTRICT
### LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| DR. STEVEN ARKIN, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  18 CH 084 |
| v. | ) | |
| | ) | |
| SMITH MEDICAL PARTNERS, LLC and H.D. SMITH, LLC, | ) ) | Hon. Luis Berrones |
| | ) | |
| Defendants. | ) | |

### FINAL APPROVAL ORDER AND JUDGMENT

The Parties' proposed class action settlement coming before the Court for a fairness hearing on April 26, 2019, at 9:15 a.m. in Room C-204, of the Circuit Court of Lake County, Illinois, at which all persons were given an opportunity to be heard, the Court considering the submissions of the parties, including Plaintiff's Motion for Final Approval of Class Action Settlement, the statements of counsel, and the fairness of the settlement's terms, **IT IS HEREBY ORDERED THAT:**

1.       Capitalized terms used in this Order that are not otherwise defined herein have the same meaning assigned to them as in the Settlement Agreement.

2.       This Court grants final approval of the Settlement Agreement, including, but not limited to, the releases therein, and finds that the settlement is in all respects fair, reasonable, and adequate, and in the best interests of all those affected by it.  The Parties and their counsel shall implement and consummate the Settlement Agreement according to its terms and provisions.  The Settlement Agreement is binding on, and has *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings brought or maintain by or on behalf of Plaintiff and all other Settlement Class Members who have not opted out of the Settlement.  Any timely objections that

1

were filed have been considered and are overruled. Accordingly, this Final Judgment and Order is binding on all members of the Settlement Class who did not Opt Out.

3.      This Court has jurisdiction over Plaintiff, Dr. Steven Arkin ("Plaintiff"), the members of the Settlement Class, Defendants, Smith Medical Partners, LLC and H. D. Smith, LLC ("Defendants"), and the claims asserted in this lawsuit.

4.      This Court finds that the parties entered into the Settlement Agreement in good faith, following arm's-length negotiations with the assistance of a professional mediator and retired judge, and that it was not collusive.

## Class Certification

5.      On January 25, 2019, pursuant to 735 ILCS 5/2-801 and 735 ILCS 5/2-802, the Court entered an order entitled, "Order Preliminarily Approving Class Action Settlement and Class Notice" (the "Preliminary Approval Order").

6.      The Preliminary Approval Order certified the following class solely for purposes of settlement: "All persons who were sent, by or on behalf of H. D. Smith, LLC or Smith Medical Partners, LLC, one or more advertisements by facsimile from September 26, 2013 through the date of preliminary approval." (the "Class"). In the Settlement Agreement, the Parties agreed that this is a proper class definition solely for purposes of settlement. Excluded from the Settlement Class are (a) the Defendants and their present and former members, managers, employees, and their successors, heirs, assigns, and legal representatives; (b) all persons who opted out of the settlement by timely submitting their opt-out request; and (c) members of the Illinois judiciary.

7.      The Preliminary Approval Order also appointed Plaintiff as the Class Representative and appointed attorney Brian J. Wanca of Anderson + Wanca as Class Counsel.

2

## Class Notice

8.      Plaintiff submitted the affidavit of Brittany Mitchell to demonstrate that the "Notice of Class Action and Proposed Settlement" (the "Notice") was sent to the members of the Settlement Class as ordered in the Preliminary Approval Order. The Court finds that the Notice and the process by which it was sent:  (1) fully complied with the requirements of 735 ILCS 5/2-803 and due process under the Illinois and United States Constitutions; (2) constituted the best notice practicable under the circumstances; (3) constituted notice that was reasonably calculated, under the circumstances, to apprise the members of the Settlement Class of the pendency of this Action, their right to object to or exclude themselves from the proposed Agreement and to appear at the Final Approval Hearing; and (4) constituted due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

## Objections and Opt-Outs

9.      There was one objection filed regarding the settlement.  The Court has considered the objection carefully and overruled it.  None of these objections raised a valid concern about the Settlement Agreement.

10.      The following persons have requested exclusion and are hereby excluded from the Class and this case: The South Bend Clinic, Phuong Nguyen, Associated Psychiatrists of Nashville, ACT Wellness Center, Kearny County Health Office, Heather Elizabeth Hansen, Psymed Solutions, Urology Surgery Center of Savannah LLP, Sweetwater-Nolan County Health Department Family Planning.

## Class Compensation

11.      Defendants have created a settlement fund totaling twenty-one million dollars ($21,000,000.00 USD) (the "Settlement Fund") and made it available to pay Settlement Class Members' claims, to pay an incentive award to Plaintiff for serving as the Class Representative, to

pay claims administration, and to pay Class Counsel's attorneys' fees and reasonable out-of-pocket expenses.

12.     As the Parties agreed in the Settlement Agreement, each member of the Class who submits a timely and valid Claim Form will be paid $493.32 for each fax number at issue in this case, subject only to a *pro rata* reduction in the event that the claims and other payments approved herein otherwise would exceed the total Settlement Fund. The Settlement Administrator will cause those checks to be mailed after receiving the funds from Defendants. As agreed between the parties, checks issued to the class members will be void ninety (90) days after issuance.  Any money remaining from checks issued to claiming class members but not cashed shall be awarded to Prairie State Legal Services as a cy pres award.

**Awards of Incentive Award and Attorneys' Fees and Expenses**

13.     Pursuant to the Parties' agreement, the Court approves and awards a $15,000.00 incentive award to Plaintiff for serving as the class representative in this matter. In accordance with the Settlement Agreement, Defendants will pay that amount from the Settlement Fund ten (10) days after the Effective Date.

14.     Pursuant to the Parties' agreement, the Court approves and awards attorneys' fees to Class Counsel in the amount of $7,000,000.00 (one third of the Settlement Fund) plus reasonable out-of-pocket expenses incurred in the amount of $31,564.43.  Defendants will pay those amounts from the Settlement Fund per the terms of the Settlement Agreement.  Class Counsel has expressed an interest in receiving its fee award from the Settlement Fund in periodic payments, rather than in a lump sum, which the Court approves if Class Counsel elects to receive periodic payments.  The Settlement Administrator, KCC, or other third-party designee, by this Order, is permitted to enter into any and all agreements with Class Counsel and third parties to provide for such periodic payment of the fee award.  The receipt of attorneys' fees by Class

4

Counsel in periodic payments, if elected by Class Counsel, does not impact Defendants' rights or obligations under this Agreement in any way and Defendants shall have no further obligations or liabilities with respect to the payment of attorneys' fees or costs after it has made the payments described in this paragraph.

## Releases and Dismissal

15.     All claims or causes of action of any kind by Plaintiff and Settlement Class Members who were not properly excluded from the Settlement Class are forever barred and released pursuant to the terms of the releases set forth in Section V of the Settlement Agreement.

16.     This lawsuit is dismissed with prejudice as to Plaintiff and all members of the Settlement Class (except that the dismissal is without prejudice as to those persons identified above who submitted valid exclusions from the Class), and without fees or costs except as provided by the Settlement Agreement.

## Other Provisions

17.     The Court adopts and incorporates all of the terms of the Settlement Agreement by reference here.

18.     This Court retains continuing jurisdiction over this action, Plaintiff, all members of the Settlement Class, and Defendants, to determine all matters relating in any way to this Final Judgment and Order, the Preliminary Approval Order, or the Settlement Agreement, including, but not limited to, their administration, implementation, interpretation, or enforcement.

19.     The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

20.     The Court finds that there is no just reason to delay the enforcement of or appeal from this Final Approval Order and Judgment.

Dated: _____                    _____
                                               Honorable Luis Berrones

**EXHIBIT B**

**IN THE CIRCUIT COURT OF THE 19TH JUDICIAL DISTRICT**
**LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DR. STEVEN ARKIN, a Florida resident, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18 CH 984 |
| SMITH MEDICAL PARTNERS, LLC and H.D. SMITH, LLC, Delaware limited liability companies, | ) ) ) ) | |
| Defendants. | ) ) | |

**AFFIDAVIT OF BRITTANY MITCHELL**

I, Brittany Mitchell, being first duly sworn on oath, depose and state as follows:

1.       I am employed by KCC Class Action Services, LLC ("KCC"), located at 462 S 4th St., Louisville, Kentucky.  KCC was appointed as the Settlement Administrator in this matter and is not a party to this action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

**Class List**

2.       On January 25, 2019, KCC received a list (the "Class List) from the parties, which identified forty-two-thousand five-hundred and sixty-nine (42,569) Settlement Class Members.  The Class List included each Settlement Class Member's fax number.  KCC formatted the Class List for faxing purposes.

**Fax Notice**

3.       On February 8, 2019, KCC caused the court-approved *Notice of Proposed Class Action Settlement with Attached Claim Form* (the "Notice Packet") to be faxed to the Settlement Class Members. A true and correct copy of the Notice Packet is attached hereto as Exhibit A.

4.      In accordance with the Settlement Agreement, in all instances where the initial facsimile transmission was unsuccessful, two additional transmission attempts were made to fax the Notice.

5.      On February 12, 2019, KCC was notified that Class Members who received the faxed Notice Packet as part of the second or third transmissions (but not the initial transmission) received a non-merged copy of the claim form and then a full merged 2-page claim form without the Notice of Proposed Class Action Settlement. Because the fax vendor was unable to confirm with 100% accuracy who received which version, KCC directed the vendor to resend the Notice to all 42,569 individuals identified as Settlement Class Members on the Class List on February 13, 2019.

6.      Of the 42,569 faxes sent, KCC received confirmation that a total of twenty-seven-thousand five-hundred and seventy-two (27,572) were successfully delivered, over three (3) attempts, meaning that 64.77% of the Settlement Class Members were reached with individual, facsimile notice.

7.      KCC performed a reverse fax search for the numbers where fax transmissions were unsuccessful and located addresses for 6,052 individuals. These names and addresses were processed through the National Change of Address Database ("NCOA") to update any addresses on file with the United States Postal Service ("USPS"). A total of 371 addresses were found and KCC updated the Class List with the new addresses. Postcard Notices were then mailed on February 20, 2019 to the 6,052 individuals for whom good and/or updated addresses were found. A copy of the Postcard Notice is attached hereto as Exhibit B.

8.      To date, KCC has received a total of 440 Postcard Notices returned by the U.S. Postal Service without forwarding address information. Six of these Postcard Notices were returned as undeliverable prior to the Claims Deadline. KCC ran a search for updated addresses

for these six Class Members, but no updated addresses were found.  An additional 436 Postcard Notices were returned as undeliverable after the deadline.   Accordingly, KCC estimates that 13.18% of the Settlement Class Members were reached with individual, mailed postcard notice.

**Website**

9.       On or before February 8, 2019, KCC established a Settlement Website under the domain name www.ArkinvSmithTCPASettlement.com.  On the Settlement Website, visitors can view answers to frequently asked questions, download important case documents, and find contact information for KCC.  Prior to the Claims Deadline, known Class Members could also submit individual claims online by using the Claim ID and PIN Code provided in the Notice Packet or Postcard Notice.

**Toll-Free Telephone Number**

10.       Prior to February 8, 2019, KCC established a toll-free telephone number (866-458-3788) to allow Class Members to call and obtain information about the settlement in the form of recorded answers to Frequently Asked Questions. Callers can also request that a Claim Form be sent to them. This automated phone system is available 24 hours per day, 7 days per week.

**Fax Number**

11.       Prior to February 8, 2019, KCC established a fax number (866-458-3789) to send Notice Packets and receive Claim Forms Class Members.

**Claim Forms Received**

12.       As of April 17, 2019, KCC has processed 1,660 timely, unique claim forms submitted via the website, mail, and facsimile. However, timely claims are still being processed and duplicates identified.  Class Members will be receiving $493.32 for each valid fax number. Additionally, KCC has received nine late Claim Forms which were faxed or postmarked after the

Claims Deadline.

**Request for Exclusion from Settlement Class**

13.    The deadline for Settlement Class Members to request to be excluded from the class was March 25, 2019.  As of the date of this declaration, KCC has received ten (10) requests for exclusion, though two of these have not been processed as one does not list a fax number in the exclusion request and the other lists a fax number that was not included in the original Class List.  A list of these requests for exclusion is attached as hereto as Exhibit C.

**Objections to the Settlement**

14.    The deadline for Class Members to object to the settlement was March 25, 2019. As of the date of this affidavit, KCC has received one objection. The objection purports to be filed on behalf of Pressman, Inc. d/b/a Pill Box Pharmacies and Medical Supply, Weston Pill Box, Inc. d/b/a Pill Box Pharmacies and Medical Supply, Pill Box Pines West, LLC d/b/a Pill Box Pharmacies and Medical Supply, and Davie Pill Box, LLC, d/b/a Pill Box Pharmacies and Medical Supply.

Further your Affiant sayeth naught.

Executed on: ___April 19___, 2019

_Brittany Mitchell_
Brittany Mitchell

Subscribed and sworn before me

this __19__ day of April, 2019

_Michelle Osborn_
Notary Public

MICHELLE OSBORN
Official Seal
Notary Public – State of Illinois
My Commission Expires Jan 26, 2021

# EXHIBIT A

**THIS IS A NOTICE OF A LAWSUIT SETTLEMENT.**
**You may benefit from this.  Please read it carefully.  You are not being sued.**

## IN THE CIRCUIT COURT OF THE 19TH JUDICIAL DISTRICT
## LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| DR. STEVEN ARKIN, individually and as the representative of a class of similarly-situated persons, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  18CH000984 |
| | ) | |
| SMITH MEDICAL PARTNERS, LLC and H. D. SMITH, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

TO:    All persons who were sent, by or on behalf of H. D. Smith, LLC or Smith Medical Partners, LLC, one or more advertisements by facsimile from September 26, 2013 through January 25, 2019.

**A.**    **WHY HAVE YOU RECEIVED THIS NOTICE?**  The Court ordered us to send you this Notice because you may be a member of the Class defined above.  This Notice explains the nature of the lawsuit and the settlement terms and informs you of your legal rights and obligations.  You must submit a Proof of Claim Form to receive a monetary payment.

**B.**    **WHAT IS THIS LAWSUIT ABOUT?**  This lawsuit is about fax advertisements sent on behalf of H. D. Smith, LLC and Smith Medical Partners, LLC ("Defendants") allegedly from September 26, 2013 through January 25, 2019.  Plaintiff filed this lawsuit in the Circuit Court of Lake County, Illinois.  On behalf of himself and a class of similarly-situated persons, Plaintiff alleged that Defendants violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, by faxing advertisements to the Class without their prior express invitation or permission to do so or without displaying a proper opt-out notice.  Defendants denied Plaintiff's allegations and raised defenses.  To avoid the costs and expenses of litigation, the parties have agreed to settle all claims relating to the faxes described above.

**C.**    **WHAT IS THE PROPOSED SETTLEMENT?**  Without admitting any fault or liability, and in exchange for a release of all claims against Released Parties Defendants have agreed to send a monetary payment to each person who submits a timely and valid Proof of Claim Form.  The monetary payment to each claimant will correspond to the claimant's *pro rata* share of a $21,000,000.00 Settlement Fund after payment of Class Counsel fees and expenses, an incentive award to the Class Representative, and notice and class administration costs, up to $493.32 per fax number included in the class list produced in the litigation.  The Court has preliminarily approved this settlement, subject to a Final Approval Hearing that will occur on **April 26, 2019, at 9:15 a.m.**, in Room C-204 of the Circuit Court of Lake County, Illinois, 18 N. County Street, Waukegan, IL 60085.

**D.**    **WHAT ARE YOUR FOUR OPTIONS?**

   **1.**    **Return a completed Proof of Claim Form.**  To receive a share of the Settlement Fund, you must return a completed and signed Proof of Claim Form postmarked on or before **March 26, 2019**.  The Proof of Claim Form is attached to this Notice.  You may return it by fax to 1-866-458-3789, or U.S. mail to *Arkin v. Smith Medical Partners* Settlement Administrator, P.O. Box 404000, Louisville, KY 40233-4000, or submit it through the following website: www.ArkinvSmithTCPASettlement.com.  If the Proof of Claim Form is timely and valid, you will receive a check for your share of the Settlement Fund at the address listed on the Proof of Claim Form if the Settlement is approved by the court.  You will be bound by the judgment and you will ultimately release your claims against the Defendants and the "Released Parties" as defined in the Settlement Agreement.

   **2.**    **Do nothing and receive nothing.**  If you do nothing, you will remain a member of the class but you will not receive a share of the Settlement Fund.  You will be bound by the judgment and you will release your claims against the Defendants Released Parties.

   **3.**    **Exclude yourself from the Class and the Settlement.**  You are not required to participate in the Settlement. You have the right to exclude yourself from both the class action and the Settlement by sending a written request for exclusion.  Your request for exclusion must be postmarked on or before **March 25, 2019**.  If your request is not postmarked by that date, your right to opt out will be deemed waived and you will be bound by all orders and judgments entered in connection with the Settlement.  Your request must list your name, street address, fax number(s), the name and number of this case, and it must indicate your request for exclusion (for example, "Exclude me from the Arkin v. Smith Medical Settlement").  You must send your request for exclusion to the Settlement Administrator at: *Arkin v. Smith Medical Partners* Settlement Administrator, P.O. Box 404000, Louisville, KY 40233-4000.  The Settlement Administrator will inform the Court of your request.

**4.** **Object to the settlement in writing.** If you object to the Settlement, and wish to submit an objection rather than excluding yourself from the class action, you must submit your objection in writing to the Clerk of the Circuit Court of Lake County, Illinois, 18 N. County Street, Waukegan, IL 60085. Your objection must be postmarked by **March 25, 2019.** You must also serve copies of your objection and any supporting memoranda or materials on Class Counsel and counsel for Defendants, postmarked by the same date and addressed as follows:

| Class Counsel: | For the Defendants: |
|---|---|
| Brian J. Wanca | Martin W. Jaszczuk |
| Anderson + Wanca | Jaszczuk P.C. |
| 3701 Algonquin Road, Suite 500 | 311 S. Wacker Drive, Suite 3200 |
| Rolling Meadows, IL 60008 | Chicago, IL 60606 |

Any objection must include: (i) your full name, fax number, address, telephone number and e-mail address (if any); (ii) information identifying you as a Settlement Class Member; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection you believe is applicable; (iv) the identity of all lawyers (if any) representing you; (v) the identity of all your lawyers (if any) who will appear at the Final Approval Hearing; (vi) a list of all persons who will be called to testify at the Final Approval Hearing in support of your objection; (vii) a statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing; and (viii) your signature or the signature of your duly authorized lawyer or other duly authorized representative. If you file an objection and wish it to be considered, you must also appear at the Final Approval Hearing before Judge Luis Berrones in Room C-204 of the Circuit Court of Lake County, Illinois, 18 N. County Street, Waukegan, IL 60085, on **April 26, 2019, at 9:15 a.m.**

YOU ARE NOT REQUIRED TO ATTEND THIS HEARING UNLESS YOU PLAN TO OBJECT TO THE SETTLEMENT.

**E.** **WHEN WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?** The Court will hold a Final Approval Hearing on the fairness of the proposed Settlement. At the Final Approval Hearing, the Court will hear any objections and arguments concerning the fairness of the proposed settlement, including the amount of the award of attorneys' fees and litigation expenses to Class Counsel. The Final Approval Hearing will take place on **April 26, 2019, at 9:15 a.m.**, in Room C-204 in the Circuit Court of Lake County, Illinois, 18 N. County Street, Waukegan, IL 60085. **Unless you have objected to the Settlement, you do not need to attend this hearing.** The Final Approval Hearing may be continued to a future date without further notice. If the Court does not approve the Settlement, the case will proceed as if no Settlement had been attempted. If the Settlement is not approved, there is no assurance that the Class will recover more than is provided in the Settlement or recover anything at all.

**F.** **WHO REPRESENTS THE CLASS?** The Court appointed Plaintiff Dr. Steven Arkin to be the "Class Representative" and appointed the following attorney to be "Class Counsel":

Brian J. Wanca
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
1-855-827-2329

You may, if desired, enter an appearance through counsel, but you are not required to do so. At the Final Approval Hearing, Class Counsel will request that the Court order from the Settlement Fund payment of an incentive award of $15,000.00 to the Class Representative for his services on behalf of the Class in this litigation. Additionally, Class Counsel will request an award of attorneys' fees and expenses equal to one-third of the Settlement Fund, plus out-of-pocket litigation expenses to be paid to them from the Settlement Fund for their services on behalf of the Class.

**G.** **HOW DO I OBTAIN MORE INFORMATION ABOUT THE LAWSUIT OR THE SETTLEMENT?**

This description of the case is general and does not cover all of the issues and proceedings. To get more information, including a copy of the Settlement Agreement, you may visit the website established by the Settlement Administrator at www.ArkinvSmithTCPASettlement.com or, to see the complete file, you may visit the office of the Clerk of the Circuit Court of Lake County, Illinois, 18 N. County Street, Waukegan, IL 60085. The Clerk will make the files relating to the lawsuit available to you for inspection and copying at your own expense.

If you have specific questions, you can write to Class Counsel at the address listed above. Include the case number, your name, your fax number, and your current street address on any correspondence. You may also call Class Counsel at the telephone number listed above.

Please do not contact the Clerk of the Court or the Defendants' attorneys, because they cannot answer your questions or give you advice about this settlement.

**BY ORDER OF THE COURT - HONORABLE LUIS BERRONES**

**QUESTIONS? CALL 1-866-458-3788 TOLL-FREE, OR VISIT WWW.ARKINVSMITHTCPASETTLEMENT.COM**

2



*Arkin v. Smith Medical Partners Settlement Administrator*
P.O. Box 404000
Louisville, KY 40233-4000

## SAK

*DR. STEVEN ARKIN v. SMITH MEDICAL PARTNERS, LLC AND H. D. SMITH, LLC*

CIRCUIT COURT OF THE NINETEENTH JUDICIAL DISTRICT, LAKE COUNTY, ILLINOIS

Case No. 18CH000984

**Must Be Postmarked No Later Than March 26, 2019**

**Claim ID: <<Claim ID>>**
**PIN Code: <<PIN>>**

# PROOF OF CLAIM FORM

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund*

1.   **You Must Provide Your Contact Information:**

┌─ **CLAIMANT INFORMATION** ──────────────────────────────────────────┐

First Name                                              M.I.      Last Name

Company

Primary Address

Primary Address Continued

City                                                    State     Zip Code

Email Address

Area Code — Telephone Number (home)          Area Code — Telephone Number (work)

**CLAIMED FAX NUMBER(S):**

Area Code — Fax Number          Area Code — Fax Number

(Please list all eligible fax numbers for which you can verify ownership. You may attach a separate sheet.)

└──────────────────────────────────────────────────────────────────┘

FOR CLAIMS PROCESSING ONLY    OB    CB    ○ DOC  ○ LC  ○ REV    ○ RED  ○ A  ○ B

2. <u>**You Must Verify Ownership of the Fax Number(s) Listed in #1 Above**</u>:

(a) "The fax number(s) identified above or attached to this Proof of Claim Form was/were mine or my company's from September 26, 2013 through January 25, 2019."

Signature: _____     Dated (mm/dd/yyyy): _____

Print Name: _____

<u>*OR*</u>

(b) "The fax number(s) identified in No. 1 above or attached to this Proof of Claim Form was <u>**not**</u>/were <u>**not**</u> mine or my company's from September 26, 2013 through January 25, 2019." Explain when you obtained the fax number(s) identified in No. 1 above or attached to this Proof of Claim Form:

_____

_____

_____

Signature: _____     Dated (mm/dd/yyyy): _____

Print Name: _____

3. <u>**You Must Return this Proof of Claim Form by March 26, 2019**</u>:

a. Fax this Proof of Claim Form to 866-458-3789.

<u>*OR*</u>

b. Mail this Proof of Claim Form to *Arkin v. Smith Medical Partners* Settlement Administrator, P.O. Box 404000, Louisville, KY 40233-4000.

<u>*OR*</u>

c. Submit this Proof of Claim Form electronically at www.ArkinvSmithTCPASettlement.com.

**QUESTIONS? Call 1-866-458-3788 Toll-Free, or Visit www.ArkinvSmithTCPASettlement.com.**

# EXHIBIT B

*Arkin v. Smith Medical Partners Settlement Administrator*
P.O. Box 404000
Louisville, KY 40233-4000

2D

Postal Service: Please Do Not Mark Barcode

SAK-<<Claim8>>-<<CkDig>>

Claim ID: <<ClaimID>>
PIN Code: <<PIN>>

«FirstNAME» «LastNAME»
«ADDR1» «ADDR2»
«CITY», «STATE» «ZIP»
«FCOUNTRY»

# LEGAL NOTICE

See other side for details

# SAK

**If You Were Sent, by or on Behalf of H. D. Smith, LLC or Smith Medical Partners, LLC,
One or More Advertisements by Facsimile from September 26, 2013 through January 25, 2019,
You May Be Eligible for a Cash Payment from a Class Action Settlement**

This lawsuit is about fax advertisements allegedly sent on behalf of H. D. Smith, LLC and Smith Medical Partners, LLC ("Defendants") from September 26, 2013 through January 25, 2019. Plaintiff filed this lawsuit in the Circuit Court of Lake County, Illinois. On behalf of himself and a class of similarly-situated persons, Plaintiff alleged that Defendants violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, by faxing advertisements to the Class without their prior express invitation or permission to do so or without displaying a proper opt-out notice. Defendants denied Plaintiff's allegations and raised defenses. To avoid the costs and expenses of litigation, the parties have agreed to settle all claims relating to the faxes described above.

**Why am I Being Contacted?** Our records indicate that you may be a member of the Class, as defined below, and you may be eligible to receive a payment from the Settlement.

**Who's Included in the Class?** All persons who were sent, by or on behalf of H. D. Smith, LLC or Smith Medical Partners, LLC, one or more advertisements by facsimile from September 26, 2013 through January 25, 2019.

**What Does the Settlement Provide?** Defendants have agreed to create a fund to pay valid claims, settlement administration expenses, attorneys' fees, costs and expenses, and a Class Representative incentive award. Each Class Member who submits a timely, valid Proof of Claim Form may receive an equal payment out of the Settlement Fund. The exact amount of each Class Member's payment is unknown at this time; it may be as much as $493.32, but it may be less depending on several factors. To receive an equal cash payment from the fund, you must complete and submit a Proof of Claim Form by March 26, 2019. To obtain a Proof of Claim Form, please visit www.ArkinvSmithTCPASettlement.com. You may submit your Proof of Claim Form at that website, by mail *Arkin v. Smith Medical Partners* Settlement Administrator, P.O. Box 404000, Louisville, KY 40233-4000, or by fax to 1-866-458-3789. For more information about this Settlement, including its benefits, your options, and how to submit a claim for cash, please visit www.ArkinvSmithTCPASettlement.com or call 1-866-458-3788.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **March 25, 2019**. If you do not exclude yourself, you will release your claims against Defendants Released Parties, as more fully described in the Settlement Agreement. If you stay in the Settlement, you may object to it by **March 25, 2019**. The detailed notice available at the website listed below explains how to exclude yourself or object. The Court is scheduled to hold the Final Approval Hearing on April 26, 2019 to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees and expenses equal to one-third of the Settlement Fund plus out-of-pocket expenses, and an incentive award for the Class Representative of $15,000.00. You can appear at the Final Approval Hearing, but you do not have to. If you want, you can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**For more information and for a Proof of Claim, visit www.ArkinvSmithTCPASettlement.com or call 1-866-458-3788.**

# EXHIBIT C

Exhibit C

| Name | Fax Number |
|---|---|
| The South Bend Clinic | 5742391554 |
| The South Bend Clinic | 5742434405 |
| Phuong Nguyen | 5038289056 |
| Associated Psychiatrists of Nashville | 6153274881 |
| ACT Wellness Center | 6159627853 |
| Kearny County Health Office | 6203557129 |
| Heather Elizabeth Hansen | 9207390953 |
| Psymed Solutions | 9722327401 |
| | |
| Urology Surgery Center of Savannah, LLP | 9123529031* |
| Sweetwater-Nolan County Health Department Family Planning | ** |

\* The fax number on this request for exclusion was not listed in the Class List
\*\* No fax number was provided on this request for exclusion

**EXHIBIT C**

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL DISTRICT
LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| DR. STEVEN ARKIN, a Florida resident, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18 CH 984 |
| SMITH MEDICAL PARTNERS, LLC and H.D. SMITH, LLC, Delaware limited liability companies, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEDIATOR'S AFFIDAVIT OF RETIRED JUDGE JAMES F. HOLDERMAN

I, James F. Holderman, being first duly sworn on oath, depose and state as follows:

1.     I am over 70 years old and am competent to testify.  I am preparing this Affidavit for filing with the consent of Counsel for both sides of the case.  Unless otherwise indicated, I have personal knowledge of the facts set forth herein.  Counsel for both sides have jointly asked me to submit this Affidavit to further explain the circumstances of the proposed class settlement in this case.

2.     Until my retirement on June 1, 2015, I served as a United States District Court Judge of the Northern District of Illinois for 30 years and was Chief Judge of the District from July 1, 2006 through June 30, 2013.

3.     On June 2, 2015, I began providing private dispute resolution services, including mediating lawsuits, at the JAMS Chicago Office.

4.     The mediated settlement negotiations in this case that resulted in the proposed settlement between the Plaintiff Dr. Steven Arkin and Defendants Smith Medical Partners, LLC and H. D. Smith, LLC began with pre-mediation discussions, continued with the submission of mediation statements by each side, and concluded with a day-long mediation session on August 8, 2018 at the JAMS Chicago Office.

5.     During the August 8, 2018 mediation session, counsel for the Plaintiff and counsel for the Defendants discussed with me, while each side was in a separate room, their relative views of the law, the facts, and the risks involved in continuing to litigate. I mediated their discussions using the shuttle diplomacy method.

1

6.    During the August 8, 2018 mediation session, I personally witnessed that each side's counsel conducted their mediated settlement negotiations at all times in an adversarial, arm's-length, good faith and non-collusive manner.

7.    The parties were initially far apart on the material terms of a potential agreement and the discussions were contentious. Slowly, progress was made. And, toward the conclusion of the mediated negotiations in the late afternoon of August 8, and approaching early evening, I made a final push for a mediator's proposal that I thought might be acceptable to each side to settle the case. Both sides accepted my proposal after a hard-fought day of animated negotiations.

8.    Over the weeks following the August 8, 2018 mediation session, the parties worked to document the settlement reached at the mediation, which culminated in the Settlement Agreement signed on November 13, 2018 and subsequently filed with this Court on November 29, 2018. I have reviewed the terms of the Settlement Agreement and they reflect and are consistent with the agreement reached by the parties under my auspices during the August 8, 2018 mediation. I believe the mediated settlement reached in this matter is reasonable and fair in all material respects.

Further your Affiant sayeth naught.

Executed on: _April 18_, 2019

_James F. Holderman_
Retired Judge James F. Holderman

Subscribed and sworn before me

this _18th_ day of April, 2019

_[signature]_
Notary Public

OFFICIAL SEAL
JULIANA C WILKIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/18/21

**EXHIBIT D**

**IN THE CIRCUIT COURT OF THE 19TH JUDICIAL DISTRICT**
**LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DR. STEVEN ARKIN, a Florida resident, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 18 CH 984 |
| | ) | |
| SMITH MEDICAL PARTNERS, LLC and H.D. SMITH, LLC, Delaware limited liability companies, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF ROSS GOOD**

I, Ross Good, being first duly sworn on oath, deposes and states as follows:

1.      I am an attorney at Anderson + Wanca. I represent Plaintiff and the class in this case.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

**Class Discovery**

2.      Throughout discovery in this litigation, I oversaw the review of documents relating to fax broadcasts of Defendants.

3.      Approximately 1,334 of the fax broadcasts contain content that appear to be "advertisements" that could be violations of the Telephone Consumer Protection Act. The content for the remaining fax broadcasts were non-advertisements related to recall notifications for customers or were fax broadcasts where Defendants did not retain the fax content.

4.      In total, I identified 42,569 fax numbers that were attempted to be faxed at least one time regardless of content of the fax broadcast. This list of 42,569 fax numbers became the Class List.

5.      The Class List appears to be over-inclusive based upon the records I reviewed in this matter. Specifically, certain fax numbers that did not successfully receive faxes according to the few transmission logs obtained during discovery are still included in the class list.

6.      The Class List includes all fax numbers obtained in discovery from within Defendants' internal customer database. The Class List also includes all fax numbers obtained in discovery which were not obtained from Defendants' internal customer database. Fax numbers were included in the Class List regardless of whether the content of the fax broadcasts could plausibly be considered an advertisement.

7.      I was able to identify one or more transmission logs evidencing a successful fax transmission for 8,859 fax numbers from the Class List of 42,569 fax numbers (20.81%).

8.      Plaintiff received a fax from Defendant on September 15, 2017. Defendant did not retain a fax transmission log for this fax broadcast.

9.      There are no fax transmission logs demonstrating a successful fax transmission to Plaintiff's fax number.

**Objectors**

10.      I understand that an objection was filed purportedly on behalf of entities associated with the following fax numbers:

   a.   Pressman, Inc. d/b/a Pill Box Pharmacies and Medical Supply: 954-432-1217

   b.   Weston Pill Box, Inc. d/b/a Pill Box Pharmacies and Medical Supply: 954-389-2468

   c.   Pill Box Pines West, LLC d/b/a Pill Box Pharmacies and Medical Supply: 954-438-4770

      d.   Weston Pill Box, Inc. d/b/a Pill Box Pharmacies and Medical Supply: 855-

215-3050

11.     There are no fax transmission logs evidencing a successful fax transmission to

954-432-1217.

12.     There are no fax transmission logs evidencing a successful fax transmission to

954-389-2468.

13.     There are no fax transmission logs evidencing a successful fax transmission to

954-438-4770.

14.     There are no fax transmission logs evidencing a successful fax transmission to

855-215-3050.

**David M. Oppenheim**

15.     David Oppenheim was employed at Anderson + Wanca from June 2009 to April

7, 2016. David Oppenheim resigned from Anderson + Wanca to take a job at Bock Law Firm

d/b/a Bock, Hatch, Lewis & Oppenheim. Unbeknownst to Anderson + Wanca, David

Oppenheim had the laptop assigned to him from Anderson + Wanca copied to a new laptop

which was partially paid for with funds from the managing partner of Bock Law Firm, Philip

Bock. Anderson + Wanca filed suit against David Oppenheim regarding this. That lawsuit is

currently pending in the Circuit Court of Cook County, Illinois, Case No. 17CH08373 (the

"Cook County Case").

16.     I represent Plaintiffs in the matter of *Cin-Q Automobiles, Inc. and Medical &*

*Chiropractic Clinic, Inc. v. Buccaneers Limited Partnership* pending in the U.S. District Court

for the Middle District of Florida, No. 8:13-cv-01592-AEP. During his employment at Anderson

+ Wanca, David Oppenheim also represented Plaintiffs in this matter. David Oppenheim's representation of Plaintiffs in this matter ended when he resigned from Anderson + Wanca.

17.     On May 6, 2016, Bock Law Firm filed a case on behalf of Technology Training Associates, Inc. against Buccaneers Limited Partnership in the Circuit Court for the 13th Judicial Circuit of Hillsborough County, Florida, Case No. 16-CA-004333. Bock Law Firm subsequently dismissed that case, settled the action class-wide without a pending case, and then refiled the case in federal court. The action is currently pending in the U.S. District Court for the Middle District of Florida, No. 8:16-cv-01622-MSS-AEP ("TTA v. Buccaneers Action"). Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. have been allowed to intervene in that action by the Eleventh Circuit Court of Appeals and are currently seeking to strike the proposed class-wide settlement.

**April 3, 2019 Conference Call**

18.     On April 3, 2019, I met and conferred telephonically with counsel for Objector. The conference call included Daniel Cohen, David Oppenheim, Jon Piper, and me. I later was informed that Phil Bock listened in but did not announce himself on the conference call.

19.     During the conference call I requested Objector's position regarding deposition of a corporate representative of Objector. Counsel for Objector told me that they would not agree to any deposition a corporate representative of Objector on any topics unless it was part of a global discovery protocol. Specifically, counsel for Objector informed me they sought to review all discovery in the litigation and take depositions of Plaintiff, Plaintiff's Counsel, and Defendant. We did not come to an agreement on any issues during this conference call.

20.     During the conference call David Oppenheim specifically referred to an offer for mediation that I had made after a hearing in the Cook County Case during 2018. I confirmed my

recollection of making that offer in 2018 and explained my understanding that this case is not related to the Cook County Case. I explained that I hoped to learn what Objector's Counsel wanted in this case during this conference call.

21.     David Oppenheim then suggested a "global" mediation include the TTA v. Buccaneers Action. David Oppenheim then explained Bock Law Firm's understanding of the posture of the TTA v. Buccaneers Action and his belief that this case and TTA v. Buccaneers Action should be mediated together as part of a "global mediation."

22.     I explained that I did not believe it to be possible to mediate the TTA v. Buccaneers Action with this case. Specifically, I indicated that I did not believe that defendant's counsel from TTA v. Buccaneers Action, Latham and Watkins, could participate in the "global mediation" suggested by David Oppenheim. David Oppenheim said this was a "good question."

23.     I reiterated that Plaintiff in this action was willing to participate in a mediation of this action.

24.     David Oppenheim suggested that all participants of the call should "give some thought to the contours of" such a "global mediation."

25.     David Oppenheim's statements clearly indicated to me that if my clients (Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc.) withdraw their intervention in the TTA v. Buccaneers Action then Objector would withdraw the objection in this case.

26.     The email chain discussing this conference call is attached hereto as Exhibit 1.

27.     On April 9, 2019, I received a letter from counsel for Objector. The April 9, 2019 letter is attached hereto as Exhibit 2.

**Expenses Incurred by Plaintiff's Counsel**

28.     The expenses incurred in this litigation are attached hereto as Exhibit 3.

Further your Affiant sayeth naught.

Executed on: ___April 19___, 2019                          _____

                                                          Ross Good

Subscribed and sworn before me

this __19__ day of April, 2019

_____
Notary Public

MICHELLE OSBORN
Official Seal
Notary Public – State of Illinois
My Commission Expires Jan 26, 2021

**EXHIBIT 1**

**Subject:** Re: Arkin v. Smith - Request for conference
**From:** Ross Good <rgood@andersonwanca.com>
**Date:** 4/3/2019, 2:20 PM
**To:** Phil Bock <phil@classlawyers.com>
**CC:** Jon Piper <jon@classlawyers.com>, Dan Cohen - External Email <danieljaycohen209@gmail.com>, Tod Lewis <Todd@classlawyers.com>, David Oppenheim <david@classlawyers.com>

Phil,
It was my understanding that David, Dan, and Jon were the only ones on that call besides me. I do not recall you announcing yourself on the call. As you can tell from my email this week, I proposed a mediation of the objection in Arkin v. Smith. Are you saying no to my proposal for a mediation of the objection in Arkin v. Smith?

Thank you

--
Ross Good
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
rgood@andersonwanca.com - EMail
(847) 350-9861 - Direct Phone
(847) 350-9861 - Direct Fax
(847) 368-1500 - Office Phone
(847) 368-1501 - Office Fax

On Wed, Apr 3, 2019 at 12:12 PM Phil Bock <phil@classlawyers.com> wrote:
> Ross, your email is addressed "To all" but neither Tod nor I was in the room during any call about any mediation about any case. I entered the room at the end of your call with Jon and Dan, just in time to hear you say something you described as a joke about Westfax. I'm not proposing mediation with your firm in any case. Thanks for asking.
>
> Phillip A. Bock
> Bock, Hatch, Lewis & Oppenheim, LLC
> 134 N. La Salle St., Ste. 1000
> Chicago, IL 60602
> 312-658-5501 Chicago direct
> 305-239-8726 Miami direct
> 312-658-5555 fax
> 847-845-3347 cell
>
> CONFIDENTIALITY NOTICE
> You are hereby notified that 1) e-mail communication is not a secure method of communication; 2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; 3) persons not participating in our communication may intercept our communication by improperly accessing your computer or my computer or even some computer unconnected to either of us which the e-mail passed through. I am communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let

me know at once.

The information contained in this e-mail transmission is legally privileged and confidential information intended only for the use of the person or entity named above. If the reader of this transmission is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this transmission is strictly prohibited. If you have received this transmission in error, please call me at 847-845-3347.

**From:** Ross Good [rgood@andersonwanca.com]
**Sent:** Wednesday, April 03, 2019 2:04 PM
**To:** Jon Piper
**Cc:** Phil Bock; Dan Cohen - External Email; Tod Lewis; David Oppenheim
**Subject:** Re: Arkin v. Smith - Request for conference

To all,
As discussed during our conference call, Pressman will not agree to a deposition in this matter on April 16 nor any other date absent an agreement allowing Pressman to conduct discovery in this litigation. Please advise if this is incorrect.

I am going to speak to Smith's Counsel regarding your suggestions for a global discovery plan that includes Objector's Counsel taking/reviewing discovery.

During our conference call, we discussed a potential mediation of the objection in this matter. David brought up a comment I made approximately 6 months ago outside the courtroom for the Cook County Case (A+W v. Oppenheim) about a mediation. As explained on the phone, I do not understand how the mediation I proposed 6 months ago would work as it relates to Arkin v. Smith. Specifically, I would like to know when it could be scheduled and what parties you envision attending. Do you think another conference call would be productive? If yes, I have some availability Friday late in the day.

Thank you

--
Ross Good
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
rgood@andersonwanca.com - EMail
(847) 350-9861 - Direct Phone
(847) 350-9861 - Direct Fax
(847) 368-1500 - Office Phone
(847) 368-1501 - Office Fax

On Wed, Apr 3, 2019 at 12:58 PM Ross Good <rgood@andersonwanca.com> wrote:
> It is my understanding that the call will proceed at 1:30pm (Illinois time). Please use the following dial-in:
> Dial-in Number: (267) 930-4000
> Access code: 259-991-324
>
> Thank you

--
Ross Good
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
rgood@andersonwanca.com - EMail
(847) 350-9861 - Direct Phone
(847) 350-9861 - Direct Fax
(847) 368-1500 - Office Phone
(847) 368-1501 - Office Fax


On Tue, Apr 2, 2019 at 1:25 PM Ross Good <rgood@andersonwanca.com> wrote:

> Jon,
> My schedule had to be altered slightly so I will be in flight until 12:30 (Illinois time) tomorrow. Can
> we talk at 1:30pm? Should I provide a dial-in or can I call you at that time?
>
> Thanks
>
> --
> Ross Good
> Anderson + Wanca
> 3701 Algonquin Rd., Suite 500
> Rolling Meadows, IL 60008
> rgood@andersonwanca.com - EMail
> (847) 350-9861 - Direct Phone
> (847) 350-9861 - Direct Fax
> (847) 368-1500 - Office Phone
> (847) 368-1501 - Office Fax
>
>
> On Tue, Apr 2, 2019 at 1:17 PM Jon Piper <jon@classlawyers.com> wrote:
>
>> Ross – how about 11am tomorrow (Illinois time)?
>>
>> _____
>>
>> **From:** Ross Good [mailto:rgood@andersonwanca.com]
>> **Sent:** Monday, April 01, 2019 1:28 PM
>> **To:** Jon Piper; Phil Bock; Dan Cohen - External Email; Tod Lewis
>> **Subject:** Arkin v. Smith - Request for conference
>>
>>
>> Counsel,
>>
>> I would like to discuss two issues with you:
>>
>> 1. Logistics for deposition(s) of objectors

2. Possible mediation of the objection in this matter.

Please provide your availability for a call tomorrow or Wednesday morning.

--

Ross Good

Anderson + Wanca

3701 Algonquin Rd., Suite 500

Rolling Meadows, IL 60008

rgood@andersonwanca.com - EMail

(847) 350-9861 - Direct Phone

(847) 350-9861 - Direct Fax

(847) 368-1500 - Office Phone

(847) 368-1501 - Office Fax

**EXHIBIT 2**

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000
Chicago, IL 60602
312-658-5500 (Phone) • 312-658-5555 (Fax)

April 9, 2019

<u>Via E-Mail</u>

Ross Good, Esq.
Anderson + Wanca
3701 Algonquin Rd., Ste. 500
Rolling Meadows, IL 60008
rgood@andersonwanca.com

      Re:   *Arkin v. Smith Medical Partners, LLC, et al.*, No. 2018 CH 984

Dear Ross:

This is to follow up on our teleconference on April 3, 2019, concerning this case.

By email on April 1, 2019, you said you wanted to talk about mediating the Pill Box companies' objection to the proposed settlement and about taking their deposition.

When we spoke on April 3, I explained that, as laid out in the objection, the objectors require additional information to evaluate the settlement; whether in the context of the approval process or in the context of a possible mediation of their objection. I also explained that we are amenable to bilateral, formal class settlement discovery, including the deposition of the Pill Box objectors' representative, but only with the Court's knowledge and consent. At the end of our call, you said you would discuss our proposals with Defendants' counsel and get back to me.

Because I have not heard back from you, I am writing to reiterate the information we require to evaluate whether the proposed settlement is fair, reasonable, and adequate, and in the best interests of the class members. If you are unwilling or unable to agree, then we will seek the Court's assistance. Some specific areas include:

1.      The Term Sheet "contract" incorporated by reference in the Settlement Agreement;

2.      Information about the scope of Defendants' faxing to the Settlement Class – (a) the number of violations or attempted violations at issue and being

Ross Good, Esq.
April 9, 2019
Page 2 of 5

released in the settlement; (b) the basis for determining those numbers; and (c) the number of faxes sent to members of the Settlement Class during fax for which Defendants possess both a target list and a transmission report;

3. Information regarding Defendants' affirmative defenses, including any claim of prior express invitation or permission to send advertisements by fax, whether any of Defendants' faxes had compliant opt-out notices, and any other class certification or merits defense;

4. Documents exchanged with your expert and any expert report(s) (draft or final);

5. Submissions to the mediator (whether or not they were exchanged among the mediation participants);

6. The Class List, how it was prepared, and whether it is complete;

7. Why relief is limited to a lump sum per fax number and regardless of how many faxes a class member received;

8. Who proposed the dismissal of the settled case from Florida federal court and re-filing in Illinois state court, when was it proposed, and what was exchanged for that;

9. Why did Plaintiff agree to allow Defendant to terminate the settlement prior to the final approval hearing "for any reason or no reason at all"?

10. Why did Plaintiff agree to dismiss the lawsuit voluntarily, and restore the parties to the status quo, if Defendant cancels the agreement or the Court rejects it?

11. Confirmatory discovery undertaken prior to presenting the settlement for the Court's approval.

11. The number of claims submitted to the settlement administrator and the total number approved for payment if the Court approves the settlement;

13. Communications with unnamed class members, whether before or after reaching settlement.

We are amenable to receiving the above-listed information informally but in verifiable form as the basis for mediation.

Ross Good, Esq.
April 9, 2019
Page 3 of 5

Although the Court's order provides that objectors may object in writing and choose to participate in the final approval hearing only through counsel, we do not oppose presenting the objectors' representative for a deposition, provided that it is part of a mutual discovery plan. From objectors' side, we would seek the depositions of the named plaintiff, Blair Austin, Class Counsel, and a representative of defense counsel prepared to testify about the course and substance of the settlement discussions. We would also seek documents on the following topics:

1.  Any and all of Defendants' discovery responses.

2.  Any and all documents Defendants produced to Plaintiff.

3.  Any and all claims received under the Settlement.

4.  Any and all documents provided to Plaintiff's expert(s).

5.  Any and all disclosures regarding Plaintiff's expert(s).

6.  Any and all reports prepared by Plaintiff's expert(s).

7.  Documents sufficient to establish Plaintiff's counsel's expenses.

8.  Documents sufficient to establish amounts paid or agreed to be paid to Plaintiff's expert(s).

9.  Documents sufficient to establish the number of Defendants' faxes to the Settlement Class.

10. The "spreadsheet" described at pp. 24-25 of the June 27, 2018 hearing in *Arkin 1* (Ex. E to Objection).

11. Documents forming the basis for Plaintiff's allegation that Defendants sent approximately 3,278 different documents by fax to thousands of fax numbers, as alleged at page 2 of Plaintiff's Motion for Preliminary Approval.

12. The "information regarding 3,277 fax campaigns" made available by Defendants to Plaintiff for review, as asserted at p. 5 of Plaintiff's motion to compel in *Arkin* 1, ECF 60 (Ex. C to Objection).

13. Documents sufficient to describe the "3,277 fax campaigns" described at p. 5 of Plaintiff's motion to compel in *Arkin* 1, ECF 60 (Ex. C to Objection).

14. Documents about "the 1,324 fax campaigns" identified in paragraph 8 of the Declaration of Ross M. Good executed on May 4, 2018, including (a) the fax;

Ross Good, Esq.
April 9, 2019
Page 4 of 5

       (b) the target list; (c) the transmission report; and (d) the total amount of fax transmissions during those 1,324 fax campaigns.

15.     Documents identifying how many advertisements Defendants sent the Settlement Class by fax.

16.     Documents supporting or rebutting Defendants' claim that "many" members of the Settlement Class were Defendants' customers and "requested to receive communications from Defendants via fax," including whether anybody requested or agreed to receive *advertisements* via fax.

17.     Documents showing whether Defendants included a compliant opt-out notice on any fax at issue.

18.     Documents showing whether Defendants searched for and produced all fax templates (images), target lists, and transmission reports.

19.     Documents sufficient to establish the number of claims received under the Settlement.

20.     The "Term Sheet" as defined in the Settlement Agreement.

21.     The "Class List" as defined in the Settlement Agreement.

22.     Any and all documents on which the Class List was based or from which it was created.

23.     Documents forming the basis for Plaintiff's allegation that Defendants sent advertising faxes to approximately 45,000 phone numbers, as alleged at page 2 of the Settlement Agreement.

24.     Any information concerning whether fax advertisements were sent to any fax number not on among the 45,000 phone numbers.

25.     Any and all documents evidencing whether any Class members gave prior express permission to receive fax advertisements sent by Defendants.

26.     Any and all settlement proposals made by Plaintiff or by Defendants in the course of the mediation of *Arkin 1.*

27.     Any and all documents supporting your position that the $21million Fund is fair, reasonable and adequate in view of the defendants' potential liability.

28.     Any communications among counsel for the parties or between counsel and the mediator concerning settlement terms.

Ross Good, Esq.
April 9, 2019
Page 5 of 5

Please let me know a good time to discuss the above.

Respectfully,

Jonathan B. Piper

cc:    Martin W. Jaszczuk (Defendants' counsel) (mjaszczuk@jaszczuk.com)

**EXHIBIT 3**

*Anderson + Wanca*
**Attorney at Law**
**3701 Algonquin Road, Suite 500**
**Rolling Meadows, IL  60008**
**(847) 368-1500**

---

### ARKIN v. SMITH MEDICAL

#### EXPENSES

#### As of April 16, 2019

| | |
|---|---|
| Arkin v. Smith Medical | $31,249.30 |
| Arkin v. Smith & Cincinnati Ins. | 315.13 |
| | **$31,564.43** |

1:27 PM
04/16/19
Accrual Basis

**BRIAN J. WANCA, J.D., PC**
**Find Report**
**All Transactions**

| Type | Date | Num | Name | Memo | Account | Amount |
|------|------|-----|------|------|---------|--------|
| Check | 02/28/2019 | 14720 | Arkin v. Smith Medical | J.Berman - Prelim.Approv. | Parking & T... | 3.00 |
| Check | 12/27/2018 | 14607 | Arkin v. Smith Medical | FedEx | Delivery | 18.33 |
| Check | 09/21/2018 | 13632 | Arkin v. Smith Medical | State court for settlement case | Filing Fees | 323.07 |
| Check | 08/15/2018 | 14263 | Arkin v. Smith Medical | Uber for Plaintiff | Parking & T... | 45.95 |
| Check | 08/15/2018 | 14263 | Arkin v. Smith Medical | R. Good @ mediation | Parking & T... | 42.00 |
| Check | 08/13/2018 | 14102 | Arkin v. Smith Medical | B. Wanca to/from Mediation/... | Travel Expe... | 419.96 |
| Check | 07/13/2018 | 13991 | Arkin v. Smith Medical | US District Ct. | Transcript | 227.95 |
| Check | 07/13/2018 | 13992 | Arkin v. Smith Medical | FedEx | Delivery | 28.83 |
| Check | 07/13/2018 | 14034 | Arkin v. Smith Medical | JAMS | Mediator | 7,725.00 |
| Check | 07/13/2018 | 14043 | Arkin v. Smith Medical | W. Solberg | Travel Expe... | 417.70 |
| Check | 06/29/2018 | 13989 | Arkin v. Smith Medical | W.Solberg to FL | Travel Expe... | 893.39 |
| Check | 06/14/2018 | 13950 | Arkin v. Smith Medical | W. Solberg | Pro Haec | 150.00 |
| Check | 06/06/2018 | 13681 | Arkin v. Smith Medical | JAMS | Mediator | 275.00 |
| Check | 05/29/2018 | 13910 | Arkin v. Smith Medical | R. Good to hearing | Travel Expe... | 3,079.61 |
| Check | 05/29/2018 | 13913 | Arkin v. Smith Medical | Ct. transcript | Transcript | 242.50 |
| Check | 11/15/2017 | 13058 | Arkin v. Smith Medical | FedEx | Delivery | 18.05 |
| Check | 10/31/2017 | 13012 | Arkin v. Smith Medical | JP Assoc. | Service fee | 65.00 |
| Check | 09/22/2017 | 12705 | Arkin v. Smith Medical | Arkin v. Smith Medical | Filing Fees | 400.00 |
| **Total** | | | | | | **14,375.34** |

To be paid to Digital Factors – Expert Witness Fee   18,000.00

---

1:35 PM
04/16/19
Accrual Basis

**BRIAN J. WANCA, J.D., PC**
**Find Report**
**All Transactions**

| Type | Date | Num | Name | Memo | Account | Amount |
|------|------|-----|------|------|---------|--------|
| Deposit | 01/28/2019 | 296338 | JAMS, Inc. | Arkin v. Smith | Mediator | -1,131.64 |
| **Total** | | | | | | **-1,131.64** |

| Expenses | | Units | Price | Amount |
|----------|--|-------|-------|--------|
| 11/16/2018 | Tolls. | 1.00 | 1.60 | 1.60 |
| 11/16/2018 | Parking. | 1.00 | 1.00 | 1.00 |
| 01/17/2019 | Parking. | 1.00 | 3.00 | 3.00 |
| | | | Sub-total Expenses: | $5.60 |

---

1:26 PM
04/16/19
Accrual Basis

**BRIAN J. WANCA, J.D., PC**
**Find Report**
**All Transactions**

| Type | Date | Num | Name | Memo | Account | Amount |
|------|------|-----|------|------|---------|--------|
| Check | 10/31/2018 | 14353 | Arkin v. Smith & Cincinnati Ins. | FedEx | Delivery | 15.13 |
| Check | 10/15/2018 | 14306 | Arkin v. Smith & Cincinnati Ins. | US District Co... | Filing Fees | 150.00 |
| Check | 10/15/2018 | 14305 | Arkin v. Smith & Cincinnati Ins. | US District Co... | Filing Fees | 150.00 |
| **Total** | | | | | | **315.13** |

**EXHIBIT E**

Luis A. Berrones

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

FILED

FEB 26 2016

Keith Brin
CIRCUIT CLERK

| | | |
|---|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. **16 CH 325** |
| v. | ) ) | |
| BAYER CORPORATION and BAYER HEALTHCARE, LLC, | ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, Pressman, Inc. d/b/a Pill Box Pharmacy and Medical Supply, Pill Box Weston, and Pill Box II (collectively "Plaintiffs"), bring this action on behalf of themselves and all other persons similarly-situated, through their attorneys, and except as to those allegations pertaining to Plaintiffs or their attorneys, which allegations are based upon personal knowledge, allege the following upon information and belief against Defendants, Bayer Corporation and Bayer Healthcare, LLC (collectively "Defendants"):

## PRELIMINARY STATEMENT

1. This case challenges Defendants' practice of faxing unsolicited advertisements.

2. Defendants sent advertisements in an attempt to market and sell their blood glucose monitoring equipment for persons with diabetes.

3.      The federal Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission ("junk faxes" or "unsolicited faxes").

4.      The TCPA mandates that if a person or entity sends a fax advertisement it must always include a very specific opt-out notice that is clearly and conspicuously displayed on the first page of the advertisement. *See* 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii).

5.      The TCPA provides a private right of action and provides statutory damages of $500 - $1,500 per violation. If the Court finds the advertisements were sent knowingly or willfully, then the Court can treble the damages.

6.      Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

7.      On behalf of themselves and all others similarly-situated, Plaintiffs bring this case as a class action asserting claims against Defendants under the TCPA and the common law of conversion.

2

8.     Plaintiffs seek an award of statutory damages for each violation of the TCPA.

## PARTIES, JURISDICTION AND VENUE

9.     Pressman, Inc. d/b/a Pill Box Pharmacy and Medical Supply is a Florida corporation with its principal place of business in Pembroke Pines, Florida.

10.    Pill Box Weston has its principal place of business in Weston, Florida.

11.    Pill Box II has its principal place of business in Pembroke Pines, Florida.

12.    Bayer Corporation is an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania. Bayer Corporation conducts business in Illinois.

13.    Bayer Healthcare, LLC is a Delaware limited liability company with its principal place of business in Whippany, New Jersey. Bayer Healthcare, LLC conducts business in Illinois.

14.    Jurisdiction is conferred by 735 ILCS 5/2-209 in that Defendants transact business in Illinois and have committed tortious acts related to the matters complained of herein in Illinois. Venue is proper in Lake County pursuant to 735 ILCS 5/2-101, et seq. because some of the tortious acts complained of occurred in Lake County, Illinois. Specifically, the illegal faxing alleged herein took place in Lake County, Illinois.

## FACTS

3

15.     Between January 2015 and October 2015, Plaintiffs each received nineteen unsolicited fax advertisements from Defendants. Attached as Exhibit A are copies of five of those fifty-seven fax advertisements received by Plaintiffs. The fax advertisements attached as Exhibit A, as well as fifty-two additional advertisements received by Plaintiffs, were sent, or caused to be sent, by Defendants.

16.     The subject faxes advertise Defendants' goods, products, or services. Exhibit A contains five one-page faxes that that attempt to sell Defendants' medical products. The faxes contained in Exhibit A contain information about the capabilities and features of Defendants' device, the capabilities of the equipment, and provides methods to contact Defendants to engage in commercial transactions. Defendants sent, or caused these unsolicited fax advertisements to be sent, to Plaintiffs and a class of similarly-situated persons.

17.     Plaintiffs did not invite or give permission to anyone to send the faxes contained in Exhibit A to them.

18.     The faxes contained in Exhibit A do not contain opt-out notices as required by the TCPA.

19.     On information and belief, Defendants sent the same faxes to Plaintiffs and more than 39 other recipients without first receiving the recipients' express permission or invitation. This allegation is based, in part, on the fact that Plaintiffs never gave permission to anyone to send the subject fax advertisements to them,

that Plaintiffs never conducted business with Defendants, and that sending

advertisements by fax is a very cheap way to reach a wide audience.

20.     There is no reasonable means for Plaintiffs (or any other putative

Class member) to avoid receiving illegal faxes. Fax machines are left on and ready

to receive the urgent communications their owners desire to receive.

## CLASS REPRESENTATION ALLEGATIONS

21.     Plaintiffs brings this action as a class action on behalf of themselves

and all others similarly-situated as members of the Class, initially defined as

follows:

> All persons who were sent one or more telephone facsimile messages
> from January 1, 2015 through October 23, 2015, from or on behalf of
> Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes
> Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care
> Holdings AG, Ascensia Diabetes Care, Panasonic Healthcare Holdings
> Co. Ltd., Archway Marketing Services, Inc., TMS Health, or Xeorox
> Corp, or any of their parents, subsidiaries, divisions, affiliates,
> associated entities, business units, agents, predecessors, predecessors-
> in-interest, successors, and successors-in-interest, which said 'Effective
> January 1, 2015, Bayer meters and test strips are EXCLUSIVE on
> Blue Cross Blue Shield of Florida' without the inclusion of an opt out
> notice.

22.     Excluded from the Class are Defendants, any entity in which

Defendants have a controlling interest, any officers or directors of Defendants, the

legal representatives, heirs, successors, and assigns of Defendants, and any Judge

assigned to this action, and his or her family.

23.     This action has been brought, and may properly be maintained as a

class action, under 735 ILCS 5/2-801. This action satisfies the class action

prerequisites of numerosity, common questions of law or fact predominate over

individual questions, the representative parties will fairly and adequately protect the interests of the Class, and the class action is an appropriate method for the fair and efficient adjudication of the controversy.

24.   **Numerosity/Impracticality of Joinder:** On information and belief, the Class consists of more than thirty-nine people and, thus, is so numerous that joinder of all members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiffs, but can be obtained from Defendants' records or the records of third parties.

25.   **Questions of Law or Fact Common to the Class:** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

      a.   Whether Defendants sent unsolicited fax advertisements;

      b.   Whether the faxes contained in Exhibit A advertised the commercial availability of property, goods or services;

      c.   The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent the faxes contained in Exhibit A and other unsolicited fax advertisements;

     d.     Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

     e.     Whether Defendants' failure to include opt out notices violated the TCPA;

     f.     Whether each Defendant is, respectively, directly or vicariously liable for violating the TCPA;

     g.     Whether Plaintiff and the other Class members are entitled to statutory damages;

     h.     Whether Defendants should be enjoined from faxing advertisements in the future;

     i.     Whether the Court should award trebled damages;

     j.     Whether Defendants' conduct as alleged herein constituted conversion;

26.    **Fair and Adequate Representation:** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs do not have any interests adverse to the Class. Plaintiffs have retained counsel who are experienced in class action litigation to represent it in this action.

27.    **Appropriateness:** A class action is an appropriate method for the fair and efficient resolution of this controversy. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

28.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

29.     Plaintiffs bring Count I on behalf of themselves and a class of similarly·situated persons.

30.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227 (b) (1).

31.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

32.     The TCPA provides:

> 3.      Private right of action.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
>> (A)      An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
>> (B)      An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
>> (C)      Both such actions.

47 U.S.C. § 227 (b) (3).

33.     In relevant part, the TCPA states that "[t]he Commission shall prescribe regulations to implement the requirements of this subsection . . . in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (i) the notice is clear and conspicuous . . ." 47 U.S.C. § 227 (b) (2) (D) (i).

34.     Additionally, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful . . ." 47 U.S.C. § 227 (b) (2) (D) (ii).  The shortest reasonable time has been determined to be thirty (30) days. 47 C.F.R. § 64.1200 (a) (4) (iii) (B).

35.     The opt-out notice must also include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice . . ." 47 U.S.C. § 227 (b) (2) (D) (iv).

36.     Moreover, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (v) the telephone and facsimile machine numbers and the cost-free mechanism . . . permit an individual or

9

business to make such a request at any time on any day of the week." 47 U.S.C. § 227 (b) (2) (D) (v).

37.     The Court, in its discretion, can treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

38.     Defendants violated 47 U.S.C. § 227 et seq. by sending advertisements by fax (such as those contained in Exhibit A) to Plaintiffs and the other Class members without first obtaining their prior express invitation or permission.

39.     Defendants violated 47 U.S.C. § 227 et seq. by not providing opt-out notices on the faces of the subject faxes.

40.     Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients have the necessary contact information to opt-out of future fax transmissions. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the recipients are unable to stop the burdens imposed by this form of advertisement.

41.     The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other Class members even if their actions were negligent.

42.     Moreover, Defendants are liable to Plaintiff and the other Class members under the TCPA for not including an opt-out notice even if Defendants ultimately prove that they obtained prior express permission to send the advertisements by fax or prove that Defendants had an established business relationship with Plaintiff and the other Class members.

43.     Each Defendant is liable because, respectively, it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority and ratification.

44.     Defendants knew or should have known that Plaintiffs and the other Class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services, that Plaintiffs and the other Class members did not have an established business relationship with Defendants, that the faxes contained in Exhibit A are advertisements, and that the faxes contained in Exhibit A did not display opt out notices as required by the TCPA.

45.     Defendants' actions caused damages to Plaintiffs and the other Class members.  Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, the subject faxes used Plaintiff's and the Class's fax machines. The subject faxes cost Plaintiffs time, as Plaintiffs and their employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiffs' business activities. Defendants' faxes unlawfully interrupted Plaintiffs' and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiffs and the other Class members from the sending of Exhibit A occurred outside Defendants' premises.

11

46.     Even if Defendants did not intend to cause damage to Plaintiffs and the other Class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, demand judgment in their favor and against Defendants, jointly and severally as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.     That the Court award $500.00-$1,500.00 in damages for each violation of the TCPA;

C.     That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

D.     That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

47.     Plaintiffs incorporate paragraphs 1 through 27 as though fully set forth herein.

48.     Plaintiffs bring Count II on behalf of themselves and a class of similarly-situated persons.

12

49.    By sending Plaintiffs and the other Class members unsolicited faxes, Defendants improperly and unlawfully converted their fax machines, toner and paper to Defendants' own use. Defendants also converted Plaintiffs' employees' time to their own use.

50.    Immediately prior to the sending of the unsolicited faxes, Plaintiffs and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

51.    By sending the unsolicited faxes, Defendants permanently misappropriated the Class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

52.    Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

53.    Plaintiffs and the other Class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiffs and each Class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

54.    Each of Defendants' unsolicited faxes effectively stole Plaintiffs' employees' time because persons employed by Plaintiffs were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiffs.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, demand judgment in its favor and against Defendants, jointly and severally as follows:

A.   That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.   That the Court award appropriate damages;

C.   That the Court award punitive damages.

D.   That the Court award reasonable attorney's fees;

E.   That the Court award costs of suit; and

F.   That the Court award such further relief as it may deem just and proper.

Respectfully submitted,

PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons,

By:   _____

One of their attorneys

Phillip A. Bock
Tod A. Lewis
James M. Smith
BOCK & HATCH, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500

14

# EXHIBIT A



**Attention Pharmacist**

*PLEASE POST*

# Effective January 1, 2015

# Bayer meters and test strips are EXCLUSIVE on

# Blue Cross and Blue Shield of Florida

*[handwritten: 7-1-15 10:42 AM, Payer Service Cust Dept, 3 visit notes, Return services]*

## A personal approach to blood glucose monitoring

With CONTOUR®NEXT blood glucose monitoring systems from Bayer, there's an easy and accurate meter to meet many of your patients' needs.







## The CONTOUR®NEXT portfolio of meters all offer easy-to-use features and enhanced accuracy:

- Second-Chance™ sampling
- No Coding™ technology
- Fast test time: 5 second countdown
- Small blood sample: 0.6 μL
- All CONTOUR®NEXT portfolio of meters use the CONTOUR®NEXT test strips

- Proprietary mediator: provides increased stability for enhanced accuracy
- MULTIPULSE™ accuracy technology from Bayer ensures accurate blood glucose measurements, even when blood glucose levels are low. Accuracy is not affected by many interfering substances.
- Advanced algorithm: corrects signals from various sources of error, including temperature, hematocrit, and user technique

### Free Meter Offer for your Blue Cross and Blue Shield of Florida Patients

**Upgrade today!**

| RxBIN # | PCN # | Group # | Identification # | Expiration Date |
|---------|-------|---------|------------------|-----------------|
| 015251 | PRX2000 | BZON86 | 8086996565 | 6/30/2016 |

* Patients are not eligible if any or all supplies are paid from a State or Federally funded healthcare program. [remaining fine print illegible]

- The above Offer can be used for all patients (limit = 1 meter/patient/12 month period)
- The form of claim on-line to RxSwitch using RxBIN # 015251
- Valid Prescriber DEA, Patient Name, and DOB are required for claim adjudication
- For assistance in filling this claim please call the Help Desk at 1-800-xxx-xxxx


**For more information visit**
**BayerContourPro.com**

© 2015 Bayer. Bayer (reg), the Bayer Cross (reg), CONTOUR (reg), NEXT™, the No Coding logo (reg), No Coding, MULTIPULSE and Second-Chance are trademarks of Bayer. 11-116-A



## Attention Pharmacist


PLEASE POST

## Effective January 1, 2015

# Bayer meters and test strips are EXCLUSIVE on Blue Cross and Blue Shield of Florida

## A personal approach to blood glucose monitoring

With CONTOUR®NEXT blood glucose monitoring systems from Bayer, there's an easy and accurate meter to meet many of your patients' needs.


Second-Chance™ sampling


multipulse


NO CODING



### The CONTOUR®NEXT portfolio of meters all offer easy-to-use features and enhanced accuracy:

- Second-Chance™ sampling
- No Coding™ technology
- Fast test time: 5-second countdown
- Small blood sample: 0.6 µL
- All CONTOUR®NEXT portfolio of meters use the CONTOUR®NEXT test strips

- **Proprietary mediator**: provides increased stability for enhanced accuracy
- **MULTIPULSE™ accuracy technology** from Bayer ensures accurate blood glucose measurements, even when blood glucose levels are low. Accuracy is not affected by many interfering substances *
- **Advanced algorithm**: corrects signals from various sources of error, including temperature, hematocrit, and user technique

### Free Meter Offer for your Blue Cross and Blue Shield of Florida Patients

| Upgrade today! | RxBIN # | PCN # | Group # | Identification # | Expiration Date |
|---|---|---|---|---|---|
| | 015261 | PRX2000 | BZDNBB | BC369986586 | 6/30/2015 |

* Limitations and restrictions apply. Will be supplied with void where prohibited. On a offer must be accompanied by a prescription order. Cannot be combined with another. This prescription is a fill based maximum the right to amend, revoke, or alter without notice. Prescription provides a drug sample. Offer is made to or issued to customer, use at present time for this coupon only. Please refer to package insert for Bayer CONTOUR®NEXT blood glucose test strips.

- The above Offer can be used to treat patients (limit = 1 meter/patient/12 month period)
- This prescription is to be used to Prescriber's using RxBIN# 015261
- Valid Prescriber ID#, Patient name, and DOB are necessary for claim adjudication
- For assistance in filling this claim, please call the Help Desk at 1-800-520-6936

▶ For more information visit **BayerContourPro.com**





## Attention Pharmacist

# Effective January 1, 2015

# Bayer meters and test strips are
# EXCLUSIVE on
# Blue Cross and Blue Shield of Florida

## A personal approach to blood glucose monitoring

With CONTOUR®NEXT blood glucose monitoring systems from Bayer, there's an easy and accurate meter to meet many of your patients' needs.


Second-Chance™ sampling







## The CONTOUR®NEXT portfolio of meters all offer easy-to-use features and enhanced accuracy:

- Second-Chance™ sampling
- No Coding™ technology
- Fast test time: 5-second countdown
- Small blood sample: 0.6 μL
- All CONTOUR®NEXT portfolio of meters use the CONTOUR®NEXT test strips

- Proprietary mediator: provides increased stability for enhanced accuracy
- MULTIPULSE™ accuracy technology from Bayer ensures accurate blood glucose measurements, even when blood glucose levels are low. Accuracy is not affected by many interfering substances *
- Advanced algorithms: corrects signals from various sources of error, including temperature, hematocrit, and user technique

### Free Meter Offer for your Blue Cross and Blue Shield of Florida Patients

| | BIN # | PCN # | Group # | Identification # | Expiration Date |
|---|---|---|---|---|---|
| **Upgrade today!** | 016251 | PRX2000 | BZONB5 | BC869986586 | 6/30/2015 |

* Limitations and restrictions apply. Offer not valid where prohibited. This offer must be accompanied by a prescription. Contact the patient's physician. If no prescription is on file, Bayer reserves the right to determine the program without notice. Free strips may be used as a free sample should not be resold or substituted or used to any third party payer for reimbursement. Please return package insert to Bayer CONTOUR®NEXT blood glucose meter.

- The above offer can be used for all patients (limit one (1) meter/patient/12-month period)
- Transmit claim online to RxSolutions using RxBin #015251
- Valid Prescriber ID, Patient Name, and DOB are necessary for claim adjudication.
- For assistance in filling out claim, please call the Help Desk at 1-800-515-2316


For more information visit
**BayerContourPro.com**



### Attention Pharmacist


PLEASE POST

## Effective January 1, 2015

# Bayer meters and test strips are EXCLUSIVE on Blue Cross and Blue Shield of Florida

## A personal approach to blood glucose monitoring

With CONTOUR®NEXT blood glucose monitoring systems from Bayer, there's an easy and accurate meter to meet many of your patients' needs.


Second-Chance™ sampling







## The CONTOUR®NEXT portfolio of meters all offer easy-to-use features and enhanced accuracy:

- Second-Chance™ sampling
- No Coding™ technology
- Fast test time: 5-second countdown
- Small blood sample: 0.6 μL
- All CONTOUR®NEXT portfolio of meters use the CONTOUR®NEXT test strips

- **Proprietary mediator:** provides increased stability for enhanced accuracy
- **MULTIPULSE™ accuracy technology** from Bayer ensures accurate blood glucose measurements, even when blood glucose levels are low. Accuracy is not affected by many interfering substances *
- **Advanced algorithm:** corrects signals from various sources of error, including temperature, hematocrit, and user technique

### Free Meter Offer for your Blue Cross and Blue Shield of Florida Patients

| | RxBIN # | PCN # | Group # | Identification # | Expiration Date |
|---|---|---|---|---|---|
| **Upgrade today!** | 01525 | PRX2600 | BZONB6 | BC669986586 | 6/30/2016 |

* Limitations and restrictions apply. This program can not be combined with any other offer and cannot be combined by a third party. Certain conditions apply.

- The above $54 can be used for all patients (limit = 1 meter per limit/12 month period)
- The small claims service in Rx/Scan/can using RxBIN and CPL5
- Valid Prescriber, Dr. Patient Name, and DOB are required for claim adjudication.
- For assistance in filing your claim please call the Help Desk at 1-800-430-0196



For more information visit
**BayerContourPro.com**



**Attention Pharmacist**



## Effective January 1, 2015

# Bayer meters and test strips are EXCLUSIVE on Blue Cross and Blue Shield of Florida

## A personal approach to blood glucose monitoring

With CONTOUR®NEXT blood glucose monitoring systems from Bayer, there's an easy and accurate meter to meet many of your patients' needs.







### The CONTOUR®NEXT portfolio of meters all offer easy-to-use features and enhanced accuracy:

- Second-Chance™ sampling
- No Coding™ technology
- Fast test time: 5-second countdown
- Small blood sample: 0.6 µL
- All CONTOUR®NEXT portfolio of meters use the CONTOUR®NEXT test strips

- **Proprietary mediator:** provides increased stability for enhanced accuracy
- **MULTIPULSE™ accuracy technology** from Bayer ensures accurate blood glucose measurements, even when blood glucose levels are low. Accuracy is not affected by many interfering substances*
- **Advanced algorithm:** corrects signals from various sources of error, including temperature, hematocrit, and user technique

### Free Meter Offer for your Blue Cross and Blue Shield of Florida Patients

| Upgrade today! | RxBIN # | PCN # | Group # | Identification # | Expiration Date |
|---|---|---|---|---|---|
| | 015281 | PRX2000 | BZCN85 | BCB69986586 | 6/30/2015 |

* substitutions and restrictions apply. Fit to supplies last. This rebate promotional. This offer must be accompanied by a prescription. Contact the patient's physician if the prescription is set for Bayer's sources. Bayer reserves the right to terminate the original product at any time. Prescriber provides a data sample above of the barcode of each product to identify only as patient information set. Please refer to package insert for Bayer CONTOUR®NEXT blood glucose test strips.

- The above ID# can be used for all patients (limit = 1 meter/patient/12 month period)
- Transmit claims on-line to RxSolutions using RxBIN# 015281
- Valid Prescriber ID#, Patient Name, and DOB are required for claim adjudication
- For assistance in filling this claim, please call the Help Desk at 1-800-500-4526



**For more information visit**
**BayerContourPro.com**

**EXHIBIT F**

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

APR 25 2018

*Keith Brin*
CIRCUIT CLERK

| | |
|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) No. 16 CH 325 |
| v. | ) ) |
| BAYER CORPORATION and BAYER HEALTHCARE, LLC, | ) ) ) |
| Defendants. | ) |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND NOTICE TO THE CLASS

Plaintiffs, Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II ("Plaintiffs"), on behalf of themselves and a class of similarly-situated persons, pursuant to 735 ILCS 5/2-806, respectfully request that the Court enter an order: (a) preliminarily approving the parties' Settlement Agreement (the "Agreement") attached as Exhibit A; (b) approving the form of class notice attached as Exhibit 2 to the Agreement; and (c) setting dates for opt-outs, objections, and a final approval hearing. The parties' proposed Order Preliminarily Approving Class Action Settlement and Class Notice is attached as Exhibit 1 to the Agreement and as Exhibit B here.

## A. SUMMARY OF THE LITIGATION.

1. Plaintiffs allege that Defendant faxed unsolicited advertisements to Plaintiffs and others in violation of the Telephone Consumer Protection Act, 47

U.S.C. § 227 (the "TCPA"), state consumer protection laws, and the common law of conversion. Plaintiffs seek monetary relief for the alleged violations. Defendants have denied all of the allegations.

2.      Plaintiffs' attorneys investigated the relevant facts and researched the law and confirmed, among other things, that Defendant caused 63,171 faxes to be sent to 3,489 different fax numbers between January 5, 2015 and October 7, 2015.

3.      The evidence produced by Defendants shows that Plaintiffs each received 19 unsolicited faxes from Defendants. Plaintiffs contend that Defendants continued to send faxes to Plaintiffs even after one of the Plaintiffs contacted Defendants and asked them to stop.

4.      Through arm's-length negotiations and a mediation conducted by the Hon. Wayne R. Andersen (Ret.), Plaintiffs and Defendants have reached an agreement to settle the claims of the entire Class, as set forth in the Agreement, offering each member an opportunity to claim a cash payment. A declaration by the mediator is attached as Exhibit C.

B.      SUMMARY OF THE SETTLEMENT.

5.      The Agreement's key terms are as follows:

(a)     The Class. The parties have stipulated to certification of a settlement class (the "Class"), pursuant to 735 ILCS 5/2-801, *et seq.*, for settlement purposes, defined as follows:

> All persons who were sent one or more telephone facsimile messages from January 1, 2015 through October 23, 2015, from or on behalf of Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes Care, Ascensia Diabetes Care US,

2

Inc., Ascensia Diabetes Care Holdings AG, Ascensia Diabetes
Care, Panasonic Healthcare Holdings Co. Ltd., Archway
Marketing Services, Inc., TMS Health, or Xerox Corp, or any of
their parents, subsidiaries, divisions, affiliates, associated
entities, business units, agents, predecessors, predecessors-in
interest, successors, and successors-in-interest, which said
'Effective January 1, 2015, Bayer meters and test strips are
EXCLUSIVE on Blue Cross Blue Shield of Florida' without the
inclusion of an opt out notice.

Excluded from the Settlement Class are: (1) Defendants and any parent,
subsidiary, affiliate, or controlled person of Defendants, as well as the
officers, directors, agents, servants, or employees of Defendants and the
immediate family members of such persons; (2) the named counsel in the
Litigation and any member of their office or firm; and (3) the members of the
Illinois judiciary. (Exhibit A, ¶¶2c, 4).

The parties have agreed that Plaintiffs will be the "Class
Representatives" and Plaintiffs' attorney, Phillip A. Bock of Bock & Hatch,
LLC, will be "Class Counsel." (Exhibit A, ¶¶2a, e).

(b)     Creation and Distribution of the Settlement Fund.   Defendants
will make available a total of $12,000,000.00 (the "Settlement Fund") to settle
this case. (Exhibit A, ¶5a).

(c)     Class Notice. The proposed "Notice of Class Action and Proposed
Settlement with attached Claim Form" (the "Class Notice") is attached to the
Agreement as Exhibit 2.  Plaintiffs will retain a third party claims
administrator who will issue the Notice by mail to the 3,489 members of the
Class. (Exhibit A, ¶12).

3

(d)     Monetary Relief to Plaintiff and the Class.  Each member of the
Class who submits a timely, valid Claim Form will receive a monetary
payment from the Settlement Fund.  As specified in the Agreement, the Class
has been split into two pools. Pool A has been allocated $4,424,900.00 from
the Settlement Fund and consists of Class members who are not affiliated
with companies that have entered into a Master Promotional Program
Services Agreement ("MPPSA") with Defendants to co-market Defendants'
meters and test strips. (Exhibit A, ¶2l). Each Class member who falls into
Pool A and submits an approved claim will receive $435.09 per fax that
Defendants sent to it. (Exhibit A, ¶¶5c(i), 11). Pool B has been allocated
$3,490,000.00 from the Settlement fund and consists of Class members who
are affiliated with companies that have entered into an MPPSA with
Defendants to co-market Defendants' meters and test strips. (Exhibit A,
¶2m). Each Class member who falls into Pool B an submits an approved
claim will receive a check for $65.85 per fax Defendants sent to it. (Exhibit A,
¶¶5c(ii), 11).

(e)     Release.  In exchange for the relief provided by this settlement,
Plaintiffs and the Class members will release all claims that were brought or
which could have been brought against Defendant relating to the faxes at
issue in this case.  (Exhibit A, ¶16).

(f)     Class Members' Opt-Out and Objection Rights.  Members of the
Class may exclude themselves from the Agreement and the settlement by

4

"opting out" of the Class in writing prior to the deadline to do so. Such persons will not be bound by any of the Court's orders or the terms of the Agreement, but they also will not be entitled to any of the benefits provided by the settlement. Each Class member may also object to the settlement in writing prior to the deadline to do so. (*See* Exhibit 2 to the Agreement).

(g)     Incentive Award and Attorney's Fees and Costs. By agreement of the parties, Class Counsel will ask the Court to award certain amounts from the Settlement Fund before Class members receive payment. Class Counsel will ask the Court to award each Plaintiff an incentive payment in the amount of $15,000 from the Settlement Fund for their services as the Class Representatives. (Exhibit A, ¶5b). Class Counsel will ask the Court to award them fees equal to $4,000,000.00 (one-third of the Settlement Fund) to compensate them for their services on behalf of the Class and for the benefit conferred upon the Class, and to award them reasonable out-of-pocket expenses incurred in this litigation, including the costs of sending the notice and administering claims, from the Settlement Fund in the amount of $40,000.00. (Exhibit A, ¶5b).

C.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

6.     A class action settlement should be approved when it is fair and reasonable and in the best interests of all those affected by it. *GMAC Mortgage Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 493 (1st Dist. 1992), *citing People ex rel. Wilcox v. Equity Funding Life Ins. Co.*, 61 Ill. 2d 303, 316 (1975), and *Gowdey v. Commonwealth Edison Co.*, 37 Ill. App. 3d 140, 150 (1st Dist. 1976) ("[a] trial court

5

should not disapprove a settlement ... unless, taken as a whole, the settlement appears on its face so unfair as to preclude judicial approval."). The trial court's decision may be reversed only on a clear showing that the trial court abused its discretion. *Steinberg v. System Software Assoc., Inc.*, 306 Ill. App. 3d 157, 169 (1st Dist. 1999).

7.     Here, the settlement is fair, reasonable, and in the Class's best interests—and, therefore, the Court is likely to grant final approval to the settlement—because the settlement offers each member of the Class an opportunity to receive a significant monetary payment in exchange for releasing claims about faxes sent by or on behalf of Defendants, while avoiding the costs and risks associated with further litigation.

8.     The parties split the Settlement Fund into two pools. Pool A consists of Class members who had no affiliation with companies that entered into an agreement with Defendants related to marketing. Pool B consists of Class members affiliated with companies that entered into an MPPSA with Defendants. The MPPSA is an agreement in which parties agreed to jointly market Defendants' test strips and meters. *See* <u>Exhibit B</u>. Pool A Class members can claim $435.09 per fax Defendants sent to them, and Pool B Class members can claim $65.85 per fax. Given the defenses available to Defendants with regard to the Pool B Class members, the disparity in relief is warranted. Specifically, Defendant had a potentially viable defense that the class members who signed the Master Promotional Program Services Agreement with Defendants provided consent to

6

receive the subject faxes. Structuring the Settlement in this way allows both Pool A and Pool B Class members to obtain cash relief without the expense, risk, and uncertainties of litigation.

9.      This settlement is very similar to a recent class action settlement in a TCPA class action that was approved by this Court and affirmed over objection by the Second District. *See Fauley v. Metropolitan Life Ins. Co.*, 2016 IL App (2d) 150236. Indeed, the fact that most class members can recover $435.09 per fax (with no cap on number of faxes), makes it likely that claiming class members will recover more, on average, than in *Fauley*.

10.     As in *Fauley*, the settlement is fair, reasonable, and in the Settlement Class's best interests—and, therefore, the Court is likely to grant final approval to the settlement—because the settlement offers each member of the Settlement Class an opportunity to claim a monetary payment without needing to possess or even remember the specific fax at issue, and all the while avoiding the costs and risks associated with further litigation against Defendants, which deny liability for the claims at issue. Because the class members can claim a cash payment of their share of the Settlement Fund by completing and returning a simple claim form the Court is likely to approve this as a fair, reasonable, and adequate settlement. The Court should preliminarily approve the settlement, so the Class members can be notified about and react to the settlement.

7

D.    THE COURT SHOULD APPROVE THE FORM AND METHOD OF NOTIFYING THE CLASS.

11.    In Illinois, "whether notice is to be given at all and the kind of notice which may be required are matters for a trial court's discretion." *Carrao v. Health-Care Service Corp.*, 118 Ill. App. 3d 417, 4290 (1st Dist. 1983). *See Fauley*, 2016 IL App (2d) 150236 at ¶ 34. Section 2-803 of the Code of Civil Procedure provides:

> Upon determination that an action may be maintained as a class action, or at any time during the conduct of the action, the court in its discretion may order such notice that it deems necessary to protect the interests of the class and the parties.

12.    The proposed Notice is attached to the Agreement as Exhibit 2.  The Notice will be mailed directly to class members.  (Exhibit A, ¶12).

13.    The Notice informs the Class members about the settlement terms, provides them a Claim Form, and informs them of the relevant dates (such as the Opt-Out Deadline, Objection Deadline, Claim Form Submission Deadline, and the date for the fairness hearing).  In the context of a proposed settlement, the notice need not contain every term of the proposed settlement so long as it contains information about how to obtain the terms and fairly summarizes them. *GMAC Mortgage*, 236 Ill. App. 3d at 492.

14.    The Court should approve the form of Notice and the plan for the dissemination of the Notice.

E.    FAIRNESS HEARING.

15.    The Court should schedule a final fairness hearing to allow the proponents and any opponents of the settlement to voice their opinions or objections. The Notice will notify the Class about the date and time of this hearing,

and of their right to attend.  At the fairness hearing, Plaintiff would request that the Court enter the parties' agreed Final Approval of Settlement Agreement and Judgment, which is attached to the Agreement as Exhibit 3.

F.    CONCLUSION.

16.    The Court should preliminarily approve the proposed settlement, because the Court is likely to find that it is fair, reasonable, and in the best interests of the Class under the standards set forth under Illinois law. Furthermore, the Court should approve the proposed Notice because it, too, is consistent with Illinois law.  A proposed Order Preliminarily Approving Class Action Settlement and Class Notice is attached here as <u>Exhibit C</u>.

Respectfully submitted,

PRESSMAN, INC. d/b/a PILL BOX
PHARMACY & MEDICAL SUPPLY,
PILL BOX WESTON, and PILL BOX
II, individually and as the
representatives of a class of similarly-
situated persons,

One of their attorneys

Phillip A. Bock
Tod A. Lewis
David M. Oppenheim
James M. Smith
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Attorney No. 44533

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on April 22, 2016, he caused a copy of the foregoing Motion for Preliminary Approval of Class Action Settlement Agreement and Notice to the Class to be served on the party listed below by depositing the same in the U.S. mail at 134 N. La Salle St., Chicago, IL with proper postage prepaid and addressed as follows:

Mark B. Blocker
Kathleen L. Carlson
Sidley Austin LLP
1 S. Dearborn St.
Chicago, IL 60603

One of Plaintiffs' attorneys

11

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

Defendants Bayer Corporation and Bayer HealthCare LLC (collectively "Defendants") and Plaintiffs Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II (collectively "Plaintiffs") (Plaintiffs and Defendants are collectively referred to as the "Parties"), individually and as representatives of the settlement class defined below (the "Settlement Class"), enter into this Settlement Agreement and Release ("Settlement Agreement").

WHEREAS, Plaintiffs and Defendants are parties to a civil action entitled *Pressman, Inc. d/b/a Pill Box Pharmacy v. Bayer Corporation et al.*, Case No. 16 CH 325 (Judge Berrones), pending in Lake County, Illinois (the "Litigation"). Plaintiffs allege that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") by purportedly transmitting via fax certain allegedly unsolicited advertisements that did not contain an opt out notice in the form required by 47 U.S.C. § 227. Plaintiffs also allege a claim for common law conversion. Previously, Plaintiffs and Defendants were parties to civil actions entitled *Pill Box Pines West, LLC v. Bayer Corporation et al.*, Case No. 15-cv-62042 (S.D. Fla.) ("*Pill Box Litigation I*"), and *Pressman, Inc. d/b/a Pill Box Pharmacy v. Bayer Corporation et al.*, Case No. 16-cv-60089 (S.D. Fla.) ("*Pill Box Litigation II*"). *Pill Box Litigation I* and *Pill Box Litigation II* asserted the same claims as the Litigation on behalf of the same putative class as the Litigation; however, both cases were dismissed without prejudice.

WHEREAS, Defendants produced evidence that each of the Plaintiffs in the Litigation was successfully sent 19 allegedly unsolicited fax advertisements from Defendants between January 2015 and October 2015.

WHEREAS, Defendants produced evidence showing that Defendants caused 63,171 copies of the Faxes (defined below) to be sent to 3,489 unique fax numbers from January 5, 2015 through October 7, 2015.

WHEREAS, Defendants deny violating the TCPA or any other federal or state law and deny wrongdoing and/or any liability to Plaintiffs and the Settlement Class. Defendants are entering into this Settlement Agreement solely to avoid the expense, burden, or uncertainty of further litigation, and to put to rest all Released Claims, as defined below.

WHEREAS, Plaintiffs, individually and on behalf of the Settlement Class, desire to settle their claims against Defendants, having taken into account through Settlement Class Counsel, as defined below, the risks, delay, and difficulties involved in establishing a right to recovery in excess of the amount to be paid pursuant to this Settlement Agreement and the likelihood that further litigation will be protracted and expensive.

WHEREAS, Settlement Class Counsel, as defined below, has investigated the facts and the applicable law. Based on this investigation, and upon an analysis of the substantial benefits afforded by this Settlement Agreement, Settlement Class Counsel considers it to be in the best interest of the Settlement Class to enter into this Settlement Agreement.

WHEREAS, in consideration of the foregoing, Plaintiffs, Settlement Class Counsel, and Defendants agree to settle the claims of the Plaintiffs and the Settlement Class, subject to the Court's approval, on the following terms and conditions.

## TERMS

1.      Incorporation of Recitals.  The recitals set forth above are incorporated into this Settlement Agreement.

2.      Definitions.

2

a.      "Settlement Class Counsel" means Bock & Hatch, LLC and its attorneys.

b.      "Class Period" means the period on or after January 1, 2015 through and
        including the date of the entry of the Preliminary Approval Order.

c.      "Settlement Class" means "All persons who were sent one or more telephone
        facsimile messages from January 1, 2015 through October 23, 2015, from or on
        behalf of Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes
        Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care Holdings AG,
        Ascensia Diabetes Care, Panasonic Healthcare Holdings Co. Ltd., Archway
        Marketing Services, Inc., TMS Health, or Xerox Corp, or any of their parents,
        subsidiaries, divisions, affiliates, associated entities, business units, agents,
        predecessors, predecessors-in interest, successors, and successors-in-interest,
        which said 'Effective January 1, 2015, Bayer meters and test strips are
        EXCLUSIVE on Blue Cross Blue Shield of Florida' without the inclusion of an
        opt out notice." Excluded from the Settlement Class are: (1) Defendants and any
        parent, subsidiary, affiliate, or controlled person of Defendants, as well as the
        officers, directors, agents, servants, or employees of Defendants and the
        immediate family members of such persons; (2) the named counsel in the
        Litigation and any member of their office or firm; and (3) the members of the
        Illinois judiciary.

d.      "Settlement Class Member" means a member of the Settlement Class.

e.      "Class Representatives" means Plaintiffs Pressman, Inc. d/b/a Pill Box Pharmacy
        & Medical Supply, Pill Box Weston, and Pill Box II.

3

f.      "Released Parties" means the following entities named as defendants or mentioned in the complaints in either *Pill Box Litigation I* or *Pill Box Litigation II*: Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care Holdings AG, Ascensia Diabetes Care, Panasonic Healthcare Holdings Co. Ltd., Archway Marketing Services, Inc., TMS Health, and Xerox Corp, as well as each of their parents, subsidiaries, divisions, affiliates, associated entities, business units, agents, predecessors, predecessors-in-interest, successors, and successors-in-interest.

g.      "Released Claims" means any and all manner of causes of action, suits, claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, in law or in equity, whether known or unknown, disclosed or undisclosed, accrued or un-accrued, apparent or not apparent, foreseen or unforeseen, direct or indirect, contingent or fixed, which Plaintiffs and Settlement Class Members now have, did have, or may have in the future against the Released Parties, or any of them, under any legal theory, arising from or in any way relating to the faxes encompassed in the Settlement Class definition, including but not limited to claims under the TCPA, comparable TCPA-like statutes of any state, and any other statutory or common law claim that was asserted or could have been asserted based on the conduct alleged in the complaints in *Pill Box Litigation I*, *Pill Box Litigation II*, and the Litigation. This

broad release of claims Plaintiffs may have runs through the date of preliminary approval.

h.     "Court" means the Circuit Court of Lake County, Illinois.

i.     "Settlement" means the settlement of the Litigation between and among Plaintiffs, on behalf of themselves and the Settlement Class, and the Defendants, as set forth in this Settlement Agreement.

j.     "Settlement Administrator" means CAC Services Group, LLC, an entity retained by the Parties to administer all aspects of the Settlement.

k.     "The Faxes" refers to the faxes attached as Exhibit A to the Class Action Complaint filed in the Litigation.

l.     "Pool A Entities" refers to pharmacies not affiliated with companies that have entered into a Master Promotional Program Services Agreement ("MPPSA") with Defendants to co-market the meters and test strips described in the Faxes.

m.     "Pool B Entities" refers to pharmacies affiliated with companies that have entered into a MPPSA with Defendants to co-market the meters and test strips described in the Faxes.

3.     Effective Date. This Settlement Agreement shall become effective (hereinafter the "Effective Date") upon the expiration of five (5) business days from the date upon which the Final Approval Order becomes final, which shall be: (1) the date on which any and all appeals of the Final Approval Order are resolved in a manner that upholds the Final Approval Order; or (2) if no appeal of the Final Approval Order is filed, the expiration of five (5) business days after the last date by which an appeal of the Final Approval Order could have been commenced. If there is an appeal from the Final Approval Order, Plaintiffs' and Defendants' obligations under this Settlement Agreement, including, without limitation, payments to Settlement Class Members

5

and payment of any award of attorneys' fees, costs, and expenses shall not commence unless and until all appellate proceedings are fully and finally resolved in a manner that upholds the Final Approval Order and this Settlement Agreement becomes effective.

4.      Certification of Settlement Class.  Solely for the purposes of settlement, the Parties stipulate to the certification of the Settlement Class.  Plaintiffs shall be appointed the class representatives and Bock & Hatch, LLC shall be appointed Settlement Class Counsel.  The Settlement Class shall be certified pursuant to Section 2-801 of the Illinois Code of Civil Procedure.  Defendants do not consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement.  If this Settlement Agreement is not approved by the Court, or is terminated pursuant to its terms or for any other reason, or is disapproved in a final order by any court of competent jurisdiction:  (a) any order certifying the Settlement Class and all preliminary and/or final findings or stipulations regarding certification of the Settlement Class shall be automatically vacated upon notice to the Court of this Settlement Agreement's termination or disapproval; (b) this Litigation will proceed as though the Settlement Class had never been certified and any related findings or stipulations had never been made and neither this Settlement Agreement, nor any of its Exhibits, nor any other associated settlement document may be used in seeking class certification; and (c) Defendants and Plaintiffs reserve all of their respective procedural or substantive rights as of the date of execution of this Settlement Agreement.

5.      Relief to Plaintiffs and the Settlement Class. The following relief shall be provided to Plaintiffs and the Settlement Class, subject to the Court's approval:

a.      Defendants will create a settlement fund in the amount of $12 million (the "Settlement Fund").  The Settlement Fund will be used to pay any and all costs

6

associated with the settlement, including claims, class notice, settlement
administration, attorneys' fees and incentive awards to Plaintiffs. Defendants
need not segregate funds or otherwise create special accounts to hold the
Settlement Fund. Defendants will not relinquish control of any money until
payments are due. Defendants will not be obligated to pay any additional
amounts under any circumstances.

b.     All expenses of the Settlement, including class notice, settlement administration,
attorneys' fees and costs requested by Settlement Class Counsel (attorneys' fees
not to exceed one-third of the Settlement Fund, plus up to $40,000 in out-of-
pocket costs/litigation expenses, and claims administration costs incurred,[1] all
subject to court approval), and any incentive award ($15,000 to each of plaintiffs
Pill Box Pharmacy, Pill Box Weston, and Pill Box II, subject to court approval),
shall be deducted from the Settlement Fund. The amount remaining after
deduction of these figures will be known as the Distributable Settlement Fund.
Defendants (including any Released Party) agree to pay the awarded fees, costs,
and incentive awards, so long as they do not exceed the agreed amounts, and
none of the Defendants (nor any Released Party) will object to those requests or
appeal awards of the agreed amounts. Final resolution of the Fee and Expense
Application (defined below) shall not be a precondition to the Settlement or
dismissal of the Litigation in accordance with the Settlement Agreement, and the

---

[1] The amount of costs and expenses is based on a total of $15,000 for class notice and settlement administration costs. In the event that the costs of class notice and settlement administration are greater or less than this amount, the amount of costs and expenses attributed to each Pool will require a proportional adjustment. The pro rata share for each Settlement Class member will then also require a pro rata adjustment.

Fee and Expense Application (defined below) may be considered separately from the Settlement. Any failure by the Court to approve the Fee and Expense Application (defined below), in whole or in part, shall have no impact on the effectiveness of the Settlement.

c.    The Distributable Settlement Fund shall be divided into two separate monetary pools: Pool A and Pool B. The Pool A Fund will consist of $4,424,900.00. The Pool B Fund will consist of $3,490,100.00. Pool A Entities shall be eligible to make claims from Pool A, and Pool B Entities shall be eligible to make claims from Pool B. The payments from each pool shall be handled as follows:

    (i)    <u>Pool A Fund.</u> Each Pool A Entity submitting a valid claim shall be entitled to a payment from the Pool A Fund equal to $435.09 times the number of faxes successfully sent to that entity, as shown in Defendants' records that were previously provided to Settlement Class Counsel. If payment of all valid claims submitted does not completely exhaust the Pool A Fund, then the remainder of the Pool A Fund shall be returned to Defendants. If payment of all valid claims would exceed the Pool A Fund, the per-fax claim amount shall be pro-rated down so that total payments do not exceed the Pool A Fund.

    (ii)    <u>Pool B Fund.</u> Each Pool B Entity submitting a valid claim shall be entitled to a payment from the Pool B Fund equal to $65.85 for each fax successfully sent to that entity, as shown in Defendants' records that were previously provided to Settlement Class Counsel.

8

If payment of all valid claims does not completely exhaust the Pool B Fund, then the remainder of the Pool B Fund shall be returned to Defendants. If payment of all valid claims would exceed the Pool B Fund, the per-fax claim amount shall be pro-rated down so that total payments do not exceed the Pool B Fund.

d.      If the Court declines to approve any portion of the attorneys' fees, costs, or incentive awards requested by Plaintiffs or Settlement Class Counsel, then the portion not approved shall be distributed proportionally to Pool A and Pool B, and the per fax amount for each claiming Settlement Class Member shall also increase proportionally.

6.      Delivery of Payments.

a.      Within fourteen (14) days after the later of: (i) entry of the Preliminary Approval Order, or (ii) receipt of a properly executed W-9 form and all applicable account and wire transfer information from the Settlement Administrator, Defendants will pay the costs of the Settlement Administrator as approved by the Court in an amount not to exceed $15,000. This amount shall be deducted from the Settlement Fund and is non-refundable, even in the event that the Final Approval Order is not entered or the Effective Date is not reached.

b.      Within three (3) business days following the Effective Date, the Settlement Administrator will provide the Parties with a list of all claims submitted by Pool A and Pool B Entities (the "Claims List"), as well as the total dollar amount of the claims (the "Payable Settlement Amount"). Within fourteen (14) days of the later of: (i) receipt of the Claims List and the Payable Settlement Amount, or (ii)

9

receipt of a properly executed W-9 form and all applicable account and wire

transfer information from the Settlement Administrator, Defendants will cause

the Payable Settlement Amount to be transferred to the Settlement

Administrator.  Within ninety (90) days following the Effective Date, the

Settlement Administrator shall distribute the Payable Settlement Amount in

accordance with this Settlement Agreement or as ordered by the Court, unless

this deadline is extended.

c.       Defendants will pay to Settlement Class Counsel as "Bock & Hatch, LLC

IOLTA Client Trust Account" any award of attorney's fees and costs and any

incentive award to Plaintiffs within fourteen (14) days after the last of the

following events:  (i) the Effective Date; (ii) the date that an order by the Court

approving any award of fees and expenses becomes final and non-appealable,

whether by performance or on exhaustion of any possible appeal or review, lapse

of time or otherwise; or (iii) the date on which Defendants are provided with the

payee's properly executed W-9 and all applicable account and wire transfer

information.

7.       <u>Submission of Claims, Exclusion Requests, Objections</u>.  After entry of the

Preliminary Approval Order, Settlement Class Members shall have ninety (90) days after the

date on which the Class Notice (defined below) is sent to the Settlement Class to submit a claim,

forty-five (45) days to request exclusion from the Settlement Class, or forty-five (45) days to

object to the Settlement Agreement.

8.       <u>Void Checks.</u>  Checks issued to Settlement Class Members for payment of

claims under this Settlement Agreement will be void after one hundred eighty one (181) days

10

from the date of issuance. Any Settlement Class Member who does not negotiate the settlement check issued to them within one hundred eighty one (181) days of the date of issuance agrees that they rescind and withdraw their claim for monetary compensation under this Settlement Agreement but remain a member of the Settlement Class and are bound by the terms of this Agreement.

9. Cy Pres Amounts. Within thirty (30) days after the last void date of all settlement checks issued to Settlement Class Members, the Settlement Administrator will report to the Parties if there are any uncashed checks or unclaimed or undistributed amounts remaining from the Payable Settlement Amount. Any such unclaimed or undistributed amounts remaining from the Payable Settlement Amount shall be distributed to one or more *cy pres* recipients eligible under Illinois law (735 ILCS 5/2-807), selected by Defendants, and approved by the Court.

10. Release. Upon the Effective Date, Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class shall be deemed to have fully and finally waived and released the Released Claims. This Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that may be instituted or prosecuted with respect to the Released Claims. Without admitting that California law or the laws of any other state apply to this Settlement Agreement or that the release provided by Plaintiffs and the Settlement Class is a general release, the Parties agree that upon the Effective Date, the Settlement Class shall be deemed to have waived the provisions and benefits of California Civil Code §1542, which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her, might have materially affected his or settlement with the debtor. Further,

11

Plaintiffs and the Settlement Class Members expressly waive any and all provisions and rights or benefits which may be conferred upon them by any law, statute, ordinance or regulation which is similar, comparable or equivalent to California Civil Code §1542.

11.        Failure to Reach Effective Date. If this Settlement Agreement is not approved by the Court or for any reason does not become effective, it shall be deemed null and void and shall be without prejudice to the rights of the Parties hereto and shall not be used in any subsequent proceedings in this or any other litigation, or in any manner whatsoever.

12.        Class Notice. Within three (3) business days after entry of the Preliminary Approval Order, counsel for Defendants shall provide a list of all Settlement Class Members to the Settlement Administrator (copying Settlement Class Counsel) in MS Word or Excel Format (the "Settlement Class List"). The Settlement Class List shall include the following, which are based on information previously provided to the Parties:  (i) the name of all Settlement Class Members;  (ii) the number of Defendants' faxes successfully sent to each Settlement Class Member; (iii) the address of each Settlement Class Member; and (iv) the fax number of each Settlement Class Member. The Settlement Class List also will identify whether each Settlement Class Member is a Pool A Entity or a Pool B Entity. Within fourteen (14) days after entry of the Preliminary Approval Order, the Settlement Administrator shall cause actual notice in the form of Exhibit 1 (the "Class Notice") which includes a claim form (the "Claim Form") to be sent to each Settlement Class Member by first class mail to the addresses identified on the Settlement Class List. Settlement Class Members shall have ninety (90) days after the first date on which actual Notice is sent to the addresses identified on the Settlement Class List to submit a Claim Form, forty-five (45) days to request exclusion from the Settlement Agreement, or forty-five (45) days to object to the Settlement Agreement.

Settlement Class Counsel and the Settlement Administrator shall retain all documents and

records generated during the administration of the Settlement, including records of notice given

to Settlement Class Members, confirmations of transmittals of such notices by fax, unconfirmed

fax transmissions, records of undelivered mail, claim forms, and payment to Settlement Class

Members, for a period of one year following the Effective Date.  Settlement Class Counsel or the

Settlement Administrator shall provide counsel for Defendants with copies of any such

documents to inspect and copy, upon reasonable request by counsel for Defendants. The

Settlement Class List and all other documents and records generated during the administration of

the Settlement shall be used for purposes consistent with notice and administration of this

Settlement Agreement and for no other purpose.

13.     Claim Validation.  Potential Settlement Class Members shall be required to

complete the Claim Form appended to the Class Notice in order to be entitled to payment from

the Distributable Settlement Fund.  The Settlement Administrator will provide a duplicate or

replacement claim form to a Settlement Class Member upon request.  The Settlement

Administrator shall match each fax number a Settlement Class Member verifies on a returned

Claim Form to a fax number on the Settlement Class List.  If the fax number does not match,

then Settlement Class Counsel or the Settlement Administrator shall follow up with the

Settlement Class Member and inquire if they employed other fax numbers during the Class

Period (to ascertain if any different fax number is a number on the Settlement Class List), in an

effort to determine whether the claim is a valid claim.

If the fax number or fax numbers verified through a Claim Form do not match the

Settlement Class List, and the follow-up with the Settlement Class Member has not resolved the

issue, the Settlement Administrator shall disallow the claim.  If the Settlement Administrator

13

disallows a claim, the Settlement Administrator must communicate that disallowance of the claim to Settlement Class Counsel and the Settlement Class Member, allowing an opportunity to investigate the basis for disallowing the claim and respond. The Settlement Class Administrator also shall advise counsel for Defendants of all claim disallowances. In the event the Parties disagree as to the validity of any Claim Form or whether to disallow a claim, then Settlement Class Counsel will present the disputed claim to the Court for resolution.

14.     W-9 Forms.  Settlement Class Members submitting a valid Claim Form shall be paid a share of the Distributable Settlement Fund in accordance with the terms of Paragraph 5 of this Settlement Agreement.  If multiple persons submit a valid claim for the same fax number, then the amount to be distributed shall be divided evenly among such claimants.  If a Settlement Class Member is entitled to receive more than $599.99 as its total pro rata share, then such Settlement Class Member will be required to complete and submit a W-9 form or have the taxes withheld from their settlement check.  The W-9 forms will be issued to Settlement Class Members as required after entry of the Final Approval Order and before any settlement checks are issued.  Settlement Class Members will have thirty (30) days to respond to a request to complete a W-9 form.  If a Settlement Class Member does not submit a W-9 form, the Settlement Administrator will withhold taxes from their settlement check.  If W-9 forms need to be collected, certain dates set forth in Paragraphs 6(b), 8, and 9 are reset and calculated as follows:  within thirty (30) days following the expiration of time for class members to complete a W-9 form, the Settlement Administrator shall distribute the Distributable Settlement Fund to the Settlement Class Members who have submitted valid claims in accordance with Paragraph 13; settlement checks to the Settlement Class Members will be void one hundred eighty one (181) days from date of issuance; and within thirty (30) days following the void date on the Settlement

14

Class Members' checks, any uncashed checks will be distributed to one or more *cy pres* recipients as set forth in Paragraph 9 of this Settlement Agreement.

15.      Right to Object. Any Settlement Class Member may object to the Settlement. The deadline to object shall be set by the Court in the Preliminary Approval Order and the Parties shall propose that it be forty-five (45) days after the initial date of transmission of the Class Notice. Any Settlement Class Member may object to the Settlement Agreement by filing their objection with the Court and mailing a copy of the objection to Settlement Class Counsel and counsel for Defendants at the addresses listed in Paragraph 32 below. Any objection must include: (a) the name, address, and fax number of the person(s) or entity objecting to the Settlement Agreement; (b) a statement of the objection to the Settlement Agreement; (c) an explanation of the legal and factual basis for the objection; and (d) documentation, if any, to support the objection. Objecting Settlement Class Members may also appear and be heard at the hearing held by the Court to consider final approval of this Settlement Agreement, personally or through counsel, at their own expense.

16.      Right of Exclusion. All Settlement Class Members who properly file with the Court a timely written request for exclusion from the Settlement Class shall be excluded from the Settlement Class and shall have no rights as Settlement Class Members pursuant to this Settlement Agreement. A request for exclusion must be in writing and state the name, address, and fax number (to which a fax was sent) of the person(s) or entity seeking exclusion. Each request must also contain a signed statement providing that: "I/we hereby request that I/we be excluded from the proposed Settlement Class in the *Pill Box* Litigation." The request must be mailed or faxed to Settlement Class Counsel at the address or fax number provided in the Class Notice and postmarked or received by Settlement Class Counsel or the Settlement Administrator

15

on or before the deadline for requests for exclusion set by the Court. Only individual Settlement

Class Members may request exclusion; requests for exclusion may not be submitted on behalf of

a putative class or subclass of similarly situated Settlement Class Members. Neither the Parties,

nor Counsel for Defendants, nor Settlement Class Counsel shall take affirmative action to

encourage Settlement Class Members to exclude themselves from the Settlement Class.

Beginning on the Friday immediately following the date of the initial transmission of the Class

Notice, and on every Friday until the time for requesting exclusion has expired, Settlement Class

Counsel will provide to counsel for the Defendants complete and accurate copies of all exclusion

requests submitted to the Court during the week ending on the previous Friday. In addition,

within ten (10) days after expiration of the deadline for Settlement Class Members to request

exclusion from the Settlement Class, Settlement Class Counsel shall furnish a complete list of all

exclusion requests to counsel for Defendants. A request for exclusion that does not include all of

the foregoing information, or that is sent to an address other than the one designated in the Class

Notice, or that is not postmarked or received by Settlement Class Counsel or the Settlement

Administrator within the time specified, shall be invalid and the person(s) serving such a request

shall remain a Settlement Class Member and shall be bound by the terms of this Settlement

Agreement, if approved. Settlement Class Members shall have forty-five (45) days from the

initial date of the transmission of the Class Notice to submit requests for exclusion.

17. <u>Preliminary Approval.</u> As soon as practicable after execution of this Settlement

Agreement, Settlement Class Counsel shall file a Motion for Preliminary Approval of this

Settlement Agreement and shall present such motion to the Court requesting the entry of a

Preliminary Approval Order, identical in all material respects to <u>Exhibit 2</u> or in such other form

as is mutually acceptable to the Parties. Defendants agree not to oppose the motion.

18.    Final Approval. Settlement Class Counsel shall file a memorandum in support of final approval of this Settlement Agreement, which shall include Settlement Class Counsel's request for an award of attorney's fees and costs (the "Fee and Expense Application"), prior to the date the Court sets for the final approval hearing. The Parties shall request that the Court enter a Final Approval Order, identical in all material respects to Exhibit 3, or in another form which is mutually acceptable to the Parties. Entry of a Final Approval Order identical in all material respects to Exhibit 3, or in another form which is mutually acceptable to the Parties is a condition precedent to this Settlement Agreement becoming effective. The Settlement Agreement is expressly contingent on entry of the Final Approval Order identical in all material respects to Exhibit 3. In the event a Final Approval Order identical in all material respects to Exhibit 3 or in another form which is mutually acceptable to the Parties is not entered, then this Settlement Agreement shall be null and void and is rescinded.

19.    Non-Substantive Changes to Exhibits. The fact that the Court may require non-substantive changes to documents attached as Exhibits 1 through 3 shall not invalidate this Settlement Agreement.

20.    Release of Attorneys' Lien. In consideration of this Settlement Agreement, and upon Defendants' payment of the awarded attorneys' fees and expenses, Settlement Class Counsel hereby waives, discharges and releases the Released Parties of and from any and all claims for attorneys' fees, by lien or otherwise, for legal services rendered by Settlement Class Counsel in connection with this Litigation.

21.    Applicable Law. This Settlement Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Illinois without regard to its conflict of laws or choice of law provisions.

17

22.     Miscellaneous Provisions.  The Parties and their attorneys agree to cooperate fully with one another in seeking approval of this Settlement Agreement, and to use their best efforts to effect the consummation of this Settlement Agreement and the Settlement provided for herein.  Whether or not this Settlement Agreement and the Settlement contemplated hereunder are consummated, this Settlement Agreement and the proceedings had in connection herewith shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of Defendants of any liability or wrongdoing whatsoever.

23.     Benefit of this Settlement Agreement.  This Settlement Agreement shall be binding upon and inure to the benefit of the Plaintiffs, the Released Parties and Settlement Class Members, and each of their respective successors and personal representatives, predecessors, affiliates, heirs, executors and assigns.  It is expressly understood by the Parties that all Released Parties who are not parties to this Settlement Agreement are intended third-party beneficiaries of this Settlement Agreement.

24.     Representations and Warranties. The Parties each represent, warrant, and agree that, in executing this Settlement Agreement, they do so with full knowledge of any and all rights that they may have with respect to the claims released in this Settlement Agreement and that they have received independent legal counsel from their attorneys with regard to the facts involved and the controversy herein compromised and with regard to their rights arising out of such facts. The Parties hereby represent to one another that they have full power and authority to enter into this Settlement Agreement and carry out their obligations.  Each of the individuals executing this Settlement Agreement warrants that he or she has the authority to enter into this Settlement Agreement and to legally bind the party for which he or she is signing.

18

25.     Entire Agreement. Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Settlement Agreement are merged into and with this Settlement Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter hereof. This Settlement Agreement may be amended, modified or changed only by a written instrument or instruments executed by duly authorized officers or other representatives of the Parties expressly amending, modifying or changing this Settlement Agreement and may not be amended, modified or changed orally.

26.     Counterparts. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Signatures provided by fax or e-mail shall be deemed legal and binding for all purposes.

27.     Headings. The headings in this Settlement Agreement are for convenience of reference only and are not to be taken to be a part of the provisions of this Settlement Agreement, nor to control or affect meanings, constructions or the effect of this Settlement Agreement.

28.     Mutual Interpretation. The Parties agree and stipulate that this Settlement Agreement was negotiated on an arm's length basis between Parties of equal bargaining power. Also, Settlement Class Counsel and counsel for Defendants have drafted the Settlement Agreement jointly. Accordingly, no ambiguity shall be construed in favor of or against any of the Parties. Plaintiffs acknowledge, but do not concede to or agree with, Defendants' statements regarding the merits of the claims, and Defendants acknowledge, but do not concede to or agree with, Plaintiffs' statements regarding the merits of the claims.

19

29.     Severability.  In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions if the Parties and their counsel mutually elect by written stipulation to be filed with the Court within twenty (20) days to proceed as if such invalid, illegal, or unenforceable provisions had never been included in this Settlement Agreement.

30.     Dismissal.  The Parties shall file with the Court a Stipulation of Dismissal dismissing the Litigation without prejudice within ten (10) days after the Effective Date.  The Parties agree that the Stipulation of Dismissal without prejudice shall be converted to a Stipulation of Dismissal with prejudice within sixty (60) days after the later of: (a) the date on which the final payment from the Payable Settlement Amount has been made by the Settlement Administrator in accordance with this Settlement Agreement; or (b) the date on which the final contribution has been made to one or more authorized *cy pres* organizations in accordance with this Settlement Agreement.  Subsequent to the filing of such Stipulation of Dismissal, the Court shall retain jurisdiction solely to enforce the terms of the Settlement Agreement consistent with the Releases executed as part of the Settlement Agreement.  The Stipulation of Dismissal without prejudice shall include language stating that the judgment is being entered to allow the Parties to enforce the terms of this Settlement Agreement and that the "without prejudice" language shall not allow either party to reopen issues resolved by the judgment.

31.     Excessive Opt-Out Provision.  Defendants shall have the right to withdraw from the settlement if Settlement Class Members representing more than 500 of the total number of successful faxes request to opt out of the Settlement.  None of the Parties to this Settlement

20

Agreement or any Released Party will encourage any member of the Settlement Class to opt out of the Settlement.

    32.    <u>Notices.</u>  Requests for exclusion and objections to the Settlement Agreement or Settlement shall be sent to:

<u>Settlement Class Counsel:</u>

Phillip A. Bock
Bock & Hatch, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Phone: (312) 658-5500
Fax: (312) 658-5555

<u>Counsel for Defendants:</u>

Mark B. Blocker
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7360
Fax: (312) 853-7036

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly executed and delivered by their duly authorized representatives on the date last written below.

*[SIGNATURES APPEAR ON THE FOLLOWING PAGE]*

**PLAINTIFFS:**

Pressman, Inc. d/b/a Pill Box Pharmacy &

Medical Supply

By: _____

Its: _____Attorney_____

Date: _____4.10.16_____

Pill Box Weston

By: _____

Its: _____Attorney_____

Date: _____4.10.16_____

Pill Box II

By: _____

Its: _____Attorney_____

Date: _____4.10.16_____


_____

Phillip A. Bock
James M. Smith
Tod A. Lewis
Bock & Hatch, LLC
134 N. La Salle Street
Suite 1000
Chicago, IL 60602
(312) 658-5500

*Counsel for Plaintiffs and the Settlement Class*

**DEFENDANTS:**

Bayer Corporation

By: _____

Its:_____Tracy E. Spagnol_____
Vice President & Treasurer

Date: _____4|7|2016_____

Bayer HealthCare LLC

By: _____

Its: _____Tracy E. Spagnol_____
Vice President & Treasurer

Date: _____4|7|2016_____


_____
Mark B. Blocker
Kathleen L. Carlson
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
*Counsel for Defendants Bayer Corporation
and Bayer HealthCare LLC*

22

# EXHIBIT 1

**THIS IS A NOTICE OF A LAWSUIT SETTLEMENT.**
**You may benefit from this. Please read it carefully. You are not being sued.**

---

## IN THE CIRCUIT COURT OF NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | |
|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons, Plaintiffs, <br><br> v. <br><br> BAYER CORPORATION, et al., Defendants. | ) ) ) ) ) ) ) ) ) No. 16 CH 325 |

### NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

TO:     All persons who were sent on or more telephone facsimile messages from January 1, 2015 through October 23, 2015, from or on behalf of Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care Holdings AG, Ascensia Diabetes Care, Panasonic Healthcare Holdings Co. Ltd., Archway Marketing Services, Inc., TMS Health, or Xerox Corp., or any of their parents, subsidiaries, divisions, affiliates, associated entities, business units, agents, predecessors, predecessors-in-interest, successors, and successors-in-interest, which said "Effective January 1, 2015, Bayer meters and test strips are EXCLUSIVE on Blue Cross Blue Shield of Florida" without the inclusion of an opt out notice (the "Settlement Class").

**A.     WHY HAVE YOU RECEIVED THIS NOTICE?** The Court ordered us to send this Notice because you may be a member of the Settlement Class defined above. The Notice explains the nature of the lawsuit and the settlement terms and informs you of your legal rights and obligations.

**B.     WHAT IS THIS LAWSUIT ABOUT?** This lawsuit is about faxes sent between January 1, 2015 and October 23, 2015. Plaintiffs, Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II ("Plaintiffs"), filed this class action lawsuit alleging that Defendants violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, and converted Plaintiffs' and the other Settlement Class Members' fax machines, paper, toner, and employee time by sending them advertisements by fax.

**C.     WHAT IS THE PROPOSED SETTLEMENT?** Without admitting any fault or liability, and in exchange for a release of all claims against it, Defendants have agreed to make $12,000,000.00 (the "Settlement Fund") available to pay those Settlement Class Members who submit a claim form (attached), to pay incentive awards to Plaintiffs for serving as the Class Representatives, and to pay attorney's fees and costs to Plaintiffs' attorneys ("Settlement Class Counsel"). The Court has preliminarily approved this settlement, subject to a fairness hearing that will occur on _____, 2016, at _____ a.m., in Courtroom C302 of the Lake County Courthouse, 18 N. County St., Waukegan, IL 60085.

The Settlement Fund is comprised of two different pools, Pool A and Pool B, and your membership in a pool depends upon whether you are or were affiliated with a company that entered into a "Master Promotional Services Agreement" ("MPSA") with Defendants to co-market Defendants' meters and test strips.

Pool A consists of entities who are not affiliated with companies that entered into a Master Promotional Program Services Agreement with Defendants to co-market Defendants' meters and test strips. Pool A consists of $4,424,900.00. Each Settlement Class Member who is a member of Pool A and who

submits an approved claim will be mailed a check for $435.09 per fax Defendants successfully sent to it, subject to the terms and conditions set forth in the Settlement Agreement.

Pool B consists of entities who are affiliated with companies that entered into a Master Promotional Program Services Agreement with Defendants to co-market Defendants' meters and test strips. Pool B consists of $3,490,100.00. Each Settlement Class Member who is a member of Pool B and who submits an approved claim will be mailed a check for $65.85 per fax Defendants successfully sent to it, subject to the terms and conditions set forth in the Settlement Agreement.

**D.**   **WHAT CAN YOU DO NOW? YOU HAVE FOUR OPTIONS.**

    **1.**   **Return a completed Claim Form:** To receive a share of the Settlement Fund, you must complete, verify, and return a signed Claim Form postmarked on or before _____, 2016. The Claim Form is attached as the last page of this Notice. If your Claim Form is approved, you will be mailed a check for your share of the Settlement Fund.

    **2.**   **Do nothing.** If you do nothing, you will stay in the Settlement Class, be bound by any judgment entered by the Court, and you will release your claims against Defendants (and other entities claimed to be involved in sending the faxes) from any claims arising from or any way relating to the faxes Defendants' sent, but you will receive no payment.

    **3.**   **Exclude yourself from the Settlement Class and the proposed Settlement.** You can exclude yourself from both the Settlement Class and the proposed Settlement by filing a written request with the Clerk of the Circuit Court of Lake County, 18 N. County St., Waukegan, IL 60085. That request must be postmarked on or before _____, 2016, and it must list your name, fax number(s), street address, and the name and number of this case. You must also mail copies of your request for exclusion, postmarked by the same date, to Phillip A. Bock, Bock & Hatch, LLC, 134 N. La Salle St., Ste. 1000, Chicago, IL 60602.

    **4.**   **Object to the proposed Settlement in writing.** If you object to the proposed Settlement, and wish to file an objection rather than exclude yourself from the Settlement Class, you must submit your objection in writing to the Clerk of the Circuit Court of Lake County, 18 N. County St., Waukegan, IL 60085. You can object ONLY if you stay in the Settlement Class. If you exclude yourself from the Settlement Class, you cannot object. Your objection must be postmarked by _____, 2016. You must also serve copies of your objection and any supporting memoranda or materials on both the attorneys for the Settlement Class and for Defendants, postmarked by the same date and addressed as follows:

    For the Class:                         For Defendants:
    Phillip A. Bock                       Mark B. Blocker
    Bock & Hatch LLC                    Sidley Austin LLP
    134 N. La Salle St., Suite 1000      1 S. Dearborn St.
    Chicago, IL 60602                   Chicago, IL 60603
    Email: Phil@bockhatchllc.com

Any objection must include your name, fax number(s), and street address, the name and number of this case, and a statement of the reasons why you believe that the Court should find that the proposed Settlement is not fair, reasonable, and in the best interests of the Settlement Class. Please note that it is not sufficient to simply state that you object. You must state the reasons why you believe the proposed Settlement should not be approved. If you file an objection and wish to present it to the Court, then you may appear at the final approval hearing before Judge Luis Berrones in Courtroom C302 of the Circuit Court of Lake County, 18 N. County St., Waukegan, IL 60085 on _____, 2016, at _____ a.m. You are not required to attend this hearing.

**E.**   **WHEN WILL THE COURT DECIDE WHETHER TO APPROVE THE PROPOSED**

**SETTLEMENT?**

The Court will hold a hearing to decide whether the proposed Settlement is fair and reasonable and should be approved. At that fairness hearing, the Court will hear any objections and arguments about the proposed Settlement, including the amount of the award of costs and attorney's fees to Settlement Class Counsel. The fairness hearing will take place on _____, 2016, at _____ a.m., in Courtroom C302 of the Circuit Court of Lake County, 18 N. County St., Waukegan, IL 60085. **You do not need to attend this hearing**. The fairness hearing may be continued to a future date without further notice. If the Court does not approve the proposed Settlement, the case will proceed as if no settlement has been attempted. If the proposed Settlement is not approved, there is no assurance that the Settlement Class will recover more than is provided in the proposed Settlement, or recover anything at all.

**F.     WHO REPRESENTS THE SETTLEMENT CLASS?** The Court appointed Plaintiffs Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II as the "Class Representatives" and appointed Bock & Hatch, LLC, 134 N. La Salle St., Ste. 1000, Chicago, IL 60602, as "Settlement Class Counsel." At the fairness hearing, Settlement Class Counsel will request that the Court approve the payment of incentive awards of $15,000 from the Settlement Fund to Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II for their services on behalf of the Settlement Class in this litigation. Additionally, Settlement Class Counsel will request that the Court award them attorneys' fees equal to one third of the total Settlement Fund, plus the out-of-pocket litigation expenses they incurred in this litigation, all to be paid to them from the Settlement Fund.

**G.     HOW DO I OBTAIN MORE INFORMATION?** This notice provides a summary description of the case and does not cover all of the issues and proceedings. To see the complete file, including a copy of the Settlement Agreement, you may visit the office of the Clerk of the Circuit Court of Lake County, 18 N. County St., Waukegan, IL 60085. The Clerk will make the files relating to the lawsuit available to you for inspection and copying at your own expense.

If you have specific questions, write to Settlement Class Counsel at their addresses above. Include the case number, your name, your fax number, and your telephone number. Or, you may call Phillip A. Bock, one of the lawyers representing Plaintiffs and the Settlement Class, at 312-658-5501, or email him at Phil@bockhatchllc.com.

Please do not contact the Clerk of the Court, the Judge, or the Judge's staff, because they cannot answer your questions or give you advice about the proposed Settlement.

**BY ORDER OF THE COURT**
**HONORABLE LUIS BERRONES**

**PROOF OF CLAIM**
*Pressman, Inc., v. Bayer Corporation et al.*

Fax number: <inserted by administrator>

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund:*

1.   **Provide Your Contact Information.**

     Name: _____

     Company: _____

     Address: _____

     City/State/Zip Code: _____

     Telephone Contact Number: _____


2.   **Verify Ownership of the Fax Number identified above:**

     (a)   "The Fax Number identified above was my company's fax number throughout the period January 1, 2015, through October 23, 2015."

                                        _____
                                        (Sign your name here)


3.   **You Must Return this Claim Form by [90 days]_____, 2016:**

     a.   Fax this Claim Form to:  <fax number for claims >

          ***OR***

     b.   Mail this Claim Form to:  [CLAIMS ADMINISTRATOR]

          ***OR***

     c.   Submit your claim electronically at: <website>


If you have a question regarding your claim, please contact the claims administrator at _____. If you have any question about the notice or the lawsuit, please contact attorney Phillip A. Bock of Bock & Hatch, LLC, at 312-658-5501 or at Phil@bockhatchllc.com.

EXHIBIT 2

# IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16 CH 325 |
| v. | ) ) | |
| BAYER CORPORATION and BAYER HEALTHCARE, LLC, | ) ) | |
| Defendants. | ) ) | |

## ORDER PRELIMINARILY APPROVING CLASS
## ACTION SETTLEMENT AND CLASS NOTICE

This matter coming before the Court by stipulation of the parties and, after review and consideration of the Settlement Agreement, a hearing held on _____, 2016, and the presentations of counsel, and the Court being duly advised in the premises, IT IS HEREBY ORDERED:

1.      On _____, 2016, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement Agreement and Notice to the Class.

2.      The Court hereby certifies the following class for settlement purposes only, pursuant to 735 ILCS 5/2-801 and 2-802: "All persons who were sent one or more telephone facsimile messages from January 1, 2015 through October 23, 2015, from or on behalf of Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care Holdings AG, Ascensia Diabetes Care, Panasonic Healthcare Holdings Co. Ltd., Archway

Marketing Services, Inc., TMS Health, or Xerox Corp, or any of their parents, subsidiaries, divisions, affiliates, associated entities, business units, agents, predecessors, predecessors-in interest, successors, and successors-in-interest, which said 'Effective January 1, 2015, Bayer meters and test strips are EXCLUSIVE on Blue Cross Blue Shield of Florida' without the inclusion of an opt out notice" (the "Settlement Class"). Excluded from the Settlement Class are: (1) Defendants and any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of such persons; (2) the named counsel in the Litigation and any member of their office or firm; and (3) the members of the Illinois judiciary. In their Settlement Agreement, the parties have agreed that this is a proper class definition solely for purposes of settlement.

3.      The Court finds that this Settlement Class definition satisfies the requirements of 735 ILCS 5/2-801 and 2-802 in the context of the proposed settlement because: (1) the Settlement Class is so numerous that joinder of all members is impracticable; (2) there are common questions of fact or law that predominate over any questions affecting only individual members; (3) the representative party will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy.

4.      The Settlement Class is certified only for purposes of effectuating the proposed Settlement as specifically memorialized in the Settlement Agreement.  If the Settlement Agreement is terminated pursuant to its terms or for any other

2

reason, or is disapproved in a final order by this Court or any court of competent jurisdiction, then (a) this Order and all preliminary and/or final findings herein or stipulations of the Parties regarding certification of the Settlement Class shall be automatically vacated upon notice to this Court of the Settlement Agreement's termination or disapproval; (b) the above-captioned litigation will proceed as though the Settlement Class had never been certified and any related findings or stipulations had never been made and neither the Settlement Agreement, nor any of its exhibits, nor any other associated settlement document, may be used in seeking class certification; and (c) Defendants shall be deemed to have reserved all procedural and/or substantive rights as of the date of the execution of the Settlement Agreement.

5.     The Court appoints Plaintiffs, Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II, as the "Class Representatives" and appoints Bock & Hatch, LLC as "Settlement Class Counsel."

6.     The Settlement Administrator shall be CAC Services Group, LLC.

7.     Within fourteen (14) days after the later of: (i) entry of this Order, or (ii) receipt of a properly executed W-9 form and all applicable account and wire transfer information from the Settlement Administrator, Defendants will pay the costs of the Settlement Administrator in an amount not to exceed $15,000. Defendants shall be given a credit on the payment of the Settlement Fund in an amount equal to the amount advanced.

8.     Pursuant to 735 ILCS 5/2-806, the Court preliminarily approves the settlement of this action, as embodied in the terms of the Settlement Agreement, as

3

fair, reasonable, and in the best interests of all those who will be affected by it.

9.      The Settlement Agreement is incorporated by reference into this Order (with capitalized terms as set forth in the Settlement Agreement) and is hereby preliminarily adopted as an Order of this Court.

10.     The Settlement Agreement proposes notice to the Settlement Class in the form of Exhibit 2 to the Settlement Agreement and proposes to send it by U.S. mail to the mailing addresses associated with the facsimile numbers identified in this Litigation through Defendants' records. The Court finds that this notice plan is reasonable and satisfies 735 ILCS 5/2-803 and the requirements of due process under the Illinois and United States Constitutions. The plan is approved and adopted.

11.     The Court sets deadlines and dates for the acts and events set forth in the Settlement Agreement and directs the Parties to incorporate these deadlines and dates in the Class Notice, as appropriate:

(a)     The Class Notice shall be sent on or before _____, 2016;

(b)     Requests by any Settlement Class Member to opt out of the proposed Settlement must be filed on or before _____, 2016 (45 days after notice is sent), or be forever barred. The Court shall rule on all requests for exclusion or opt outs at the fairness hearing on _____, 2016; and

(c)     Any objection or motion to intervene, including any supporting brief, must be filed in this Court and postmarked and served on Settlement Class Counsel and Defendants' counsel on or before _____, 2016 (45 days after notice is sent), or be forever barred,

All exclusion requests and objections must contain the information as

4

specified in the Settlement Agreement and must be delivered in the manner specified therein.

12.   The fairness hearing is hereby scheduled for _____, 2016, at_____, in Room C302.


Dated: _____          _____
                                               Honorable Luis Berrones

# EXHIBIT 3

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16 CH 325 |
| v. | ) ) | |
| BAYER CORPORATION and BAYER HEALTHCARE, LLC, | ) ) ) | |
| Defendants. | ) | |

## FINAL APPROVAL ORDER AND JUDGMENT

The parties' proposed class action settlement coming before the Court for a fairness hearing on _____, 2016, at _____ a.m. in Room C302 of the Circuit Lake County, Illinois, in Waukegan, Illinois, at which all persons were given an opportunity to be heard, the Court considering the submissions of the Parties, including Plaintiffs' Motion for Final Approval of Class Action Settlement, the statements of counsel, and the fairness of the settlement's terms, **IT IS HEREBY ORDERED THAT:**

1.      This Court grants final approval of the Settlement Agreement, including, but not limited to, the releases therein, and finds that the Settlement is in all respects fair, reasonable, and adequate, and in the best interests of all those affected by it. Any timely objections that were filed have been considered and are overruled. Accordingly, this Final Judgment and Order binds all members of the Settlement Class who did not opt out.

2.     This Court has jurisdiction over Plaintiffs, Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II ("Plaintiffs"), the members of the Settlement Class, Defendants, Bayer Corporation and Bayer Healthcare, LLC ("Defendants), and the claims asserted in this lawsuit.

3.     This Court finds that the Parties entered into the Settlement Agreement in good faith, following arm's-length negotiations, and that it was not collusive.

## Class Certification

4.     On _____, 2016, pursuant to 735 ILCS 5/2-801 and 2-802, the Court entered an order entitled, "Order Preliminarily Approving Class Action Settlement and Class Notice" (the "Preliminary Approval Order").

5.     The Preliminary Approval Order certified the following class solely for purposes of settlement: "All persons who were sent one or more telephone facsimile messages from January 1, 2015 through October 23, 2015, from or on behalf of Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care Holdings AG, Ascensia Diabetes Care, Panasonic Healthcare Holdings Co. Ltd., Archway Marketing Services, Inc., TMS Health, or Xerox Corp, or any of their parents, subsidiaries, divisions, affiliates, associated entities, business units, agents, predecessors, predecessors-in interest, successors, and successors-in-interest, which said 'Effective January 1, 2015, Bayer meters and test strips are EXCLUSIVE on Blue Cross Blue Shield of Florida' without the inclusion of an opt out notice" (the "Settlement

Class"). In the Settlement Agreement, the Parties agreed that this is a proper class definition solely for purposes of settlement. Excluded from the Settlement Class are: (1) Defendants and any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of such persons; (2) the named counsel in the Litigation and any member of their office or firm; and (3) the members of the Illinois judiciary.

6.      The Preliminary Approval Order also appointed Plaintiffs as the Class Representatives and appointed the law firm of Bock & Hatch, LLC as Settlement Class Counsel.

Class Notice

7.      Plaintiffs submitted the affidavit of _____ to demonstrate that the "Notice of Class Action and Proposed Settlement" (the "Class Notice") was sent to the members of the Settlement Class as ordered in the Preliminary Approval Order. The Court finds that the Class Notice and the process by which it was sent fully complied with the requirements of 735 ILCS 5/2-803 and due process under the Illinois and United States Constitutions, constituted the best notice practicable under the circumstances, and was due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

Objections and Opt-Outs

8.      The following _____ members of the Settlement Class filed objections to the Settlement: __. The Court has considered each of these objections carefully and has overruled them. None of these objections raised a valid concern about the

Settlement Agreement.

9.     The following persons have requested exclusion and are hereby
excluded from the Settlement Class and this case: _____.

Class Compensation

10.     Defendants have created a $12,000,000.00 settlement fund (the
"Settlement Fund") and made it available to pay Settlement Class Member Claims,
to pay incentive awards to Plaintiffs for serving as the Class Representatives, and
to pay Settlement Class Counsel's attorneys' fees and reasonable out-of-pocket
expenses (including the cost of settlement administration). Unclaimed monies in the
Settlement Fund will revert back to Defendants. Defendants shall not be
responsible for making any payments other than those specified above.

11.     As the Parties agreed in the Settlement Agreement, each member of
the Settlement Class who submits a valid Claim Form will be sent a check, the
amount of which depends on which settlement pool the Settlement Class Member
falls into. Claimants from Pool A will receive a check for $435.09 for each fax
successfully sent to them by Defendants. Claimants from Pool B will receive a check
for $65.85 for each fax successfully sent to them by Defendants. Payments are
subject to a *pro rata* reduction in the event that the claims and other payments
approved herein otherwise would exceed the total amount from the Settlement
Fund allocated to each pool. The Settlement Administrator will cause those checks
to be mailed after receiving the funds from Defendants. As agreed between the
parties, checks issued to the class members will be void 181 days after issuance and
the total amount from any and all voided checks shall be distributed to the following

Page 4 of 6

*cy pres* recipient(s), each of which meets the requirements under Illinois law (735 ILCS 5/2-807):_____.

## Awards of Incentive Award and Attorneys' Fees and Costs

12.     The Court approves and awards $15,000.00 incentive awards each to Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II, for serving as the Class Representatives in this matter. Defendants will pay those amounts from the Settlement Fund in accordance with the terms of the Settlement Agreement.

13.     The Court approves and awards attorney's fees to Settlement Class Counsel in the amount of $4,000,000.00 (one third of the Settlement Fund) plus their reasonable out-of-pocket expenses incurred in the litigation in the amount of $25,000.00. Defendants will pay those amounts from the Settlement Fund in accordance with the terms of the Settlement Agreement.  Defendants have already advanced $15,000 for notice and administration expenses pursuant to the Preliminary Approval Order.

## Releases and Dismissal

14.     All claims or causes of action of any kind by Plaintiffs and all Settlement Class Members are forever barred and released pursuant to the terms of the releases set forth in the parties' Settlement Agreement.

15.     This lawsuit is dismissed with prejudice as to Plaintiffs and all members of the Settlement Class (except that the dismissal is without prejudice as to those persons identified above who submitted valid exclusions from the Settlement Class), and without fees or costs except as provided above.

## Other Provisions

16.     The Court adopts and incorporates all of the terms of the Settlement Agreement by reference here.

17.     This Court retains continuing jurisdiction over this action, Plaintiffs, all members of the Settlement Class and Defendants to determine all matters relating in any way to this Final Judgment and Order, the Preliminary Approval Order, or the Settlement Agreement, including, but not limited to, their administration, implementation, interpretation, or enforcement.

18.     The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

19.     The Court finds that there is no just reason to delay the enforcement of or appeal from this Final Approval Order and Judgment.

Dated: _____          _____
                                  Honorable Luis Berrones

# EXHIBIT B

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | |
|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons, )<br><br>Plaintiffs, )<br><br>v. )<br><br>BAYER CORPORATION and BAYER HEALTHCARE, LLC, )<br><br>Defendants. ) | No. 16 CH 325 |

## ORDER PRELIMINARILY APPROVING CLASS
## ACTION SETTLEMENT AND CLASS NOTICE

This matter coming before the Court by stipulation of the parties and, after

review and consideration of the Settlement Agreement, a hearing held on

_____, 2016, and the presentations of counsel, and the Court being duly

advised in the premises, IT IS HEREBY ORDERED:

1.      On _____, 2016, Plaintiffs filed a Motion for Preliminary

Approval of Class Action Settlement Agreement and Notice to the Class.

2.      The Court hereby certifies the following class for settlement purposes

only, pursuant to 735 ILCS 5/2-801 and 2-802: "All persons who were sent one or

more telephone facsimile messages from January 1, 2015 through October 23, 2015,

from or on behalf of Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer

Diabetes Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care Holdings

AG, Ascensia Diabetes Care, Panasonic Healthcare Holdings Co. Ltd., Archway

Marketing Services, Inc., TMS Health, or Xerox Corp, or any of their parents, subsidiaries, divisions, affiliates, associated entities, business units, agents, predecessors, predecessors-in interest, successors, and successors-in-interest, which said 'Effective January 1, 2015, Bayer meters and test strips are EXCLUSIVE on Blue Cross Blue Shield of Florida' without the inclusion of an opt out notice" (the "Settlement Class"). Excluded from the Settlement Class are: (1) Defendants and any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of such persons; (2) the named counsel in the Litigation and any member of their office or firm; and (3) the members of the Illinois judiciary. In their Settlement Agreement, the parties have agreed that this is a proper class definition solely for purposes of settlement.

3.     The Court finds that this Settlement Class definition satisfies the requirements of 735 ILCS 5/2-801 and 2-802 in the context of the proposed settlement because: (1) the Settlement Class is so numerous that joinder of all members is impracticable; (2) there are common questions of fact or law that predominate over any questions affecting only individual members; (3) the representative party will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy.

4.     The Settlement Class is certified only for purposes of effectuating the proposed Settlement as specifically memorialized in the Settlement Agreement.  If the Settlement Agreement is terminated pursuant to its terms or for any other

2

reason, or is disapproved in a final order by this Court or any court of competent jurisdiction, then (a) this Order and all preliminary and/or final findings herein or stipulations of the Parties regarding certification of the Settlement Class shall be automatically vacated upon notice to this Court of the Settlement Agreement's termination or disapproval; (b) the above-captioned litigation will proceed as though the Settlement Class had never been certified and any related findings or stipulations had never been made and neither the Settlement Agreement, nor any of its exhibits, nor any other associated settlement document, may be used in seeking class certification; and (c) Defendants shall be deemed to have reserved all procedural and/or substantive rights as of the date of the execution of the Settlement Agreement.

5.      The Court appoints Plaintiffs, Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II, as the "Class Representatives" and appoints Bock & Hatch, LLC as "Settlement Class Counsel."

6.      The Settlement Administrator shall be CAC Services Group, LLC.

7.      Within fourteen (14) days after the later of: (i) entry of this Order, or (ii) receipt of a properly executed W-9 form and all applicable account and wire transfer information from the Settlement Administrator, Defendants will pay the costs of the Settlement Administrator in an amount not to exceed $15,000. Defendants shall be given a credit on the payment of the Settlement Fund in an amount equal to the amount advanced.

8.      Pursuant to 735 ILCS 5/2-806, the Court preliminarily approves the settlement of this action, as embodied in the terms of the Settlement Agreement, as

3

fair, reasonable, and in the best interests of all those who will be affected by it.

9.     The Settlement Agreement is incorporated by reference into this Order (with capitalized terms as set forth in the Settlement Agreement) and is hereby preliminarily adopted as an Order of this Court.

10.     The Settlement Agreement proposes notice to the Settlement Class in the form of Exhibit 2 to the Settlement Agreement and proposes to send it by U.S. mail to the mailing addresses associated with the facsimile numbers identified in this Litigation through Defendants' records.  The Court finds that this notice plan is reasonable and satisfies 735 ILCS 5/2-803 and the requirements of due process under the Illinois and United States Constitutions. The plan is approved and adopted.

11.     The Court sets deadlines and dates for the acts and events set forth in the Settlement Agreement and directs the Parties to incorporate these deadlines and dates in the Class Notice, as appropriate:

(a)     The Class Notice shall be sent on or before _____, 2016;

(b)     Requests by any Settlement Class Member to opt out of the proposed Settlement must be filed on or before _____, 2016 (45 days after notice is sent), or be forever barred. The Court shall rule on all requests for exclusion or opt outs at the fairness hearing on _____, 2016; and

(c)     Any objection or motion to intervene, including any supporting brief, must be filed in this Court and postmarked and served on Settlement Class Counsel and Defendants' counsel on or before _____, 2016 (45 days after notice is sent), or be forever barred,

All exclusion requests and objections must contain the information as

4

specified in the Settlement Agreement and must be delivered in the manner specified therein.

12.   The fairness hearing is hereby scheduled for _____, 2016, at_____, in Room C302.


Dated: _____                    _____
                                          Honorable Luis Berrones

5

# EXHIBIT C

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL
CIRCUIT LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16 CH 325 |
| v. | ) ) | |
| BAYER CORPORATION and BAYER HEALTHCARE, LLC, | ) ) ) | |
| Defendants. | ) | |

DECLARATION OF THE HONORABLE
WAYNE R. ANDERSEN (RET.)

WAYNE R. ANDERSEN, of full age, hereby declares as follows:

**A.  Background.**

1.  I served as a United States District Judge for the Northern District of Illinois for 19 years and as a state court trial judge for 7 years. During my tenure on the bench, I handled numerous complex litigations, including numerous class action cases.

2.  Prior to being appointed to the bench, I practiced law including general litigation in both federal and state courts, corporate

law, banking, probate, estate planning, domestic relations, real estate, property taxation, and bankruptcy.

3.     I have extensive experience in dispute resolution, and have conducted hundreds of settlement conferences in all types of litigation, including class actions concerning claims under the Telephone Consumer Protection Act, complex securities class actions, and employment discrimination class actions. Moreover, I have successfully mediated cases that are pending all over the Country, including many in Illinois state courts.

4.     I am filing this Declaration in connection with my role as the mediator in the above-captioned matter.

5.     I believe that the ultimate settlement that the Parties reached in this matter represents a recovery and outcome that is more than fair and reasonable to the absent class members and all parties involved.

6.     The settlement reached was the product of an adversarial, arm's length negotiation amongst experienced and knowledgeable attorneys.

**B.   Subject Mediation.**

7.   The parties in this Action retained me to serve as a mediator to facilitate settlement discussions. In my capacity as mediator, I conducted extensive settlement discussions after both sides submitted detailed mediation statements. After I reviewed the Parties' mediation statements, but before the actual mediation, I spoke, at length, with both sides concerning the unique challenges that this particular case presented. The Parties then participated in an all-day mediation session on February 2, 2016. By the end of February 2nd, the Parties had reached agreement as to the basic parameters of what I concerned to be a fair, reasonable, and adequate settlement to the absent class members, and all the parties involved.

8.   Subsequent to February 2nd mediation, the Parties continued to work out the intricacies of the agreed upon class wide settlement. The Parties then forwarded to me their agreed upon class wide term-sheet. The term-sheet that was agreed upon by the parties was consistent with the agreement they reached at the end of the February 2nd mediation and reasonably dealt with the remaining issues. As a result, it is my opinion that this is a more than fair,

reasonable and adequate settlement for the absent class members and all the parties involved.

9.     Ultimately, the negotiations led to the settlement currently being considered by the Court for approval. Below is a list of some of the material terms of the class wide settlement:

- Defendants will create a $12 million Settlement Fund for the agreed upon settlement class members;

- Settlement class members who did not enter into a marketing plan with Defendants will be eligible to receive approximately $435 per fax sent to them, and settlement class members who did enter into a marketing plan with Defendants will be eligible to receive approximately $65 per fax sent to them;

- The three class representatives will receive $15,000 class incentive payments;

- Defendants will pay up to $55,000 in out-of-pocket costs/litigation expenses that include cost of class notice;

- Attorneys will receive an amount not to exceed one-third of the entire Settlement Fund;

- Notice to the settlement class members will be sent by first class mail with a short claim form;

- Any uncashed checks will be distributed to *cy pres* organizations;

- The settlement class shall provide all of the Released Parties with a broad release as defined in the term sheet.

10.   All of these material elements of the agreed upon term sheet are more than fair, reasonable, and adequate. The $12 million fund is a fair and reasonable amount when taking into account the strength and weaknesses of this class action case. Moreover, the agreed upon relief for the entire settlement class is fair, reasonable, and adequate in this TCPA case as I understand that many of the settlement class members entered into marketing agreements with Defendants making their TCPA claims more difficult to pursue than other members of the settlement class. Additionally, the notice plan provided is the best available notice plan in that it is direct mail notice with an easy to read claim form. Furthermore, the costs and attorneys' fees of no more than one third of the settlement fund is a fair, reasonable, and adequate

amount and consistent with the many class action settlements I have mediated.

11.   I believe that the agreed upon Settlement is in the best interests of all of the parties that they avoid the burdens and risks associated with further litigation. My belief is based upon my understanding of the factual and legal issues in the case, my evaluation of the risks that the parties faced in continued litigation and trial, and my observations of the parties' conduct during the mediation process.

12.   Finally, the advocacy on both sides of the cases was excellent. The Defendants were represented by experienced and knowledgeable attorneys, including, Mark B. Blocker and Kathleen L. Carlson from Sidley Austin LLP. Plaintiffs were also represented by experienced and knowledgeable class action attorneys, including Phillip A. Bock, Tod A. Lewis, and James M. Smith.

13.   During the time that I oversaw the mediation of the case, the attorneys competently supported their respective positions with sound basis in the law and grounded in relevant facts. The attorneys were only able to reach a final agreement after extensive arm's lengths negotiations.

14.    I am available to answer any additional questions the Court may have as to this mediation and settlement.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Hon. Wayne R. Andersen

Dated:     April 22, 2016

**EXHIBIT G**

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | |
|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY & MEDICAL SUPPLY, PILL BOX WESTON, and PILL BOX II, individually and as the representatives of a class of similarly-situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> BAYER CORPORATION and BAYER HEALTHCARE, LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 16 CH 325 <br> ) <br> ) <br> ) <br> ) <br> ) |

### PLAINTIFFS' BRIEF IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

Plaintiffs Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II ("Plaintiffs"), on behalf of themselves and a class of similarly-situated persons, respectfully request that the Court approve the parties' class action settlement pursuant to 735 ILCS 5/2-806. The proposed order is submitted with this brief and marked as Exhibit A.

### I.     Preliminary Approval and Dissemination of Notice.

Plaintiffs and defendants Bayer Corporation and Bayer HealthCare LLC ("Defendants") reached a settlement resolving a controversy arising out of alleged advertisements Defendants sent by fax. On May 2, 2016, the Court held a hearing to consider the *Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class.* After considering the parties' Settlement Agreement ("Agreement") and the proposed class notice plan, the Court entered an order preliminarily approving the settlement and approving the class notice plan ("Preliminary Approval Order"). Exhibit B.

In accordance with the Court's Preliminary Approval Order, the parties caused the notice of settlement and information about claims submission to be disseminated to the class members. *See Declaration of Nancy A. Johnson Regarding the Notice Plan* attached as <u>Exhibit C</u>. Out of 3,489 class members, none objected to the settlement and none requested exclusion. *Id.*, ¶ 9. In sum, the class members universally support the settlement. The Court should approve the parties' settlement.

## II.    Background.

Plaintiffs' Class Action Complaint alleges that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending advertisements by facsimile without prior express invitation or permission or without the required opt-out notice. Plaintiffs and their attorneys investigated the relevant facts, researched the law, and contended, among other things, that Defendants are liable for sending fax advertisements to 63,171 fax numbers between January 5, 2015 and October 7, 2015. Defendants produced evidence showing that Plaintiffs each received 19 faxes. Defendants denied liability for the claims in this action, but agreed to settle all claims about the facsimiles at issue.

The parties negotiated a settlement in good faith and at arm's length through a mediation conducted by the Honorable Wayne R. Andersen (Ret.). In mediation, Plaintiffs and Defendants reached an agreement to settle the claims of the entire Class, as set forth in the Settlement Agreement, offering each member an opportunity to claim a cash payment. Defendants agreed to make $12,000,000.00 available to fund the settlement, and those funds are available to pay any and all costs associated with the settlement, including claims, fees and costs to Plaintiffs' counsel, incentive awards to each of the three named plaintiffs, and all reasonable costs of notifying the Class and administering the settlement (the "Settlement Fund").

### III.   The Settlement Terms.

The previously-approved settlement notice informed class members that they would receive a share of the Settlement Fund if they submitted a timely, valid, and approved claim. CAC Services Group, LLC ("CAC" or the "Settlement Administrator"), a professional third-party class action settlement administrator, disseminated the class notice by first class direct U.S. Mail to the class members to whom the fax notice was unsuccessful (the "Notice"). Exhibit C.

The settlement's key terms are as follows:

(a)      Class Certification. Pursuant to the parties' agreement, on May 2, 2016, the Court certified a Settlement Class pursuant to 735 ILCS 5/2-801 and 802 defined as follows: "All persons who were sent one or more telephone facsimile messages from January 1, 2015 through October 23, 2015, from or on behalf of Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care Holdings AG, Ascensia Diabetes Care, Panasonic Healthcare Holdings Co. Ltd., Archway Marketing Services, Inc., TMS Health, or Xerox Corp, or any of their parents, subsidiaries, divisions, affiliates, associated entities, business units, agents, predecessors, predecessors-in interest, successors, and successors-in-interest, which said 'Effective January 1, 2015, Bayer meters and test strips are EXCLUSIVE on Blue Cross Blue Shield of Florida' without the inclusion of an opt out notice." Excluded from the Settlement Class are (1) Defendants and any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of such persons; (2) the named counsel in the Litigation and any member of their office or firm; and (3) the members of the Illinois judiciary. Exhibit B, ¶ 2.

3

(b)     <u>Class Representation</u>. The Court appointed the three named plaintiffs as the Class Representatives and appointed Plaintiffs' attorneys, Phillip A. Bock of Bock, Hatch, Lewis & Oppenheim, LLC, as Class Counsel. <u>Id.</u>, ¶ 5.

(c)     <u>Monetary Relief to Plaintiffs and the Settlement Class</u>. Defendants have agreed to make $12,000,000.00 available to fund the settlement (the "Settlement Fund"). Settlement Agreement, <u>Exhibit D</u>, ¶ 5a. Each member of the Class who submits a timely, valid Claim Form will receive a monetary payment from the Settlement Fund.  As specified in the Agreement, the amount of the payment depends on whether a class member is in Pool A or Pool B.  Pool A consists of class members who are not affiliated with companies that have entered into a Master Promotional Program Services Agreement with Defendants to co-market Defendants' meters and test strips (the facsimiles at issue) and Pool A was allocated $4,424,900.00 of the Settlement Fund . (Exhibit A, ¶2l). Each Class member in Pool A who submits an approved claim will be sent a check for $435.09 for each fax Defendants successfully sent. (Exhibit A, ¶¶5c(i), 11). Pool B consists of class members who are affiliated with companies that entered into a Master Promotional Program Services Agreement with Defendants to co-market Defendants' meters and test strips (the facsimiles at issue) and was allocated $3,490,100.00 of the Settlement fund. (Exhibit A, ¶2m). Each Class member in Pool B that submits an approved claim will be sent a check for $65.85 for each of the faxes Defendants sent it. (Exhibit A, ¶¶5c(ii), 11).

(d)     <u>Class Notice</u>. The Settlement Administrator caused notice of the settlement to be sent to the Settlement Class by U.S. mail. <u>Exhibit C</u>, ¶¶ 5-7.

(e)     <u>Settlement Class Opt-Out and Objection Rights</u>. Each class member was given the right to be excluded from this case and the settlement by opting out of the Settlement Class within the time period set by the Court. No class members opted out of the settlement. <u>Id.</u>, ¶ 8. Each class member was given the right to object to the settlement. No class member objected to the settlement. <u>Id.</u>

(f)     <u>Release</u>. In consideration of the relief provided by the settlement, as detailed in the Settlement Agreement, the Settlement Class will release all claims that were brought or which could have been brought against Defendants relating to the fax advertisements at issue in this case. <u>Exhibit D</u>, ¶ 16.

(g)     <u>Creation and Distribution of the Settlement Fund</u>. Defendants have made the Settlement Fund available to settle this case, to pay claims, to pay the incentive awards requested for each of the named plaintiffs, and to pay attorneys' fees and expenses to Plaintiff's counsel. <u>Id.</u>, ¶ 5a. Any portion of the Settlement Fund not paid to claiming class members, to the Class Representatives, to Class Counsel, for notifying the Class, or to the third-party claims administrator shall revert to Defendants. *Id.*

(h)     <u>Incentive Award and Attorney's Fees and Costs</u>. Class Counsel requests that the Court approve the Parties' agreement to pay $15,000.00 from the Settlement Fund to each of the named plaintiffs as their incentive award for serving as a Class Representative. <u>Id.</u>, ¶ 5b. Class Counsel also requests that the Court approve Defendants' agreement to pay attorneys' fees and costs to Class Counsel equal to one third of the Settlement Fund ($4,000,000.00) plus out of pocket litigation expenses in the amount of $40,000.00, which includes the costs of administering the settlement. *Id.* Defendants do not object to these requests. *Id.* As discussed below, these amounts are consistent with the

market rate for this type of case and with what other judges in this Court and others have awarded.

## IV.     The Class was Notified about the Settlement.

The Court should finally approve the Notice because it complies with due process. In Illinois, "whether notice is to be given at all and the kind of notice which may be required are matters for a trial court's discretion." *Carrao v. Health-Care Service Corp.*, 118 Ill. App. 3d 417, 429 (1st Dist. 1983). *See Fauley v. Metropolitan Life Ins. Co.,* 2016 IL App (2d) 150236, ¶ 34. Section 2-803 of the code of Civil Procedure provides:

> Upon determination that an action may be maintained as a class action, or at any time during the conduct of the action, the court in its discretion may order such notice that it deems necessary to protect the interests of the class and the parties.

The question of what notice must be given to satisfy due process depends on the circumstances of the individual action. *Miner v. Gillette-Co.*, 87 Ill. 2d 7, 15-16 (1981).

Here, the Class Notice was sent by first class mail, and given a chance to opt out or object to the settlement. The parties prepared a settlement notice that was informative and easy to read. Exhibit C, Ex. 1 thereto. It informed the class members about the terms of the Settlement and informed them of the relevant dates (such as the objection deadline, opt out deadline, claims deadline, and the date for the fairness hearing). *Id.*

In the context of a proposed settlement, the notice need not contain every settlement term so long as it contains information on how to obtain the terms and fairly summarizes them. *GMAC Mortgage Corp. of Pennsylvania v. Stapleton*, 236 Ill. App. 3d 486, 492 (1st Dist. 1992). The Notice here satisfied all of the requirements of due process. It described the case and clearly explained the class members' rights. Exhibit C at Ex. 1. The Notice informed class members of their right to inspect the Settlement Agreement or any other pleading filed with the Court, and directed class members to call Class Counsel to obtain further information. *Id.* class members

6

also were given a chance to opt out. *Id.* The Notice contained a unique User ID and Password for class members to use when filing a claim online. *Id.* It explained that class members could object to the Settlement and gave precise instructions on how to do so. *Id.* The Notice further informed class members that Class Counsel would seek an award of attorneys' fees equal to one-third of the Settlement Fund plus out-of-pocket litigation expenses. *Id.* It identified Class Counsel and included a distinct section informing the class members how to obtain more information about the lawsuit or the Settlement. *Id.*

As ordered by the Court on December 3, 2015, the Settlement Administrator sent the court-approved Direct Notice by first class mail. Exhibit C at ¶¶ 4-5. The notice satisfied all the requirements of 735 ILCS 5/2-803 and 806.

## V.     The Class Relief is Fair, Reasonable, and Adequate.

If the Court approves the Settlement, Defendants have agreed to pay the sums claimed from the Settlement Fund. Through Class Counsel, the Class Representatives considered: (a) the benefits to the Settlement Class; and (b) the attendant risks, costs, uncertainties, and delays of litigation, including but not limited to the defenses raised by Defendants. Based on these factors, Class Representatives and Class Counsel concluded that it is in the Class's best interest to settle the action on the terms and conditions set forth in the Agreement.

### A.     The Illinois Approval Standard.

Illinois courts have consistently held that "[a] settlement compromising conflicting positions in class action litigation serves the public interest." *Langendorf v. Irving Trust Co.*, 244 Ill. App. 3d 70, 78 (1st Dist. 1992); *Security Pacific Fin. Serv. v. Jefferson*, 259 Ill. App. 3d 914, 919 (1st Dist. 1994); *The People ex. rel. Wilcox v. Equity Funding Life Ins. Co.*, 61 Ill. 2d 303, 317 (1975). Illinois courts look with great favor on settlements of litigation. *See Sims v. Tezak*,

296 Ill. App. 3d 503, 510 (1st Dis. 1998). The standard for evaluating a class settlement is whether the agreement is fair, reasonable and adequate. *People ex. rel. Wilcox,* 61 Ill. 2d at 317. This Settlement easily meets this standard.

As a preliminary matter, because a settlement represents a compromise, the trial court may not decide the merits of the case, resolve disputed issues of law, or substitute its own judgment for that of the parties. *Langendorf,* 244 Ill. App. 3d at 78. Instead, the court must view the settlement as a whole, and consider all relevant factors in assess the compromise. *Id; see also Fauley,* 2016 IL App (2d) 1163100 at ¶ 45. The reviewing court cannot alter the parties' agreement, or exercise portions it believes could be improved. *Waters v. Chicago,* 95 Ill. App. 3d 919, 924 (1st Dist. 1981); *People ex. rel. Wilcox,* 61 Ill. 2d at 319. Instead, the court must approve or disapprove the entire agreement. *Waters,* 95 Ill. App. 3d at 924. A trial court's approval of a settlement will not be overturned on appeal unless the settlement, on its face, appears so unfair as to preclude judicial approval. *Stapleton,* 236 Ill. App. 3d at 493; *see also Steinberg v. System Software Assoc.,* 306 Ill. App. 3d 157, 169 (1st Dist. 1999) (trial court's decision cannot be reversed absent "clear showing" that the court committed abuse of discretion).

In the seminal case of *City of Chicago v. Korshak,* 206 Ill. App. 3d 968 (1st Dist. 1990), the Appellate Court identified 8 factors to consider in determining whether a proposed settlement is fair, reasonable, and adequate (the "*Korshak* factors"). The *Korshak* factors are: (1) the strength of the case for plaintiff on the merits, balanced against the money or other relief offered in the settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching the settlement; (6) the reaction of the members of the class to the settlement; (7) the

8

opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Id.* at 971-72.

This Settlement should be approved based on the *Korshak* factors. The Settlement reflects a fair and reasonable compromise of the Class's claims, and provides significant monetary benefits to class members. Defendants agreed to make available $12,000,000.00 as a common fund to fund all aspects of the settlement. Each class member who submits an approved claim will receive a check for its *pro rata* share of the Settlement Fund, less attorneys' fees, expenses, and incentive payments. Additional considerations—including (1) that no Class member objected to the Settlement; (2) that Class Counsel support the Settlement; and (3) that the Parties negotiated at arm's-length—all support final approval of the Settlement.

### B. The Eight *Korshak* Factors Support the Settlement.

#### Factor 1: Strength of the case balanced against the relief offered.

Generally, the most important factor in determining whether a settlement should be approved is the comparison of the terms of the settlement with the likely results of the litigation. *Steinberg*, 306 Ill. App. 3d at 170; *Langendorf*, 244 Ill. App. 3d at 78. Here, the comparison reveals that the Settlement is well justified. The Settlement eliminates risks associated with establishing Defendants' liability, of proving the amount of recoverable damages, and winning on appeal. If not settled, the litigation could continue for years.

This settlement is very similar to a recent TCPA class action settlement that this Court approved and the Second District affirmed over objection. *See Fauley*, 2016 IL App (2d) 150236. Indeed, the fact that most class members can recover $435.09 per fax (with no cap on number of faxes), makes it likely that claiming class members will recover more than in *Fauley*. As in *Fauley*, the settlement is fair, reasonable, and in the Settlement Class's best interests

because the settlement offers each member of the Settlement Class an opportunity to claim a monetary payment without needing to possess or even remember the specific fax at issue, and all the while avoiding the costs and risks associated with further litigation against Defendants, which deny liability for the claims at issue because, among other things, Defendants contend that the faxes are not advertisements for purposes of the TCPA and because, they assert, the class members in Pool B, who received many of the faxes at issue, consented to receive the faxes.

Because the class members can claim a cash payment of their share of the Settlement Fund by completing and returning a simple claim form, this is a fair, reasonable, and adequate settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 305 (N.D. Ga. 1993) (in approving class settlement, court commented that "it is unrealistic to expect a recovery that is the equivalent of a victory by plaintiffs at trial."); *People ex. rel. Wilcox*, 61 Ill. 2d at 319 (noting that in complex litigation reasonable minds may differ about the value of settlement terms, but the test for approval is not affected by the argument that some terms could be bettered).

### Factor 2: Defendants' ability to pay.

Defendants' ability to pay was not a factor in the negotiations.

### Factor 3: Further litigation would be complex, lengthy, and expensive.

Class actions have a well-deserved reputation for complexity. *See In re Domestic Air Transportation*, 148 F.R.D. at 315 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). If this litigation continued, Defendants made clear that they would contest both class certification and the merits of the case on both factual and legal grounds, which would result in additional litigation as well as appellate practice. Not settling and proceeding with the litigation would likely mean that the case would not be resolved for many years. The Settlement avoids these sort of lengthy proceedings in favor of getting cash to the class promptly.

**Factors 4 and 6: Amount of opposition and reaction of class members.**

The fourth and sixth *Korshak* factors—the amount of opposition and the reaction of class members—are typically considered together. *Korshak*, 206 Ill. App. 3d at 973; *GMAC*, 236 Ill. App. 3d at 496. Here, the notice was disseminated to the 3,489 member class, and <u>none</u> objected or opted out. Exhibit C, ¶¶ 8-9. This is a strong indication that the Class resoundingly supports the Settlement. *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement).

The absence of objections is especially striking when compared to other class action settlements. Courts have routinely held that a low objection rate is indicative of support, and here the objections rate was zero. *See GMAC*, 236 Ill. App. 3d at 497; *Steinberg*, 306 Ill. App. 3d at 168-69; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill., Dec. 22, 2000) (acceptance rate of 99.9% of class members "is strong circumstantial evidence in favor of the settlements"); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement").

**Factor 5: The absence of collusion.**

There was no collusion. To reach the settlement, the parties participated in good faith in extensive arm's-length negotiations in mediation with the Honorable Wayne R. Andersen (Ret.). The parties thoroughly considered their options and strategies before reaching their compromise.

11

**Factor 7: The Settlement is fair and reasonable in the opinion of competent counsel.**

Class Counsel believe that the Settlement is in the best interests of the Settlement Class. Class Counsel have been involved in complex litigation for many years, they have significant trial court and appellate court experience, and they have significant class action experience, particularly in TCPA cases. They have been appointed as lead or co-lead counsel in many contested class actions and have recovered substantial monies for their clients and the class members.

Class Counsel have successfully litigated TCPA claims since 2003 and have been appointed to represent classes in upwards of 100 TCPA cases. *See, e.g., CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465; *Windmill Nursing Pavilion, Ltd. v. Res-Care Illinois, Inc.*, 09 CH 16377 (Cir. Ct. of Cook County, March 18, 2011); *CE Design v. Letrix USA, Inc.*, 06 CH 26834 (Cir. Ct of Cook County, Aug. 30, 2010); *CE Design Ltd. v. Matrix LS, Inc.*, No. 05 L 269 (Cir. Ct. of Lake County, April 16, 2010) (appeals denied); *G.M. Sign, Inc. v. 400 Freight Services, Inc.*, No. 07 CH 2772 (Cir. Ct. of Lake County, Jan. 7, 2010); *G.M. Sign, Inc. v. BackHaulLine, Inc.*, No. 07 CH 758 (Cir. Ct. of Lake County, March 31, 2009). *See also J.T.'s Frames v. The Sunhill NIC Company, Inc.*, Case No. 07 CH 436 (Cir. Ct. of McHenry County, June 5, 2011), *affirmed by* 2012 IL App (2d) 110676-U (Mar. 26, 2012); *Bridgeview v. Clark,* 09 C 5601, Memorandum Opinion and Order (N.D. Ill. Sept. 30, 2011) (Valdez, J. (certifying Rule 23(b)(3) class over defendant's objections)); *CE Design v. Cy's Crab House North, Inc., et al.*, 259 F.R.D. 135 (N.D. Ill. 2009) (Kennelly, J.) (same), *app. denied* (Sept. 9, 2009); *CE Design, Ltd. v. King Architectural Metals, Inc.*, No. 09 C 2057, 2010 WL 5146641, *6 (N.D. Ill. Dec. 13, 2010) (same), *reversed on other grounds, CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723-24 (7th Cir. 2011); *CE Design, Ltd. v. Beaty Construction, Inc.*, Case No. 07

C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) (Hibbler, J.) (same); *G.M. Sign, Inc. v. Finish*

*Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) (Kendall, J.)

(same); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 06 C 949 (N.D. Ill., Kocoras, J.) (same); *G.M.*

*Sign, Inc. v. Group C. Comm'n, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010)

(Darrah, J.) (same); *Green v. Service Master On Location Services Corp.*, No. 07 C 4705, 2009

WL 1810769 (N.D. Ill., June 22, 2009) (Hibbler, J.) (same); *Hinman v. M & M Rentals*, 545 F.

Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.) (same), petition for leave to appeal denied, June 17,

2008; *Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010)

(Kennelly, J.) (same); *Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.

Supp. 2d 894 (N.D. Ill. 2010) (Shadur, J.) (same).

In addition, class counsel has significant experience litigating cases through the appellate

process. These include ensuring that TCPA claims may be brought in Illinois courts in *Italia*

*Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350; winning affirmance of class certification in *C &*

*T Pizza*; and ensuring insurance coverage for TCPA claims in Illinois in *Valley Forge Ins. Co. v.*

*Swiderski Electronics, Inc.*, 223 Ill. 2d 352 (2006) and *Standard Mut. Ins. Co. v. Lay*, 2013 IL

114617.

Class Counsel have extensive experience with class actions generally, and with TCPA

class actions in particular. Pursuant to *Korshak*, the Court should give great weight to their

opinion that the Settlement is fair, reasonable, and adequate.

### Factor 8: The stage of proceedings and amount of discovery completed favor settlement.

Class Counsel did not agree to settle until they received sufficient information so that

they could  weigh the risks and results that could be obtained through further litigation against

the value of the settlement package. They reviewed documents, researched and evaluated the

law, and engaged in negotiations to achieve the Settlement. They conducted significant analysis enabling them to conclude that reaching a settlement is in the best interests of the parties and the Class. Under these circumstances, the stage of proceedings, and the amount of discovery completed favor approval of the Settlement.

## VI.   The Court Should Approve the Parties' Agreement on Attorneys' Fees.

If the Settlement is approved, Defendants have agreed to pay Class Counsel's attorneys' fees of one-third of the Settlement Fund, plus out-of-pocket expenses. It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000); *Fauley*, 2016 IL App (2d) 150236 at ¶¶ 24, 58-59.

In *Brundidge*, the Illinois Supreme Court held: "Awarding attorney fees to plaintiffs' counsel based on a percentage of the fund held by the court is, overall, a fair and expeditious method that reflects the economics of legal practice and equitably compensates counsel for the time, effort, and risks associated with representing the plaintiff class." 168 Ill. 2d at 244. The U.S. Supreme Court has also held that in common fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984).

In *Boeing*, the U.S. Supreme Court explained as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. ... [T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." [*Boeing*, 444 U.S. at 478-479.]

In *Scholtens v. Schneider*, 173 Ill. 2d 375 (1996), the Illinois Supreme Court cited *Boeing's* "fund as a whole" language with approval, noting that it "is now well established."

14

*Scholtens*, 173 Ill. 2d at 385. The *Scholtens* court stated, "It is now well established that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole.'" *Id.* (quoting *Boeing*, 444 U.S. at 478). Consequently, in Illinois the determination of attorneys' fees in a common benefit case is based on the fund created for the class members. *Id; see also Ryan v. City of Chicago*, 274 Ill. App. 3d 913, 924-25 (1st Dist. 1995) (approving one third fee award in $33 million settlement).

Here, the fund is $12,000,000.00. Class Counsel's request for one-third of the fund is consistent with *Ryan* and within the well-established range for attorneys' fees in TCPA cases. Illinois judges have awarded attorneys' fees of one-third of the fund in dozens of TCPA cases. *See, e.g., Fauley*; *G.M. Sign, Inc. v. Dodson*, Case No. 08 CH 4999 (Lake County, Ill. May 14, 2015) (Hoffman, J.); *CE Design Ltd. v. Matrix LS, Inc.*, Case No. 05 L 269 (Lake County, Ill. Sept. 30, 2014) (Mullen, J.) (over objection); *G.M. Sign, Inc. v. MFG.com*, Case No. 09 CH 2925 (Lake County, Ill. Jan. 24, 2014) (Berrones, J.); *Carradine Chiropractic Center, Inc. v. SmartHealth, Inc.*, Case No. 14 CH 1305 (Lake County, Ill Sept. 18, 2014) (Hoffman, J.); *Community Vocational Schools v. CBRE*, Case No. 13 CH 3520 (Lake County, Ill. March 20, 2014) (Hoffman, J.); *Italia Foods v. Sun Tours, Inc.*, Case No. 03 CH 924 (Lake County, Ill. July 13, 2012) (Hoffman, J.); *G.M. Sign, Inc. v. Backhauline*, Case No. 07 CH 758 (Lake County, Ill. Dec. 10, 2009) (Hoffman, J.); *Eclipse v. U.S. Compliance*, Case No. 03 CH 922 (Lake County, Ill Dec. 23, 2008) (Hoffman, J.); *Byer Clinic of Chiropractic, Ltd. v. The Lensink Agency*, Case No. 2015 CH 11752 (Cook County, Ill. Jan. 4, 2016) (Flynn, J.); *Irish Sisters, Inc. v. Crown Mortgage, Inc.*, Case No. 09 CH 10688 (Cook County, Ill. Dec. 1, 2015) (Flynn, J.); *William P. Sawyer, M.D. v. Stericycle, Inc.*, 15 CH 7190 (Cook County, Ill. Aug. 27, 2015) (Martin, J.);

*Acuity Ins. Co. v. Blackhawk Paving, Inc.*, Case No. 08 CH 35830 (Cook County, Ill. Oct. 16, 2014) (Atkins, J.); *Windmill Nursing Pavilion, Ltd. v. Res-Care Illinois, Inc.*, Case No. 09 CH 16377 (Hall, J.); *Truck Insurance Exchange v. Cy's Crabhouse North, Inc.*, Case No. 10 CH 6130 (Cook County, Ill. Apr. 23, 2014) (Allen, J.); *Windmill Nursing Pavilion, Ltd. v. Gornick's Auto Rebuilding, Inc.*, Case No. 09 CH 15975 (Cook County, Ill. Feb. 26, 2014); *CE Design Ltd. v. Letrix USA, Inc.*, Case No. 06 CH 26834 (Cook County, Ill. March 27, 2012) (Cohen, J.); *Pekin Ins. Co. v. XData Solutions, Inc.*, Case No. 09 CH 15303 (Cook County, Ill. Dec. 16, 2011) (Palmer, J.); *Rob Lynn Enters., Inc. v. Competitive Door & Supply Co.*, Case No. 09 CH 19862 (Cook County, Ill. Nov. 16, 2011) (Quinn, J.); *Tree Care Enters., Inc. v. Millennium Stone Crete Technologies, Inc.*, Case No. 10 CH 3343 (Cook County, Ill. Sept. 30, 2011) (Quinn, J.); *Rob-Lynn Enters., Inc. v. Taste of India, Inc.*, Case No. 09 CH 17570 (Cook County, Ill. Sept. 18, 2011) (Cohen, J.); *Quality Mgmt. and Consulting Servs., Inc. v. Blackhawk Paving, Inc.*, Case No. 08 CH 14373 (Cook County, Ill. Aug. 24, 2011) (Quinn, J.); *Brodsky v. NIP Group, Inc.*, Case No. 08 CH 22051 (Cook County, Ill. Jul. 25, 2011) (Pantle, J.); *DeRose Corp. v. Goyke Health Ctr.*, Case No. 06 CH 6681 (Cook County, Ill. Dec. 11, 2008) (Rochford, J.); *Tabass v. Castle Screen Print Corp.*, Case No. 04 L 1394 (DuPage County, Ill. Dec. 10, 2008); *Mixon Insurance Agency, Inc. v. Taylorville Chiropractic Clinic, Ltd.*, Case No. 09 L 509 (St. Clair Cty., Ill. Sept. 24, 2015).

Moreover, it is consistent with the percentage the Illinois Supreme Court and Appellate Court have affirmed in other common fund cases. *See, e.g., Bishop v. Burgard*, 198 Ill. 2d 495 (2002); *Wajnberg v. Wanglueck*, 2011 IL App (2d) 110190; *Schrempf, Kelly, Napp & Darr, Ltd. v. Carpenters' Health and Welfare Trust Fund*, 2015 IL App (5th) 130413; *Stevens v. Country Mut. Ins. Co.*, 387 Ill. App. 3d 796 (4th Dist. 2008).

16

No class member has objected to the fees. Courts have recognized the lack of objection from members of the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.")

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the federal court of appeals concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here . . . the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the Defendant want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

Here, as demonstrated above, the Settlement Agreement's attorneys' fees and expenses provision is reasonable and proper under well-established legal precedent. The Court should permit the parties to settle on their agreed terms.

The Court should approve Defendant' agreement to pay Class Counsel's attorneys' fees and expenses as requested.

**VII.   The Settlement Provides that each Plaintiff could be Paid an Incentive Payment for Services Rendered as a Class Representative.**

Defendants have agreed not to object to payments of $15,000.00 to each of the named plaintiffs from the Settlement Fund as an incentive payment for their services on behalf of the Class. Illinois courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *See GMAC, supra*, 236 Ill. App. 3d at 497 (noting that incentive awards "are not atypical class action cases (e.g. *Bryan v. Pittsburgh Plate Glass Co.* (W.D. Pa. 1973), 59 F.R.D. 616 ($17,500 award to class representatives)) and serve to encourage the filing of class action suits."). The requested award of $15,000 is within the market rate in this type of case. *See e.g., Fauley,* 2016 IL App (2d) 150236, ¶ 15 ("Each class representative here will receive an incentive award of $15,000"); *Matrix* ($25,000 to lead plaintiff over objection on this topic as well); *Lensink* ($15,000); *Stericycle* ($15,000 each to two representatives); *Res-Care* ($15,000); *Truck Insurance Exchange* ($50,000); *Gornick's Auto Rebuilding* ($15,000); *Taylorville* ($15,000); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representative plaintiffs).

Class action suits conserve judicial and litigant resources. *GMAC*, 236 Ill. App. 3d at 497, *citing* C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The Class Representatives here are no exception. But for

their initiative, the benefits available to all class members would not have been realized. Many people refuse to participate as class representatives, fearing ridicule and attack. Without class members like Plaintiffs willing to come forward and face attacks from Defendants and people who might objector to the settlement, class actions are impossible. The Court should approve the incentive payments as agreed.

## VIII.   Conclusion.

The Court should approve the Settlement as fair, reasonable, and adequate and in the best interests of the settling parties and the Class. The parties' proposed order is submitted with this brief as Exhibit A.

Respectfully submitted,

PRESSMAN, INC. d/b/a PILL BOX
PHARMACY & MEDICAL SUPPLY,
PILL BOX WESTON, and PILL BOX
II, individually and as the
representatives of a class of similarly-
situated persons,

_____
One of their attorneys

Phillip A. Bock
Tod A. Lewis
David M. Oppenheim
James M. Smith
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Attorney No. 44533

**EXHIBIT H**

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

PRESSMAN, INC. d/b/a PILL BOX )
PHARMACY & MEDICAL SUPPLY, PILL )
BOX WESTON, and PILL BOX II, )
individually and as the representatives of a )
class of similarly-situated persons, )
                                                   )
Plaintiffs, )
                                                   )
v. )
                                                   )
BAYER CORPORATION and BAYER )
HEALTHCARE, LLC, )
                                                   )
Defendants. )

**F I L E D**

JUL 1 5 2016

*Keith Brin*
**CIRCUIT CLERK**

No. 16 CH 325

## FINAL APPROVAL ORDER AND JUDGMENT

The parties' proposed class action settlement coming before the Court for a

fairness hearing on  July 15, 2016, at 9:15 a.m. in Room C302 of the Circuit Lake

County, Illinois, in Waukegan, Illinois, at which all persons were given an

opportunity to be heard, the Court considering the submissions of the Parties,

including Plaintiffs' Motion for Final Approval of Class Action Settlement, the

statements of counsel, and the fairness of the settlement's terms, **IT IS HEREBY**

**ORDERED THAT:**

1.     This Court grants final approval of the Settlement Agreement,

including, but not limited to, the releases therein, and finds that the Settlement is

in all respects fair, reasonable, and adequate, and in the best interests of all those

affected by it. Any timely objections that were filed have been considered and are

overruled. Accordingly, this Final Judgment and Order binds all members of the

Settlement Class who did not opt out.

2.     This Court has jurisdiction over Plaintiffs, Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II ("Plaintiffs"), the members of the Settlement Class, Defendants, Bayer Corporation and Bayer Healthcare, LLC ("Defendants), and the claims asserted in this lawsuit.

3.     This Court finds that the Parties entered into the Settlement Agreement in good faith, following arm's-length negotiations, and that it was not collusive.

## Class Certification

4.     On April 29, 2016, pursuant to 735 ILCS 5/2-801 and 2-802, the Court entered an order entitled, "Order Preliminarily Approving Class Action Settlement and Class Notice" (the "Preliminary Approval Order").

5.     The Preliminary Approval Order certified the following class solely for purposes of settlement: "All persons who were sent one or more telephone facsimile messages from January 1, 2015 through October 23, 2015, from or on behalf of Bayer Corporation, Bayer HealthCare LLC, Bayer AG, Bayer Diabetes Care, Ascensia Diabetes Care US, Inc., Ascensia Diabetes Care Holdings AG, Ascensia Diabetes Care, Panasonic Healthcare Holdings Co. Ltd., Archway Marketing Services, Inc., TMS Health, or Xerox Corp, or any of their parents, subsidiaries, divisions, affiliates, associated entities, business units, agents, predecessors, predecessors-in interest, successors, and successors-in-interest, which said 'Effective January 1, 2015, Bayer meters and test strips are EXCLUSIVE on Blue Cross Blue Shield of Florida' without the inclusion of an opt out notice" (the "Settlement

Class"). In the Settlement Agreement, the Parties agreed that this is a proper class definition solely for purposes of settlement. Excluded from the Settlement Class are: (1) Defendants and any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of such persons; (2) the named counsel in the Litigation and any member of their office or firm; and (3) the members of the Illinois judiciary.

6.      The Preliminary Approval Order also appointed Plaintiffs as the Class Representatives and appointed the law firm of Bock & Hatch, LLC as Settlement Class Counsel.

## Class Notice

7.      Plaintiffs submitted the *Declaration of Nancy A. Johnson Regarding The Notice Plan* to demonstrate that the "Notice of Class Action and Proposed Settlement" (the "Class Notice") was sent to the members of the Settlement Class as ordered in the Preliminary Approval Order. The Court finds that the Class Notice and the process by which it was sent fully complied with the requirements of 735 ILCS 5/2-803 and due process under the Illinois and United States Constitutions, constituted the best notice practicable under the circumstances, and was due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

## Objections and Opt-Outs

8.      No members of the Settlement Class filed objections to the Settlement.

9.      No member of the Settlement Class requested exclusion.

## Class Compensation

10.    Defendants have created a $12,000,000.00 settlement fund (the "Settlement Fund") and made it available to pay Settlement Class Member Claims, to pay incentive awards to Plaintiffs for serving as the Class Representatives, and to pay Settlement Class Counsel's attorneys' fees and reasonable out-of-pocket expenses (including the cost of settlement administration). Unclaimed monies in the Settlement Fund will revert back to Defendants. Defendants shall not be responsible for making any payments other than those specified above.

11.    As the Parties agreed in the Settlement Agreement, each member of the Settlement Class who submits a valid Claim Form will be sent a check, the amount of which depends on which settlement pool the Settlement Class Member falls into. Claimants from Pool A will receive a check for $435.09 for each fax successfully sent to them by Defendants. Claimants from Pool B will receive a check for $65.85 for each fax successfully sent to them by Defendants. Payments are subject to a *pro rata* reduction in the event that the claims and other payments approved herein otherwise would exceed the total amount from the Settlement Fund allocated to each pool. The Settlement Administrator will cause those checks to be mailed after receiving the funds from Defendants. As agreed between the parties, checks issued to the class members will be void 181 days after issuance and the total amount from any and all voided checks shall be distributed to the following *to be determined* *cy pres* recipient(s) each of which meets the requirements under Illinois law (735 ILCS 5/2-807): _____.

## Awards of Incentive Award and Attorneys' Fees and Costs

12.     The Court approves and awards $15,000.00 incentive awards each to Pressman, Inc. d/b/a Pill Box Pharmacy & Medical Supply, Pill Box Weston, and Pill Box II, for serving as the Class Representatives in this matter. Defendants will pay those amounts from the Settlement Fund in accordance with the terms of the Settlement Agreement.

13.     The Court approves and awards attorney's fees to Settlement Class Counsel in the amount of $4,000,000.00 (one third of the Settlement Fund) plus their reasonable out-of-pocket expenses incurred in the litigation in the amount of $25,000.00. Defendants will pay those amounts from the Settlement Fund in accordance with the terms of the Settlement Agreement. Defendants have already advanced $15,000 for notice and administration expenses pursuant to the Preliminary Approval Order.

## Releases and Dismissal

14.     All claims or causes of action of any kind by Plaintiffs and all Settlement Class Members are forever barred and released pursuant to the terms of the releases set forth in the parties' Settlement Agreement.

15.     This lawsuit is dismissed with prejudice as to Plaintiffs and all members of the Settlement Class (except that the dismissal is without prejudice as to those persons identified above who submitted valid exclusions from the Settlement Class), and without fees or costs except as provided above.

## Other Provisions

16.     The Court adopts and incorporates all of the terms of the Settlement

Agreement by reference here.

17. This Court retains continuing jurisdiction over this action, Plaintiffs, all members of the Settlement Class and Defendants to determine all matters relating in any way to this Final Judgment and Order, the Preliminary Approval Order, or the Settlement Agreement, including, but not limited to, their administration, implementation, interpretation, or enforcement.

18. The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

19. The Court finds that there is no just reason to delay the enforcement of or appeal from this Final Approval Order and Judgment.

Dated: _____

Honorable Luis Berrones

**EXHIBIT I**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NEUROCARE INSTITUTE OF CENTRAL )
FLORIDA, P.A., a Florida professional )
association, individually and as the )
representative of a class of similarly- )
situated persons, )
)                    No.: 6:13-cv-1228-GAP-DAB
Plaintiff, )
)                    Judge Gregory A. Presnell
v. )
)
HEALTHTAP, INC., )
)
Defendant. )

## UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT
## OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
## AWARD OF ATTORNEYS' FEES

Plaintiff, Neurocare Institute of Central Florida, P.A. ("Plaintiff"), on behalf

of itself and the settlement class of similarly-situated persons ("Settlement Class" or

"Class"), requests that the Court enter an order finally approving the parties'

Settlement Agreement ("Agreement") and awarding attorneys' fees to Class

Counsel. The proposed *Final Approval Order and Judgment of Classwide*

*Settlement* is attached hereto as <u>Exhibit A</u>.

## I.    Preliminary approval and dissemination of notice.

Upon consideration of Plaintiff's *Unopposed Motion for Preliminary Approval*

*of Class Action Settlement and Notice to the Class* (Doc. 75), the Agreement, and

proposed plan of notice, the Court entered the *Order Preliminarily Approving Class*

*Action Settlement and Approving Class Notice*. (Doc. 82).  In accordance with that

Order, the agreed upon settlement administrator caused the class notice to be sent to the Class by publication in both print form and online through banner ads. <u>Exhibit B</u>, Declaration of Tony Dang re: Notice Procedures. No members of the Class objected to the Settlement or requested to be excluded from the Settlement. (Doc. 85). Moreover, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (b) ("CAFA"), Defendant notified the appropriate state and federal officials of this Settlement Agreement. <u>Exhibit C</u>, Affidavit of Mailing of CAFA Notice. Those officials did not object to any terms of the Settlement Agreement.

## II.  Background and summary of settlement.

Plaintiff filed this case alleging that defendant, Healthtap, Inc. ("Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by faxing advertisements to Plaintiff and a class of similarly-situated persons without their prior express invitation or permission, and without including a proper opt-out notice. Jeffrey Pollard, M.D. was initially named as a defendant, but was dismissed by stipulation pursuant to the terms of the Agreement. (Doc. 80).

There is another class action lawsuit against Defendant in the Northern District of Illinois entitled *Florence Mussat, M.D., S.C. v. HealthTap, Inc.*, No. 1:13-cv-07522 ("Mussat litigation"). The Mussat litigation is stayed, and the plaintiff in that case agreed to continue the stay pending this Court's determination on the fairness of the Settlement.

Defendant has vehemently denied Plaintiff's allegations throughout this litigation as well as the allegations contained in the Mussat litigation. Defendant

2

continues to deny liability, but agrees that it is desirable that the claims alleged in this action be settled on the terms and conditions set forth in the Agreement. Settling on these terms allows the Parties to avoid further expense, uncertainty, and potentially protracted litigation, and to resolve all claims that have been or could have been asserted by Plaintiff and the Settlement Class in this action.

Through discovery, Plaintiff learned that Defendant hired a fax broadcasting company to send fax advertisements to as many as 250,000 Settlement Class members during the time period of January 1, 2011 through December 31, 2012. Plaintiff contends that Defendant is liable for violating the TCPA by sending these faxes. However, Defendant maintains that there are no transmission records to prove the content of the faxes, the identities of the recipients, or the total number of faxes sent.

Pursuant to the terms of the Agreement, Plaintiff conducted confirmatory discovery to verify Defendant's representations regarding the size of the Settlement Class, Defendant's ability to identify Settlement Class members, Defendant's financial condition, when Defendant ceased sending fax advertisements, and the value of the non-monetary relief available to Settlement Class members. Plaintiff's confirmatory discovery efforts included: [1] obtaining a sworn declaration from Healthtap's General Counsel regarding its business operations, faxing activities, and financial status; [2] issuing and receiving responses to written requests for production of documents; and [3] conducting a deposition of Defendant's designated representative. Confirmatory discovery has not revealed any information leading

3

Plaintiff to believe that Defendant has made any misrepresentations that materially affect either party's position with regard to the Settlement.

The Agreement was reached through good-faith, arm's length discussions, including a mediation conducted by the Hon. William J. Cahill (Ret.) of JAMS. The Settlement is based on a mediator's proposal authored and proposed by Judge Cahill after learning of the strengths and weaknesses of both parties before and during the course of a day-long mediation session. Exhibit D, Declaration of the Honorable William Cahill (Ret.) Regarding Mediation.

Without admitting or conceding fault or liability, Defendant agreed to settle this case on the terms set forth in the Agreement. Pursuant to the Agreement, Defendant will offer Settlement Class members a choice between two benefits: [1] a cash payment of up to $75; or [2] five months of HealthTap's Premium Service (valued at $495) at no charge. Doc. 75-1, ¶4. Defendant agreed to make $500,000 available to pay Settlement Class members who choose to receive a cash benefit. *Id.*, ¶4(a). Plaintiff believes that Defendant's valuation of its Premium Service is reasonable based on the confirmatory discovery conducted pursuant to the Settlement, including the deposition of Defendant's designated representative. Benefits will be provided to Settlement Class members who submit timely and valid claim forms. Additionally, the Settlement provided that Defendant would pay up to $225,000 in settlement administration costs due to insure the best notice is provided to Settlement Class members under the circumstances. Doc. 75-1, ¶5.

If finally approved, the Settlement will resolve this action as well as the

*Mussat* litigation. Plaintiff and Defendant reached the Agreement after reviewing and analyzing the legal and factual issues presented by this action, the risks and expenses involved in pursuing the lawsuit to conclusion, the likelihood of protracted litigation, the costs, and the possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, Plaintiff and Defendant agreed to and executed the Agreement.

The key terms of the Agreement are as follows:

(a)    <u>Certification of a Settlement Class</u>. The Parties stipulated to certification pursuant to Fed. R. Civ. P. 23 (c) (3) of the Settlement Class defined as follows: "All persons or businesses who, between January 1, 2011 and December 31, 2012, were sent facsimiles by or on behalf of HealthTap that described services offered by HealthTap." Doc. 75-1, ¶2. Excluded from the Settlement Class are HealthTap, any parent, subsidiary, affiliate or controlled person of HealthTap, as well as the officers, directors, agents, servants, or employees of HealthTap (including Jeffrey Pollard, M.D.), and the immediate family members of such persons, the named counsel in this litigation, any member of their office or firm, any licensed insurance company, and the members of the federal judiciary. Doc. 82, ¶1. On June 12, 2014, this Court entered an order certifying the Settlement Class for settlement purposes only. *Id.*

(b)    <u>Class Counsel and Representative Plaintiffs</u>. Plaintiff, Neurocare Institute of Central Florida, and Florence Mussat, M.D, the

plaintiff in the *Mussat* Litigation, were appointed as the Class Representatives. Doc. 82, ¶2. Phillip A. Bock, Richard J. Doherty, and James M. Smith of Bock & Hatch, LLC were appointed Class Counsel, and Ryan M. Schmidt of the Law Offices of Jon B. Coats, Jr., P.A., was appointed as Additional Class Counsel. *Id.*

    (c)    <u>Monetary Relief to the Members of the Settlement Class</u>. Defendant agreed to offer Settlement Class members a choice between two Settlement Benefits: [a] a cash payment of up to $75; or [b] five months of HealthTap's Premium Service (valued at $495) at no charge and with no further obligation. Doc. 75-1, ¶4(a). Defendant will make up to $500,000 available for those class members who want the cash benefit as opposed to the Premium Service benefit. *Id.* The Premium Service will consist of a cloud-based patient relationship management and peer consultation system. *Id.*, ¶4(b). Benefits will be paid or provided to Settlement Class Members who submit timely and valid Claim Forms. *Id.*, ¶4.

    (d)    <u>Class Notice and Claims Administration</u>. The Settlement Class was notified about the settlement by publication on June 21 and July 15, 2014, as ordered by the Court, by publishing the notice in *People* magazine and *Internal Medicine News*. <u>Exhibit B</u>. Internet Notice was also published through banner ads on various healthcare websites. *Id.* The published notice informed Settlement Class members that they could opt out or remain in the Settlement Class, and included instructions about obtaining a claim form and

additional information about the lawsuit. *Id.*, Ex. B.  Class Counsel retained

the services of KCC, LLC, a professional third-party settlement

administrator, to administer the notice, receive and process claims, and issue

checks for the payments to Settlement Class members.  <u>Exhibit B</u>.

Defendant provided for payment of the notice and settlement administrator,

which was agreed not to exceed $225,000.  Doc. 75-1, ¶5.

(e)     <u>Settlement Class Opt-Out Rights</u>.  Each Settlement Class

member was given the opportunity to seek exclusion from the Settlement by

opting out of the Settlement Class.  No Settlement Class members chose to be

excluded.  Doc. 85.

(f)     <u>Settlement Class Objection Rights</u>.  Each Settlement Class

member was given the opportunity to object to the Settlement by filing an

objection with the Court and serving it upon Class Counsel.  No Settlement

Class members objected.

(g)     <u>Release</u>. In consideration of the relief provided by the

Settlement, Settlement Class members who did not opt out will release all

claims that were brought or could have been brought, as defined in the

Settlement Agreement, in this action against Defendant about its faxes sent

between January 1, 2011 and December 31, 2012 that describe services

offered by HealthtTap.  Doc. 75-1, ¶16.

(h)     <u>Incentive Award and Attorney's Fees and Costs</u>. At the final

approval hearing, Class Counsel will ask the Court to approve an award of

7

$10,000.00 to Plaintiff and Mussat for serving as the Class Representatives. Doc. 75-1, ¶ 10. Class Counsel will apply to the Court to approve an award of attorney's fees, inclusive of expenses, in the amount of $400,000.00. *Id.*, ¶ 9. Defendant has agreed to pay these amounts and does not object to these requests. *Id.*, ¶ 9, 10.

## III. The Settlement Class was notified about the settlement.

Rule 23 (e) (1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Orders, Plaintiff caused the notice to be published to the Class members. Exhibit B.

On June 12, 2014, this Court ordered that the Settlement Class members receive notice of this Settlement by publication in *People* and *Internal Medicine News* as well as in banner ads on a variety of healthcare websites. (Doc. 82, ¶ 6). In this case, notice by publication is the best practicable notice available. Defendant has represented, and Plaintiff has confirmed through confirmatory discovery, that there are no transmission records to prove the content of the faxes, the identities of the recipients, or the total number of faxes sent. Therefore, it is impossible to give direct notice to the Settlement Class. Plaintiff explained this situation when it

presented the Settlement to the Court, and also provided a detailed plan to provide the best publication notice that was strategically geared toward reaching the Settlement Class. Doc. 75. As a result, the Court was correct in ordering notice by publication. This method of notice comports with the due process obligations under Rule 23 and is the best method of notice available.

Moreover, the content of the parties' notice complied with Rule 23 (c) (2) (B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The long form class notice available to Settlement Class members upon request stated all of those things. *Id.*, Ex. A.

Further, the Claim form at issue here was an easy to read and understand 2-page form. *Id.*, Ex. C. Each Settlement Class member merely had to provide their contact information, verify ownership of the subject fax number during the period of January 1, 2011 to December 31, 2012, attest that they received an unsolicited fax from Defendant, and select whether they wish to receive cash or Premium Service benefits. *Id.* The Settlement Class members did not have to provide copies of the subject fax. The easy to read and understand claim form has prompted 4,237 claims. A claims validation process undertaken by the third-party settlement administrator

is presently underway, but has already yielded 1,167 valid claims and counting.

## IV.     The Court should approve the Settlement.

### A.     Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and
adequate." Fed. R. Civ. P. 23 (e) (1) (C); *see also Bennett v. Behring Corp.*, 737 F.2d
982, 986 (11th Cir. 1984); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240
(11th Cir. 2011). It is well-established that there is an overriding public interest in
settling and quieting litigation. *See Bennett*, 737 F.2d at 986 ("[O]ur judgment is
informed by the strong judicial policy favoring settlement as well as by the
realization that compromise is the essence of settlement."). "There is an overriding
public interest in favor of settlement, particularly in class actions that have the
well-deserved reputation as being most complex." *Access Now, Inc. v. Claire's
Stores, Inc.*, No. 00-14017CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002),
*citing Cotton v. Hilton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

### B.     The six *Bennett* factors support the settlement.

In determining whether a proposed settlement is "fair, adequate and
reasonable," the Eleventh Circuit in *Bennett* identified the following factors: (1) the
likelihood of success at trial; (2) the range of possible recovery; (3) the point on or
below the range of possible recovery at which a settlement is fair, adequate and
reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance
and amount of opposition to the settlement; and (6) the stage of proceedings at
which the settlement was achieved. *Bennett*, 737 F.2d at 986. Here, these factors
show the settlement should be approved.

10

**Factors 1 and 2: The likelihood of success at trial and the range of possible recovery.**

The comparison of the likelihood of success at trial and the range of possible recovery together reveals that the Settlement is well justified. The merits of the case for Plaintiff were weakened due to the fact Defendant did not maintain records regarding the class list, or detailed transmission records of the faxes that were sent. However, Plaintiff's case was strong in that Defendant hired a fax broadcasting company to send fax advertisements to as many as 250,000 Settlement Class members. Prior to settlement discussions, Defendant represented that there were no transmission records to prove the content of the faxes, the identities of the recipients, or the total number of faxes sent. In response to Defendant's assertions, Plaintiff conducted confirmatory discovery and verified Defendant's representations.

Despite these evidentiary shortcomings, Defendant agreed to settle this case. Under the Settlement, Settlement Class members who submitted timely and valid claims had a choice between two benefits: [1] a cash payment of up to $75; or [2] five months of HealthTap's Premium Service (valued at $495) at no charge. Doc. 75-1, ¶4. Defendant agreed to make $500,000 available to pay Settlement Class members who choose to receive a cash benefit. *Id.*, ¶4(a). The TCPA allows for damages of $500 per fax sent by Defendant (or up to $1,500 if the Court holds Defendant willfully violated the TCPA). In light of the evidentiary barriers to proving the identities of the Settlement Class members and the number of faxes Defendant

11

sent, the Settlement offers an excellent result.

### Factor 3: The point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable.

Settlement Class members who submitted timely and valid claims have a choice between two benefits: [1] a cash payment of up to $75; or [2] five months of HealthTap's Premium Service (valued at $495) at no charge. Doc. 75-1, ¶4. The Settlement was negotiated with the assistance of the Honorable William Cahill (Ret.) of JAMS, who actually proposed these terms in his mediator's proposal. Exhibit D. Judge Cahill is an experienced mediator and has mediated numerous class actions arising under the TCPA. *Id.* Prior to the mediation Defendant raised genuine concerns as to its financial viability to adequately fund a class action settlement. Additionally, there was no insurance policy that Defendant could utilize to pay for a settlement or judgment. With the TCPA allowing for damages of $500 and Defendant sending potentially 250,000 unsolicited faxes, Defendant would not be able to put up a common fund of $125 million. Defendant is a young company that is still struggling to make a profit and there is no guarantee that Defendant will continue to operate in the future. Plaintiff pursued confirmatory discovery regarding Defendant's financial viability and were able to determine that the terms of this Agreement is an excellent result for the Class when considering Defendant's financial viability and lack of insurance assets to pay for a settlement.

### Factor 4: The complexity, expense and duration of litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  This case is no exception.  Further litigation of this case would require a significant commitment of time and financial resources. In addition, in the absence of a settlement the case will proceed through lengthy and expensive pre-trial motion practice, and eventually trial. Given the nature of the case, it is likely that all post-trial appellate rights would be exercised. The Settlement avoids the uncertainty, length of time and high costs associated with continuing this hard-fought litigation. The Court should finally approve the Settlement because it will minimize the inevitable costs of future litigation of this matter.

### Factor 5: The substance and amount of opposition to the settlement.

There has been no opposition to this settlement. No Settlement Class member objected. Doc. 85. Additionally, no governmental entity objected to this settlement after receiving CAFA notice.

### Factor 6: The stage of proceedings at which the settlement was achieved.

The stage of proceedings and amount of discovery supports final approval. The members of the Settlement Class have been notified by publication because their identities could not be determined.  Plaintiff has conducted confirmatory discovery to verify Defendant's representations regarding the size of the Settlement Class, Defendant's ability to identify Settlement Class members, Defendant's financial condition, when Defendant ceased sending fax advertisements, and the

value of the non-monetary relief available to Settlement Class members.  The

parties have clearly compiled the necessary discovery, and exchanged documents

and data sufficient for Plaintiff and its attorneys to evaluate the strength of this

case.

**V.    The Court should approve Defendant's agreement to pay attorneys' fees and costs to Class Counsel.**

Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiff requests that the

Court approve Defendant's agreement to pay attorneys' fees and costs to Class

Counsel.  The Settlement provides that Class Counsel will be paid $400,000.00 to

cover their attorneys' fees and expenses.  Doc. 75-1, ¶9. Class Counsel, Additional

Class Counsel, and counsel for Mussat have incurred $372,483.50 in professional

fees and $14,325.98 in expenses.  <u>Exhibit E</u>.  As a result, their modest fee award

should be approved.

The cash value of the settlement alone is significant: $1,145,000.  This

consists of $500,000 for cash relief; $20,000 for class incentive awards; $225,000 in

class notice benefit; and $400,000 in attorney fee and expense awards. Moreover,

the $1,145,000 figure does not take into account the value of the benefit offered by

HealthTap's Premium Service, which is valued at $495 each. As shown below, the

attorneys' fees requested are well within the acceptable parameters for any such

request.

Because Class Counsel's fees and expenses will not be taken from a common

fund, their requested award can be appropriately analyzed based on their lodestar.

*See Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir.

1991). To calculate the lodestar, the Court "must first determine the number of hours reasonably spent . . . on the matter, then multiply those hours by an hourly rate the court deems reasonable for similarly complex non-contingent work." *Id.* at 772. The Court can then use a multiplier to adjust the figure based on factors such as contingency and the quality of the work performed. *Id.* The reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth.*, 836 F.2d 1292, 1299 (11th Cir. 1988).

"Whether the district court uses the lodestar or the common-fund method, [it] should apply the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*" *Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. Appx. 168, 172 (11th Cir. 2008); *Perez v. Asurion Corp.*, 06-20734-CIV, 2007 WL 2591180, *3 (S.D. Fla. Aug. 8, 2007), *citing Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *rev'd on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 90 (1989). The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional

15

relationship with the client; (12) awards in similar cases. *Perez*, 2007 WL 2591180, at *3.

As demonstrated below, consideration of the *Johnson* factors demonstrates the reasonableness of the time spent by Class Counsel litigating this matter and their hourly rate. Factors 7 and 11, the time limitations imposed by the client and the nature and length of the client relationship, have been omitted as they are not relevant in this situation.

> **Factors 1, 2, and 3: The time and labor required, the difficulty of the questions involved, and the skill required to perform the legal service properly.**

Class Counsel, Additional Class Counsel, and counsel for Mussat expended 772.8 hours litigating this case. Exhibit E. In order to achieve the results obtained for the Settlement Class, Class Counsel cleared substantial litigation hurdles. The difficulty presented by these hurdles not only justifies the time expended, but also illustrates Class Counsel's skill in overcoming them.

First, Defendant filed a motion to dismiss that attacked Plaintiff's claims on multiple grounds. (Doc. 34). Defendant argued Plaintiff's Complaint should be dismissed because the faxes were not advertisements and Defendant had eliminated Plaintiff's standing to bring the case on behalf of the Settlement Class through an offer of judgment for its individual claims. *Id.* Plaintiff defeated Defendant's motion to dismiss. (Doc. 68).

Defendant also attempted to stay discovery pending ruling on their motion to dismiss. (Doc. 35). Class Counsel was also successful in defeating the stay and kept discovery open for several months before the Court ruled on Defendant's motion.

16

(Doc. 53).  While Class Counsel were conducting discovery in this case, the plaintiff in the Mussat litigation sought to have their case transferred to this Court for consolidation, but their motion was denied by the Judicial Panel on Multidistrict Litigation.  (Doc. 77).

While conducting discovery and litigating the motion to transfer, Class Counsel were also engaged in extensive settlement discussions with Defendant. These discussions eventually resulted in this Settlement, which required Class Counsel to pursue substantial confirmatory discovery to confirm certain representations made by Defendant in negotiating the Settlement.  (Doc. 75-1, ¶18).

As demonstrated above, Class Counsel overcame substantial difficulties in achieving this Settlement.  The issues involved in litigating these hurdles were complex and required a considerable amount of skill on Class Counsel's part to achieve these results.  Class Counsel, Additional Class Counsel, and counsel for Mussat spent 772.8 hours litigating this case, resulting a lodestar of $372,483.50. After deduction of $14,325.98 in expenses from the $400,000 fees and costs number already preliminarily approved by this Court, is therefore requesting $385,674.02 in attorneys' fees.  Exhibit E.   Consideration of the amount of time, the level of difficulty, and the skill required to achieve this Settlement clearly support Class Counsel's requested fee award.

### Factors 4 and 11: Preclusion of other employment by the attorney due to acceptance of the case and the undesirability of the case.

The hours spent by Class Counsel prosecuting this case necessarily precluded them from pursuing some other areas of employment.  In addition to the hours

devoted to working on the case, Class Counsel made multiple trips to California, once for mediation and again to take Defendant's corporate deposition.  Litigation occurred in this Court, the Northern District of Illinois and before the Judicial Panel for Multidistrict Litigation.  Moreover, the claims asserted by Plaintiff and the Settlement Class are fraught with potential defenses, several of which needed to be overcome to achieve this Settlement.  Class Counsel took a substantial risk that the case would not be suitable for class treatment.  Nevertheless, Class Counsel expended considerable time and expense pursuing the claims in this litigation. These factors weigh in favor of Class Counsel's requested fee.

> **Factors 5, 6, and 12: The customary fee, whether the fee is contingent, and awards in similar cases.**

Class Counsel's hourly rate is reasonable based on the prevailing market rates for commercial litigators in Florida.  Exhibit E.  Class Counsel's lodestar approximates their requested fee.  Exhibit E.  Indeed, after payment of $14,325.98 in expenses, Class counsel is requesting $385,674.02 in fees.  When balanced against their $372,483.50 lodestar, counsels' fee request therefore represents less than a .04 multiplier of the lodestar.  Such a small multiplier is well within the parameters of lodestar multipliers established with in this Circuit, which permit multipliers of up to three times the lodestar.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ("[a] lodestar multiple of three appears to be average") *aff'd sub nom. Behrens v. Wometco Enters.*, 899 F.2d 21 (11th Cir. 1990); *Elkins v. Equitable Life Ins. Of Iowa*, No. CIVA96-296-CIV-T-17B, 1998 WL 133741, at *36 (M.D. Fla. Jan. 27, 1998) (noting that a multiplier of 2.34 is "much

lower than the midrange of the multipliers in contingent fee awards in such cases"). Furthermore, Class Counsel's fee is not provided for by a common fund or a fee shifting statute, and was only made available by Defendant's agreement to pay. *See Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1308 (M.D. Fla. 2011) ("However, because class counsel possess no entitlement to fees based on either a percentage of a fund or a fee-shifting statute, class counsel faced a significant risk of receiving nothing."). All these considerations weigh in favor of this Court's approval of the requested fee.

### Factor 8: The amount involved and the results obtained

The TCPA allows for damages of $500 per fax sent by Defendant (or up to $1,500 if the Court holds Defendant willfully violated the TCPA). Here, Settlement Class members who submit timely and valid claims have a choice between two benefits: [1] a cash payment of up to $75; or [2] five months of HealthTap's Premium Service (valued at $495) at no charge. Doc. 75-1, ¶4. Class Counsel have overcome significant obstacles so far in this litigation, but many risks and barriers to complete recovery for the Settlement Class still remain. Consequently, this Settlement is an excellent result for the Settlement Class.

### Factor 9: The experience, reputation, and ability of the attorneys

Class Counsel have substantial experience litigating class actions and claims about unsolicited faxes in particular. Exhibit F, Bock & Hatch firm resume; *See also G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master On Location Services, Corp.*, No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009) (Hibbler, J.);

*Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008)

(Bucklo, J.); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill.

2009) (Kennelly, J.); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill.

Oct. 14, 2009) (Gettleman, J.); *G.M. Sign, Inc. v. Group C Comm., Inc.*, No. 08-CV-

4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (Darrah, J.). Class Counsel's ability

is demonstrated by the relief they were able to obtain in light of the challenges still

facing the Settlement Class. Therefore, this factor weighs in favor of Class

Counsel's requested fee.

**VI.  Defendant's agreement to pay incentive payments to Plaintiff and Mussat as the class representatives.**

If the Settlement is approved, Defendant has agreed to pay $10,000.00 each

to Plaintiff and Mussat for serving as the Class Representatives. Doc. 75-1, ¶10.

Courts routinely award such "incentive payments" to the persons who assume the

special litigation burden of class representative and thereby benefit the entire class.

*See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000

incentive award to class representative because "a named plaintiff is an essential

ingredient of any class action, [and] an incentive award is appropriate if it is

necessary to induce an individual to participate in the suit"); *In re Dun &*

*Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio

1990) (approving two incentive awards of $55,000 and three of $35,000 to five

representatives). In *In re Lupron*, Judge Stearns approved incentive awards for the

named plaintiffs, noting that such awards serve an important function in promoting

class actions.

Incentive awards serve an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation. *Denny v. Jenkins & Gilchrist*, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005). Courts 'routinely approve incentive awards to compensate named plaintiffs for the service they provided and the risks they incurred during the course of the class action litigation.' *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2000). 'Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.' *In re Compact Disc*, 292 F. Supp. 2d at 189. [*In re Lupron Mktg. and Sales Practice Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005)]

Here, the parties agreed to incentive awards similar to those awarded in other TCPA cases. *See CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Doc. 32-2) (approving $9,500 incentive award in TCPA settlement); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146) (approving $9,500 incentive award in TCPA settlement); *Saf-T-Guard International, Inc. v. Seiko Corp. of America*, 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (approving $12,000 incentive award to class representative in TCPA settlement); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09 C 1399 (N.D. Ill. May 26, 2011) (Coleman, J.) (Doc. 140) (approving $9,500 incentive award in TCPA settlement).

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497, *citing* C. Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The Class Representatives in this case were no

exception. But for their initiative, the benefits available to all Settlement Class members would not have been realized. The Court should approve the parties' agreement regarding the incentive payments, and award the requested amounts.

## VII.  Conclusion.

The Court should approve the Settlement as fair, reasonable, and adequate and in the best interests of the settling parties and the Class.  The parties' proposed order is submitted with this brief as Exhibit A.

Respectfully submitted,

NEUROCARE INSTITUTE OF CENTRAL FLORIDA, P.A., a Florida professional association, individually and as the representative of a class of similarly-situated persons,

/s/ Phillip A. Bock
One of Plaintiffs' Attorneys

Phillip A. Bock (Fla. Bar No. 93895)
Richard J. Doherty
James M. Smith
BOCK & HATCH, LLC.
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312-658-5500

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2014, I caused the foregoing to be filed using the Court's CM/ECF System which will send notification of such filing to all counsel of record.


                                        /s/ Phillip A. Bock

**EXHIBIT J**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARcare, Inc., an Arkansas Corporation, on behalf of itself and all others similarly situated<br><br>          Plaintiff,<br><br>    v.<br><br>Cynosure, Inc.<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:16-cv-11547-DPW |

## PLAINTIFF'S MOTION TO CERTIFY SETTLEMENT CLASS
## AND AUTHORIZE NOTICE ABOUT THE PROPOSED SETTLEMENT

Plaintiff, ARcare, Inc. ("Plaintiff"), on behalf of itself and a class of similarly-situated

persons (identified herein as the "Settlement Class"), pursuant to Fed. R. Civ. P. 23 (e),

respectfully requests that the Court enter an order: (1) provisionally certifying the Settlement

Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only;

(2) approving the Notice Program as set forth in the parties' proposed Revised Settlement

Agreement and Release ("Agreement"), attached hereto as Exhibit 1, and authorizing Notice on

the basis that the terms of the Agreement are within the range of fair, adequate, and reasonable;

(3) designating Plaintiff as the Class Representative; (4) appointing Class Counsel;

(5) appointing Kurtzman Carson Consultants ("KCC") as the Settlement Administrator;

(6) approving the procedures set forth in Section VIII of the Agreement for Settlement Class

Members to exclude themselves from the Settlement Class or to object to the Settlement; and

(7) scheduling a Final Approval hearing for a time and date mutually convenient for the Court,

Class Counsel, and counsel for Cynosure, and no earlier than 100 days after the motion for

Notice Approval and Preliminary Certification.

Plaintiff proposes the following dates:

a.      March 31, 2017 to issue notice to the Class Members;

b.      May 30, 2017 for exclusion requests or objections;

c.      June 14, 2017 for briefs in support of the settlement and in response to any

objection; and

d.      a date convenient for the Court for a final settlement approval hearing (but not

sooner than June 21, 2017).

A proposed order is attached as Exhibit E to the Agreement and will be submitted to the

Court electronically.

March 3, 2017                           Respectfully submitted,

                                        ARcare, Inc. individually and as the representative of a
                                        class of similarly-situated persons,

                                        By:    /s/ Phillip A. Bock

                                        Randall K. Pulliam, Esq. (pro hac vice)
                                        rpulliam@cbplaw.com
                                        **CARNEY BATES & PULLIAM, PLLC**
                                        2800 Cantrell Rd., Suite 510
                                        Little Rock, Arkansas 72202
                                        Telephone: (501) 312-8500
                                        Facsimile: (501) 312-8505

                                        Phillip A. Bock (pro hac vice)
                                        phil@classlawyers.com
                                        **BOCK, HATCH, LEWIS & OPPENHEIM, LLC**
                                        134 N. La Salle St., Ste. 1000
                                        Chicago, IL 60602
                                        Telephone: (312) 658-5500
                                        Facsimile: (312) 658-5555

                                        Alan L. Cantor
                                        **SWARTZ & SWARTZ, P.C.**
                                        10 Marshall Street
                                        Boston, MA 02108
                                        Telephone: (617) 742-1900
                                        Fax: (617) 367-7193

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

ARcare, Inc., an Arkansas Corporation,    )
on behalf of itself and all others similarly  )
situated    )
   )
       Plaintiff,    )    Civil Action No. 1:16-cv-11547-DPW
  v.    )
   )
Cynosure, Inc.    )
   )
       Defendant.    )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO AUTHORIZE NOTICE AND PRELIMINARILY CERTIFY SETTLEMENT CLASS

Randall K. Pulliam, Esq. (pro hac vice)
rpulliam@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St., Little Rock, AR 72201
Little Rock, Arkansas 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Phillip A. Bock (pro hac vice)
David M. Oppenheim (pro hac vice)
**BOCK, HATCH, LEWIS & OPPENHEIM, LLC**
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: (312) 658-5500
Facsimile: (312) 658-5555

Alan L. Cantor
**SWARTZ & SWARTZ, P.C.**
10 Marshall Street
Boston, MA 02108
Telephone: (617) 742-1900
Fax: (617) 367-7193

Attorneys for Plaintiff and the proposed
Settlement Class

## TABLE OF CONTENTS

Page

I.     The Litigation .......................................................................................... 1

II.    Amended Settlement Agreement and Release ........................................... 2

III.   The Court Should Preliminarily Certify the Settlement Class and Approve Notice. ........ 6

       A.     The Settlement Class Should Be Preliminarily Certified. ................................ 8

              1.     Rule 23(a)'s prerequisites are met.................................................. 8

              2.     Rule 23(b)(3)'s prerequisites are met. ............................................ 9

       B.     The Court Should Authorize Notice Because the Proposed Settlement is
              Within the Range of Fair, Reasonable, and Adequate. ....................................... 9

              1.     The parties engaged in arm's-length negotiations. ............................ 10

              2.     The parties exchanged sufficient discovery to recommend
                     settlement. .............................................................................. 12

              3.     The proponents of this settlement are experienced in similar
                     litigation. .............................................................................. 16

       C.     The Court Should Approve the Form, Content, and Procedure for Notifying
              the Settlement Class...................................................................................... 19

V.     The Court Should Appoint KCC as the Settlement Administrator............................ 19

VI.    The Court Should Schedule a Final Fairness Hearing. ............................................ 20

VII.   Conclusion. .............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014) .......... 13

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162, Dkt. No. 278 (W.D. Mich. Mar. 1, 2016) ................................................................................. 18

*Bais Yaakov of Spring Valley, et al. v. FCC*, Appeal No. 14-1234 (D.C. Cir.) ........................... 14

*Bell v. Sterling National Mortgage Company, Inc.*, 2:06-cv-01714, Dkt. Nos. 14, 17, 21 (E.D. Pa. closed Nov. 27, 2007) ................................................................................. 11

*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324 (D. Mass. 2015) (Woodlock, J.) ............... passim

*Blue Wave Corp. v. Northend Chiropractic LLC*, Case No. 2010-01571-F (Mass. Super. Ct. Feb. 3, 2015) ................................................................................. 18

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) ................................................................................. 18

*City P'Ship v. Atl. Acquisition Ltd.*, 100 F.3d 1041 (1st Cir. 1996) ........................................... 10

*Daisy, Inc. v. Pollo Operations, Inc.*, 2:14-cv-00564, Dkt. Nos. 96, 109, 115 (M.D. Fl. closed Mar. 31, 2016) ................................................................................. 11

*Daisy, Inc. v. Pollo Operations, Inc.*, Case No. 14-cv-564, Dkt. No. 115 (M.D. Fla. Mar. 30, 2016) ................................................................................. 17

*Durrett v. Providence Hous. Auth.*, 896 F.2d 600 (1st Cir. 1990) ................................................ 6

*Exclusively Cats Veterinary Hospital v. Cas. and Indem. Co., Inc. of MD*, Case No. 11-2370-B (Mass. Super. Ct. Mar. 6, 2014) ................................................................................. 18

*Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) ................................................ 14

*Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa.) ............................................................. 16

*Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804, Dkt. No. 193 (E.D. Pa. Aug. 6, 2015) .......... 17

*Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 106-07 (D. Mass. 2010)
 (Woodlock, J.) ............................................................................. 7, 8, 10

*Horn v. Bank of Am., N.A.*, No. 3:12 CV-1718-GPC-BLM, 2014 WL 1455917 (S.D. Cal. Apr. 14, 2014) ................................................................................. 15

*Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996, Dkt. No 120 (E.D. Mich. Nov. 2, 2016) ................................................................................. 17

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ................................................................................. 15

*In re Chicken Antitrust Litig.*, 669 F.2d 228 (5th Cir.1982) ....................................................... 12

*In re Colgate-Palmolive Softsoap Litig.*, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) ............... 12

*In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467 (D.N.J. 2012) ........................ 15

*In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005) .............................. 8

*In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135 (D. Mass. 2004) .................. 10

*In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21 (1st Cir. 2012) ................................... 7

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45 (D. Mass. 2010)
(Woodlock, J.) .......................................................................................................... 7, 8, 9, 10

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................................... 12

*In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) ..................... 7

*In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125 (D.P.R. 2010) ........................... 10

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ................................................... 7

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................................... 6

*Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich.); *Hinman v.
M&M Rental, Inc.*, Case No. 06-CV-1156 (N.D. Ill.) ................................................................. 16

*Jamison v. First Credit Servs., Inc.*, No. 12 C 4415, 2013 WL 3872171 (N.D. Ill. July 29, 2013)
.......................................................................................................................................... 15

*Kiefer v. Moran Foods, LLC*, 2014 WL 3882504 (D. Conn. Aug. 5, 2014) ............................... 20

*Latorraca v. Centennial Technologies, Inc.*, 834 F. Supp. 2d 25 (D. Mass. 2011) .................... 18

*Maher v. Zapata Corp.*, 714 F. 2d 436 (5th Cir. 1983) ............................................................... 19

Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund, 582 F.3d 30
(1st Cir. 2009) ........................................................................................................................... 7

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, Case No. 12-CV-80178, Dkt.
No. 230 (S.D. Fla. Sept. 27, 2016) ............................................................................................ 18

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*, Case No. 12-cv-729, Dkt. No. 289 (W.D.
Mich. Mar. 23, 2016) ......................................................................................................... 17, 18

*R. Rudnick & Co. v. G.F. Protection Inc. et al.*, 1:08-cv-01856, Dkt. Nos. 34, 51, 52 (N.D. Ill.
closed Apr. 21, 2010) ................................................................................................................ 11

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) .................................................................... 10

*Sandusky Wellness Center, LLC v. Wagner Wellness Inc. et al.*, 3:12-cv-02257, Dkt. Nos. 33, 72-
73 (N.D. Ohio closed Feb. 9, 2016) ........................................................................................... 11

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257, Dkt. No. 73
(N.D. Ohio Feb. 9, 2016) ........................................................................................................... 17

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 2016 WL 75535 (N.D. Ohio
Jan. 7, 2016) .............................................................................................................................. 13

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992 (8th Cir. 2016) ..................... 13

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis.) ............. 16

*Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32 (1st Cir. 2003) ............................................... 8

*Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005) .................................................... 11

*The Savanna Group, Inc. v. Trynex, Inc*., Case No. 10-CV-7995 (N.D. Ill.) ............................... 16

*Van Sweden v. 101 VT, Inc*., Case No. 10-CV-253 (W.D. Mich.)................................................. 16

*Van Sweden, Inc. v. 101 VT, Inc.*, Case No. 10-cv-253 (W.D. Mich. July 30, 2015).................... 18

*Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956 (3d Cir. 1983).................................... 19

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 .................................................................. 1

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................................... 8

Fed. R. Civ. P. 23(a) ............................................................................................................... 7, 8, 9

Fed. R. Civ. P. 23(b) ................................................................................................................... 7, 8

Fed. R. Civ. P. 23(b)(3)................................................................................................................... 9

Fed. R. Civ. P. 23(e) ............................................................................................................... 6, 19

**Treatises**

Manual for Complex Litigation (4th ed. 2004) § 13.14................................................ 7, 12, 16, 20

Rubenstein, NEWBERG ON CLASS ACTIONS § 13.44 (5th ed.) ........................................................ 6

On January 31, 2017, the parties appeared before the Court for a conference regarding a proposed settlement of this Action. The Court expressed reservations about some aspects of the proposal and granted the parties leave to file amended submissions by March 3, 2017. Following the conference, the parties negotiated a revised settlement. Plaintiff ARcare, Inc. ("Plaintiff"), on behalf of itself and members of the Settlement Class (defined herein), respectfully submits this memorandum pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of Plaintiff's motion to certify the Settlement Class preliminarily and for settlement purposes only, and to authorize notice of the proposed settlement to the class members.

## I.    The Litigation

On July 27, 2016, Plaintiff filed a Class Action Complaint with this Court alleging that Cynosure violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by sending advertisements by facsimile that were unsolicited or did not contain required language relating to recipients' right to opt out of receiving future advertisements. Dkt. No. 1. Cynosure answered the Complaint, denying all liability for these claims. Dkt. No. 22.

The parties determined to explore early class-wide resolution of the claims through mediation and the Court stayed the case pending those negotiations. Dkt Nos. 26-27. As part of the mediation process, Cynosure conducted a thorough review of its fax records and shared the results with Plaintiff's counsel. Through their analysis of those records, and based on extensive experience in other TCPA fax cases, Plaintiff's counsel determined that Cynosure attempted to send facsimiles promoting product seminars to 76,567 different telephone numbers between July 27, 2012 and August 2, 2016. Upwards of 800,000 total facsimiles appear to have been sent, but transmission records do not exist for any but one fax campaigns. Compiling the target lists yields a settlement class of the holders of approximately 77,000 telephone numbers.

After a day-long mediation presided over by the Hon. Edward Infante (Ret.) of JAMS and two months of subsequent negotiation, the parties agreed upon the terms of a proposed settlement. The terms of that settlement were submitted to this Court on January 26, 2017. Dkt. Nos. 32, 32-1. As part of that proposed settlement, Cynosure continued to deny liability but agreed to pay between $6,500,000 and $16,000,000 depending on the claims rate. *See* Dkt. No. 32-1. If the eventual claims rate were consistent with rates discussed by the Court at the hearing, Cynosure's payout would have been $6,500,000.

During the conference on January 31, 2017, the Court expressed reservations about ruling on the submissions in their present form, including reservations about (1) the potential reversion of settlement funds to Cynosure; (2) relief to settlement class members that do not file a claim for a monetary award; (3) the anticipated request for fees and costs by class counsel; (4) the anticipated request for a service award to Plaintiff for serving as the class representative; and (5) the amount of discovery conducted. The Court granted the parties 30 days to consider filing amended submissions. Dkt. No. 33. While the parties believed their original proposed settlement was fair, reasonable and adequate, the parties subsequently engaged in further negotiation to address the Court's concerns, and have executed an Amended Settlement Agreement and Release ("Agreement"), submitted herewith as Exhibit 1.[1]

## II.     Amended Settlement Agreement and Release

Under the revised Agreement, the Settlement Class Members are likely to receive substantial additional benefits, including higher cash compensation, while Plaintiff and its counsel will request less in fees and incentive award. Cynosure has agreed to make $8,500,000 available on a common-fund basis to settle this matter, without any possibility of reversion of unclaimed funds to Cynosure. Agreement ¶¶ 43, 74-79. After deducting the cost of settlement

---

[1] Defined terms in the Agreement are incorporated herein by reference.

administration and any award of attorneys' fees and costs and Service Award to the Class Representative, the remaining amount will be distributed on a *pro rata* basis to approved claimants. Agreement ¶¶ 74-79. Cynosure will thus likely pay $2,000,000 more under the revised Agreement than the original agreement, *i.e.*, Cynosure has agreed to 31% more in cash consideration, and that additional cash will go entirely to class members.

The entirety of the Settlement Fund will be distributed to Settlement Class Members, either in direct cash payments or indirect consideration (in the form of attorneys' fees, compensation to the class representative, or administration costs). Should there be any remainder in the fund because checks to class members remain undeliverable or uncashed after 180 days, those amounts will be redistributed through a second payment to class members who filed a claim, so long as such a mailing is economically feasible. Agreement ¶ 80. In the unlikely event that funds remain after that, or if such a distribution is not economically feasible (*e.g.*, the remaining funds are less than the cost of distribution), the remaining funds will be given to a *cy pres* recipient.[2]

Cynosure suspended all fax advertising shortly after service of Plaintiff's complaint. As part of the Settlement, in addition to providing cash compensation to class members that file approved claims, Cynosure has agreed to the entry of an injunction prohibiting it from sending advertising faxes that do not comply with the TCPA and any applicable FCC regulations promulgated thereunder for a period of two years following entry of final judgment. Agreement ¶ 44. Thus, even those Settlement Class Members who do not file a claim for cash compensation will receive additional protection from the Settlement.

---

[2] Subject to the Court's approval, the parties suggest the National Consumer Law Center, a 501(c)(3) non-profit consumer advocacy group that provides resources to customers seeking to enforce their rights under the TCPA, as the potential *cy pres* recipient. *See* https://www.nclc.org/about-us/about-us.html (last visited 3/3/17).

Additionally, Plaintiff's counsel have substantially reduced the amount of their anticipated requests for attorneys' fees and costs and for a service award to compensate Plaintiff for serving as Class Representative. Under the prior proposed settlement, Plaintiff's counsel had intended to ask for $4,000,000 in fees and costs and a service award of $15,000. Dkt. No. 32 at 6; Dkt. No. 32-1 ¶¶ 80, 83. Under the amended Agreement, Plaintiffs' counsel will request no more than 25 percent of the common fund ($2,125,000), and a service award of $5,000 for Plaintiff. Agreement ¶¶ 85, 88. Assuming the Court approves the anticipated requests for attorneys' fees and a Service Award, and depending on the claims rate, each claimant may well receive a disbursement of over $1,000—more than double the baseline statutory damages available for a violation of the TCPA.

Lastly, to address the Court's concerns about the amount of discovery and to ensure that counsel's appraisal of the risks entailed in litigating this case to a possible class-wide judgment was accurate, Plaintiff's counsel further investigated the facts surrounding the ascertainability of the putative settlement class, interviewing a Cynosure witness on the issue. Absent settlement of this action, the difficulty in ascertaining the proposed class could present an obstacle to successful class-wide litigation of the claims because, apart from a single month, there are no records showing to which fax numbers Cynosure sent fax advertisements. Moreover, although Cynosure has lists of fax numbers to which it asked its vendor to send facsimiles, the summary records produced often show high failure rates.

The remainder of the Agreement's additional key terms remain substantially the same:

a.    Certification of a Settlement Class. The Parties stipulate to certification of the following "Settlement Class" pursuant to Rule 23(b)(3): "All persons or entities who were sent one or more facsimile transmissions advertising the availability or quality of

property, goods, or services of Cynosure from July 27, 2012 through the date of Notice

Approval and Preliminary Certification.'" Agreement ¶ 42. Excluded from the Class are

all current employees, officers, and directors of Cynosure, and the judge presiding over

this Action and his staff. *Id.* The Settlement Class is comprised of medical practices and

medical professionals.

      b.    <u>Class Counsel and Representative Plaintiff</u>. The parties have agreed that

Plaintiff will be the Class Representative and that Randall K. Pulliam of Carney Bates &

Pulliam, PLLC, Phillip A. Bock of Bock, Hatch, Lewis & Oppenheim, LLC, and Alan L.

Cantor of Swartz & Swartz, P.C. will be Class Counsel. Agreement ¶¶ 17, 45.

      c.    <u>Class Notice</u>. The parties have agreed to notify the Settlement Class about

the settlement by sending the notice and claim form by facsimile and if facsimile is

unsuccessful, then by mail. Agreement ¶¶ 51-52. A long-form notice shall also be posted

on the settlement website. Agreement ¶ 54. The notice includes instructions about opting

out, objecting, or submitting a claim form by fax, mail, or through the settlement website

to the Settlement Administrator, and have been updated to reflect the revised terms of the

Agreement. Agreement Exs. A-C.

      d.    <u>The Settlement Administrator</u>. The parties have agreed that Kurtzman

Carson Consultants ("KCC") will serve as the Settlement Administrator, issuing the

notice as approved by the Court, responding to inquiries from class members about the

Settlement, receiving and processing the claim forms, and sending checks to the

claimants. Agreement ¶¶ 37, 48.

      e.    <u>Settlement Class Opt-Out and Objection Rights</u>. A class member may

request exclusion from the Settlement Class within the period set by the Court.

Agreement ¶ 58 & Exs. A-C. Any member who opts out of the Settlement Class shall not

be bound by any of the Court's orders or the terms of the Settlement and shall not be

entitled to any of the benefits set forth in the Agreement. All other members may object

to the Settlement in writing within the time set by the Court. Agreement ¶¶ 59-60 & Exs.

A-C. Plaintiff suggests a 60-day period for class members to opt-out or objection.

      f.    <u>Releases.</u> As set forth in the Agreement, in consideration of the relief

provided by the Settlement, the Settlement Class will release all claims that were brought

or could have been brought in this action against Cynosure and the other released parties.

Agreement ¶¶ 82-84.

## III.    The Court Should Preliminarily Certify the Settlement Class and Approve Notice.

Pursuant to Rule 23(e), the "claims, issues or defenses of a certified class may be settled,

voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

Courts consistently recognize "the clear policy in favor of encouraging settlements[.]" *Durrett v.*

*Providence Hous. Auth*., 896 F.2d 600, 604 (1st Cir. 1990) (reversing denial of approval of class

action settlement as an abuse of discretion); *see also In re Warfarin Sodium Antitrust Litig.*, 391

F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action

litigation, and it should therefore be encouraged."); Rubenstein, NEWBERG ON CLASS ACTIONS

§ 13.44 (5th ed.) ("The law favors settlement, particularly in class actions and other complex

cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

When the parties in a purported class action reach a proposed settlement, the Court may

approve the settlement "only after a hearing and on finding that it is fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2); *see Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D.

Mass. 2015) (Woodlock, J.), *citing Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters*

*Health Benefits Fund,* 582 F.3d 30, 44 (1st Cir. 2009). Courts make this finding through a "two-

stage procedure," where "[f]irst, the judge reviews the proposal preliminarily to determine

whether it is sufficient to warrant public notice and a hearing," and second "the final decision on

approval is made after the hearing." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 106-07 (D.

Mass. 2010) (Woodlock, J.) (quoting Manual for Complex Litigation (4th ed. 2004) § 13.14

("MCL")); *accord In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005) (same); *see

also In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 25 (1st Cir. 2012) (affirming class

settlement where court applied the two-stage procedure). During the first step, the Court must

decide whether to certify the class for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and

23(b). *Hochstadt*, 708 F. Supp. 2d at 101. If those requirements are met, the Court then examines

the proposed settlement for "obvious deficiencies before determining whether it is in the range of

fair, reasonable, and adequate." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270

F.R.D. 45, 62 (D. Mass. 2010) (Woodlock, J.) (citation omitted).

There is a presumption in favor of the settlement "[i]f the parties negotiated at arm's

length and conducted sufficient discovery." *Hochstadt*, 708 F. Supp. 2d at 107 (quoting *In re

Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)). If the

proposed settlement is free from obvious deficiencies, the Court may authorize notice of the

proposed settlement to the class and set a final fairness hearing "where arguments for and against

the proposed settlement will be presented after notice and an opportunity to consider any

response provided by the potential class members." *In re M3*, 270 F.R.D. at 62.

Plaintiff's motion here asks the Court to engage in the first step of the two-step process

by preliminarily certifying the Settlement Class, authorizing notice, appointing Plaintiff as Class

Representative and its counsel as Class Counsel, appointing KCC as Settlement Administrator,

and setting a date and time for a Final Fairness Hearing.

## A.    The Settlement Class Should Be Preliminarily Certified.

Before considering whether to authorize notice, the Court must determine whether to certify the class preliminarily for settlement purposes. *Hochstadt*, 708 F. Supp. 2d at 101. The decision involves an analysis of whether the prerequisites of Fed. R. Civ. P. 23 are met. *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). Specifically, Plaintiff must establish that "each of the four elements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the elements in Rule 23(b)" are met. *In re M3*, 270 F.R.D. at 54. The requirements of Rule 23(a) and Rule 23(b)(3) are met here.

### 1.    Rule 23(a)'s prerequisites are met.

All four requirements of Fed. R. Civ. P. 23(a) are met here. First, the numerosity requirement is satisfied because "the class [would be] so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). The proposed Settlement Class includes nearly 77,000 members, clearly meeting the numerosity requirement. *See Hochstadt*, 708 F. Supp. 2d at 102 (numerosity "easily met" where proposed class had approximately 12,000 members).

Second, the commonality requirement is met because there are "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). The threshold for commonality "is not high." *In re M3*, 270 F.R.D. at 54. This case involves claims under a single statute, the TCPA, arising from Cynosure's alleged sending of fax ads, presenting a number of common issues of fact and law.

Third, the typicality requirement is met because the "claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Bezdek*, 79 F. Supp. at 338 (quoting *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 89 (D. Mass. 2005)). Here, the claims of Plaintiff and the proposed Settlement Class all are based on Cynosure's alleged transmission of fax advertisements without the opt-out notice required by the TCPA and attendant regulations.

- 8 -

Fourth, the adequate representation requirement is met because Plaintiff's interests will not conflict with the interests of class members and its attorneys are qualified, experienced, and able. *In re M3*, 270 F.R.D. at 55. Plaintiff's interests align with the class, because all members seek redress for the same injury. Furthermore, as discussed further *infra*, Plaintiff's counsel are experienced in TCPA class action litigation.

### 2. Rule 23(b)(3)'s prerequisites are met.

Rule 23(b)(3) is satisfied when questions of law or fact common to class members predominate over question affecting only individual members and a class action is superior to other methods of fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Here, the predominance requirement is met for the same reasons commonality is met. *Bezdek*, 79 F. Supp. 3d at 340 ("The predominance requirement is similar to but more demanding than the commonality requirement.") (citation omitted). Specifically, the claims of the class turn on similar questions of fact and law regarding whether Cynosure's alleged fax advertisements violated the TCPA and attendant regulations by failing to include the required opt-out language. The superiority requirement is met because there are "thousands of class members, each of whom have small individual claims that may not be worth pursing independently[.]" *Id.* at 342.

Accordingly, the Court should preliminarily certify the proposed Settlement Class because the requirements of Rule 23(a) and Rule 23(b)(3) are met.

### B. The Court Should Authorize Notice Because the Proposed Settlement is Within the Range of Fair, Reasonable, and Adequate.

After the Court determines that a proposed settlement class should be certified, it must make a preliminary determination as to the fairness, reasonableness, and adequacy of the settlement terms to decide whether notice of the proposed settlement should be issued to the settlement class. *Hochstadt*, 708 F. Supp. 2d at 107; *In re M3*, 270 F.R.D. at 62. "At the

preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (collecting cases). Specifically, courts "examine the proposed settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re M3*, 270 F.R.D. at 62.

"Courts and commentators . . . have developed a presumption that the settlement is within the range of reasonableness when certain procedural guidelines have been followed." *In re M3*, 270 F.R.D. at 62-63. Those procedural guidelines include whether (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation. *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004); *accord In re M3*, 270 F.R.D. at 62-63. "When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'Ship v. Atl. Acquisition Ltd.*, 100 F.3d 1041, 1043 (1st Cir. 1996); *see also Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (recognizing a "strong initial presumption" in favor of settlement).

In negotiating the terms of the Agreement, the parties have followed the guidelines above, and have endeavored to address the concerns expressed by the Court at the January 31, 2017 conference. Plaintiff respectfully requests the Court authorize notice accordingly.

### 1. The parties engaged in arm's-length negotiations.

The Agreement is the result of months of negotiation between experienced counsel with an understanding of the strengths and weaknesses of their respective positions, assisted by of one of the nation's top mediators, Hon. Edward Infante (Ret.) of JAMS, and benefiting from the Court's review of, and comments regarding, the parties' initial proposed settlement.

Cynosure has agreed to make $8.5 million available on a common-fund basis; $2 million more than the prior proposed settlement would have paid out if the claims rate would have been less than 16%. Agreement ¶¶ 43, 74-79. In response to the Court's concerns, the Agreement no longer provides for any possibility of reversion to Cynosure. Rather, each class member who submits an approved claim will be mailed a check for its *pro rata* share of the Settlement Fund after deduction of the costs of settlement administration, attorneys' fees, and service award. *Id.* ¶¶ 74-79. As the Court is aware, not all eligible class members will submit claims for disbursement from a class-action settlement. *See, e.g.*, *Sylvester v. CIGNA Corp.,* 369 F. Supp. 2d 34, 52 (D. Me. 2005) (noting "settlements regularly yield response rates of 10 percent or less."). Accordingly, assuming a valid claim rate of eight percent, *see* Conference Tr., Jan. 31, 2017, Dkt. No. 34, 5:20-22 (noting claims may range from five to eight percent), each claimant would likely receive a cash disbursement of over $1,000 under the Agreement. This is more than double the baseline statutory damages available for violations of the TCPA, and represents an outstanding recovery for the class.[3]

Settlement Class Members can claim their share by filling out a simple, one-page claim form confirming that they owned or used the pre-populated fax number to which Cynosure attempted to send faxes, without any requirement that Settlement Class Members provide evidence that they received such a fax or even attest to remembering that they received one. *See*

---

[3] Courts have frequently approved TCPA settlements that provided per-claimant payments that are at or below the statutory damages amount. *See, e.g.*, *Sandusky Wellness Center, LLC v. Wagner Wellness Inc. et al.*, 3:12-cv-02257, Dkt. Nos. 33, 72-73 (N.D. Ohio closed Feb. 9, 2016) (finally approving per-claimant payment of $61.02); *R. Rudnick & Co. v. G.F. Protection Inc. et al.*, 1:08-cv-01856, Dkt. Nos. 34, 51, 52 (N.D. Ill. closed Apr. 21, 2010) (finally approving maximum per-claimant payment of $500); *Daisy, Inc. v. Pollo Operations, Inc.*, 2:14-cv-00564, Dkt. Nos. 96, 109, 115 (M.D. Fl. closed Mar. 31, 2016) (finally approving maximum per-claimant payout of $500); *Bell v. Sterling National Mortgage Company, Inc.*, 2:06-cv-01714, Dkt. Nos. 14, 17, 21 (E.D. Pa. closed Nov. 27, 2007) (finally approving per-claimant payment of $100).

Agreement Ex. D. Furthermore, in response to the concerns expressed by the Court, even non-claiming Settlement Class Members will receive the additional benefit from Cynosure's agreement to be bound by an injunction prohibiting it from sending non-TCPA-compliant fax advertisements for two years. *See In re Colgate-Palmolive Softsoap Litig.*, 2015 WL 7282543, at *11 (D.N.H. Nov. 16, 2015) (injunction prohibiting defendant from engaging in further complained-of conduct was benefit to settlement class weighing in favor of settlement approval).

### 2. The parties exchanged sufficient discovery to recommend settlement.

In class action settlements, "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *see also In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir.1982). Informal discovery is well recognized as a means to reduce the cost, delay, and burden of formal discovery, and courts often "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery." MCL § 11.423. The benefits of settlement are necessarily diminished if postponed until after discovery is completed. *See id.* § 13.12.

Sufficient discovery has occurred in this case to enable the parties to make informed judgments about the risks and costs of continued litigation. Cynosure conducted a thorough review of its faxing records and provided voluminous documents to Plaintiff's counsel, including copies of template faxes promoting product event seminars, lists of fax numbers targeted, invoices from Cynosure's fax broadcaster identifying the number of faxes sent, and all available transmission logs and error reports. Except for a single month, logs identifying the recipients of each fax broadcast do not exist. Based on these documents, Plaintiff's counsel determined that Cynosure sent or may have sent facsimile advertisements to 76,567 different fax numbers between July 27, 2012 and August 2, 2016. Cynosure made available an employee

knowledgeable about its fax program for two separate interviews with Plaintiff's counsel,

including one following the conference with the Court on January 31, 2017.

Discovery has confirmed the existence of issues that could preclude class-wide recovery

in litigation, enabling Plaintiff's counsel to assess the benefits of the Settlement against the risks

of continued litigation. First, there is the lack of fax transmission records. To state a claim under

the fax advertisement provision of the TCPA, some courts have held that a plaintiff must allege

that it was "successfully sent" a non-compliant fax advertisement. *See, e.g.*, *Sandusky Wellness*

*Ctr., LLC v. ASD Specialty Healthcare, Inc*., 2016 WL 75535, at \*2 (N.D. Ohio Jan. 7, 2016). If

it applied that line of reasoning here, the Court might determine that class-wide litigation of the

claims will require a means of determining to whom each fax was successfully sent. *Id.*

Normally, this is accomplished through transmission logs, which show when a party attempted to

send faxes to certain numbers, and whether those transmissions were successfully completed. *See*

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014);

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016). Except for

a single month, however, there are no logs identifying the phone numbers to which Cynosure's

faxes were successfully transmitted, raising questions about whether the Court would certify a

litigation class making claims about anything more than that single transmission. *See Sandusky*,

2016 WL 75535, at \*2 (denying certification when there were no fax logs existed sufficient to

establish which of the attempted faxes were successfully transmitted). Because all records

available to Cynosure and its fax broadcaster regarding Cynosure's attempted fax transmissions

have already been produced, further discovery on this issue is unlikely to alter this assessment.

Second, there is a live legal question regarding whether Cynosure's asserted defense that

it obtained consent from fax recipients is viable under the TCPA. Plaintiff alleges such consent is

immaterial because Cynosure's faxes did not contain sufficient opt-out notices, which FCC regulations require for both solicited and unsolicited fax advertisements. However, the questions of whether the FCC can require opt-out notices on solicited faxes, and whether the FCC can grant retroactive waivers of that requirement (for which Cynosure has applied), are currently pending before the District of Columbia Circuit in *Bais Yaakov of Spring Valley, et al. v. FCC*, Appeal No. 14-1234 (D.C. Cir.). That appeal has been briefed and argued.

Following the conference with the Court on January 31, 2017, Cynosure made an employee knowledgeable about its fax programs and records available for a further interview with Class Counsel. During the interview, the employee explained that Cynosure's lists of intended fax recipients were drawn from its customer relationship management database. Cynosure obtains contact information for that database from a variety of channels, including from interactions with physicians at trade shows, through Cynosure's online request forms, and in the frequent interactions between Cynosure's sales representatives and physicians in the field. However, there is no centralized record regarding whether each medical professional or medical practice identified in the database consented to receive fax advertisements.

Accordingly, should the D.C. Circuit strike down the rule requiring solicited faxes to contain an opt-out notice, Cynosure is likely to argue that issues of consent present individualized questions that make class certification inappropriate. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328–29 (5th Cir. 2008) (denying class certification on the basis that "because the evidence shows that the recipients' fax numbers were collected over time and from a variety of sources, individual inquiries of the recipients are necessary to sort out which transmission was consented to and which was not."); *Jamison v. First Credit Servs., Inc.*, No. 12 C 4415, 2013 WL 3872171, at *5–6 (N.D. Ill. July 29, 2013) (issue of individual consent

precluded class certification for phone numbers in company database obtained from customers through sales contracts, credit applications, customer-provided insurance information, and through customer contact with customer services representatives).

Time consuming and expensive discovery into questions of individual consent is unnecessary at this stage because the parties currently possess adequate information to assess the strengths of their respective positions. Parties are not required to engage in expensive formal discovery before settling a class action. *See, e.g.*, *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482-83 (D.N.J. 2012) (approving class action settlement reached prior to formal discovery where the parties "engaged in informal sharing of documents" that "enhanced Plaintiffs' counsel's appreciation of the strength of their cases."); *Horn v. Bank of Am., N.A.*, No. 3:12 CV-1718-GPC-BLM, 2014 WL 1455917, at *4 (S.D. Cal. Apr. 14, 2014) (approving class action settlement reached prior to any formal discovery where defendant provided information to class counsel and mediator sufficient to assess claims). Rather, discovery must enable "representatives of the parties to act 'intelligently' when negotiating a settlement." *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2014 WL 4446464, at *4 (D. Mass. Sept. 8, 2014). The informal discovery in this case to date, including informal document production and multiple interviews, has been sufficient to evaluate the risks attendant to further litigation for both sides, as well as the substantial delay and expense the parties would likely incur. Further discovery into individual issues of consent would involve a time consuming and burdensome review of records from multiple sources, including the files of Cynosure sales representatives located throughout the country, the avoidance of which is one of the benefits of the proposed settlement. *See* MCL § 13.22 ("One of the major incentives to settle is to avoid the cost and

burden of further discovery."); *id.* § 13.12 ("The benefits of settlement are diminished . . . if it is postponed until discovery is completed.").

### 3.  The proponents of this settlement are experienced in similar litigation.

Plaintiff's attorneys believe this settlement is fair, reasonable, and adequate. Plaintiff's attorneys have litigated TCPA class actions since 2003 and they have been appointed class counsel in dozens of such cases. *See, e.g.*, *Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa.); *Van Sweden v. 101 VT, Inc.*, Case No. 10-CV-253 (W.D. Mich.); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich.); *Hinman v. M&M Rental, Inc.*, Case No. 06-CV-1156 (N.D. Ill.); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill.); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis.). Additionally, Plaintiff's counsel have successfully negotiated numerous class-wide settlements in TCPA cases. *See cases cited below*. Additional details of counsel's experience are provided in the firm resumes attached as Exhibits 2 and 3.

### a.  Plaintiff will request a service award at final approval, as indicated in the class notice.

Proposed class representative ARcare is a healthcare provider founded in 1986. ARcare provides medical and pharmacy services through its more than 30 locations, primarily in rural areas in Arkansas. ARcare operates family practices, specialized medical care such as cardiology and chronic disease treatment, dental practices, and pharmacies. As a medical provider, ARcare relies upon fax machines to operate and provide services to its patients. ARcare estimates that it receives several thousand unwanted and unsolicited faxes each year. In 2016, aiming to stop these faxes and to assist other healthcare providers lacking the resources to fight the problem, ARcare begin filing class action lawsuits against the senders of unwanted faxes. ARcare's inhouse general counsel attended and participated in the mediation of this case. Other than the

incentive payment a court might award ARcare for serving as the class representative in a successfully-resolved class action, the company does not expect and will not receive any compensation other than what every other class member can receive.

After hearing the Court's concerns about the prior proposal, Plaintiff decided to request a service award in a reduced amount--$5,000 rather than the $15,000 Cynosure originally agreed to—for serving as the class representative. A service award is appropriate to reward a plaintiff who has pursued claims on behalf of the class. "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek*, 79 F.Supp.3d at 352. Other courts frequently make greater awards in TCPA fax cases. *See, e.g.*, *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996, Dkt. No 120 (E.D. Mich. Nov. 2, 2016) ($15,000.00); *Daisy, Inc. v. Pollo Operations, Inc.*, Case No. 14-cv-564, Dkt. No. 115 (M.D. Fla. Mar. 30, 2016) (same); *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, Case No. 12-cv-729, Dkt. No. 289 (W.D. Mich. Mar. 23, 2016) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257, Dkt. No. 73 (N.D. Ohio Feb. 9, 2016) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804, Dkt. No. 193 (E.D. Pa. Aug. 6, 2015) (same).

b.    **Class Counsel will request fees and expenses at final approval, as indicated in the class notice.**

Plaintiff's counsel will request a reduced fee amount of $2,125,000, which represents 25% of the Settlement Fund. The revised structure—which provides $8.5 million without any possibility of reversion—should alleviate the Court's concern that the Settlement Class could receive a smaller share of the settlement than Class Counsel through a low claims rate. "25% of the settlement fund in fees falls squarely within what is recognized in this circuit as the range of reasonable POF amounts." *Bezdek*, 79 F.Supp.2d at 350, *citing Latorraca v. Centennial Tech.*,

*Inc.*, 834 F. Supp. 2d 25, 27-28 (D. Mass. 2011) ("Courts in this circuit generally award attorneys' fees in the range of 20-30%, with 25% as 'the benchmark.'") (citing cases).

In *Boeing v. Van Gemert*, 444 U.S. 472 (1980), the Supreme Court explained as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. … [T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." [*Id*. at 478-479.]

Here, Class Counsel's request for 25% of the Settlement Fund as fees is both consistent with the "benchmark" in this Circuit, and is at or below the market rate for TCPA cases. *See, e.g.*, *Bezdek*, 79 F. Supp. 2d at 350; *Blue Wave Corp. v. Northend Chiropractic LLC*, Case No. 2010-01571-F (Mass. Super. Ct. Feb. 3, 2015) (TCPA settlement where fees 1/3 of total benefit) (final approval order attached as Exhibit D); *Exclusively Cats Veterinary Hospital v. Cas. and Indem. Co., Inc. of MD*, Case No. 11-2370-B (Mass. Super. Ct. Mar. 6, 2014) (same); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, Case No. 12-CV-80178, Dkt. No. 230 (S.D. Fla. Sept. 27, 2016) (25% of fund); *Imhoff Investment, supra* (one third of fund); *Daisy, supra* (25% of fund); *Physicians Healthsource, supra* (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162, Dkt. No. 278 (W.D. Mich. Mar. 1, 2016) (one third fee); *Wagner Wellness, supra* (same); *Hawk Valley, supra* (same); *Van Sweden, Inc. v. 101 VT, Inc.*, Case No. 10-cv-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same).

As indicated above, Class Counsel have been litigating TCPA class actions since 2003, and have litigated class actions for many more years. Class Counsel undertook this case on a contingency basis, and achieved an excellent result in a fair and efficient manner through unique capabilities from their years of experience in these types of cases.

**C.      The Court Should Approve the Form, Content, and Procedure for Notifying the Settlement Class.**

The parties propose to issue notice to the Settlement Class by facsimile, and if the facsimile fails, then by mail to mailing addresses known to have been correlated to the facsimile numbers. A long-form notice will also be posted to the settlement website. Copies of the proposed notices are attached as Exhibits A-C to the Agreement.

Under federal law, notice of a settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-53 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). Rule 23(e)(i)(B) requires that notice of a settlement be provided "in a reasonable manner." Here, the parties have agreed to a reasonable manner of notice by sending the notice to the fax numbers in question, and then if necessary, by mail to the addresses associated with the fax numbers, as determined by the Settlement Administrator. The simple, one-page claim form will be delivered with the notice, so that members of the Settlement Class can complete the claim form and immediately return it by fax, mail, or online through the settlement website.

The notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The proposed notice satisfies this rule. Agreement Exs. A-C.

**V.      The Court Should Appoint KCC as the Settlement Administrator.**

Courts "often appoint a claims administrator or special master" to handle the administration of a class action settlement. MCL § 21.661; *see, e.g.*, *Kiefer v. Moran Foods,*

*LLC*, 2014 WL 3882504, at *1, *7 (D. Conn. Aug. 5, 2014). Here, Plaintiff's counsel and Cynosure jointly recommend that the Court appoint KCC as the Claims Administrator. KCC is a professional settlement firm with extensive experience administering class action settlements, including in TCPA class actions. KCC will issue the notice as approved by the Court, respond to inquiries from class members about the Settlement, receive and process the claim forms, and send checks to the claimants. Agreement ¶¶ 33, 43. The parties recommend KCC's approval.

## VI.    The Court Should Schedule a Final Fairness Hearing.

Finally, Plaintiff requests that the Court schedule a hearing after notice to the class to determine whether the settlement should be finally approved. A proposed Final Approval Order and Judgment is attached as Exhibit F to the Agreement.

## VII.   Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order in the form attached as Exhibit E to the Agreement, (1) provisionally certifying the Settlement Class; (2) approving the Notice Program and authorizing Notice on the basis that the terms of the Agreement are within the range of fair, adequate, and reasonable; (3) designating Plaintiff as the Class Representative; (4) appointing Class Counsel; (5) appointing Kurtzman Carson Consultants ("KCC") as the Settlement Administrator; (6) approving the procedures set forth in Section VIII of the Agreement for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; and (7) scheduling a Final Approval Hearing.

March 3, 2017                          Respectfully submitted,

                                       ARcare, Inc. individually and as the representative of a
                                       class of similarly-situated persons,

                                       By:   */s/ Phillip A. Bock*

                                       Randall K. Pulliam, Esq. (pro hac vice)
                                       rpulliam@cbplaw.com
                                       **CARNEY BATES & PULLIAM, PLLC**
                                       519 W. 7th St., Little Rock, AR 72201
                                       Little Rock, Arkansas 72202
                                       Telephone: (501) 312-8500
                                       Facsimile: (501) 312-8505

                                       Phillip A. Bock (pro hac vice)
                                       David M. Oppenheim (pro hac vice)
                                       **BOCK, HATCH, LEWIS & OPPENHEIM, LLC**
                                       134 N. La Salle St., Ste. 1000
                                       Chicago, IL 60602
                                       Telephone: (312) 658-5500
                                       Facsimile: (312) 658-5555

                                       Alan L. Cantor
                                       **SWARTZ & SWARTZ, P.C.**
                                       10 Marshall Street
                                       Boston, MA 02108
                                       Telephone: (617) 742-1900
                                       Fax: (617) 367-7193

## <u>CERTIFICATE OF SERVICE</u>

I am an attorney of record in this case. I hereby certify that on March 3, 2017, I caused a copy of the foregoing to be filed via the Court's ECF filing system, whereupon all counsel of record were served.

/s/ Phillip A. Bock
Attorney for Plaintiff

**EXHIBIT K**

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

FILED

JUN 2 4 2016

*Keith Brin*
CIRCUIT CLERK

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 15 CH 1926 |
| v. | ) ) | |
| ALMA LASERS, INC., | ) ) | |
| Defendant. | ) | |

## CORRECTED FINAL APPROVAL ORDER AND JUDGMENT *"NUNC PRO TUNC"*

The parties' proposed class action settlement coming before the Court for a fairness hearing on February 11, 2016, at 9:00 a.m., in Room C-302, Circuit Court of Lake County, 18 N. County St., Waukegan, Illinois 60085, at which all persons were given an opportunity to be heard, the Court considering the submissions of the parties, including Plaintiff's Motion for Final Approval of Class Action Settlement, the statements of counsel, and the fairness of the settlement's terms, **IT IS HEREBY ORDERED THAT:**

1.     This Court grants final approval of the Settlement Agreement, including, but not limited to, the releases therein, and finds that the settlement is in all respects fair, reasonable, and adequate, and in the best interests of all those affected by it. Any timely objections that were filed have been considered and are overruled. Accordingly, this Final Judgment and Order binds all members of the Class who did not opt out.

2.     This Court has jurisdiction over plaintiff, Physicians Healthsource, Inc. ("Plaintiff"), the members of the Class, defendant Alma Lasers, Inc. ("Defendant"), and the claims asserted in this lawsuit.

1

3.      This Court finds that the parties entered into the Settlement Agreement in good faith, following arm's-length negotiations, and that it was not collusive.

## Class Certification

4.      On December 3, 2015, pursuant to 735 ILCS 5/2-801 and 735 ILCS 5/2-802, the Court entered an order entitled, "Order Preliminarily Approving Class Action Settlement and Class Notice" (the "Preliminary Approval Order").

5.      The Preliminary Approval Order certified the following class solely for purposes of settlement: "All persons who between May 18, 2008 and November 13, 2015 were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant." (the "Class"). In the Settlement Agreement, the parties agreed that this is a proper class definition solely for purposes of settlement. Excluded from the Settlement Class are (a) the Defendant and its present and former officers, directors, employees, and their successors, heirs, assigns, and legal representatives; (b) all persons who opted out of the settlement by timely submitting their opt out request; and (c) the Court and its officers.

6.      The Preliminary Approval Order also appointed Plaintiff as the Class Representative and appointed attorney Brian J. Wanca of Anderson + Wanca as Class Counsel.

## Class Notice

7.      The parties have submitted the affidavit of Karen Rogan, senior consultant at Kurtzman Carson Consultants LLC, to demonstrate that the "Notice of Class Action and Proposed Settlement" (the "Notice") was sent to the members of the Class as ordered in the Preliminary Approval Order. The Court finds that the Notice and the process by which it was sent fully complied with the requirements of 735 ILCS 5/2-801 and 735 ILCS 5/2-802 and due process under the Illinois and United States Constitutions, constituted the best notice practicable

2

under the circumstances, and was due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

## Objections and Opt-Outs

8.    No members of the Class filed objections to the settlement.

9.    The following persons have requested exclusion and are hereby excluded from the Class and this case: Barbara Clements, Michael Fleischer, Amy Lancaster, Dr. Randall Rigsby D.M.D., Janice Ray, Dr. James Yang D.D.S., John K. Butterick, M.D.

## Class Compensation

10.    Defendant have created a settlement fund totaling $4,500,000.00 (the "Settlement Fund") and made it available to pay class member claims, to pay an incentive award to Plaintiff for serving as the Class Representative, and to pay Class Counsel's attorneys' fees and reasonable out-of-pocket expenses.

11.    As the Parties agreed in the Settlement Agreement, each member of the Class who submits a timely and valid Claim Form will be paid $76.15 ($2,885,000.00/37,885 class members), subject only to a *pro rata* reduction in the event that the claims and other payments approved herein otherwise would exceed the total Settlement Fund. The Settlement Administrator will cause those checks to be mailed after receiving the funds from Defendant. As agreed between the parties, checks issued to the class members will be void 181 days after issuance.  Any money remaining from checks issued to claiming class members but not cashed within 180 days of issuance shall be returned to Defendant.

## Awards of Incentive Award and Attorneys' Fees and Costs

12.    Pursuant to the Parties' agreement, the Court approves and awards a $15,000.00 incentive award to Plaintiff for serving as the class representative in this matter. In accordance with the Settlement Agreement, Defendant will pay that amount from the Settlement Fund five

3

(5) days after the Agreement's Effective Date. If payment by Defendant to the Settlement Administrator is late, Defendant shall pay interest on the amount due at the Illinois statutory interest rate of 9% per annum.

      13.    Pursuant to the Parties' agreement, the Court approves and awards attorneys' fees to Class Counsel in the amount of $1,500,000.00 (one third of the Settlement Fund), plus reasonable out-of-pocket expenses incurred up to $50,000.00. Defendant will pay those amounts from the Settlement Fund five (5) days after the Agreement's Effective Date. If payment by Defendant to the Settlement Administrator is late, Defendant shall pay interest on the amount due at the Illinois statutory interest rate of 9% per annum. Class Counsel has expressed an interest in receiving its fee award from the Settlement Fund in periodic payments, rather than in a lump sum, which the Court approves if Class Counsel elects to receive periodic payments. The receipt of attorneys' fees by Class Counsel in periodic payments, if elected by Class Counsel, does not impact Defendant's rights or obligations under this Agreement in any way and Defendant shall not have any further obligation with respect to the payment of attorneys' fees following making the payments to the Settlement Administrator described in this paragraph. Kurtzman Carson Consultants ("KCC"), the fund administrator, by this Order, is permitted to enter into any and all agreements with the attorneys and third parties to provide for such periodic payment of the fee award. The attorneys fees awarded to class counsel shall be paid by the fund administrator, KCC to an assignment company. Class Counsel shall receive his attorneys fees in periodic payments according to the agreements. Class Counsel has no present right to payment of its attorneys fees. Prior to the payment by the fund administrator to the assignment company, Class counsel shall indemnify and hold harmless the fund administrator, KCC. The Court

authorizes the fund administrator, KCC, to execute the necessary documents to effectuate the fee deferral.

## Releases and Dismissal

14.    All claims or causes of action of any kind by Plaintiff and all Class members are forever barred and released pursuant to the terms of the releases set forth in the parties' Settlement Agreement.  This release does not apply to actions brought by the government.

15.    This lawsuit is dismissed with prejudice as to Plaintiff and all members of the Class (except that the dismissal is without prejudice as to those persons identified above who submitted valid exclusions from the Class), and without fees or costs except as provided above.

## Other Provisions

16.    The Court adopts and incorporates all of the terms of the Settlement Agreement by reference here.

17.    This Court retains continuing jurisdiction over this action, Plaintiff, all members of the Class, and Defendant to determine all matters relating in any way to this Final Judgment and Order, the Preliminary Approval Order, or the Settlement Agreement, including, but not limited to, their administration, implementation, interpretation, or enforcement.

18.    The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

19.    The Court finds that there is no just reason to delay the enforcement of or appeal from this Final Approval Order and Judgment.

Margaret A. Marcouiller

Dated: February _____, 2016        _____
                                        Honorable

5

SO AGREED:

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL  60008
Telephone:  847-368-1500

*Attorneys for Plaintiff and the Class*

John F. Kloecker
LOCKE LORD LLP
111 S. Wacker Dr., Suite 4400
Chicago, IL  60606
Telephone:  312-443-0235

*Attorneys for Defendant*

6

**EXHIBIT L**

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| ROSS M. GOOD, individually and as the representative of the certified class, | ) ) ) | |
| Plaintiff/Judgment Creditor, | ) ) | |
| v. | ) ) | No. 09 CH 3731 |
| ROGAN SHOES, INC. | ) ) | Judge Diane E. Winter |
| Defendant/Judgment Debtor, | ) ) | |
| v. | ) ) | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA and THE TRAVELERS INDEMNITY COMPANY, | ) ) ) ) | |
| Third Party Citation Respondents. | ) | |

**CORRECTED FINAL APPROVAL ORDER AND JUDGMENT**

The parties' proposed class action settlement coming before the Court for a fairness

hearing on December 6, 2016, at 9:00 a.m. in Room C-305, Circuit Court of Lake County, 18 N.

County St., Waukegan, Illinois 60085, at which all persons were given an opportunity to be

heard, the Court considering the submissions of the parties, including Plaintiff's Motion for Final

Approval of Class Action Settlement, the statements of counsel, and the fairness of the

settlement's terms, **IT IS HEREBY ORDERED THAT:**

1.      This Court grants final approval of the Settlement Agreement, including, but not

limited to, the releases therein, and finds that the settlement is in all respects fair, reasonable, and

adequate, and in the best interests of all those affected by it. Any timely objections that were

filed have been considered and are overruled. Accordingly, this Final Judgment and Order binds

all members of the Class who did not opt out.

1

2.     This Court has jurisdiction over plaintiff, Ross M. Good ("Plaintiff"), the members of the Class, defendant Rogan Shoes, Inc. ("Defendant"), Citation Respondents Travelers Property Casualty Insurance Company and Travelers Indemnity Company (collectively, "Travelers") and the claims asserted in this lawsuit.

3.     This Court finds that the parties entered into the Settlement Agreement in good faith, following arm's-length negotiations, and that it was not collusive.

## Class Certification

4.     On December 6, 2016, pursuant to 735 ILCS 5/2-801 and 735 ILCS 5/2-802, the Court entered an order entitled, "Order Preliminarily Approving Class Action Settlement and Class Notice" (the "Preliminary Approval Order").

5.     The Preliminary Approval Order certified the following class solely for purposes of settlement: "All persons to whom Defendant provided an electronically printed credit or debit card receipt at the point of sale or transaction during the period of June 4, 2008 through June 30, 2009 and which receipt displayed the expiration date of the purchaser's credit/debit card or more than the last five digits of the card number." (the "Class"). In the Settlement Agreement, the parties agreed that this is a proper class definition solely for purposes of settlement. Excluded from the Settlement Class are (a) the Defendant and its present and former officers, directors, employees, and their successors, heirs, assigns, and legal representatives; (b) all persons who opted out of the settlement by timely submitting their opt out request; and (c) the Court and its officers.

6.     The Preliminary Approval Order also appointed Plaintiffs as the Class Representatives and appointed attorneys Phillip A. Bock of Bock, Hatch, Lewis & Oppenheim, LLC and Brian J. Wanca of Anderson + Wanca as Class Counsel.

## Class Notice

7.      Plaintiff submitted the affidavits of Dorothy Sue Merryman and Mark Rogan to demonstrate that the "Notice of Class Action and Proposed Settlement" (the "Notice") was sent to the members of the Class and published as ordered in the Preliminary Approval Order. The Court finds that the Notice and the process by which it was sent fully complied with the requirements of 735 ILCS 5/2-801 and 735 ILCS 5/2-802 and due process under the Illinois and United States Constitutions, constituted the best notice practicable under the circumstances, and was due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

## Objections and Opt-Outs

8.      No members of the Class filed objections to the settlement.

9.      The following persons have requested exclusion and are hereby excluded from the Class and this case: Dinah Hyden, Catherine Lawson, and Bruce Schley.

## Class Compensation

10.      Travelers has created a settlement fund totaling $7,500,000.00 (the "Settlement Fund") and made it available to pay class member claims, to pay an incentive award to Plaintiff for serving as the Class Representative, and to pay Class Counsel's attorneys' fees and reasonable out-of-pocket expenses.

11.      As the Parties agreed in the Settlement Agreement, each member of the Class who submits a timely and valid Claim Form will be paid $1,000.00, subject to a *pro rata* reduction in the event that the claims and other payments approved herein otherwise would exceed the total Settlement Fund. The Settlement Administrator (which is approved by the Court to receive the payments called for by the Settlement Agreement from the Settlement Fund) will cause those checks to be mailed after receiving the funds from Travelers. As agreed between the parties, checks issued to the class members will be void 91 days after issuance.  If the payments to

Claimants total less than $1,125,000.00, then the difference between $1,125,000.00 and the amount paid to Claimants shall be paid as a *cy pres* award as follows: (1) 50% to Prairie State Legal Services; and (2) the remaining 50% to be paid in equal shares to Citizens for Conservation; Assata's Daughters; Hawthorne Scholastic Academy; and Chicago's Independent Radio Project, pursuant to 735 ILCS 5/2-807. If the payments to Claimants total less than $1,125,000.00, any funds from voided checks issued to claiming Class members shall also be paid to the above entities in the same proportions.

## Awards of Incentive Award and Attorneys' Fees and Costs

12.    Pursuant to the Parties' agreement, the Court approves and awards a $5,500.00 incentive award to Plaintiff and a $4,000.00 incentive award to former plaintiff David Hammerl for serving as the class representatives in this matter. In accordance with the Settlement Agreement, Travelers will pay those amounts from the Settlement Fund on the Agreement's Effective Date. If payment by Travelers is late, Travelers shall pay interest on the amount due at the Illinois statutory interest rate of 9% per annum.

13.    Pursuant to the Parties' agreement, the Court approves and awards attorney's fees to Class Counsel in the amount of $2,500,000.00 (one third of the Settlement Fund) plus reasonable out-of-pocket expenses incurred (which does not include the cost of class administration and notice), in the amount of $26,892.83, and costs of class administration and notice in the amount of $42,490.00. Travelers will pay those amounts from the Settlement Fund on the Agreement's Effective Date. If payment by Travelers is late, Travelers shall pay interest on the amount due at the Illinois statutory interest rate of 9% per annum. Some of Class Counsel have expressed an interest in receiving their half of the fee award from the Settlement Fund in periodic payments, rather than in a lump sum, which the Court approves if either of Class Counsel elects to receive periodic payments. The receipt of attorneys' fees by one of Class

Counsel in periodic payments, if elected by it, does not impact Travelers' rights or obligations under this Agreement in any way and Travelers shall not have any further obligation with respect to the payment of attorneys' fees following making the payments to the Settlement Administrator described in this paragraph.  The Settlement Administrator, by this Order, is approved by the Court to receive the payments called for by the Settlement Agreement from the Settlement Fund and is permitted to enter into any and all agreements with the attorneys and third parties to provide for such periodic payment of the fee award.  The attorneys fees awarded to class counsel may be paid by the Settlement Administrator to an assignment company.  A Class Counsel may receive his attorneys fees in periodic payments according to the agreements.  Such Class Counsel has no present right to payment of its attorneys fees. Prior to a payment by the Settlement Administrator to the assignment company, the Class Counsel involved shall indemnify and hold harmless the Settlement Administrator.  The Court authorizes the Settlement Administrator to execute the necessary documents to effectuate the fee deferral.  If one Class Counsel enters into such agreement with the Settlement Administrator, it will not affect the Settlement Administrator's obligation to promptly pay attorneys fees and expenses to the other Class Counsel.

## Releases and Dismissal

14.     All claims or causes of action of any kind by Plaintiff and all Class members are forever barred and released pursuant to the terms of the releases set forth in the parties' Settlement Agreement.

15.     This lawsuit is dismissed with prejudice as to Plaintiff and all members of the Class (except that the dismissal is without prejudice as to those persons identified above who submitted valid exclusions from the Class), and without fees or costs except as provided above.

## **Other Provisions**

16.     The Court adopts and incorporates all of the terms of the Settlement Agreement by reference here.

17.     This Court retains continuing jurisdiction over this action, Plaintiff, all members of the Class, and Defendant to determine all matters relating in any way to this Final Judgment and Order, the Preliminary Approval Order, or the Settlement Agreement, including, but not limited to, their administration, implementation, interpretation, or enforcement.

18.     The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

19.     The Court finds that there is no just reason to delay the enforcement of or appeal from this Final Approval Order and Judgment.


DIANE E. WINTER

Dated: _____          _____
                                    Honorable Diane E. Winter

**EXHIBIT M**

**Dr. Steven Arkin v. H. D. Smith, LLC and Smith Medical Partners, LLC, et al.**
**Principal Terms of Class Settlement**

1.  The parties will seek court approval of the following settlement to resolve all claims regarding unsolicited facsimile advertisements sent by or on behalf of Defendants from September 26, 2013 through the date of preliminary approval (the "Class Period"), in the following venue: Lake County, Illinois (the "Settlement Action"). Defendants agree that they will not attempt a pick off of Plaintiff. The parties stipulate to dismiss Civil Action No. 8:17-cv-02233 without prejudice within 7 days of signing the term sheet. Defendants agree to accept service of the newly filed action by Plaintiff.

2.  Defendants will make available a total of $21,000,000.00 (the "Settlement Fund") inclusive of all payments, fees and costs. In no event shall Defendants be required to pay any amounts other than or in addition to $21,000,000.00. Defendants need not segregate funds or otherwise create special accounts to hold the Settlement Fund. Defendants will not relinquish control of any money until payments are due. The Defendants will keep all unclaimed funds.

3.  The Settlement Class will be defined as: All persons who were sent, by or on behalf of H. D. Smith, LLC or Smith Medical Partners, LLC, one or more advertisements by facsimile from September 26, 2013 through the date of preliminary approval.

4.  Class Notice shall be sent by fax and, if unsuccessful after three attempts, by postcard via U.S. mail. The settlement administrator will be authorized to take reasonable steps to locate addresses of individuals to whom postcards are not successfully delivered.

5.  The Settlement Fund will be distributed on a "claims-made" basis as follows:

    (a)  Payments to claiming class members. Defendants agree to pay timely claims submitted by members of the Settlement Class. Class members shall have 60 days to submit claims. Claiming class members shall receive $493.32[1] per fax number included in the class list, unless the total amount of claims are such that, after payment of the expenses described in subparagraphs (b) and (c) below, they would exceed the amount of the Settlement Fund, in which case claiming class members shall receive a pro rata share of the Settlement Fund after the expenses described in subparagraphs (b) and (c) have been paid. If a Settlement Class Member entitled to receive $600 or more fails to deliver a signed and completed Form W-9 to the Settlement Administrator by the final approval hearing, the member's payment will be subject to withholding as required by then-existing rules and regulations of the Internal Revenue Service.

    (b)  Incentive award to the class representative. Defendants agree to pay and will not oppose or appeal a request for an incentive award of $15,000.00 from the Settlement Fund to the named Plaintiff for serving as the Class Representative.

    (c)  Fees and expenses to Class Counsel. Defendants agree to pay and will not oppose a request by Class Counsel (Anderson + Wanca) for attorneys' fees in an amount equal

---

[1] The amount per fax number may change as the parties work collaboratively to finalize the class list.

to one third of the Settlement Fund, and reasonable out-of-pocket expenses from the Settlement Fund, to be paid on the later of January 8, 2019 or after all potential appeals to Final Approval are exhausted. Notice fees and administrative fees are to be paid as agreed with the class administrator. Class Counsel may agree to defer some or all of its attorneys' fees.

(d)    Reversion to Defendants.  After making all required payments pursuant to this Paragraph 5, Defendants shall keep all unclaimed money.

6.    The Settlement Class will broadly release Defendants and affiliates (a comprehensive list of types of affiliates will be provided by Defendants), as well as any other entities potentially involved in the transmission of the subject facsimiles from all claims arising out of or relating to Defendants' advertising faxes sent during the Class Period (*see* class definition above) and from all claims that were or could have been asserted in the case.

7.    From the Settlement Fund, Defendants shall pay the cost to retain a third party claims administrator who will issue the class notice, receive the claim forms, assist class members in completing and submitting forms, and provide a list of accepted and rejected claims to counsel for the parties. Plaintiff and Defendants select KCC as the claims administrator. The decision of the claims administrator regarding whether a claim is valid is final and binding on the parties. Upon request, the third party claims administrator will provide copies of all claim forms to counsel for the parties.

8.    Any Party shall have the right, but not the obligation, to void or rescind the settlement, for any reason or no reason at all, at any time prior to the Court's hearing on an application for final approval. Any Party shall also have the right to void or rescind the settlement if any of the following events occur: (a) the Court does not approve the settlement without material modifications to the parties' settlement agreement; (b) there are material modifications made to the parties' settlement agreement by the Court, by any other court, or by any tribunal, agency, entity, or person that are not accepted by any Party; or (c) any objection to the settlement is sustained by the Court, regardless of any right to appeal. Defendants shall also have the unilateral right to void or rescind the settlement should 2% or more of the Class opt-out of the proposed settlement. In the event that the right to void or rescind the settlement is exercised, the settlement shall be deemed void *ab initio* and the parties shall be deemed to be in the same position as existed prior to the execution of the settlement agreement, except that the exercising party shall bear the costs for notice and settlement administration incurred. The parties agree that if the litigation continues for any reason whatsoever, the matter will be re-filed and litigated in the U.S. District Court for the Middle District of Florida.

9.    This term sheet constitutes a binding agreement if accepted. The parties will submit a formal written settlement agreement and other papers necessary to obtain the Court's preliminary and final approval of this settlement. Plaintiff's counsel will draft and provide such documents for Defendants' review, revisions, and approval. The parties anticipate seeking preliminary approval from the Court in the Settlement Action within 28 days of signing this term sheet.

**SMITH MEDICAL PARTNERS, LLC**

By: *Allison Magarlane*

Its: *Corporate Counsel*

Dated: 8/22/18


**H.D. SMITH, LLC**

By: *Allison Magarlane*

Its: *Corporate Counsel*

Dated: 8/22/18


**PLAINTIFF AND THE
SETTLEMENT CLASS**

By: _____

~~Brian J. Wanca~~ Ross Good
One of Plaintiff's Attorneys

Dated: 8/17/2018

**PROOF OF CLAIM**
**Dr. Steven Arkin v. Smith Medical Partners, LLC, et al.**

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund:*

1. **You Must Provide Your Contact Information.**

   Name: _____

   Company: _____

   Address: _____

   City/State/Zip Code: _____

   Fax Number(s): _____
         [List all numbers.  You may attach a separate sheet.]

2. **You Must Verify Ownership of the Fax Number(s) Listed in #1 above:**

   (a)   "The fax number(s) identified above or attached to this Proof of Claim was/were mine or my company's from September 26, 2013 through [insert date of preliminary approval]."

                                             _____

   *OR*                           (Sign your name here)

   (b)   "The fax number(s) identified in No. 1 above or attached to this Proof of Claim was **not**/were **not** mine or my company's from September 26, 2013 through [insert date of preliminary approval]."  Explain when you obtained the fax number(s) identified in No. 1 above or attached to this Proof of Claim:

       _____
       _____
       _____

                               _____
                             (Sign your name here)

3. **You Must Return this Claim Form by [insert date] 2018:**

   a.    Fax this Claim Form to:  <fax number for claims >

        *OR*

   b.    Mail this Claim Form to:  [CLAIMS ADMINISTRATOR]

        *OR*

   c.    Submit this claim form electronically at **[website]**

**EXHIBIT N**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RUSGO AND DEPANICIS, INC.,<br>individually and as the representative<br>of a class of similarly situated<br>persons, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) Case No. 16-CV-12966<br>) Honorable Linda V. Parker |
| v. | )<br>) |
| WALTER J. SVENKESEN<br>INSURANCE AGENCY, INC.<br>D/B/A VIKING INSURANCE<br>AGENCY and WALTER J.<br>SVENKESEN, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## **FINAL APPROVAL ORDER**

The matter coming before the Court on the request for final approval of the class action settlement by Plaintiff, Rusgo and Depanicis, Inc. ("Plaintiff"), and Defendants Walter J. Svenkesen Insurance Agency, Inc., d/b/a Viking Insurance Agency and Walter J. Svenkesen ("Defendants"), due notice given, the parties appearing through counsel, and the Court fully advised in the premises,

**IT IS HEREBY ORDERED**:

1.    This Court has jurisdiction over the parties, the members of the Settlement Class, and the claims asserted in this lawsuit.

2.    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the settlement of this action, as embodied in the terms of the Settlement Agreement, is

hereby finally approved as a fair, reasonable and adequate settlement of this case in the best interests of the Settlement Class considering the factual, legal, practical and procedural considerations raised by this case.

3. The Settlement Class is defined as follows: "Each person, including but not limited to the lists of persons produced by Defendants totaling 683 fax numbers, that was sent one or more telephone facsimile messages through faxbb.com from June through September, 2016 promoting the availability or quality of property, goods, or services offered by 'Viking Insurance,' but not stating on its first page that the recipient may make a request to the sender not to send any future ads and that failure to comply with such a request within 30 days is unlawful." Excluded from the Settlement Class are Defendants and their Insurers, Admiral Insurance Company ("Admiral") and Secura Insurance Company ("Secura") (collectively, the "Insurers"), including any of their parents, subsidiaries, affiliates or controlled persons, as well as their officers, directors, agents, servants, and employees, and the immediate family members of such persons.

4. The Court finds that the Settlement Agreement was entered in good faith following arm's-length negotiations.

5. Upon the Declaration of Dorothy Sue Merryman, the Court finds that the notice provided to the Settlement Class Members was the best notice

practicable under the circumstances and it satisfied the requirements of due process and Federal Rule 23(e)(1).

6.    Upon the Declaration of Dora Brantley, the Court finds that notice has been given to the appropriate State and Federal officials in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715.

7.    No objections were received.

8.    No persons requested exclusion from the Settlement Class and the settlement.

9.    After due consideration of, among other things, the uncertainty about the likelihood of: (a) the Class's ultimate success on the merits; (b) the range of the Class's possible recovery; (c) the complexity, expense and duration of the litigation; (d) the substance and amount of opposition to the settlement; (e) the state of proceedings at which the settlement was achieved; (f) all written submissions, declarations and arguments of counsel; and (g) after notice and hearing, this Court finds that the settlement is fair, adequate and reasonable. This Court also finds that the financial settlement terms fall within the range of settlement terms that would be considered fair, adequate and reasonable. Accordingly, this Settlement Agreement should be and is APPROVED and shall govern all issues regarding the settlement and all rights of the Parties, including the Class Members. Each Class Member (including any person or entity claiming by or

through him, her or it, but except those persons identified above who have previously excluded themselves from the Settlement Class) shall be bound by the Settlement Agreement, including being subject to the Releases set forth in the Settlement Agreement.

10.    Defendants, by and through their Insurers, have created a $683,000.00 settlement fund (the "Settlement Fund") to pay valid class member claims, class action settlement administration costs, attorney's fees, costs, and expenses, and an incentive award to Plaintiff as determined and awarded by this Court. Unclaimed monies in the Settlement Fund, if any, shall revert to Admiral.

11.    As agreed in and subject to the Settlement Agreement, each member of the Settlement Class who submits a timely and valid Claim Form will be mailed a check not to exceed $1,000.00 from the Settlement Fund. The Claims Administrator will cause those checks to be mailed after receiving the Settlement Funds. Checks issued to the claiming Settlement Class members will be void 181 days after issuance.

12.    As agreed between the parties, the Court approves Class Counsel's attorneys' fees in the total amount of $227,666.67 plus out-of-pocket expenses (including payments to the claims administrator) up to $15,000.00. Those amounts shall be paid from the Settlement Fund when this Final Approval Order becomes final as those terms are defined in the Settlement Agreement.

4

13.     As agreed between the parties, the Court approves a $15,000 incentive award to Plaintiff Rusgo and Depanicis, Inc. for serving as the Class Representative. In accordance with the Settlement Agreement, that amount shall be paid from the Settlement Fund when this Final Approval Order becomes final as those terms are defined in the Settlement Agreement.

14.     The Court expressly adopts and incorporates herein all the terms of the Settlement Agreement. The Parties to the Settlement Agreement shall carry out their respective obligations under that Agreement.

15.     This action, including all claims against Defendants asserted in this lawsuit, or which could have been asserted in this lawsuit, by or on behalf of Plaintiff and all Settlement Class members against Defendants, is hereby dismissed with prejudice and without taxable costs to any party.

16.     All claims or causes of action of any kind by any Settlement Class member or anyone claiming by or through him, her or it brought in this Court or any other forum (other than those by persons who have opted out of this action) are barred pursuant to the Releases set forth in the Settlement Agreement.  All persons and entities are enjoined from asserting any claims that are being settled or released herein, either directly or indirectly, against Defendants or their Insurers, in this Court or any other court or forum.

5

17.     If (a) the Settlement Agreement is terminated pursuant to its terms, or (b) the Settlement Agreement or this Final Approval Order do not for any reason become effective, or (c) the Settlement Agreement or Final Approval Order are reversed, vacated or modified in any material or substantive respect, then any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated. If the settlement does not become final in accordance with the terms of the Settlement Agreement, this Final Approval Order shall be void and be deemed vacated.

18.     The Court retains jurisdiction for 180 days over this action, Plaintiff and all members of the Settlement Class, Defendants, and Defendants' Insurers, to determine all matters relating in any way to this Final Approval Order, the Preliminary Approval Order, or the Settlement Agreement, including but not limited to, their administration, implementation, interpretation or enforcement. The Court further retains jurisdiction to enforce this Order.

19.     The Court finds that there is no just reason to delay the enforcement of this Final Approval Order.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 19, 2017

6