TECHNOLOGY TRAINING
ASSOCIATES, INC., *et al.*,

        Plaintiffs,

v.                                      Case No. 8:16-cv-1622-T-AEP

BUCCANEERS LIMITED PARTNERSHIP,

        Defendant.

_____/

## ORDER

Once again, the Court confronts the issue of the propriety of the preliminary approval of the settlement of the class claims in this matter. Procedurally, however, the landscape has changed. Following reversal and remand of the Court's prior Order denying the Motion to Intervene, the Intervenors, or *Cin-Q* Plaintiffs, now appear in this action. By the instant motion, *Cin-Q* Plaintiffs seek a ruling by this Court decertifying the settlement class, vacating the preliminary approval order, and striking the class allegations (Doc. 131). Both Plaintiffs Technology Training Associates, Inc. and Larry E. Schwanke, D.C. d/b/a Back to Basiccs Family Chiropractic (collectively, "*TTA* Plaintiffs") and Defendant Buccaneers Limited Partnership ("BLP") respond in opposition (Docs. 141 & 148). For the reasons detailed below, *Cin-Q* Plaintiffs' Renewed Motion to Decertify Settlement Class, Vacate Preliminary Approval Order, and Strike Class Allegations (Doc. 131) is granted.

### I.      Background

#### A.    *Cin-Q Action*

In June 2013, Cin-Q Automobiles, Inc. ("Cin-Q") initiated an action against BLP, alleging that BLP sent unsolicited advertisements via facsimile to Cin-Q in violation of the

TCPA and its implementing regulations. *See Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship, et al.*, Case No. 8:13-cv-1592-T-AEP (M.D. Fla. filed June 18, 2013) ("*Cin-Q Action*") (Doc. 1). The faxed advertisements pertained to Tampa Bay Buccaneers tickets and were allegedly sent by or on behalf of BLP in 2009 and 2010. In January 2014, the Court allowed Cin-Q to file a Second Amended Class Action Complaint adding Medical & Chiropractic Clinic, Inc. ("M&C") as another named plaintiff and putative class representative (collectively, "*Cin-Q* Plaintiffs"). *Cin-Q Action*, (Doc. 68). The Second Amended Class Action Complaint in the *Cin-Q Action* defined the putative class as follows:

> All persons from July 1, 2009, to present who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt out language required by 47 C.F.R. 64.1200.

*See Cin-Q Action*, (Doc. 37, Ex. 1, at ¶25).

During the proceedings in the *Cin-Q Action*, the parties engaged in extensive discovery, motion practice, and mediation conferences, with no resolution, over the course of three years. On March 25, 2016, after surviving BLP's motions to dismiss and for summary judgment, *Cin-Q* Plaintiffs filed their Motion for Class Certification. *Cin-Q Action*, (Doc. 207). BLP received extensions to file its response to the Motion for Class Certification, during which the parties continued to leave settlement discussions open. BLP then moved, on April 18, 2016, for a settlement conference before the Court or a designee as the parties had reached an impasse in their other settlement efforts, which *Cin-Q* Plaintiffs opposed. *Cin-Q Action*, (Docs. 215 & 219). Indeed, on May 2, 2016, at the request of *Cin-Q* Plaintiffs, the mediator declared an impasse. *Cin-Q Action*, (Doc. 218).

BLP never filed a response to *Cin-Q* Plaintiffs' Motion for Class Certification. Instead, on May 12, 2016, BLP filed a Notice of Pendency of Related Action indicating that a related action was filed in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County,

Florida, captioned *Technology Training Associates, Inc. v. Buccaneers Limited Partnership, et al.*, Case No. 16-CA-004333 (Fla. Cir. Ct.) (filed May 6, 2016). *Cin-Q Action*, (Doc. 222).

### B.    *Technology Training I Action*

Namely, after the settlement discussions in the *Cin-Q Action* reached an impasse, and while the motion for class certification was still pending in the *Cin-Q Action*, *TTA* Plaintiffs contacted BLP regarding pursuit of the same class claims on behalf of the same purported class at issue in the *Cin-Q Action*. Subsequently, on May 6, 2016, *TTA* Plaintiffs initiated the aforementioned action against BLP in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, alleging violations of the TCPA on behalf of the same class as the *Cin-Q Action* and regarding the same facsimile advertisements. *See Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, No. 16-CA-4333 (Fla. Cir. Ct.) (filed May 6, 2016) ("*Technology Training I Action*") (Doc. 1). *TTA* Plaintiffs similarly sought damages and injunctive relief under the TCPA both on behalf of themselves and a proposed class of similarly situated persons. Upon becoming aware of the pending *Technology Training I Action*, *Cin-Q* Plaintiffs sought to enjoin BLP from proceeding in the *Technology Training I Action* and moved for an order immediately certifying the class in the *Cin-Q Action* rather than in any other action. *Cin-Q Action*, (Docs. 223 & 224). *Cin-Q* Plaintiffs also moved the state court on May 13, 2016, to allow them to intervene in, to dismiss, or to stay the *Technology Training I Action*. The state court set the motion for a hearing to occur on May 19, 2016, but, prior to the state court's consideration of *Cin-Q* Plaintiffs' motion, *TTA* Plaintiffs voluntarily dismissed the *Technology Training I Action* on May 18, 2016.

Shortly thereafter, and given the existence of the claims by *TTA* Plaintiffs, the undersigned conducted a status conference in the *Cin-Q Action* on May 25, 2016 to address multiple motions filed by the parties in that action, including BLP's motion for settlement

conference, *Cin-Q* Plaintiffs' motion to enjoin BLP from participating in a competing case, and BLP's motion for a determination that the mediation privilege had been waived. *Cin-Q Action*, (Docs. 215, 223, 231). After hearing oral argument regarding the motions and the status of the *Technology Training I Action*, the undersigned denied all three motions and directed *Cin-Q* Plaintiffs and BLP to conduct another mediation conference prior to BLP's deadline for filing a response to the motion for class certification in the *Cin-Q Action* on June 20, 2016. *Cin-Q Action*, (Doc. 233). During the hearing, the undersigned further directed that, if BLP entered into a settlement affecting class certification in the *Cin-Q Action*, BLP must notify *Cin-Q* Plaintiffs of the potential settlement in any separate action three days prior to the filing of any settlement or pleading relating to a settlement.

## C. *Technology Training II Action*

Following dismissal of the *Technology Training I Action*, *TTA* Plaintiffs and BLP conducted two full days of mediation, which resulted in an agreement on a class settlement (the "Settlement") on June 16, 2016. Upon reaching the Settlement with *TTA* Plaintiffs, BLP provided written notice to *Cin-Q* Plaintiffs of the Settlement in accordance with the undersigned's directive at the May 25, 2016 hearing. Subsequently, *TTA* Plaintiffs initiated the instant action ("*Technology Training II Action*" or "this action") on June 20, 2016 (Doc. 1). *TTA* Plaintiffs filed their Class Action Complaint on behalf of themselves and a class of similarly situated individuals, alleging claims for violations of the TCPA, conversion, and invasion of privacy. Essentially, *TTA* Plaintiffs alleged that BLP violated the TCPA by sending unsolicited advertisements by facsimile in 2009 or 2010 offering tickets to Tampa Bay Buccaneers games, while failing to provide the proper opt-out notice required by the TCPA. In doing so, *TTA* Plaintiffs defined the similarly situated members of the class as:

> All persons who, in 2009 or 2010, received one or more facsimile advertisements sent by or on behalf of BLP and offering tickets for Tampa Bay Buccaneers games.

(Doc. 1, at ¶17). Specifically excluded from the Settlement Class are the following Persons: (1) BLP and its respective parents, subsidiaries, divisions, affiliates, associated entities, business units, predecessors in interest, successors, successors in interest and representatives and each of their respective immediate family members; (2) Class Counsel; and (3) the judges who have presided over the Litigation and any related cases (Doc. 1, at ¶17). As for the relief requested, Plaintiffs sought statutory damages, treble damages, injunctive relief, costs, and attorney's fees.

On the same day, *Cin-Q* Plaintiffs filed a Motion to Transfer Related Case under Local Rule 1.04(b), to Consolidate Cases, and Appoint Interim Class Counsel seeking to (1) transfer the *Technology Training II Action* to the undersigned pursuant to Local Rule 1.04(b); (2) to consolidate the *Cin-Q Action* with the *Technology Training II Action* following transfer; and (3) appoint the law firms of Addison & Howard, P.A. ("Addison"), and Anderson + Wanca as interim co-lead counsel for the class (Doc. 8). Additionally, on that day, *Cin-Q* Plaintiffs filed an identical Motion to Transfer Related Case under Local Rule 1.04(b), to Consolidate Cases, and Appoint Interim Class Counsel in the *Cin-Q Action* seeking the same relief, while BLP filed a Motion for a Stay or, in the Alternative, an Extension of Time in the *Cin-Q Action* seeking a stay of the *Cin-Q Action* or, alternatively, an extension of time to respond to the *Cin-Q Action* motion for class certification. *Cin-Q Action*, (Docs. 236 & 237). Subsequently, on June 22, 2016, *TTA* Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class (Doc. 18). Pursuant to Rule 23(e), Plaintiffs requested, on behalf of themselves and a proposed settlement class of similarly situated persons (the "Settlement Class"), that the Court enter an order (1) preliminarily approving the parties'

proposed class action settlement agreement (the "Settlement Agreement") that appoints Plaintiffs as class representatives and their attorneys as class counsel; (2) approving the form of Class Notice attached to the Settlement Agreement and its dissemination to the Settlement Class by U.S. mail, website, and publication; and (3) set dates for opt-outs, objections, and a fairness hearing (Doc. 18).

Thereafter, on June 27, 2016, the undersigned conducted a status conference in the *Cin-Q Action* and the *Technology Training II Action*. After hearing oral argument regarding the motions for class certification, to transfer, and to stay, pending in both actions, the undersigned granted BLP's request to stay the *Cin-Q Action*, stayed the *Cin-Q Action* pending further order of the Court, and permitted the parties in both the *Cin-Q Action* and the *Technology Training II Action* to file a supplemental memorandum regarding the appropriateness of conducting an inquiry into the allegations by *Cin-Q* Plaintiffs regarding the occurrence of a "reverse auction" in the *Technology Training II Action*. In accordance with the Court's directive, the parties briefed the issue of a "reverse auction" and the appropriateness of considering the issue prior to or after preliminary approval of class certification and the Settlement (Docs. 29-31).

On July 8, 2016, the deadline for the briefs, *Cin-Q* Plaintiffs additionally submitted their Motion to Intervene (Doc. 28). By the motion, *Cin-Q* Plaintiffs sought intervention as of right under Rule 24(a) and by permission under Rule 24(b). Though *Cin-Q* Plaintiffs received permission from the Court to submit a brief as to the issue of a reverse auction, *Cin-Q* Plaintiffs wanted to intervene to move to strike the class allegations, arguing that the *TTA* Plaintiffs were barred by the statute of limitations and, if necessary, to oppose the motion for preliminary or final approval. In support of intervention, *Cin-Q* Plaintiffs argued that their motion was timely, they possessed an interest related to the subject matter of the *Technology Training II Action*, the disposition of the *Technology Training II Action* might impede or impair their ability to

protect their interests, and their interests were not adequately represented by the parties in the *Technology Training II Action*. Both *TTA* Plaintiffs and BLP opposed *Cin-Q* Plaintiffs' request to intervene (Docs. 37 & 39).

After conducting further hearings on the matter, the Court issued its Order denying *Cin-Q* Plaintiffs' Motion to Transfer Related Case under Local Rule 1.04(b), to Consolidate Cases, and Appoint Interim Class Counsel; denying *Cin-Q* Plaintiffs' Motion to Intervene; and granting *TTA* Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Notice to the Class (Doc. 56). In doing so, the Court considered, at length, the issue of *TTA* Plaintiffs' standing to bring the *Technology Training II Action* given *Cin-Q* Plaintiffs' argument that the statute of limitations barred *TTA* Plaintiffs' claims (Doc. 56, at 13-21). As discussed more fully therein, the Court concluded that *Cin-Q* Plaintiffs' arguments regarding the lack of standing by *TTA* Plaintiffs due to the running of the statute of limitations and the inapplicability of equitable tolling was misplaced because BLP explicitly and unequivocally waived the statute of limitations affirmative defense, with such waiver surviving in the event of termination of the Settlement Agreement (Doc. 56, at 14-15; *see* Doc. 18, Ex. 1, at 36).

After concluding that *TTA* Plaintiffs established standing, the Court then determined that *TTA* Plaintiffs established the requirements for class certification under Rule 23(a) (Doc. 56, at 21-29). Specifically, the Court determined that *TTA* Plaintiffs established numerosity, commonality, typicality, and adequacy of representation. In discussing the adequacy-of-representation prong, the Court concluded that *TTA* Plaintiffs adequately represented the interests of the class and did not harbor any interests antagonistic or in substantial conflict with those of the rest of the class (Doc. 56, at 24-29). With respect to the adequacy of *TTA* Plaintiffs' Counsel, Attorneys Phillip A. Bock ("Bock"), Jonathan B. Piper, and Daniel J. Cohen of the law firm Bock Law Firm, LLC d/b/a Bock, Hatch, Lewis & Oppenheim, LLC ("Bock Hatch"),

the Court found Counsel adequate to represent the interests of the Settlement Class (Doc. 56, at 25-29). In making that finding, the Court addressed the issue that arose regarding whether a conflict existed with the representation of Bock Hatch based upon David M. Oppenheim ("Oppenheim") previously working for Anderson + Wanca on behalf of *Cin-Q* Plaintiffs in the *Cin-Q* Action and then switching firms to join Bock Hatch, the firm representing *TTA* Plaintiffs, while the *Cin-Q Action* remained pending (Doc. 56, at 25-29). After conducting an evidentiary hearing and allowing supplemental briefing on the issue, the Court concluded that no conflict existed and Oppenheim only owed a duty to the putative class, not to *Cin-Q* Plaintiffs – an issue thoroughly explored in *Medical & Chiropractic Clinic, Inc., v. Oppenheim, et al.*, Case No. 8:16-cv-1477-T-36CPT (M.D. Fla. filed June 8, 2016) ("*M&C Action*"), as discussed below.

Having satisfied the requirements of Rule 23(a), the analysis turned to whether *TTA* Plaintiffs could establish Rule 23(b)'s requirements of predominance of common issues and superiority of the class action to other means of litigation (Doc. 56, at 29-31). *See* Fed. R. Civ. P. 23(b)(3). Upon consideration, the Court concluded that the common issues outweighed and predominated over any individualized issues involved in the litigation and that proceeding as a class action provided the superior method to other methods available to fairly and efficiently adjudicate the controversy. Having determined that preliminary certification of the Settlement Class was warranted, the Court then turned to the issue of whether preliminary approval of the Settlement Agreement was similarly warranted (Doc. 56, at 31-37). Namely, the Court was tasked with determining whether the Settlement constituted a fair, adequate, and reasonable resolution and did not result from collusion between the parties (Doc. 56, at 31-32). Upon review of the terms, the Court found that the Settlement Agreement, which provided, among other things, a Settlement Fund up to $19.5 million and payments of up to $350 for the first facsimile and up to $565 total for up to five facsimiles to Settlement Class members who

submitted claims, appeared fair, adequate, and reasonable solely for purposes of preliminary approval (Doc. 56, at 33-34). Accordingly, the Court granted *TTA* Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Notice to the Class and set forth the terms of the preliminary certification of the Settlement Class, including the time for disseminating notice to Settlement Class members and the date and time for the fairness hearing (Doc. 56, at 37-39, 42-52).[1]

In addition to granting preliminary approval of the Settlement Class, the Court denied *Cin-Q* Plaintiffs' Motion to Transfer Related Case under Local Rule 1.04(b), to Consolidate Cases, and Appoint Interim Class Counsel and denied *Cin-Q* Plaintiffs' Motion to Intervene (Doc. 56, at 39-42). As discussed, the Court did not need to transfer the action because the undersigned received the case through random assignment and then by consent to the undersigned's jurisdiction by *TTA* Plaintiffs and BLP (Doc. 56, at 39). Further, given the preliminary approval of the Settlement and appointment of *TTA* Plaintiffs' Counsel as Class Counsel, the considerations did not favor consolidation of the *Technology Training II Action* and the *Cin-Q Action* and obviated the need for appointment of Addison and Anderson + Wanca (Doc. 56, at 39-40).

Finally, in considering *Cin-Q* Plaintiffs' Motion to Intervene, the Court denied *Cin-Q* Plaintiffs' request both for intervention as of right, pursuant to Rule 24(a), and by permission, pursuant to Rule 24(b) (Doc. 56, at 40-42). The Court concluded that *Cin-Q* Plaintiffs could assert their objections in the normal course of the proceedings, as anticipated by Rule 23, and that a potential incentive award to *Cin-Q* Plaintiffs and attorneys' fees for their counsel were not foreclosed, thereby negating their contention regarding the necessity for intervention as of

---

[1] Notably, however, *TTA* Plaintiffs and BLP never issued notice to the Settlement Class, in contravention of the Court's Order, and the Court therefore never conducted a fairness hearing in this action nor entered final approval.

right. Likewise, the Court concluded that permissive intervention was not appropriate since *Cin-Q* Plaintiffs could still assert their claims and defenses in this action at the appropriate time or could opt out of the class and continue to pursue their claims on an individual basis in the *Cin-Q Action*.

Given the rulings in the *Technology Training II Action*, the Court denied all pending motions in the *Cin-Q Action*, including *Cin-Q* Plaintiffs' Motion for Class Certification. *Cin-Q Action*, (Docs. 207, 236, 241, 250). The Court also stayed the *Cin-Q Action* pending further order of the Court. Currently, the *Cin-Q Action* remains stayed pending the undersigned's ruling on the instant motion in this action.

### D. *M&C Action*

Meanwhile, based on the initiation of the *Technology Training II Action*, M&C filed an action against Oppenheim and Bock Hatch, in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, on June 1, 2016, which Oppenheim and Bock Hatch then removed to federal court a week later. *See M&C Action*, (Docs. 1 & 2). M&C asserted claims for (1) breach of fiduciary duty against Oppenheim and Bock Hatch and (2) aiding and abetting breach of fiduciary duty against Bock Hatch. *M&C Action*, (Doc. 2). Essentially, M&C claimed that it had an interest in being named as class representative and obtaining class certification for the proposed class after vigorously litigating the *Cin-Q Action* for the past three years through fact discovery, class discovery, depositions, expert discovery, dispositive motions, and mediation conferences. *M&C Action*, (Doc. 2, at ¶¶14-15). M&C further alleged that, during the course of the proceedings in the *Cin-Q Action* through his resignation from Anderson + Wanca on April 8, 2016, Oppenheim represented M&C as its attorney in the *Cin-Q Action*, billing at least 80 hours on the matter; intimately involving himself in the preparation, strategy, and participation in the two mediation conferences conducted in the *Cin-Q Action*;

completing multiple settlement negotiations in the *Cin-Q Action*; and operating as the primary point of contact for *Cin-Q* Plaintiffs with regard to the mediation conferences in the *Cin-Q Action.  M&C Action*, (Doc. 2, at ¶¶17-23).  According to M&C, Oppenheim became familiar with and received access to the case strategy, discovery, analysis, and settlement strategy of *Cin-Q* Plaintiffs, the purported class, and BLP, and was granted full authority to settle on behalf of *Cin-Q* Plaintiffs.  *M&C Action*, (Doc. 2, at ¶¶24-25).  M&C alleged that Oppenheim prepared and submitted the mediation statements for both mediation conferences held in the *Cin-Q Action*, represented *Cin-Q* Plaintiffs at both mediation conferences, and held discussions with Michele Zakrewski, President of M&C, both before and after the mediation conferences.  *M&C Action*, (Doc. 2, at ¶¶26-28, 30-33, 35).  Even though the parties to the *Cin-Q Action* did not reach a resolution during either of the first two mediation conferences, M&C alleged that Oppenheim remained involved in the matter through continued correspondence with the second mediator and other counsel for *Cin-Q* Plaintiffs and continued to receive access to purportedly privileged and confidential information regarding *Cin-Q* Plaintiffs and the putative class.  *M&C Action*, (Doc. 2, at ¶¶37-40).  As a result of his involvement in the *Cin-Q Action*, M&C asserted that Oppenheim acted as M&C's attorney and thus owed it ethical and fiduciary duties.  *M&C Action*, (Doc. 2, at ¶¶41-47).

In April 2016, shortly after the filing of the Motion for Class Certification Motion in the *Cin-Q Action*, Oppenheim resigned from Anderson + Wanca and joined Bock Hatch.  *M&C Action*, (Doc. 2, at ¶¶48-50).  Shortly thereafter, in May 2016, Bock Hatch filed the *Technology Training I Action* and then, in June 2016, filed the *Technology Training II Action* asserting claims on behalf of the same putative class members identified in the *Cin-Q Action*, as discussed more fully above.  *See M&C Action*, (Doc 2, at ¶¶57-58).  Based on the foregoing, M&C alleged a claim for breach of fiduciary duty against Oppenheim, which it alleged was imputed to Bock

Hatch, and a claim for aiding and abetting breach of fiduciary duty against Bock Hatch. *M&C Action*, (Doc. 2, at ¶¶85-105). Namely, M&C alleged that Oppenheim owed M&C an undivided duty of loyalty to represent M&C's interests and a duty not to represent a client with interests materially adverse to M&C, with such duties continuing after his resignation from Anderson + Wanca, which were then imputed to Bock Hatch. *M&C Action*, (Doc. 2, at ¶¶87-94). Further, M&C alleged that Bock Hatch aided and abetted the breach of fiduciary duty because Bock Hatch knew about Oppenheim's representation of M&C in the *Cin-Q Action*, and the attendant duties attached to such representation, and substantially assisted Oppenheim's breach of those duties. *M&C Action*, (Doc. 2, at ¶¶99-102).

Following the filing of the Complaint and removal in the *M&C Action*, M&C filed its Amended Motion for Entry of Temporary Restraining Order and Preliminary Injunction seeking to enjoin Oppenheim and Bock Hatch from (1) representing any entity in a case alleging class-wide allegations substantially related to the *Cin-Q Action*; (2) representing *TTA* Plaintiffs in any actions substantially related to the *Cin-Q Action*; (3) engaging in settlement negotiations with BLP, or reaching a settlement, in any matter substantially related to the *Cin-Q Action*; and (4) using, disclosing, or relying upon confidential information Oppenheim gained while representing M&C, including information protected by the attorney-client privilege or mediation privilege. *M&C Action*, (Doc. 5). After conducting an evidentiary hearing in July 2016 regarding the request for a preliminary injunction, United States District Judge Charlene E. Honeywell ("Judge Honeywell") denied M&C's motion for preliminary injunction in October 2016. *M&C Action*, (Doc. 71). In doing so, Judge Honeywell determined that M&C could not establish a substantial likelihood of success on the merits of either its breach of fiduciary duty claim or its aiding and abetting claim, could not establish a threat of irreparable harm, could not establish that any threatened injury to M&C outweighed the harm an injunction

would cause Oppenheim or Bock Hatch, and could not establish that an injunction would serve the public interest. *M&C Action*, (Doc. 71, at 5-15). Namely, Judge Honeywell concluded that Oppenheim had a fiduciary duty to the entire class, including M&C, but it was questionable whether M&C could demonstrate the existence of a special fiduciary duty to M&C different from the fiduciary duty owed to all class members. *M&C Action*, (Doc. 71, at 7). Judge Honeywell further found, since neither Oppenheim nor Bock Hatch were pursuing relief for the class that was "materially adverse" to the interests of the other class members, including M&C, that M&C was unlikely to establish a breach of any duty owed by Oppenheim. *M&C Action*, (Doc. 71, at 9). Then, Judge Honeywell determined that M&C failed to demonstrate irreparable harm because, among other things, any issue related to an alleged "reverse auction" could be remedied through the normal course of litigation, namely, the approval process of the Settlement. *M&C Action*, (Doc. 71, at 14). Given those findings, Judge Honeywell determined that the balance of harm weighed against entry of an injunction, since M&C demonstrated no irreparable harm it would suffer, and that entry of an injunction would not serve the public interest as no materially adverse interest existed among the parties in the *M&C Action*, the *Cin-Q Action*, and the *Technology Training II Action*. *M&C Action*, (Doc. 71, at 15).

Notably, though, given the issues raised during the pursuit of the preliminary injunction in the *M&C Action*, the undersigned conducted an independent evidentiary hearing in the *Technology Training II Action* in October 2016 to also consider any potential conflict of interest related to Oppenheim's participation in the *Cin-Q Action* on behalf of *Cin-Q* Plaintiffs and the proposed class given his subsequent departure from employment with Anderson + Wanca to employment with Bock Hatch, currently representing Plaintiffs in the *Technology Training II Action*. Both Oppenheim and Bock provided testimony during the hearing, while *Cin-Q*

Plaintiffs were not permitted to participate in the evidentiary hearing in the *Technology Training II Action*.

Subsequently, in the *M&C Action*, M&C sought partial summary judgment on its claims solely as to the issue of liability, and Oppenheim and Bock Hatch sought summary judgment on M&C's claims in full. *M&C Action*, (Docs. 142 & 144). Upon consideration, Judge Honeywell denied M&C's Motion for Partial Summary Judgment and granted Oppenheim and Bock Hatch's Motion for Summary Judgment, finding that M&C could not establish the existence of a fiduciary duty owed to it individually, could not establish that Oppenheim or Bock Hatch breached any fiduciary duty owed to M&C to the extent that one existed, and could not establish any damages suffered as a result of the purported breach, and, further, given the lack of a breach of fiduciary duty on the part of Oppenheim, M&C could not establish a claim for aiding and abetting such breach by Bock Hatch. *M&C Action*, (Doc. 221). With respect to the alleged fiduciary duty, Judge Honeywell remained unpersuaded that any fiduciary duty existed with respect to M&C individually or that the Florida Rules of Professional Conduct provided the standard of care in a breach of fiduciary duty case involving class action litigation. *M&C Action*, (Doc. 221, at 13-20). Even assuming, *arguendo*, that a fiduciary duty existed to M&C individually under the Florida Rules of Professional Conduct, Judge Honeywell concluded that M&C could not establish that any actions taken by Oppenheim or Bock Hatch constituted a breach because M&C's interests were not materially adverse[2] to that of *TTA* Plaintiffs' interests for purposes of the Florida Rules and Oppenheim did not disclose any

---

[2] *See* Florida Bar Rule 4-1.10(b), which states: "When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer … had previously represented a client whose interests are materially adverse to that person …."

confidential or mediation-privileged information[3] related to M&C individually with Bock Hatch. *M&C Action*, (Doc. 221, at 20-24). Finally, Judge Honeywell determined that M&C suffered no damages as a result of the purported breach of the fiduciary duty because the decision to move to intervene in the *Technology Training II Action* invoked questions pertaining to the class, not to M&C individually, and because "conflicts between class members and/or class representatives in class action litigation is anticipated, and procedures, such as those employed by Cin-Q plaintiffs in their Motion to Intervene, are in place to address such conflicts." *M&C Action*, (Doc. 221, at 24-25).

On August 31, 2018, M&C appealed Judge Honeywell's Order. *See M&C Action*, (Doc. 225). The *M&C Action* appeal currently remains pending before the United States Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit"). Given the pending appeal relating to whether Oppenheim or Bock Hatch breached any fiduciary duties or aided and abetted such breach, the Court conducted a hearing in the *Technology Training II Action* to address whether the matters pending in this action should be stayed pending a resolution by the Eleventh Circuit of the appeal in the *M&C Action*. Though the Court maintains reservations regarding the lack of any overlap between the outcome of the appeal in the *M&C Action* and the issues presented in this action, *TTA* Plaintiffs, BLP, and *Cin-Q* Plaintiffs *all* indicated that the resolution of the appeal in the *M&C Action* would have no bearing on the outcome in this matter, even given the findings made by the Eleventh Circuit in this action, as discussed below.

### E.      The Eleventh Circuit Appeal in *Technology Training II Action*

During the pendency of the *M&C Action*, *Cin-Q* Plaintiffs submitted an appeal to the Eleventh Circuit (the "Eleventh Circuit Appeal") regarding the denial of their request to intervene in the *Technology Training II Action* (Docs. 28, 56, 58). *See Tech. Training Assocs.,*

---

[3]  *See* Florida Bar Rules 4-1.6, 4-1.9, and 4-8.4.

*Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017). On appeal, the Eleventh Circuit

considered whether this Court erred in denying *Cin-Q* Plaintiffs' request to intervene as of right

under Rule 24(a)(2) and declined to address whether the Court erred in denying *Cin-Q*

Plaintiffs' request for permissive intervention under Rule 24(b)(2). The sole issue presented by

*Cin-Q* Plaintiffs to the Eleventh Circuit on appeal involved this Court's denial of intervention.

Indeed, in their appellate brief, *Cin-Q* Plaintiffs framed the issue as follows:

> In this appeal, No. 17-11710, *Cin-Q* Plaintiffs appeal solely from the denial of
> their motion to intervene, and do not attack the terms of the *TTA* settlement.
> Although *Cin-Q* Plaintiffs maintain the *TTA* settlement is not fair, adequate, or
> reasonable, this appeal is limited to reviewing the district court's denial of
> intervention as of right under a de novo standard, and reviewing the denial of
> permissive intervention for abuse of discretion.
>
> ***
>
> But this is not an appeal from a final approval order, and this Court need not
> consider whether the *TTA* settlement is appropriate at this time. The Court may
> *never* need to decide the propriety of the *TTA* settlement if it reverses the district
> court's denial of intervention in this appeal, allowing *Cin-Q* Plaintiffs to
> intervene to protect their interests as the true representatives of the class.

(Doc. 141, Ex. 2) (emphasis in original). In their reply brief on appeal, *Cin-Q* Plaintiffs also

indicated that adequacy of representation under Rule 23(a)(4) was not at issue, but rather, the

only issue on appeal involved whether *Cin-Q* Plaintiffs' interests were adequately represented

by the *TTA* Plaintiffs and BLP under Rule 24(a)(2), arguing:

> Here, *TTA* Plaintiffs and BLP are equivocating between "adequacy" of the
> existing parties for purposes of Rule 24(a)(2) intervention, with "adequacy" of
> representation for purposes of Rule 23(a)(4). The adequacy of *TTA* Plaintiffs
> for Rule 23 purposes has not yet been litigated, since there has been no discovery
> and almost nothing is known about them, aside from Mr. Bock's testimony that
> he contacted them to ask if they were interested in acting as plaintiffs after
> finding their fax numbers in the materials attached to *Cin-Q* Plaintiffs' motion
> for class certification. (A916-17, Hr'g Tr. At 15-16).
>
> The standard for intervention, on the other hand, is merely whether the existing
> parties "may be" inadequate, a showing that "should be treated as minimal."
> *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993). *Cin-Q*
> Plaintiffs do not have the burden of demonstrating *TTA* Plaintiffs are inadequate

> class representatives at this stage in a Rule 23(a)(4) analysis, and *Cin-Q* Plaintiffs are not, as *TTA* Plaintiffs claim, "demand[ing] full resolution of Plaintiffs' adequacy" for purposes of class certification on their motion to intervene. (*TTA* Pls.' Br. at 26). What they are demanding is a decision on the Rule 24(a)(2) question of whether their interests "may be" inadequately represented by the existing parties for purposes of the minimal intervention standard, which is plainly the case.

(Doc. 141, Ex. 2).

Given the issue presented, the Eleventh Circuit considered whether this Court erred in denying *Cin-Q* Plaintiffs' request to intervene in the *Technology Training II Action.* As the Eleventh Circuit indicated, parties seeking to intervene under Rule 24(a)(2) must demonstrate that (1) their request to intervene is timely; (2) they have an interest relating to the property or transaction which is the subject of the action; (3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and (4) their interest is represented inadequately by the existing parties to the suit. *Tech. Training Assocs.*, 874 F.3d at 695-96 (citing *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004)). As to the first two prongs, the Eleventh Circuit concluded that *Cin-Q* Plaintiffs satisfied those prongs since the request to intervene was timely and since, as class members, they would be bound by the terms of the Settlement if approved and judgment was then entered. *Tech. Training Assocs.*, 874 F.3d at 696 (citation omitted).

In considering the third prong, the Eleventh Circuit determined that *Cin-Q* Plaintiffs satisfied that prong by demonstrating a risk that they would be bound by an unsatisfactory class action settlement. *Id.* at 696-97. In making that determination, the Eleventh Circuit disagreed with this Court's finding that Rule 23's procedural protections provided a basis for concluding that the disposition of the *Technology Training II Action* would not impede or impair *Cin-Q* Plaintiffs' ability to protect their interests under Rule 24(a)(2)'s third prong. *Id.* at 695-96. As part of that determination, the Eleventh Circuit considered BLP's reliance upon the decision in

*Grilli v. Metropolitan Life Insurance Co.*, 78 F.3d 1533 (11th Cir. 1996), and, in a footnote, the Eleventh Circuit indicated that the *Grilli* holding did not extend to cases like this one where the facts of the case demonstrated that "the existing parties do <u>not</u> adequately represent the movants' interest." *Id.* at 697 n.3 (emphasis in original).

With respect to the fourth prong, the Eleventh Circuit's analysis started with the presumption that the *TTA* Plaintiffs' representation was adequate in pursuing the same general objective – vindicating the class' rights under the TCPA. *Id.* at 697. As the Eleventh Circuit noted, the presumption is weak and merely requires the proposed intervenors to present some evidence to the contrary. *Id.* Based on the record before it, the Eleventh Circuit concluded that *Cin-Q* Plaintiffs rebutted the weak presumption that *TTA* Plaintiffs adequately represented *Cin-Q* Plaintiffs' interests by presenting evidence that *TTA* Plaintiffs' Counsel engaged in a "Machiavellian" plan to undercut *Cin-Q* Plaintiffs' negotiating position. *Id.* In support of its conclusion, the Eleventh Circuit stated:

> Because the movants can rebut the presumption, we return[ ] to the general rule that adequate representation exists if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed interven[o]r, and if the representative does not fail in fulfillment of his duty. Showing any one of these factors is not difficult. The requirement of the Rules is satisfied if the applicant shows that representation of his interest may be inadequate; and the burden of making that showing should be treated as minimal.
>
> The movants have met the minimal burden of showing that plaintiffs' representation of their interests may be inadequate. As we have explained, a representative party's greater willingness to compromise can impede [it] from adequately representing the interests of a nonparty. That is the case here. The plaintiffs have a greater incentive to settle because their claims may be barred by the statute of limitations if they cannot secure a waiver from Buccaneers, while the movants have no statute of limitations issues. Although the parties fiercely contest whether the plaintiffs' claims are actually time barred, the <u>risk</u> that they could be gives the plaintiffs a greater incentive to settle as compared to the movants. Which is evidenced by the plaintiffs' getting a waiver of the statute of limitations as part of the settlement.

More broadly, the record appears to show that the plaintiffs' counsel, Bock Hatch, deliberately underbid the movant in an effort to collect attorney's fees while doing a fraction of the work that the movants' counsel did. If, as it appears, Bock Hatch was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible for the class, it violated its ethical duty to the class. … It is plain from the record that during the negotiations the interests of the named plaintiffs and of Bock Hatch were aligned with those of Buccaneers and adverse to the movants' interests. Given that, the plaintiffs cannot be expected to adequately represent the movants' interests. The movants satisfied Rule 24(a)(2)'s fourth prong.

*Id.* at 697-98 (internal citations and quotation marks omitted) (emphasis in original). Based on its conclusion, the Eleventh Circuit remanded the case back to this Court with instructions to grant *Cin-Q* Plaintiffs' motion to intervene as of right. *Id.* at 698. The Eleventh Circuit provided no other instructions for this Court upon remand.

**F.      Renewed Motion to Decertify Settlement Class, Vacate Preliminary Approval Order, and Strike Class Allegations**

Following issuance of the Eleventh Circuit's Mandate (Doc. 77), the Court conducted a status conference, at which the Court addressed the procedural process moving forward, given the Eleventh Circuit's decision. During the status conference, *Cin-Q* Plaintiffs orally moved to certify the class in the *Cin-Q Action* and to appoint Anderson + Wanca and Addison as class counsel. After consideration, the Court determined that vacating the portion of the prior Order (Doc. 56) denying the request to intervene was appropriate but that it would take under advisement whether the rest of the Order should be vacated, specifically the request to vacate the preliminary approval of the Settlement and class certification. Additionally, the Court denied *Cin-Q* Plaintiffs' oral motions and directed the parties to provide a scheduling plan for conducting discovery, filing additional briefing, and conducting an evidentiary hearing and any subsequent status conferences.

Following several hearings and discovery disputes, *Cin-Q* Plaintiffs now move the Court to dismiss the *Technology Training II Action* or, alternatively, to decertify the Settlement

Class, vacate preliminary approval of the Settlement, and strike *TTA* Plaintiffs' class allegations (Doc. 131). In doing so, *Cin-Q* Plaintiffs set forth several arguments. Initially, they contend that *China Agritech, Inc. v. Resh*, 138 S.Ct. 1800 (2019) ("*China Agritech*") requires dismissal or decertifying of the Settlement Class, vacating of the preliminary approval of the Settlement, and striking of the class allegations in this action as *China Agritech* does not permit the maintenance of a class action after the expiration of the statute of limitations, regardless of whether BLP waives a statute of limitations defense. Alternatively, *Cin-Q* Plaintiffs argue that the Court should decertify the Settlement Class, vacate preliminary approval, and strike the class allegations based upon the findings in the Eleventh Circuit Appeal. Mainly, *Cin-Q* Plaintiffs assert that the findings in the Eleventh Circuit Appeal dictate that *TTA* Plaintiffs are inadequate class representatives and that *TTA* Plaintiffs' Counsel are inadequate class counsel.

BLP and *TTA* Plaintiffs each respond in opposition (Docs. 141 & 148). BLP argues that *China Agritech* does not require the dismissal of this case or the striking of the class allegations (Doc. 148). BLP further contends that its waiver of the statute of limitations for all purposes, which survives termination of the Settlement, demonstrates that no basis exists for striking the class allegations, especially since the waiver did not form an integral term of the Settlement but rather a procedural mechanism for presentation of the Settlement to the Court rather than intervention in the *Cin-Q Action*, which it contends still remains a viable option. In addition, BLP asserts that the Eleventh Circuit Appeal does not provide a basis for the relief sought by *Cin-Q* Plaintiffs since the law-of-the-case doctrine applies only to issues within the scope of the appeal, the Eleventh Circuit did not consider the adequacy of *TTA* Plaintiffs and *TTA* Plaintiffs' Counsel under Rule 23, and the record before the Eleventh Circuit was limited in scope. To that end, BLP also argues that the communications produced in this action relating to the Settlement demonstrate that *TTA* Plaintiffs were not disarmed during negotiations.

Finally, BLP contends that *Cin-Q* Plaintiffs arguments regarding vacating the preliminary approval of the Settlement are premature and not grounded in fact.

*TTA* Plaintiffs set forth similar arguments (Doc. 141). Essentially, *TTA* Plaintiffs argue that *China Agritech* does not prevent *TTA* Plaintiffs from maintaining the concurrent class action and that the decision in the Eleventh Circuit Appeal does not support or require decertification. Additionally, *TTA* Plaintiffs contend that *Cin-Q* Plaintiffs' objections to the Settlement will fail, *TTA* Plaintiffs' Counsel adequately represented the interests of the absent class throughout its negotiations with BLP, and *Cin-Q* Plaintiffs' negotiations focused on attorneys' fees to the detriment of the class.

In reply, *Cin-Q* Plaintiffs contend that the attempts to distinguish *China Agritech* from the facts of this case fail such that the *Technology Training II Action* cannot be maintained as a class action (Doc. 154). *Cin-Q* Plaintiffs further contend that the attempts to minimize the findings by the Eleventh Circuit fail, meaning *TTA* Plaintiffs and *TTA* Plaintiffs' Counsel cannot be permitted to represent a class. Finally, *Cin-Q* Plaintiffs argue that the settlement negotiations in the *Cin-Q Action* are irrelevant and, to the extent the Court finds the *Cin-Q Action* settlement negotiations relevant, the settlement negotiations establish that *Cin-Q* Plaintiffs' Counsel acted appropriately and in the interests of the class, while the *Technology Training II Action* settlement negotiations demonstrate that *TTA* Plaintiffs maintained no leverage to settle, thus leading to poor settlement terms.

## II.     Legal Standard

Questions concerning class certification remain within the sound discretion of the district court. *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1335 (11th Cir. 2003) (citations omitted). Under Rule 23, a district court can alter or amend an order granting or denying class certification before entry of final judgment. Fed. R. Civ. P. 23(c)(1)(C).

Indeed, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, is inherently tentative." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (internal quotation, citation, and footnote omitted).

### III. Discussion

#### A. *China Agritech*

Initially, *Cin-Q* Plaintiffs argue that *China Agritech* requires the Court to either dismiss this action or, at the very least, strike the class allegations. In contrast, BLP and *TTA* Plaintiffs contend that *China Agritech* does not control the issues presented here, especially given important factual differences between the two cases. Namely, as discussed in greater detail below, BLP and *TTA* Plaintiffs focus upon the following distinctions: this case involves a concurrent rather than successive class action, this case does not include a prior denial of class certification, this case does not involve prior notice sent to class members, and this case involves a waiver of the statute of limitations rather than an attempt to assert claims using equitable tolling.

Subsequent to issuance of this Court's Order granting preliminary approval of the Class Settlement and issuance of the Mandate in the Eleventh Circuit Appeal, the Supreme Court issued its opinion in *China Agritech*. 138 S.Ct. 1800. The Supreme Court succinctly framed the issue as follows:

> The question presented in the case now before us: Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no. *American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.

138 S.Ct. at 1804. In considering the issue, the Supreme Court acknowledged that *American Pipe* and *Crown, Cork* addressed only putative class members who wished to sue individually after a class-certification denial. *Id.* at 1806; *see American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974); *see Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 & 352 (1983). Given the limitations of *American Pipe* and *Crown, Cork*, the Supreme Court analyzed what standard would therefore govern a putative class representative who brings his or her claims as a new class action after the statute of limitations expired, explaining:

> Neither decision so much as hints that tolling extends to otherwise time-barred class claims. We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action. The "efficiency and economy of litigation" that support tolling of individual claims, *American Pipe*, 414 U.S., at 553, 94 S.Ct. 756 do not support maintenance of untimely successive class actions; any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification.

> *American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those claims until after a class-certification denial. If certification is granted, the claims will proceed as a class and there would be no need for the assertion of any claim individually. If certification is denied, only then would it be necessary to pursue claims individually.

> With class claims, on the other hand, efficiency favors early assertion of competing class representative claims. If class treatment is appropriate, and all would-be representatives have come forward, the district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel. And if the class mechanism is not a viable option for the claims, the decision denying certification will be made at the outset of the case, litigated for all would-be representatives.

*China Agritech*, 138 S.Ct. at 1806-07 (emphasis in original; footnote omitted).

As the Supreme Court emphasized, plaintiffs must ordinarily demonstrate that they diligently pursued their claims in order to benefit from equitable tolling. *Id.* at 1808. According to the Supreme Court, "[a] would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief." *Id.* Rather, a plaintiff seeking to preserve the ability to lead the class "has every reason

to file a class action early, and little reason to wait in the wings, giving another plaintiff first shot at representation." *Id.* at 1810-11. Indeed, "sooner rather than later filings are just what Rule 23 encourages." *Id.* at 1811. To that end, the Supreme Court indicated that allowing no tolling for out-of-time class actions would propel putative class representatives to file suit well within the limitation period and promptly seek certification. *Id.* at 1811. Given the focus on efficiency and economy of litigation, the Supreme Court thus determined that the time to file a class action falls outside the bounds of *American Pipe* tolling. *Id.*

In asserting that *China Agritech* forecloses *TTA* Plaintiffs' attempt to maintain any class claims in this action, *Cin-Q* Plaintiffs argue that *China Agritech* simply precludes the maintenance of a follow-on class action past expiration of the statute of limitations, regardless of whether a defendant asserts a statute of limitations defense (Doc. 131, at 12-15). Responding in opposition, *TTA* Plaintiffs argue that *China Agritech* holds only that, where a defendant raises a statute of limitations defense in a newly filed, otherwise time-barred, successive putative class action, the plaintiff cannot invoke *American Pipe* equitable tolling (Doc. 141, at 9-12). They contend that the *China Agritech* holding is irrelevant to this action because BLP did not raise a statute of limitations defense, and, moreover, BLP irrevocably waived the statute-of limitations defense, so the issue of equitable tolling does not factor into the analysis (Doc. 141, at 10). Furthermore, *TTA* Plaintiffs argue that this action is distinguishable from *China Agritech* because *China Agritech* involved successive class actions filed after repeated denials of class certification in prior cases, while, here, no class certification has yet occurred and the *Cin-Q Action* remains pending (Doc. 141, at 10). *TTA* Plaintiffs also argue that, even though *China Agritech* encourages class representatives to file their claims sooner than later, *China Agritech* did not impose any jurisdictional time limit, and, even so, since the issue of class certification

has not been decided in the *Cin-Q Action*, they could have sought to and could still seek to intervene and seek approval in that action (Doc. 141, at 11-12).

Likewise, BLP responds in opposition, arguing that *China Agritech* involved successive, rather than concurrent, class actions that followed two prior denials of class certification, which presented concerns not present in this action where no prior denial of class certification occurred and where the *Cin-Q Action* remains pending (Doc. 148, at 12-14). BLP additionally contends that *China Agritech* involved early notice to potential class members pursuant to the Private Securities Litigation Reform Act, which occurred well before the class certification decision (Doc. 148, at 14-15). Further, BLP asserts that *China Agritech* does not impact BLP's waiver of the statute of limitations because *China Agritech* did not involve or address a waiver of the statute of limitations, so, given that the TCPA does not establish a jurisdictional bar to *TTA* Plaintiffs' claims, the Court should honor the waiver (Doc. 148, at 15-16). Finally, BLP argues that adopting *Cin-Q* Plaintiffs' interpretation of *China Agritech* would lead to absurd results – namely, putting the class at the mercy of the first-filed plaintiffs and their counsel, limiting the ability of courts to substitute named plaintiffs after the statute of limitations has run, and preventing absent class members from intervening in a current class action after expiration of the statute of limitations (Doc. 148, at 16-17).

In reply, *Cin-Q* Plaintiffs contend that any attempts by *TTA* Plaintiffs and BLP to distinguish *China Agritech* from the facts of this action fail because the Supreme Court did not base its decision in *China Agritech* on the statute of limitations but rather based its decision on the policy considerations behind Rule 23 class certification in setting forth a bright-line rule that an untimely class action cannot be maintained (Doc. 154, at 1). *Cin-Q* Plaintiffs further argue that any attempts to distinguish this action on the basis of the lack of a prior denial of class certification, or on the fact that this action is occurring concurrently with the *Cin-Q Action*

rather than as a successive class action, similarly fail because the Supreme Court established a bright-line rule that did not depend on whether class certification was decided in an earlier-filed action or whether the earlier action remained pending, issues several courts applying *China Agritech* have already addressed (Doc. 154, at 2-3). Finally, *Cin-Q* Plaintiffs argue that their interpretation of *China Agritech* would not lead to purported "absurd results" because such interpretation (1) would not put the class at the mercy of the first-filed plaintiffs and their counsel but rather require all potential class representatives to file suit within the limitations period to allow the court to determine early on whether class treatment is warranted and who should function as the class representative; and (2) would not limit the ability of courts to substitute named plaintiffs after the statute of limitations has run but rather only preclude class members who allow the statute of limitations to expire from filing a new class action (Doc. 154, at 3-4).

*TTA* Plaintiffs and BLP mainly argue that *China Agritech* does not pertain to cases where no class certification decision has been reached in an earlier-filed action nor where two competing actions remain pending concurrently.[4] The Court recognizes that some courts considering *China Agritech* rejected the notions that *China Agritech* can be distinguished based on whether class certification was decided in an earlier-filed action or on whether the earlier action remained pending at the time of filing the subsequent action, while other courts accepted such notions. *See, e.g., Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 708-10 (3d Cir. 2019); *In Re: Celexa and Lexapro Marketing and Sales Practices Litigation*, 915 F.3d 1, 16-17 (1st Cir. 2019); *Betances v. Fischer*, 11-cv-3200 (RWL), 2019 WL 1213146, at *6-*10 (S.D.N.Y. Feb. 21, 2019); *Hart v. BHH, LLC*, 15cv4804, 2018 WL 5729294, at *2-*3

---

[4] BLP also argues the lack of notice distinguishes this case from *China Agritech*. The Court finds the issue regarding notice irrelevant.

(S.D.N.Y. Nov. 2, 2018); *Torres v. Wells Fargo Bank*, Case No. CV 17-9305-DMG (RAOx), 2018 WL 6137126, at *2-*4 (C.D. Cal. Aug. 28, 2018); *Practice Mgmt. Support Servs., Inc. v. Cirque Du Soleil Inc.*, No. 14 C 2032, 2018 WL 3659349, at *3-*6 (N.D. Ill. Aug 2, 2018); *Dormani v. Target Corp.*, Case No. 17-cv-4049 (JNE/SER), 2018 WL 3014126, at *2 (D. Minn. June 15, 2018). In this instance, the Court does not deem it necessary to determine whether either factor distinguishes this case from *China Agritech* because the main distinguishing and determinative factor in this case rests upon BLP's waiver of its statute of limitations defense.

As with the *China Agritech* plaintiffs, *TTA* Plaintiffs would not have a substantive right to bring their claims outside of the statute of limitations; instead, they could only bring such claims due to the judicially crafted tolling rule. *See China Agritech*, 138 S.Ct. at 810. Had *TTA* Plaintiffs sought to establish class claims based on a theory of equitable tolling, this Court might swiftly dismiss those class claims under *China Agritech*. Yet, that is not the case.

Here, BLP unequivocally waived the statute of limitations defense as to *TTA* Plaintiffs and all other class members, which, according to BLP and *TTA* Plaintiffs, opened the door for *TTA* Plaintiffs to assert class claims that would otherwise be precluded. The Court therefore confronts an issue neither before the Court in *China Agritech* nor addressed by any courts subsequently considering *China Agritech*. Instead, the question presented before this Court involves whether BLP's unequivocal waiver of any assertion of a statute of limitations defense provides an avenue for *TTA* Plaintiffs to bring class claims in this action. The Court finds that, as a general proposition, it does.

To reiterate what the Court previously articulated (Doc. 56, at 15-18), in the Settlement Agreement, BLP explicitly waived its affirmative defense regarding the statute of limitations, with such waiver surviving in the event of termination of the Settlement Agreement (Doc. 18, Ex. 1, at 36). Such a waiver removes the issue of the statute of limitations from the controversy.

*See, e.g., Fox Hollow Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:11-cv-131-FtM-29DNF, 2011 WL 2222174, at *1 (M.D. Fla. June 7, 2011) ("The Court finds that counsel's written statements that the statute of limitations will not be asserted is a sufficient stipulation that the issue has been waived and there is no dispute in controversy as to it. ... the statute of limitations is deemed waived, and Empire will be estopped from ever asserting to the contrary."). Indeed, the Federal Rules of Civil Procedure, as well as numerous courts, indicate that the statute of limitations constitutes an affirmative defense that a party may waive. *See* Fed. R. Civ. P. 8(c)(1) (listing "statute of limitations" as an affirmative defense that must be asserted by a party responding to a pleading); *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *cf. Ramirez v. Sec., U.S. Dep't of Transp.*, 686 F.3d 1239, 1243 (11th Cir. 2012) (quoting *Zipes* in concluding that a 45-day time limit set forth in the regulations regarding filing a charge under Title VII is not jurisdictional but rather functions like a statute of limitations, which is subject to waiver, estoppel, and equitable tolling); *see La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (stating that a statute of limitations is an affirmative defense); *cf. Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003) (noting that a party can waive its right to advance an affirmative defense by failing to assert it in a responsive pleading); *see Paetz v. U.S.*, 795 F.2d 1533, 1536 (11th Cir. 1986) (explicitly determining that "[a] statute of limitations defense is an affirmative defense" and stating that the "[f]ailure to assert such a defense in a defendant's pleadings is a waiver" in finding that a statute of limitations defense was waived); *see Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1537 (11th Cir. 1983) (discussing a party's waiver of the statute of limitations affirmative defense and citing cases for

the proposition that failure to assert an affirmative defense in a responsive pleading deems that affirmative defense waived); *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262, 1269 (M.D. Fla. 2012) ("The statute of limitations defense is an affirmative defense that if not asserted in a responsive pleading is generally deemed waived.").

Importantly, the statute of limitations governing TCPA claims is not found within the text of the TCPA. *See* 47 U.S.C. § 227. Instead, courts apply the four-year catchall statute of limitations provided under 28 U.S.C. § 1658(a), which states: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." *Coniglio v. Bank of Am., NA*, 638 F. App'x 972, 974 n.1 (11th Cir. 2016) (citing 28 U.S.C. § 1658(a) and stating "[t]he TCPA has a four-year statute of limitations"); *see Tillman v. Ally Fin. Inc.*, No. 2:16-cv-313-FtM-99CM, 2016 WL 6996113, at *5 (M.D. Fla. Nov. 30, 2016) (citing 28 U.S.C. § 1658(a) for the applicable statute of limitations under the TCPA). Neither the text nor the context of such time prescription, located in a separate, catchall statute, indicates that the statute of limitations operates as jurisdictional bar to suit. *Cf. Sarfati v. Wood Holly Assocs.*, 874 F.2d 1523, 1526 (11th Cir. 1989) ("The limitations period must be contained in the same statute or act in order to be deemed a substantive time limit on the right. ... Thus, if a right created by statute is in one act and the limitations period is in another act, then the limitations period is presumed not to be an integral part of the right itself. ... The limitations period is said to be only a procedural limit on the remedy, and not a substantive limit on the right."). Accordingly, the four-year statute of limitations related to TCPA claims acts only as a procedural limit or an affirmative defense subject to waiver.

As noted, BLP presents no opposition to *TTA* Plaintiffs bringing their claims outside of the statute of limitations and, again, explicitly waived such defense as to all class members,

regardless of the approval of the Settlement Agreement (Doc. 18, Ex. 1, at 36). *China Agritech* remains silent as to waiver by a defendant. Indeed, while *China Agritech* expresses a preference for early assertion of competing class claims and diligence by a plaintiff in pursuing class claims,[5] the Court finds nothing in *China Agritech* or any case interpreting *China Agritech* that would prohibit a defendant from waiving the statute of limitations defense or allowing time-barred claims to proceed based on such waiver, especially where the plaintiff does not seek to rely on equitable tolling as a basis for asserting any claims. Although the Court appreciates *Cin-Q* Plaintiffs' arguments to the contrary, the Court does not read *China Agritech* to prohibit a defendant from waiving its statute of limitations defense or allowing a plaintiff to bring class claims on that basis.

### B.      The Eleventh Circuit Appeal

Notwithstanding the foregoing, just because a defendant *may* waive its statute of limitations defense, allowing a plaintiff to bring class claims on that basis under *China Agritech*, does not mean that *TTA* Plaintiffs could bring the class claims in this action. In fact, quite the opposite. Given the findings set forth in the Eleventh Circuit Appeal, the waiver of the statute of limitations defense provides the downfall of the class claims in this instance.

Namely, *Cin-Q* Plaintiffs argue that the Court should decertify the Settlement Class, vacate preliminary approval, and strike the class allegations based upon the findings in the Eleventh Circuit Appeal. *See Tech. Training Assocs.*, 874 F.3d 692. Essentially, *Cin-Q* Plaintiffs assert that putative class members in the *Cin-Q Action* are not subject to the risk of the statute of limitations, so *TTA* Plaintiffs, who are subject to that risk, cannot adequately represent the interests of *Cin-Q* Plaintiffs or the putative class (Doc. 131, at 16-18). According to *Cin-Q* Plaintiffs, the Eleventh Circuit expressly determined that *TTA* Plaintiffs cannot

---

[5] *See* 138 S.Ct. at 1807-08.

adequately represent *Cin-Q* Plaintiffs' interests, and thus the putative class, due to their greater incentive to settle (Doc. 131, at 16-18). *See Tech. Training*, 874 F.3d at 697. Based on the Eleventh Circuit Appeal, *Cin-Q* Plaintiffs argue that the Eleventh Circuit's finding regarding inadequate representation constitutes law of the case (Doc. 131, at 16). *Cin-Q* Plaintiffs argue further that, even if the Court concludes that the Eleventh Circuit did not expressly address the issue, but rather decided the issue by necessary implication, the Eleventh Circuit's findings still constitute law of the case (Doc. 131, at 16).

Going further, *Cin-Q* Plaintiffs argue that the Court should decertify the Settlement Class because *TTA* Plaintiffs' Counsel are inadequate as class counsel, given the Eleventh Circuit's finding that the record appeared to show that *TTA* Plaintiffs' Counsel "deliberately underbid the movants in an effort to collect attorney's fees while doing a fraction of the work that the movants' counsel did" and that "[i]f, as it appears, Bock Hatch was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible for the class, it violated its ethical duty to the class" (Doc. 131, at 18). *Tech. Training*, 874 F.3d at 697. *Cin-Q* Plaintiffs assert that the Order preliminarily approving the Settlement should likewise be vacated on that basis, as well as on the basis that the Eleventh Circuit identified grounds to doubt its fairness, including the "'Machiavellian' plan" of *TTA* Plaintiffs' Counsel to undercut *Cin-Q* Plaintiffs' negotiating position (Doc. 131, at 19-20). *Tech. Training*, 874 F.3d at 697. Moreover, *Cin-Q* Plaintiffs continue to assert that the Settlement cannot stand because it is not fair, reasonable, or adequate for the putative class (Doc. 131, at 21-25).

*TTA* Plaintiffs and BLP view the findings set forth in the Eleventh Circuit Appeal in an entirely different light. *TTA* Plaintiffs assert that the Eleventh Circuit Appeal neither supports nor requires decertification in this action (Doc. 141, at 12). *TTA* Plaintiffs argue that the findings in the Eleventh Circuit Appeal did not establish law of the case because (1) the

Eleventh Circuit did not address Rule 23 adequacy, either expressly or by necessary implication; (2) the standards of review and burdens of proof differ between Rule 23(a)(4) and Rule 24(a), thereby precluding invocation of law of the case; and (3) law of the case does not apply to subsequent proceedings involving a different evidentiary record (Doc. 141, at 12-18). Regardless, *TTA* Plaintiffs contend that BLP's statute of limitations defense did not impair *TTA* Plaintiffs' Counsel from adequately negotiating the Settlement, the Eleventh Circuit Appeal did not address the fairness of the Settlement, and any objections *Cin-Q* Plaintiffs seek to assert regarding the Settlement will fail (Doc. 141, at 18-31). Finally, *TTA* Plaintiffs argue that their Counsel adequately represented the interests of the absent class in stark contrast to the representation of *Cin-Q* Plaintiffs' Counsel in the *Cin-Q Action* (Doc. 141, at 31-35).

Similarly, BLP asserts that the law-of-the-case doctrine does not require the Court to grant the relief requested by *Cin-Q* Plaintiffs, especially considering the limited scope and conditional nature of the Eleventh Circuit Appeal (Doc. 148, at 20-27). BLP argues that the law-of-the-case doctrine is necessarily limited to the issues within the scope of the Eleventh Circuit Appeal, which notably did not include the issue of adequacy of *TTA* Plaintiffs and their Counsel under Rule 23(a)(4) but rather focused solely on adequacy for purposes of intervention as of right under Rule 24(a) (Doc. 148, at 20-24). Additionally, BLP argues that the Eleventh Circuit Appeal must be viewed in light of the record presented before it, particularly given the fact that the more comprehensive record now before this Court as opposed to the more limited record on appeal to the Eleventh Circuit (Doc. 148, at 24-27). Finally, BLP contends that *Cin-Q* Plaintiffs' argument that preliminary approval should be vacated based upon the lack of a fair, adequate, or reasonable settlement is both premature and not grounded in the facts, as the Settlement falls within the range of possible recoveries, *Cin-Q* Plaintiffs were not on the verge of obtaining complete relief in the *Cin-Q Action*, *Cin-Q* Plaintiffs may not be able to obtain

class certification in the *Cin-Q Action*, and, even if *Cin-Q* Plaintiffs obtain class certification in the *Cin-Q Action*, their claims may fail on the merits (Doc. 148, at 27-33).

Responding to those arguments, *Cin-Q* Plaintiffs assert that the Eleventh Circuit Appeal did not mince words in finding that *TTA* Plaintiffs and their Counsel maintained a greater incentive to settle with BLP, and thus aligned their interests with BLP and adverse to *Cin-Q* Plaintiffs, during the settlement negotiations (Doc. 154, at 5-8).  *Cin-Q* Plaintiffs also argue that the settlement negotiations in this action demonstrate that *TTA* Plaintiffs maintained no leverage in negotiations with BLP, which led to the inadequate settlement terms (Doc. 154, at 14-20). Conversely, *Cin-Q* Plaintiffs contend that the settlement negotiations in the *Cin-Q Action* bear no relevance to the issues before the Court and, notwithstanding, establish that *Cin-Q* Plaintiffs' Counsel acted appropriately and adequately to protect the interests of the putative class (Doc. 154, at 8-14).

"The law-of-the-case doctrine holds that subsequent courts will be 'bound by the findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case.'"  *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1271 (11th Cir. 2007) (quoting *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984)).  Though the doctrine encompasses only those issues previously determined by the appellate court, it includes issues decided by necessary implication as well as issues decided explicitly.  *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) (citation omitted). Stated differently, the law-of-the-case doctrine does not apply when the issue in question fell outside the scope of the prior appeal.  *Id.* at 1332.  Accordingly, although a trial court remains free to address, as a matter of first impression, issues not disposed of on appeal, the trial court must follow the appellate court's holdings, both express and implied.  *Id.* at 1331 (citation omitted).

As the record indicates, on appeal to the Eleventh Circuit, *Cin-Q* Plaintiffs framed the issue presented as solely whether *Cin-Q* Plaintiffs' interests were adequately represented by *TTA* Plaintiffs and BLP for purposes of intervention under Rule 24, while *Cin-Q* Plaintiffs explicitly indicated that they did not seek to determine the adequacy of representation under Rule 23(a)(4) (Doc. 141, Ex. 2). It is beyond dispute that the Eleventh Circuit Appeal squarely addressed the issue of adequacy under Rule 24(a)(2) and found it lacking. Indeed, as the Eleventh Circuit made abundantly clear, *TTA* Plaintiffs and BLP inadequately represented *Cin-Q* Plaintiffs' interests for purposes of intervention as of right under Rule 24(a)(2). *Tech. Training*, 874 F.3d 696-98.

What is not abundantly clear, however, is whether the findings made by the Eleventh Circuit in reaching that conclusion provide any preclusive effect in this action, given the narrowly defined issue on appeal, and, if so, to what extent. As BLP contends, the standards for adequacy under Rule 23(a)(4) and Rule 24(a)(2) differ. *See Woolen v. Surtan Taxicabs Inc.*, 684 F.2d 324, 332 (5th Cir. 1982) (indicating that Rule 24(a) appears to establish a lower threshold or showing of inadequacy for purposes of intervention as opposed to the adequacy requirement for class certification under Rule 23(a)(4)). Though the Eleventh Circuit addressed only the issue of adequacy for purposes of Rule 24(a)(2), the findings the Eleventh Circuit set forth in rendering its decision provide this Court with guidance in considering Rule 23(a), even given the differing standards and the expanded record in this action.

The adequacy-of-representation requirement under Rule 23 requires the representative party in a class action to fairly and adequately protect the interests of those he or she purports to represent, *i.e.* the class. Fed. R. Civ. P. 23(a)(4); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted). Rule 23(a)(4)'s adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to

represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation omitted). In considering adequacy of representation, therefore, the court must conduct two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citation omitted); *see Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). A substantial conflict exists where some party members claim to suffer harm by the same conduct benefitting other members of the class. *Valley Drug*, 350 F.3d at 1189. Where such a conflict exists, the named representatives cannot be considered adequate "because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members." *Id.*

The main point of contention involves whether the interests of *TTA* Plaintiffs and their Counsel were antagonistic to or in substantial conflict with those of *Cin-Q* Plaintiffs and the rest of the class. Guided by the findings from the Eleventh Circuit Appeal, and after considering the parties' positions, the Court finds that the record reveals that the interests of *TTA* Plaintiffs were in substantial conflict with those of *Cin-Q* Plaintiffs and, thus, the rest of the putative class. Basically, unlike *TTA* Plaintiffs, *Cin-Q* Plaintiffs and the other putative class members in the *Cin-Q Action* "have no statute of limitations issue." *Tech. Training*, 874 F.3d at 697. Indeed, the Eleventh Circuit specifically addressed the issue in its decision, stating: "Although the parties fiercely contest whether the plaintiffs' claims are actually time barred, the <u>risk</u> that they could be gives the plaintiffs a greater incentive to settle as compared to the movants." *Id.* (emphasis in original). The Court finds the Eleventh Circuit's observation instructive since *TTA* Plaintiffs in fact admit that they were aware of the statute of limitations issue from the outset of the settlement negotiations with BLP (Doc. 141, at 5 & Ex. 1, Declaration of Daniel

Cohen ("Cohen Decl."), at ¶7. The fact that BLP and *TTA* Plaintiffs did not address the issue of the waiver of the statute of limitations until late in their settlement negotiations does not change the analysis (*see* Doc. 148, Ex. A, Declaration of Kathleen P. Lally ("Lally Decl."), at ¶¶80-85). Namely, the timing of the actual waiver by BLP does not bear on the issue, since the issue was present from the outset.[6] Put simply, but for the timely initiation of the *Cin-Q Action*, BLP would have no reason to waive the statute of limitations defense to settle potential class claims with plaintiffs whose claims expired. By the same token, but for obtaining a statute of limitations waiver, *TTA* Plaintiffs would not maintain the ability to bring class claims outside of the *Cin-Q Action*.

Given the unavailability of the separate class action option without a waiver of the statute of limitations, the interests of *TTA* Plaintiffs and BLP were aligned. *See Tech. Training*, 874 F.3d at 697. Even on the limited record on appeal, the Eleventh Circuit indicated that "[i]t is plain from the record that during the negotiations the interests of the named plaintiffs and of Bock Hatch were aligned with those of Buccaneers and adverse to the movants' interests." *Id.* As the record in this action and in the *Cin-Q Action* indicate, *TTA* Plaintiffs and BLP endeavored to settle the class claims against the backdrop of the breakdown of the settlement negotiations in the *Cin-Q Action* and the impending deadline for BLP to respond to *Cin-Q* Plaintiffs' motion for class certification (Cohen Decl.; Lally Decl.). *See Cin-Q Action*, (Docs. 215-43). BLP expressed frustration with the settlement process with *Cin-Q* Plaintiffs and thus sought the Court's assistance in conducting a settlement conference given concerns BLP held with the position taken by *Cin-Q* Plaintiffs in the prior settlement negotiations. *See Cin-Q Action*, (Doc.

---

[6] In making this finding, the Court notes that it reviewed the entirety of the communications provided from both the *TTA Action* settlement negotiations and the *Cin-Q Action* settlement negotiations (*see* Cohen Decl., Ex. 1A-1C; Lally Decl., Ex. 1-47; Doc. 131, Ex. 3-25). As the Court does not find the majority of the communications particularly relevant to the issue at hand, the Court refrains from summarizing those communications herein.

215).  At the same time, as the Eleventh Circuit noted, e-mails indicated that *TTA* Plaintiffs' Counsel engaged in a "Machiavellian" plan to undercut *Cin-Q* Plaintiffs negotiating position. *Tech. Training*, 874 F.3d at 697.  Indeed, *TTA* Plaintiffs' Counsel did not approach BLP about the filing of a new case regarding the same class claims until *after* the parties reached an impasse in the *Cin-Q Action*, a fact that *TTA* Plaintiffs' Counsel was aware of at the time they approached BLP (Lally Decl., at ¶¶51-54).  Given that backdrop, both *TTA* Plaintiffs and BLP possessed aligning incentives to settle outside the purview of the *Cin-Q Action* or, at the very least, *Cin-Q* Plaintiffs.  As a result, the interests of *TTA* Plaintiffs remained antagonistic to and in substantial conflict with *Cin-Q* Plaintiffs and the rest of the putative class in the *Cin-Q Action*, meaning *TTA* Plaintiffs cannot adequately represent the class under Rule 23(a)(4).

Contrary to BLP's argument, this finding does not prioritize form over substance. Understandably, from BLP's perspective, the issues relating to the class claims have been resolved and no need exists to disturb such resolution.  To that end, *TTA* Plaintiffs and BLP argue that *TTA* Plaintiffs could have intervened in the *Cin-Q Action*, but chose not to do so, and requiring them to do so now would prove an exercise in futility (*see* Doc. 141, at 12; Doc. 148, at 18-19).  Had *TTA* Plaintiffs and BLP determined that intervention in the *Cin-Q Action* provided the proper means for getting the Settlement before the Court, the issues might have been resolved or at least addressed much differently.  As it stands, however, the parties did not. Instead, they proceeded in a separate action, and the Eleventh Circuit subsequently provided its interpretation of the facts, which now guides this Court in its decision.  Given the change in the procedural landscape after the Eleventh Circuit issued its decision, therefore, this Court finds no basis to allow the class claims to proceed in this action.  *See Falcon*, 457 U.S. at 160 ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.").  Furthermore, the Court need not address the adequacy of *Cin-*

*Q* Plaintiffs or their Counsel nor the viability of a class action in the *Cin-Q Action*, as neither issue affects the outcome here.

### IV.     Conclusion

For the foregoing reasons, it is hereby

ORDERED:

1. *Cin-Q* Plaintiffs' Renewed Motion to Decertify Settlement Class, Vacate Preliminary Approval Order, and Strike Class Allegations (Doc. 131) is GRANTED.

2. The Preliminary Approval Order (Doc. 56) is VACATED.

3. The Settlement Class is DECERTIFIED.

4. *TTA* Plaintiffs' class claims in this action are STRICKEN.

5.  This matter is STAYED pending a status conference.  The parties are directed to meet and confer within seven days of the date of this Order to determine dates and times when all parties can attend an in-person status conference.  *TTA* Plaintiffs' Counsel shall then contact the Court at (813) 301-5541 to provide the proposed dates and times, after which the status conference will be scheduled by separate notice.

DONE AND ORDERED in Tampa, Florida, on this 30th day of September, 2019.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:     Counsel of Record